Christopher P. Welsh
Attorney for Plaintiff Hazel Stafford

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN RE:  WAL-MART WAGE AND HOUR EMPLOYMENT PRACTICES LITIGATION | ) ) ) MDL 1735 ) ) 2:06-cv-00225-PMP-PAL ) (BASE FILE) |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | ) ) ) ) |

## CLASS ACTION COMPLAINT

Plaintiff Hazel Stafford ("Plaintiff"), on behalf of themselves and all others similarly situated, complain and allege as follows:

### NATURE OF THIS ACTION

1.      This class action is brought against Wal-Mart Stores, Inc. (including all Nebraska Wal-Mart stores and Supercenters) and Sam's West, Inc. (collectively, "Wal-Mart" or "Defendants") for their systematic failure to pay their hourly employees for all time worked, including overtime hours.

2.      Recently discovered evidence, including the videotaped admission of a Wal-Mart executive and Wal-Mart memoranda, showing that Wal-Mart deleted thousands of hours of time worked from employees' payroll records during the relevant time frame—a practice known in the industry as "time shaving"-- support the allegations of this matter. Plaintiff believe Wal-Mart perpetrated this practice in the following ways: (1) altering employee records to make it appear as if the employees' workdays ended one minute after they clocked in for work or completed a meal period concluded, effectively denying employees their pay for the three to eight hours of work they performed after the manager had clocked them out for the day (*i.e.*, the "one-minute clock out" practice); (2) deleting overtime hours that employees worked in

69267.1

excess of forty hours (i.e. "the 40 hour club"); (3) deleting employee punches so that employees would not be paid for an entire day or afternoon of work; (4) altering employee time records to make it appear as if employees took meal periods when in fact they did not, resulting in unauthorized deductions from the employees' paychecks; (5) deducting time spent on breaks from the time records when employees had earned paid break time; 6) failing to pay employees for all reported time.

3.       Hourly employees were never and could not have been aware of these wrongful practices because Wal-Mart wrongfully and willfully concealed such facts from them. Indeed, they could not have reasonably discovered those wrongful takings until at the earliest, sometime after April 4, 2004, when the *New York Times* published an article in which Wal-Mart admitted for the first time that it had surreptitiously deleted hours from employees' time records—in effect, stealing money from its own employees.  Wal-Mart's purported corrections of both the article and the management practices that facilitated such theft further served to conceal and eliminate the discovery of the wrongful practices.

4.       As a result of Wal-Mart's wrongful and illegal conduct, Plaintiff seek redress on behalf of all persons who are or who have been employed in Nebraska by Wal-Mart Stores, Inc. and Sam's West, Inc. as an hourly employee at any time on or after January 1, 1989. Plaintiff, on behalf of themselves and the proposed Class members, also seek injunctive relief and restitution of all benefits that Defendants have obtained as a result of their failure to pay hourly employees for all hours worked, including overtime hours.

## JURISDICTION AND VENUE

5.       This Court has jurisdiction over Defendants because each of them, directly and/or through their subsidiaries, related entities, or agents, is doing business in the state of Nebraska.

6.       Jurisdiction is proper in this court pursuant to the provisions of 28 U.S.C. §1332(d)(2)(A) & (d)(6) because the aggregate amount in controversy for the Class exceeds $5,000,000 and there are members of the Class who are citizens of a different state from any defendant.  Plaintiff are citizens of Nebraska, and Defendants are headquartered in Arkansas.

7.      Venue is proper in this judicial district, pursuant to 28 U.S.C. §1391, because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district and because Defendants otherwise reside within this judicial district.

## THE PARTIES

8.      Plaintiff Hazel Stafford is a Nebraska resident who worked as an hourly employee at the Wal-Mart Store in Nebraska during the relevant time period.  Plaintiff and all similarly situated class members were subject to Wal-Mart's wrongful corporate policy and practice of time shaving and manipulation of time records.

9.      Defendant Wal-Mart Stores, Inc. is a Delaware corporation with its headquarters in Bentonville, Arkansas.  Wal-Mart Stores, Inc. is a corporation transacting hundreds of millions of dollars of business—if not more—within the State of Nebraska.  Wal-Mart Stores, Inc., according to the website www.walmartfacts.com, operates 3 supercenters, 3 discount stores, and 3 Sam's Club retail stores in Nebraska.

10.     Sam's West, Inc., a wholly-owned subsidiary of Defendant Wal-Mart Stores, Inc., transacts millions of dollars of business—if not more—within the State of Nebraska.  Sam's West, Inc. (hereinafter "Sam's Club") operates 3 Sam's Clubs in the State of Nebraska.  Sam's Club is an operating segment of Wal-Mart Stores, Inc.

11.     At all times herein mentioned, each of the Defendants was the agent and/or employee of each of the other Defendants and was at all times acting within the purpose and scope of such agency and employment.

12.     At all times herein mentioned, the acts charged in this Complaint as having been done by Defendants were committed, authorized, ordered, ratified, and/or done by the Defendants' officers, agents, employees, and/or designated and/or authorized representatives, while actively engaged in the management of the Defendants' businesses and/or affairs, and while acting with real and/or apparent authority of the Defendants.

## CLASS ACTION ALLEGATIONS

13.     Plaintiff brings this case as a class action pursuant to Federal Rule of Civil

Procedure ("FRCP") 23 on behalf of themselves and others similarly situated.  The Class that

Plaintiff seek to represent is defined as follows (hereinafter, "the Class"):

> all current and former hourly-paid employees of Wal-Mart Stores, Inc. in
> the State of Nebraska and all current and former hourly-paid employees of
> Sam's West, Inc. in the State of Nebraska from January 1, 1989 to the
> present whom Defendants failed to compensate for all hours worked and
> who were not provided accurate itemized wage statements, excluding: 1)
> all employees who hold or held salaried positions; and 2) all personnel
> managers.

14.     This action is brought and may be properly maintained as a class action

pursuant to FRCP 23 because there is a well-defined community of interest in the litigation and

the proposed class is easily ascertainable.

a.      <u>Numerosity</u>:  Plaintiff believes there are thousands of potential Class
members. Thus, the members of the Class are so numerous that joinder of
all members is impractical.

b.      <u>Commonality</u>: There are questions of law and fact common to the Plaintiff
and the Class that predominate over any questions that affect only
individual members of the Class.  These common questions of law and
fact include, but are not limited to:

i.      Whether Wal-Mart is liable for conversion as a result of secretly
deleting time recorded by Plaintiff and the proposed Class
members in the payroll system, for the improper purpose of
withholding payment for the time thus deleted;

ii.     Whether Wal-Mart was unjustly enriched from the wrongful
retention of compensation owed to Plaintiff and the Class for work
performed;

iii.    Whether Wal-Mart was unjustly enriched by deducting break time
from its employee payroll records when the employee had earned
paid break time;

iv.      Whether Wal-Mart breached its contract with Plaintiff and prospective Class members by failing to pay them in accordance with their uniform employment agreement;

v.      Whether Wal-Mart tortiously breached the covenant of good faith and fair dealing by altering the payroll records of Plaintiff and prospective class members for the purpose of depriving them of earned compensation;

vi.      Whether Wal-Mart violated Neb. Rev. Stat. §48-1203 by failing to pay employees at least the minimum wage for all time worked;

vii.      Whether Wal-Mart violated Neb. Rev. Stat. §48-1209 as a result of its time shaving practices and/or its failure to pay former employees for all hours worked;

viii.      Whether Wal-Mart violated Neb. Rev. Stat. §48-1228 as a result of paying Plaintiff and prospective Class members a lower wage than agreed upon;

ix.      Whether Wal-Mart violated the Neb. Rev. Stat. §48-1203 State Minimum Wage Act and other state common and statutory law and as a result of its time shaving practices and/or its failure to pay Plaintiff and proposed Class members for all hours worked;

x.      Whether Defendants acted toward the Class with malice and a reckless disregard for the rights of the class members;

xi.      Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

xii.      Whether Wal-Mart's business records and electronic databases contain the data from which Plaintiff can objectively establish on a class-wide basis:  (i) Wal-Mart's time shaving practices; (ii) the amount of time improperly deleted; (iii) the employees' scheduled hours (to determine the amount of time for which the employees

should have been paid); (iv) whether employees were ever paid for deleted time; (v) the date on which an employee stopped working for Wal-Mart; and (vi) time worked "off-the-clock".

c.  <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the members of the Class. Like the proposed Class members, Plaintiff sustained damages and was harmed as a result of Defendants' common course of conduct that violated Nebraska law and policy as herein described.

d.  <u>Adequacy of Representation</u>:  Plaintiff will fairly and adequately protect the interests of the Class members. The interests of Plaintiff are coincident with, and not antagonistic to, those of the members of the Class.  Plaintiff has retained counsel competent and experienced in complex class action litigation.

e.  <u>Superiority of Class Action</u>:  Class action treatment is superior to any alternatives to ensure the fair and efficient adjudication of the controversy alleged herein.  Each Class Member has been damaged and is entitled to recovery as a result of Defendants' illegal and wrongful policies and/or practices of falsifying the time records of hourly employees, failing to pay wages and failing to provide accurate itemized wage statements as required by law.  Class action treatment will, therefore, allow those similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  The Class members are readily identifiable from Defendants' payroll records, time records, and electronic databases.

15.  Wal-Mart's wrongful practices as alleged herein are generally applicable to the entire Class, thereby making final injunctive relief and disgorgement of ill gotten gains appropriate with respect to the class as a whole.  Without a class action, Wal-Mart will likely retain the benefit of its wrongdoing and will continue a course of action which will result in

further damages to Plaintiff and the Class.  Prosecution of separate actions by individual members of the Class creates the risk of inconsistent or varying adjudications of the issues presented herein, which, in turn, would establish incompatible standards of conduct for Defendants.  In addition, the cost of prosecuting an individual action would likely far exceed the recovery.

16.     Wal-Mart's wrongful and unlawful conduct has been widespread, recurring and uniform at its Nebraska stores and its stores across the nation. Wal-Mart has known, and/or should have known, that its hourly employees, including Plaintiff and the Class, were performing work on its behalf that was not compensated as required by law.

17.     In many instances, the amounts stolen by Wal-Mart from individual Class members was small, but in the aggregate, the compensation wrongfully retained by Wal-Mart was substantial, making this case particularly well suited to treatment as a class action.  Absent a class action and judgment in favor of the Class, including the deterrent effect of disgorgement and punitive damages, Wal-Mart will likely continue its wrongdoing, resulting in further damage to its hourly workers.

## FACTUAL ALLEGATIONS
## PROGRESSIVE AND CONTINUING WRONGS

18.     Wal-Mart generated approximately $256 billion in revenues for the fiscal year 2004, an increase of 11.6% from the previous year. Net income from continuing operations during the same period rose 13.3% to $8.9 billion.  At last count, Wal-Mart had over 15 million employees nationwide.

19.     One of Wal-Mart's largest expenses is the payroll of its hourly-paid employees.  Although Wal-Mart claims in its uniform employee handbook that it "respects the individual," and welcomes employees into its "family," Wal-Mart unfairly shortchanges its hourly-paid employees to obtain higher profitability.  One such method of increasing profitability, since at least January 1, 1989, is the creation and implementation of a system that fails to properly compensate hourly-paid employees in Nebraska and in other states for all hours worked.

20.     The work performed by Plaintiff and the Class Members for which they were not properly compensated was for the benefit of Wal-Mart and was not de minimis or incidental.

21.     Wal-Mart has adopted, and is using, wrongful and unlawful business practices to minimize hourly-paid employees' compensation and increase profits.  Some of these wrongful and unlawful business practices include failing to pay hourly-paid employees for all hours worked, understaffing Defendants' stores, and manipulating time and wage records to reduce the amounts paid to hourly-paid employees below the wages actually due and owing.

22.     Wal-Mart directed its store managerial personnel and/or knew or should have known that its store managerial personnel routinely deleted time from hourly employees' payroll records by:  (1) an unlawful one-minute clock-out practice; (2) altering time records to make it appear as if employees took meal periods of 30 or 60 minutes in length when in fact they did not, thereby deducting time worked from employees' paychecks without proper written authorization from the employees; (3) deleting overtime hours from payroll and time records (a/k/a "The 40 Hour Club"); (4) deleting employee punches so that employees would not be paid for an entire day or afternoon of work; and (5) various other unlawful means.  In addition, Wal-Mart was well aware and, in fact, created an accounting system that unlawfully reduced time spent on breaks from its employee time records even when its employees had earned paid break time.

23.     According to Wal-Mart, one of its largest and most controllable expenses is the payroll of its hourly employees.  Although Wal-Mart claims in its uniform employee handbook that it "respects the individual," and welcomes employees into its "family," Wal-Mart secretly profits at the expense of those unknowing employees by cheating them out of earned wages.  Wal-Mart also cheats its employees out of earned wages by requiring them and/or pressuring them to perform work off-the-clock (meaning, while not clocked in).

24.     Beginning at a date unknown to Plaintiff, but at least as early as January 1, 1989, Defendants committed, and continue to commit, those wrongs against its hourly paid employees in Nebraska.

25.     Wal-Mart's nefarious policy of failing to pay its hourly employees for all time worked is, in part, facilitated through its corporate culture.  As noted above, Wal-Mart convinces its employees that they are part of its "family," where they will be rewarded for being a team player and following Sam Walton's rules.  Conversely, hourly employees are consistently coached (i.e., formally reprimanded) and threatened with termination for committing the slightest infractions of any and all corporate rules.  Thus, hourly employees quickly learn that in order to keep their jobs they must strictly adhere to corporate mandates.

26.     Having instructed and conditioned its employees to be team players or lose their jobs, Wal-Mart gives them work assignments that typically cannot be completed within their scheduled hours.  Wal-Mart also routinely requests its employees to complete those assignments while not clocked in, such as when they are on breaks and/or clocked out for the day.

27.     Wal-Mart's Store, District, Club/General, and Regional Managers in the State of Nebraska have financial incentives to suppress store expenses, the largest of which is employee payroll.  Importantly, the Store, District, Club/General and Regional Managers' financial compensation and bonuses are directly tied to their ability to reduce employee payroll.  Unfortunately for hourly employees, payroll is frequently reduced by understaffing stores, failing to pay wages (including overtime), and tampering with employee records to delete hours worked; all of which result in substantial nonpayment of wages to Wal-Mart's employees.

28.     Significantly, Wal-Mart's corporate office sets staffing and scheduling for each of its stores.  Throughout the Class Period, Wal-Mart has grossly understaffed its stores and implemented a strict no overtime policy in order to reduce payroll expenses.  Notwithstanding that the stores are understaffed and employees cannot work overtime, Wal-Mart pressures each store manager to increase sales and profits each year.  As Wal-Mart well knows, stores cannot increase sales and profits without adequate staffing and/or overtime unless employees work without pay.  Moreover, although Wal-Mart was and is aware that employees are routinely working without pay in order to meet its mandatory profitability requirements, it has done virtually nothing to eliminate that practice and/or compensate its employees for all time worked.

29.    Wal-Mart knew or should have known that its hourly employees were working off-the-clock by virtue of the fact that:  (a) such work was recorded in its business records and electronic databases; (b) its managers directed, pressured and/or encouraged employees to work off-the-clock; (c) it systematically understaffed its stores in order to meet arbitrary corporate profitability objectives; (d) it regularly tracked and studied employee hours worked and wages paid; and (e) its executives received numerous written reports of such misconduct beginning at least as early as 1989.

30.    By contrast, the earliest date any class member could have possibly learned of potential time shaving practices at Wal-Mart was after such misconduct was publicly exposed by the *New York Times* in an article issued in April of 2004.  Even then, Wal-Mart attempted to conceal its wrongdoing by causing a retraction to be published, which served to further extend its active and ongoing campaign to fraudulently conceal the nefarious conduct alleged herein.

31.    Following the filing and certification of like litigation in various jurisdictions across the nation, as well as after the entry of a substantial verdict in a like case in California (*Savaglio v. Wal-Mart Stores, Inc.*), Wal-Mart launched a savvy media campaign to publicize its denial that its employees are mistreated. Importantly, Wal-Mart expressly represented to both the public and its employees that it paid employees for all time worked. Wal-Mart further suggested that the lawsuits seeking payment for unpaid work were frivolous.

32.    Upon information and belief, by August of 2004, Plaintiff in class actions in other states had obtained databases from Wal-Mart that allowed them to confirm the existence of Wal-Mart's time shaving practices.  Although Wal-Mart's routine business records, in hardcopy and/or electronic media, evidence its wrongdoing, hourly employees could not have discovered Wal-Mart's time shaving practices, primarily because they did not have access to Wal-Mart's electronic databases, which can only be deciphered/analyzed by a computer/statistical expert.  Likewise, the hard copy records do not reveal instances of time-shaving unless the person reviewing them is trained and/or instructed on how to identify the evidence of such practices.  It is undisputed here that Wal-Mart never informed its employees of

the one-minute clock out practice, much less train them on how to detect such occurrences in its payroll records.

33.     Significantly, in addition to finding tens of thousands of instances wherein Wal-Mart improperly altered its payroll records to steal wages from its hourly employees, Plaintiff in like litigation also discovered that Wal-Mart failed to pay its employees for large amounts of earned wages that were documented in business records and non-payroll databases, such as the point-of-sale database, but were not recorded in Wal-Mart's time-keeping system. Once again, both the discovery and extent of Wal-Mart's misconduct can only be identified by a computer/statistical expert.

### FRAUDULENT CONCEALMENT

34.     On April 4, 2004, the *New York Times* published an article in which Wal-Mart admitted for the first time that it had surreptitiously deleted hours from employees' time records—in effect, stealing money from its own employees. See Exhibit A attached hereto. The practice, known as "time shaving," is "easily done and hard to detect," according to the article. It was reported that Wal-Mart also admitted that as early as April 2003, it had secretly created and circulated to all of its United States store managerial personnel a videotape and a newly-revised "payroll integrity" policy memorandum discussing this unlawful practice. *Id.* The existence of this tape was initially concealed by Wal-Mart in related cases until identified by the *New York Times*, and Wal-Mart continues to deny that the tape evidences its time shaving practices.

35.     Prior to the *New York Times* article, Plaintiff and the Class had no knowledge or reasonable basis to know of  Wal-Mart's unlawful time shaving practices, the existence of the payroll videotape, or the revised "payroll integrity" policy memorandum.  Not only did Wal-Mart promote its "family" image in order to inspire its employees to trust Wal-Mart to treat them fairly, Wal-Mart utilized a bi-weekly payroll system and frequently changed the shifts and hours assigned to hourly employees, all of which prevented the detection of small unauthorized reductions in time worked even when employees examined their paychecks. Indeed, Plaintiff would have been unable to confirm the existence of the practices discussed in

that article until sometime after July of 2004, when Wal-Mart produced for the first time some evidence exposing its misconduct.

36.    Upon information and belief, in July of 2004, Wal-Mart produced a videotape to Plaintiff in like litigation who had entered into a protective order.  Importantly, that videotape revealed that in addition to the "one-minute clock out" practice, Wal-Mart engaged in another form of time shaving by which Wal-Mart deleted certain employee punches so that the affected employees would not be paid for an entire afternoon of work.  As Wal-Mart admitted on the videotape, by deleting the "final punch ... that's four hours [the employee] wasn't paid for." *Id.*  Wal-Mart continues to fraudulently conceal its wrongdoing, as well as to deny both that it has engaged in wrongful conduct and that the videotape evidences such wrongful conduct.

37.    Upon information and belief, sometime thereafter, Wal-Mart produced another videotape to Plaintiff in like litigation who had entered into a protective order.  That videotape included a speech by another of Wal-Mart's top executives, Don Swann, to personnel managers at Wal-Mart's 2003 Annual Shareholders' Meeting.  In the videotape, Mr. Swann acknowledges yet another widespread time shaving practice at Wal-Mart—namely, deleting overtime so that employees did not earn over 40 hours ("the 40 Hour Club")—and explains that store managers felt pressured to practice it.

38.    Upon information and belief, around the same time, on October 26, 2004, an April 2003 training memorandum concerning the widespread "one-minute clock out" practice that was referenced in the April 2004 *New York Times* article was produced to Plaintiff in like litigation.  This training memorandum was sent to all United States personnel managers.  Specifically, all Wal-Mart and Sam's Club personnel managers were now instructed:

> Wal-Mart must pay Associates for all the time they work. Wal-Mart is also responsible for maintaining records that accurately document the time worked by Associates.
>
> When an Associate fails to clock in and out correctly, leaving an odd number of punches, Wal-Mart is left with an incomplete time record,...[I]n order to close out the daily payroll, a decision must be made as to how many hours the Associate probably worked based on the records that are available at that time. The only records available at this time are the punch, which shows when the Associate reported in to work, and the shift schedule, which shows what the Associate was expected to work.

> Based solely on these records, the most reasonable conclusion is that the Associate worked the full shift. In contrast, there are no records to support the assumption that the Associate either did not work after clocking in or that the Associate left after one minute. Accordingly, eliminating the punch or advancing the time record one click is not an appropriate method to handle the incomplete time record.

39.    Until publication of the April 2004 *New York Times* article, at the earliest, Plaintiff and similarly situated Class members did not know and could not have reasonably known that Wal-Mart had a one-minute clock out practice.  In fact, the *New York Times* article identified for the first time the method by which Wal-Mart systematically deleted time worked from its records.  Importantly, Wal-Mart did not produce evidence confirming the existence of its time shaving practices until the summer of 2004.  Prior to that time, and for a reasonable period thereafter, Plaintiff and Class members were unaware that Wal-Mart had a company-wide practice of regularly deleting several hours of pay from unsuspecting hourly employees by surreptitiously clocking them out one minute after they had returned from a break, by deleting certain clock-in punches, or by adding meal periods without employees' written authorization, nor did Plaintiff and similarly situated Class members have any way of unearthing these time shaving methodologies.  Indeed, such evidence is contained in Wal-Mart's state of the art time-keeping system, which requires expert analysis to detect and comprehend.

40.    By contrast, beginning at least as early as March 29, 1989 Wal-Mart knew the facts concerning its wrongful time shaving practices and its resultant failure to pay Plaintiff and Class members for all hours worked, yet Wal-Mart willfully concealed those facts from Plaintiff and the Class members.

41.    Although Plaintiff have exercised due diligence during the Class Period and have diligently sought to protect themselves from unlawful practices, Plaintiff could not have discovered the improper and illegal time shaving practices by the exercise of due diligence until shortly before the filing of this Complaint for the reasons discussed herein.

42.    Detection of payroll tampering at Wal-Mart by a reasonable hourly employee was also thwarted by Wal-Mart's persistent representations that its time-keeping system was accurate, coupled with its deliberate refusal to even inform employees that managers

were deleting time worked by utilizing a one-minute clock out.  Wal-Mart did not train any

hourly employees on how to detect instances of time-shaving in its payroll records.

       43.    As an employer in the State of Nebraska, Wal-Mart had a duty under Neb.

Rev. Stat. §48-1225 to maintain accurate records of each employee's time worked and wages

earned, and Plaintiff reasonably relied upon Wal-Mart to keep accurate records and accurately

pay them the wages they earned for time worked.  Furthermore, Wal-Mart disseminated to its

hourly employees its corporate policies, called People Directives, that explicitly promise payroll

integrity ("PD-29"), payment for all time worked ("PD-43"), and a paid rest break of fifteen

minutes for every three hours worked and an unpaid meal break of at least thirty minutes for

every six hours worked ("PD-07").

       44.    These practices of secrecy and concealment included but were not limited

to: a materially false and misleading public relations campaign that misrepresented Wal-Mart's

practices toward its employees, the dissemination of false information through press releases,

public statements by Wal-Mart officers and managerial employees denying such practices,

unqualified denials of such practices in like litigation, and a demand for retraction of the *New

York Times* article.

       45.    Wal-Mart has never revealed the existence of its time shaving practices

and one-minute clock out practice in its handbook, corporate policies or in its standardized

orientation for hourly employees.  Moreover, as discussed above, when confronted with evidence

of its wrongdoing, Wal-Mart has actively sought to conceal its misconduct by mounting an

expensive and deceptive public relations campaign wherein it repeatedly denies that it has failed

to compensate employees for wages earned.  For example:

       a.    In a statement signed by H. Lee Scott, President and Chief Executive

           Officer of Wal-Mart, and posted on Wal-Mart's website, Mr. Scott said,

           "For too long, others have had free rein to say things about our company

           that just aren't true."  The website specifically addresses allegation of off-

           the-clock work by saying, "Although we do not want even one minute

           worked without pay, keep in mind that anyone can file a lawsuit, and most

of these lawsuits have not yet been decided." The website protests Wal-Mart's innocence by arguing that "any manager who requires or even tolerates 'off-the-clock' work would be violating [company] policy and labor laws. As a result, he or she would be disciplined, and possibly even fired, depending on the situation."

b.   On *Good Morning America*, Mr. Scott responded to Charles Gibson's inquiry regarding "off-the-clock" claims by stating "Our policy is that we pay everyone for every hour worked. And if a manager allows someone or requires someone to work off the clock, they're terminated. I think there's a difference between what you're sued for and what you're found guilty of."

c.   On the Fox News program Your World with Neil Cavuto, Mr. Scott denied that employees had their hours deleted by stating, "It's going to take Lee Scott to be on TV to say, every associate knows, because right by the time clock is a big sign that says if your manager does something with your pay that is inappropriate, asks you to work hours that they're not going to pay you for, you call this number and we'll fix it. People aren't going to talk about it except me and that is [communicated in] the visits I have personally had in our meetings with store managers saying, if you do these things you will be terminated, period."

46.   As a result of the knowing and willful fraudulent concealment of the illegal time shaving practices, Plaintiff assert the tolling of the applicable statute of limitations with respect to any claims and rights of action by Plaintiff and the members of the Class.

**FIRST CAUSE OF ACTION**
**(Failure to Pay Minimum Wage: Neb. Rev. Stat. §48-1203;**
**Failure to Pay Agreed Upon Wages and Benefits: Neb. Rev. Stat. §48-1209)**

47.   Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

48.   The Class Period for this cause of action is January 1, 1989 to the present.

49.     Neb. Rev. Stat. §48-1203 states, in part, that every employer shall pay to each employee employed by the employer wages at the rate of four dollars and twenty-five cents per hour through August 31, 1997 and five dollars and fifteen cents per hour on and after September 1, 1997.  Neb. Rev. Stat. §48-1225 requires an employer to maintain accurate records of time worked by its employees.

50.     As alleged herein, Wal-Mart failed to properly compensate Plaintiff and the Class members for off-the-clock work, overtime and work during missed and/or interrupted meal and rest breaks, and Wal-Mart intentionally altered its employees' time records in order to reduce the time recorded. By its actions, Wal-Mart violated Neb. Rev. Stat. §48-1203 and is liable to Plaintiff and the Class members.

51.     As a result of Wal-Mart's unlawful acts, Plaintiff and the Class members have been deprived of compensation in amounts to be determined at trial, and pursuant to Neb. Rev. Stat. §48-1231 are entitled to recovery of such amounts, including interest thereon, attorneys' fees, and costs.

52.     Nebraska law makes it unlawful for an employer to pay employees less than the agreed upon wage, and makes it unlawful for an employer to fail to pay agreed upon benefits to employees.

53.     As alleged herein, Wal-Mart failed to provide the agreed upon compensation and benefits to its hourly employees who were not compensated for off-the-clock work, earned overtime or work performed during meal or rest breaks.

## SECOND CAUSE OF ACTION
### (Failure to Pay Past Due Wages Upon Discharge: Neb. Rev. Stat. §48-1209)

54.     Plaintiff re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

55.     The Class Period for this cause of action is January 1, 1989 to the present.

56.     As alleged herein, Wal-Mart failed to pay earned wages to class members who are former employees of Wal-Mart at the time they became due and payable.  All members

of the Class who are no longer employed with Wal-Mart are entitled to unpaid compensation for all hours worked, but to date have not received such compensation.

57.     Neb. Rev. Stat. §48-1201 and Neb. Rev. Stat. §48-1231 and Public Policy provide that whenever an employee quits the service or is discharged, the employee shall be paid whatever wages are due him in lawful money of the United States of America, or by check or draft which can be cashed at a bank.

58.     Neb. Rev. Stat. §48-1201 Neb. Rev. Stat. §48-1231 and Public Policy provide that whenever an employee who has quit or has been discharged from service has cause to bring suit for wages earned and due, and establish in court the amount which is justly due the court can charge interest on the past due wages at a reasonable rate from the date of discharge or termination, together with a reasonable attorney fee and all costs of suit.

59.     Neb. Rev. Stat. §48-1206 provides criminal penalties for violation of Neb. Rev. Stat. §48-1206.  By its actions, Wal-Mart violated Neb. Rev. Stat. §48-1206 and is liable to Class members.

60.     As a result of Wal-Mart's unlawful acts, class members who are former employees of Wal-Mart have been deprived of compensation in amounts to be determined at trial, and are entitled to a recovery of interest on the past due wages together with costs and reasonable attorney's fees, and any other damages as set forth under Nebraska law.

**THIRD CAUSE OF ACTION**
**(Conversion)**

61.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

62.     The Class Period for this cause of action is January 1, 1989 to the present.

63.     As alleged herein, Plaintiff and each Class member created a record in Defendants' electronic payroll system of each hour or fraction thereof that he or she worked and was immediately entitled to compensation for the time recorded, payable at the next regular pay period or upon termination, whichever occurred first.  Plaintiff and each Class member had a possessory interest in each payroll record so created and in the compensation that Wal-Mart was

required to pay for those recorded hours of work.  Defendants had no right to delete the time recorded in the payroll records of hourly employees without the express consent of the affected employee, yet Defendants secretly deleted time recorded by Plaintiff and Class members for the wrongful purpose falsifying payroll records in order to prevent those employees from receiving the compensation they had already earned.

64.     As Plaintiff and Class members performed work for Wal-Mart and recorded their hours, they fulfilled their employment contract with Wal-Mart and were entitled to receive the agreed wages for those hours at the next pay period or upon termination, whichever occurred first, as well as accrued benefits related to hours worked.  The time records entered into Wal-Mart's payroll system by Plaintiff and Class members were their property and represented the right to receive compensation for the hours recorded.  Wal-Mart had no right to unilaterally alter its employees' payroll records, without disclosure to the affected employees and without their consent, and such tampering with payroll records was contrary to Wal-Mart's purported company policies, such as the payroll integrity policy ("PD-29") and Wal-Mart's promise to pay for all time worked ("PD-43").  Nonetheless, Wal-Mart intentionally altered the data in the payroll system to eradicate hours recorded by Plaintiff and Class members.  Wal-Mart converted Plaintiff's and Class members' records of labor and compensation owed for that labor to its own use and thereby prevented Plaintiff and Class members from receiving the wages and benefits they earned.

65.     Wal-Mart converted Plaintiff's and Class members' property by deleting recorded hours from its timekeeping system without proper written authorization from Plaintiff and members of the Class, all with the intention on the part of Wal-Mart that Plaintiff and the Class would not be compensated for the deleted time.

66.     Wal-Mart thereafter used the fraudulently altered payroll records to underpay Plaintiff and the Class, wrongfully retaining its employees' earned compensation to its own use and thereby damaging each such employee.  Compensable hours of labor recorded by Plaintiff and Class members were stolen by Wal-Mart, with the result that Plaintiff and Class members were deprived of the wages and benefits they would otherwise have been paid.

67.     The monetary value and/or amount of wages and benefits represented by the time records that were converted by Wal-Mart from Plaintiff and Class members is specific, certain, and capable of identification based upon an analysis of the number of uncompensated hours worked and the time deleted from the timekeeping system.

68.     Throughout the Class Period, Wal-Mart had actual knowledge that it wrongfully and/or unlawfully altered and withheld the rightful property of its hourly employees and, further, its employee victims had no knowledge that Wal-Mart had deleted their recorded hours or wrongfully withheld their wages and benefits.  Plaintiff and Class members could not have discovered the alteration of their payroll records and theft of their compensable time records without access to Wal-Mart's payroll and sales databases and other business records, including Time Adjustment Requests, coupled with the ability to analyze millions of pieces of data, a task that only became possible recently through the use of expert statistical analysis performed in like litigation in other jurisdictions.

69.     The wrong done to the Plaintiff and Class members by the Defendants was attended by fraudulent, malicious, intentional, willful, wanton and/or reckless conduct, evidencing a conscious disregard for the rights of the Class members.  In altering employees' payroll records to delete compensable hours, and thereby falsifying the payroll records of Plaintiff and Class members in order to steal earned wages and benefits from its employees, Wal-Mart acted despicably, with oppression and/or conscious disregard for the rights of Plaintiff and the Class members.  The statutory and contractual remedies available to Plaintiff and the Class are insufficient to deter Wal-Mart from cheating its employees out of earned wages and benefits in the future.  Only an award of punitive damages could be sufficient to deter such wrongful and intentional acts, and the despicable conduct of Wal-Mart in stealing labor represented by recorded time from its employees amply merits an award of punitive damages.

70.     Wal-Mart should be enjoined from its practice of unilaterally and covertly altering payroll records.  If Wal-Mart is not so enjoined, countless present and future hourly employees of Wal-Mart in the State of Nebraska will be cheated out of their earnings.

## FOURTH CAUSE OF ACTION
### (Unjust Enrichment/Quantum Meruit/Restitution)

71.     Plaintiff re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

72.     By working for Wal-Mart without appropriate pay for all time worked, including off-the-clock work and missed rest and meal breaks, Plaintiff and the Class members conferred a substantial benefit on Wal-Mart.  Wal-Mart's practice of requiring and obtaining uncompensated labor, as well as its practice of altering payroll records to delete hours worked, massively reduced hourly wage expenses and enabled Wal-Mart to use money wrongfully withheld from its employees to generate additional profits and increase profitability.

73.     Wal-Mart is a public company that thrives on increasing its profitability and increasing returns to its shareholders.  Wal-Mart depended upon the benefits received from underpaying Plaintiff and the Class.  Indeed, without Wal-Mart's clandestine wage abuse campaign, it would not be able to operate nearly as profitably.

74.     Wal-Mart wrongfully retained the wages earned by Plaintiff and the Class and used such ill-gotten gains to generate further profits.  Under these circumstances, equity requires that Wal-Mart be ordered to disgorge all such profits to, or for the benefit of, Plaintiff and Class members.

75.     The hours that Plaintiff and Class members worked off-the-clock and through rest and meal breaks were at the direction and behest of Wal-Mart.  Plaintiff and Class members did not perform this work voluntarily but with the expectation of receiving compensation and/or the fear of being discharged for refusing to work as requested.  Furthermore, Plaintiff and Class members provided a great deal of uncompensated labor to Wal-Mart.  Wal-Mart demanded, accepted and depended upon this involuntarily conferred benefit to its profitability and has never paid Plaintiff and the Class for the labor thus provided.

76.     Defendants are liable to Plaintiff and the Class for all unpaid labor, including hours worked off-the-clock and missed rest and meal breaks.  Defendants have

premeditatively failed and maliciously refused to pay for such unpaid labor when payment was due or at any time thereafter.

77.     At the time wages were due and payable by Defendants to Plaintiff and Class members, the unpaid wages became the property of Plaintiff and Class members, and Plaintiff and Class members had a right to possess their property.  The compensation earned by Plaintiff and Class members that was wrongfully retained by Wal-Mart unjustly enriched Wal-Mart, at the expense of its hourly employees.  Wal-Mart knew and intended that it would increase its profits by retaining Plaintiff's and Class members' property.  By wrongfully retaining the wages of Plaintiff and Class members for its own use, by deleting overtime and regular hours worked by clandestinely altering payroll records, and by requiring off-the-clock work, Wal-Mart acted with malice, fraud, oppression, and/or conscious disregard for the rights of Plaintiff and Class members.

78.     It would be inequitable for Defendants to continue to retain the profits obtained from wrongfully withholding money earned by Plaintiff and Class members, and such profits should be disgorged to, or for the benefit of, Plaintiff and the Class.

**FIFTH CAUSE OF ACTION**
**(Breach of Contract)**

79.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

80.     Wal-Mart expressly agreed, orally and in writing, to pay Plaintiff and Class members a specific amount of compensation for each hour worked, in compliance with applicable state and federal wage and hour laws.   Wal-Mart also agreed to provide the class members with compensated break time in exchange for their labor.  At the time Plaintiff and Class members were hired, Wal-Mart provided them with a copy of a uniform employee handbook, to which they were directed to refer if they had any questions concerning their employment.

81.     The Wal-Mart employee handbook is a standardized, uniform document used by Wal-Mart nationwide, including in Nebraska, which is presented to employees on a take-

it-or-leave-it basis.  In addition, the employee handbook is presented to and reviewed with all hourly employees during Wal-Mart's standardized orientation for new employees.

82.     Throughout the employee handbook, Wal-Mart confirmed its obligation to pay its hourly employees for all time worked.  In addition, Wal-Mart disseminated and publicized its corporate policies to its hourly employees, including its policy regarding entitlement to and payment for meal and rest breaks ("PD-07"), its purported commitment to payroll integrity ("PD-29"), and its promise to pay for all time worked ("PD-43").

83.     Wal-Mart further communicated its standardized promises to its employees through the standardized orientation that each class members was required to attend. The policies are also communicated to each class member through Wal-Mart's intranet system, known as the "Pipeline."

84.     Plaintiff and each Class member performed his or her duties under the Wal-Mart employment agreement and was entitled to receive the agreed upon benefits and compensation.

85.     Wal-Mart breached its obligation under the employment agreement with Plaintiff and Class members by failing to pay the full amount of compensation earned for each hour worked, including promised compensation for earned breaks;

86.     The breach of contract by Wal-Mart caused financial harm to Plaintiff and each Class member.

87.     As a consequence, Wal-Mart should be required to pay Plaintiff and each Class member all amounts owing under their employment contract, plus interest at the legal rate, calculated from the date that such wages were originally due.

## SIXTH CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing)

88.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

89.     Into every contract the law implies a covenant of good faith and fair dealing, requiring that each party refrain from any act, extraneous to the provisions of the

contract, that would deprive the other party of the benefits of the contract.  In addition, Nebraska law imposes on Wal-Mart, as an employer, a duty to maintain and provide to each employee an accurate accounting of all hours worked and wages earned by such employee.  Nebraska law also requires that an employer pay its employees the full amount of wages and benefits stated in the employment agreement.

90.     Pursuant to the covenant of good faith and fair dealing implied into the employment contract between Wal-Mart and each Class member, Wal-Mart was obligated to account accurately for the hours worked by each employee and to pay the agreed upon compensation for all time worked, including paid break time, as specified in the employment agreement and applicable statutes.

91.     Wal-Mart breached the covenant of good faith and fair dealing by manipulating the time recorded in the payroll records of Plaintiff and Class members, so that the number of hours worked and wages payable were unilaterally and clandestinely reduced.  Wal-Mart knew that such deductions were not fair, lawful, justified or permissible under the employment contract or applicable wage and hour statutes.

92.     Wal-Mart also breached the covenant of good faith and fair dealing by forcing Plaintiff and Class members to work off-the-clock without the compensation promised in the employment agreement.

93.     As a proximate result of Wal-Mart's breach of the covenant of good faith and fair dealing, Plaintiff and Class members suffered substantial financial damage, in an amount to be proven at trial.

94.     It is the public policy of the State of Nebraska that an employer is required to pay hourly employees all earned compensation on a timely basis.  By failing to pay its hourly employees their earned compensation, as alleged herein, Wal-Mart's breach of the covenant of good faith and fair dealing was carried out in violation of public policy, entitling Plaintiff and Class members to tort damages, including punitive damages.

95.     By cheating Plaintiff and Class members out of earned wages, Wal-Mart acted despicably in violation of public policy.  An award of punitive damages is warranted in

order to deter Wal-Mart from perpetuating similar fraudulent, malicious, despicable and oppressive conduct in the future.

## EIGHTH CAUSE OF ACTION
### (Injunctive and Declaratory Relief)

96.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

97.    As a result of Wal-Mart's wrongful conduct as described herein, Plaintiff and the Class have suffered and, unless abated, the Class and future hourly employees of Wal-Mart will continue to suffer, severe and irreparable economic harm and other injuries.

98.    Plaintiff and the Class have no adequate remedy at law to prevent future wrongful conduct in the absence of injunctive relief.

99.    Accordingly, Plaintiff and the Class respectfully request that this Court enter a permanent injunction ordering Wal-Mart to cease and desist from its wrongful policy and practice of altering employee time records without explicit notice thereof to the affected employee and consent thereto by the employee.

100.    Plaintiff and the Class also respectfully request that this Court issue a declaratory order declaring that Wal-Mart has engaged in unlawful conduct that violated Nebraska law and policy.

## PUNITIVE DAMAGES

101.    The wrongs done to the Plaintiff and the Class members by the Defendants were attended by despicable, fraudulent, malicious, intentional, willful, wanton and/or reckless conduct, and such conduct evidenced a conscious disregard for the rights of the Class members. Plaintiff and the other Class members, therefore, seek punitive damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the members of the Class, pray for judgment against Defendants as follows:

1.      An Order that this action may proceed and be maintained as a class action under FRCP 23;

2.      Injunctive relief, damages and restitution with interest according to proof for wages and other harm under Nebraska law;

3.      An award to Plaintiff and the Class members of reasonable attorneys' fees and costs pursuant to Neb. Rev. Stat. §48-1231 and Neb. Rev. Stat. §48-1232 and/or other applicable state laws;

4.      An award of damages, together with interest, attorneys' fees and costs pursuant to Neb. Rev. Stat. §48-1231 and Neb. Rev. Stat. §48-1232;

5.      An order that Defendants restore and disgorge to each member of the Class, or otherwise as the Court may direct for the benefit of the Class, all funds and/or benefits acquired by means of any act or practice declared by this Court to be unlawful, unfair or fraudulent;

6.      Exemplary and/or punitive damages in an amount commensurate with Defendants' wealth and ability to pay and sufficient to deter future illegal conduct;

7.      A declaration that Defendants engaged in unlawful acts and practices;

8.      All other relief as this Court may deem proper.

Dated:  June 30, 2006                          Respectfully submitted,


                                    By:    s/ Christopher P. Welsh
                                           Christopher P. Welsh, NE 22279
                                           WELSH & WELSH, P.C., L.L.O.
                                           2027 Dodge Street, Suite 400
                                           Omaha, NE  68102
                                           (402) 384-8160
                                           (402) 384-8211 fax
                                           **Attorneys for Plaintiff**