1

2

3

4                              UNITED STATES DISTRICT COURT

5                                   DISTRICT OF NEVADA

6                                          * * *

7    IN RE: WAL-MART WAGE AND HOUR )
     EMPLOYMENT PRACTICES            )
8    LITIGATION.                     )          2:06-CV-00225-PMP-PAL
                                     )
9                                    )          O R D E R
     AND ALL RELATED CASES.          )
10                                   )

11            Presently before the Court is Defendants' Motion to Dismiss or Motion for

12   Judgment on the Pleadings With Respect to Plaintiffs' Claims for Conversion, Unjust

13   Enrichment, Statutory Wages, and Memorandum of Law in Support Thereof (Doc. #57),

14   filed on June 30, 2006, with supplements (Doc. #63, #64).  On August 17, 2006, Plaintiffs

15   filed an Opposition to Defendants' Motion to Dismiss or Motion for Judgment on the

16   Pleadings With Respect to Plaintiffs' Claims for Conversion, Unjust Enrichment and

17   Statutory Wages (Doc. #66).  Defendants filed a Reply (Doc. #74) on September 11, 2006.

18   This Court held a hearing on the motion on April 30, 2007.

19   I.       BACKGROUND

20            This multi-district litigation arises out of allegations that Defendants Wal-Mart

21   Stores, Inc., Wal-Mart Associates, Inc., Sam's West, Inc., and Sam's East, Inc.

22   systematically failed to pay their hourly employees for all time worked, including overtime

23   hours.  Plaintiffs brought suit in various districts and the actions have been transferred to

24   this Court for coordinated and consolidated pre-trial proceedings.  Generally, Plaintiffs

25   allege Defendants altered employees' time records by "shaving" time off employees' hours

26   worked through several techniques, including altering the employees' time records to make

it appear the employees' workdays ended one minute after their meal period concluded,

deleting overtime hours the employees worked in excess of forty hours per work week,

deleting employee time clock punches so employees would not be paid for hours worked,

altering employee records to make it appear they took breaks or meal periods when they did

not, and failing to pay employees for all reported time.  Plaintiffs bring a variety of claims,

including breach of contract, breach of the covenant of good faith and fair dealing,

conversion, unjust enrichment, and violation of state statutory wage, hour, and record

keeping provisions.

        Defendants now move to dismiss claims for conversion, unjust enrichment, and

statutory wage, hour, and record keeping violations in eleven of the transferred cases.[1]

Defendants argue that ten of the eleven relevant jurisdictions do not recognize a cause of

action for conversion of money and Plaintiffs have no possessory interest in Defendants'

payroll records to support a conversion claim.[2]  Defendants argue Plaintiffs fail to state a

claim for unjust enrichment because that is an equitable remedy available only when no

adequate remedy at law exists, and Plaintiffs have adequate remedies at law to recover the

allegedly unpaid wages.  Finally, Defendants move to dismiss Plaintiffs' claims based on

---

[1] Defendants move to dismiss claims in Jackson (Dora) v. Wal-Mart Stores, Inc., et al., 2:06-CV-00229; McFarlin v. Wal-Mart Stores, Inc., et al., 2:06-CV-00228; Luce v. Wal-Mart Stores, Inc., et al., 2:06-CV-00232; Hall (Nancy) v. Wal-Mart Stores, Inc., et al., 2:06-CV-01099; Jackson (Reginald), et al. v. Wal-Mart Stores, Inc., et al., 2:06-CV-00231; Curless v. Wal-Mart Stores, Inc., et al., 2:06-CV-00440; Poha, et al. v. Wal-mart Stores, Inc., et al., 2:06-CV-00230; Stafford v. Wal-Mart Stores, Inc., et al., 2:06-CV-00438; Woods v. Wal-Mart Stores, Inc., et al., 2:06-CV-00436; Cole, et al. v. Wal-Mart Stores, Inc., et al., 2:06-CV-00437; and Williams (Norma Jean) v. Wal-Mart Stores, Inc., et al., 2:06-CV-00439.

[2] Defendants concede South Dakota may recognize a conversion claim for money and therefore do not seek to dismiss the conversion claim in Luce v. Wal-Mart Stores, Inc., et al., 2:06-CV-00232. (Defs.' Mot. to Dismiss or Mot. for J. On the Pleadings with Respect to Pls.' Claims for Conversion, Unjust Enrichment, Statutory Wages, & Mem. of Law in Supp. Thereof. [Doc. #57] at 5-6 n.4; Defs.' Reply in Supp. of Mot. to Dismiss or Mot. for J. on the Pleadings With Respect to Pls.' Claims for Conversion, Unjust Enrichment, & Statutory Wages [Doc. #74] at 4 n.4.)

1  certain state statutory wage, hour, and record keeping provisions.

2         Plaintiffs respond that Defendants converted Plaintiffs' property interest in

3  compensation for hours worked as reflected in electronic payroll records when Defendants

4  intentionally altered those records by deleting employees' hours worked.  Plaintiffs argue

5  this states a conversion claim in the relevant jurisdictions.  Plaintiffs also argue their unjust

6  enrichment claims may lie because they do not have an adequate remedy at law.  Plaintiffs

7  argue only disgorgement will prevent Defendants from retaining profits they generated

8  through pilfering their employees' time and lowering their payroll expenses.  Finally,

9  Plaintiffs assert they adequately state claims under the various state wage, hour, and record

10  keeping statutes.

11  **II.        LEGAL STANDARD**

12         In considering a motion to dismiss, "all well-pleaded allegations of material fact

13  are taken as true and construed in a light most favorable to the non-moving party."  Wyler

14  Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation

15  omitted).  However, the Court does not necessarily assume the truth of legal conclusions

16  merely because they are cast in the form of factual allegations in the plaintiff's complaint.

17  See Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).  There is a

18  strong presumption against dismissing an action for failure to state a claim.  See Gilligan v.

19  Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).  The issue is not

20  whether the plaintiff ultimately will prevail, but whether he may offer evidence in support

21  of his claims.  See id. (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

22  Consequently, the Court may not grant a motion to dismiss for failure to state a claim

23  "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his

24  claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see

25  also Hicks v. Small, 69 F.3d 967, 969 (9th Cir. 1995).

26  ///

1    The parties agree that in each of these cases, the substantive law of the state

2    where the transferor court sits applies.  See In re Nucorp Energy Sec. Litig., 772 F.2d 1486,

3    1492 (9th Cir. 1985) (where the central question is a substantive question of state law, the

4    transferee court in multi-district litigation applies the law of the state in which the transferor

5    court sits).  Where a state has not addressed a particular issue, a federal court must use its

6    best judgment to predict how the highest state court would resolve it "using intermediate

7    appellate court decisions, decisions from other jurisdictions, statutes, treatises, and

8    restatements as guidance."  Strother v. S. Cal. Permanente Med. Group, 79 F.3d 859, 865

9    (9th Cir. 1996) (quotation omitted); Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.,

10   306 F.3d 806, 812 (9th Cir. 2002).  In making that prediction, federal courts look to existing

11   state law without predicting potential changes in that law.  Moore v. R.G. Indus., Inc., 789

12   F.2d 1326, 1327 (9th Cir. 1986).  Although federal courts should not predict changes in a

13   state's law, they "are not precluded from affording relief simply because neither the state

14   Supreme Court nor the state legislature has enunciated a clear rule governing a particular

15   type of controversy."  Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd., 880 F.2d 176, 186

16   (9th Cir. 1989) (quotation omitted).

17   **III.      CONVERSION**

18   Defendants move to dismiss Plaintiffs' claims for conversion, arguing ten of the

19   eleven jurisdictions currently at issue do not recognize a cause of action for conversion

20   based on unpaid wages.  Plaintiffs argue the jurisdictions at issue would recognize

21   conversion of intangible property, including Defendants' wrongful alteration of Plaintiffs'

22   hours as reflected in Defendants' electronic payroll records.  Defendants respond that

23   Plaintiffs' have no property interest in the payroll records themselves, and thus Defendants'

24   alleged alteration of the records cannot constitute conversion.  Defendants argue Plaintiffs

25   ultimately seek unpaid wages, which cannot be the subject of a conversion claim.

26   ///

4

**A.  Jackson (Dora) v. Wal-Mart Stores, Inc., et al., 2:06-CV-00229 (Count Three) - Delaware**

"Under Delaware law, conversion is the 'wrongful exercise of dominion over the property of another, in denial of his right, or inconsistent with it.'" <u>Res. Ventures, Inc. v. Res. Mgmt. Int'l, Inc.</u>, 42 F. Supp. 2d 423, 439 (D. Del. 1999) (footnote omitted) (quoting <u>Carlton Inv. v. TLC Beatrice Int'l Holdings, Inc. et al.</u>, 1995 WL 694397, at *16 (Del. Ch. Nov. 21, 1995) (unpublished)).  To establish a conversion claim, the plaintiff must show he had a property interest in the converted goods, he had a right to possess the goods, and he sustained damages.  <u>Goodrich v. E.F. Hutton Group, Inc.</u>, 542 A.2d 1200, 1203 (Del. Ch. 1988).  Although Delaware traditionally applied conversion law only to tangible goods, Delaware follows the modern trend of expanding conversion to encompass intangible goods "where the intangible property relations are merged into a document." <u>Resource Ventures, Inc.</u>, 42 F. Supp. 2d at 439 (quotation omitted) (holding plaintiff stated a conversion claim for its proprietary information, including plans, technology, designs, and specifications); <u>see also</u> <u>Drug, Inc. v. Hunt</u>, 168 A. 87, 93 (Del. 1933) (specific stock certificates could be converted).

Delaware does not recognize a cause of action for conversion of money unless "it can be described or identified as a specific chattel, but not where an indebtedness may be discharged by the payment of money generally." <u>Goodrich</u>, 542 A.2d at 1203.[3]  "The rule

---

[3]  In <u>Resource Ventures, Inc.</u>, the federal district court in Delaware concluded the plaintiff stated a conversion claim "with regard to its Proprietary Information" as reflected in "plans, technology, designs, and specifications . . . ." 42 F. Supp. 2d at 439.  The court then stated the amended complaint contained "sufficient allegations that the Defendants converted the Plaintiff's property by converting the Plaintiff's Proprietary Information to their own use and profit, and by the Defendants' failure to pay monies due to the Plaintiff." <u>Id.</u>  The district court does not explain what it meant by "monies due," although it appears to arise out of disputes regarding profits from a joint venture in which the plaintiff and defendants were involved. <u>Id.</u> at 428, 437.  The Court does not conclude from this statement that Delaware would recognize a conversion claim for money representing a general debt.  First, the district court indicated the plaintiff stated a conversion claim

1  therefore is that an action for conversion of money will lie only where there is an

2  'obligation to return the identical money' delivered by the plaintiff to the defendant."

3  Goodrich, 542 A.2d at 1203 (quoting Lyxell v. Vautrin, 604 F.2d 18, 21 (5th Cir. 1979)).

4       Delaware has not addressed whether it would recognize a conversion claim for

5  unpaid wages as pled in Plaintiff Jackson's Complaint.  The Court concludes Delaware

6  would not recognize a conversion claim in these circumstances because the unpaid wages

7  constitute an indebtedness that Defendants may discharge by the payment of money

8  generally.  Delaware does not recognize a cause of action for conversion based on money

9  that is not specifically identifiable, such as a particular coin or fund, or monies Plaintiff

10  deposited with Defendant which Defendant has failed to return.  Plaintiff's unpaid wages

11  are not specifically identifiable funds but represent a general indebtedness.

12      Alternatively Plaintiffs argue Defendants converted the electronic payroll

13  records evidencing Plaintiff Jackson's hours worked.  Delaware has not addressed whether

14  payroll records, or other records evidencing a debt, may be the subject of conversion, and if

15  so, whether it would recognize such a claim where the plaintiff has not alleged a possessory

16  interest in the document evidencing the debt.  The Court concludes Delaware would not

17  expand its conversion law to cover any record which evidences a debt dischargeable

18  through the payment of money generally as opposed to a document in which property rights

19  are merged.  As explained by the Restatement (Second) of Torts, where a document

20  embodies a personal obligation or represents the title to a chattel and "the right to the

21  immediate possession of a chattel and the power to acquire such possession is represented

22

23  with regard to the proprietary information, not the "monies due."  Second, the plaintiff in that case

24  argued its intangible rights were merged into documents, an argument which the federal district court
accepted.  Accordingly, the plaintiff apparently asserted more than a conversion based on monies due

25  for a debt.  Third, this Court looks first to Delaware state courts to determine Delaware law.  Goodrich
specifically stated a conversion claim does not lie when based on an indebtedness dischargeable by the

26  payment of money generally.

by a document, such document is regarded as equivalent to the chattel itself." Restatement (Second) of Torts § 242 cmt. a (1965). The Restatement gives as examples promissory notes, bonds, bills of exchange, share certificates, warehouse receipts, insurance policies, and savings bank books. Id. cmt. b. Examples of documents which would not fall into this category include executory contracts for land or chattel or contracts for the performance of personal services. Id.

Defendants' payroll records do not embody the right to immediately possess the unpaid wages or the power to acquire the wages, and payroll records are not considered the equivalent of the chattel itself, as a promissory note would be. Defendants' payroll records constitute evidence of a general debt owed for services performed, not intangible property rights merged in a document.

The Restatement notes that some courts have recognized a claim for conversion where "the converted document is not in itself a symbol of the rights in question, but is merely essential to their protection and enforcement, as in the case of account books and receipts." Id. Delaware has not signaled an intent to extend its conversion law beyond those situations where intangible property rights are merged into a document. Even if Delaware would expand its conversion law to cover the conversion of evidence essential to protect and enforce intangible property rights, Delaware law requires the plaintiff to have a possessory interest in the converted chattel to assert a conversion claim. Nothing in Delaware law suggests Delaware would eliminate this required element of a conversion claim where the plaintiff asserts the defendant altered a document which the plaintiff had no right to possess where that document evidenced a general debt the defendant owed the plaintiff. Extending Delaware's conversion law to cover this type of claim is particularly unwarranted where, as here, the plaintiff may pursue alternative causes of action to recover the allegedly unpaid wages.

///

1    In sum, the Court concludes Delaware would not recognize a claim for

2    conversion based on unpaid wages.  Additionally, the Court concludes Delaware would not

3    recognize a conversion claim where a defendant alters its own electronic payroll records to

4    avoid paying the plaintiff's wages.  Accordingly, the Court will grant Defendants' motion

5    and will dismiss count three of Plaintiff Jackson's Complaint.

6    **B.  Williams v. Wal-Mart Stores, Inc., et al., 2:06-CV-00439 (Count Five) - Utah**

7

8    In Utah, conversion "'is an act of wilful interference with a chattel, done without

9    lawful justification by which the person entitled thereto is deprived of its use and

10   possession.'"  State v. Twitchell, 832 P.2d 866, 870 (Utah Ct. App. 1992) (quoting Allred v.

11   Hinkley, 328 P.2d 726, 728 (Utah 1958)).  Utah follows the general rule that to maintain a

12   cause of action for conversion, the plaintiff must be entitled to possess the converted

13   property at the time of the alleged conversion.  Benton v. State, Div. of State Lands &

14   Forestry, Dep't of Natural Res.,  709 P.2d 362, 365 (Utah 1985).  "An interest in the

15   property which does not carry with it a right to possession is not sufficient; the right to

16   maintain the action may not be based upon a right to possession at a future time."  Id. at

17   365-66 (quotation and emphasis omitted).  Additionally, money may not be the subject of

18   conversion unless the defendant "wrongfully received it" or where rights to money are

19   merged in a document, such as converting a check representing proceeds from a note and

20   mortgage.  Twitchell, 832 P.2d at 870 (holding defendant liable for conversion where he

21   retained victims' insurance premium payments in a personal or corporate account rather

22   than the trust account and expended the funds for his personal purposes); Phillips v. Utah

23   State Credit Union, 811 P.2d 174, 179 (Utah 1991).

24   Utah has not addressed whether it would recognize a conversion claim for unpaid

25   wages as pled in Plaintiff Williams' Complaint.  The Court concludes Utah would not

26   recognize a conversion claim in these circumstances because unpaid wages constitute

8

money not subject to conversion under Utah law unless Defendants wrongfully received the money.  There is no allegation in the Complaint that Plaintiff Williams gave money to Defendants which Defendants then converted to their own use or that Defendants somehow wrongfully received money reflecting Plaintiff's unpaid wages.  Rather, the Complaint alleges Defendants wrongfully failed to pay Plaintiff's wages.

Twitchell does not compel a different result.  In Twitchell, the defendant owned an insurance brokerage business.  832 P.2d at 867.  The defendant promised some clients that their premium payments made to him would secure insurance from licensed insurance companies.  Id.  Rather than obtain the insurance, the defendant kept the premiums and paid any damages claims himself.  Id.  Facing criminal charges, the defendant pled guilty to theft by deception and was ordered to pay restitution.  Id.  The defendant objected to having to pay the ordered restitution.  Id. at 868.  Under the Utah scheme, restitution for pecuniary damages was determined with reference to damages recoverable in a civil action.  Id.  The Utah Court of Appeals used the conversion cause of action to determine whether the defendant owed restitution and found the defendant admitted to converting the premium payments by depositing them into his own account rather than into a trust account for purchasing insurance.  Id. at 869-70.

Twitchell falls within a traditionally recognized fact pattern for conversion because it involves the defendant using for his own, unauthorized purposes specific funds the plaintiff entrusted to him for a specific purpose.  See id. at 870; Bennett v. Huish, 155 P.3d 917 (Utah Ct. App. 2007) (holding defendant converted loan proceeds by refusing to return unused funds which plaintiff entrusted to him to apply towards future loan extension fees).  Twitchell does not involve unpaid wages or a general debt as alleged in Plaintiff Williams' Complaint.

///

///

1    Alternatively, Plaintiffs argue Defendants converted the electronic payroll
2    records evidencing Plaintiff Williams' hours worked.  Utah has not addressed whether
3    payroll records, or other records evidencing a debt, may be the subject of conversion, and if
4    so, whether it would recognize such a claim where the plaintiff has not alleged a possessory
5    interest in the document evidencing the debt.  The Court concludes Utah would not expand
6    its conversion law to cover any record which evidences a debt dischargeable through the
7    payment of money generally as opposed to a document in which property rights are merged
8    for the same reasons Delaware would not.  Defendants' payroll records constitute evidence
9    of money owed, not intangible property rights merged in a document.

10    Utah has not signaled an intent to extend its conversion law beyond those
11    situations where intangible property rights are merged into a document.  Even if Utah would
12    expand its conversion law to cover the conversion of evidence essential to protect and
13    enforce intangible property rights, Utah law requires the plaintiff to have a possessory
14    interest in the converted chattel at the time of the conversion.  Nothing in Utah law suggests
15    Utah would eliminate this required element of a conversion claim where the plaintiff asserts
16    the defendant altered a document which the plaintiff had no right to possess where that
17    document evidenced a general debt the defendant owed the plaintiff.  Extending conversion
18    to cover this type of claim is particularly unwarranted where, as here, the plaintiff may
19    pursue alternative causes of action to recover the allegedly unpaid wages.

20    In sum, the Court concludes Utah would not recognize a claim for conversion
21    based on unpaid wages.  Additionally, the Court concludes Utah would not recognize a
22    conversion claim where a defendant alters its own electronic payroll records to avoid paying
23    the plaintiff's wages.  Accordingly, the Court will grant Defendants' motion and will
24    dismiss count five of Plaintiff Williams' Complaint.

25    ///

26    ///

**C.  Cole v. Wal-Mart Stores, Inc., et al., 2:06-CV-00437 (Count Four) - Montana**

To establish a conversion claim under Montana law, the plaintiff must establish it owned an interest in the property, it had a right to possess the property at the time of the alleged conversion, the defendant exercised unauthorized dominion over that property, and resulting damages.  Trifad Entm't, Inc. v. Anderson, 36 P.3d 363, 369 (Mont. 2001); King v. Zimmerman, 878 P.2d 895, 899 (Mont. 1994).  "[A]n action in conversion does not lie against a general account as there can be no conversion of a debt" within the debtor-creditor relationship.  Free v. Elberson, 486 P.2d 857, 862 (Mont. 1971).  However, intangible obligations merged into a document, such as a check or settlement draft, may be the subject of conversion.  See Eatinger v. Johnson, 887 P.2d 231, 235 (Mont. 1994) (defendant cashed check against plaintiff's instruction not to do so); Lane v. Dunkle, 753 P.2d 321, 322-23 (Mont. 1988) (defendant forged plaintiff's endorsement and cashed check).

Montana has not addressed whether it would recognize a conversion claim for unpaid wages as pled in Plaintiff Cole's Complaint.  The Court concludes Montana would not recognize a conversion claim in these circumstances because Montana does not permit a conversion action on a general account within the debtor-creditor relationship.  Here, Plaintiff Cole pursues unpaid wages, a general debt Defendants allegedly owe her.  Because Plaintiff Cole and Defendants are in a debtor-creditor relationship if Plaintiff's allegations are true, no conversion action will lie under Montana law.

Dunkle does not compel a different result.  In Dunkle, the defendant-manager forged the plaintiff-employee's endorsement on three commission checks.  753 P.2d at 367.  Dunkle thus falls into the traditionally recognized fact pattern for conversion in which intangible rights are merged into a document, i.e., a check.  Although the check represented the employee's commissions, the defendant converted the checks not a general debt owing on the commissions.  Id.

1        Alternatively, Plaintiffs argue Defendants converted the electronic payroll
2   records evidencing Plaintiff Cole's hours worked.  Montana has not addressed whether
3   payroll records, or other records evidencing a debt, may be the subject of conversion, and if
4   so, whether it would recognize such a claim where the plaintiff has not alleged a possessory
5   interest in the document evidencing the debt.  The Court concludes Montana would not
6   expand its conversion law to cover any record which evidences a debt dischargeable
7   through the payment of money generally as opposed to a document in which property rights
8   are merged for the same reasons Delaware would not.  Defendants' payroll records
9   constitute evidence of money owed, not intangible property rights merged in a document.

10        Additionally, Montana has not signaled an intent to extend its conversion law
11  beyond those situations where intangible property rights are merged into a document.  Even
12  if Montana would expand its conversion law to cover the conversion of evidence essential
13  to protect and enforce intangible property rights, Montana law requires the plaintiff to have
14  a possessory interest in the converted chattel at the time of the conversion.  Nothing in
15  Montana law suggests Montana would eliminate this required element of a conversion
16  claim where the plaintiff asserts the defendant altered a document which the plaintiff had no
17  right to possess where that document evidenced a general debt the defendant owed the
18  plaintiff.  Extending conversion to cover this type of claim is particularly unwarranted
19  where, as here, the plaintiff may pursue alternative causes of action to recover the allegedly
20  unpaid wages.

21        In sum, the Court concludes Montana would not recognize a claim for conversion
22  based on unpaid wages.  Additionally, the Court concludes Montana would not recognize a
23  conversion claim where a defendant alters its own electronic payroll records to avoid paying
24  the plaintiff's wages.  Accordingly, the Court will grant Defendants' motion and will
25  dismiss count four of Plaintiff Cole's Complaint.
26  ///

### D.  McFarlin v. Wal-Mart Stores, Inc., et al., 2:06-CV-00228 (Count Two) - Alaska

In Alaska, conversion is the "'intentional exercise of dominion and control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.'"  Carver v. Quality Inspection & Testing, Inc. (I), 946 P.2d 450, 456 (Alaska 1997) (quoting Dressel v. Weeks, 779 P.2d 324, 328 (Alaska 1989)).  "To establish a claim for conversion, the plaintiff must prove (1) that she had a possessory interest in the property; (2) that the defendant interfered with the plaintiff's right to possess the property; (3) that the defendant intended to interfere with plaintiffs possession; and (4) that the defendant's act was the legal cause of the plaintiff's loss of the property."  Silvers v. Silvers, 999 P.2d 786, 793 (Alaska 2000). Alaska has permitted a claim for conversion of money where that money was specifically identifiable as a certain envelope of cash left in a decedent's safe for which the decedent left specific instructions as to who should receive it upon her death.  Dressel, 779 P.2d at 327-28.  Additionally, Alaska recognizes conversion claims where intangible rights are merged into a document, such as a paycheck.  Domke v. Alyeska Pipeline Serv. Co., Inc., 137 P.3d 295, 298 (Alaska 2006) (employee deposited paychecks representing overpayments).

Prior to transmittal to this Court, the United States District Court for the District of Alaska dismissed from Plaintiff McFarlin's original Complaint a claim for conversion, ruling that Alaska does not recognize a claim for conversion for unpaid wages owed. (McFarlin v. Wal-Mart Stores, Inc., 2:06-CV-00228, Doc. #28, Order dated Sept. 12, 2005.) The dismissal was without prejudice and Plaintiff McFarlin has re-pled a claim for conversion in his Amended Complaint.

///

///

Alaska has not addressed whether it would recognize a conversion claim for unpaid wages as pled in Plaintiff McFarlin's Amended Complaint.  The Court concludes Alaska would not recognize a conversion claim in these circumstances because, as the District of Alaska already has ruled, McFarlin cannot assert a conversion claim for unpaid wages under Alaska law.  Domke does not alter this conclusion.  In Domke, an accounting error resulted in the employer issuing five additional paychecks to its employee.  137 P.3d at 297.  The employee deposited four of the paychecks and returned one of them to the employer.  Id.  The employer subsequently terminated the employee due to disputes with another employee.  Id. at 297-98.  When the employee sued regarding his termination, the employer counterclaimed for conversion of the overpayments.  Id. at 298.  The Alaska Supreme Court remanded the matter to the district court to determine a statute of limitations issue, but expressed no reservations about whether a conversion had occurred.  Id. at 301-02.

Domke falls within a traditionally recognized fact pattern for conversion where an individual converts intangible rights merged into a document, in this case, paychecks.  That the checks represented employee compensation does not make it comparable to the allegations in McFarlin's Amended Complaint.  McFarlin does not allege Defendants converted his paychecks.  Rather, he alleges Defendants never paid him for wages he earned.

Alternatively, Plaintiffs argue Defendants converted the electronic payroll records evidencing Plaintiff McFarlin's hours worked.  Alaska has not addressed whether payroll records, or other records evidencing a debt, may be the subject of conversion, and if so, whether it would recognize such a claim where the plaintiff has not alleged a possessory interest in the document evidencing the debt.  The Court concludes Alaska would not expand its conversion law to cover any record which evidences a debt dischargeable through the payment of money generally as opposed to a document in which property rights

14

are merged for the same reasons Delaware would not.  Defendants' payroll records constitute evidence of money owed, not intangible property rights merged in a document.

Additionally, Alaska has not signaled an intent to extend its conversion law beyond those situations where intangible property rights are merged into a document.  Even if Alaska would expand its conversion law to cover the conversion of evidence essential to protect and enforce intangible property rights, Alaska law requires the plaintiff to have a possessory interest in the converted chattel at the time of the conversion.  Nothing in Alaska law suggests Alaska would eliminate this required element of a conversion claim where the plaintiff asserts the defendant altered a document which the plaintiff had no right to possess where that document evidenced a general debt the defendant owed the plaintiff.  Extending conversion to cover this type of claim is particularly unwarranted where, as here, the plaintiff may pursue alternative causes of action to recover the allegedly unpaid wages.  See K & K Recycling, Inc. v. Alaska Gold Co., 80 P.3d 702, 717 (Alaska 2003) (expressing doubt about permitting a conversion claim where the claim sounded in contract because "every contract breach cannot be turned into a tort").

In sum, the Court concludes Alaska would not recognize a claim for conversion based on unpaid wages.  Additionally, the Court concludes Alaska would not recognize a conversion claim where a defendant alters its own electronic payroll records to avoid paying the plaintiff's wages.   Accordingly, the Court will grant Defendants' motion and will dismiss count two of Plaintiff McFarlin's Amended Complaint.

**E.  Poha v. Wal-Mart Stores, Inc., et al., 2:06-CV-00230 (Count Seven) - Hawaii**

In Hawaii, "[a]ny distinct act of dominion wrongfully exerted over one's property in denial of his right, or inconsistent with it, is a conversion." Tsuru v. Bayer, 25 Haw. 693, 1920 WL 830, *2 (Haw. Terr. 1920).  Traditionally, conversion occurs when a defendant "detain[s] goods so as to deprive the person entitled to the possession of his dominion over

them." Id.  However, Hawaii has followed the modern trend and recognizes a claim for conversion where property rights are merged into a document, such as a bill of lading. Matsuda v. Wada, 101 F. Supp. 2d 1315, 1322 (D. Haw. 1999) (holding plaintiff stated conversion claim where he owned boat and consequently had a right to possess bill of lading, but defendant refused to turn over bill of lading until plaintiff paid for other services rendered).

Hawaii has not addressed whether it would recognize a conversion claim for unpaid wages as pled in Plaintiffs' Complaint.  The Court concludes Hawaii would not recognize a conversion claim in these circumstances.  Hawaii generally adopts the common law for civil actions.  See Haw. Rev. Stat. § 1-1.  Hawaii's definition of conversion to date has specified that it applies to "goods," reflecting the common law roots of the conversion cause of action.  Although Hawaii has extended conversion to include intangible rights merged into a document, Hawaii has not indicated an intent to permit a conversion claim based on unpaid wages or any similar general debt.  Absent direction from Hawaii that it would extend conversion to cover a general debt, the Court concludes Hawaii would continue to adhere to the theory that conversion applies to tangible goods or intangible rights merged into a document, such as the bill of lading in Matsuda.  Permitting a conversion claim on a general debt runs the risk of turning ordinary breach of contract claims into torts.  The Court concludes Hawaii would decline to extend its existing law in these circumstances, particularly where Plaintiffs have other theories through which they may pursue the allegedly unpaid wages.

Hough v. Pac. Ins. Co., Ltd. does not compel a different result.  927 P.2d 858 (Haw. 1996).  In Hough, the plaintiff suffered a work-related injury for which he sought worker's compensation benefits.  Id. at 861.  When the insurer terminated his benefits, the employee brought suit alleging the insurer committed several torts, including conversion, and acted in bad faith in processing his claim.  Id. at 863.  The lower court granted the

insurer's motion for summary judgment on the conversion claim, concluding withholding the compensation funds did not amount to conversion.  Id.  Although the lower court concluded the worker's compensation laws did not bar the employee from seeking tort remedies, the lower court later granted another motion for summary judgment in the insurer's favor, finding the worker's compensation laws provided the plaintiff with his exclusive remedy.  Id.

On appeal, the Hawaii Supreme Court stated the lower court granted summary judgment based on the merits of the conversion claim, however, the Hawaii Supreme Court never addressed the merits of the conversion claim in its decision.  Instead, it treated the conversion claim as if the lower court had granted summary judgment on the basis that the worker's compensation laws barred the conversion tort.  The Hawaii Supreme Court thus reversed and remanded the conversion claim for trial on the basis the claim was not barred, but the Hawaii Supreme Court never addressed substantively the lower court's ruling that the employee failed to state a conversion claim for the insurer's withholding of compensation benefits.  Because the Hawaii Supreme Court did not substantively address the conversion claim on the merits, this Court does not conclude the Hawaii Supreme Court implicitly overruled the lower court's ruling.

Alternatively, Plaintiffs argue Defendants converted the electronic payroll records evidencing Plaintiffs' hours worked.  Hawaii has not addressed whether payroll records, or other records evidencing a debt, may be the subject of conversion, and if so, whether it would recognize such a claim where the plaintiff has not alleged a possessory interest in the document evidencing the debt.  The Court concludes Hawaii would not expand its conversion law to cover any record which evidences a debt dischargeable through the payment of money generally as opposed to a document in which property rights are merged for the same reasons Delaware would not.  Defendants' payroll records constitute evidence of money owed, not intangible property rights merged in a document.

Additionally, Hawaii has not signaled an intent to extend its conversion law beyond those situations where intangible property rights are merged into a document. Even if Hawaii would expand its conversion law to cover the conversion of evidence essential to protect and enforce intangible property rights, Hawaii law requires the plaintiff to have a possessory interest in the converted chattel at the time of the conversion. Nothing in Hawaii law suggests Hawaii would eliminate this required element of a conversion claim where the plaintiff asserts the defendant altered a document which the plaintiff had no right to possess where that document evidenced a general debt the defendant owed the plaintiff.

In sum, the Court concludes Hawaii would not recognize a claim for conversion based on unpaid wages. Additionally, the Court concludes Hawaii would not recognize a conversion claim where a defendant alters its own electronic payroll records to avoid paying the plaintiff's wages. Accordingly, the Court will grant Defendants' motion and will dismiss count seven of Plaintiffs' Complaint.

### F.  Woods v. Wal-Mart Stores, Inc., et al., 2:06-CV-00436 (Count Five) - Maine

To establish a conversion claim under Maine law, the plaintiff must have a property interest which the defendant converted, the plaintiff had a right to possession at the time of the alleged conversion, and the plaintiff made a demand for the property's return, which the defendant refused. Leighton v. Fleet Bank of Me., 634 A.2d 453, 457 (Me. 1993). Maine will permit a conversion claim for money where it is "capable of being identified, as when delivered at one time, by one act and in one mass . . . or when the deposit is special and the identical money is to be kept for the party making the deposit, or when wrongful possession of such property is obtained." Hazelton v. Locke, 71 A. 661, 662-63 (Me. 1908) (citations omitted). Maine has noted that money has a "distinctive quality" different from other kinds of property because title to money passes by delivery and because it is fungible, its identity is lost by being changed into other money or its

equivalent.  Hazelton, 71 A. at 663.

Under Maine law, conversion "may extend to certain types of intangibles, for example a right to payment, or a right to withdraw funds, that are 'customarily merged in or identified with some document,'. . . such as a promissory note or bank book."  N.E. Coating Tech., Inc. v. Vacuum Metallurgical Co., Ltd., 684 A.2d 1322, 1324 (Me. 1996) (quoting Restatement (Second) of Torts, § 242).  However, "the unfair use and appropriation of information that is not customarily merged in a particular document is more appropriately addressed by other remedies, including those created for unfair competition or misappropriation of trade secrets."  Id.; see also Innovative Network Solutions, Inc. v. Onestar Commc'ns, LLC, 283 F. Supp. 2d 295, 301 (D. Me. 2003) (suggesting Maine would not permit a duplicative tort remedy for conversion where the plaintiff had a contractual remedy).

Maine has not addressed whether it would recognize a conversion claim for unpaid wages as pled in Plaintiff Woods' Complaint.  The Court concludes Maine would not recognize a conversion claim in these circumstances because Maine law does not recognize conversion for money unless it is identifiable, a deposit is special and the identical money is to be kept for the party making the deposit, or the defendant wrongfully obtained possession of the money.  None of these situations apply here.  Plaintiff's unpaid wages are not specifically identifiable, rather they reflect an alleged general debt Defendants owe Plaintiff.  Plaintiff makes no allegation he specially deposited funds with Defendants.  Further, although Plaintiff alleges Defendants wrongfully failed to pay his wages, there is no allegation Defendants wrongfully obtained the funds to pay Plaintiff's wages.

Although Bisbing v. Maine Med. Ctr. is somewhat analogous to Plaintiff Woods' allegations, the Court concludes Bisbing is distinguishable and does not suggest Maine would recognize a claim for conversion as pled in Plaintiff's Complaint.  In Bisbing, the plaintiff was an employee who alleged his employer deposited "unpaid vacation wages" into his account and the employer subsequently withdrew the funds.  2002 WL 1978903, *3 (Me. Super. 2002)

1 (unpublished).  The federal district court in Maine concluded those allegations stated a claim for

2 conversion.  Id.

3         In Bisbing, the employer paid the employee an identifiable payment for unpaid vacation

4 time and then wrongfully withdrew it.  Because Maine recognizes a conversion claim for money

5 wrongfully obtained, Bisbing is a conventional application of Maine conversion law.   Here,

6 Plaintiff Woods does not allege Defendants paid his wages and then withdrew them from his

7 accounts.  Rather, Plaintiff alleges Defendants never paid his wages.  Although Plaintiff alleges

8 Defendants wrongfully failed to pay his wages, he does not allege Defendants wrongfully obtained

9 the funds to pay his wages.  Plaintiff Woods' allegations would extend Maine's conversion law

10 beyond its present boundaries.  The Court concludes Maine would not recognize a conversion

11 claim as pled in Plaintiff's Complaint, particularly where Maine has cautioned against creating tort

12 remedies where the plaintiff has contractual remedies.

13         Plaintiffs also rely on Warner v. Atkinson Freight Lines Corp., 350 F. Supp. 2d 108 (D.

14 Me. 2004).  In Warner, the employer began withdrawing from employees' salaries a four percent

15 contribution towards an employee stock ownership program.  Id. at 112-13.  The employer placed

16 the funds into an escrow account pending creation of the program.  Id. at 113.  The employer never

17 finalized the program and the employer returned payments to all its current employees.  Id.

18 However, the employer did not return the money to former employees who had contributed to the

19 program but who no longer were employed by the time the employer refunded the money.  Id.  The

20 plaintiffs were former employees who brought suit against the employer alleging, among other

21 things, conversion of the funds.  Id. at 112-13.  The Warner court did not decide the merits of the

22 conversion claim, instead it found the Employee Retirement and Income Security Act did not

23 preempt the claim.  Id. at 124-25.  Nevertheless, the Warner case falls within a traditionally

24 recognized fact pattern for a conversion claim where the plaintiff entrusts segregated funds with the

25 defendant for a specified purpose.  Consequently, Warner does not stand for the general proposition

26 that an employer is liable for conversion where the employer fails to pay an employee's wages.

Alternatively, Plaintiffs argue Defendants converted the electronic payroll records evidencing Plaintiff Woods' hours worked.  Maine has not addressed whether payroll records, or other records evidencing a debt, may be the subject of conversion, and if so, whether it would recognize such a claim where the plaintiff has not alleged a possessory interest in the document evidencing the debt.  The Court concludes Maine would not expand its conversion law to cover any record which evidences a debt dischargeable through the payment of money generally as opposed to a document in which property rights are merged for the same reasons Delaware would not. Defendants' payroll records constitute evidence of money owed, not intangible property rights merged in a document.

Additionally, Maine has not signaled an intent to extend its conversion law beyond those situations where intangible property rights are merged into a document.  Even if Maine would expand its conversion law to cover the conversion of evidence essential to protect and enforce intangible property rights, Maine law requires the plaintiff to have a possessory interest in the converted chattel at the time of the conversion.  Nothing in Maine law suggests Maine would eliminate this required element of a conversion claim where the plaintiff asserts the defendant altered a document which the plaintiff had no right to possess where that document evidenced a general debt the defendant owed the plaintiff.  Extending conversion to cover this type of claim is particularly unwarranted where, as here, the plaintiff may pursue alternative causes of action to recover the allegedly unpaid wages.  Maine has expressed skepticism towards extending the tort of conversion to cover claims for which the plaintiff has contractual remedies.

In sum, the Court concludes Maine would not recognize a claim for conversion based on unpaid wages.  Additionally, the Court concludes Maine would not recognize a conversion claim where a defendant alters its own electronic payroll records to avoid paying the plaintiff's wages. Accordingly, the Court will grant Defendants' motion and will dismiss count five of Plaintiff Woods' Amended Complaint.

///

**G.  Curless v. Wal-Mart Stores, Inc., et al., 2:06-CV-00440 (Count Three) - Wyoming**

To establish a conversion claim under Wyoming law, a plaintiff must show:

(1) he had legal title to the converted property; (2) he either had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff his rights to use and enjoy the property; (4) in those cases where the defendant lawfully, or at least without fault, obtained possession of the property, the plaintiff made some demand for the property's return which the defendant refused; and (5) the plaintiff has suffered damage by the loss of the property.

Ferguson v. Coronado Oil Co., 884 P.2d 971, 975 (Wyo. 1994) (quotation omitted).  "Only personal property (chattel) can be converted."  Id.  Wyoming recognizes a conversion claim for money so long as it is identifiable and the defendant has an obligation to deliver the money in a specific manner.  Id. at 978 (holding oil and gas royalty capable of being converted when it accrues and then defendant wrongfully retains it); O'Donnell v. W. Nat'l Bank of Casper, 705 P.2d 1242, 1243, 1245 (Wyo. 1985) (holding statute of limitations barred conversion claim against bank for diverting funds from a loan into two other accounts to pay pre-existing debts of the bank customer's company).

Wyoming has not addressed whether it would recognize a conversion claim for unpaid wages as pled in Plaintiff Curless' Complaint.  The Court concludes Wyoming would not recognize a conversion claim in these circumstances.  The parties agree the closest analogy in Wyoming law is Ferguson, in which the plaintiff had a net profits interest in oil produced through certain waterflood operations in the Osage oil field.  Ferguson, 884 P.2d at 974.  Through certain accounting schemes, the defendant made it appear as if the oil field operations produced no net profits when in fact it had.  Id.  The plaintiff discovered the defendant's scheme and sued for, among other things, conversion of the plaintiff's net profits interest.  Id. at 974-75.  The defendant argued a net profits interest was a contractual obligation, not personal property subject to conversion.  Id. at 975.

22

The Wyoming Supreme Court explained that to be subject to conversion, the interest at issue must be a personal property interest.  Id.  The Court then examined whether a net profits interest was contractual in nature or whether it was akin to personal property.  Id. at 975-76.  The Court found a net profits interest in oil is similar to a non-participating royalty interest, which is a right to oil and gas only after it is removed from the ground.  Id. at 977.  Under Wyoming law, when oil and gas are removed from the ground, they become personal property.  Id.  Therefore, the Court ruled that similar to a royalty interest, a net profits interest once accrued is personal property subject to conversion.  Id.  The Court then found that although the property interest at issue was money, it was subject to conversion because it was specifically identifiable and the manner of payment was specified in the relevant agreement between the parties.  Id. at 978.

Under Ferguson, the Court first must determine whether Plaintiff claims a personal property interest because only personal property is subject to conversion in Wyoming.  The Court concludes Plaintiff has not identified personal property subject to conversion.  Unlike a net profits or royalty interest, which in effect are monetarily representative of the individual's personal property right in oil or gas extracted from the ground, Plaintiff seeks unpaid wages, which is a monetary obligation due for services rendered.  The unpaid wages are not chattel but a debt allegedly owed or contractual obligation allegedly unfulfilled.  Accordingly, the unpaid wages are not personal property under Wyoming law, and therefore are not subject to conversion.

Alternatively, Plaintiffs argue Defendants converted the electronic payroll records evidencing Plaintiff Curless' hours worked.  Wyoming has not addressed whether payroll records, or other records evidencing a debt, may be the subject of conversion, and if so, whether it would recognize such a claim where the plaintiff has not alleged a possessory interest in the document evidencing the debt.  The Court concludes Wyoming would not expand its conversion law to cover any record which evidences a debt dischargeable through the payment of money generally as opposed to a document in which property rights are merged for the same reasons Delaware would not.  Defendants' payroll records constitute evidence of money owed, not intangible property rights

23

merged in a document.

Additionally, Wyoming has not signaled an intent to extend its conversion law beyond those situations where intangible property rights are merged into a document.  Even if Wyoming would expand its conversion law to cover the conversion of evidence essential to protect and enforce intangible property rights, Wyoming law requires the plaintiff to have a possessory interest in the converted chattel at the time of the conversion.  Nothing in Wyoming law suggests Wyoming would eliminate this required element of a conversion claim where the plaintiff asserts the defendant altered a document which the plaintiff had no right to possess where that document evidenced a general debt the defendant owed the plaintiff.  Extending conversion to cover this type of claim is particularly unwarranted where, as here, the plaintiff may pursue alternative causes of action to recover the allegedly unpaid wages.

In sum, the Court concludes Wyoming would not recognize a claim for conversion based on unpaid wages.  Additionally, the Court concludes Wyoming would not recognize a conversion claim where a defendant alters its own electronic payroll records to avoid paying the plaintiff's wages.  Accordingly, the Court will grant Defendants' motion and will dismiss count three of Plaintiff Curless' Complaint.

**H.  Stafford v. Wal-Mart Stores, Inc., et al., 2:06-CV-00438 (Count Three) - Nebraska**

Conversion under Nebraska law is "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein."  Allen v. Dealer Assistance, Inc., 299 N.W.2d 744, 747 (Neb. 1980).  At the time of the alleged conversion, the plaintiff must be entitled to immediately possess identified property.  Id.; Elander v. Kellogg Grain Co., 119 N.W.2d 522, 526 (Neb. 1963).  Identifying property with reasonable accuracy becomes more difficult when dealing with commingled fungible property, such as identifying the plaintiff's share of grain in a commingled quantity which includes grain belonging to another individual.  Otto Farms, Inc. v. First Nat'l Bank of York, 422 N.W.2d 331, 334 (Neb. 1988).

In Nebraska, money, bank bills, notes, and bonds may be the subject of conversion. State v. Omaha Nat'l Bank, 81 N.W. 319, 321-22 (Neb. 1899).  Although Nebraska recognizes money is different than other chattel, as it is intended to pass quickly from hand to hand and possession represents right and title thereto, where money is earmarked or specially designated it is subject to conversion.  Id.  For example, where a decedent and her niece were named on joint accounts with a right of survivorship, the defendant banks converted the funds therein when they refused to give the funds to the surviving niece and instead transferred the funds to the administrator of the decedent's estate.  Zimmerman v. FirsTier Bank, N.A., 585 N.W.2d 445, 452 (Neb. 1998).  Additionally, where a defendant allegedly obtains funds wrongfully, a conversion action will lie.  Ochs v. Makousky, 547 N.W.2d 136, 139 (Neb. 1996) (holding it was a question of fact for jury whether defendant removed without permission $50,000 from joint account of elderly woman for whom he provided care-taking services).

Nebraska has not addressed whether it would recognize a conversion claim for unpaid wages as pled in Plaintiff Stafford's Amended Complaint.  The Court concludes Nebraska would not recognize a conversion claim in these circumstances because Plaintiff seeks unpaid wages which consist of commingled fungible monetary funds in Defendants' possession.  Plaintiff cannot identify any specific personal property with reasonable accuracy.  Plaintiff does not allege the unpaid wages are held by Defendants in some earmarked or specially designated fashion, or that Defendant wrongfully received the funds from Plaintiff.  Instead, Plaintiff alleges Defendants owe her money on an obligation.  These allegations do not fall within any factual pattern Nebraska recognizes as a conversion.

None of the cases upon which Plaintiffs rely alters the Court's conclusion.  In Roth v. Farmers Mut. Ins. Co. of Nebraska, the plaintiff owned an insurance policy which covered theft of his swine but which did not cover wrongful conversion.  371 N.W.2d 289, 290 (Neb. 1985).  The plaintiff entered into a business deal with another individual who sold the swine but failed to pay the plaintiff his share.  Id.  The plaintiff filed a claim with his insurance company for the theft of his

swine.  Id.  The insurer refused to pay, contending the swine were converted, not stolen.  Id.  The Nebraska Supreme Court held the person who sold the hogs lawfully possessed them under the parties' agreement, but converted the proceeds from the sale.  Id. at 291.  The Court thus held the policy exclusion for conversion applied.  Id. at 292.  Roth involved the conversion of proceeds from the sale of chattel, not the failure to pay a general debt for services performed.

In Terra Western Corp. v. Berry and Co., the plaintiff held a security interest in a corn crop which was destroyed by hail.  295 N.W.2d 693, 695-96 (Neb. 1980).  The insurer paid the insured on the claim for the destroyed crop instead of paying the plaintiff on its security interest in the crop.  Id. at 696.  The plaintiff brought a claim against the insurer for conversion of the insurance proceeds.  Id.  The Nebraska Supreme Court held that under the relevant law, the proceeds did not become subject to the security interest until the insured received the proceeds.  Id. at 697-98.  Consequently, the Court held the plaintiff did not state a cause of action for conversion because the plaintiff did not allege facts which gave it a property interest in the funds before the insured received the proceeds.  Id. at 698.  Terra involved the alleged conversion of a specific, identifiable insurance payment in which the plaintiff alleged a security interest.  Terra is not analogous to the allegations in Plaintiff Stafford's Complaint regarding the failure to pay wages.

Alternatively, Plaintiffs argue Defendants converted the electronic payroll records evidencing Plaintiff Stafford's hours worked.  Nebraska has not addressed whether payroll records, or other records evidencing a debt, may be the subject of conversion, and if so, whether it would recognize such a claim where the plaintiff has not alleged a possessory interest in the document evidencing the debt.  The Court concludes Nebraska would not expand its conversion law to cover any record which evidences a debt dischargeable through the payment of money generally as opposed to a document in which property rights are merged for the same reasons Delaware would not.  Defendants' payroll records constitute evidence of money owed, not intangible property rights merged in a document.

///

26

Additionally, Nebraska has not signaled an intent to extend its conversion law beyond those situations where intangible property rights are merged into a document.  Plaintiffs contend Mundy v. Decker establishes a person can convert electronic records.  1999 WL 14479, *4 (Neb. Ct. App. 1999) (unpublished).  In Mundy, a secretary deleted from her employer's computer system documents she had saved on her work computer, including both her personal documents and the company's documents.  Id. at *1.  The evidence established the computer and its contents were the employer's property.  Id. at *4.  The Court suggested that had the employee deleted only her private correspondence stored on her employer's computer, no conversion would have occurred.  Id.  But because the employee deleted the entire directory of word processing documents, including both personal and business documents, she converted the business documents unless the employer authorized her to destroy them.  Id.

Mundy is an application of existing conversion law.  Mundy involved the deletion of documents, albeit in electronic form.  The Nebraska Court of Appeals likened the destruction of electronic documents to throwing out physical letters.  Id. at *4.  Although the Nebraska Court of Appeals extended conversion to electronic documents, it did not eliminate as a required element of a conversion claim that the plaintiff have a possessory interest in the converted property.  The Mundy Court specifically distinguished between documents belonging to the employer versus personal documents, and specifically referred to the computer directory as "owned and controlled by [the employer]."  Id. at *4, *6.  Nebraska thus has not signaled an intent to extend conversion to a defendant altering a document which the plaintiff had no right to possess where that document evidenced a general debt the defendant owed the plaintiff.  The Court concludes Nebraska would not eliminate the element of a possessory interest from a conversion claim, as Mundy illustrates.  Further, Nebraska has indicated an unwillingness to extend conversion to factual scenarios that involve "rights" as opposed to personal property.  See Fun World, Inc. v. Big Red Keno, Ltd., 1999 WL 79391, *5 (Neb. Ct. App. 1999) (rejecting conversion claim based on allegations a competitor began to sell "pickle cards" under a lease agreement in derogation of the plaintiff's exclusive right

to sell "pickle cards" in the same location).    Extending conversion to cover Plaintiff's claim is particularly unwarranted where, as here, the plaintiff may pursue alternative causes of action to recover the allegedly unpaid wages.

In sum, the Court concludes Nebraska would not recognize a claim for conversion based on unpaid wages.  Additionally, the Court concludes Nebraska would not recognize a conversion claim where a defendant alters its own electronic payroll records to avoid paying the plaintiff's wages.  Accordingly, the Court will grant Defendants' motion and will dismiss count three of Plaintiff Stafford's Amended Complaint.

### I. **Hall v. Wal-Mart Stores, Inc., et al., 2:06-CV-101099 (Count Two) - Nevada**

Although Defendants assert generally that none of the ten relevant jurisdictions, including Nevada, would recognize a conversion claim as pled in Plaintiff Hall's Complaint, Defendants cite no law from Nevada nor do they make any specific argument regarding whether Nevada would recognize a conversion claim under the facts Plaintiff Hall alleges.  Pursuant to Local Rule 7-2(d), "[t]he failure of a moving party to file points and authorities in support of the motion shall constitute a consent to the denial of the motion."  Defendants did not support their motion with points and authorities with respect to Nevada despite the fact that Defendants' motion requires an examination of each state's law.  Defendants therefore have consented to the denial of their motion with respect to Nevada.  Accordingly, the Court will deny Defendants' motion to dismiss count two of Plaintiff Hall's Amended Complaint.

### J. **Jackson (Reginald) v. Wal-Mart Stores, Inc., et al., 2:06-CV-00231 (Count Five) - Idaho**

Although Defendants assert generally that none of the ten relevant jurisdictions, including Idaho, would recognize a conversion claim as pled in Plaintiff Jackson's Complaint, Defendants cite no law from Idaho nor do they make any specific argument regarding whether Idaho would recognize a conversion claim under the facts Plaintiff Jackson alleges.  Pursuant to Local Rule 7-2(d), "[t]he failure of a moving party to file points and authorities in support of the

motion shall constitute a consent to the denial of the motion."  Defendants did not support their motion with points and authorities with respect to Idaho despite the fact that Defendants' motion requires an examination of each state's law.  Defendants therefore have consented to the denial of their motion with respect to Idaho.  Accordingly, the Court will deny Defendants' motion to dismiss count five of Plaintiff Jackson's Complaint.

## IV.       UNJUST ENRICHMENT

Defendants argue Plaintiffs fail to state a claim for unjust enrichment because Plaintiffs have an adequate remedy at law.  Plaintiffs respond their unjust enrichment claims seek to remedy the injustice of Defendants reducing their payroll expenses and increasing profits by obtaining unpaid labor from their employees and, in the interest of justice, Defendants should have to disgorge their ill-gotten profits.  Plaintiffs argue merely requiring Defendants to pay low-hourly-pay employees their wages plus interest does not address Defendants' conscious wrongdoing in intentionally manipulating the payroll records to both cheat its employees and to gain unfair competitive advantage in the marketplace by artificially lowering payroll expenses.  Plaintiffs argue disgorgement of profits is required to deter such conscious wrongdoing.  Plaintiffs therefore argue they do not have an adequate remedy at law.[4]

### A.  Jackson (Dora) v. Wal-Mart Stores, Inc., et al., 2:06-CV-00229 (Count Four) - Delaware

Under Delaware law, unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."  Total Care Physicians, P.A. v. O'Hara, 798 A.2d 1043, 1056 (Del. Super. Ct. 2001) (quotation omitted).  To establish unjust enrichment, the plaintiff must show: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."

---

[4]  The plaintiff in John Luce v. Wal-Mart Stores, Inc., 2:06-CV-00232-PMP-PAL does not assert a claim for unjust enrichment.

<u>Id.</u> (quotation omitted).  A remedy at law is adequate if it "(1) is as complete, practical and as efficient to the ends of justice and its prompt administration as the remedy in equity, and (2) is obtainable as of right."  <u>In re Wife, K.</u>, 297 A.2d 424, 426 (Del. Ch. 1972).

The equitable theories of unjust enrichment and quantum meruit are available only in the absence of a formal contract.  <u>Nepa v. Marta</u>, 415 A.2d 470, 472 (Del. 1980); <u>Wood v. Coastal States Gas Corp.</u>, 401 A.2d 932, 942 (Del. 1979).  Restitution is a remedy for unjust enrichment. <u>Jacobson v. Dryson Acceptance Corp.</u>, 2002 WL 31521109, *14 (Del. Ch. 2002) (unpublished). Delaware further has expressed that it is not beyond the state's traditional law that "a party that recklessly disregarded the property rights of another should be required to disgorge all profits it wrongly obtained . . . ."  <u>Saudi Basic Indus. Corp. v. Mobil Yanbu Petrochemical Co., Inc.</u>, 866 A.2d 1, 40 n.96 (Del. Supr. Ct. 2005).

Plaintiff's Complaint does not allege the existence of an express contract, and therefore the Court will not dismiss her unjust enrichment/quantum meruit claim on the basis that the parties' relationship is controlled by an express contract.  Even if Plaintiff had alleged an express contract, Plaintiff may plead alternative, inconsistent theories.  Pursuant to Federal Rule of Civil Procedure 8(e)(2),

> A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses.  When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements.  A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds.

The liberal policy reflected in Rule 8(e)(2) instructs courts not to construe a pleading "'as an admission against another alternative or inconsistent pleading in the same case.'"  <u>McCalden v. Cal. Library Ass'n</u>, 955 F.2d 1214, 1219 (9th Cir. 1990) (quoting <u>Molsbergen v. United States</u>, 757 F.2d 1016, 1019 (9th Cir. 1985)).  Thus, although a plaintiff may not recover on both theories, "a plaintiff may claim . . . remedies as alternatives, leaving the ultimate election for the court."  <u>E.H.</u>

Boly & Son, Inc. v. Schneider, 525 F.2d 20, 23 n.3 (9th Cir. 1975); see also Hubbard Bus. Plaza v. Lincoln Liberty Life Ins. Co., 596 F. Supp. 344, 347 (D. Nev. 1984) (stating a "claimant is entitled to introduce his evidence in support of all his claims for relief; if he doesn't make an election among them, the trier of fact decides which, if any, to sustain."). Accordingly, the Court will not dismiss Plaintiff's unjust enrichment claim, as Plaintiff may plead it in the alternative to contractual allegations.

As to whether Plaintiff has an adequate remedy at law, Plaintiff asserts claims for statutory wage and hour violations. Thus, from the face of Plaintiff's Complaint it is evident she has a remedy at law. However, Plaintiff contends her remedies at law are not adequate. Plaintiff sues under two Delaware statutory provisions regarding the payment of wages: minimum wage and payment of wages on a regular payday. Del. Code Ann. tit. 19, § 902, § 1102. Delaware's minimum wage statute provides only for the payment of the wage plus costs of suit and attorney's fees. Del. Code Ann. tit. 19, § 911. However, the statute governing payment of wages on regular paydays provides for recovering both the unpaid wages and liquidated damages. Del. Code Ann. tit. 19, § 1113. The liquidated penalty provision is not specific as to whether it applies to all employers or only those employers who intentionally, wrongfully fail to pay wages on regular paydays.

Delaware has not addressed a situation similar to the allegations in Plaintiff's Complaint, and thus has not expressed whether a generally applicable liquidated damages penalty would constitute an adequate legal remedy given Plaintiff's allegations of conscious wrongdoing. However, the liquidated damages penalty applies regardless of an employer's intent and thus may not provide a full remedy to address Defendants' allegedly intentional misconduct. Further, Delaware has expressed favor towards permitting the disgorgement remedy for breaches of fiduciary duty, wrongful conduct, and for reckless disregard for another's property rights. Consequently, the statutory provisions may not provide as complete a remedy as unjust enrichment. Because Plaintiffs have alleged intentional wrongdoing on Defendants' part and the Court must

31

accept those allegations as true in reviewing a motion to dismiss, the Court will not dismiss

Plaintiff's unjust enrichment claim at this stage of the proceedings.  The Court therefore will deny

Defendants' motion to dismiss count four of Plaintiff Jackson's Complaint.

### B.  __Williams v. Wal-Mart Stores, Inc., et al.__, 2:06-CV-00439 (Count Seven) - Utah

Under Utah law, quantum meruit is a theory of recovery for payment for labor the

plaintiff performed which the plaintiff, for some reason, cannot recover based on an express

contract.  Davies v. Olson, 746 P.2d 264, 268 (Utah Ct. App. 1987).  Utah has described quantum

meruit as having two distinct branches, both of which "are rooted in justice . . . to prevent the

defendant's enrichment at the plaintiff's expense."  Id. at 269 (quotation omitted).  The first branch

consists of contracts implied in law, also known as quasi-contract or unjust enrichment.  Id.  "A

quasi-contract is not a contract at all, but rather is a legal action in restitution."  Id.  To establish

unjust enrichment, the plaintiff must establish: "(1) the defendant received a benefit; (2) an

appreciation or knowledge by the defendant of the benefit; (3) under circumstances that would

make it unjust for the defendant to retain the benefit without paying for it."  Id.  The second branch

of quantum meruit is a contract implied in fact which is a contract established by the parties'

conduct.  Id.  To establish a contract implied in fact, the plaintiff must establish: "(1) the defendant

requested the plaintiff to perform work; (2) the plaintiff expected the defendant to compensate him

or her for those services; and (3) the defendant knew or should have known that the plaintiff

expected compensation."  Id.  Both branches of quantum meruit "presuppose[] that no enforceable

written or oral contract exists."  Id.

Count nine of Plaintiff Williams' Complaint specifically pleads an employment contract

existed between Defendants and each class member.[5]  (2:06-CV-00439, Compl. [Doc. #1] at ¶ 95.)

---

[5]  Plaintiff's Complaint does not assert a count for breach of contract, but does assert a count
for breach of the covenant of good faith and fair dealing.  Plaintiff's Complaint sets forth a heading for
count eight, but contains no text beneath the heading.  Count nine is the breach of the covenant of good
faith and fair dealing claim.

Because Plaintiff specifically alleges an employment contract, Plaintiff cannot also maintain a claim for unjust enrichment/quantum meruit under Utah law because the contract would be the sole legal remedy. However, as discussed above, Plaintiff may plead the contractual and equitable claims in the alternative under Rule 8(e)(2). Accordingly, the Court will not dismiss Plaintiff's unjust enrichment claim, as Plaintiff is entitled to plead it in the alternative to the contractual allegations.

With respect to whether Plaintiff has an adequate remedy at law that would preclude recovery on an equitable unjust enrichment theory, Plaintiff pursues remedies under Utah wage laws that permit a private cause of action upon separation and demand for wages. Utah Code Ann. § 34-28-5. The provision provides a penalty permitting the employee's wages to continue to accrue for up to sixty days after separation, however an employee must make written demand for payment. Id. The penalty does not depend on whether the employer's violations were willful or intentional.

Utah has not addressed a situation similar to the allegations in Plaintiff's Complaint, and thus has not expressed whether a generally applicable sixty-day penalty would constitute an adequate legal remedy given Plaintiff's allegations of conscious wrongdoing. However, the liquidated damages penalty applies regardless of an employer's intent and thus may not provide a full remedy to address Defendants' allegedly intentional misconduct. Further, Utah has indicated its quantum meruit law is intended to do justice. Consequently, the statutory provisions may not provide as complete a remedy as unjust enrichment. Because Plaintiffs have alleged intentional wrongdoing on Defendants' part and the Court must accept those allegations as true in reviewing a motion to dismiss, the Court will not dismiss Plaintiff's unjust enrichment claim at this stage of the proceedings. The Court therefore will deny Defendants' motion to dismiss count seven of Plaintiff Williams' Complaint.

### C. Cole v. Wal-Mart Stores, Inc., et al., 2:06-CV-00437 (Count Five) - Montana

Under Montana law, unjust enrichment is an equitable doctrine requiring the plaintiff to establish misconduct or fault on the defendant's part, or the defendant took advantage of the

plaintiff in some manner.  Schweigert v. Fowler, 784 P.2d 405, 411 (Mont. 1990).  To establish unjust enrichment, the plaintiff must show the defendant received a benefit and retention of the benefit would be unjust.  Lawrence v. Clepper, 865 P.2d 1150, 1156 (Mont. 1993).  Both restitution and quantum meruit are remedies or measures of damages for an unjust enrichment cause of action.  Storms v. Bergsieker, 835 P.2d 738, 740-41 (Mont. 1992); see also Buday v. Phillips, 2000 WL 366509, *2 (Mont. 2000) (unpublished).

Where a plaintiff has a plain, speedy, and adequate remedy at law, he cannot bring a claim in equity.  Bullard v. Zimmerman, 268 P. 512, 517 (Mont. 1928).  A legal remedy is adequate and complete if it is "as complete and efficacious as that given by equity." Id. at 518 (quotation omitted).  It is a question for the court whether the legal remedy is adequate "and where there is a doubt as to its adequacy such doubt should be resolved in favor of the equitable jurisdiction." Id. (quotation omitted).

Plaintiff's Complaint asserts claims under statutory provisions for payment of wages and failure to pay wages upon separation.  Mont. Code Ann. § 39-3-204, § 39-3-205. For both provisions, an employee may sue to recover the unpaid wages plus reasonable costs and attorney's fees, along with a penalty fee of up to 110% of the unpaid wages.  Mont. Code Ann. § 39-3-206, § 39-3-207, § 39-3-214.  The penalty provision does not depend on the employer's intent.

Montana has not addressed a situation similar to the allegations in Plaintiff's Complaint, and thus has not expressed whether the statutory provisions which contain a 110% penalty provision would constitute an adequate legal remedy given Plaintiff's allegations of conscious wrongdoing.  However, the liquidated damages penalty applies regardless of an employer's intent and thus may not provide a full remedy to address Defendants' allegedly intentional misconduct.  Further, Montana has stated the legal remedy must be as complete as the equitable remedy.  Consequently, the statutory penalty may not afford as complete a remedy as unjust enrichment.  Because Plaintiffs have alleged intentional wrongdoing on Defendants' part and the Court must accept those allegations as true in reviewing a motion to dismiss, the Court will not dismiss

1   Plaintiff's unjust enrichment claim at this stage of the proceedings.  The Court therefore will deny

2   Defendants' motion to dismiss count five of Plaintiff Cole's Complaint.

3         **D.  McFarlin v. Wal-Mart Stores, Inc., et al., 2:06-CV-00228 (Count Three) - Alaska**

4

5         Under Alaska law, unjust enrichment is not in and of itself a theory of recovery but is a

6   prerequisite to recover restitution, which is a remedy for other causes of action, such as a claim on a

7   quasi-contract theory.  Alaska Sales & Serv., Inc. v. Millet, 735 P.2d 743, 746 (Alaska 1987).

8   Alaska recognizes "quasi-contract" theories as "judicially-created obligations to do justice."

9   Reeves v. Alyeska Pipeline Serv. Co., 926 P.2d 1130, 1143 (Alaska 1996) (quotation omitted).

10  The elements of quasi-contract are: "1) a benefit conferred upon the defendant by the plaintiff; 2)

11  appreciation by the defendant of such benefit; and 3) acceptance and retention by the defendant of

12  such benefit under such circumstances that it would be inequitable for him to retain it without

13  paying the value thereof."  Alaska Sales & Serv., Inc., 735 P.2d at 746.  Alaska treats unjust

14  enrichment and quantum meruit claims as essentially the same.  Bennett v. Artus, 20 P.3d 560, 563

15  (Alaska 2001).

16        Unjust enrichment is an equitable doctrine.  State, Dep't of Revenue, Child Support

17  Enforcement Div. v. Wetherelt, 931 P.2d 383, 390 n.11 (Alaska 1997).  To assert an equity claim,

18  the plaintiff must show either there is no remedy at law or no legal remedy is adequate.  Knaebel v.

19  Heiner, 663 P.2d 551, 553 (Alaska 1983).  Alaska has not precisely defined what makes a legal

20  remedy "adequate," but it has suggested certain situations where damages would be inadequate.  Id.

21  For example, damages may be inadequate when the plaintiff has been deprived of a unique and

22  irreplaceable item, when a legal remedy would require the plaintiff to bring more than one lawsuit,

23  when the defendant is insolvent, or when the amount of damages is highly speculative.  Id.

24  However, these are not the only situations in which a legal remedy might be inadequate.  Id. at 553

25  n.1.

26  ///

Plaintiff's Amended Complaint asserts claims for wage and hour statutory violations as well as breach of contract.  Thus, Plaintiff's Complaint establishes Plaintiff has a legal remedy.  Plaintiff's statutory claim is based on Alaska wage and hour statutes, which specifically provide a cause of action for an aggrieved employee who may recover both the unpaid wages and an equal amount as liquidated damages, plus costs and attorney's fees.  Alaska Stat. § 23.10.110.  As for breach of contract, Alaska does not permit punitive damages for breach of contract unless the conduct constituting the breach is also a tort for which the plaintiff may recover punitive damages.  Reust v. Alaska Petroleum Contractors, Inc., 127 P.3d 807, 821 (Alaska 2005).

Alaska has not addressed a situation similar to the allegations in Plaintiff's Complaint, and thus has not expressed whether the statutory provisions which contain a liquidated damages provision in the amount of the unpaid wages would constitute an adequate legal remedy given Plaintiff's allegations of conscious wrongdoing.  However, the liquidated damages penalty applies regardless of an employer's intent and thus may not provide a full remedy to address Defendants' allegedly intentional misconduct.  Further, Alaska has indicated its quasi-contract theories are aimed at "doing justice."  Consequently, the statutory provisions' failure to address conscious wrongdoing may not provide as complete a remedy as unjust enrichment.  Because Plaintiffs have alleged intentional wrongdoing on Defendants' part and the Court must accept those allegations as true in reviewing a motion to dismiss, the Court will not dismiss Plaintiff's unjust enrichment claim at this stage of the proceedings.  The Court therefore will deny Defendants' motion to dismiss count three of Plaintiff McFarlin's Complaint.

### E.  Poha v. Wal-Mart Stores, Inc., et al., 2:06-CV-00230 (Count Eight) - Hawaii

Under Hawaii law, unjust enrichment consists of the defendant receiving a benefit, the retention of which would be unjust.  Durette v. Aloha Plastic Recycling, Inc., 100 P.3d 60, 72-73 (Haw. 2004).  The remedy for unjust enrichment is restitution.  Id.  In determining whether restitution is appropriate, Hawaii courts look to restitution's underlying policy of preventing injustice.  Id.  Along these lines, Hawaii has indicated the law should deal severely with a

conscious wrongdoer, "and he may not make a profit and is responsible for all losses arising out of his act," even if disgorgement of profits puts the plaintiff in a better position than if the defendant had not wronged the plaintiff. Peine v. Murphy, 377 P.2d 708, 714 (Haw. 1962).  Hawaii recognizes the general rule that a court of equity will not exercise jurisdiction when the party has an adequate remedy at law. Thayer v. Lidgate, 14 Haw. 544, 1902 WL 1437, *3 (Haw. Terr. 1902).

Plaintiffs allege statutory violations under Hawaii's wage and hour statutes which provide a civil remedy to employees to recover the amount of unpaid wages, "and in the case of wilful violation in an additional equal amount as liquidated damages."  Haw. Rev. Stat. Ann. § 387-12.  Hawaii has not addressed a situation similar to the allegations in Plaintiff's Complaint, and thus has not expressed whether the statutory provisions which contain a liquidated damages provision for wilful violations would constitute an adequate legal remedy given Plaintiff's allegations of conscious wrongdoing.  However, under Hawaii law, "[a] statutory remedy is, as a rule, merely cumulative and does not abolish an existing common law remedy unless so declared in express terms or by necessary implication." Watson v. Brown, 686 P.2d 12, 15 (Haw. 1984).  The statute does not expressly indicate it is intended to replace common law rights or remedies.  The statutory scheme also does not abolish common law remedies through necessary implication.  The legislative history does not show an intent to preclude common law remedies.  The liquidated damages penalty was added to make an employer liable to pay liquidated damages "only if such failure shall be wilful."  Haw. Sen. J., Act 15, SB 39 at 251 (23rd Leg. of Terr. of Haw. 1945); see also Haw. Sen. J., Act 66, SB 30 at 150 (20th Leg. of Terr. of Haw. 1941).  Thus, the provision providing a penalty for wilful violations was intended to ensure negligent employers were not penalized and to treat more harshly wilful violators.  Hawaii expressed no intent to limit employees' remedies to the statutory penalties.

Further, Hawaii case law contains strong language about deterring intentional wrongdoers and permitting disgorgement as a remedy as part of Hawaii's overall unjust enrichment policy of doing justice.  Accordingly, if paying an equal amount of the unpaid wages in liquidated

damages would not sufficiently deter or do justice in a particular case, it is arguable Hawaii would permit an unjust enrichment claim even though the plaintiff has a legal remedy.  Because Plaintiffs have alleged intentional wrongdoing on Defendants' part, the Court will not dismiss Plaintiff's unjust enrichment claim, at least at this stage of the proceedings, without further inquiry into whether, based on the facts at issue, the wage and hour statute provides a complete, adequate remedy at law to deter Defendants from conscious wrongdoing.  The Court therefore will deny Defendants' motion to dismiss count eight of Plaintiff Poha's Complaint.

### F.  <u>Woods v. Wal-Mart Stores, Inc., et al.</u>, 2:06-CV-00436 (Count Six) - Maine

Maine law makes a specific distinction between quantum meruit and unjust enrichment. Quantum meruit involves recovery for services or materials provided under an implied contract. <u>Paffhausen v. Balano</u>, 708 A.2d 269, 271 (Me. 1998).  To establish quantum meruit, the plaintiff must establish that: (1) the plaintiff rendered services to the defendant; (2) with the defendant's knowledge and consent; and (3) under circumstances that make it reasonable for the plaintiff to expect payment.  <u>Id.</u>

Unjust enrichment involves recovery "for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay, and the damages analysis is based on principles of equity, not contract."  <u>Id.</u> (quotation omitted).  "Unjust enrichment applies only in the absence of any quasi-contractual relationship."  <u>Danforth v. Ruotolo</u>, 650 A.2d 1334, 1335 n.2 (Me. 1994).  To establish a claim for unjust enrichment, the plaintiff must show: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated or knew of the benefit; and (3) the defendant accepted or retained the benefit in circumstances that make it inequitable for the defendant to retain the benefit without paying for the value of the benefit conferred.  <u>Id.</u>  Under Maine law, unjust enrichment is equitable in nature, but quantum meruit is an action at law.  <u>Cummings v. Bean</u>, 853 A.2d 221, 224 (Me. 2004).

///

38

Plaintiff has asserted both unjust enrichment and quantum meruit.  Defendants'
argument that Plaintiff Woods' quantum meruit claim must be dismissed because an adequate
remedy at law exists does not apply because under Maine law this is a legal, not equitable, cause of
action.  Under Maine law, unjust enrichment and quantum meruit are mutually exclusive because
quantum meruit involves an implied contractual relationship and unjust enrichment applies only in
the absence of a contractual relationship.  Thus, Maine would not allow Plaintiff to pursue both of
these claims.  However, as discussed above, Plaintiff may plead and maintain alternative causes of
action.

With respect to whether Plaintiff has an adequate remedy at law, Plaintiff brings suit
under various Maine wage and hour statutes which provide as a remedy recovery of the unpaid
wages plus an equal, or twice an equal, amount in liquidated damages, as well as costs of suit.  Me
Rev. Stat. Ann. § 670, § 626-A.  Maine has not addressed a situation similar to the allegations in
Plaintiff's Complaint, and thus has not expressed whether the statutory provisions which contain a
liquidated damages provision in the amount of twice the unpaid wages would constitute an
adequate legal remedy given Plaintiff's allegations of conscious wrongdoing.  However, the
liquidated damages penalty applies regardless of an employer's intent and thus may not provide a
full remedy to address Defendants' allegedly intentional misconduct.  Further, Maine has indicated
unjust enrichment is based on fairness and justice.  Consequently, the statutory provisions may not
provide as complete a remedy as unjust enrichment.  Because Plaintiffs have alleged intentional
wrongdoing on Defendants' part and the Court must accept those allegations as true in reviewing a
motion to dismiss, the Court will not dismiss Plaintiff's unjust enrichment claim at this stage of the
proceedings.  The Court therefore will deny Defendants' motion to dismiss count six of Plaintiff
Woods' Complaint.

///

///

///

**G.  Curless v. Wal-Mart Stores, Inc., et al., 2:06-CV-00440 (Count Four) - Wyoming**

To establish unjust enrichment/quantum meruit, the plaintiff must show: 1) he rendered valuable services to the defendant, 2) which defendant accepted, used and enjoyed, 3) under such circumstances which reasonably notified the defendant that the plaintiff expected to be paid, and 4) without such payment, the defendant would be unjustly enriched.  Silver Dollar Motel, Inc. v. Taylor Elec. Co., 761 P.2d 1006, 1008 (Wyo. 1988); see also Bowles v. Sunrise Home Ctr., Inc., 847 P.2d 1002, 1004 (Wyo. 1993).  "Unjust enrichment can occur when a defendant uses something belonging to the Plaintiff in such a way as to effectuate some kind of savings which results in or amounts to a business profit."  Cross v. Berg Lumber Co., 7 P.3d 922, 936-37 (Wyo. 2000) (quotation omitted).

Unjust enrichment is related to restitution's core principle that a person who has been unjustly enriched at the expense of another is required to make restitution to the other.  Rocky Mountain Turbines, Inc. v. 660 Syndicate, Inc., 623 P.2d 758, 763 (Wyo. 1981).  Restitutionary remedies include compelling the conscious wrongdoer to disgorge his ill-gotten gains.  Cross, 7 P.3d at 935.  "Disgorgement is designed to deprive the wrongdoer of all gains flowing from the wrong rather than to compensate the victim of the fraud."  Id. at 935-36 (quotation omitted).  "Where a wrongdoer is shown to have been a conscious, deliberate misappropriator of another's commercial values, gross profits are recoverable through a restitutionary remedy."  Id. at 936 (quotation omitted).

Plaintiff asserts claims under Wyoming's minimum wage laws and hour statutes, thus establishing he has a remedy at law.  See Wyo. Stat. Ann. § 27-4-104; § 27-4-204.  As to adequacy of that remedy, the statutes permit suit for recovery of wages plus interest and costs of suit.  See id. The statutes do not contain a penalty provision for wilful violations.

///

///

Wyoming has not addressed a situation similar to the allegations in Plaintiff's Complaint, and thus has not expressed whether its statutory provisions would constitute an adequate legal remedy given Plaintiff's allegations of conscious wrongdoing.  However, the employee may recover costs of suit regardless of an employer's intent.  Further, Wyoming has indicated a defendant can become unjustly enriched by using something of the plaintiff's to increase the defendant's profits and a restitutionary remedy may compel a conscious wrongdoer to disgorge all gains or profits in some circumstances.  Consequently, the statutory provisions may not provide as complete a remedy as unjust enrichment. Because Plaintiffs have alleged intentional wrongdoing on Defendants' part and the Court must accept those allegations as true in reviewing a motion to dismiss, the Court will not dismiss Plaintiff's unjust enrichment claim at this stage of the proceedings.  The Court therefore will deny Defendants' motion to dismiss count four of Plaintiff Curless' Complaint.

### H.  Stafford v. Wal-Mart Stores, Inc., et al., 2:06-CV-00438 (Count Four) - Nebraska

Nebraska treats unjust enrichment, restitution, and quantum meruit as essentially the same under the doctrine of quasi-contracts.  Prof'l Recruiters, Inc. v. Oliver, 456 N.W.2d 103, 106 (Neb. 1990).  Quantum meruit "is a contract implied in law theory of recovery based on the equitable doctrine that one will not be allowed to profit or enrich oneself unjustly at the expense of another." Tracy v. Tracy, 581 N.W.2d 96, 101 (Neb. Ct. App. 1998).  Where the defendant has received and retained a benefit under circumstances that it would be inequitable and unconscionable for the defendant to retain the benefit without paying for it, the law requires the defendant to pay the reasonable value of the services.  Id.  "Unjust enrichment requires restitution . . . which measures the remedy by the gain obtained by the defendant, and seeks disgorgement of that gain." Trieweiler v. Sears, 689 N.W.2d 807, 834 (Neb. 2004) (internal citation omitted).

///

///

1  The doctrine of unjust enrichment applies only in the absence of an agreement between
2  the parties.  Washa v. Miller, 546 N.W.2d 813, 819 (Neb. 1996).  However, a plaintiff is permitted
3  to plead both express contract and quasi-contract in the same complaint.  Collection Bureau of
4  Grand Island, Inc. v. Fry, 610 N.W.2d 442, 447 (Neb. Ct. App. 2000).

5  Equitable remedies generally are not permitted where the plaintiff has an adequate
6  remedy at law.  Pilot Inv. Group Ltd. v. Hofarth, 550 N.W.2d 27, 33 (Neb. 1996) (equitable remedy
7  not available where statute provides adequate remedy); Ganser v. Lancaster County, 338 N.W.2d
8  609, 611-12 (Neb. 1983).  A remedy at law is adequate if it is "plain and complete and as practical
9  and efficient to the ends of justice and its prompt administration as the remedy in equity."  Ganser,
10  338 N.W.2d at 611 (quotation omitted).

11  Nebraska has stated unjust enrichment is tried in equity.  Schmeckpeper v. Koertje, 388
12  N.W.2d 51, 53 (Neb. 1986).  However, Nebraska also has stated that "notwithstanding the
13  terminology that quantum meruit and unjust enrichment are equitable doctrines, the mere fact that
14  recovery is sought under them does not change a suit for money into an action in equity.  That is
15  not to say that in a given case, the doctrines might not be applied in an equity case, but only that
16  their application does not make a case one in equity."  Collection Bureau of Grand Island, Inc., 610
17  N.W.2d at 448.

18  Plaintiff has alleged both breach of contract and some state wage and hour statutory
19  violations.  Plaintiff is entitled to plead both theories in the alternative under both the Federal Rules
20  of Civil Procedure and Nebraska law.  As to whether Plaintiff has an adequate remedy at law
21  precluding an equitable remedy, the Nebraska wage and hour statutory provisions permit an
22  employee to sue for the unpaid wages plus reasonable costs of suit, but contain no liquidated
23  damages or other penalty.  Neb. Rev. Stat. § 48-1206, § 48-1231.

24  Nebraska has not addressed a situation similar to the allegations in Plaintiff's
25  Complaint, and thus has not expressed whether its statutory provisions or a breach of contract
26  action would constitute an adequate legal remedy given Plaintiff's allegations of intentional

42

wrongdoing.  However, the employee may recover costs of suit under the statute regardless of an employer's intent.  Further, Nebraska has indicated disgorgement of a defendant's gains is a proper measure of unjust enrichment.  Consequently, the statutory provisions may not provide as complete a remedy as unjust enrichment.  Moreover, under Nebraska law, where an unjust enrichment claim seeks money, it is not necessarily equitable in nature, and thus Plaintiff's unjust enrichment claim is a remedy at law.  Because Plaintiffs have alleged intentional wrongdoing on Defendants' part, allegations which the Court must accept as true in reviewing a motion to dismiss, and because Plaintiffs seek money damages, the Court will not dismiss Plaintiff's unjust enrichment claim at this stage of the proceedings.  The Court therefore will deny Defendants' motion to dismiss count four of Plaintiff Hall's Complaint.

### I.  Hall v. Wal-Mart Stores, Inc., et al., 2:06-CV-01099 (Count Three) - Nevada

Under Nevada law, unjust enrichment is "the unjust retention . . . of money or property of another against the fundamental principles of justice or equity and good conscience."  Asphalt Prods. Corp. v. All Star Ready Mix, Inc., 898 P.2d 699, 701 (Nev. 1995) (quotations omitted).  As for quantum meruit, or quasi contract, a plaintiff must show she conferred a benefit on the defendant, and the defendant appreciated, accepted, and retained the benefit under circumstances such that it would be inequitable for him to retain the benefit without paying for it.  Leasepartners Corp. v. Robert L. Brooks Trust Dated November 12, 1975, 942 P.2d 182, 187 (Nev. 1997).  Nevada recognizes the general rule that equity remedies are not available where the plaintiff has a full and adequate remedy at law.  State v. Second Judicial Dist. Court in & for Washoe County, 241 P. 317, 322 (Nev. 1925).

Plaintiff alleges violations of Nevada's minimum wage statute, which permits an employee to sue for unpaid wages to recover unpaid wages.  Nev. Rev. Stat. § 608.260.  The statutory provisions make no reference to liquidated damages or other penalties for wilful violations.

///

43

Nevada has not addressed a situation similar to the allegations in Plaintiff's Complaint, and thus has not expressed whether its statutory provisions would constitute an adequate legal remedy given Plaintiff's allegations of intentional wrongdoing.  However, the statutory provisions do not include any penalty provisions dependent on an employer's intent.  Further, Nevada has indicated unjust enrichment is based on principles of justice and good conscience.  Consequently, the statutory provisions may not provide as complete a remedy as unjust enrichment.  Because Plaintiffs have alleged intentional wrongdoing on Defendants' part and the Court must accept those allegations as true in reviewing a motion to dismiss, the Court will not dismiss Plaintiff's unjust enrichment claim at this stage of the proceedings.  The Court therefore will deny Defendants' motion to dismiss count four of Plaintiff Stafford's Complaint.

**J.  Jackson (Reginald) v. Wal-Mart Stores, Inc., et al., 2:06-CV-00231 (Count Six) - Idaho**

Idaho law treats quantum meruit and unjust enrichment as equitable remedies providing for different measures of recovery.  Great Plains Equip., Inc. v. N.W. Pipeline Corp., 979 P.2d 627, 640 (Idaho 1999).  Quantum meruit is based on an implied promise to pay and the recovery therefore is the reasonable value of the services rendered or the materials provided.  Id.  Unjust enrichment is based on the defendant receiving a benefit from the plaintiff that would be inequitable for the defendant to retain without compensating the plaintiff for the value thereof.  Id.  The measure of damages for unjust enrichment is "the value of the benefit bestowed upon the defendant which, in equity, would be unjust to retain without recompense to the plaintiff," and may include disgorging all unjustly obtained benefits.  Holladay v. Lindsay, 152 P.3d 638, 641 (Idaho Ct. App. 2006) (quotation omitted).  Where adequate legal remedies are available, Idaho declines to apply the equitable doctrine of unjust enrichment.  Aberdeen-Springfield Canal Co. v. Peiper, 982 P.2d 917, 923 (Idaho 1999).  A plaintiff may not bring an equitable claim if it has an adequate remedy at law.  Iron Eagle Dev., LLC v. Quality Design Sys., Inc., 65 P.3d 509, 514 (Idaho 2003).

///

44

Plaintiff brings claims under Idaho's statutes regarding wages, which permit an employee to recover unpaid wages, costs, and three times the unpaid wages or penalties provided in Idaho Code Annotated § 45-607, whichever is greater. Idaho Code Ann. § 45-615, § 44-1508. Section 45-607 provides as a penalty for failure to pay wages that the employee's wages continue at the same rate of pay for fifteen days, not to exceed $750.

Idaho has not addressed a situation similar to the allegations in Plaintiff's Complaint, and thus has not expressed whether its statutory provisions would constitute an adequate legal remedy given Plaintiff's allegations of intentional wrongdoing. However, the statutory penalty applies regardless of an employer's intent. Further, Idaho has indicated disgorgement of a defendant's gains is a proper measure of unjust enrichment. Consequently, the statutory provisions may not provide as complete a remedy as unjust enrichment. Because Plaintiffs have alleged intentional wrongdoing on Defendants' part, the Court will not dismiss Plaintiff's unjust enrichment claim at this stage of the proceedings. The Court therefore will deny Defendants' motion to dismiss count six of Plaintiff Jackson's Complaint.

## V.        STATUTORY CLAIMS

### A.  Williams v. Wal-Mart Stores, Inc., et al., 2:06-CV-00439 (Counts Two, Three, Four) - Utah

Defendants move to dismiss count one of Plaintiff's Complaint because Utah's Minimum Wage Act does not apply to employees covered by the Fair Labor Standards Act ("FLSA"). Defendants also move to dismiss counts two, three, and four because Utah's Payment of Wages Act ("UPWA") does not provide for a private right of action. Further, Defendants assert counts two, three, and four are subject to dismissal for the additional reason that the statutory provisions do not apply factually to Plaintiff's allegations. Plaintiffs respond that the FLSA does not preempt actions under Utah state law to enforce payment of the minimum wage. Further, Plaintiffs argue the UPWA provides a private right of action for employees and Plaintiff states cognizable claims in counts two, three, and four.

1    **1.  Count One - Minimum Wage Act**

2           The Utah Minimum Wage Act sets a minimum wage for employees within the state.

3    Utah Code Ann. § 34-40-103.  An aggrieved employee may bring a civil suit "to enforce his rights

4    under this chapter," and may obtain injunctive relief, the difference between the wage paid and the

5    minimum wage, interest, and costs of suit.  Utah Code Ann. § 34-40-205(1)-(2).  Pursuant to

6    Utah's Minimum Wage Act, the state law minimum wage does not apply to "any employee who is

7    entitled to a minimum wage as provided in 29 U.S.C. Sec. 201 et seq., the Fair Labor Standards Act

8    of 1938 . . . ."  Utah Code Ann. § 34-40-104(1)(a).

9           The FLSA sets a minimum wage for an employee "engaged in commerce or in the

10   production of goods for commerce, or is employed in an enterprise engaged in commerce or in the

11   production of goods for commerce . . . ."  29 U.S.C. § 206(a), § 207(a) (same with application to

12   overtime hours).  The FLSA defines "enterprise engaged in commerce or in the production of

13   goods for commerce" as an enterprise that has employees engaged in commerce or in the

14   production of goods for commerce and has annual gross volume of sales made not less than

15   $500,000.  29 U.S.C. § 203(s)(1)(A).  Commerce means trade among the several States.  29 U.S.C.

16   § 203(b).

17          Plaintiff's Complaint alleges Defendants transact millions of dollars within Utah and

18   that Defendants' alleged wrongful conduct "has been widespread, recurring and uniform at its

19   stores across the nation."  (2:06-CV-00439, Compl. [Doc. #1] at ¶¶ 9-10, 16-17.)  Because

20   Defendants are enterprises engaged in commerce or in the production of goods for commerce,

21   Plaintiff is covered by the FLSA.  Because Plaintiff is covered by the FLSA, Utah's Minimum

22   Wage Act does not apply.

23          Plaintiff argues the FLSA does not "preempt" Utah's Minimum Wage Act, but this is

24   not an issue of a federal statute preempting a state law.  Rather, as a matter of Utah state law, the

25   Minimum Wage Act does not apply where the FLSA applies.  Further, Plaintiff argues that

26   although the FLSA sets the minimum wage, an employee may enforce those rights under the

UPWA.  However, the Minimum Wage Act has its own enforcement mechanism through which employees can enforce their rights under the chapter.  The UPWA is not within the same chapter as the Minimum Wage Act, and each Act has its own enforcement provisions.  <u>Compare</u> Utah Code Ann. § 34-40-205(1)-(2) <u>with</u> Utah Code Ann. § 34-28-5.  Because Utah's Minimum Wage Act does not apply to Plaintiff, Plaintiff has no rights to enforce under the relevant chapter.  The Court will grant Defendants' motion and will dismiss count one of Plaintiff Williams' Complaint.

2.  Counts Two, Three, and Four

Plaintiff brings suit under Utah Code Annotated § 34-28-3 (counts two and three) and § 34-28-5 (count four).  The UPWA does not explicitly provide a cause of action for claims under § 34-28-3, but does provide an explicit cause of action under § 34-28-5.  Pursuant to § 34-28-5(1)(a), when an employer terminates an employee, the employee's unpaid wages become due immediately, and the employer must pay the wages to the employee within twenty-four hours of separation.  If the employer fails to do so within twenty-four hours of written demand, the employee's wages continue to accrue from the date of demand until paid, not to exceed sixty days.  Utah Code Ann. § 34-28-5(b)(i).  Additionally, the employee may recover this penalty in a civil action so long as the employee commences suit within sixty days of separation.  Utah Code Ann. § 34-28-5(b)(ii).  However, an employee who does not make a written demand for payment is not entitled to the penalty.  Utah Code Ann. § 34-28-5(b)(iii).

To determine whether a statute implicitly provides a private right of action, Utah examines:

> (1) whether the plaintiff is a member of a class for whose special benefit the statute was enacted; (2) whether [the legislature] intended to create or deny a private remedy; (3) whether a private remedy would be consistent with the Statute's underlying purposes; and (4) the extent to which the cause of action is traditionally relegated to state law.

<u>Machan v. UNUM Life Ins. Co. of Am.</u>, 116 P.3d 342, 347-48 (Utah 2005) (quotation omitted).  Generally, Utah is reluctant to recognize an implied right of action in the absence of statutory language expressly indicating the legislature so intended.  <u>Id.</u>  Utah begins with the statute's plain

47

language to determine legislative intent.  Id. at 348.

Utah has not addressed whether a private right of action exists under § 34-28-3.  The only actions Utah has examined under the UPWA have been brought under § 34-28-5, which provides for a private right of action.  See Smith v. Batchelor, 832 P.2d 467 (Utah 1992) (claim brought under § 34-28-5 for unpaid back wages and penalty); Zoll & Branch, P.C. v. Asay, 932 P.2d 592 (Utah 1997) (same).  Beginning with the statute's plain language, § 34-28-3 does not indicate an intent to provide for a private right of action.  Further, the inclusion of a private right of action in § 34-28-5 suggests the Utah legislature intended a private right of action only in limited circumstances.  Otherwise, the aggrieved employee's remedy is to file a complaint with the Division of Antidiscrimination and Labor to investigate and pursue.  See Utah Code Ann. § 34-28-9.  Because no private right of action for § 34-28-3 exists, the Court will grant Defendants' motion to dismiss with prejudice counts two and three of Plaintiff Williams' Complaint.

As for count four, Plaintiff brings this claim under § 34-28-5, and thus a private right of action exists.  However, Plaintiff has not pled the necessary elements for this claim.  Plaintiff does not allege Defendants terminated her employment, that she made written demand for her pay within twenty-four hours of separation, and that Defendants failed to meet this demand.  Accordingly, the Court will dismiss count four as well, but without prejudice for Plaintiff Williams' to file an amended complaint asserting these allegations if appropriate.  Plaintiff Williams must file an amended complaint within thirty days of the date of this Order if she intends to re-assert a claim under § 34-28-5.

**B.  McFarlin v. Wal-Mart Stores, Inc., et al., 2:06-CV-00228 (Count One) - Alaska**

Defendants move to dismiss part of count one of Plaintiff's Amended Complaint which alleges Defendants failed to keep accurate payroll records and falsified such records in violation of Alaska Statutes § 23.10.100, § 23.10.135, and § 23.05.080.  Defendants assert no private right of action exists to enforce the record keeping provision.  At the hearing on this matter, Plaintiffs indicated they did not intend to assert a separate claim based on the record keeping provisions, but

48

they requested the Court not strike the allegations because Plaintiffs seek to take advantage of

Alaska case law that shifts the burden to the employer to prove it paid all wages or overtime pay

due where an employer fails to keep adequate records.  With this understanding of Plaintiffs'

position, Defendants indicated they would withdraw their motion to dismiss count one.  The Court

therefore will deny Defendants' motion to dismiss count one of Plaintiff McFarlin's Complaint as

moot.

**C.  Poha v. Wal-Mart Stores, Inc., et al., 2:06-CV-00230 (Counts two, three, four, five and nine) - Hawaii**

Defendants move to dismiss counts two, three, four, five, and nine of Plaintiffs'

Amended Complaint.  Defendants argue the FLSA bars count two and no private right of action

exists for counts three, four, five and nine.  Plaintiffs respond that under Hawaii law, where state

law gives greater benefits to the employee, the FLSA does not apply, and Hawaii's minimum wage

law sets a higher minimum wage than the FLSA does.  Plaintiffs also argue their record keeping

claims should not be dismissed because they can use Defendants' alleged failure to keep accurate

records in pursuit of their other claims.

1.  Count Two

Count two of Plaintiffs' Amended Complaint alleges a violation of Hawaii Revised

Statute § 387-3, Hawaii's overtime statute.  Section 387-3 applies to an "employee."   Haw. Rev.

Stat. § 387-3(a).  Section 387-1 defines "employee" to exclude an individual employed:

> In any capacity if by reason of the employee's employment in such
> capacity and during the term thereof the minimum wage which may be
> paid the employee or maximum hours which the employee may work
> during any workweek without the payment of overtime, are prescribed by
> the federal Fair Labor Standards Act of 1938, as amended, or as the same
> may be further amended from time to time; provided that if the minimum
> wage which may be paid the employee under the Fair Labor Standards Act
> for any workweek is less than the minimum wage prescribed by section
> 387-2, then section 387-2 shall apply in respect to the employees for such
> workweek; provided further that if the maximum workweek established for
> the employee under the Fair Labor Standards Act for the purposes of
> overtime compensation is higher than the maximum workweek established
> under section 387-3, then section 387-3 shall apply in respect to such

employee for such workweek . . . .

Haw. Rev. Stat. § 387-1; <u>see also</u> 29 U.S.C. § 218(a) (stating that FLSA does not excuse noncompliance with state law setting higher minimum wage or lower maximum work week). Accordingly, unless the FLSA sets a longer workweek than Hawaii law, § 387-3 does not apply to an employee otherwise covered by the FLSA.  Section 387-3 provides for a maximum work week of forty hours, as does the FLSA.  Haw. Rev. Stat. § 387-3(a); 29 U.S.C. § 207(a)(1).  Because § 387-3 does not provide a shorter maximum work week, the FLSA applies and § 387-3 does not. Accordingly, the Court will grant Defendants' motion and dismiss count two of Plaintiff Poha's Amended Complaint.

### 2.  Counts three, four, five, and nine

Defendants move to dismiss these counts, asserting no private right of action exists for these counts.  Plaintiffs respond that the Court should not strike the allegations from the Complaint because Plaintiffs can use the inaccurate record keeping to establish their other claims.

Count three alleges a violation of Hawaii Revised Statute § 387-6, a record keeping provision.  This section does not make explicit reference to a private right of action.  The statute refers to the employer being required to cooperate with any investigation by the director of labor and industrial relations, but makes no mention of civil enforcement by the employee.  Section 387-12 specifically provides for private enforcement actions for violations of § 387-2 (minimum wage) and § 387-3 (maximum hours).  The fact that Hawaii made specific provisions for private enforcement of the minimum wage and maximum hours violations but not for record keeping violations under the same chapter suggests Hawaii did not intend for an implied right of action under § 387-6.  Accordingly, the Court will grant Defendants' motion to dismiss count three of Plaintiff Poha's Amended Complaint.

Counts four and five of Plaintiff's Complaint assert claims under Chapter 388.  Count four alleges a violation of Hawaii Revised Statute § 388-2, which requires an employer to pay his employees at least twice a month.  Count five alleges a violation of § 388-7, which sets forth

certain notification and record keeping requirements.  Neither § 388-2 nor § 388-7 provide an explicit private cause of action.  Section 388-9 grants Chapter 388 enforcement powers to the director of labor and industrial relations.  Section 388-10 provides a cause of action for employees to bring a civil action to collect the unpaid wages plus an amount equal to the unpaid wages plus interest.  The fact that Hawaii made specific provisions for private enforcement for the failure to pay wages but not for record keeping violations within the same chapter suggests Hawaii did not intend for an implied right of action under § 388-2 or § 388-7.  Rather, Hawaii vests enforcement authority for these provisions in the director of labor and industrial relations.  Accordingly, the Court will grant Defendants' motion to dismiss counts four and five of Plaintiff Poha's Amended Complaint.

Although denominated as a separate claim, count nine is not a separate cause of action but a request for injunctive relief.  The Court will not foreclose the remedy of injunctive relief at this stage of the proceedings.  The Court therefore will deny Defendants' motion to dismiss count nine with the understanding that count nine is not an independent ground for relief.

### D.  <u>Woods v. Wal-Mart Stores, Inc. et al.</u>, 2:06-CV-00436 (Counts Two, Three, and Four) - Maine

Defendants move to dismiss counts two, three, and four of Plaintiff Woods' Complaint, arguing that factually these statutory provisions do not apply to Plaintiff's allegations and Plaintiff is attempting to use these statutory provisions to obtain a penalty greater than permitted under applicable law.  Plaintiff responds that his allegations fall within the statutory language.  Although this motion originally was directed at Plaintiff Woods' original Complaint, the same issues arise in the Amended Complaint.

#### 1.  Count two

Count two of the Amended Complaint alleges Defendants violated 26 Maine Revised Statutes Annotated § 621-A by failing to pay wages as they became due and payable.  Section § 621-A provides that an employer must pay each employee "in full all wages earned" at regular

intervals not to exceed sixteen days.  Pursuant to § 626-A, an employer is liable to the employee for the amount of unpaid wages, plus interest, costs of suit, and a liquidated damages penalty of twice the unpaid wages due.  Maine has interpreted a predecessor to § 621-A to permit an employee to sue for unpaid wages "only if: (1) the employee has been discharged, subsequently demands to be paid, and the employer refuses to do so, see 26 M.R.S.A. § 626; or (2) when that employer has failed to pay a current employee in full, if the employer fails to pay the amount withheld by that employee's next regularly scheduled payday, see 26 M.R.S.A. §§ 621, 626-A."  In re Wage Payment Litig., 759 A.2d 217, 223 (Me. 2000).

In In re Wage Payment Litigation, the plaintiffs brought suit for wages that were late but which the employer ultimately paid.  Id. at 222-23.  The Court ruled the plaintiffs failed to state a claim for "unpaid wages" because § 621 required a claim for unpaid wages, not simply late wages, where the statute permitted an employer to make a catch up payment on the next regularly scheduled payday.  Id. at 223.  Only if the employer failed to pay on the regular payday or the following payday could the employee bring suit for "unpaid" wages.  Id. at 223-24.  Here, Plaintiff has asserted the regularly scheduled pay periods came and went without payment, and the wages remain unpaid.  Consequently, Plaintiff's allegations fall within § 621-A and are not subject to dismissal.

Defendants also cite In re Wage Payment Litigation and Avery v. Kennebec Millwork, Inc., 861 A.2d 634, 636-37 (Me. 2004) for the propositions that the minimum wage statute has no time-of-payment language and the penalties associated with a claim for violating the minimum wage law are different than violations of the time-of-payment provisions.  In both In re Wage Payment and Avery, the employee made a specific claim under Maine's minimum wage laws.  Neither case is relevant to Plaintiff's claim under § 621-A, which is different than a minimum wage claim because it asserts Defendants did not timely pay wages due rather than that Defendants timely paid less than the amount of hourly wage due.  Because the minimum wage laws do not control an action brought under the time of payment provisions, the Court will deny Defendants'

motion to dismiss count two of Plaintiff Woods' Amended Complaint.

2.  Count three

In count three, Plaintiff alleges Defendants violated 26 Maine Revised Statutes Annotated § 622 by failing to keep a record showing the date and amount paid, daily record of time worked.  As a remedy for these violations, Plaintiff seeks unpaid wages and liquidated damages. Defendants move to dismiss this claim, asserting § 622 is a record keeping requirement that does not provide a cause of action for unpaid wages and liquidated damages.

Section 622 requires employers to keep a "true record" showing the date and amount paid to each employee and daily records of time each employee worked.  It does not provide a specific cause of action for alteration of records or failure to keep an accurate record.  Section 626-A provides that an employer is liable to an employee for the amount of unpaid wages, plus interest, costs of suit, and a liquidated damages penalty.  Section 626-A does not provide an independent basis for an employee to recover under § 622 for record keeping violations.  Rather, the employee is limited to the remedy of pursuing any unpaid wages or benefits.  Pursuant to § 626-A, only the Maine Department of Labor may pursue civil forfeiture penalties against an employer for violating § 622.  See In re Wage Payment Litig., 759 A.2d at 221-222.  The Court therefore will grant Defendants' motion to dismiss count three of Plaintiff Woods' Amended Complaint.

3.  Count four

Count four of the Amended Complaint alleges Defendants failed to pay wages due upon separation in violation of 26 Maine Revised Statutes Annotated § 626.  Defendants move to dismiss this claim, arguing it alleges a claim under the minimum wage act, not § 626.  Plaintiffs respond they have asserted a claim under the plain language of section § 626.

Section 626 provides that upon an employee leaving employment, the employer must pay the employee in full within a reasonable time after demand.  Plaintiff alleges he demanded payment and Defendants failed to pay in full.  However, the Amended Complaint does not allege Plaintiff separated from employment with Defendants.  Without this allegation, Plaintiff fails to

state a claim under § 626.  Although the Amended Complaint suggests Plaintiff Woods no longer

works for Defendants, it contains no express allegation to that effect.  The Court therefore will

grant Defendants' motion to dismiss this claim with leave to amend to include an allegation of

separation from employment.  Plaintiff Woods must file a second amended complaint within thirty

days of the date of this Order if he wishes to pursue a claim under § 626.[6]

### E.  Stafford v. Wal-Mart Stores, Inc., et al., 2:06-CV-00438 (Counts One through Four of the original Complaint) - Nebraska[7]

#### 1.  Count One

Count one of Plaintiff Stafford's Amended Complaint alleges Defendants violated

Nebraska wage and hour statutes by failing to compensate properly for off-the-clock work,

overtime, and other unrecorded hours employees worked.  Defendants argue count one fails to state

a claim with respect to overtime hours because the statute at issue applies only to a minimum wage,

not to a maximum hour requirement.  Defendants also argue Nebraska law requires the parties to

have entered into a prior agreement to pay overtime wages, and Plaintiff has failed to plead such an

agreement.  Plaintiffs respond Nebraska does not have an overtime statute, but because Defendants

are subject to the FLSA, the requirement to pay an increased rate for overtime necessarily is part of

the employment agreement between Defendants and Plaintiff.

Nebraska Revised Statutes § 48-1201 et seq. contain no provision for maximum hours

worked; rather, the provisions refer only to a minimum wage.  Under Nebraska law, a plaintiff may

bring a claim for overtime under the wages and hour statute only where the employer and employee

---

[6]    As for Defendants' argument that Plaintiff's claim under § 626 actually is a claim under the minimum wage laws, the fact that Plaintiff alleges a claim for minimum wage violations does not preclude Plaintiff from also making a claim under § 626.

[7]   Defendants moved to dismiss Plaintiff's original Complaint, and thus Defendants' motion contains arguments pertaining to counts no longer existing in the Amended Complaint. The Court will deny as moot Defendants' motion to dismiss counts three and four of the original complaint as those claims do not exist in the Amended Complaint.

previously agreed to overtime compensation.  <u>Freeman v. Cent. States Health & Life Co. of Omaha</u>, 2 Neb. Ct. App. 803, 807 (Neb. Ct. App. 1994).  An employee may file an FLSA claim in a Nebraska state court, but he cannot use the Nebraska Wage Act to enforce rights he may possess under the FLSA.  <u>Id.</u> at 808.

Plaintiff's Complaint does not allege Plaintiff and Defendants entered into a previous agreement for overtime compensation.  Accordingly, Plaintiff fails to state a claim for overtime compensation under Nebraska's wage and hour statute.  Although Plaintiff attempts to argue the FLSA is an implied term of the employment contract, Nebraska has rejected this view, requiring the employee to assert such a claim under the FLSA, not Nebraska's wage and hour statute. Accordingly, the Court will dismiss count one to the extent it relies on overtime compensation.

### 2.  Count two

Count two of Plaintiff's Amended Complaint alleges Defendants failed to pay wages due upon employees' separation from Defendants.  Defendants move to dismiss this claim, arguing the Amended Complaint contains no allegation Plaintiff was terminated or there was a failure to pay wages upon termination.  Plaintiff failed to respond to this argument because Defendants moved to dismiss count two of the original Complaint, which was different than count two of the Amended Complaint.  Plaintiffs' Opposition brief argued the legal issues involved in the original Complaint as if those claims were still alive, even though Plaintiffs filed their opposition to Defendants' motion to dismiss after Plaintiff Stafford filed her Amended Complaint.  The Complaint contains no allegation Plaintiff Stafford was terminated.  Accordingly, the Court will dismiss count two of Plaintiff Stafford's Amended Complaint, but with leave to amend to add allegations regarding separation from employment and failure to pay wages upon separation. Plaintiff Stafford must file a second amended complaint within thirty days of the date of this Order to pursue a claim based on failure to pay past wages due upon discharge under Nebraska Revised Statute § 48-1201 et seq.

///

**VI.     CONCLUSION**

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss or Motion for Judgment on the Pleadings With Respect to Plaintiffs' Claims for Conversion, Unjust Enrichment, Statutory Wages, and Memorandum of Law in Support Thereof (Doc. #57) is hereby GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that the following claims are hereby dismissed with prejudice:

- <u>Jackson (Dora) v. Wal-Mart Stores, Inc., et al.</u>, 2:06-CV-00229-PMP-PAL
  - count three (conversion)

- <u>Williams v. Wal-Mart Stores, Inc., et al.</u>, 2:06-CV-00439-PMP-PAL
  - count one (minimum wage act)
  - count two (Utah Code Annotated § 34-28-3)
  - count three (Utah Code Annotated § 34-28-3)
  - count five (conversion)

- <u>Cole v. Wal-Mart Stores, Inc., et al.</u>, 2:06-CV-00437-PMP-PAL
  - count four (conversion)

- <u>McFarlin v. Wal-Mart Stores, Inc., et al.</u>, 2:06-CV-00228-PMP-PAL
  - count two (conversion)

- <u>Poha v. Wal-Mart Stores, Inc., et al.</u>, 2:06-CV-00230-PMP-PAL
  - count two (Hawaii Revised Statute § 387-3)
  - count three (Hawaii Revised Statute § 387-6)
  - count four (Hawaii Revised Statute § 388-2)
  - count five (Hawaii Revised Statute § 388-7)
  - count seven (conversion)

- <u>Woods v. Wal-Mart Stores, Inc., et al.</u>, 2:06-CV-00436-PMP-PAL
  - count three (26 Maine Revised Statutes Annotated § 622)
  - count five (conversion)

- <u>Curless v. Wal-Mart Stores, Inc., et al.</u>, 2:06-CV-00440-PMP-PAL
  - count three (conversion)

- <u>Stafford v. Wal-Mart Stores, Inc., et al.</u>, 2:06-CV-00438-PMP-PAL
  - only that part of count one which relies on overtime allegations
  - count three (conversion)

///

IT IS FURTHER ORDERED that the following claims are hereby dismissed without prejudice:

- <u>Williams v. Wal-Mart Stores, Inc., et al.</u>, 2:06-CV-00439-PMP-PAL
      - count four (Utah Code Annotated § 34-28-5)

- <u>Woods v. Wal-Mart Stores, Inc., et al.</u>, 2:06-CV-00436-PMP-PAL
      - count four (26 Maine Revised Statutes Annotated § 626)

- <u>Stafford v. Wal-Mart Stores, Inc., et al.</u>, 2:06-CV-00438-PMP-PAL
      - count two (Nebraska Revised Statute § 48-1201, et seq.)

IT IS FURTHER ORDERED that Plaintiffs must file amended complaints re-pleading any claims dismissed without prejudice within thirty (30) days of the date of this Order.

IT IS FURTHER ORDERED that except as detailed above, Defendants' motion to dismiss is denied.

IT IS FURTHER ORDERED that Defendants shall file a response to Plaintiffs' Motion for Class Certification within thirty (30) days of the date of this Order per Defendants' Unopposed Motion For an Extension of Time to Respond to Plaintiffs' Motion for Class Certification (Doc. #102).

DATED:   May 23, 2007.

_____
PHILIP M. PRO
United States District Judge