# EXHIBIT A

## SETTLEMENT AGREEMENT

### 1.    PREAMBLE

This Settlement Agreement is made and entered into as of the dates of Execution as reflected herein, individually and on behalf of the Named Plaintiffs, the Class Representatives, and the Class Members all as further defined below, and on behalf of the Plan and Wal-Mart, each as further defined below.

### 2.    DEFINITIONS

2.1    The term "*Attorneys' Fees and Costs*" as used herein means the amount Class Counsel shall request, subject to Court approval, in accordance with Section 5.3 of this Agreement.

2.2    The term "*Agreement*" as used herein means this Settlement Agreement.

2.3    The term "*CAFA*" as used herein means the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, *et seq.*, including all regulations and caselaw promulgated thereunder.

2.4    The term "*Claims Administrator*" as used herein means Rust Consulting, Inc., the entity agreed to by the Parties subject to Court approval which will handle certain notice and administration duties as requested by the Parties in accordance with Section 6 of this Agreement.

2.5    The term "*Class Counsel*" as used herein means Berger & Montague, P.C., Keller Rohrback, L.L.P., and Ann Miller, LLC.

2.6    The term "*Class Exemption*" as used herein means the Prohibited Transaction Exemption 2003-39, "Release of Claims and Extension of Credit in connection with Litigation" issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,632.

2.7    The term "*Class Representatives*" as used herein means Robert J. King and Keith Rhone both of whom Class Counsel will request be appointed by the Court as Class Representatives.

2.8    The term "*Class Representative Compensation Award*" as used herein means the amount Class Counsel shall request be paid to the Class Representatives, subject to Court approval and in accordance with Section 5.2 of this Agreement.

2.9    The term "*Court*" as used herein means the Nevada District Court and any appellate court which may review any orders entered by the Nevada District Court related to this Settlement.

2.10    The term "*ERISA*" as used herein means the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1132 *et seq.* including all regulations promulgated and case law thereunder.

2.11    The term "*ERISA Settlement Class*" as used herein means: (i) all hourly employees who worked at a Wal-Mart store, Supercenter, Neighborhood Market, Sam's Club, or Distribution Center in any of the fifty United States or in Puerto Rico who: (a) were Plan Participants at any time from February 1, 1997 up to the date of Execution of this Agreement and (b) were eligible to have contributions from Wal-Mart allocated to their individual accounts in the Plan pursuant to the Plan's terms during such period; and (ii) as to each such hourly employee, his or her beneficiaries, alternate payees, representatives, and successors in interest.

2.12    The terms "*ERISA Settlement Class Member*" or "*ERISA Settlement Class Members*" as used herein shall mean a member of or the members of the ERISA Settlement Class.

2.13    The term "*ERISA Settlement Class Member Released Claims*" as used herein means the claims, rights, penalties, demands, damages, debts, accounts, duties, costs and expenses (other than those costs and expenses required to be paid pursuant to this Settlement Agreement), liens, charges, complaints, causes of action, obligations, or liabilities that are released, acquitted, and discharged pursuant to Section 9 of this Agreement.

2.14    The term "*ERISA Settlement Class Period*" as used herein means the period of time from February 1, 1997 up to and including the date of Execution of this Agreement.

2.15    The term "*ERISA Settlement Payment*" as used herein means the amount to be paid in accordance with Section 5.1 of this Agreement.

2.16    The term "*Execution*" as used herein means the signing of this Agreement by all signatories hereto.

2.17    The term "*External Notice and Administration Costs*" as used herein shall have the meaning set forth in Section 5.4 of this Agreement.

2.18    The term "*Final Judgment*" as used herein means the Final Judgment approving the Settlement and dismissing the Litigation with prejudice which this Settlement contemplates will be entered and approved by the Nevada District Court. The Final Judgment shall not be considered final for purposes of this Settlement Agreement until the Settlement Effective Date occurs.

2.19    The term "*Independent Fiduciary*" as used herein means a Plan fiduciary selected and retained at Wal-Mart's sole expense that has no "relationship to" or "interest in" (as those terms are used in the Class Exemption) any Party.

2.20    The term "*Internal Notice and Administration Costs*" as used herein shall have the meaning set forth in Section 5.4 of this Agreement.

2.21    The term "*Litigation*" as used herein means the lawsuit originally filed on April 13, 2007 in the United States District Court for the Eastern District of Pennsylvania entitled *King*

*v. Wal-Mart Stores, et. al*, Case No. 2:07-cv-01486 WY, and now consolidated into MDL 1735.

2.22    The term *"MDL 1735"* as used herein means the consolidated proceedings *In Re Wal-Mart Stores, Inc. Employment Practices Litigation*, MDL 1735, Docket No. 2:06-cv-00225-PMP-PAL, pending in the Nevada District Court.

2.23    The term *"Named Plaintiffs"* as used herein means Robert J. King and Keith Rhone.

2.24    The term *"Nevada District Court"* as used herein refers to the United States District Court for the District of Nevada.

2.25    The term *"No-Litigation States"* refers to the following states in which there are no wage and hour class actions brought by hourly associates pending against Wal-Mart:  Arizona, Colorado, and Vermont.

2.26    The term *"Non-Settled Wage and Hour Actions"* as used herein refers to the following wage and hour actions brought against Wal-Mart which have not been settled:

    2.26.1.    *Hummel v. Wal-Mart Stores, Inc., et al.*, Case No. 3757 (Court of Common Pleas, Philadelphia County);

    2.26.2.    *Salvas v. Wal-Mart Stores, Inc.*, Case No. 01-3645 (Middlesex County Superior Court, Commonwealth of Massachusetts); and

    2.26.3.    *Savaglio v. Wal-Mart Stores, Inc., et al.*, Case No. C-835687 (Superior Court of the State of California for the County of Alameda).

2.27    The term *"Non-Settled Wage and Hour Action Triggering Event"* as used herein means the date on which the entry of judgment in a Non-Settled Wage and Hour Action has become final with no further right of appeal as defined by the rules of civil procedure applicable to the particular Non-Settled Wage and Hour Action, or as defined by a settlement agreement which may be entered into in the future applicable to the particular Non-Settled Wage and Hour Action.  Each Non-Settled Wage and Hour Action shall have its own Non-Settled Wage and Hour Action Triggering Event.

2.28    The term *"Objector"* as used herein means any ERISA Settlement Class Member who files an objection to the Settlement in accordance with Section 7 of this Agreement.

2.29    The term *"Parties"* as used herein means the Named Plaintiffs, the Class Representatives, the ERISA Settlement Class Members, Wal-Mart, and the Plan.

2.30    The term *"Plan"* as used herein means the Wal-Mart Stores, Inc. Profit Sharing and 401(k) Plans, the Wal-Mart Puerto Rico Profit Sharing and 401(k) Plan, all predecessor plans (including but not limited to the Wal-Mart Stores, Inc. 401(k) Retirement Savings Plan) and all successor plans, individually and collectively, and any trust created under any such Plan.

2.31  The term "*Plan of Allocation*" as used herein shall have the meaning set forth in Section 5.1 of this Agreement.

2.32  The terms "*Plan Participant*" or "*Participant*" as used herein means a participant in the Plan within the meaning of ERISA.

2.33  The terms "*Qualified Settlement Fund*" or "*QSF*" as used herein means the Qualified Settlement Fund to be created in accordance with Section 8 of this Agreement.

2.34  The term "*Settled Wage and Hour Actions*" as used herein refers to the following wage and hour class actions brought against Wal-Mart with respect to which binding term sheets and/or settlement agreements have been entered into between Wal-Mart and counsel for the plaintiffs in those cases:

2.34.1.  *Adcox, et al. v. Wal-Mart Stores, Inc., et al.*, Case No. 3:04-cv-633 (United States District Court for the Southern District of Texas, Houston Division) and *Lopez, et al. v. Wal-Mart Stores, Inc., et al.*, Case No. 12326BH2000 (Twenty-Third Judicial Circuit, Brazoria County, Texas);

2.34.2.  *Alix v. Wal-Mart Stores, Inc.*, RJI No. 01-02-071134 (Supreme Court, Albany County, New York);

2.34.3.  *Armijo, et al. v. Wal-Mart Stores, Inc., et al.*, Case No. D-0117-CV-2000-02211 (First Judicial District Court, County of Rio Arriba, State of New Mexico);

2.34.4.  *Bailey, et al. v. Wal-Mart Stores, Inc., et al.*, Case No. 49D05-0008-CT-1177 (Marion Superior Court, State of Indiana);

2.34.5.  *Barnett, et al. v. Wal-Mart Stores, Inc., et al.*, Case No. 01-2-24553-8 SEA (Superior Court for the State of Washington, In and For King County);

2.34.6.  *Brown (Lisa), et al. v. Wal-Mart Stores, Inc., et al.*, Case No. 01 L 85 (15th Judicial Circuit Court, Rock Island, Illinois);

2.34.7.  *Carter, et al. v. Wal-Mart Stores, Inc., et al.*, Case No. 2006-CP-A5-839R (Court of Common Pleas, Fourteenth Judicial Circuit, South Carolina);

2.34.8.  *Hale, et al. v. Wal-Mart Stores, Inc., et al.*, Case No. 01-CV-218710 (Circuit Court of Jackson County, Missouri at Kansas City);

2.34.9.  *Iliadis, et al. v. Wal-Mart Stores, Inc., et al.*, Case No. MID-L-5498-02 (Superior Court of New Jersey, Middlesex County, New Jersey);

2.34.10.  *Lerma, et al. v. Wal-Mart Stores, Inc., et al.*, Case No. CJ-2001-1395 (District Court of Cleveland County, State of Oklahoma);

2.34.11.    *In Re: Wal-Mart Wage and Hour Employment Practices Litigation*, Case No. 2:06-cv-00225-PMP-PAL (United States District Court for the District of Nevada), which consists of the following cases:

2.34.11.1.    *Bayardo v. Wal-Mart Stores, Inc., et al.*, Case No. 07-00349 (United States District Court for the District of Nevada) ("*Bayardo*") (California);

2.34.11.2.    *Brogan (Pam), et al. v. Wal-Mart Stores, Inc., et al.*, Case No. 07-00214 (United States District Court for the Southern District of West Virginia) ("*Brogan (Pam)*") (West Virginia);

2.34.11.3.    *Brogan (Tammy), et al. v. Wal-Mart Stores, Inc., et al.*, Case No. 2:09-cv-00338 PMP-PAL (United States District Court for the District of Nevada) ("*Brogan (Tammy)*") (New Hampshire);

2.34.11.4.    *Campbell v. Wal-Mart Stores, Inc., et al.*, Case No. 06-11722 (United States District Court for the District of Nevada) ("*Campbell*") (Rhode Island);

2.34.11.5.    *Cole v. Wal-Mart Stores, Inc., et al.*, Case No. 06-00003 (United States District Court for the District of Montana) ("*Cole*") (Montana);

2.34.11.6.    *Curless v. Wal-Mart Stores, Inc., et al.*, Case No. 05-00277 (United States District Court for the District of Wyoming) ("*Curless*") (Wyoming);

2.34.11.7.    *Cruzado v. Wal-Mart Stores, Inc., et al.*, Case No. 2:09-cv-00595-PMP-PAL (United States District Court for the District of Nevada) ("*Cruzado*") (Puerto Rico);

2.34.11.8.    *Deas v. Wal-Mart Stores, Inc., et al.*, Case No. 06-00052 (United States District Court for the Eastern District of Virginia) ("*Deas*") (Virginia);

2.34.11.9.    *Griffin v. Wal-Mart Stores, Inc., et al.*, Case No. 2:09-CV00341 (United States District Court for the District of Nevada) ("*Griffin*") (Arkansas);

2.34.11.10.    *Hall v. Wal-Mart Stores, Inc., et al.*, Case No. 05-01099 (United States District Court for the District of Nevada) ("*Hall*") (Nevada);

2.34.11.11.    *Henderson v. Wal-Mart Stores, Inc., et al.*, Case No. 06-01569 (United States District Court for the District of Nevada) ("*Henderson*") (Connecticut);

2.34.11.12.  *Hicks v. Wal-Mart Stores, Inc., et al.*, Case No. 07-00051 (United States District Court for the Eastern District of Texas) ("*Hicks*") (Texas);

2.34.11.13.  *Jackson (Dora) v. Wal-Mart Stores, Inc., et al.*, Case No. 05-00269 (United States District Court for the District of Delaware) ("*Jackson (Dora)*") (Delaware);

2.34.11.14.  *Jackson (Reginald) v. Wal-Mart Stores, Inc., et al.*, Case No. 05-00424 (United States District Court for the District of Idaho) ("*Jackson (Reginald)*") (Idaho);

2.34.11.15.  *Kraemer v. Wal-Mart Stores, Inc.*, Case No. 06-00098 (United States District Court for the District of North Dakota) ("*Kraemer*") (North Dakota);

2.34.11.16.  *Luce v. Wal-Mart Stores, Inc., et al.*, Case No. 05-01019 (United States District Court for the District of South Dakota) ("*Luce*") (South Dakota);

2.34.11.17.  *Mathies, et al. v. Wal-Mart Stores, Inc., et al.*, Case No. 07-00483 (United States District Court for the District of Oregon) ("*Mathies*") (Oregon);

2.34.11.18.  *McFarlin v. Wal-Mart Stores, Inc., et al.*, Case No. 05-00094 (United States District Court for the District of Alaska) ("*McFarlin*") (Alaska);

2.34.11.19.  *Nolan, et al. v. Wal-Mart Stores, Inc., et al.*, Case No. 06-0777 (United States District Court for the Northern District of Ohio) ("*Nolan*") (Ohio);

2.34.11.20.  *Olinger v. Wal-Mart Stores, Inc., et al.*, Case No. 06-14055 (United States District Court for the Eastern District of Michigan) ("*Olinger*") (Michigan);

2.34.11.21.  *Parrish v. Wal-Mart Stores, Inc., et al.*, Case No. 2:09-cv-00342-PMP-PAL (United States District Court for the District of Nevada) ("*Parrish*") (Georgia);

2.34.11.22.  *Penn v. Wal-Mart Stores, Inc., et al.*, Case No. 06-06045 (United States District Court for the Eastern District of Louisiana) ("*Penn*") (Louisiana);

2.34.11.23.  *Poha v. Wal-Mart Stores, Inc., et al.*, Case No. 05-00697 (United States District Court for the District of Hawaii) ("*Poha*") (Hawaii);

6

2.34.11.24.   *Pritchett v. Wal-Mart Stores, Inc., et al.*, Case No. 2:09-cv-00343 (United States District Court for the District of Nevada) ("*Pritchett*") (Alabama);

2.34.11.25.   *Smith (Adriane) v. Wal-Mart Stores, Inc., et al.*, Case No. 07-00188 (United States District Court for the Western District of Wisconsin) ("*Smith*") (Wisconsin);

2.34.11.26.   *Stafford v. Wal-Mart Stores, Inc., et al.*, Case No. 05-00535 (United States District Court for the District of Nebraska) ("*Stafford*") (Nebraska);

2.34.11.27.   *Whitacre v. Wal-Mart Stores, Inc., et al.*, Case No. 07-00445 (United States District Court for the District of Nevada) ("*Whitacre*") (Maryland);

2.34.11.28.   *Williams (Norma Jean) v. Wal-Mart Stores, Inc., et al.*, Case No. 06-00061 (United States District Court for the District of Utah) ("*Williams (Norma Jean)*") (Utah);

2.34.11.29.   *Williams (Travis) v. Wal-Mart Stores, Inc., et al.*, Case No. 06-00142 (United States District Court for the Western District of North Carolina) ("*Williams (Travis)*") (North Carolina); and

2.34.11.30.   *Woods v. Wal-Mart Stores, Inc., et al.*, Case No. 06-00006 (United States District Court for the District of Maine) ("*Woods*") (Maine).

2.34.12.   *Montgomery, et al. v. Wal-Mart Stores, Inc., et al.*, Case No. 3:03-CV-539-HTW-AGN (United States District Court for the Southern District of Mississippi, Jackson Division) and *Winters, et al. v. Wal-Mart Stores, Inc., et al.*, Case No. 3:02CV1171 WS (United States District Court for the Southern District of Mississippi, Jackson Division);

2.34.13.   *Mussmann, et al. v. Wal-Mart Stores, Inc., et al.*, Case No. LA27486 (Iowa District Court, Clinton County, Iowa);

2.34.14.   *Nagy, et al. v. Wal-Mart Stores, Inc.*, Case No. 01-CI-00854 (Commonwealth of Kentucky, Boyd County Circuit Court) and *Gross, et al. v. Wal-Mart Stores, Inc., et al.*, Case No. 04-CI-01029 (Commonwealth of Kentucky, Laurel County Circuit Court, Division II);

2.34.15.   *Ouellette, et al. v. Wal-Mart Stores, Inc., et al.*, Case No. 67-01-CA-326 (Circuit Court, Fourteenth Judicial Circuit in and for Washington County, Florida);

2.34.16.     *Pickett, et al. v. Wal-Mart Stores, Inc., et al.*, Case No. CT-005945-03 (Circuit Court of Tennessee for the Thirteenth Judicial District at Memphis, Shelby County); and

2.34.17.     *Willey, et al. v. Wal-Mart Stores, Inc., et al.*, Case No. 01 C3688 (District Court of Wyandotte County Kansas, Civil Court Department).

2.35     The term **"Settled Wage and Hour Action Triggering Event"** as used herein means the date on which the order granting final approval and the entry of final judgment following the settlement of a Settled Wage and Hour Action has become final with no further right of appeal as defined in the settlement agreement applicable to the particular Settled Wage and Hour Action. Each Settled Wage and Hour Action shall have its own Settled Wage and Hour Action Triggering Event.

2.36     The term **"Settlement"** as used herein means the compromise and settlement of the Litigation as contemplated by this Agreement.

2.37     The term **"Settlement Effective Date"** as used herein means the first day following the last of the following occurrences:

2.37.1.     The date the time to appeal or seek permission to appeal or seek other judicial review of the entry of a Final Judgment approving the Settlement has expired with no appeal or other judicial review having been taken or sought; or

2.37.2.     If an appeal or other judicial review has been taken or sought: (i) the date the Final Judgment is finally affirmed by an appellate court with no possibility of subsequent appeal or other judicial review therefrom; or (ii) the date the appeal(s) or other judicial review therefrom are finally dismissed with no possibility of subsequent appeal or other judicial review; or (iii) if remanded to the Court or to a lower appellate court following an appeal or other review, the date the Final Judgment is entered by the Court after remand and the time to appeal or seek permission to appeal or seek other judicial review of the entry of that Final Judgment has expired with no further appeal or other judicial review having been taken or sought. If further appeal is sought after a remand, the time periods in this Subsection shall apply.

2.38     The term **"Wal-Mart"** as used herein means Wal-Mart Stores, Inc., Sam's East, Inc., Sam's West, Inc., Wal-Mart Stores East, Inc., Wal-Mart Stores East, LP, Wal-Mart Associates, Inc., and any of their current or former subsidiaries, affiliates, predecessors, insurers, agents, employees, successors, assigns, officers, officials, directors, partners, employers, attorneys, personal representatives, executors, and shareholders, including their respective current or former pension, profit sharing, savings, health, and other employee benefit plans of any nature, the successors of such plans, and those plans' respective current or former trustees, administrators, agents, employees, and fiduciaries as well as the personal representatives or executors of any such persons.

3.    RECITALS

3.1    On April 13, 2007, Named Plaintiff Robert J. King filed a complaint in the United States District Court for the Eastern District of Pennsylvania, Case No. 2:07-cv-01486 WY, alleging various claims for relief under ERISA against Wal-Mart, the Wal-Mart Retirement Plans Committee, and unidentified John and Jane Does 1-15 ("Defendants").

3.2    On December 21, 2007, the Judicial Panel on Multi-District Litigation transferred the *King* case to the Nevada District Court as part of MDL 1735 in accordance with 28 U.S.C. §1407.

3.3    On August 11, 2008, the Nevada District Court granted in part and denied in part Defendants' motions to dismiss and granted plaintiffs leave to amend the Complaint. On September 10, 2008, Named Plaintiffs Robert J. King and Keith Rhone filed an amended complaint.

3.4    On November 14, 2008, Defendants answered the amended complaint and also filed a partial motion to dismiss, which motion remains pending.

3.5    Following arms-length negotiations, the Parties reached an agreement to settle the Litigation subject to Court approval and in accordance with the terms set forth in this Agreement.

3.6    Based on Class Counsels' independent investigation and evaluation, Class Counsel are of the opinion that the Settlement is fair, reasonable, and adequate and is in the best interest of the ERISA Settlement Class Members in light of all known facts and circumstances.

3.7    Wal-Mart denies any liability or wrongdoing of any kind associated with the claims alleged and contends that this Litigation is not appropriate for class or collective action treatment pursuant to Rule 23 of the Federal Rules of Civil Procedure, the FLSA, or any other federal or state rule, statute, law, or provision. Other than for purposes of this Settlement, Wal-Mart continues to assert that the Litigation fails to meet the prerequisites necessary for class or collective action treatment under applicable law, especially, but not solely, with respect to predominance and manageability because the need to determine individualized issues make the Litigation unmanageable consistent with due process. Wal-Mart also preserves and does not waive other objections, including without limitation whether Wal-Mart's time-clock records and other evidence as alleged by Plaintiffs are sufficient to allow a fact finder to draw inferences regarding whether rest or meal breaks were missed or interrupted. Wal-Mart further asserts that it has complied with all applicable provisions of any statutory or common law. Wal-Mart further states that notwithstanding its good faith belief that it is not liable for any of the claims asserted, and despite its good faith belief that neither certification nor collective action treatment is appropriate, Wal-Mart will not oppose the Court's certification of the ERISA Settlement Class contemplated by this Agreement solely for purposes of effectuating this Settlement. Other than for purposes of this Settlement, Wal-Mart does not waive its objections to certification of the ERISA Settlement Class, or any other class, in this Litigation, or in

9

any other wage and hour or other class actions, as a litigation class. This conditional waiver is made in furtherance of this particular Settlement and shall not be deemed admissible in any subsequent proceeding in the Litigation should the Settlement not be effectuated pursuant to Section 14.

3.8    The entry of Final Judgment in this Litigation shall dismiss with prejudice all claims which were or which could have been alleged in the Litigation by any Class Members. The Parties agree to cooperate and take all steps necessary and appropriate to obtain preliminary and final approval of this Settlement, to effectuate its terms, and to dismiss this Litigation with prejudice.

## 4.    CERTIFICATION OF ERISA SETTLEMENT CLASS

4.1    As part of this Settlement, Class Counsel shall request that the Court enter an order certifying the ERISA Settlement Class for settlement purposes pursuant to Fed. R. Civ. P. 23(b)(1) in accordance with this Agreement. The form of class certification order shall, subject to Court approval, expressly state that the Parties and Class Counsel agree that certification of the ERISA Settlement Class is a conditional certification for settlement purposes only, and that Wal-Mart retains its right to object to certification of this Litigation, or any other wage and hour class or collective action, or any other class action, under Rule 23, the FLSA, or any other applicable rule, statute, law, or provision. A form of class certification order for settlement purposes only, subject to Court approval, is attached as Exhibit 1.

4.2    The Parties and Class Counsel agree that, if approved, certification of the ERISA Settlement Class is a conditional certification for settlement purposes only, and if for any reason the Court does not grant final approval of the Settlement, or if final approval is not given following the appeal of any order by the Court, or if for any reason the Settlement Effective Date does not occur, the certification of the ERISA Settlement Class for settlement purposes shall be deemed null and void without further action by the Court or any of the Parties, and each Party shall retain all of its respective rights as they existed prior to execution of this Settlement Agreement, and neither this Settlement Agreement, nor any of its accompanying exhibits or any orders entered by the Court in connection with this Settlement Agreement, shall be admissible or used for any purpose in this Litigation.

4.3    The Parties and Class Counsel agree that, if approved, certification of the ERISA Settlement Class for settlement purposes is in no way an admission by Wal-Mart that class certification is proper in this Litigation for any purpose other than for settlement, in any other wage and hour litigation, or in any other litigation, against Wal-Mart. Other than for settlement purposes, Wal-Mart continues to assert that this Litigation fails to meet the prerequisites necessary for class or collective action treatment under applicable law, especially, but not solely, with respect to predominance and manageability because the need to determine individualized issues make the case unmanageable consistent with due process. The Parties and Class Counsel further agree that, other than to effectuate the Settlement of this Litigation in this jurisdiction, the certification of the ERISA Settlement

Class for settlement purposes and all documents related thereto, including this Agreement and all accompanying exhibits and all orders entered by the Court in connection with this Agreement, are not intended to be admissible in any judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or other proceeding, including without limitation any wage and hour litigation, or any other litigation, against Wal-Mart.

## 5.     TERMS OF SETTLEMENT

5.1     Subject to the other terms and conditions of this Agreement, and subject to Court approval, Wal-Mart agrees to pay the ERISA Settlement Payment of Five Million Dollars ($5,000,000) in settlement of the ERISA Settlement Class Member Released Claims. The ERISA Settlement Payment, less Attorneys' Fees and Costs, Class Representative Compensation Awards, and External Notice Costs, shall be, subject to Court approval: (i) transferred to the Plan in accordance with the timetable set forth in Section 5.7; and (ii) allocated by the Plan in accordance with the Plan of Allocation to be proposed and developed by Class Counsel subject to Court approval. The Plan of Allocation proposed and developed by Class Counsel is attached hereto as Exhibit 2. Wal-Mart shall have no responsibility or liability for the Plan of Allocation or any allocations, distributions or use of funds made pursuant to such Plan and shall take no position for or against the proposed Plan of Allocation or any allocations, distributions, or use of funds proposed in such Plan, provided however, that Wal-Mart shall have the right to review and comment on the proposed Plan of Allocation with respect to feasibility.

5.2     Class Counsel shall request that the Court approve the following as Class Representative Compensation Awards: (i) Robert King be paid the reasonable compensation of Five Thousand Dollars ($5,000); and (ii) Keith Rhone be paid the reasonable compensation of Twenty-Five Hundred Dollars ($2,500). The Class Representative Compensation Awards shall be paid from the ERISA Settlement Payment.

5.3     Class Counsel shall apply to the Court for an award of Attorneys Fees' and Costs which shall be paid from the ERISA Settlement Payment. Wal-Mart will not oppose Class Counsel's application for a reasonable award of Attorneys' Fees and Costs.

5.4     External Notice and Administration Costs, such as the cost to publish notice in newspapers in accordance with Section 6.1.1 of this Agreement, expenses related to the QSF (including accounting costs, taxes, tax return costs), and the costs (if any) for a third-party vendor to mail checks to former participants, and to calculate distributions or allocations to current or former participants shall be paid from the ERISA Settlement Payment. Internal Notice and Administration Costs, such as the cost to post notice on Wal-Mart websites in accordance with Section 6.1.2, shall be borne by Wal-Mart in addition to the ERISA Settlement Payment.

5.5     The ERISA Settlement Payment shall be funded through a QSF in accordance with Section 8 of this Agreement.

5.6     Wal-Mart shall transfer funds into the QSF according to the following schedule:

11

5.6.1. Wal-Mart shall transfer the anticipated External Notice and Administration Costs within ten (10) calendar days following the date on which the Court enters an order granting preliminary approval of the Settlement, or within seven (7) calendar days of the date on which the Court enters an order approving the QSF, whichever is later. Prior to the Settlement Effective Date, Wal-Mart shall continue to periodically fund the QSF to cover additional External Notice and Administration Costs, if necessary, in accordance with Section 5.4.

5.6.2. Within ten (10) calendar days following the Settlement Effective Date, Wal-Mart shall transfer to the QSF any additional amounts necessary to transfer the maximum ERISA Settlement Payment so that the total amounts transferred by Wal-Mart to the QSF equal Five Million Dollars ($5,000,000).

5.7    The Parties shall approve disbursements from the QSF according to the following schedule:

5.7.1. External Notice and Administration Costs may be disbursed upon receipt and approval of an invoice for such costs from the Claims Administrator.

5.7.2. Disbursement of the amounts awarded by the Court for Attorneys' Fees and Costs and Class Representative Incentive Awards shall be disbursed to the Berger & Montague, P.C. IOLTA Account, Acct No. 6206186060, ABA No. 036076150, Citizens Bank, within seven (7) days of the transfer of such funds into the QSF by Wal-Mart.

5.7.3. Disbursements for Settled Wage and Hour Actions.

5.7.3.1. As to each Settled Wage and Hour Action for which the Settled Wage and Hour Action Triggering Event has occurred as of the Settlement Effective Date for this Settlement, disbursements of the amounts allocated by the Plan of Allocation for each such Settled Wage and Hour Action shall be made to the Plan as promptly as practicable following the Settlement Effective Date.

5.7.3.2. As to each Settled Wage and Hour Action for which the Settled Wage and Hour Action Triggering Event has not occurred as of the Settlement Effective Date for this Settlement, disbursements of the amounts allocated by the Plan of Allocation for each such Settled Wage and Hour Action shall be made to the Plan as promptly as practicable following the occurrence of a Wage and Hour Action Triggering Event for each such Settled Wage and Hour Action.

5.7.4. Disbursements for Non-Settled Wage and Hour Actions

5.7.4.1. As to each Non-Settled Wage and Hour Action for which the Non-Settled Wage and Hour Action Triggering Event has occurred as of the Settlement

12

Effective Date for this Settlement, disbursements of the amounts allocated by the Plan of Allocation for each such Non-Settled Wage and Hour Action shall be made to the Plan as promptly as practicable following the Settlement Effective Date.

5.7.4.2. As to each Non-Settled Wage and Hour Action for which the Non-Settled Wage and Hour Action Triggering Event has not occurred as of the Settlement Effective Date for this Settlement, disbursements of the amounts allocated by the Plan of Allocation for each such Non-Settled Wage and Hour Action shall be made to the Plan as promptly as practicable following the occurrence of a Non-Settled Wage and Hour Action Triggering Event for each such Non-Settled Wage and Hour Action.

5.7.5. Disbursements of the amounts allocated by the Plan of Allocation for each No-Litigation State shall be made to the Plan as promptly as practicable following the Settlement Effective Date.

## 6. NOTICE

6.1  The parties agree to provide notice to the members of the ERISA Settlement Class which shall summarize the terms of the Settlement, shall advise ERISA Settlement Class Members of their right to object to the Settlement, the process by which such objections must be made, and the date set by the Court to hold a hearing with respect to final approval of the Settlement. A form of the full notice and summary notice to be made to the ERISA Settlement Class Members as agreed to by the Parties subject to Court approval is attached hereto as Exhibit 3. Such notice shall be made as follows:

6.1.1.  By way of publication of the summary notice once in *Parade* Magazine or *USA Today* (on a national basis) and over Business Wire (on a national basis);

6.1.2.  By publishing the full notice on the Wal-Mart benefits website, and one or more additional website or websites to be agreed to by the parties; and

6.1.3.  By sending the full notice by U.S. mail to all counsel of record in the Non-Settled Wage and Hour Actions and the Settled Wage and Hour Actions.

6.2  The Parties agree that notice shall be provided to the appropriate federal and state officials in accordance with CAFA. This CAFA notice shall be made by the Claims Administrator within ten (10) days after the filing of the motion for preliminary approval by Class Counsel.

## 7.   OBJECTIONS

7.1   An ERISA Settlement Class Member who wishes to object to the Settlement must notify the Court of his or her objection, in writing, on or before a date that is approximately forty-five (45) days after the date on which notice is published.

7.2   The written objection must be made under penalty of perjury and include the following information:

    7.2.1.  A heading referring to this Litigation;

    7.2.2.  The Objector's name, address, and telphone number, and the contact information for any attorney retained by the Objector in connection with the objection or otherwise in connection with the Litigation;

    7.2.3.  The location(s) and state or states and the type of facility or facilities where the Objector worked for Wal-Mart, position and dates of employment;

    7.2.4.  A detailed statement of the specific factual and legal basis for each objection;

    7.2.5.  A statement as to whether the Objector intends to appear at the final fairness hearing, either in person or through counsel, and, if through counsel, identifying the counsel by name, address and telephone number;

    7.2.6.  A list of any witnesses the Objector may call at the final fairness hearing, together with a brief summary of each witness's expected testimony;

    7.2.7.  A list of and copies of any exhibits which the Objector may seek to use at the final fairness hearing;

    7.2.8.  A list of any legal authority the Objector may present at the final fairness hearing;

    7.2.9.  The Objector's signature, executed under penalty of perjury.

## 8.   QUALIFIED SETTLEMENT FUND

8.1   At the times required by Section 5.6 of this Agreement, Wal-Mart shall transfer the required portions of the Class Settlement Amount to a trustee selected jointly by Class Counsel and Wal-Mart (the "*Trustee*") to be held as a separate trust constituting a QSF as described in Treasury Regulation §1.468B-1, 26 C.F.R. §1.468B-1. Class Counsel and Wal-Mart jointly shall, and shall cause the Trustee to, take such steps as shall be necessary to qualify the QSF under §468B of the Internal Revenue Code, 26 U.S.C. §468B, and the regulations promulgated pursuant thereto. Wal-Mart shall be considered the "transferor" within the meaning of Treasury Regulation §1.468B-1(d)(1). The Claims Administrator shall be the "administrator" within the meaning of Treasury Regulation §1.468B-2(k)(3). The Parties shall cooperate in securing an order of the Court to establish the QSF in accordance with the terms hereof in conjunction with its preliminary

14

approval of the Settlement and Notice as described in Section 10.1. The Court shall retain jurisdiction over the administration of the QSF. Wal-Mart shall supply to the Claims Administrator and to the Internal Revenue Service the statement described in Treasury Regulation §1.468B-3(e)(2) no later than February 15th of the year following each calendar year in which Wal-Mart makes a transfer to the QSF. It is intended that the transfers to the QSF will satisfy the "all events test" and the "economic performance" requirement of §461(h)(1) of the Internal Revenue Code, and Treasury Regulation §1.461-1(a)(2). Accordingly, Wal-Mart shall not include the income of the QSF in its income. Rather, the QSF shall be taxed on its modified gross income, excluding the sums transferred to it, and shall make payment of resulting taxes from its own funds. In computing the QSF's modified gross income, deductions shall be allowed for its administrative costs and other deductible expenses incurred in connection with the operation of the QSF, including, without limitation, state and local taxes and legal, accounting, and other fees relating to the operation of the QSF.

8.2     Upon establishment of the QSF, the Trustee shall apply for an employer identification number for the QSF utilizing Internal Revenue Service Form SS-4 and in accordance with Treasury Regulation §1.468B-2(k)(4).

    8.2.1.   If requested by either Wal-Mart or the Claims Administrator, the Claims Administrator, the Trustee, and Wal-Mart shall fully cooperate in filing a relation-back election under Treasury Regulation §1.468B-1(j)(2) to treat the QSF as coming into existence as a settlement fund as of the earliest possible date.

    8.2.2.   Following its deposits as described in Section 5.6 of this Agreement, Wal-Mart shall have no responsibility, financial obligation, or liability whatsoever with respect to the investment of QSF funds, payment of federal, state, and local income, employment, unemployment, excise, and other taxes imposed on the QSF or its disbursements or payment of the administrative, legal, accounting, or other costs occasioned by the use or administration of the QSF, since it is agreed that such deposits shall fully discharge Wal-Mart's obligation to Class Members, Class Counsel and expenses of administration in respect to the disposition of the Class Settlement Amount hereunder.

    8.2.3.   The Claims Administrator shall cause to be filed, on behalf of the QSF, any required federal, state, and local tax returns, information returns, and tax withholdings statements in accordance with the provisions of Treasury Regulation §1.468B-2. The Claims Administrator may, at the expense of the QSF, retain legal counsel and an independent, certified public accountant to consult with and advise the Claims Administrator or the Trustee with respect to the preparation and filing of such materials and the federal, state, and local tax compliance of the QSF. Either Wal-Mart or the Claims Administrator, independently or jointly, may, but are not required to, apply to the Internal Revenue Service and/or any applicable state taxing authority for an advance ruling as to any issue pertinent to the qualification of the QSF under Internal

15

Revenue Code §468B and Treasury Regulations promulgated thereunder, its tax status under applicable state law, and/or its tax payment, reporting, and withholding duties, so long as Wal-Mart and the remaining Parties are reasonably satisfied that such application and ruling will not compromise the confidentiality of settlement evidenced herein as required by Section 20 of this Agreement.

8.3    It is agreed that any amounts paid under this Agreement do not represent a modification of the paid Claimants' previously credited hours of service or compensation to be taken into account under any employee benefit plan sponsored, or contributed to, by Wal-Mart or any jointly-trusteed benefit plans. Such amounts will not form the basis for additional contributions to, benefits under, or any other monetary entitlement under, Wal-Mart sponsored or jointly-trusteed benefit plans.

8.3.1.    Wal-Mart retains the right to modify the language of its Benefit Plans, to seek to have modified the language of any jointly-trusteed Benefit Plans, and to make clear that any amounts paid pursuant to this Agreement are not for "hours of service" (or any similar term) and are not "compensation" (or any similar term) as defined by the applicable Benefit Plans and that additional contributions or benefits are not required by this Agreement.

8.3.2.    This Agreement and any distributions made pursuant to it will have no effect on Benefit Plan eligibility, vesting, contributions, or benefits of or on behalf of current or former employees covered by this Agreement.

8.3.3.    For purposes of this Agreement, "**_Benefit Plan_**" means each and every "employee benefit plan" as defined in 29 U.S.C. § 1002(3), and each and every other plan, fund, program, or arrangement that relates to bonus, pension, stock option, stock purchase, stock appreciation, welfare, profit-sharing, retirement, disability, vacation, severance, hospitalization, insurance, Compensation, deferred compensation, or any other similar benefit for one or more current or former employees or their beneficiaries.

8.4    The taxable year of the QSF shall be the calendar year in accordance with Treasury Regulation §1.468B-2(j). The QSF shall utilize the accrual method of accounting within the meaning of § 446(c) of the Internal Revenue Code.

8.5    The QSF shall be invested in U.S. Treasury securities, securities issued by United States agencies or fully insured by the FDIC, deposits and certificates of deposit fully insured by the FDIC and backed by the full faith and credit of the U.S. Treasury, or short term debt or commercial paper guaranteed by the FDIC under the Temporary Liquidity Guaranty Program and backed by the full faith and credit of the U.S. Treasury, provided that such portions of the QSF as may reasonably be required to pay current QSF administrative expenses, taxes, or disbursements to Claimants or Class Counsel may be deposited in bank accounts which are federally insured to the greatest extent practicable.

16

All federal, state, and local taxes imposed with respect to income earned by, or property of, the QSF, shall be paid from the QSF.

8.6     The Claims Administrator may amend, either in whole or in part, any administrative provision of this Section or the trust instrument through which the QSF is established to maintain the qualification of the QSF pursuant to the above-described authorities provided that the rights and liabilities of the Parties hereto and the Class are not altered thereby in any material respect.

## 9.     ERISA SETTLEMENT CLASS MEMBER RELEASED CLAIMS

9.1     Subject to final approval by the Court of the Settlement, and for good and valuable consideration set forth herein, the receipt of which is hereby acknowledged, the Named Plaintiffs, the Class Representatives, and all members of the ERISA Settlement Class, on behalf of themselves and on behalf of the Plan ("***Releasing ERISA Settlement Class Members***"), do, as of the Settlement Effective Date, hereby irrevocably release, acquit, and forever discharge Wal-Mart of and from any and all claims, rights, penalties, demands, damages, debts, accounts, duties, costs and expenses (other than those costs and expenses required to be paid pursuant to this Agreement), liens, charges, complaints, causes of action, obligations, or liability, for all claims that they brought or could have brought in their own right or on a representative basis, that the Releasing ERISA Settlement Class Members directly, indirectly, derivatively, or in any other capacity ever had, now have, or hereafter may have under ERISA that were asserted in the Litigation or that could have been asserted but were not asserted in the Litigation, arising during the ERISA Settlement Class Period, whether known or unknown, arising out of the alleged underpayment of employee wages, including any claims related to the Settled Wage and Hour Actions, the Non-Settled Wage and Hour Actions, and the No-Litigation States. The Releasing ERISA Class Members further release, acquit, and forever discharge Wal-Mart of and from any and all claims, rights, penalties, demands, damages, debts, accounts, duties, costs and expenses, liens, charges, complaints, causes of action, obligations, or liability based on or arising from the development of the Plan of Allocation or any allocation, distribution, or use of funds pursuant to said Plan. The Releasing ERISA Class Members further covenant to obtain any necessary Court approval with respect to the ERISA Class Member Released Claims as they apply to any ERISA Settlement Class Members who are minors.

9.2     This release also includes a release of all claims for attorneys' fees, costs and/or expenses and costs incurred by any of the Releasing ERISA Settlement Class Members or by Class Counsel in connection with the Litigation and the Settlement of the Litigation, other than the Attorneys' Fees and Costs awarded by the Court in accordance with this Agreement.

9.3     The Releasing ERISA Settlement Class Members understand and agree that this release is a full and final general release applying to both those claims released in Section 9.1 that are currently known, anticipated, or disclosed to Plaintiffs and to all such claims that are presently unknown, unanticipated, or undisclosed to any or all Plaintiffs arising out of the alleged facts, circumstances, and occurrences underlying: (i) the claims set forth in the

Litigation; or (ii) Wal-Mart's conduct with respect to the Litigation, provided, however, that nothing in this Agreement shall release any claims arising in *Braden v. Wal-Mart Stores, Inc.* (W.D. Mo., Case No. 08-3109-CV-S-GAF), nor shall anything in this Agreement release claims concerning plans other than the Plan (as defined in Section 2.30) or claims concerning the Plan, such as routine claims for benefits under ERISA § 502(a)(1)(B) wholly unrelated to the transactions and occurrences that were directly or indirectly at issue in the Litigation, MDL 1735, the Settled Wage and Hour Actions or the Non-Settled Wage and Hour Actions. In exchange for the good and valuable consideration set forth herein, the Releasing ERISA Settlement Class Members waive any and all rights or benefits that they as individuals or the classes may now have as a result of the alleged facts, circumstances, and occurrences underlying the claims set forth in the Litigation under the terms of Section 1542(a) of the California Civil Code (or similar statute in effect in any other jurisdiction), which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH DEBTOR.

10.   DUTIES OF THE PARTIES PRIOR TO PRELIMINARY COURT APPROVAL

10.1 Class Counsel shall promptly apply to the Court for the entry of an order granting preliminary approval of the Settlement, and related documents, including the following:

  10.1.1. Preliminarily approving the terms of the Settlement as set forth in this Agreement;

  10.1.2. Approving as to form and content the proposed Notice attached hereto as Exhibit 3;

  10.1.3. Approving such other documents or procedures relating to the Settlement as the Court deems appropriate;

  10.1.4. Directing the provision of notice in accordance with this Agreement;

  10.1.5. Preliminarily approving the Settlement;

  10.1.6. Preliminarily certifying the ERISA Settlement Class for purposes of Settlement in accordance with Section 4.1; and

  10.1.7. Approving Class Counsel, the Class Representatives and the Claims Administrator in accordance with this Agreement.

10.2 Wal-Mart shall fully cooperate with Class Counsel to obtain preliminary approval.

18

10.3    The Parties shall continue to take any steps necessary to stay the Litigation so as to preserve the status quo in the event that the Settlement Effective Date does not occur.

11.     **DUTIES OF THE PARTIES FOLLOWING PRELIMINARY COURT APPROVAL**

11.1    Following preliminary approval of the Settlement by the Court, Class Counsel will submit a proposed Final Judgment and Order of Dismissal substantially in the form attached hereto as Exhibit 4.  The proposed Final Judgment and Order of Dismissal shall:

    11.1.1.    Approve the Settlement, adjudging the terms thereof to be fair, reasonable, and adequate and directing consummation of its terms and provisions;

    11.1.2.    Approve Class Counsel's award of Attorneys' Fees and Costs;

    11.1.3.    Approve the Class Representative Compensation Awards;

    11.1.4.    Finally certify the ERISA Settlement Classes for Settlement purposes in accordance with Section 4.1 and Exhibit 1 to this Agreement;

    11.1.5.    Dismiss this Litigation on the merits and with prejudice and permanently barring the Named Plaintiffs, the Class Representatives, and all ERISA Settlement Class Members from further prosecuting any of the ERISA Class Member Released Claims against Wal-Mart or the Plan.

11.2    Wal-Mart shall fully cooperate with Class Counsel to obtain final approval and the dismissal of the Litigation.

12.     **MUTUAL FULL COOPERATION**

12.1    The Parties and their undersigned counsel shall use their best efforts to effectuate this Settlement Agreement, and shall cooperate including the taking of all steps and efforts contemplated by this Settlement Agreement, and any other lawful steps and efforts which may become necessary by any order of the Court or otherwise, to effectuate this Settlement Agreement and to promptly seek and obtain the Court's preliminary and final approval of this Settlement Agreement (including providing class notice under Federal Rule of Civil Procedure 23(c) and (e)) and to secure the prompt, complete, and final dismissal with prejudice of the Litigation).  In agreeing to cooperate fully with each other to accomplish the terms of this Settlement, the Parties promptly shall take all necessary action to implement this Agreement, including but not limited to execution of all necessary documents and the taking of such other actions as may reasonably be necessary to implement the terms of this Settlement.  The Parties shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate the terms of this Settlement.

19

## 13.    STATEMENT OF NO ADMISSION

13.1    Nothing contained in this Agreement shall be construed or deemed an admission of liability, culpability, or wrongdoing on the part of Wal-Mart, and Wal-Mart denies liability therefor. Nor shall this Agreement constitute an admission by Wal-Mart as to any interpretation of laws or as to the merits, validity, or accuracy of any claims made against it in the Litigation. Likewise, nothing in this agreement shall be construed or deemed an admission with regards to the validity of any of Wal-Mart's defenses or affirmative defenses. Each of the Parties has entered into this Settlement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses.

13.2    This Agreement and all related documents, and all actions taken in implementation of the Settlement, including any statements, discussions, or communications, and any materials prepared, exchanged, issued, or used during the course of the negotiations leading to this Agreement, are settlement documents and shall be inadmissible in evidence and shall not be used for any purpose in any judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or proceeding, including any wage and hour or other litigation against Wal-Mart, for any purpose, except in an action or proceeding to approve, interpret, or enforce the terms of this Agreement.

13.3    The Claim Forms or other evidence produced or created by any Class Member in connection with the claims resolutions procedures pursuant to this Settlement, and any actions taken by Wal-Mart in response to such Claim Forms, Exclusion Letters, or other evidence, do not constitute, are not intended to constitute, and will not be deemed to constitute an admission by Wal-Mart of any violation of any federal, state, or local law, statute, ordinance, regulation, rule, or executive order, or any obligation or duty at law or in equity.

13.4    The Parties and Class Counsel agree that certification of the ERISA Settlement Class in accordance with the terms of this Agreement is for settlement purposes only. Nothing in this Agreement will be construed as an admission or acknowledgement of any kind that any class should be certified in this Litigation or in any other action or proceeding. Further, neither this Agreement, nor the Court's actions with regard to this Agreement, will be deemed admissible in any judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or proceeding regarding the propriety of class certification or collective treatment. In the event that this Agreement is not approved by the Court, any appellate court, otherwise fails to become effective and enforceable, or is terminated, Wal-Mart will not be deemed to have waived, limited, or affected in any way any of its objections or defenses in the Litigation. Such objections and defenses include, but are not limited to, Wal-Mart's objections and defenses to any class certification and FLSA collective action treatment.

20

## 14.    VOIDING THE AGREEMENT

14.1    Subject to Subsections 14.2 and 14.3, in the event that this Settlement is not approved, or if for any reason the Settlement Effective Date does not occur, the Settlement shall be deemed null, void, and unenforceable and shall not be used nor shall it be admissible in any subsequent proceedings either in this Court or in any other judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or other proceeding, including without limitation any wage and hour, or other litigation against Wal-Mart.  In the event the Settlement Effective Date does not occur, any party to this Agreement may terminate this Agreement in which case all parties shall be returned to the same position in the Litigation as of the day immediately before the Execution of this Agreement.

14.2    In the event that the Court does not approve the Attorneys' Fees and Costs in the amount requested by Class Counsel, or in the event that the Attorneys' Fees and Costs requested by Class Counsel is reduced, that finding shall not be a basis for rendering any unrelated section of Settlement null, void, or unenforceable.  Class Counsel retain their right to appeal any decision by the Court regarding the Attorneys' Fees and Costs and such appeal shall not be deemed an appeal of the Settlement. The merits and substance of the Settlement shall be approved by the Court separately and independently of the Court's decisions regarding Class Counsel's application for Attorneys' Fees and Costs.

14.3    Wal-Mart, in its sole discretion, shall have the right to declare the settlement with the members of the ERISA Settlement Class null, void, and unenforceable if, as of the fifth (5th) day before the date set for the hearing on Final Approval:  (i) the Plan, by and through the Independent Fiduciary engaged for the specific purpose of reviewing this Settlement, and the Independent Fiduciary, in its capacity as a fiduciary of the Plan, have not agreed in writing, in consideration of the terms herein, to grant, effective upon the Settlement Effective Date, a release of Wal-Mart releasing the same claims as the release given by the ERISA Settlement Class as set forth in Section 9 of this Agreement; and (ii) the Independent Fiduciary has not determined that such release and this Settlement meet the requirements of the Class Exemption.

## 15.    PARTIES' AUTHORITY

15.1    The respective signatories to this Agreement each represent that they are fully authorized to enter into this Settlement and bind the respective Parties to its terms and conditions.

## 16.    INDEPENDENT FIDUCIARY

16.1    Wal-Mart shall retain an Independent Fiduciary within thirty (30) days after the Execution of this Agreement by all signatories.  The Independent Fiduciary shall have no authority to renegotiate or seek to alter any of the terms of the Settlement as set forth in this Agreement.

16.2    Wal-Mart and Class Counsel shall comply with all reasonable requests for information made by the Independent Fiduciary for the purpose of reviewing this Agreement as it

pertains to the ERISA Settlement Class. Any disputes shall be referred to Judge Layn Phillips for decision.

## 17.    NO PRIOR ASSIGNMENTS

17.1    The Parties represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or right released and discharged in this Settlement.

## 18.    NOTICES

18.1    Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of: (i) the date given, if given by hand delivery; (ii) within one (1) business day, if sent by overnight delivery services such as Federal Express or similar courier; or (iii) the third business day after mailing by United States registered or certified mail, return receipt requested. All notices given under this Agreement shall be addressed as follows:

18.1.1.    To the Class:

Todd S. Collins
BERGER & MONTAGUE, PC
1622 Locust Street
Philadelphia, Pennsylvania 19103
Tele: (215) 875-3040
Fax: (215) 875-4604
Email: TCollins@bm.net

18.1.2.    To Wal-Mart:

Brian L. Duffy
Naomi G. Beer
GREENBERG TRAURIG, LLP
1200 17th Street, Suite 2400
Denver, Colorado 80202-5835
Tele: (303) 572-6500
Fax: (303) 572-6540
Email: DuffyB@gtlaw.com
      BeerN@gtlaw.com

B. Michael Bennett
WAL-MART STORES, INC.
702 SW Eighth Street
Bentonville, Arkansas 72716-0215

19.

22

## 20.    CONFIDENTIALITY

20.1    The negotiations, terms, and existence of this Settlement will remain strictly confidential and shall not be discussed with anyone other than the Parties of record, their accountants and financial advisors, counsel of record, their retained consultants, including but not limited to National Coordinating Counsel for Wal-Mart and the mediator Judge Layn Phillips, or another mediator agreed to by the Parties. Notwithstanding the provisions of this subsection, Wal-Mart may disclose the Settlement in filings that it is required to make with the Securities and Exchange Commission, including 10-Q and 10-K filings, and Class Counsel may make an announcement of the Settlement on their website, and Class Counsel may disclose the Settlement in its filing with the Court seeking preliminary approval.

20.2    Any confidentiality associated with the final terms of this Settlement shall expire upon Preliminary Approval of the Settlement by the Court, except that the negotiations and discussions preceding submission of the Settlement to the Court for preliminary approval, and any negotiations and discussions between the time of preliminary approval and final approval shall remain strictly confidential, unless otherwise ordered by the Court.

## 21.    DOCUMENTS AND DISCOVERY

21.1    Within sixty (60) days after all Settled Wage and Hour Action Triggering Events and Non-Settled Wage and Hour Action Triggering Events have occurred, each of Class Counsel shall take steps necessary to destroy or erase all documents and data produced by Wal-Mart to Class Counsel in connection with this Litigation and which are currently in Class Counsel's possession, custody, or control. Class Counsel shall certify to Wal-Mart their good faith efforts to comply with this provision.

## 22.    MISCELLANEOUS PROVISIONS

22.1    <u>Construction</u>. The Parties agree that the terms and conditions of this Settlement are the result of lengthy, intensive arms-length negotiations between the Parties and that this Settlement shall not be construed in favor of or against any Party by reason of the extent to which any Party or her or his counsel participated in the drafting of this Settlement.

22.2    <u>Captions and Interpretations</u>. All terms of this Settlement Agreement are contractual and not mere recitals. The terms are and shall be binding upon, and inure to the benefit of, each of the Parties hereto, their agents, attorneys, employees, successors and assigns, and upon all other persons claiming an interest in the subject matter hereof through any of the Parties hereto, including any Class Member. Paragraph titles or captions contained in this Settlement are a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement or any provision.

22.3    <u>Modification</u>. This Settlement may not be changed, altered, or modified, except in a writing signed by the Parties, and approved by the Court. Notwithstanding the forgoing, the Parties agree that any dates contained in this Agreement may be modified by

23

agreement of the Parties without Court approval if the Parties agree and cause exists for such modification. This Settlement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

22.4    Integration Clause.  This Agreement, the Exhibits hereto, and any other documents delivered pursuant hereto contain the entire agreement between the Parties relating to the resolution of the Litigation, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged in this Agreement.  No rights under this Settlement may be waived except in writing and signed by the Party against whom such waiver is to be enforced.

22.5    Binding on Assigns.  This Settlement shall be binding upon, and inure to the benefit of, the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

22.6    Class Counsel Signatories.  Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Settlement Agreement on behalf of his or her respective clients, subject to Court approval.  It is agreed that because the Class Members are so numerous, it is impossible or impractical to have each Class Member execute this Settlement.  The Notice will provide all Class Members with a summary of the Settlement, and will advise all Class Members of the binding nature of the release.  Excepting only those Class Members who timely submit an Exclusion Letter, the Notice shall have the same force and effect as if this Settlement were executed by each Class Member.

22.7    Counterparts.  This Agreement may be executed by facsimile signature and in any number of counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one and the same Agreement, which shall be binding upon and effective as to all Parties.

22.8    Arbitration Between the Parties.  The Parties agree to binding, non-appealable arbitration before the Honorable Layn R. Phillips to resolve any disagreements over the implementation of the terms of the Settlement Agreement or any other documents necessary to effectuate the Settlement.  Unless otherwise ordered by Judge Phillips, the Parties will split the costs of the arbitration and all Parties will bear their own attorneys' fees.

22.9    Continuing Jurisdiction.  Subject to the arbitration provisions contained in Section 22.8 of this Agreement, the Nevada District Court retains exclusive jurisdiction over all matters relating to the implementation and enforcement of the Agreement.

IN WITNESS WHEREOF, the Parties hereto, through their fully authorized representatives, have agreed to this Settlement Agreement as of the dates indicated below.

On Behalf of Wal-Mart:

Dated: May 26, 2009

WAL-MART

By: _____
B. Michael Bennett

Dated: May 26, 2009

GREENBERG TRAURIG, LLP

By: _____
Brian L. Duffy

On behalf of the Class, Class Counsel:

Dated: May 26, 2009

BERGER & MONTAGUE, P.C.

_____
Todd S. Collins

Dated: May ___, 2009

KELLER ROHRBACK L.L.P.

_____
Lynn Lincoln Sarko

Dated: May ___, 2009

ANN MILLER, LLC

_____
Ann Miller

MDL Co-Lead Counsel:

BONSIGNORE & BREWER
THE MILLS LAW FIRM, LLC

Individually and on behalf of the Class:

Dated: May ___, 2009

_____
Robert J. King

_____
Keith Rhone

25