# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

IN RE:  WAL-MART WAGE AND HOUR
EMPLOYMENT PRACTICES
LITIGATION

_____

THIS DOCUMENT RELATES TO ALL
CASES EXCEPT KING v.
WAL-MART STORES, INC., CASE NO.
07-1486-WY

MDL 1735

**Docket No**. 2:06-CV-00225-PMP-PAL
(BASE FILE)

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION
## TO REQUIRE OBJECTORS GAONA, SWIFT, ANDREWS AND MADDOX
## AND THEIR ATTORNEYS TO POST APPEAL BONDS, AND SEEKING ANY OTHER
## APPROPRIATE RELIEF TO PROTECT THE CLASS

## I.  INTRODUCTION

On November 2, 2009, the Court granted final approval of a settlement that provides substantial monetary and injunctive relief to a Class comprising nearly 3,200,000 employees, expressly finding that the settlement was a remarkable result in this case.  This settlement is now under attack by a pack of professional objectors who filed notices of appeal for the sole purpose of extorting money from the settlement fund in exchange for dropping frivolous appeals.

The objectors' motivation is not theoretical.  Professional objectors Bandas, Pentz, Cochran and Siegel are well known to the courts, and have been repeatedly chastised and sanctioned for misusing the judicial process for personal gain.  Indeed, Bandas and Pentz have preyed on most of the Wal-Mart wage and hour class settlements this year, objecting to at least six other settlements.  The courts in each of those cases have rejected the objections as baseless, and have further recognized the objectors for what they are, extortionists.  Declaration of Carolyn Beasley Burton ("Burton Decl."), Exh. 1, paragraph 19-20; *see also* Dkt No. 411-1, ¶¶ 19-20.

Bandas filed appeals in at least three of those cases, only to abruptly drop each such appeal shortly thereafter.  Burton Decl., Exhs. 1-3, *Sarda v. Wal-Mart*, Case No. 1D09-4881, Florida First District Court of Appeal; *Carter v. Wal-Mart*, 2006 CP1500839, South Carolina Charleston County Common Pleas Court; and *Hale v. Wal-Mart Stores, Inc.*, Case No. 01-218710, Circuit Court of Jackson County.  Significantly, Bandas dropped those appeals without any substantive changes being made to the underlying settlements.  But that was never the point.  The point was to extort money from the class by threatening to tie up those settlements for years on appeal.

This is a clear abuse of process.  Quite simply, the appellate courts are not vehicles for unethical lawyers to use to extort money from settlement funds that were created to compensate the plaintiffs and the class counsel whose work created the fund.

But Bandas and his ilk are at it again,[1] this time threatening to tie up the settlement in MDL-1735.  The Court has already found that these objections lack any merit.  And, indeed, these same unfounded objections have been recycled and rejected by the courts in each of the other Wal-Mart cases, clearly indicating that Bandas, Pentz and the other professional objectors intentionally filed frivolous objections here.  The Court must put an end to this sort of abuse, both through the imposition of an appropriately substantial appeal bond and through any other exercise of the Court's power to prevent such abuse.

## II.  SUMMARY OF PROCEEDINGS

The counsel who filed the objections and appeals at issue here are professional objectors.  The objections they filed were unsupported by applicable law, conflict with the facts in the record, and were merely recycled from canned objections that were advanced and rejected in the other Wal-Mart class action settlements where these professional objectors likewise tried to harm those classes.

Objector Gaona (represented by Bandas and Rasmussen), for example, asserted that the mailed notice program was inadequate, when the evidence instead showed that notice was sent to each of the nearly 3,200,000 Class Members via first class mail, and was extraordinarily thorough, *reaching some 98% of Class Members*.  The notice was also published nationally and on the designated website set up by the claims administrator.

Objectors Swift, Andrews and Maddox (represented by Siegel, Sweeney, Pentz and Cochran) also argued, contrary to federal law, that the attorneys' fees should not have been based upon the ceiling amount of the Settlement.  These objections are contrary to applicable law (*see, e.g.*, *Boeing Co. v. Van Gamert,* 444 U.S. 472, 478 (1980); *Williams v. MGM-Pathe Communications Co.,* 129

---

[1] Fellow objectors, Siegel and Pentz, also have a colorful history of filing frivolous objections and appeals in class actions.  See *In re AT&T Corp*., 455 F.3d 160 (3rd Cir. 2006) (unsuccessful objection to attorney fee award); *Carlson v. Xerox Corp*, 2009 WL 4640661 (2nd Cir. 2009) (Unsuccessful objection to attorney fee award, cost award and class notice); *In re Ins. Brokerage Antitrust Litigation*, 579 F.3d 241 (3rd Cir. 2009) (unsuccessful appeal of settlement and attorney fees) and *In re Bristol-Myers Squibb Securities Litigation*, 2007 WL 2143284 (3rd Cir. 2007) (unsuccessful appeal of attorney fees);  *Taubenfeld v. AON Corp*., 415 F.3d 597 (7th Cir. 2005) (unsuccessful appeal of attorney fee award); *Spark v. MBNA Corp.*, 48 Fed.Appx. 383 (3rd Cir. 2002) (unsuccessful appeal of settlement).

F.3d 1026, 1027 (9th Cir. 1997)), and thus, evidence bad faith.  Objectors Andrews and Maddox also argue that the Court should have awarded a fee of only 10% of the settlement fund, citing only inapposite caselaw pertaining to coupon settlements, unlike the cash settlement provided here, again indicative of bad faith.

The Court held a hearing on October 19, 2009, on Plaintiffs' motion for final approval of the settlement.  None of the Objectors or their counsel appeared at the Final Approval Hearing, despite notice to the Court of their intention to appear, and the Court overruled their objections.  In so ruling, the Court observed that the objections were frivolous.  After receiving briefing and argument from both Wal-Mart's counsel and Plaintiffs' counsel that these same professional objectors made virtually identical objections in several other Wal-Mart cases, ostensibly to demand ransom by hijacking class action settlements, the Court indicated that it would promptly hold a hearing to determine whether to impose a Rule 7 bond or other sanctions if they used similar tactics here.  Fed. R. App. P. 7.  (Docket # 482, p. 3, Docket # 491, § 4.)

The Court thereafter issued a written Order granting final approval on November 2, 2009.  On November 23, 2009, Objector Jessica Lynn Gaona, represented by Nevada counsel Lisa A. Rasmussen and Texas counsel Christopher A. Bandas, filed a notice of appeal of this Court's November 2, 2009 Order approving the settlement in this MDL 1735 class action.  On December 1, 2009, Objectors Stephanie Swift and Fatima Andrews, represented by Ohio counsel Edward Cochran and Massachusetts counsel John Pentz, filed a notice of appeal of the November 2, 2009 Order and the November 20, 2009 Minute Order, as did Objector Deborah Maddox, represented by Ohio attorneys Edward Siegel and Francis Sweeney.

Because the proposed appeals will damage both Class Members and Class Counsel by delaying their receipt of settlement funds, and because the Objectors have no credible basis for appealing the Court's rulings of November 2 and November 20, 2009, Class Counsel respectfully request that Objectors and their attorneys be required to post bonds of at least $715,000 for each appeal ($990,000 if attorneys' fees are allowed), pursuant to Fed. R. App. P. 7.  This amount includes damages for delay

in the use of the settlement funds, increased administrative costs, as well as the Rule 39 costs for this appeal.  Fed. R. App. P. 39.

### III.  AN APPEAL BOND IS APPROPRIATE IN THIS CASE.

Any appeal of the approval of this settlement is substantively baseless. Under Fed. R. Civ.  P. 23(e), a district court has broad discretion to determine whether a class action settlement is fair, adequate, and reasonable, based on the law, facts and circumstances of the case.  *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998).  It is well-established that the standard for appellate review of this Court's fee award is abuse of discretion.  *See In re FPI/Agretech Securities Litig., supra*, 105 F.3d at 472.

Although Objectors have filed flimsy notices of appeal, the scope of each appeal is limited to issues raised in the district court.  *Sckolnick v. Harlow*, 820 F.2d 13, 14 (1st Cir. 1987) (summarily rejecting two of appellant's three issues on appeal because the issues "were not brought to the attention of the district court.").  The objections in the district court relied upon assertions of fact that were contradicted by the facts in the record (*e.g*., the asserted shortcomings of the notice procedure) and inapposite legal support (Objectors Swift and Andrews relied upon caselaw dealing with coupon settlements).  Unquestionably, this Court acted well within its discretion in rejecting such ill considered and unfounded objections.

Undeterred, the professional objectors have filed notices of appeal, thus warranting a bond hearing.  Rule 7 of the Federal Rules of Appellate Procedure provides:

> In a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal.

There is a split among the Circuit Courts of Appeal as to what may be covered in a cost bond on appeal of a class action settlement, some allowing attorneys' fees, and interest, while others do not. The Supreme Court has yet to address this split.  It should be noted that none of the Objectors resides in the Ninth Circuit.  Three of the four Objectors, Maddox, Andrews and Swift, reside in Ohio, in the Sixth Circuit, as do three of the six Objectors' attorneys, Siegel, Sweeney and Cochran.  The

4

remaining Objector, Gaona, resides in Texas, in the Fifth Circuit, as does one of her two attorneys, Bandas.  Of the remaining attorneys, Pentz resides in Massachusetts, in the First Circuit, and only Rasmussen resides in the Ninth Circuit, in Nevada.

"The nature and amount of the bond is a matter left to the sound discretion of the district court."  *Sckolnick v. Harlow*, *supra*, 820 F.2d at 15; see also *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998) ("[A] district court, familiar with the contours of the case appealed, has the discretion to impose a bond which reflects its determination of the likely outcome of the appeal.").

The Ninth Circuit has held that the costs that may be included in a Rule 7 bond are not strictly defined.  *Azizian v. Federated Department Stores, Inc.,* 499 F.3d 950, 958 (9th Cir. 2007) ("Rule 7 does not define costs on appeal.")  While a Rule 7 bond may include the costs allowable under Fed. R. App. P. 39(e), such as record preparation and filing fees, the bond is not limited to these costs. *Azizian,* 499 F.3d at 958 ("…the costs identified in Rule 39(e) are among, but not necessarily the only, costs available on appeal.")

Here, a major cost that should be covered by the bond is the delay in receipt of the settlement funds by Class Members and Class Counsel, as well as the increased claims administration expense that would be caused by appeals that could well last two years.  At present, without considering the additional costs caused by these appeals, Wal-Mart is obligated to pay approximately $70 million to the Class Members, Class Counsel, named Plaintiffs and the Claims Administrator.[2]

Applying the modest interest rate set by the Federal Reserve for the week ending December 11, 2009 of .35%, the estimated loss to the Parties caused by the delay from these frivolous appeals would be $245,000 per year, or, $490,000 here.  In addition, the Claims Administrator has estimated that the additional administration costs of a two year appeal would be approximately $200,000.  *See*

---

[2] As described in Plaintiffs' fee petitions, the actual amount Wal-Mart is obligated to pay is approximately $70 million, when the $65 million Floor is increased by the anticipated claims administration costs (without delay due to appeals), FICA payroll taxes on benefits paid to Class Members, and the costs of administering the Home Office Class.

accompanying Declaration of Amanda Myette of Rust Consulting, Inc.  Additionally, Plaintiffs anticipate incurring Rule 39 costs of at least $25,000.  Burton Decl., ¶6.[3]  Accordingly, Plaintiffs request a bond of $715,000, or $990,000 if the Court allows for attorneys' fees, to be paid in regard to each appeal to secure an amount sufficient to protect the Class against these additional costs.

It is fairly common for the District Court to require objector appellants or their counsel to post bond in large class action settlements.  For example, in *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2003 U.S. Dist. LEXIS 25788, *6 (D. Me. Oct. 7, 2003), the district court required the objector, who was represented by Mr. Pentz, to post a bond because that appeal "might be frivolous," and because imposition of sanctions on appeal pursuant to Rule 38, was "a real probability."  The court specifically concluded that a bond for "damages resulting from delay or disruption of settlement administration caused by a frivolous appeal may be included in a Rule 7 bond." *Id.*, *5.  Mr. Pentz and his client voluntarily dismissed their appeal thirteen days later.  (MDL 1361 Docket item number 325.)

Other courts, too, have had similar reactions to frivolous appeals by objectors.  For example, the Court in the Central District of California in *In re Broadcom Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 45656 (C.D. Cal. Dec. 5, 2005) required objector's attorney to post bond, holding:

> "Objector's appeal is tantamount to a stay of the judgment approving the class settlement. While Objector did not formally move to stay the Judgment, its appeal effectively imposes a stay, forcing the Class to bear the same risks.  Because there is no supersedeas bond to protect the Class from these risks, this Court finds it proper to impose a Rule 7 bond to serve the same purpose.  Indeed, Objector's appeal effectively postpones distribution of the entire judgment for well over a year.  The Class will incur administrative costs of delay, such as those described [by the…Court-appointed Claims Administrator.  As such, the bond shall include the costs of delay in the amount of $517,700.00." *Id.,* at *11-*12.

---

[3] Some courts have also permitted the recovery of attorneys' fees, including the Ninth Circuit where there is a fee shifting statute, such as here, under the Fair Labor Standard Act.  If the Court deems this measure appropriate, Plaintiffs anticipate that it will cost at least $275,000 litigating the various appeals filed here, which work will include moving to dismiss, seeking sanctions, and litigating the underlying appeals if necessary.

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO
REQUIRE OBJECTORS AND THEIR ATTORNEYS TO POST APPEAL BONDS

The concerns expressed by the *Broadcom* Court are applicable here, and similar protection should be provided to the Class in MDL 1735.

## IV.  OBJECTORS' ATTORNEYS ARE NOTORIOUS "PROFESSIONAL OBJECTORS"

Objectors' attorneys frequently make meritless objections to class action settlements and then file appeals, for no purpose other than to extort a lucrative payoff from class counsel.  This Court appears to have recognized such during the Final Approval Hearing (Dkt 482, p. 3), as have other judges in this Circuit.  In *Conroy v. 3M Corp.*, 2006 U.S. Dist. LEXIS 96169, 10-12 (N.D. Cal. Aug. 10, 2006), Judge Wilken ordered a substantial appeal bond after finding that the Bandas Law Firm repeatedly made frivolous objections to class action settlements.

> "The Court finds that the Bandas Law Firm and [objector/client] Ms. Roger's objections to the proposed settlement were unfounded, and therefore views their appeals as unlikely to succeed. … Ms. Rogers' objections were patently frivolous: *her cookie-cutter written objection bore no particular relationship to the circumstances of the settlement here…*[¶] Under the circumstances of this case, the Court finds that requiring objectors to post an appellate costs bond covering estimated taxable costs ( $ 7,500),... and expected interest on the cash portion of the settlement ($239,667) is appropriate…" *Id.* at *10-*11 (emphasis added).

Courts across the nation, in likewise recognizing that John Pentz has misused the judicial process by asserting meritless objections and appeals, have imposed appropriate appeal bonds.

> "Plaintiffs note that the counsel that represent these objectors are professional objectors.  For instance, they inform the Court that attorney John Pentz … has been criticized by courts for his canned objections.  See *In re AOL Time Warner ERISA Litig.*, No. 02 Civ. 8853, 2007 U.S. Dist. LEXIS 79545, 2007 WL 4225486, at *3 (S.D.N.Y. Nov. 28, 2007) (calling Pentz and another attorney's arguments 'counterproductive' and 'irrelevant or simply incorrect'); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 386 (D. Md. 2006) (noting that Pentz is a professional objector who 'attached himself to a plaintiff' and holding that his objection was 'not well reasoned and was not helpful.'); *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005) (faulting Pentz for failing to articulate his client's argument and putting forth 'conclusory assertions' in his client's written objection)." *In re Initial Pub. Offering Sec. Litig.*, 2009 U.S. Dist. LEXIS 93162, *81-*82 (S.D.N.Y. Oct. 5, 2009).

Furthermore, Judge Hornby in the District of Maine stated in *In re Compact Disc Antitrust Lit.,* MDL 1361, 2003 U.S. Dist. LEXIS 25788, at *6 and n.3 (D. Me. 2003): "I have previously noted that

7

Attorney Pentz…filed a groundless objection following the fairness hearing, ... and he appears to be a repeat objector in class action cases.  *See, e.g.*, *Spark v. MBNA Corp.,* 48 Fed. Appx. 385, 386 (3d Cir. 2002) (listing Mr. Pentz, from The Objectors Group, as counsel for objectors); *Tenuto v. Transworld Sys.*, 2002 U.S. Dist. LEXIS 1764, 2002 WL 188569 (E.D. Pa. Jan. 31, 2002), at *2 (same)."

Some of the many other class action settlements in which Mr. Pentz has filed objections that were rejected as meritless include *In re Warfarin Sodium Antitrust Lit*., 212 F.R.D. 231 (D. Del. 2002), aff'd, 391 F.3d 516, 533 (3d Cir. 2004); *Schwartz v. Citibank*, 50 Fed. Appx. 832, 2002 U.S. App. LEXIS 21456 (9th Cir. Sept. 10, 2002); *Morris v. Lifescan, Inc.,* 54 Fed. Appx. 663, 2003 U.S. App. LEXIS 820 (9th Cir. Jan. 16, 2003) (Pentz' appeal of objection to award by district court 33-1/3% of the common fund for attorney's fees summarily rejected); *Spark v. MBNA Corp.,* 48 Fed. Appx. 385, 2002 U.S. App. LEXIS 19594 (3d Cir. Sept. 16, 2002); *In re Relafen Antitrust Litig.,* 231 F.R.D. 52, *76-*82  (D. Mass. 2005) (Judge Young overruled objections filed by Pentz and Cochran, among others); *In re Serzone Products Liability Litig.,* 231 F.R.D. 221 (S.D. W.Va. 2005) (Pentz' fee objection overruled); *In re PayPal Litig*., No. C-02-1227-JF PVT, 2004 U.S. Dist. LEXIS 22470, 2004 WL 2445244 (N.D. Cal. Oct. 13, 2004); *In re Lucent Technologies, Inc. Sec. Litig.,* 327 F. Supp. 2d 426 (D.N.J. 2004); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 525 (E.D.N.Y. 2003), aff'd, 396 F. 3d 96 (2d Cir.), cert. denied, 544 U.S. 1044 (2005) (Pentz' objection to 18% percentage of fund fee award resulting in $220,290,160.44 in fees overruled).

Undoubtedly John Pentz' objections and appeals are not truly made to advance the interest of the class members.  Indeed, Mr. Pentz has admitted that "the bulk of his income does not come from court-awarded fees," and that the payments he receives from the parties to drop his objections "usually dwarf court awards":

> "So how does Pentz make a living? He refuses to generalize, arguing that every case is unique.  But he will acknowledge that the bulk of his income does not come from court-awarded fees…[T]hat kind of fee is the exception rather than the rule, Pentz says.

1

2

3

4

> Instead, objectors make most of their money when class counsel pay them to drop their objections. **Pentz concedes that payments from class counsel usually dwarf court awards.** Joe Whatley of Birmingham-based Whatley Drake, who faced off with Pentz in three different cases, says he has always paid Pentz to drop objections without making changes to the settlement. "It's like having to pay a tax," Whatley says.

5

6

7

Lisa Lerer, "Fringe Player, The Objector, John Pentz, Class Action Fairness Group, Sudbury, Massachusetts," Litigation 2004, a supplement to The American Lawyer & Corporate Counsel, Oct. 1, 2004.  Burton Decl., Exh. 4.

8

9

A District Court in Minnesota recently made short shrift of a request for fees filed by Objectors' counsel Edward Cochran and Edward Siegel:

10

11

12

13

14

15

16

17

18

> "The remoras are loose again.  The Court has received a motion from attorneys Edward Siegel [and] Edward Cochran…(styling themselves 'Objectors' Counsel'), seeking an award of fees.  Their motion is emphatically denied.  [¶] These objectors have contributed nothing.  Instead, in a pleading which may charitably be described as disingenuous, Objectors' Counsel argue they assisted the Court in finding class counsel's fee request unreasonable. …[¶] Their suggestion is laughable.  If the Court may be permitted an egregious paraphrase of Winston S. Churchill: Seldom in the field of securities litigation was so little owed by so many to so few.  … Their goal was, and is, to hijack as many dollars for themselves as they can wrest from a negotiated settlement. …[¶]  Objectors' request and their motion ill-befit attorneys admitted to the bar.  Accordingly, the Court holds, as a matter of fact and law, objectors have conferred no benefit whatsoever on the class or on the Court.  Objectors' Counsel are entitled to an award equal to their contribution . . . nothing." *In re UnitedHealth Group PSLRA Litig.*, 643 F. Supp. 2d 1107, *7, *9-*11 (D. Minn. 2009).

19

20

21

22

The frivolous and illogical objections made here by professional objectors are a transparent attempt to extort money from Class Counsel, and they make no bones about it.  Indeed, these professional objectors filed similar appeals this past year in three like class action settlements involving Wal-Mart.  Burton Decl., Exhs. 1-3.

23

//

24

//

25

//

26

27

28

9

As shown in the summary of those appellate proceedings below, the professional objectors promptly dropped those appeals, *without first obtaining any resolution on appeal, nor any changes or enhancements to the underlying settlement.* Burton Decl., Exhs. 1-3.

**Sarda (Ouellette) v. Wal-Mart case - Florida First District Court of Appeal - Case 1D09-4881**

09/25/2009 - Notice of Appeal, filed
10/22/2009 - Motion for Voluntary Dismissal
10/29/2009 - Dismissal

**Carter v. Wal-Mart, 2006 CP1500839,  Charleston County Common Pleas Court (South Carolina)**

05/01/2009 - Objection to Class settlement
11/19/2009 – Dismissal Order from court of appeals

**Hale v. Wal-Mart - Case No. 01-218710, Circuit Court of Jackson County (Missouri), Debbie Taylor Objector** (Bandas)

07/02/2009 -  Notice of Appeal
11/09/2009 - Motion for Dismissal of Appeal
11/10/2009 - Dismissal

This curious activity strongly suggests that the professional objectors were paid off in those cases, or, in the words of counsel Whatley, were paid a *de facto* tax before allowing the class members to receive payment under their respective settlements.  But even if this were not the case, it is clearly frivolous to file serial appeals in class action cases only to drop them shortly thereafter.  This egregious behavior clearly demonstrates that these professional objectors are not pursuing any legitimate legal issues on appeal, nor are they seeking any serious consideration by the appellate courts of any supposed deficiency in the challenged settlement.

## V.  THESE OBJECTIONS TO THE SETTLEMENT ARE PATENTLY FRIVOLOUS.

The lack of merit of the appeals is also readily apparent in the nature of the objections.  The primary complaints raised by the professional objectors are that the notice is deficient, and the attorneys' fees are too high.

**A.  Appealing the Form of Notice Is Frivolous.**

In appealing the form of notice, it is telling that the professional objectors do not identify any legal or factual deficiency with the manner and form of notice authorized here.

As this Court is aware, the Claims Administrator, Rust Consulting, sent the Notice Documents by first class mail to 3,177,706 Settlement Class Members.  Declaration of Amanda J. Myette in Support of Final Approval of Proposed Settlement (Docket No. 423) ¶ 10. The claim forms provided with the Notice are similar to those used and accepted by other courts, and conformed to the claim forms the Court approved in its Preliminary Approval Order.  *Id*. ¶ 10, 13. The Claims Administrator updated Class Members' addresses through the National Change of Address Database and used skip tracing to find addresses for Notices that were returned.  *Id.* ¶¶ 9, 11; Settlement Agreement § 7.2.5. Just under 98% of the returns were successfully redelivered.  *Id.* ¶ 11.

In addition, a Summary Notice was published nationally in *Parade Magazine* on August 16, 2009, and in *El Nuevo Dia* and *El Vocero*, two newspapers published in Spanish in Puerto Rico, on August 15 and 16, 2009.  *Id.* ¶12.  The Claims Administrator also established both a website for the Class Members to access information regarding the Settlement and a toll-free number to respond to inquiries from Class Members, all in accordance with the Settlement Agreement.  Settlement Agreement §§ 7.1-7.2.7; Myette Decl. ¶¶4-5.

In view of this comprehensive and tremendously successful notice program, it is quite frankly preposterous for the Objectors to have appealed the Court's rejection of their objections regarding the form and dissemination of notice.

To comport with due process, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950).  As for the content of the notice, Rule 23(c)(2) requires that the notice inform prospective class members of (i) the nature of the action; (ii) the definition of the

class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3).  Rule 23(e) more generally requires that the notice of a proposed settlement must inform class members: (i) of the nature of the pending litigation; (ii) of the settlement's general terms; (iii) that complete information is available from the court files; and (iv) that any class member may appear and be heard at the Fairness Hearing. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."); 2 Newberg, Newberg on Class Actions § 8.32 at 8-103 (citations and quotations omitted).

As the Court found in issuing preliminary approval and thereafter finally approving the Settlement, the class notices that were provided met all of these requirements.  The objectors have not identified any manner in which the class notices were in any way deficient or otherwise failed to comport with the law.  But, again, this is not the point of their appeal.

**B.  Objections to the Attorneys' Fees Are Frivolous.**

The objections to the attorneys' fee awarded here are equally baseless.  To begin with, the professional objectors wrongly fault the Court for issuing the award without first inquiring about the claims process.  Although such inquiry is not legally required, the objectors' assertion is factually incorrect.  The Court received briefing from Plaintiffs on this issue and then held a hearing on November 20, 2009 to evaluate the claims process and determine how the fees should be calculated.

The objectors also incorrectly contend, without the support of any applicable legal authority, that the Court should not have awarded more than 10% of the floor of the settlement fund to the attorneys, which would amount to approximately $6.5 million in fees.  This appellate issue is legally and factually unsupportable.

1

2    Contrary to the objectors' claim, "[t]he Supreme Court has stated that attorneys' fees sought

3    under a common fund theory should be assessed against every class members' share, not just the

4    claiming members." *Six Mexican Workers, supra,* 904 F.2d at 1311, *citing Boeing Co. v. Van Gemert*,

5    444 U.S. 472, 480, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980).  The law of the Ninth Circuit requires that

6    a fee award be based on the entire benefits available to the Class and not on the benefits actually

7    claimed by class members.  *Williams v. MGM-Pathe Communications Co.,* 129 F.3d 1026, 1027 (9th

8    Cir. 1997); *see also International Precious Metals Corp. v. Waters*, 530 U.S. 1223, 1225 (U.S. 2000)

9    (noting that *Williams* is the law in the Ninth Circuit); *Young v. Polo Retail, LLC,* 2007 U.S. Dist.

10   LEXIS 27269, 23-24 (N.D. Cal. 2007) (concluding that *Williams* is the law in the Ninth Circuit).

11       The District Court in *Hopson v. Hanesbrands Inc.*, 2009 U.S. Dist. LEXIS 33900 (N.D. Cal.

12   Apr. 3, 2009) likewise found that "[t]he appropriate measure of the fee amount is against the potential

13   amount available to the class, not a lesser amount reflecting the amount actually claimed by the

14   members." *Id.* at *32-33, citing *Boeing Co. v. Van Gemert*, 444 U.S. at 477-82; *Williams*, 129 F.3d at

15   1027.  Clearly, it is frivolous for the objectors to appeal and argue that the Court should have violated

16   applicable precedent by awarding fees based upon the amount claimed by the class members, or the

17   Floor amount rather than the Ceiling.

18       It is equally frivolous for the objectors to appeal the fee award claiming that it should have

19   been no more than 10% of the floor amount.  The Ninth Circuit has "established 25% of the common

20   fund as the benchmark award for attorney fees," which is merely a "starting point" that can and should

21   be adjusted when the Court considers the excellent results achieved for the Class, the complexity of

22   the issues, the risk of no recovery, and the effort expended by counsel.  *Vizcaino v. Microsoft Corp.,*

23   290 F.3d 1043, 1048 (9th Cir. 2002), *cert. denied* 537 U.S. 1018; *Six Mexican Workers,* 904 F.2d at

24   1311 (exceptional results require an upward adjustment); *In re Pacific Enterprises Sec. Litig.,* 47 F.3d

25   373, 379 (9th Cir. 1995) (complexity and risks warrant upward adjustment).  It is also worth noting

26   that the trial court "has broad authority over awards of attorneys' fees" in class actions, and the award

27

28

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO
REQUIRE OBJECTORS AND THEIR ATTORNEYS TO POST APPEAL BONDS**

may be reviewed only for abuse of discretion.  *In re FPI/Agritech Sec. Litig.,* 105 F.3d 469, 472 (9th Cir. 1997).

The objectors have cited no case law supporting their contention that the fee should have been a meager 10% here, which would be $6.5 million in this complex and challenging case.[4]  In claiming that this Court committed reversible error in failing to impose such a significant downward adjustment, without any evidentiary support or legal authority, the objectors wholly ignore the record in this case.  For instance, Professor William Rubenstein, a leading class action expert and editor of Newberg on Class Actions, concluded that the fees awarded here were reasonable for a variety of reasons, among them:

- that the "results achieved by counsel for the class are extraordinary and deserving of an enhanced fee," Rubenstein Decl. in Support of Settlement Approval and Fee Petition (Docket No. 417) ("Rubenstein Decl.") ¶27;

- that the risk counsel undertook here was "quite significant," noting that "It is one thing to take on a difficult case, another to take it on after certification denials in many of the underlying states' courts, another to keep going after certification has been denied, but yet another thing altogether to take these risks against a corporation the size and tenacity of Wal-Mart," Rubenstein Decl. ¶29; and,

- that the lawyering effort overcame significant complexities including the facts that "[T]his case is at the cutting edge of multi-state litigation and that the lawyers and this Court confronted procedural complexities rarely seen in federal court MDL practice before 2006," (Rubenstein Decl. ¶28), and that "The litigation of this consolidation of 30-state wide class actions based on 30 different state wage and hour regimes involving 3.2 million individual class members with distinct work histories – and its resolution – was significantly more complex than a standard federal class action."  Rubenstein Decl. ¶28.

In such circumstances, "[f]ederal courts have consistently approved of attorney fee awards over the 25% benchmark."  *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, *59 n. 12 (C.D. Cal. 2005); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming award

---

[4] The caselaw cited by the objectors pertains to settlements where the benefit provided to the class consists of disfavored coupon settlements, unlike the cash benefits provided here.

of fees equal to one-third of total recovery); *In re Pub. Serv. Co.*, 1992 U.S. Dist. LEXIS 16326, 1992 WL 278452, at *1, *12 (S.D. Cal. 1992) (awarding one-third); *Antonopulos v. North American Thoroughbreds, Inc.*, 1991 U.S. Dist. LEXIS 12579, 1991 WL 427893, at *1, *4 (S.D. Cal. May 6, 1991) (awarding one-third). In the present case, the Court expressly found that Class Counsel achieved an "exceptionally favorable result for the members of the Settlement Classes by diligently [pursuing] this complex litigation for years despite the substantial risk of no recovery."  Dkt 482, ¶11.

Put simply, there is no credible appealable issue concerning the award of attorneys' fees in this case, as the award comports with well established federal law.

## VI.  CALCULATION OF APPROPRIATE AMOUNT OF BOND.

As stated above, a court may impose a bond to cover costs to the class that result from the delay caused by the appeal and for other costs under Fed. R. App. P. Rules 7 and 39.  This Court should require a bond for all these reasons in regard to each of the three appeals.

The most compelling reason to require a bond is that this baseless appeal will delay a disbursement of nearly $70 million in economic benefits to the Class, named Plaintiffs, Class Counsel and the Claims Administrator.  Interest on the delayed payments would be substantial.  28 U.S.C. § 1961 provides:

> Interest.
> (a) Interest shall be allowed on any money judgment in a civil case recovered in a district court.  Execution therefore may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State.  Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[.] the date of the judgment.  The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.
>
> (b) Interest shall be computed daily to the date of payment ... and shall be compounded annually.

The interest rate for the week ending December 11, 2009, was .35%.  Interest on the $70 million tied up by these appeals for two years (a reasonable estimate for the time of an appeal) is calculated according to statute at $490,000.

Aside from the opportunity cost of not having the money sooner, a delay will be additionally detrimental to the Class in that the delay will substantially decrease the chances that settlement checks will reach Class Members who have changed their residence addresses since submitting claim forms. An appeal will also require the Claims Administrator to expend resources in answering calls from Class Members who are confused as to why they have not received their checks.

Beyond the interest caused by the delay, Plaintiffs anticipate Rule 39 costs of $25,000, additional costs in the amount of $200,000 for updating and maintaining the website, and settlement telephone service, and $275,000 in attorneys' fees.  Burton Decl. ¶ 6; Myette Decl.  Thus, Plaintiffs respectfully request that the Court require the Objectors and their attorneys to post bond in an amount equal to interest on the settlement funds, Rule 39 costs and additional claims administration and litigation costs.  The amount requested is $715,000, or $990,000 if attorneys' fees are permitted.

## VII.  COURT HAS INHERENT POWERS TO PROTECT THE SETTLEMENT

Having independently determined that this settlement was fair, reasonable and adequate under Fed. R. Civ. P. 23(e), the Court is both obligated and authorized to protect the Settlement and the Class.  Plaintiffs request that this Court order objectors/appellants to appear at a bond hearing and set an appropriate bond under Fed. R. App. P. Rules 7 and 39.  Plaintiffs have demonstrated above that the bond amount should be $715,000 (or $990,000) to protect the Settlement Class and Class Counsel from damages that will result from wholly frivolous and vexatious appeals that are intended only to line the professional objectors' pockets and that will in no way benefit the Class.

It is also worth noting that these objectors may be sanctioned by the appellate court for filing baseless appeals.

Under Fed. R. App. P. 38, we "may award just damages and single or double costs to the appellee" for defending against a frivolous appeal. See also 28 U.S.C. §

16

1912. This may include attorney's fees. *McConnell v. Critchlow*, 661 F.2d 116, 118 (9th Cir.1981). An appeal is considered frivolous "when the result is obvious or the appellant's arguments of error are wholly without merit." *Id.* (citations omitted).

*Operating Engineers Pension Trust v. Cecil Backhoe Service, Inc.*, 795 F.2d 1501 (9th Cir. 1986). *See also Ingle v. Circuit City*, 408 F.3d 592, 595-96 (imposing sanctions in the form of double costs and reasonable attorney's fees under Rule 38). Thus, for this additional reason, it is critical that the Court issue an appropriate bond and document its findings as to the merits of the underlying objections, for later use in the appellate proceeding.

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court enter an Order requiring each objector/appellant to post a bond in the amount of $715,000, or $990,000, and that the Court provide such other relief as may be appropriate.

Dated: December 17, 2009                Respectfully submitted,


                                        /s/ *Carolyn Beasley Burton*
                                        Carolyn Beasley Burton
                                        Robert W. Mills
                                        THE MILLS LAW FIRM
                                        880 Las Gallinas Avenue, Suite 2
                                        San Rafael, CA 94903

17