Robert J. Bonsignore (BBO # 547880)
BONSIGNORE & BREWER
23 Forest Street
Medford, MA 02155
Telephone: (781) 350-0000
Facsimile: (781) 391-9496
Email: rbonsignore@classactions.us
*Co-Lead Counsel for Plaintiffs*

*Other signatories appear below*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

IN RE WAL-MART WAGE AND HOUR

EMPLOYMENT PRACTICE LITIGATION

**MDL 1735**

2:06-CV-00225-PMP-PAL
(BASE FILE)

THIS DOCUMENT RELATES TO:

ALL ACTIONS EXCEPT KING v.

WAL-MART STORES, INC., CASE NO.

07-1486-WY

## MEMORDANDUM IN SUPPORT OF PLAINTIFFS' MOTION
## FOR APPEAL BOND FOR OBJECTOR JESSICA GAONA

# **TABLE OF CONTENTS**

I.    PROCEDURAL AND FACTUAL BACKGROUND ........................................................... 3

II.   GOVERNING RULES AND STANDARD OF REVIEW ................................................ 15

III.  ARGUMENT..................................................................................................................... 17

    A.    The Court has the Power to Require Gaona to Post a Bond Under
           the Circumstances at Bar...................................................................................... 18

         1.   Objector Gaona Submitted No Financial Information to
              Indicate She is Financially Unable to Post Bond Despite the

              Opportunity to Provide the Court with this Information .............................. 18

         2.   Objector Gaona is Not a Resident in a Ninth Circuit State

              Raising Significant Difficulties in Collecting Appellate Costs...................... 19

         3.   Objector Gaona's Appeal is not Likely to Succeed........................................ 20

             a.    Defendant Wal-Mart Did Not Retain a Reversionary

                 Interest in the Settlement ...................................................................... 22

             b.    The Procedural Requirements to Make Objections Were
                 Outlined in the Settlement, Carefully Evaluated by Class

                Counsel, Experts and the Court Approved in Both the

                Preliminary and Final Approval Orders ................................................ 24

             c.    Class Notice Met all Statutory Requirements and was

i

Court Approved in Both the Preliminary and Final
Approval Orders.................................................................................. 26

    d.   After Extensive Review and Consideration by this Court,
the Settlement was Found Fair, Adequate and Reasonable
and Meets the Statutory Requirements ................................................ 27

    e.   Objector Gaona Failed to File a Claim and Therefore
Lacks Standing to Appeal Attorney's Fees Under Well
Established Constitutional Law .......................................................... 29

   4.   Objector Gaona's Appeal Shows Bad Faith and Vexatious Conduct ......... 31

B.   The Amount of the Requested Bond is Appropriate ................................................. 33

   1.   Permitted Taxable Costs Include Preparation and Transmission
of the Record, Reporter's Transcript, and the Fee for Filing
Notice to Class Members of the Appeal.......................................................... 33

    a.   Preparation and Transmission of the Record......................................... 34

    b.   Cost for Reporter's Transcripts ............................................................ 34

   2.   Administrative Costs.................................................................................. 34

   3.   Deposition Costs Should be Included in the Bond......................................... 35

   4.   Interest on the Class Settlement, Attorney's Fees and Costs
Should be Included in the Bond .................................................................... 35

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IV.   CONCLUSION ................................................................................................................ 36

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Jessica Gaona*

## TABLE OF AUTHORITIES

*Adsani (quoting Clark v. Universal Builders, Inc. 501 F.2d 324, 341 [7th Cir. 1974])*

139 F.3d at 79 ......................................................................................................................... 21

*Air Separation v. Underwriters at Lloyd's of London*

45 F.3d 288, 290 (9th Cir. 1994)

(quoting *Wheeler v. John Deere Co.*, 986 F2d 413, 415 (10th Cir. 1993) .............................. 16, 36

*Azizian v. Federated Dept. Stores*

499 F.3d 950, 961 (9th Cir. 2007) ..................................................................... 3, 16, 21, 32, 33, 34

*Carter v. Wal-Mart*

2006 CP1500839, South Carolina Charleston County Common Pleas Court.............................. 32

*Chamberlan v. Ford Motor Co.*

402 F.3d 952, 957 (9th Cir. 2005) ................................................................................................... 4

*Chiaverini, Inc. v. Frenchie's Fine Jewelry, Coins & Stamps, Inc.*

2008 U.S. Dist. LEXIS 45726 at *7 (E. D. Mich. 2008)............................................................. 19

*Donovan v. Sovereign Secur., Ltd. .*

726 F.2d 55, 58 (9th Cir. 1984) ...................................................................................... 2, 16, 35

*Elena Lopez, Liberty Morales, Chad Mathews, James Veillon and all others*

*v. Wal-Mart Stores, Inc. and Sam's East, Inc.*

93 S.W. 3d 548 (Tex. Ct. App. 2002)......................................................................................... 29

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Jessica Gaona*

*Fleury v. Richemont North America, Inc.*
2008 U.S. Dist. LEXIS 88166 at *18-19(9th Cir. 2008) ...................... 15, 16, 18, 19, 21, 22, 32, 33

*Hale v. Wal-Mart Stores, Inc.*
Case No. 01-218710, Circuit Court of Jackson County ............................................................. 32

*Hanlon v. Chyrsler Corp.*
150 F.3d 1011, 1026 (9th Cir. 1998) .......................................................................................... 28

*Hayworth v. Nevada*
56 F3d 1048, 1051 (9th Cir. 1995) ............................................................................................... 3

*In re Am. President Lines*
779 F.2d at 717 ........................................................................................................................... 21

*In re Broadcom Corp. Secs. Litig.*
2005 U.S. Dist. LESXIS 45656 at *6-7 (9th Cir. 2005) .............................................. 16, 17, 33, 34

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*
33 F.3d 29, 30 (9th Cir. 1994) .................................................................................................... 30

*In re Heritage Bond Litig.*
2005 U.S. Dist. LEXIS 13627 at *2(9th Cir. 2005) ..................................................................... 16

*Kaiser Aluminum & Chem. Corp. v. Bonjorno*
494 U.S. 827, 835 (1990) .................................................................................................. 2, 16, 35

*Knisley v. Network Associates, Inc.*

2002 U.S. App. LEXIS 24657, *7 (9th Cir. 2002) .......................................................................... 30

*Lobatz v. U.S. West Cellular of Cal., Inc.*

222 F.3d 1142, 1146 (9th Cir. 2000) ........................................................................................... 30

*Masters v. Wilhelmina Model Agency, Inc.*

473 F.3d 423(2d Cir. 2007 ............................................................................................................. 24

*Officers for Justice v. Civil Serv. Comm'n of the City & County of San Francisco*

688 F.2d 615, 625 (9th Cir. 1982) ................................................................................................ 28

*Pace Design & Fab. V. Stoughton Composites*

1997 U.S. App. LEXIS 35780, *2-3(9th Cir. 1997

(Citing *Donovan*, 726 F.2d at 58) .................................................................................... 2, 16, 35

*Perkins v. Standard Oil Co.*

487 F. 2d 672, 676 (9th Cir. 1973) ........................................................................................ 16, 36

*Powers*

229 F.3d at 1254 n. 4 .................................................................................................................. 30

*RBFC ONE, LLC v. Timberlake*

2005 U.S. Dist. LEXIS 19148 at *3-4(S.D.N.Y. 2005) ............................................................. 16

*Sarda v. Wal-Mart*

Case No. 1D09-4881, Florida First District Court of Appeal ....................................................... 32

*Torrisi v. Tucson Elec. Power Co.*

8 F.3d 1370, 1375 (9th Cir. 1993) .................................................................................. 28

*Tri-Star Pictures, Inc. v. Unger*

32 F. Supp. 2d 144, 147-59 (S.D.N.Y. 1999) .............................................................. 16

*Venen v. Sweet*

758 F.2d 117, 120 n.2(3d Cir. 1985) ........................................................................... 15

*Washington State Dep't of Transp. V. Washington Nat. Gas Co.*

59 F.3d 793, 806 (9th Cir. 1995) ................................................................................... 35

*Williams v. MGM-Pathe Communications Co.*

129 F.3d 1026 (9th Cir. 1997) ........................................................................................ 24

Other Authorities

28 U.S.C. § 1961

28 U.S. C § 1920

29 U.S.C. §§206, 207(a), 211(c), 215, 216(b)

Fed. R. App. Proc. 7

Fed. R. Civ. P. 23(e)

1  Fed. R. Civ. P. 11(c)(2)

2

3  Fed. R. Civ. P. 39(c)

4

5  Fed. R. Civ. P. 54(d)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Jessica Gaona*

Plaintiffs have moved pursuant to Rule 7 of the Federal Rules of Appellate Procedure and the District Court's inherent power for an Order requiring Objector Jessica Gaona (hereafter, "Objector, " "Objector Gaona" or "Gaona") to post an appeal bond in the amount of $608,342.62 and submit this memoranda of points and authorities including its attachments in support. The assessment of an appeal bond by the District Court is an integral and important component of the civil justice system. It is not only a long standing component of the rules of procedure[1], it is well accepted by federal courts across the country including Ninth Circuit Courts as a reasonable and necessary means to accomplish important public policy.

The purpose of an appeal bond is to protect the amount the Appellee stands to have reimbursed. This includes the cost of the delay in the payment of the judgment should the appeal ultimately fail. In fact, post-judgment interest is mandatory for any money judgment pursuant to 28 U.S.C. § 1961.[2] The purpose of post-judgment interest is to compensate a successful plaintiff for not being paid during the time between the award and the ultimate date of payment.[3]

The facts, argument and evidence supporting the request as to Objector Gaona presented herein reasonably satisfy the established Ninth Circuit evaluative criteria for assessing an appellate bond. Importantly, the facts and evidence presented here also precisely comport with the important public policy rationale underlying the provisions in the law for appellate bonds.

---

[1] Federal Rule of Appellate Procedure 7 is derived from former Federal Rule of Civil Procedure 73(c) and provides that "the district court may require an appellant to file a bond or provide other security in any form [499 F.3d 955]and amount necessary to ensure payment of costs on appeal." Fed. R.App. P. 7.

[2] *Donovan v. Sovereign Secur., Ltd.*, 726 F.2d 55, 58 (9th Cir. 1984).

[3] *Pace Design & Fab. v.. Stoughton Composites,* 1997 U.S. App. LEXIS 35780, *2-3 (9th Cir. 1997) (citing *Donovan,* 726 F.2d at 58); *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835 (1990).

As articulated specifically within, the class has already incurred costs as a result of Gaona's appeal. As a direct result of this appeal, class members will suffer ascertainable economic loss during the pendency of the appeal. The appeal by Objector Gaona may fail and the class is entitled to the interest that would have accrued during the pendency of the appeal. Pursuant to the express authority of the statutory and interpretive case law and for the reasons set forth below, Plaintiffs' Motion should be granted.[4] Finally, the undersigned counsels do not join in the Request for Bond submitted by Co-Lead Counsel Carolyn Beasley Burton (hereafter, "Beasley Burton").[5]

---

[4] In fact, Plaintiffs believe the appeal to be wholly unsupported and frivolous and reserve all rights to seek all appellate remedies available. Portions of this submission will support the anticipated Rule 38 sanctions request at the Appellate Court level. Regrettably, Beasley-Burton has once again submitted a filing without attempting to have Plaintiffs submit a joint submission. She did not discuss, circulate a draft, or advise a single class counsel or her Co Lead Counsel in advance of placing her request for the assessment of a bond on file. Unfortunately this is *at least* the third time she has done this and attempts to stop this detrimental practice have been wholly unsuccessful.

[5] In addition to lacking the expert evidentiary foundation required to support the assessment of a bond, Co-Lead Beasley Burton's submissions run afoul of the holding in the *Azizian* case. *See* Docket no. 536, Plaintiffs' Memorandum in Support of Motion to Require Objectors Gaona, Swift, Andrews, and Maddox and Their Attorneys to Post Appeal Bonds, and Seeking Any Other Appropriate Relief to Protect the Class, December 18, 2009. *Azizian* held that, "the term 'costs on appeal' in *Rule 7* includes all expenses defined as 'costs' by an applicable fee-shifting statute, including attorney's fees." *Id* at 958 (internal citations omitted). However, "The FLSA statute defines attorney's fees separately from costs. 29 U.S.C. 216(b)." *Hayworth v Nevada*, 56 F3d 1048, 1051 (9th Cir. 1995). Despite this, Co-Lead Counsel requests attorney's fees from the fee shifting provision in FLSA. While individual state laws may allow for fee shifting to be included as costs on a state by state basis, FLSA clearly precludes it. Collectively, the undersigned counsels request this Court to adopt a conservative view and assess the bond on pure and solid legal footing. It is worth noting that it is well known among the practicing class action bar that the goal of Professional Objectors is to obtain some appealable issue and to move the action into the Appellate Court system

## I. PROCEDURAL AND FACTUAL BACKGROUND

On May 23, 2007, this Court granted in part Wal-Mart's Motion to Dismiss or for

Judgment on the Pleadings reducing in scope and number the claims advanced by the Plaintiffs.

*See* Docket no. 138, Order.  On June 20, 2008, this Court denied Plaintiffs Motion for Class

Certification for the First Phase states finding that individual issues predominated and that the

actions were not suitable for class treatment.  *See* Docket no. 249, Order.  The rationale applied

to all actions in MDL 1735 and effectively ended the litigation.  On June 30, 2008, Plaintiffs

filed a Petition for Appeal requesting permission to appeal the Order denying Class Certification.

*See* Docket no. 252 at ¶3,

Readily available statistics clearly establish that reversing the denial of certification in the

Ninth Circuit is rarely successful.  *See* Docket no. 426, Memorandum in Support of Motion for

Final Approval of Proposed Settlement with Defendant Wal-Mart at 37, October 1, 2009.[6]

The parties executed a Term Sheet on December 14, 2008 with the assistance of the Hon.

Layn Phillips (ret.) and subsequently appeared before the Court and otherwise updated the Court

---

where it will presumably languish at best until the professional objectors are paid off, or at worst, the appellate

process will run its course after several years of delay. In light of this reality we oppose any effort that results in

giving the professional objectors another reason to appeal.

[6] Here, as the Court is well aware, it denied certification in the First Phase cases upon finding that Wal-Mart's

affirmative defenses, which are identical in each settled case, raise individualized issues. Moreover, many of the

state courts in cases covered by this settlement had also previously denied certification, and several of those rulings

have already been upheld on appeal. Class settlements are extremely rare in cases where class certification is denied

because the denial of certification generally sounds the "death knell" of the litigation. *Chamberlan v. Ford Motor

Co.*, 402 F.3d 952, 957 (9th Cir. 2005). This is readily apparent in the Ninth Circuit.

on the status of the ongoing efforts to complete and execute a Settlement Agreement[7] and place on file briefing in support of Preliminary Approval on multiple occasions. *See also* Docket no. 285, Minutes of Proceedings, February 24, 2009.

On May 28, 2009, after careful and complete consideration and review, this Court preliminarily approved a class action settlement as well as the details of the plan of providing notice of the Settlement to Settlement Class members and the method for excluding oneself or submitting an objection. *See* Docket #322, Order Preliminarily Approving Settlement, Approving Form and Manner of Notice, and Scheduling Hearing on Fairness of Settlement Pursuant to Fed. R. Civ. P. 23(e) (hereafter, "Preliminary Approval Order"), at ¶ 3, ¶¶ 5-10.

The Settlement Agreement[8] was the culmination of years of hard fought litigation. During that time on several occasions the parties walked away from negotiations because they were unable to reach agreement underscoring the fact that the formal[9] and informal efforts were arms length. Among the matters researched and included in the Request for Preliminary Approval were the method and forms of Notice and the procedures for the submission of objections and requests for exclusion. The express terms of the Settlement Agreement[10] took

---

[7] The Hon. Layn Phillips (ret.) was called upon during the interim period between the execution of the Term Sheet and the Request for Preliminary Approval for additional assistance.

[8] *See* Docket 432, Declaration of Nicole Vamosi in Support of Final Approval, Attachment A, October 2, 2009.

[9] The parties retained the Hon, Layn Phillips (ret.) one of the nation's most respected providers of alternative dispute resolution for complex and class action matters. Here Judge Phillips also had the benefit of having served as a neutral in many other actions against Wal-Mart for wage and hour claims.

[10] The Term Sheet which embodied the general terms of the settlement was first executed by the parties on December 14, 2008 during the last of a series of pre settlement formal mediation session with the Hon. Layn Phillips.

place over many months after the initial signing of the Term Sheet. The notice, exclusion and objection provisions were arrived at after extensive legal research and consultation with various experts including Rust Consulting, Inc. (hereafter, "Rust Consulting" or "Rust")[11] and others including class action legal consultants and the editor of Newburg on Class Actions. Counsels for the class representatives, comprised of highly respected and experienced counsels nationwide, also participated in the process. *See* Docket 434, Attachments L-1 through L-28 to Declaration of Nicole Vamosi in Support of Final Approval, October 2, 2009. After research, review and careful consideration[12] they and the class representatives signed the Settlement Agreement approving its terms including the notice, exclusion and objection procedures. *See* Docket 432, Declaration of Nicole Vamosi in Support of Final Approval, Attachment A, October 2, 2009.

The approved forms and manner of notice were designed to fairly, adequately and in full compliance with the law apprise Settlement Class Members of their rights under the Settlement Agreement. The right to submit claims, exclude oneself, or object to the proposed Settlement were expressly and clearly articulated.

The method for objecting required a Class Member who wished to object to the Settlement to notify the Court of his or her objection, in writing, on or before a clearly identified

---

[11] Additionally, Objector Gaona did not challenge the expertise of Rust. The fact that Rust is among this nation's leading class action claims administration provider is subject to Judicial Notice and otherwise evidenced by multiple submissions in the record that set out their extensive experience and expertise.

[12] Prior to the execution of the Settlement Agreement several well attended Settlement Summits were convened so that the Settlement Agreement and its terms and projected implementation could be questioned, discussed and/or debated by class counsels. Additionally, in between the summits class counsels were provided with updates and drafts of the proposed terms including the class administration and objection procedures.

final date for objections.  In simple and straightforward terms Class members were clearly

advised in the Notice that to object they: 1) must have submitted a claim form; 2) provide a

written objection with a heading that refers to the litigation; 3) provide basic contact information;

4) indicate what state they reside in and what Wal-Mart store they were employed at; 5) provide

a statement of the specific factual and legal basis for each objection and why the Objector chose

to object rather than exclude themselves from the Settlement; 6) provide a statement on whether

they plan on attending the final approval hearing; 7) provide the name and contact information of

their counsel if they have retained any; 8) provide a list of witnesses they may call to the Final

Approval Hearing, a summary of each witnesses' expected testimony and any exhibits they wish

to use at the Final Approval Hearing; 7) provide legal authority they plan on presenting at the

Final Approval Hearing; and 8) sign the objection. [13]  *See* Docket 435, N-4, Summary Notice, to

Declaration of Nicole Vamosi in Support of Final Approval, October 2, 2009.

---

[13] *See* Docket nos. 435-1 through 435-5, Attachments to Declaration of Nicole Vamosi in Support of Final Approval, October 1, 2009. *See also* Docket 435, N-4, Summary Notice, to Declaration of Nicole Vamosi in Support of Final Approval, October 2, 2009.

*See also* Settlement Agreement, Docket # 304-2, dated May 26, 2009, which provides in relevant part: "8.15 Objections

    8.15.1. A Class Member who wishes to object to the Settlement must notify the Court of his or her objection, in writing, on or before the date that is forty-five (45) days from the date on which the Mailed Notice Documents were initially mailed.

    8.15.2. If an Objector also makes a valid request for exclusion from the Settlement Class, the right to object will be forfeited and the objection will not be heard. A Class Member may, however, make an objection and also submit a Claim Form.

    8.15.3. The written objection must be made under penalty of perjury and include the following information:

    8.15.3.1. A heading referring to this Litigation;

It is important to note that in addition to providing that the Court and Counsel would have the benefit of advance notice of concerns and issues, the Class notice also provided protection to objectors by ensuring that a full and complete record of their objection would be created and that basic information that could be used to evaluate and properly act on the issues raised through the objection was provided. Other than providing a false home address, Gaona through counsel was apparently able to respond to the requests made of objectors in her filing.

In fact there is objective evidence that establishes that the notice and objection procedures worked without undue hardship and were effective as well as reasonable.  The considerations raised by one objector were insightful and constructive and this Court and counsels for the parties accepted all constructive offerings by objectors that served the best interests of the class without hesitation. *See* Docket no. 379, Objection to Settlement, September 22, 2009; Docket no. 491, Final Approval Order, November 2, 2009.

On August 10, 2009, Class Notices were mailed in strict compliance with this Court's Order by the Claims Administrator, Rust Consulting, to the Class Members contained in the Class List via First Class Mail at the most up-to-date home addresses available.  Additionally, on August 16, 2009, Plaintiffs published the Summary Notice in *Parade Magazine*.  In addition, the Claims Administrator established a website for the Class Members to access information regarding the Settlement and set up a toll-free number to receive inquiries from Class Members, with operators available who spoke both English and Spanish.

8.15.3.2. The Objector's name, address, telephone number, and the contact information for any attorney retained by the Objector in connection with the objection or otherwise in connection with the Litigation.

The deadline for requests for exclusion[14] and for objections set by the Court and included in the Class Notices was September 24, 2009. *Id.* Objector Gaona did not choose to exclude

_____

[14] The term "exclusion letter" as used in the Settlement Agreement is different from the term objection and means the letter which a Settlement Class Member must send to the Claims Administrator in accordance with Section 8.14 of the Settlement Agreement if the Settlement Class Member wishes to exclude himself or herself from one or more of the Settlement Classes and from the release of claims applicable to the Settlement Class or Settlement Classes from which the Settlement Class Member is excluding himself or herself. *See* Settlement Agreement at ¶1.19. *See* Settlement Agreement, Docket # 304-2, dated May 26, 2009, which provides in relevant part:  "8.14 Exclusion Letters."

8.14.1. A Settlement Class Member who wishes to exclude himself or herself from this Settlement, and from the release of claims pursuant to this Settlement, shall submit an Exclusion Letter. For an Exclusion Letter to be accepted it must be timely and valid. To be timely it must be received by the date indicated in the Notice, which shall be forty five (45) days from the date on which the Mailed Notice Documents were initially mailed. To be valid, the Exclusion Letter shall contain a statement identifying which Settlement Class the Settlement Class Member wishes to exclude himself or herself from and must be signed under oath and dated. Instructions for Exclusion Letters are found in the Notices, Exhibits 6, 7, and 8.

8.14.2. A Settlement Class Member who submits an Exclusion Letter is not eligible to recover a share of the Class Member Payment Amount with respect to the Settlement Class or Settlement Classes from which he has excluded himself from. If a Settlement Class Member submits both a Claim Form and an Exclusion Letter with respect to the same Settlement Class, the Exclusion Letter will govern.

8.14.3. The Claims Administrator shall maintain a list of persons who have excluded themselves and shall provide such list to the Parties upon request. The Claims Administrator shall retain the originals of all Exclusion Letters (including the envelopes with the postmarks) received from Class Members, and shall make copies or the originals available to Wal-Mart or Class Counsel within five (5) business days upon request.

8.14.4. Regardless of the number of Exclusion Letters received, Wal-Mart shall not have the option to rescind this Agreement based on the number of Exclusion

Letters received.

herself. Under the express terms of the Settlement, exercising that option would have given her an unrestricted right to individually advance any and all claims of liability and/or damages that she believed she was entitled to without impacting the recovery or rights of the class members who accepted the settlement and requested the prompt receipt of its cash and equitable benefits.

On September 24, 2009, Gaona and her counsel instead voluntarily chose to object to the Settlement knowing that such a choice would prevent the funding of the Qualified Settlement Fund and that objecting rather than requesting exclusion from the settlement would effectively deny participating class members the benefit of the present use of the settlement monies and the entitlement to interest on those funds during the pendency of the Appeal. Remarkably in doing so Gaona and her counsel failed to articulate how the objections she raised harmed her or caused her any economic or other loss.

In objecting, Gaona advances that: (1) Defendant Wal-Mart retained a reversionary interest in the Settlement; (2) the procedural requirements to make an objection were excessive and calculated; (3) class notice and claims requirements were flawed; (4) the Settlement was not fair, adequate and reasonable; and (5) attorneys' fees were incorrectly calculated. *See* Notice of Appearance, Objection to Class Settlement and Application for Attorneys' Fees and Expenses and Motion to Intervene, Docket #387 (hereafter, "Gaona Objection" or "Objection").

Notably, Gaona attached no support for the conclusions she offered through her counsel, Christopher Bandas, a self-described Professional Objector for matters that should arguably be the subject of expert opinion. *See e.g.* argument numbered 3 above.[15]        Gaona's Objection contained no offer of evidence or argument to support her conclusions. She pointed to no fact

---

[15] Arguments number 1 and 5 seek to reverse well established Ninth Circuit law on the basis of a short proclamation with no arguments or fact offered in support.

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Jessica Gaona*

independently or that was contained in the record of MDL 1735. *See* Gaona Objection.

Additionally, Gaona's Objection did not disclose or acknowledge that class claims directly

applicable to Wal-Mart's Texas hourly employees claims had already been lost twice.[16] *Id.* All

that was offered in exchange for barring a present day recovery to the many class members who

opted to accept the benefits offered through the settlement were unsupported conclusions. It is

also worth noting that she and her counsel expressly represented to the Court and to Counsels for

the respective parties in her Objection that she would appear at the October 19, 2009 fairness

hearing.

On October 1, 2009 Plaintiffs submitted voluminous filings in support of Final Approval.

*See* Docket #426-435. Plaintiffs also submitted voluminous filings in support of an award of

attorney fees, reimbursement of out-of-pocket costs, and incentive payments to the class

representatives. An objective reading of the docket establishes that, following the massive

submissions offered in support of Final Approval, including declarations in support from experts,

counsel in all states, and dozens of class members, Gaona and her counsel failed to submit any

response or supplement whatsoever, and also failed to act in any way to rebut or address a single

fact advanced in the submissions filed in support of Final Approval. [17]

---

[16] Once in Texas, where certification had been denied and also in connection with the denial of certification in MDL 1735.

[17] This should come as no surprise. Upon information and belief, in many of the other recent state based wage and hour settlements with Wal-Mart the Professional Objectors, including Gaona's counsel Christopher Bandas, walked away with extraordinarily large settlements for little or no work and with absolutely no additional benefit being offered to the class. Boiled to its essence, the Professional Objectors are reasonably compared to extortionists or other thugs who extract cash because the reality is that in exchange for simply dropping their objections/appeals the Professional Objectors are paid off. A request for a hearing to make factual findings on the amount that Bandas was

On October 5, 2009, Plaintiffs acted to take the deposition of Objector Gaona. *See* Docket no. 441-2, Notice to Take Deposition of Jessica Lynn Gaona (hereafter, "Deposition Notice"). *See also* Document 447-4, dated October 6, 2009 Court Order, and Docket no. 447-4, amended Notice to Take Deposition of Jessica Lynn Gaona, October 6, 2009. A copy of the Deposition Notice was served upon her counsel Bandas through electronic service on October 5, 2009 and October 6, 2009. The Deposition Notice provided Gaona with notice that her deposition was to be taken at 11:00 a.m., October 9th, 2009 at Ak/ret Reporting, 555 N. Carancahua, Suite 880, Corpus Christi, Texas. *Id.* Additionally, the deposition notice also made clear that upon the request of the objector the alternative location of Law Offices of Anthony Constant, 800 N. Shoreline Blvd., Suite 2700 S., Corpus Christi, Texas, one of her counsels of record was also acceptable. *Id.* Neither Gaona nor her counsel showed up for the deposition and neither responded to the Notice of Deposition.

An agreement was entered between counsel for Plaintiffs and Attorney Bandas on October 7, 2009 to take the deposition set for October 9, 2009 off calendar on the condition that if resolution of the objection was not reached she would be made available prior to the Final Approval hearing. This agreement was later breached by the objector and her counsel. *See* Declaration of Robert Bonsignore in Support of Plaintiffs' Motion for Appeal Bond at ¶22.

---

paid in the other Wal-Mart cases in which he was an objector and the benefit to the respective classes that he obtained and/or the hours and efforts he undertook to earn those payments is anticipated by Plaintiffs counsels. As a courtesy to Ms. Gaona and her attorneys Plaintiffs counsels intend to mark the hearing in those questions on the same date and time as the hearing on this bond and/or the hearing on the sanctions requested for providing a false address to this Court and counsel so that they will only be required to appear once. Plaintiff's counsels will also offer to make and pay for Ms. Gaona's reasonable travel arrangements. Given the amount that Mr. Bandas has made thus far objecting to Wal-Mart wage and hour settlements no such offer is made to him.

After the breach of Agreement became evident, Plaintiffs again formally took action to take the depositions of Objector Gaona on October 19, 2009.[18] *See* Docket no. 471-2, Notice to Take Deposition of Jessica Lynn Gaona, October 19, 2009. A copy of the Deposition Notice was served upon her counsel Bandas through electronic service on October 19, 2009. The Deposition Notice provided Gaona with notice that her deposition was to be taken on October 24, 2009, 11:00 a.m., LaQuinta Inn, 1619 N. IH-35, San Marcos, Texas, 78666. *See* Exhibit F to Declaration of Robert Bonsignore in Support of Plaintiff's Motion for Appeal Bond for Objector Gaona. T he Deposition Subpoena was served on her counsel clearly providing her with notice that her deposition was to be taken.

On October 20, 2009, attempted service of the Subpoena to Testify at a Deposition in a Civil Action to Jessica Lynn Gaona (hereafter, "Deposition Subpoena") was made by process server Tim Shultz at the address Gaona provided to the Court in her Objection, 6780 Wayman Ridge, Live Oak, Texas, 78233. *See* Attachment G to Declaration of Robert Bonsignore in Support of Plaintiff's Motion for Appeal Bond for Objector Gaona, Declaration of Not Found, Due and Diligent Search by Tim Shultz. *See also* Attachment H to Declaration of Robert Bonsignore in Support of Plaintiff's Motion for Appeal Bond for Objector Gaona, Subpoena to Testify at a Deposition in a Civil Action to Jessica Lynn Gaona; Gaona Objection at 2. Shultz attempted service at Gaona's address twice; once at 9:10 a.m. when there was no response at the door and Shultz left delivery notice. *See* Attachment G, Declaration of Not Found, Due and Diligent Search by Tim Shultz. It is noteworthy that at 8:45 p.m. during his second attempt

---

[18] It is believed that Gaona did not reside at the address she provided to the Court and Counsels in her sworn objection. However, this presumed fact is the subject of an anticipated evidentiary hearing and request for sanctions and is not a part of this bond request.

Process Server Shultz and was clearly informed by the property's resident that Gaona did not reside at that address. *Id.*

Notwithstanding the fact that through counsel she provided a false address to the Court[19], Gaona must be deemed for the fourth time as having been provided with notice that Plaintiffs wished to depose her because the Deposition Subpoena which was served on their counsel again provided Gaona with notice that her deposition was to be taken on October 24, 2009, 11:00 a.m., LaQuinta Inn, 1619 N. IH-35, San Marcos, Texas, 78666.

On October 19, 2009, this Court held the Final Fairness Hearing in strict accordance with its order of Notice. *See* Docket #482, Minutes of the Court. At the hearing, the Court received evidence and heard arguments. The Court also reserved time and expressly invited comments from the Objectors and anyone else that wished to be heard. In fact, during hearing, the Court expressly stated that it wished the Objector's were present to have considered the evidence presented and the matters discussed at the Final Fairness hearing. Despite having expressly represented to the Court that they would be attending, neither the Objector nor her counsel appeared at the fairness hearing. Moreover, neither the Objector nor her counsel made any effort to notify the Court or Counsels for the parties that they would not attend and appear at the fairness hearing.

On October 19, 2009, in its Final Approval Order, and after carefully considering and expressly taking into account the evidence offered within the voluminous filings, the evidence offered at and subsequent to the hearing, and its own expansive institutional knowledge and grounded understanding of the intricacies of this litigation and the efforts of the counsels for the

---

[19] Plaintiffs intend to seek sanctions for this serious and material misrepresentation and have served the "safe harbor letter" required by FRCP 11 (c) (2).

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Jessica Gaona*

respective parties as well as the history of this litigation, this Court effectively overruled Gaona's Objections by its findings and rulings. *See* Final Approval Order at 4, Docket #491 (hereafter, "Final Approval Order"). *See also* Minutes of the Final Approval Hearing at 3, Docket #482. Providing further notice that it had carefully considered and was denying the objection, the Court specifically held, "In the event that any of these objectors appeal this Final Order, the Court will promptly conduct a hearing to determine the need for each appellant to post a bond under Fed. R. App. Proc. 7." *See id.* at p. 4, ¶ 4.

The deadline for receipt of all claim forms was November 9, 2009. *See* Settlement Agreement at ¶8. Notably, as of that date, Objector Gaona failed to file any claim for compensation with settlement claims administrator, Rust Consulting.[20]

On November 02, 2009, this Court approved Plaintiffs' Motion for Final Approval of Settlement and entered final judgment, including an award of attorney's fees, expenses and incentive payments to the Plaintiffs. *See* Final Approval Order, Docket no. 491.

After an additional hearing and the taking and consideration of additional submissions, evidence and the receipt of additional expert opinion from the preeminent authority on the subject in America, Prof. Charles Silver (hereafter, "Professor Silver"), the Court subsequently approved the amount of attorney's fees and incentive payments for the class representatives on November 20, 2009.[21] *See* November 20, 2009 Minutes, Docket #520. *See also* Docket no. 507, Attachment A to Supplement Declaration of Robert J. Bonsignore in Support of Motion for Award of Attorneys Fees and Expenses and Incentive Awards Relating to Proposed Settlement

---

[20] December 3, 2009 Declaration of Amanda Myette, Rust Consulting, at ¶ 4.

[21] Objector Gaona through counsel was noticed was reasonably notified of the subsequent hearing and chose not to attend or offer any supplement to her original objection.

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Jessica Gaona*

with Defendant Wal-Mart, Expert Report of Professor Charles Silver Concerning the Bearing of the Claim Rate on the Fee Award (hereafter, "Silver Declaration"), November 17, 2009.

On November 23, 2009, Objector Gaona filed her appeal. *See* Notice of Appeal, Docket #516.

At this point, per this Court's Order of November 2, 2009 ruling that a prompt resolution on the assessment of a bond would be afforded the class if necessary, Plaintiffs have moved for an appeal bond pursuant to Fed. R. App. Proc. 7. (See Docket No. 491 ¶ 4).

## II. GOVERNING RULES AND STANDARD OF REVIEW

Rule 7 of the Federal Rules of Appellate Procedure (hereafter, "FRAP 7") empowers a United States District Court in its discretion to "require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." FRAP 7. The purpose of an appeal or cost bond in circumstances such as the present is "to protect the amount the appellee [class] stands to have reimbursed," including the costs of delaying payment of the judgment, should the appeal ultimately fail. *See Fleury v. Richemont North America, Inc.*, 2008 U.S. Dist. LEXIS 88166, at *18-19 (9th Cir. 2008) (further citations omitted). A Federal District Court retains jurisdiction after the filing of an appeal to issue orders regarding the filing of bonds under FRAP 7.[22] While FRAP 7 does not expressly provide a list of factors to consider in determining whether to require a bond, other courts, including the Northern District of California, have relied upon certain well accepted factors such as: (1) the appellant's financial ability to post a bond; (2) the risk that the appellant would not pay the appellee's costs if the

---

[22] *Venen v. Sweet*, 758 F.2d 117, 120 n.2 (3d Cir. 1985).

appeal loses; (3) the merits of the appeal[23]; and (4) whether the appellant has shown bad faith or vexatious conduct.[24] *See Fleury*, 2008 U.S. Dist. LEXIS 88166, at *19. The District Court's findings and rulings on the amount of any cost and/or appeal bond are subject to an abuse of discretion standard of review.[25]

Additionally, post-judgment interest is mandatory for any money judgment pursuant to 28 U.S.C. § 1961.[26] The purpose of post-judgment interest is to compensate a successful plaintiff for not being paid during the time of the award and payment.[27] Not only is post-judgment interest assessable upon the judgment, but in certain circumstances where a fee shifting provision is applicable is also separately to be determined upon attorney's fees[28] and costs.[29]

---

[23] It is the general impression of the practicing bar that this factor has not been favorably received by the Ninth Circuit. *Azizian v. Federated Dept. Stores,* 499 F.3d 950, 961 (9th Cir. 2007).

[24] *See also RBFC ONE, LLC v. Timberlake,* 2005 U.S. Dist. LEXIS 19148, at *3-4 (S.D.N.Y. 2005); *Tri-Star Pictures, Inc. v. Unger,* 32 F. Supp. 2d 144, 147-49 (S.D.N.Y. 1999).

[25] *Azizian v. Federated Dept. Stores,* 499 F.3d 950, 955 (9th Cir. 2007) (quoting *A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1028* (9th Cir. 2001) (as amended)). *See also In re Broadcom Corp. Secs. Litig.,* 2005 U.S. Dist. LEXIS 45656, at *6-7 (9th Cir. 2005) ("[t]he determination of the amount of a bond necessary to ensure payment of costs on appeal is left to the discretion of the district court"); *In re Heritage Bond Litig.,* 2005 U.S. Dist. LEXIS 13627, at *2 (9th Cir. 2005) ("Heritage Bond") (citing *Young v. New Process Steel, 419 F.3d 1201, 1203 (11th Cir. 2005)).*

[26] *Donovan v. Sovereign Secur., Ltd.,* 726 F.2d 55, 58 (9th Cir. 1984).

[27] *Pace Design & Fab. v.. Stoughton Composites,* 1997 U.S. App. LEXIS 35780, *2-3 (9th Cir. 1997) (citing *Donovan,* 726 F.2d at 58);*Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835 (1990).

[28] *Perkins v. Standard Oil Co.,* 487 F.2d 672, 676 (9th Cir. 1973).

[29] *Air Separation v. Underwriters at Lloyd's of London,* 45 F.3d 288, 290 (9th Cir. 1994) (quoting *Wheeler v. John Deere Co.,* 986 F.2d 413, 415 (10th Cir. 1993)) ("this court has determined that once a judgment is obtained, interest thereon is mandatory without regard to the elements of which that judgment is composed").

16

The interest assessed for each component of the judgment is calculated from the "date of the entry of the judgment."[30]   The Plaintiffs through the counsels appearing below who join in this request expressly make no such claim for interest on fee shifting fees and costs here.

Further, Rule 39(e) of the Federal Rules of Appellate Procedure (hereafter, "FRAP 39(e)") provides: "The following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule: (1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) the premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal." *See In Re Broadcom Corp. Securities Litigation, 2005 U.S. Dist. LEXIS 45656,* *7-8 (9th Cir. 2005).   Rule 39(c) of the Federal Rules of Appellate Procedure (hereafter, "FRAP 39(c)") provides that a Court of Appeals must fix a maximum rate for taxing the costs of producing necessary copies of a brief, an appendix or copies of records authorized by FRAP 30(f).   FRAP 39(c).

### III. ARGUMENT

Under the facts and circumstances presented here, the Court's granting of Final Approval and issuance of the Final Judgment following a fairness hearing in this case Plaintiffs are entitled to the imposition of a bond. *See* Final Approval Order at 4, Docket #491. *See also* Minutes of the Final Approval Hearing at 3, Docket #482.   In granting Final Approval, this Court carefully weighed all of the arguments, submissions and evidence in the case, specifically including the Gaona objection, and after making detailed findings concluded that all of the requirements

---

[30] *See* 28 U.S.C. § 1961.

necessary to grant final approval had been reasonably satisfied and that Final Approval should be granted forthwith. *See id.*

Objector Gaona's appeal forces costs and delay[31] in the way of the class members' receipt of the economic and injunctive recovery provided by the Settlement and disrupts the implementation of the Court's Judgment and Orders.[32]  To protect the interests of the Plaintiffs, Objector Gaona should be required to post an appeal bond in accordance with federal law guaranteeing all costs, and interest.

As to the costs that are required to be included in a bond, Plaintiffs request the following:

1.) $4,971.97 as the cost for the preparation and transmission of the record, specifically, the costs of printing and copying briefs and other submissions. *See* Declaration of Robert Bonsignore in Support of Plaintiff's Motion for Appeal Bond for Objector Gaona at Paragraph 28.

2.) $1,948.10 as the cost for reporter's transcripts. *See* Declaration of Robert Bonsignore in Support of Plaintiff's Motion for Appeal Bond for Objector Gaona at Paragraph 25.

3.) $200,000.00 for the administrative fees/costs associated with this appeal. *See* Declaration of Amanda Myette, Exhibit V to Plaintiff's Motion for Appeal Bond for Objector Jessica Gaona[33].

4.) $135.75 for the cost of the special process server. *See* Declaration of Robert Bonsignore in Support of Plaintiff's Motion for Appeal Bond for Objector Gaona at Paragraph 27.

---

[31] As described above, Plaintiffs believe the delay to be needless.

[32] Gaona's conclusory offering which was devoid of any meaningful content, together with her failure to appear at the fairness hearing or offer any reason for her failure to appear and her failure to offer any supplement are greatly disturbing to the Plaintiffs because they evidence a lack of seriousness.

[33] Plaintiffs reserve the right to seek a supplemental assessment to the bond relating to the cost of class notice to advise the class of the appeal.

5.) $401,831.00 as the estimated interest lost on the floor of $65 million guaranteed payment assuming median time on appeal of 19 months. *See* Declaration of John Ward, Ph.D. at Paragraph 7, Table 1. *See also* Declaration of Wendy Lascher, J.D. at Paragraph 19, Exhibits III and IV respectively to Plaintiff's Motion for Appeal Bond for Objector Jessica Gaona..

The total requested is $608,342.62.

## A.     The Court has the Power to Require Gaona to Post a Bond Under the Circumstances at Bar

### 1.     Objector Gaona Submitted No Financial Information to Indicate She is Financially Unable to Post Bond Despite the Opportunity to Provide the Court with this Information

The first factor, the appellant's financial ability to post a bond, poses no obstacle to the requested assessment of a bond based on the record before the Court. In *Fleury*, the District Court held the first factor weighs in favor of a bond if, "there is no indication that plaintiff is financially unable to post bond." *See Fleury*, 2008 U.S. Dist. LEXIS 88166, at *22. Here, like the objector in *Fleury*, Gaona has submitted no financial information to indicate that she is financially unable to post a bond despite the opportunity to do so when she filed her appeal. *See id.* at *21. Objector Gaona's lack of submission regarding any financial inability to post bond clearly weighs in favor of a bond.[34]

### 2.     Objector Gaona is Not a Resident in a Ninth Circuit State Raising Significant Difficulties in Collecting Appellate Costs

---

[34] *Chiaverini, Inc. v. Frenchie's Fine Jewelry, Coins & Stamps, Inc.*, 2008 U.S. Dist. LEXIS 45726, at *7 (E.D. Mich. 2008) ("There is no indication that plaintiff is financially unable to post bond, and thus this factor weighs in favor of a bond").

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Jessica Gaona*

The second factor, the risk that the appellant would not pay the appellee's costs if the appeal is unsuccessful, also weighs in favor of a bond. In *Fleury,* the District Court held the second factor weighs in favor of a bond if the Objector does not reside in a state within the Circuit making it more, "difficult for the Settling parties to collect their costs should they prevail on appeal." *Id.* at *22. Objector Gaona is a resident of Texas, which is not a state within the Ninth Circuit. If the appeal is unsuccessful, Plaintiffs will have significantly increased difficulties collecting their costs because Gaona does not reside in the Ninth Circuit.

Moreover, Gaona's choice to substitute her and her Professional Objector Counsels' judgment for that of the remainder of the Class was voluntary. In doing so she knowingly opted to force delay and other costs on the remainder of the class despite other alternatives that would not have imposed the economic loss on others. Should the Appeal be dismissed, the Class members are entitled to be and will seek to be compensated for their ascertainable economic loss. Absent the assessment of a bond, this process will be lengthy and uncertain. All Americans are in rocky financial times. Because of that consideration and considerations that apply at all times there is no guarantee that Gaona's ability to earn or liquid assets as possessed now will be available to pay the funds that will be due the class in the event that the appeal fails will be available two years from now.

Some form of security is reasonable, necessary and falls squarely within the public policy supporting assessment of bonds. On balance, fairness requires that the class, as well as Gaona[35],

---

[35] Plaintiffs place stock in the ability of the trial courts to weigh all factors at ground zero and avoid the punitive assessment of bonds, while at the same time accepting the perfect logic that certain decisions must to be left to the appellate courts to preserve both the appearance of judicial neutrality and judicial neutrality in fact.

be protected and that all reasonable remedies provided by law to address the future expected

obstacles to the swift resolution of future claims against Gaona in the event her appeal fails be

granted at this time.  Therefore, Objector Gaona's lack of residence in the Ninth Circuit and other

considerations including the public policy consideration that follow an unsuccessful appeal

weigh in favor of the assessment of the bond requested of Gaona. Alternatively, public policy

considerations do not favor the new round of litigation that would certainly surrounding the

collection of the economic loss due from Gaona. It is certainly more prudent under the totality of

the circumstances presented here to extend to the Appellee Class the protections offered by law

through the assessment of the reasonable bond requested here

### 3.    Objector Gaona's Appeal is Not Likely to Succeed

The third factor, the merits of the appeal, also weighs in favor of a bond. In Plaintiffs

opinion and as evidenced by the findings in support of Final Approval and Fees and also the

absence of argument and fact in support, the objection is meritless.  In *Fleury,* the District Court

held the third factor weighs in favor of a bond if after the Court has considered each of the

objections, it finds them meritless and not likely to succeed on the merits of her appeal.  *See id.*

at *23.  In *Fleury,* the court noted when final approval was granted, the objector's objections

were reviewed, found meritless and final approval was granted.  *Id.* at *9, 23.  The court in

*Fleury* held the lack of likelihood of success on the objection's merits favored a bond

requirement.  *Id.* at 23.  While the *Fleury* court did consider the merits of the objections, it

refrained from considering any of the objection's potential bad faith in consideration of the

*Azizian* holding.  *Id.* at 23-24, fn. 3.  Here, Plaintiffs believe the third factor weighs in favor of a

bond for the reasons discussed below.

Importantly, Plaintiffs expressly refrain from offering any evidence of bad faith in advancing this request for a bond. [36] Any such offering herein is merely superfluous to this motion although it can and will be used in support of a later Rule 38 request at the Appellate Court level.

In reviewing this third factor in the proper context of assessing a bond in the Ninth Circuit, the Court may consider individually each of Gaona's five basis for appeal. Similar to *Fleury,* the District Court here has already reviewed and carefully considered each of the five basis set out in Gaona's objection and in its Final Approval Order, this Court made specific findings that effectively addressed and overruled each one. *See* Final Approval Order at 4. *See also* Minutes of the Final Approval Hearing at 3, Docket #482. The fact that during hearing, the Court expressly stated that it wished the Objector's were present to have considered the evidence

---

[36] We are cognizant of the Ninth Circuit Court of Appeals opinion in *Azizian* and consciously avoid advancing in support of this bond, arguments that run counter to its holding. *See Azizian* at 961. ("We agree with the D.C. Circuit that the question of whether, or how, to deter frivolous appeals is best left to the courts of appeals, which may dispose of the appeal at the outset through a screening process, grant an appellee's motion to dismiss, or impose sanctions including attorney's fees under *Rule 38.*") *See also In re Am. President Lines, 779 F.2d at 717.* Allowing districts court to impose high *Rule 7* bonds on where the appeals *might* be found frivolous risks "impermissibly encumber[ing]" appellants' right to appeal and "effectively preempt[ing] this court's prerogative" to make its own frivolousness determination. *Id. at 717, 718; See also Adsani, 139 F.3d at 79* ("[A]ny attempt by a court at preventing an appeal is unwarranted and cannot be tolerated.") (quoting *Clark v. Universal Builders, Inc., 501 F.2d 324, 341 (7th Cir. 1974))*." Any overlap of argument or the presentation of facts not favored by that opinion is not intentional attempt to circumvent that ruling. However, should this bond be appealed we do intend to request the Appeals Court to revisit and refine that decision to reflect the realities of present day class action practice and the damage that professional objectors inflict on our system of Civil Justice.

---

presented and the matters discussed at the Final Fairness hearing and this Court's sustaining the

objection of the Home Office Class already evidences the respectful and judicial tempered view

of the objectors and objections that have become part of this settlement process.

Plaintiffs believe that in addition to taking into account the many express findings that do

away with the positions advanced by Gaona, it is permissible to take into account the fact that

Gaona offered absolutely no factual basis or legal basis in support of her objections. *See* Docket

#387, Gaona Objection. Gaona failed to address, rebut or even acknowledge any of the many

factors offered in support of the settlement. *Id.* The same is true as to the many factors upon

which the Court relied in making its related findings.

Objector Gaona advanced that: (1) Defendant Wal-Mart retained a reversionary interest

in the Settlement; (2) the procedural requirements to make an objection were excessive and

calculated; (3) class notice and claims requirements were flawed; (4) the Settlement was not fair,

adequate and reasonable; and (5) attorneys' fees were incorrectly calculated. *See* Docket no. 387,

Gaona Objection. Each of these objections is evaluated below.

## a.   Defendant Wal-Mart Did Not Retain a Reversionary Interest in the Settlement

Gaona's first objection, that Defendant Wal-Mart retained a reversionary interest in the

Settlement, is unfounded. Objector Gaona clearly is mistaken about what the definition of a

reversionary interest is. Professor Silver emphasizes that, "Wal-Mart has agreed to pay $65

million without a reversion." *See* Silver Declaration at 8-9. Professor Silver examined the

additional $20 million ceiling and found, "There is always a ceiling on the amount a defendant

will pay to settle a case." *Id.* at 8. Additionally, he added that in his expert opinion, eliminating

the $20 million reversionary amount in the Settlement would have not been ultimately beneficial

to class members. "It also seems unwise to pay the 'price' of eliminating the reversion, whatever the 'price' may have been, when one considers the portion of the fee that rests on the reversionary amount. The danger a reversion entails is fee inflation, as explained. Here, that danger is minimal." *Id.* Finally, Professor Silver found there was no risk of fee inflation because the injunctive reliefs to the class were worth at least $20 million. *Id.* "Having reviewed expert reports submitted in other settled cases, it seems clear to me that the value of the injunctive reforms exceeds this level. If that is right, then, on the facts of this settlement, the reversion entails a minimal risk of fee inflation." *Id.*

Additionally, as Professor William B. Rubenstein (hereafter, "Professor Rubenstein") indicates in his Declaration in Support of Settlement and Approval and Fee Petition, there are two main types of settlements, a fixed distribution settlement and reversionary settlement. *See* Declaration of William B. Rubenstein in Support of Settlement Approval and Fee Petition at ¶32(a)-(b) (hereafter, Rubenstein Declaration), Docket no. 417, October 10, 2009. Professor Rubenstein defines the Settlement here as a commonly accepted hybrid between a fixed distribution settlement and a reversionary settlement. *Id.* at ¶32(c). Notably, this Settlement has both a ceiling and a floor, immediately preventing it from being identified as a reversionary settlement. "First, and most importantly, this settlement is not a true reversionary fund settlement in that it has a floor guaranteeing that $67.75 million will be disgorged from the defendant no matter what." *Id.* at 28. This Settlement guarantees that no matter how many claims are received; Defendant will be required to provide the class with at least $65 million. *See* Settlement at 6.1. The Settlement was carefully and intentionally drafted to include both a floor and ceiling to guarantee a significant disgorgement of cash benefit to the class and prevent the reversionary interest Objector Gaona is appealing.

Additionally, the Ninth Circuit has expressly accepted floor/ceiling settlements. *See* Rubenstein Declaration at ¶¶33-35. *See also Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007). In proclaiming that such a settlement is wrongful and should be reversed, Gaona offers no argument or fact.

Therefore, Gaona's objection here is unsupported, not likely to succeed, and presents no obstacle to the assessment of the reasonable bond requested.

> **b.    The Procedural Requirements to Make Objections**
> **Were Outlined in the Settlement, Carefully Evaluated**
> **by Class Counsel, Experts and the Court Approved**
> **in Both the Preliminary and Final Approval Orders**

Second, Gaona's objection that the procedural requirements to make an objection were excessive and calculated is also unfounded. The Settlement Agreement outlines the objection process. *See* Settlement at ¶8.15. In its Final Approval Order, the Court found no fault with the objection process to all class members. *See* Final Approval Order. In addition, this Court gave serious consideration and full evaluation of the evidence offered on this issue prior to initially approving the Settlement, including the submission and legal review process, at the Preliminary Approval stage. *See* Docket no. 322, Order Preliminarily Approving Form and Manner of Notice and Scheduling Hearing on Fairness of Settlement at ¶15 (hereafter, "Preliminary Approval Order"), May 28, 2009. The Court found no flaws in the requirement placed upon objectors. In fact, based upon one objectors thoughtful and complete submission the objection process is established as both working as it should and being showed the deference and respect it should properly be afforded. Class members did take part in the objection process and as a result

the settlement class was expanded to include an additional sub-class with the express agreement of all parties and the related Order of this Court. *See* Final Approval Order at 4-7. *See also* Clifford Ferguson Objection to Settlement, Docket no. 379, September 22, 2009. Support is also found in the fact that Gaona timely filed her objection. There is no indication what so ever in the record that objectors or the objection process warrants reversal of the Order on Final Approval.

It is also noteworthy that this Court also had the benefit of the experience and findings offered by Amanda Myette, the experienced Claims Administration manager who was assigned by Rust Consulting, the editor of Newburg on Class Actions, and the further review and scrutiny of 45 law firms nationwide. Given the level of professional scrutiny and judicial review the objection program was subject to, the related objection is not an offering that stands alone as so objectively meritorious that the Plaintiffs' request for a bond is rendered unreasonable. In proclaiming that the burdens placed on objectors were so oppressive and burdensome that this Court's decision to finally approve the settlement is wrongful and should be reversed, Gaona offers no supporting argument or fact. Therefore, Gaona's objection here is unsupported, not likely to succeed, and presents no obstacle to the assessment of the reasonable bond requested.

## c. Class Notice Met all Statutory Requirements and was Court Approved in Both the Preliminary and Final Approval Orders

Gaona's third objection that class notice and claims requirements were flawed is additionally unfounded and unsupported. It fails for the same reasons as her attack on the objection process and more. As to this objection, Gaona's objection seeks to replace the opinion of this Court as well as Class Action experts including Administration professionals with an unsupported and conclusory proclamation that is advanced without any evidentiary foundation

26

what so ever. The notice program involved both direct mail and notice by publication. The direct mail efforts included multiple levels of skip tracing designed and undertaken to insure notice was delivered to class members.  In its Final Approval Order, the Court found notice of the Settlement to all class member was proper and in accordance with Rule 23 of the Federal Rules of Civil Procedure and the FLSA, including, without limitation, 29 U.S.C. §§ 206, 207(a), 211(c), 215, and 216(b), the Class Action Fairness Act ("CAFA") and the requirements of due process. *See* Final Approval Order at 3.  In addition to this Court's serious consideration and full evaluation of the evidence offered on this issue prior to initially approving the notice program at the Preliminary Approval stage, and other notice evidence offered at hearing, this Court also had the benefit of the experience and findings offered by Amanda Myette, the experienced Claims Administration manager who was assigned by Rust Consulting.  Moreover, actual notice of the Settlement was also provided to federal *and* state officials in each of the states that were part of the settlement pursuant to the requirements of CAFA.  *Id.*  There were no objections from State or Federal Representatives. That absence of government objection supports the conclusion that the notice was reasonbable and proper under the circumstances and that this Courts order on Final Approval should not be reversed on the basis of insufficient or bad notice.

In proclaiming that the Notice so badly failed to meet all the related requirements that on that basis alone the Courts decision to Finally Approve the settlement should be reversed, Gaona offers no argument or fact. As to this specific argument, Plaintiffs also believe that Gaona's burden included advancing a supporting expert opinion but do not believe that rejecting Gaona's objection as lacking a likelihood of success requires review or even consideration of such a position[37]. Gaona's objection here is offered without factual support or argument.  Therefore,

[37] Should Gaona appeal this bond Plaintiffs reserve the right to bring this issue before the Court of Appeals

Gaona's objection here is unsupported, not likely to succeed, and presents no obstacle to the assessment of the reasonable bond requested.

### d.   After Extensive Review and Consideration by this Court, the Settlement was Found Fair, Adequate and Reasonable and Meets the Statutory Requirements.

The fourth objection Gaona advances in support of seeking a reversal of the order of this Court granting Final Approval brings with it no likelihood of success. In finding that the Settlement was fair, adequate and reasonable, this Court expressly made specific findings that established it had carefully considered and objectively evaluated of all the evidence submitted by the Parties, including the declarations of experts, the Settlement Agreement, the arguments of counsel, the evidence offered at the Final Approval hearing, records and proceedings in this case. The specific findings also expressly included this Courts own knowledge and familiarity with all the proceedings and filings in this action, as well as the contents and concerns presented through the submissions of the objectors. In finding that the Settlement was fair, adequate, and reasonable and that the proposed settlement warranted final approval pursuant to Rule 23 of the Federal Rules of Civil Procedure and the FLSA, it at all times placed first the interests of the Settlement Class first. Among other matters that the Court expressly addressed in its findings, it found that the settlement resulted from vigorously contested litigation, including extensive discovery, motion practice, and good-faith arm's length negotiations between the parties, and was in the public interest. *See* Final Approval at 8.

The Court expressly reviewed and made considered findings on: (a) the strength of the plaintiffs' case; (b) the risk, expense, complexity and likely duration of further litigation; (c) the risk of maintaining class action status throughout the trial; (d) the amount offered in settlement;

(e) the extent of discovery completed, and the stage of the proceedings; (f) the experience and views of counsel; (g) the presence of a governmental participant; and (h) the reaction of the class members to the proposed settlement and after carefully considering each of these factors, the Court found that this settlement provides substantial benefits to the class members through both economic and injunctive relief.[38]  *Id.*  Further, this Court found the Settlement may be presumed to be fair, because it found that it followed sufficient discovery and genuine arm's length negotiation. *See* Final Approval at 8. [39]

This Court further found the settlement was reached after extensive negotiations with the Honorable Layn R. Phillips (Ret.), who submitted a declaration in support of preliminary approval and was otherwise supported by the Declarations of others. *See* Final Approval at 9. Additional, this Court found this case was incredibly risky from inception and the result exceptionally favorable to the Class, particularly in light of this Court's denial of class certification, which made the chance for the Class Members to obtain any redress slim. *Id.* The Court additionally found discovery was extensive in this litigation, and that counsel conducted the necessary and appropriate investigation to properly evaluate this case and settlement value. *Id.* The Court also found that the fact that none of the governmental agencies receiving notice, which includes all of the State Attorney Generals and Departments of Labor throughout the United States, and Puerto Rico, objected to the settlement, and that only 14 Class Members had issue with the terms, was overwhelming evidence of the fairness. *Id.*

---

[38] *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Officers for Justice v. Civil Serv. Comm'n of the City & County of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982).

[39] *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

Finally, it is worth noting that Gaona does not acknowledge that class certification was denied for hourly employees in her home state of Texas by another United States District Court on June 20, 2008 and/or that she was effectively denied a recovery for the second time by this Court. *See Elena Lopez, Liberty Morales, Chad Mathews, James Veillon and all others v. Wal-Mart Stores Inc., and Sam's East, Inc.*, 93 S.W.3d. 548 (Tex. Ct. App. 2002). *See also* Docket #249, Order dated June 20, 2008, at 33-35. Texas was also previously denied class cert at the state court level.

In proclaiming that the Settlement was so unfair and unreasonable that on that basis alone the Courts decision to Finally Approve the settlement should be reversed, Gaona offers no argument or fact. In fact she fails to acknowledge the arguments in support. Therefore, Gaona's objection here is unsupported, not likely to succeed, and presents no obstacle to the assessment of the reasonable bond requested.

### c.   Objector Gaona Failed to File a Claim and Therefore Lacks Standing to Appeal Attorney's Fees Under Well Established Constitutional Law

Finally, Gaona's fifth objection, that attorneys' fees were incorrectly calculated, is not likely to succeed because she lacks standing to appeal under well established Constitutional law. In fact, a Ninth Circuit case reviewing nearly identical settlement parameters found that an objector who did not file a claim did not have standing to object to Attorney fees. *See Knisley* v. *Network Associates, Inc.* 2002 U.S. App. LEXIS 24657, *7 (9th Cir. 2002).

When a party seeks to appeal a fee award, it must independently satisfy Article III. *See, e.g., Powers, 229 F.3d at 1254 n.4; Lobatz v. U.S. West Cellular of Cal., Inc., 222 F.3d 1142, 1146 (9th Cir. 2000); In re First Capital Holdings Corp. Fin. Prods. Sec. Litig., 33 F.3d 29, 30*

*(9th Cir. 1994)*. Similar to *Kinsley*, here, "the agreement thus precludes class members who fail to submit claim forms from sharing in any reduction of attorney's fees." *Knisley,* 2002 U.S. App. LEXIS 24657 at 8. Additionally, the MDL 1735 Settlement Agreement makes it clear that, "Payment to the members of the California State Settlement Class and the State Settlement Class shall be made on a claims made basis to the members of those Settlement Classes who submit a timely and valid Claim Form in accordance with Sections 8.7, 8.8, or 8.9 of this Agreement." *See* Settlement Agreement at 6.1.1. *See also* Settlement Agreement at 8.2. Class Members who failed timely to submit a completed Claim Form shall be forever barred from receiving any payments pursuant to the Settlement Agreement. "If an Objector also makes a valid request for exclusion from the Settlement Class, the right to object will be forfeited and the objection will not be heard. A Class Member may, however, make an objection and also submit a Claim Form." Settlement at 8.15.2.

Additionally, under well established Ninth Circuit law attorney fees are calculated from the ceiling. *See* Silver Declaration at 8-11. *See also* Rubenstein Declaration at 3, 24-32. *See also* Silver Declaration at 8-11. In proclaiming that the Attorney fees were incorrectly calculated Gaona through counsel at the outset failed to conduct even the most basic legal research. Beyond that she offers no fact or relevant argument in support of her quest to reverse well established Ninth Circuit Authority or the well supported and reasoned discretionary award of fees. In fact Gaona fails to acknowledge the evidence and arguments in support including the common opinion of 2 highly respected legal authorities[40]. Therefore, Gaona's objection here is

---

[40] The contents of the opinions of Prof. Silver and Prof. Rubenstein speak for themselves and a gratuitous recap is not necessary. Additionally, this Court's related findings were detailed and complete.

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Jessica Gaona*

unsupported, not likely to succeed, and presents no obstacle to the assessment of the reasonable bond requested.

### 4. Objector Gaona's Appeal Shows Bad Faith and Vexatious Conduct

The fourth factor, whether the appellant has shown bad faith or vexatious conduct, also weighs in favor of a bond. However, even though Plaintiffs' believe that the appellants have acted in bad faith, demonstrated vexatious[41] conduct, and that their counsels are professional objectors, this factor is not discussed in depth here or advanced on the present record as a basis for the request for a bond because of the *Azizian* holding.[42] The analyses of the first three factors are sufficient to conclude that a bond should be imposed upon Objector Gaona.[43]

---

[41] Merriam Webster defines vexation as Main Entry: vexation as a noun and meaning

1 : the act of harassing or vexing : TROUBLING
2 : the quality or state of being vexed : IRRITATION
3 : a cause of trouble : AFFLICTION

[42] In Co-Lead Counsel Carolyn Beasley Burton's December 18th, 2009 memorandum, Plaintiffs' Memorandum in Support of Motion to Require Objectors Gaona, Swift, Andrews, and Maddox and Their Attorneys to Post Appeal Bonds, and Seeking Any Other Appropriate Relief to Protect the Class, the vexatious conduct of professional objector Bandas is discussed, however, this issue is not addressed at length here because it is recognized as being an appropriate issue for review by the Appeals Court in accordance to *Azizian*. See Docket no. 536, Plaintiffs' Memorandum in Support of Motion to Require Objectors Gaona, Swift, Andrews, and Maddox and Their Attorneys to Post Appeal Bonds, and Seeking Any Other Appropriate Relief to Protect the Class, December 18, 2009,

[43] The 9th Circuit does not favor review and consideration of bad faith or vexatious conduct by the District Courts because, "Allowing districts court to impose high Rule 7 bonds on where the appeals might be found frivolous risks impermissibly encumber[ing] appellants' right to appeal and effectively preempt[ing] this court's prerogative to make its own frivolousness determination." *Azizian* at 961. Nonetheless, we summarize what other circuits would have considered because in the event this bond is appealed, we will ask the Appeals Court to revisit its holdings in

32

the 2007 *Azizian* case.  In *Fleury*, 2008 U.S. Dist. LEXIS 88166, at *19, the District Court found evidence that Objector's counsel, who interestingly is the same lawyer as represents Gaona here, Christopher Bandas of the Bandas Law Firm, had at least one appeal already found to be frivolous by another court and also that the Bandas Objector's lack of understanding of the basis of the appeal was "troubling" but refrained making a finding because of the recent case *Azizian v. Federated Department Stores, Inc.*  There is no question that Objector Gaona is represented by Bandas, a lawyer who is self admitted and well known for posing objections to class settlements in an attempt to extract a payment from the class members. Attorney Bandas can and should be examined by this court under oath to determine among other things how much they have collected so far for objecting to the recently settled state based Wal-Mart wage and hour actions and in exchange for what if any benefit to the respective classes so that the appellate Court will have the benefit of a complete record including Attorney Bandas's position on this subject. Notwithstanding the fact that Professional Objector Bandas is well known to the courts and has been repeatedly chastised and sanctioned for misusing the judicial process for personal gain he should be afforded a full and unrestricted opportunity to defend against these accusations and to offer evidence that he did in fact advance claims in good faith, diligently prosecute them and otherwise bring benefit to class members.  It is a matter of public record that Bandas has entered objections in most of the Wal-Mart wage and hour class settlements this year and the courts in each of those cases have rejected the objections as baseless.  *See* Declaration of Robert Bonsignore in Support Of Final Approval attaching some of the opinions. It is also a matter of public record that Attorney Bandas filed appeals in at least three of those cases, only to abruptly drop each such appeal shortly thereafter. *See,* Declaration of Robert Bonsignore in Support of Bond blab la Attachemnts D,E, and F, *Sarda v. Wal-Mart*, Case No. 1D09-4881, Florida First District Court of Appeal; *Carter v. Wal-Mart*, 2006 CP1500839, South Carolina Charleston County Common Pleas Court; and *Hale v. Wal-Mart Stores, Inc.*, Case No. 01-218710, Circuit Court of Jackson County respectively. Bandas dropped those appeals without any substantive changes being made to the underlying settlements.  The appellate courts in reviewing the appeal of the instant settlement is entitled to a full record when passing on a Rule 38 request especially in light of the extrodianry burden they place upon appellee's seeking to enforce that rule of law. The Court should this exercize its discretion in mamaging its docket to make room for Plaintiffs request for a rekated hering.Under the circumstances, such a hearing is clearly not advanced in the good faith belief that they

Moreover, Gaona's objection is entirely inadequate. When weighed against the burden of proof required by the class to set aside the District Courts findings, Gaona's flimsy offering does not support the denial of Plaintiffs request for a bond or that it is unreasonable under the circumstances. Gaona's five objections, listed above, do not guarantee success. *See* Docket #387, Gaona Objection. In fact, Plaintiffs believe she is not likely to succeed on the merits of her appeal. In any event, the merits of Gaona's appeal weigh in favor of the imposition a bond because nothing contained therein guarantees the likelihood of success or that in the event she loses that the Plaintiffs will recover their costs.

Therefore, the weighing of the *Fleury* factors presents a compelling case for the posting of a bond under FRAP 7.

## B.     The Amount of the Requested Bond is Appropriate

The Court should require Objector Gaona to post an appellate cost bond in the amount $608,342.62 to ensure recoupment of the costs of appeal. The amount of the requested bond is appropriate for the following reasons:

**1.     Permitted Taxable Costs Include Preparation and Transmission of the Record, Reporter's Transcript, and the Fee for Filing Notice to Class Members of the Appeal**

The Ninth Circuit has held that FRAP 7 includes, but is not limited to, "all costs properly awardable at the conclusion of the appeal," as Rule 39(e) of the Federal Rules of Appellate Procedure (hereafter, "FRAP 39(e)") does not contain "any expression to the contrary." *Azizian,* 499 F.3d at 958.

should be allowed to establish relevant facts, even if the date of the proceeding in which the facts will be relevant has not yet been set.

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Jessica Gaona*

The Ninth Circuit follows FRAP 39(e). "*Rule 39(e)* provides: The following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule: (1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) the premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal." *In Re Broadcom Corp. Securities Litigation, 2005 U.S. Dist. LEXIS 45656*, at *7-8. However, the Ninth Circuit has further held that, "[T]he costs identified in Rule 39(e) are among, but not necessarily the only, costs available on appeal [for purposes of Rule 7]." *Azizian,* 499 F.3d at 958. The estimated amounts are included as appropriate below.

### a.    Preparation and Transmission of the Record

Plaintiffs request $4,971.97 as the cost for the preparation and transmission of the record, specifically, the costs of printing and copying briefs and other submissions. *See* Declaration of Co-Lead Counsel Robert Bonsignore in Support of Plaintiff's Motion for Appeal Bond for Objector Gaona at Paragraph 28. This amount is properly included within the requested bond amount.

### b.    Cost for Reporter's Transcripts

Plaintiffs request $1,403.90 as the cost for reporter's transcripts. *See* Declaration of Robert Bonsignore in Support of Plaintiff's Motion for Appeal Bond for Objector Gaona at Paragraph I. This amount is properly included within the requested bond amount.

### 2.    Administrative Costs

A District Court within the 9th Circuit has found class administrative costs as properly included in a Rule 7 bond.[44] In a 2005 case, *In re Broadcom Corp. Secs. Litig.*, 2005

---

[44] *In re Broadcom Corp. Secs. Litig.*, 2005 U.S. Dist. LEXIS 45656, * 9-11 (9th Cir. 2005)

U.S. Dist. LEXIS 45656, *9-11 (9th Cir. 2005), the California Central District Court sustained the Plaintiffs' class argument that the Rule 7 bond should include additional costs for the delay and disruption of administering a settlement of the case. The class successfully argued, as the Plaintiffs assert here, that objectors' appeal effectively postponed distribution of the entire judgment for well over a year.

Plaintiffs request $200,000.00 for the administrative fees/costs associated with this appeal. *See* Declaration of Amanda Myette,, Exhibit V to Plaintiff's Motion for Appeal Bond for Objector Jessica Gaona. Rust Consulting has submitted a Declaration that it estimates additional costs of $200,000.00 due to the appeal of the case. *Id.* This is an estimate and the actual costs of additional administration may vary depending upon the ultimate timetable and services provided. *Id.* This amount is properly included within the requested bond amount.

### 3. Deposition Costs Should be Included in the Bond

Title 28 U.S.C. § 1920 and Fed. R. Civ. P 54(d) each allows the award of certain deposition costs, even if those depositions were not used at trial.[45] Plaintiffs' state that because the deponent failed to attend the deposition and a no show charge was not assessed the deposition costs for a special process server $135.75. *See* Declaration of Robert Bonsignore in Support of Plaintiff's Motion for Appeal Bond for Objector Gaona at Paragraph 27. This amount is properly included within the requested bond amount.

### 4. Interest on the Class Settlement, Attorney's Fees and Costs Should be Included in the Bond

---

[45] *Washington State Dep't of Transp. v. Washington Nat. Gas Co.*, 59 F.3d 793, 806 (9th Cir. 1995).

As detailed above, post-judgment interest is mandatory for any money judgment pursuant to 28 U.S.C. § 1961.[46] The purpose of post-judgment interest is to compensate a successful plaintiff for not being paid during the time of the award and payment.[47] Not only is post-judgment interest assessable upon the judgment, but also separately upon the attorney's fees[48] and costs.[49] The interest assessed for each component of the judgment is calculated from the "date of the entry of the judgment."[50]

In the present case, interest is calculated on the judgment from November 2, 2009, the attorney's fees from November 20, 2009 and the costs when the Court enters its order on the amount of costs. Further, Plaintiffs submit the Declaration of Economist John Ward (hereafter, "Dr. Ward"), who used 28 U.S.C. § 1961 and the Declaration of appellate counsel, Wendy Lascher, to calculate the interest lost due to the appeal. Dr. Ward estimates an interest loss in the amount of $401,831.00 on the floor of $65 million assuming median time on appeal of 19 months. *See* Declaration of John Ward, Ph.D., Exhibit III to Motion for Appeal Bond for Objector Jessica Gaona. *See also* Declaration of Wendy Lascher, J.D., Exhibit IV to Motion for Appeal Bond for Objector Jessica Gaona. Plaintiffs request the Court assess sum of $401,831.00 as part of the bond. This amount should be properly included with the requested bond amount.

---

[46] *Donovan v. Sovereign Secur., Ltd.*, 726 F.2d 55, 58 (9th Cir. 1984).

[47] *Pace Design & Fab. v.. Stoughton Composites,* 1997 U.S. App. LEXIS 35780, *2-3 (9th Cir. 1997) (citing *Donovan,* 726 F.2d at 58);*Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990).

[48] *Perkins v. Standard Oil Co.*, 487 F.2d 672, 676 (9th Cir. 1973).

[49] *Air Separation v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1994) (quoting *Wheeler v. John Deere Co.*, 986 F.2d 413, 415 (10th Cir. 1993)) ("this court has determined that once a judgment is obtained, interest thereon is mandatory without regard to the elements of which that judgment is composed").

[50] *See* 28 U.S.C. § 1961.

## CONCLUSION

This Court's finding that the Plaintiffs request for the assessment of a bond is reasonable and as to the appropriate amount is not dependent upon any one consideration. Rather, it will be arrived at after taking in and considering the totality of the facts and circumstances attendant to this request in accordance with the nuances controlling in the Ninth Circuit.

The Plaintiff class submits that the Court should exercise its plenary discretion to impose an appeal bond against Objector Gaona in the amount of $608,342.62. The Court should further determine the nature and amount of the appeal bond based upon the grounds set forth by the Plaintiffs and for such other and further relief as this Honorable Court deems just, proper and equitable.

Dated: December 21, 2009                          Respectfully submitted:

By:     s/ Robert J. Bonsignore

Robert J. Bonsignore

BBO # 547880
BONSIGNORE & BREWER
23 Forest Street
Medford, MA 02155
Telephone: (781) 350-0000
rbonsignore@class-actions.us

Daniel D. Ambrose, Esq.                          Craig O. Asbill, Esq.
Ambrose Law Group                                Charles G. Monnett & Associates
1007 East West Maple Road                        200 Queens Road
Walled Lake, MI 48390                            Suite 300
(248) 624-5500                                   Charlotte, NC 28204
                                                 (704) 376-1911

Franklin D. Azar, Esq.                           Richard Batesky, Esq.
Rodney P. Bridgers, Jr., Esq.                    Attorney at Law
Nathan J. Axvig, Esq.                            22 E. Washington St., Suite 610

Franklin D. Azar & Associates P.C.
14426 East Evans Ave.
Aurora, CO 80014
(303) 757-3300

Indianapolis, IN 46204
(800) 822-2039

Robin E. Brewer, Esq.
Nicole Vamosi, Esq.
Kelly Elam, Esq.
Rick Kirchner, Esq.
Julie Baker, Esq.
Bonsignore & Brewer
23 Forest Street
Medford, MA 02155
(781) 350-0000

Mark C. Choate, Esq.
Choate Law Firm LLC
424 N. Franklin Street
Juneau, AK 99801
(907) 586-4490

Todd S. Collins, Esq.
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
(800) 424-6690

Adriana Contartese, Esq.
Rafaela Hanley, Esq.
Attorney at Law
866 East Fifth St.
Boston, MA 02127
(617) 268-3557

Lanny H. Darr
Schrempf, Kelly, Knapp & Darr, Ltd.
307 Henry St.
Suite 415
Alton, IL 62002
(618) 465-2311

Paul C. EchoHawk, Esq.
Nathan Long, Esq.
EchoHawk Law Offices
Paul C. EchoHawk
505 Pershing Avenue
Pocatello, ID 83205
(208) 478-1624

R. Deryl Edwards, Jr., Esq.
606 S. Pearl Ave.
Joplin, MO 64801
(417) 624-1962

Ivy L. Frignoca, Esq.
Lambert Coffin Haenn
477 Congress St, 14th Fl
Portland, ME 04112
(207) 874-4000

Courtney French, Esq.
Fuston, Petway & French, LLP
3500 Colonnade Parkway
Suite 300
Birmingham, AL 35243
(205) 977-9798

Troy N. Giatras, Esq.
The Giatras Law Firm, PLLC
118 Capitol Street
Suite 800
Charleston, WV 25301
(304) 343-2900

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Jessica Gaona*

Christopher R. Gilreath, Esq.
Gilreath & Associates
550 Main Street
Suite 600
Knoxville, TN 37902
(865) 637-2442

Vincent J. Glorioso, III, Esq.
The Glorioso Law Firm
815 Baronne Street
New Orleans, LA 70113
(504) 569-9999

Donald S. Goldbloom, Esq.
12590 National Pike
Grantsville, MD 21536
(301) 895-5240

Gregory F. Greiner, Esq.
Greiner Law Office
630 G Ave.
Grundy Center, IA 50638
(319) 824-6951

J. Thomas Henretta, Esq.
Law Offices of J. Thomas Henretta
400 Key Building
159 South Main Street
Akron, OH 44308
(330) 376-7801

Thomas H. Johnson, Esq.
Thomas H. Johnson Law Office
410 Hickory St.
Texarkana, AR  71854
(870) 773-6359

Christopher Meeks, Esq.
Lynch, Meeks & Battitori
1031 Military Avenue
Baxter Springs, KS
(620) 856-2771

Mike Miller, Esq.
Stacey E. Tjon, Esq.
Solberg, Stewart, Miller & Tjon
1129 Fifth Avenue South
Fargo, ND 58103
(701) 237-3166

Pamela Mullis, Esq.
The Mullis Law Firm
1229 Elmwood Ave
Columbia, SC 29201
(803) 799-9577

Glen W. Neeley, Esq.
Attorney at Law, P.C.
863 25th St.
Ogden, UT 84001
(801) 612-1511

Gary S. Nitsche, Esq.
Weik, Nitsche, Dougherty
1300 N. Grant Ave, Suite 101
Wilmington, DE 19899
(302) 655-4040

D. Michael Noonan, Esq.
Shaheen & Gordon, P.A.
140 Washington Street
P.O. Box 977
Dover, NH 03821
(603) 749-5000

Raymond A. Pacia, Esq.
Attorney At Law, LTD

Jeffrey M. Padwa, Esq.
Padwa Law

40

50 Power Road
Pawtucket, RI 02860
(401) 727-2242

303 Jefferson Blvd.
Warwick, RI 02888
(401) 921-4800

Arthur Y. Park, Esq.
Laurent J. Remillard, Jr., Esq.
John C. McLaren, Esq.
Park Park & Remillard
707 Richards Street
Suite 500
Honolulu, HI 96813
(808) 536-3905

Wayne D. Parsons, Esq.
Wayne D. Parsons Law Offices
Dillingham Business Center
Suite 201C
1406 Colburn Street
Honolulu, HI 96817
(808) 845-2211

John Rausch, Esq.
P.O. Box 905
Waterloo, IA 50704
(319) 233-3557

Dan Rausher, Esq.
Attorney at Law
26 Court Street
Suite 1604
Brooklyn, New York 11242
(718) 596-7333

Thomas R. Ricci, Esq.
Law Office of Thomas R. Ricci
303 Jefferson Blvd.
Warwick, RI 02888

(401) 921-4800

Dirk A. Ravenholt, Esq.
Ravenholt & Associates
2013 Alta Drive
Las Vegas, NV 89106

Fred Schultz, Esq.
Greene & Schultz
Showers Plaza
320 W. 8th Street
Suite 100
Bloomington, IN 47404
(812) 336-4357

Cynthia K. Smith, Esq.
Jasper Smith Olson, P.C.
202 W. Spruce St.
P.O. Box 7785
Missoula, MT 59807
(406) 541-7177

Stephen M. Smith, Esq.
Joseph Smith Ltd.
2100 Kecoughtan Road
Hampton, VA 23661-0437
(757) 244- 7000

Laurence W. Stinson, Esq.
Bradley D. Bonner, Esq.
Bonner Stinson, P.C.
P.O. Box 799
128 East Second Street
Powell, WY 82435
(307) 754-4950

Mark Tate, Esq.
Tate Law Group, LLC
2 East Bryan Street
Suite 600
Savannah, GA 31401
(912) 234-3030

Jill P. Telfer, Esq.
Law Offices of Jill P. Telfer
331 J. Street, Ste. 200
Sacramento, CA 95814
(916) 446-1916

Matthew Tobin, Esq.
201 S. Phillips Avenue
Suite 200
Sioux Falls, SD 57104
605-366-9715

Jay A. Urban, Esq.
Urban & Taylor S.C.
4701 North Port Washington Road
Milwaukee, WI 53212
(414) 906-1700

Ernest Warren, Jr., Esq.
Walker Warren & Watkins
838 SW First Avenue
Suite 500
Portland, OR 97204
(503) 228-6655

Christopher P. Welsh, Esq.
James R. Welsh, Esq.
Welsh & Welsh, P.C. L.L.O.
9290 West Dodge Road
100 The Mark
Omaha, Nebraska, 68114
(402) 384-8160

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2009, a copy of the foregoing *Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Jessica Gaona* was filed electronically [and served by mail on anyone unable to accept electronic filing].  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing].  Parties may access this filing through the Court's system.

/s/ Robert J. Bonsignore
Robert J. Bonsignore
