# DECLARATION OF WENDY COLE LASCHER

WENDY COLE LASCHER DECLARES:

1.      I am an attorney licensed to practice in California.  I am the principal of Lascher & Lascher, A Professional Corporation.  I have been retained as an expert witness by plaintiffs' attorney Robert Bonsignore to opine on the likely time it would take for the Ninth Circuit Court of Appeals to resolve an appeal from a class action judgment and award of attorneys' fees, expenses and plaintiffs' incentive payments based on a settlement.  I have personal knowledge of the facts stated below and if called to testify I could and would testify competently to those facts.

## Qualifications

2.      I graduated from the University of Michigan Law School in 1973.  I have been a member of the California Bar since 1973, and my practice has focused on trial and post-trial motions and appeals since then.  I am a Certified Specialist in Appellate Law (State Bar of California), a fellow and current treasurer of the invitation-only American Academy of Appellate Lawyers (www.appellateacademy.org), and a member and past president of the California Academy of Appellate Lawyers (www.calappellate.org).  I have taught 10-week and 5-week courses on Writs and Appeals at the Ventura and Santa Barbara Colleges of Law.  A copy of my resume, which lists speaking and writing projects I have undertaken as well as some of the cases I have handled, is attached to this declaration as Exhibit A and incorporated by this reference.

3.      I have handled several hundred appeals and new trial motions, and reviewed the trial court records in many more cases than I have actually handled.  I follow developments in other lawyers' appeals that have issues relevant to cases I am handling, so I am aware of the progress of many more appeals than my small firm actually handles. At least four times a year I participate in conferences and meetings with appellate specialists and appellate judges where the participants regularly discuss, both in formal

---

**DECLARATION OF WENDY C. LASCHER**
**IN SUPPORT OF PLAINTIFFS' MOTION TO SET BOND**

1

1    panel discussions and informally, a variety of case processing and issues relating to

2    delay. I participate in one active listserve of about 100 attorneys who regularly practice

3    before the Ninth Circuit Court of Appeals, so I am also privy to discussions of Ninth

4    Circuit procedural issues in that context.

5                                     **Sources of Information**

6         4.      In addition to the information I glean through the activities listed in

7    Paragraph 3, in conjunction with both my own practice and my teaching, I regularly

8    review Ninth Circuit publications, including matters published on the Ninth Circuit's

9    website.

10         5.      In preparation for rendering this opinion, I consulted with the Clerk's

11    Office of the Ninth Circuit Court of Appeals, reviewed current information on the Ninth

12    Circuit website, and reviewed the *United States Courts 2008 Annual Report (Ninth*

13    *Circuit)*, http://www.ce9.uscourts.gov/publications/AnnualReport2008.pdf. True copies

14    of the cover sheet and pages 41-43 of that report are attached to this Declaration as

15    Exhibit B and incorporated by this reference.

16                             **Sequence of Steps on Appeal**

17         6.      Some stages of the appellate process are under the control of the parties, but

18    others are not. Once a party files a notice of appeal in the District Court and requests

19    transcripts, the clerk will issue a time schedule order which allows time for preparation of

20    transcripts. In general, the appellant's opening brief must be filed 40 days after the record

21    is filed, but briefing extensions are common. The appellee's brief is generally filed 30

22    days after the appellant's, again subject to extensions; and the appellant may file a reply

23    brief 14 days after the appellee's brief. At that point, the parties wait for the court to set

24    oral argument, and after argument wait again for the court to issue its decision.

25    Rehearing or rehearing en banc is possible, but not common, after the decision issues.

26         7.      The parties have no control over when the court reporter finishes the

27

28

1 transcript, when the court sets oral argument, or when a decision issues.

2 **Timing in the Ninth Circuit**

3     8.    The Ninth Circuit tracks and publishes statistics on the median time for

4 cases to be processed.  The median time from filing a notice of appeal through disposition

5 was 19 months in 2008, up from 18.6 months in 2007.  This means half the cases took

6 less than 19 months and half took more.

7     9.    Statistics have not been formally published for 2009, but compilations by

8 the clerk's office indicate that the median time for civil appeals is now 19.5 months.  The

9 bulk of the delay occurs in the period between the last brief and setting the case for oral

10 argument.

11     10.    The Ninth Circuit website reports even longer times.  In its "Frequently

12 Asked Questions" section, the website includes these questions and answers:

13

14         18.    How long does it take from the time of the notice of appeal until oral argument?

15         (1)    For a civil appeal, approximately 12-20

16 months from the notice of an appeal date. If briefing isn't delayed, approximately 9-12 months from completion of briefing.

17

18         19.    How long does it take from the time of argument to the time of decision?

19         The Court has no time limit, but most cases are decided within 3 months to a year.

20     11.    The number of civil appeals filed in the District Courts in the Ninth Circuit

21 increased during 2008, and therefore the processing time is likely to increase in coming

22 months.

23 **Opinion**

24     12.    Based on my review of the materials above, the nature of the judgment and

25 awards in this case, and my experience with appeals, my opinion is that an appeal will

26 take a *minimum* of 9-12 months, and more likely as long as 18-24 months from notice of

27

28

**DECLARATION OF WENDY C. LASCHER**
**IN SUPPORT OF PLAINTIFFS' MOTION TO SET BOND**

3

1   appeal to decision.

2       I declare under penalty of perjury, under the laws of California, that the foregoing

3   is true and correct and was executed at Ventura, California, on November 10, 2009.

4

5                                                      WENDY COLE LASCHER

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF WENDY C. LASCHER
IN SUPPORT OF PLAINTIFFS' MOTION TO SET BOND

4

**WENDY COLE LASCHER**
605 Poli Street, P.O. Box 25540
Ventura, California 93002
(805) 648-3228
wendy@lascher.com


## PROFESSIONAL

Certified Specialist in Appellate Law, California Board of Legal Specialization

Selected as one the top 100 Southern California Super Lawyers (2007, 2008) , one of top 50 women Southern California Super Lawyers for 2007, and one of the Best Lawyers in America (current listing).

1977-
   Shareholder, LASCHER & LASCHER, a Professional Corporation
   (formerly Lascher & Wilner)
   605 Poli Street, P.O. Box 25540
   Ventura, California 93002
   (805) 648-3228
   wendy@lascher.com

   Specializing in civil and criminal appellate practice, trial consultation, and unusual civil litigation.

1973-1977
   Associate, LAW OFFICES OF EDWARD L. LASCHER

   Admitted to California Bar, December, 1973.  Admitted to practice United States Supreme Court, United States Court of Appeals for Federal, Seventh and Ninth Circuits, United States District Courts for Central and Eastern Districts of California.

## EDUCATION

   University of Michigan Law School, J.D. 1973

   Stanford University, B.A. with distinction, Political Science 1970

   Cleveland High School, Reseda, California 1967

## REPRESENTATIVE CASES

Proctor v. California (1992) 4 Cal.4th 499; aff'd sub nom. Tuilaepa v. California, 512 U.S. 967, 129 L.Ed.2d 750, 1994 U.S. LEXIS 5084, 114 S. Ct. 2630 (1994). Wendy Cole

November 10, 2009

WENDY COLE LASCHER                                                                           2

Lascher argued this death penalty case to the United States Supreme Court.

Caperton v. A. T. Massey Coal Co. (2009) U.S. , 173 L.Ed.2d 1208, 129 S.Ct. 2252
[principal author of amicus curiae brief on behalf of American Academy of Appellate
Lawyers].

Alan v. American Honda Motor Co., Inc. (2007) 40 Cal.4th 894 (authored amicus brief for
California Academy of Appellate Lawyers).  Holds that time to appeal does not start to
run until trial court serves a single document satisfying rules of court.

City of Goleta v. Superior Court (2006) 40 Cal.4th 270.  Holds that developer did not
qualify for safe harbor provision re subdivision map approval, and city not estopped to
deny approval.

Amelco v. City of Thousand Oaks (2002) 27 Cal.4th 228, 38 P.3 1120, 115 Cal.Rptr.2d
900. Holds construction contractor's abandonment theory of liability cannot be asserted
against a public entity because it is inconsistent with competitive bidding. Reversed
contract damage award under "total cost" theory because contractor failed to connect
particular breach to particular damages.

In re Marriage of Pendleton and Fireman (2000) 24 Cal.4th 39; 5 P.3d 839.  This is the
first California case to hold spouses may waive spousal support in a properly drafted
prenuptial agreement.

Morehart v. County of Santa Barbara (1994) 7 Cal.4th 725; 872 P.2d 143.  Clarifies
appealability of judgments on separately tried issues; upholds judgment invalidating
zoning ordinance on preemption grounds.

Nelson v. American Apparel, Inc. (2008) unpublished.  Held that defendant entitled to
order compelling arbitration of breach of settlement agreement despite court's reluctance
to compel arbitration of underlying sexual harassment dispute.

In re Corona (2008) 160 Cal.App.4th 315.  Paroled sex offender could not be required to
waive the psychotherapist-patient privilege as to his privately retained psychotherapist.

Ferguson v. Lopeteguy (2008) unpublished.  Reversed order denying grandparent
visitation because trial court applied wrong standard.

Department of California Highway Patrol v. Superior Court (2008) 158 Cal.App.4th 726.
Establishes that violations of Motorcycle Helmet Law are correctable citations, though not
for the specific client before the court.

November 10, 2009

**WENDY COLE LASCHER** 3

<u>Sondermann Ring Partners-Ventura Harbor v. City of San Buenaventura</u> (2008). Unpublished.  Rejected developer's challenge to City's environmental impact statement for revision of its general plan.

<u>Estate of Burden</u> (2007) 146 Cal.App.4th 1021; 53 Cal.Rptr. 3d 390.  Holds that father's statements during his lifetime about identity of his son meets test of "openly hold[ing] out" child as one's own for purposes of Probate Code §6453's definition of "natural parent."

<u>Finkbeiner v. Gavid</u> (2006) 136 Cal.App.4th 1417, 39 Cal.Rptr.3d 871.  Trustee of an inter vivos trust may appear in court in propria persona to modify and terminate the trust.

<u>ECC Construction, Inc. v. Oak Park Calabasas Homeowners Assn.</u> (September 29, 2004) 122 Cal.App.4th 994.    Appellant could not appeal from judgment on cross complaint while bankruptcy stay in effect as to judgment on complaint involving the same parties.

<u>ECC Construction, Inc. v. Oak Park Calabasas Homeowners Assn.</u> (2004) 118 Cal.App.4th 1031.  Bankruptcy Code §108(c) extends time for filing ruling on motion for new trial, and thus time for filing notice of appeal.

<u>Sanchez v. Hillerich & Bradsby</u> (2002) 104 Cal.App.4th 703 holds that athlete does not assume the risk of injury resulting from equipment which increases the danger inherent in the sport.

<u>Guardianship of Elan E.</u> (2000) 85 Cal.App.4th 998;102 Cal.Rptr.2d 528 reversed attorney fees to appointed counsel where no statutory authorization for award.

<u>Kessel v. Leavitt</u> (1998) (ordered de-published) upheld enforcement of out-of-state fraud judgment in favor of biological father against adoption lawyer who conspired to keep the father from challenging adoption.

<u>Steinberg v. Prudential</u> (1998; unpublished) overturned summary judgment for health insurer which refused to authorize the only treatment available.

<u>Parsons v. Parsons</u> (1996) 49 Cal.App.4th 537 held that probate court may not award family allowance against family trust.

<u>Cohan v. City of Thousand Oaks</u> (1994) 30 Cal.App.4th 747 upheld rights of landowners to develop property after City Council tried to overturn a favorable Planning Commission decision.

November 10, 2009

## PUBLICATIONS AND LECTURING

Panelist, "The Complete Appeal Conference:  Strategies from Start to Finish" Pincus Professional Education (2009)

Speaker, "Putting *City of Hope v. Genentech* in Context," Intellectual Property Section, Santa Barbara County Bar Association (2008)

Author, "Staying Judgments on Appeal," California Litigation (2008)

Speaker, "Judgments and Statements of Decision," Ventura County Business Trial Lawyers (2008)

Instructor, "Writs and Appeals", 5-week course, Ventura College of Law

Panelist, "Winning Your Appeal at the Trial Court Level," Pincus Professional Education (multiple venues 2007)

Panelist, "90 Days Between Judgment and Appeal," Pincus Professional Education (multiple venues 2007)

Panelist, "The Right Stuff for Appellate Lawyers: How to Avoid Going over the Ethical Edge," State Bar of California (October 2006)

Author, "A Vision of California?" California Supreme Court Historical Society newsletter (Summer 2006)

Speaker,  Ventura Center for Dispute Settlement, "Developments After *Rojas*," discussion on the effects of *Rojas v. Superior Court*  (January 2006)

Instructor, Moot Court, 5-week course, Santa Barbara College of Law (Summer 2005)

Panelist, Ventura County Trial Lawyers Association, "Will and Wendy on Writs," (April, 2005)

Speaker, Kern County Bar Association, "The Nuts and Bolts of Filing an Appeal," (April, 2005)

Instructor, "Writs and Appeals", 10-week course, Ventura College of Law (Summer 2001, 2004); Santa Barbara College of Law (Summer 2002); Ventura College of Law (Summer 2004)

November 10, 2009

Panelist, "Federal Appellate Practice," Orange County Bar Association College of Appellate Advocacy, November 6, 2004

Panelist, "The State of Appellate Practice:  A Panel Discussion on Marketing and Managing," American Academy of Appellate Lawyers, (October, 2004)

Panelist, "An Inside Look at *Bell v. Farmers Insurance Exchange,*" National In-house Counsel Forum on Wage and Hour Law, June 24, 2004

Speaker, "Motions:  Why and How to Make Them," Ventura County Barristers Bridging the Gap (January, 2004)

Panelist, Southern California Mediation Association, "Impact of *Rojas*" (November, 2003)

Lascher, Wendy and Brogna, Denise, "Pillow Talk Is Back: Postmarital Agreements in a Postmodern World,"  Family Law News (Vol. 26, No. 1)

Speaker, "Winning in the Long Run:  Improving the Odds in Criminal and Civil Cases," Santa Barbara County Bar Association Bench-Bar Conference (October 2003)

Panelist, "How to Defend Civil Appeals and Writs," California State Bar Conference (September 2003)

Lascher, Wendy, "Babylonic Cuneiform and the Mysteries of the Writ," California Litigation (Vol. 16, No. 3)

Lascher, Wendy and Mezger-Lashly, Gabriele, "Looking Ahead:  How to Increase the Chances of Winning on Appeal," Family Law News (Vol. 25, No. 3)

Instructor, "Attorney Fees," 5-week course, Ventura College of Law (Summer 2003)

Speaker, "Making a Federal Case of It:  Getting from State to Federal Court," California Public Defenders Association, (May 2003)

Speaker, "90 Days After Trial," various locations and groups, April, 2001-October, 2002

Panelist, "The Art of Exercising Discretion," California Judges Association (May 2003)

Speaker, "Appeals, What Every Young Lawyer Should Know," State Bar Conference

November 10, 2009

(2002)

Panelist, "Finding Your Place In the Sun," Second Annual Conference of th ABA
    Council on Appellate Lawyers, Reno, 2002

Speaker, "10 Tips for Winning Appeals," State Bar Conference (2001)

Co-author, "Prevailing Prize," Los Angeles Daily Journal (Feb. 2, 2001)

Speaker, "How to Win Your Appeal at Trial," Ventura County Bar Association (1999)

Author, "Hearing and Decision on Appeal," Vol. 5, Ch. 51, Matthew-Bender,
    California Forms of Pleading and Practice (1998)

Speaker, "Provocations and Provocateurs on Appeal," 1998 State Bar Convention

Speaker, "Post Trial Civil Procedure", 1997 State Bar Convention

Speaker, Consumer Attorneys of California 1997 Annual Seminar,
    "New Trial Motions"

Speaker, Orange County Bar Association College of Appellate Advocacy
    April,1977

Speaker, Business Law Section, Ventura County Bar Association
    "Is the Seaman's Tort Dead?", August, '96

Speaker, 1996 Appellate Courts Institute (CJER), "View from the Other Side
    of the Bench", April and October '96

Speaker, Family Law Bar Association, Family Law Appeals, Sept. '95

Speaker, East County Bar Association, "Making a Record on Appeal", Sept. '95

Speaker, Ventura College of Law, "U.S. Supreme Court History:
    the Death Penalty", July 95

Panelist, "Effective Argument in the California Supreme Court",
    State Bar Convention, 1993

November 10, 2009

WENDY COLE LASCHER                                                                                                7

Panelist, Ventura Superior and Municipal Courts Mandatory Mediation program, June, 1993

Various speeches on mediation process for Ventura Center for Dispute Settlement, 1991-1998

Author, numerous articles for "CITATIONS" (Ventura County Bar newsletter), 1989-

Co-instructor (with Susan Lascher), 9-week paralegal course in Review of Trial Court Decisions, University of California Extension, Fall, 1991

Panelist, "Pretrial Appellate Review", MCLE presentation at 1991 California State Bar Annual Meeting

Lascher, Wendy, "Appellate Settlements", Los Angeles Lawyer, August-September, 1990

Panelist, American Bar Association Medical Malpractice National Institute, 1990

Lecturer, California Continuing Education of the Bar:
    "Appellate Review Before Judgment", 1982
    "Trial Court Planning to Win Appeals", 1983
    "Successful Civil Jury Instructions", 1986

Lecturer, Hastings Litigation Advocacy Program:
    "Evaluating a Case for Appeal", March 1985
    "Creating and Preserving the Record", 1988
    "Making A Record for Appeal", 1988, 1990

**ORGANIZATIONS AND ACTIVITIES** (alphabetical order; current activities indicated by *)

2005 National Conference on Appellate Justice, member, Steering Committee

*American Academy of Appellate Lawyers, Member, 1994-; Board member 2005-; Treasurer, 2009-

*American Inns of Court 1994-1999, 2001-.  Board of Directors, 2004-2005.

*California Academy of Appellate Lawyers, President 1986-1987; Member, 1974-

November 10, 2009

Channel Counties Legal Services,
    Member, Board of Directors, 1993-1996

First National Bank of Ventura, Board of Directors, 1992-2000 (bank sold)

KCLU (public radio station) Advisory Board, 1996-1998

Planned Parenthood Ventura Advisory Council, Member, 1990-1996

*Pro-tem judge, arbitrator, and mediator for Second District Court of Appeal, and for
    Ventura Superior and Municipal Courts, 1988-

State Bar of California, Committee on Appellate Courts 1976-1980 Member, Chair,
    1979-1980; Appellate Law Advisory Commission, Member 1994-1998; Editorial
    Board, California Litigation, 1993-1996

State Bar of California Board of Legal Specialization Member,
    Appellate Law Advisory Commission,1995-1998; Chair, 1997-1998; Committee
    on Appellate Courts, Member, 1976-1980, Chair 1979-1980;

Ventura Center for Dispute Settlement (non-profit mediation organization),
    Founding Director;  Volunteer mediator, 1990-1998

*Ventura and Santa Barbara Colleges of Law Board of Trustees 2001-.  President,
    2004-

*Ventura County Bar Association, President, 1990; Member, Executive Committee,
    1985, 1987-1991; Chair, Judicial Evaluation Committee, 2002-; Attorney's fee
    arbitrator, 1987-; Member, Legal Services Committee, 2001-2003 ; CITATIONS,
    Editor, 1987-1990. 2004-; assistant editor, 1996-2003; columnist and co-editor
    2003-; editor, THE PACKET, 1982-1985

Ventura County Community Foundation, Board of Directors 2001-2006

Ventura County General Hospital, Institutional Review Committee Member
    1981-

Ventura County Hash House Harriers, 1992-

Ventura County Trial Lawyers, Board of Directors 2001-2002

Ventura Courts' Mandatory Mediation Committee, Member 1992-

November 10, 2009



# NINTH | UNITED STATES COURTS
## CIRCUIT | 2008 ANNUAL REPORT

# Court of Appeals

The U.S. Court of Appeals for the Ninth Circuit saw its filings increase in 2008. The court reported 13,299 new appeals, up 4.8 percent from 2007. The increase, the first in three years, was due in part to an upturn in prisoner appeals.

Appellate filings nationally rose 6.1 percent from the prior year with eight of the 12 regional courts of appeal reporting increases. The Ninth Circuit continued to have the largest share of new filings, 21.6 percent of the national total.

The court terminated 12,586 appeals for the year, down 5.4 percent. Judicial panels terminated 5,527 appeals on the merits, while judges and staff disposed of 6,577 appeals before the completion of briefing because of jurisdictional defects, settlements or summary dispositions. Appellate case terminations nationally were down 12.4 percent.

## Breakdown of New Appeals

Appeals of decisions from the U.S. Department of Justice's Board of Immigration Appeals, or BIA, continued to constitute the largest category of new appeals. The court received 4,355 BIA appeals in 2008, which represented 32.7 percent of the total filings.

Appeals of cases originating in the federal district courts in the circuit numbered 7,562 in 2008, an increase of 7.6 percent over the prior year. Of the appeals originating in the district courts, 5,907, or 78.1 percent, were civil in nature and 1,655, or 21.9 percent, were criminal.

Rounding out the new cases were 961 original proceedings and 165 bankruptcy appeals.

The Central District of California generated the largest number of appeals among the district courts of the Ninth Circuit. In 2008, the Central District produced 2,109 appeals, or 15.9 percent of the total filings. The Central District total was up 8.7 percent from 2007.

Six other district courts also generated more appeals in 2008. They were the District of Alaska, 122 appeals, up 37.1 percent; the Eastern District of California, 1,043 appeals, up 35.8 percent; the Eastern District of Washington, 192 appeals, up 18.5 percent; the District of Nevada, 534

appeals, up 18.4 percent; the District of Hawaii, 173 appeals, up 13.1 percent; and the Southern District of California, 537 appeals, up 12.6 percent.

Fewer appeals were reported from the District of the Northern Mariana Islands, 10 appeals, down 41.2 percent; the District of Guam, 11 appeals, down 15.4 percent; the District of Idaho, 127 appeals, down 10.6 percent; the Western District of Washington, 436 appeals, down 10.1 percent; the District of Montana, 300 appeals, down 4.5 percent; the District of Oregon, 388 appeals, down 4.4 percent; the Northern District of California, 808 appeals, down 3.0 percent; and the District of Arizona, 772 appeals, down less than 1 percent.

 ## Appellate Caseload Profile, 2007-2008

| | 2007 Total | 2008 Total | Change 2007-2008 |
|---|---|---|---|
| Filings | 12,685 | 13,299 | 4.8% |
| Terminations | 13,300 | 12,586 | -5.4% |
| *Pending Cases | 16,883 | 17,596 | 4.2% |

*Total pending cases for 2007 revised.

Appeals of criminal cases dipped 2.2 percent in 2008, to 1,655 filings from 1,692. The circuit had 11.6 percent of criminal appeals filed nationally. The most numerous criminal appeals involved drug offenses, 482 filings; criminal immigration offenses, 409 filings; property offenses, 225 filings; and firearms and explosives offenses, 182 filings. Violent offenses numbered 104, including 17 homicides.

Total civil appeals coming from the district courts numbered 5,907 in 2008, up 10.7 percent from the prior year. The federal government was either a plaintiff or defendant in 1,136 of those cases, or 19.2 percent. Private cases numbered 4,771, or 80.8 percent. Among private cases, prisoner petitions constituted the largest single category. In 2008, prisoners filed 1,906 petitions for habeas corpus, capital habeas corpus, civil rights, prison conditions and other causes. Prisoner filings constituted 32.3 percent of the civil appeals coming from the district courts.

## Terminations and Pending Cases

The court terminated 12,586 appeals in 2008, down 5.4 percent from 13,300 in 2007. The number of administrative appeals terminated was 4,531, down 11.7 percent from the prior year. The court also terminated 2,158 private civil matters, up 6.9 percent; 1,941 private prisoner petitions, down 12.3 percent; and 1,737 criminal appeals, down 7.8 percent.

Of the appeals terminated, 6,577 involved procedural terminations by judges and court staff. Another 5,527 cases were terminated on the merits, 1,926 cases after oral argument and 3,601 cases after submission of briefs. Cases disposed of by consolidation numbered 482.

Among the 5,527 cases decided on the merits, 3,924 cases, or 70.9 percent, were affirmed or enforced. The remaining 1,603 were dismissed, reversed, remanded or terminated by other means. The reversal rate was 10.8 percent.

En banc courts, used to resolve intra-circuit conflicts or other legal questions of exceptional importance, heard 19 cases in 2008.



## Filings, Terminations and Pending Cases by Appeal Type, 2008

| Type of Appeal | 2007 Filings | 2008 Filings | Change 2007-08 | % of Circuit Total | 2007 Terminated | 2008 Terminated | Change 2007-08 | 2007 Pending | 2008 Pending | Change 2007-08 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Civil** | | | | | | | | | | |
| U.S. Prisoner Petitions | 357 | 528 | 47.9% | 4.0% | 397 | 434 | 9.3% | 319 | 485 | 52.0% |
| Private Prisoner Petitions | 2,372 | 2,761 | 16.4% | 20.8% | 2,214 | 1,941 | -12.3% | 2,079 | 2,863 | 37.7% |
| Other U.S. Civil | 656 | 608 | -7.3% | 4.6% | 651 | 689 | 5.8% | 860 | 785 | -8.7% |
| Other Private Civil | 1,950 | 2,010 | 3.1% | 15.1% | 2,018 | 2,158 | 6.9% | 2,720 | 2,592 | -4.7% |
| **Criminal** | 1,692 | 1,655 | -2.2% | 12.4% | 1,884 | 1,737 | 7.8% | 2,116 | 2,043 | -3.4% |
| **Other** | | | | | | | | | | |
| Bankruptcy | 197 | 165 | -16.2% | 1.2% | 176 | 178 | 1.1% | 245 | 240 | -2.0% |
| Administrative Appeals | 4,625 | 4,611 | -0.3% | 34.7% | 5,133 | 4,531 | -11.7% | 7,992 | 8,270 | 3.5% |
| *Original Proceedings | 836 | 961 | 15.0% | 7.2% | 827 | 918 | 11.0% | 230 | 318 | 38.3% |
| **Circuit Total** | 12,685 | 13,299 | 4.8% | | 13,300 | 12,586 | -5.4% | 16,561 | 17,596 | 6.2% |
| National Appellate Total | 57,973 | 61,492 | 6.1% | | 67,699 | 59,283 | -12.4% | 51,240 | 53,155 | 3.7% |
| Ninth Circuit as % of National Total | 21.9% | 21.6% | -0.3% | | 19.6% | 21.2% | 1.6% | 32.3% | 33.1% | 0.8% |

*This table includes appeals reopened and remanded as well as original appeals. This table does not include data for the U.S. Court of Appeals for the Federal Circuit. Beginning in 2007, the category entitled "reopened," which includes all reopened appeals, has replaced the category entitled "reinstated." Data on reopened cases for 2007 and thereafter are not comparable to data published previously on reinstated cases.

 Median Time Intervals in Cases Terminated After Hearing or Submission, 2007 and 2008

Number of Months

| By Stage of Appeal | Ninth Circuit | | National | |
|---|---|---|---|---|
| | 2007 | 2008 | 2007 | 2008 |
| From Notice of Appeal to Filing Last Brief | 6.4 | 6.5 | 5.9 | 5.8 |
| From Filing Last Brief to Hearing or Submission | 8.7 | 11.0 | 4.6 | 4.8 |
| From Hearing to Final Disposition | 1.2 | 1.3 | 2.0 | 2.1 |
| From Submission to Final Disposition | 0.2 | 0.3 | 0.5 | 0.7 |
| From Filing of Notice of Appeal to Final Disposition | 18.6 | 19.0 | 12.5 | 12.7 |
| From Filing in Lower Court to Final Disposition in Appellate Court | 38.4 | 38.4 | 28.8 | 30.3 |

Note: The subtotals do not add up to the number for total cases because total cases include original proceedings not reported separately in this table. This table does not include data for the U.S. Court of Appeals for the Federal Circuit.

The court ended the year with 17,596 pending cases, up 4.2 percent from 16,883 cases in 2007.

### Median Time Intervals

Median time intervals, which measure how long it takes for cases decided on the merits to proceed through the appellate process, increased slightly for the Ninth Circuit in 2008. The median time interval from filing of a notice of appeal to final disposition of a case was 19 months in 2008, up from 18.6 months in 2007. The median time interval from the filing of a case in a lower court to final disposition by the Ninth Circuit remained at 38.4 months.

Once an appeal was fully briefed, Ninth Circuit judges decided cases fairly quickly. In 2008, the median time interval for final disposition was 1.3 months for a case in which oral arguments were heard, and .3 months for a case submitted on briefs.

National median time intervals also increased, but were shorter than those of the Ninth Circuit. National median times were 12.7 months from notice of appeal to final disposition by a circuit court of appeals, and 30.3 months from the filing of a case in a lower court to final disposition by a circuit court.

### Pro Se Filings and Terminations

Pro se appeals, in which at least one party is not represented by legal counsel, continue to represent a large portion of the Ninth Circuit's appellate caseload. New pro se filings numbered 6,319 in 2008, up 14.9 percent from 2008. Private prisoner petitions and administrative appeals ranked first and second among categories of pro se filings with 2,317 and 1,679 cases, respectively.

The Ninth Circuit terminated of 3,926 pro se cases in 2008, most on procedural grounds.

### Contributions by Active, Senior and Visiting Judges

The court ended the year with 27 active circuit judges and 21 senior circuit judges (two senior circuit judges died over the course of the year). Active circuit judges participated in 64.4 percent of the cases terminated on the merits during the year. Senior circuit judges participated in 29.1 percent, while visiting judges helped decide 6.5 percent.

In addition to sitting on panels, senior circuit judges served on screening and motions panels and various administrative court committees.