1
2
3
4
5
6
7

Robert J. Bonsignore (BBO # 547880)
BONSIGNORE & BREWER
23 Forest Street
Medford, MA 02155
Telephone: (781) 350-0000
Facsimile: (781) 391-9496
Email: rbonsignore@classactions.us
*Co-Lead Counsel for Plaintiffs*

*Other signatories appear below*

8

## IN THE UNITED STATES DISTRICT COURT

9

## FOR THE DISTRICT OF NEVADA

10
11

| | |
|---|---|
| IN RE WAL-MART WAGE AND HOUR EMPLOYMENT PRACTICE LITIGATION | **MDL 1735** <br><br> 2:06-CV-00225-PMP-PAL (BASE FILE) |
| THIS DOCUMENT RELATES TO: <br><br> ALL ACTIONS EXCEPT KING v. <br><br> WAL-MART STORES, INC., CASE NO. <br><br> 07-1486-WY | |

12
13
14
15
16
17
18
19
20
21
22
23

**MEMORDANDUM IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR APPEAL BOND FOR OBJECTOR DEBORAH A. MADDOX**

24
25
26
27
28

## **TABLE OF CONTENTS**

I.    PROCEDURAL AND FACTUAL BACKGROUND ..........................................................4

II.   GOVERNING RULES AND STANDARD OF REVIEW ...............................................20

III.  ARGUMENT.............................................................................................................22

      A.    The Court has the Power to Require Maddox to Post a Bond Under
            the Circumstances at Bar..............................................................................23

            1.   Objector Maddox Submitted No Financial Information to
                 Indicate She is Financially Unable to Post Bond Despite the
                 Opportunity to Provide the Court with this Information ..............................23

            2.   Objector Maddox is Not a Resident in a Ninth Circuit State
                 Raising Significant Difficulties in Collecting Appellate Costs......................24

            3.   Objector Maddox's Appeal is not Likely to Succeed.....................................25

                 a.   The Fee Award was Found Fair and Appropriate
                      Under Ninth Circuit Law................................................................27

                 b.   Maddox's Objections Were Meritless and Unsupported.....................31

                      i.  Class Counsel Fees are not Disproportionate to the Benefit that
                          is Delivered to Class Members and After Extensive Review and
                          Consideration by this Court, the Settlement was Found
                          Fair, Reasonable and Adequate.........................................................31

i

ii.  The Settlement Followed Mandatory Statutory Procedure and
     Allowed Class Members to Respond to the Fee Requests............... 35

iii.  Expert Opinions Support Using the Settlement Ceiling,
      Not the Floor, as an Appropriate Figure to Base Fees on ................ 37

iv.  Payment to Class Representatives and Dismissing
     Named Plaintiffs Was Not Excessive ............................................ 38

v.  All Settlement Provisions have been Reviewed thoroughly by
    the Court and both Preliminarily and Finally Approved,
    including the Approval Process for Attorney's Fees....................... 39

vi.  Defendant Wal-Mart did not Retain a Reversionary Interest
     in the Settlement........................................................................ 40

4.    Objector Maddox's Appeal Shows Bad Faith and Vexatious Conduct....... 42

B.    The Amount of the Requested Bond is Appropriate ................................. 43

1.    Permitted Taxable Costs Include Preparation and Transmission
      of the Record, Reporter's Transcript, and the Fee for Filing
      Notice to Class Members of the Appeal....................................... 43

      a.    Preparation and Transmission of the Record........................ 44

      b.    Cost for Reporter's Transcripts ........................................... 44

2.   Administrative Costs ................................................................ 45

3.   Deposition Costs Should be Included in the Bond ........................................ 45

4.   Interest on the Class Settlement, Attorney's Fees and Costs
     Should be Included in the Bond .................................................... 46

IV.   CONCLUSION ................................................................................ 47

1

## **TABLE OF AUTHORITIES**

2

3
*Adsani v. Miller*

4
139 F.3d 67 (2nd Cir. 1998) ............................................................................... 26

5

6
*Air Separation v. Underwriters at Lloyd's of London*

7
45 F.3d 288 (9th Cir. 1994) ............................................................................... 21

8

9
*Aleyeska Pipeline Serv. Co. v. Wilderness Soc'y.*

10
421 U.S. 240 (1975) ........................................................................................... 27

11

12
*Azizian v. Federated Dept. Stores*

13
499 F.3d 950 (9th Cir. 2007) ......................................................... 4, 20, 26, 42

14

15
*Boeing Co. v. Van Gemert*

16
444 U.S. 472 (1980) ........................................................................................... 27

17

18
*Chamberlan v. Ford Motor Co.*

19
402 F.3d 952 (9th Cir. 2005) ............................................................................... 5

20

21
*Chiaverini, Inc. v. Frenchie's Fine Jewelry, Coins & Stamps, Inc.*

22
2008 U.S. Dist. LEXIS 45726 (E. D. Mich. 2008)........................................... 24

23

24
*Donovan v. Sovereign Secur., Ltd.* .

25
726 F.2d 55 (9th Cir. 1984) ........................................................................... 2, 21

26

27
*Fleury v. Richemont North America, Inc.*

28
2008 U.S. Dist. LEXIS 88166 (9th Cir. 2008) ......................... 20, 23, 24, 25, 26, 42, 43

iv

*Hanlon v. Chyrsler Corp.*
150 F.3d 1011 (9th Cir. 1998) ................................................................................ 28, 34

*Hayworth v. Nevada*
56 F3d 1048 (9th Cir. 1995) ................................................................................ 4

*Hensley v. Eckerhart*
461 U.S. 424 (1983) ................................................................................ 28

*Hughes Air West, Inc.*
557 F. 2d 759 (9th Cir. 1977) ................................................................................ 27

*In re Airline Ticket Comm'r Antitrust Litig.*
953 F. Supp. 280 (D. Minn. 1997) ................................................................................ 28

*In re Am. President Lines*
779 F.2d 714 (D.C. Circuit 1985) ................................................................................ 26

*In re Broadcom Corp. Secs. Litig.*
2005 U.S. Dist. LEXIS 45656 (9th Cir. 2005) ........................................................ 20, 21, 44, 45

*In re Catfish Antitrust Litig.*
939 F.Supp. 493 (N.D. Miss. 1996) ................................................................................ 28

*In re Heritage Bond Litig.*
2005 U.S. Dist. LEXIS 13627 (9th Cir. 2005) ................................................................ 21

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Deborah A. Maddox*

*In re Lorazepam & Clorazepate Antitrust Litig.* .......................................................................28
2003 WL 22037741 (D.D.C. 2003)

*In re Pacific Enter. Sec. Litig.*
47 F. 3d 373 (9th Cir. 1995) ..........................................................................................28

*In re SmithKline Beecham Corp. Sec. Litig.*
751 F.Sup. 525 (E.D. Pa. 1990).....................................................................................28

*In re United Health Group PSLRA Litig.*
643 F. Supp. 2d 1107 (D. Minn. 2009)...........................................................................43

*Kaiser Aluminum & Chem. Corp. v. Bonjorno*
494 U.S. 827 (1990) ......................................................................................2, 21, 46

*Knisley v. Network Associates, Inc.*
2002 U.S. App. LEXIS 24657 (9th Cir. 2002) ...................................................................30

*Masters v. Wilhelmina Model Agency, Inc.*
473 F.3d 423(2d Cir. 2007...........................................................................................38

*Officers for Justice v. Civil Serv. Comm'n of the City & County of San Francisco*
688 F.2d 615 (9th Cir. 1982) ........................................................................................34

*Pace Design & Fab. v. Stoughton Composites*
1997 U.S. App. LEXIS 35780 (9th Cir. 1997) ...........................................................2, 21, 46

*Paul, Johnson, Alston & Hunt v. Graulty*

886 F.2d 268 (9th Cir. 1989) ........................................................... 27

*Petty v. Wal-Mart Stores, Inc.*
148 Ohio App. 3d 348 (6th Cir. 2002) ............................................... 13

*Perkins v. Standard Oil Co.*
487 F. 2d 672 (9th Cir. 1973) ..................................................... 21, 46

*RBFC ONE, LLC v. Timberlake*
2005 U.S. Dist. LEXIS 19148 (2d Cir. 2005) .................................... 20

*Rodriguez v. West Publishing Corp.*
563 F. 3d 948 (9th Cir. 2009) ......................................................... 28

*Six Mexican Farm Workers v. Arizona Citrus Growers*
904 F. 2d 1301 (9th Cir. 1990) ....................................................... 27

*Staton v. Boeing Co.*
327 F.3d 938 (9th Cir. 2003) ) ......................................................... 1

*Torrisi v. Tucson Elec. Power Co.*
8 F.3d 1370 (9th Cir. 1993) ...................................................... 27, 34

*Tri-Star Pictures, Inc. v. Unger*
32 F. Supp. 2d 144 (2d Cir. 1999) .................................................. 20

*Venen v. Sweet*
758 F.2d 117 (3d Cir. 1985) ........................................................... 20

*Vizcaino v. Microsoft Corp.*

290 F. 3d 1043 (9th Cir. 2002) ................................................................................ 27

*Washington State Dep't of Transp. V. Washington Nat. Gas Co.*

59 F.3d 793 (9th Cir. 1995) ..................................................................................... 46

*Williams v. MGM-Pathe Communications Co.*

129 F.3d 1026 (9th Cir. 1997) ................................................................................. 38

*Wing v. Asarco Inc.*

114 F.3d 986 (9th Cir. 1997) ................................................................................... 28

Other Authorities

28 U.S.C. § 1961

28 U.S C § 1920

29 U.S.C. §§206, 207(a), 211(c), 215, 216(b)

Fed. R. App. Proc. 7

Fed. R. Civ. P. 23(e)

Fed. R. Civ. P. 11(c)(2)

Fed. R. Civ. P. 39(c)

1

2    Fed. R. Civ. P. 54(d)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Deborah A. Maddox*

Plaintiffs have moved pursuant to Rule 7 of the Federal Rules of Appellate Procedure and the District Court's inherent power for an Order requiring Objector Deborah A. Maddox (hereafter, "Objector, " "Objector Maddox" or "Maddox") to post an appeal bond. Plaintiffs have requested the bond be assessed in the amount of $610,988.03 and submit this memoranda of points and authorities, including its attachments in support.[1]  The assessment of an appeal bond by the District Court is an integral and important component of the civil justice system.  It is not only a long standing component of the rules of appellate procedure[2], it is well accepted by federal courts across the country, including the Ninth Circuit Court as a reasonable and necessary means to accomplish important public policy.

During deposition, the Objector expressly limited her appeal to attorney fees.[3]  Maddox then expressly disavowed knowledge of any of the specific factors that must be reviewed when determining an award of attorney fees in a class action lawsuit. *Staton v. Boeing Co.*, 327 F.3d 938, 965-68 (9th Cir. 2003).  During two separate hearings, this Court not only provided ample evidence that it had reviewed and scrutinized the related filings and attachments, but the Court also went through the required evaluative factors  and made findings on each to support its ultimate fee award. *See* Docket 491, Order, 9-13, November 2, 2009 ("hereafter, Final Approval Order").  Objector Maddox's likelihood of success is not so great as to make the requested assessment of a bond unjust or unreasonable.  Her objection is frivolous and this conclusion is fully supported in the record.

---

[1] Plaintiffs rely on the entire record established in this litigation.
[2] Federal Rule of Appellate Procedure 7 is derived from former Federal Rule of Civil Procedure 73(c) and provides that, "the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R.App. P. 7.
[3] *See* Maddox Deposition generally pages 65 - 68. *See* Docket 472, The Videotaped Deposition of Deborah A. Maddox at 2 (hereafter, "Maddox Deposition"), October 19, 2009. *See also Id.* at 66, lines 15-25. "Mr. Bonsignore: 'okay so that's even more clear. So, she objects to the request of the fees and objects to the amount requested as an incentive award to the class representatives.' Mr. Cochran:'That's correct'".

1

The purpose of an appeal bond is to protect the amount the Appellee stands to have reimbursed should the appeal fail. The amount protected includes post judgment interest, or the cost of the delay in the payment of the judgment, if the appeal ultimately fails. Post-judgment interest is mandatory for any money judgment pursuant to 28 U.S.C. § 1961.[4] The purpose of post-judgment interest is to compensate a successful plaintiff for not being paid during the time between the award and the ultimate date of payment.[5]

The facts, argument and evidence supporting the request for the assessment of the requested Appellate Bond as to Objector Maddox presented herein reasonably satisfy the Ninth Circuit evaluative criteria. The request is clearly not punitive, excessive and does not seek to have assessed questionable or gray costs. It is important to note, Plaintiffs have offered their best effort to insure that the facts and evidence presented here precisely comport with the important public policy rationale underlying the provisions in the law for appellate bonds, but at the same time not to reach too far and establish a reasonable basis for appellate review of the bond assessed.[6]

As articulated specifically herein, the class has already incurred costs as a result of Maddox's appeal. As a direct result of this appeal, class members will suffer ascertainable economic loss during the pendency of the appeal. This appeal by Objector Maddox is likely to fail and the class is entitled to the interest that it would have accrued during the pendency of the

---

[4] *Donovan v. Sovereign Secur., Ltd.*, 726 F.2d 55, 58 (9th Cir. 1984).
[5] *Pace Design & Fab. v. Stoughton Composites*, 1997 U.S. App. LEXIS 35780, *2-3 (9th Cir. 1997) (citing *Donovan*, 726 F.2d at 58); *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990).
[6] It is the goal of Professional Objectors to have their objection accepted at the Appellate level and to be placed in the system for review because this brings with them the delay they seek as leverage to extract payments from Plaintiffs counsels. In the long run, whether they win is not important as to individual cases because they play the averages and losing appeals is a cost of doing business. Over time, it has become an established fact that each time they have docketed a colorable appeal the odds are with them that they will receive a payment in exchange for dropping the appeal.

appeal.[7]  It would be manifestly unjust to allow Maddox to voluntarily engage a process to keep the benefit of the settlement from the vast majority of the class and at the same time have the class foot the bill for Maddox's frivolous frolic.  Pursuant to the express authority of the statutory and interpretive case law and for the reasons set forth below, Plaintiffs' Motion should be granted.[8]  By testifying as to her decision to object, Maddox acknowledged that she willfully did not chose any of the other options that she had under the terms of the settlement as well as the fact that she was knowingly holding up the delivery of the benefit of the settlement to the class.  At the same time, her testimony contained innumerable admissions establishing that she possesses a shocking and near total absence of: 1) knowledge of the key terms of the settlement; 2) the facts and considerations that support fee awards; 3) basic class action procedures and safeguards that protect classes; and 4) the process and evaluation and findings that must take place before fees are awarded.  Moreover, her deposition makes it clear that her counsel misinformed her and also failed to provide her with the legal advice minimally required under the circumstances.

---

[7] Although, Maddox appeals only attorney fees she has effectively blocked implementation and funding of the entire settlement and interest requested is calculated on the minimum guaranteed payment of $65 million dollars.

[8] In fact, Plaintiffs believe the appeal to be wholly unsupported and frivolous and reserve all rights to seek all appellate remedies available.  Portions of this submission will support the anticipated Rule 38 sanctions request at the Appellate Court level.  Regrettably, Beasley-Burton has again submitted a filing without attempting to have any of the other Plaintiffs submit a joint submission despite the clear advisement of PTO 1 and PTO 2.  Beasley-Burton did not discuss the contents of her submission, circulate a draft, nor advise a single class counsel or her Co-Lead Counsel in advance of placing her request for the assessment of a bond on file.  Unfortunately, this is *at least* the third time she has done this and attempts to stop this detrimental practice have been wholly unsuccessful.  Moreover, Beasley-Burton's submission clumps all objectors together and does not account for the fact they are expressly all independent of each other and "not working together."  *See* Maddox Deposition at page 51, lines 22-25, and page 52, lines 1-5.  Moreover, as better described in footnote 8, Beasley-Burton requests a bond be valued on costs that will certainly be appealed further delaying final resolution.  In making the request here, Plaintiffs have attempted to make the offer  conservative reasonably available to them.

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Deborah A. Maddox*

Finally, the undersigned counsels do not join in the Request for Bond submitted by Co-Lead Counsel Carolyn Beasley-Burton (hereafter, "Beasley-Burton") and object to it.[9]

## I. PROCEDURAL AND FACTUAL BACKGROUND

On May 23, 2007, this Court granted, in part, Wal-Mart's Motion to Dismiss or for Judgment on the Pleadings, reducing in scope and breadth the number of claims advanced by the Plaintiffs. *See* Docket no. 138, Order. On June 20, 2008, this Court denied Plaintiff's Motion for Class Certification for the First Phase, finding that individual issues predominated and that the actions were not suitable for class treatment. *See* Docket no. 249, Order. The rationale adopted by the Court cut across all claims and applied to all actions in MDL 1735. The order denying class certification effectively put an end to all claims raised leaving Plaintiffs with only the possibility of appeal. On June 30, 2008, Plaintiffs filed a Petition for Appeal requesting permission to appeal the Order denying Class Certification. *See* Docket no. 252 at ¶3.

Readily available statistics already placed in the record clearly establish that reversing the denial of class certification in the Ninth Circuit is rarely successful. *See* Docket no. 426, Memorandum in Support of Motion for Final Approval of Proposed Settlement with Defendant

---

[9] In addition to lacking the expert evidentiary foundation required to support the assessment of a bond, Beasley-Burton's submissions run afoul of the holding in the *Azizian* case. *Azizian v. Ferderated Dept. Stores*, 499 F.3d 950, 958 (9th Cir. 2007). *See* Docket no. 536, Plaintiffs' Memorandum in Support of Motion to Require Objectors Gaona, Swift, Andrews, and Maddox and their attorneys to Post Appeal Bonds, and Seeking Any Other Appropriate Relief to Protect the Class, December 18, 2009. *Azizian* held that, "the term 'costs on appeal' in *Rule 7* includes all expenses defined as 'costs' by an applicable fee-shifting statute, including attorney's fees." *Id.* at 958 (internal citations omitted). However, "The FLSA statute defines attorney's fees separately from costs. 29 U.S.C. § 216(b)." *Hayworth v. Nevada*, 56 F.3d 1048, 1051 (9th Cir. 1995). Despite this, Beasley-Burton requests attorney's fees from the fee shifting provision in FLSA. While individual state laws may allow for fee shifting to be included as costs on a state by state basis, FLSA clearly precludes it. Collectively, the undersigned counsels request this Court to adopt a conservative view and assess the bond on pure and solid legal footing. It is worth noting that it is well known among the practicing class action bar that the goal of Professional Objectors is to obtain some appealable issue and to move the action into the Appellate Court system where it will presumably languish at best until the professional objectors are paid off, or at worst, the appellate process will run its course after several years of delay. In light of this reality, we oppose any effort that results in giving the professional objectors another reason to appeal.

Wal-Mart at 37, October 1, 2009.[10]  *See also,* Docket no. 542, Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Gaona, December 21, 2009, which, to the extent relevant, is incorporated herein by reference.  Beasley-Burton who has disturbingly gamed the system in the past and placed on file incendiary and/or wholly inaccurate documents and hid behind the fact that engaging her in the side issues she raised would place the class at risk has finally gone too far in her bond filing.

The parties executed a Term Sheet on December 14, 2008 with the assistance of the Hon. Layn Phillips (ret.) and subsequently updated the Court on the status of the ongoing efforts to complete and execute a Settlement Agreement[11] and placed on file briefing in support of Preliminary Approval.  *See e.g.* Docket no. 285, Minutes of Proceedings, February 24, 2009.

On May 28, 2009, after careful and complete consideration and review, this Court preliminarily approved a class action settlement as well as the details of the plan of providing notice of the Settlement to Settlement Class members and the method for excluding oneself or submitting an objection.  *See* Docket no. 322, Order Preliminarily Approving Settlement, Approving Form and Manner of Notice, and Scheduling Hearing on Fairness of Settlement Pursuant to Fed. R. Civ. P. 23(e) (hereafter, "Preliminary Approval Order"), at ¶ 3, ¶¶ 5-10.

The Settlement Agreement[12] was the culmination of years of hard fought litigation. During that time, on several occasions, the parties walked away from negotiations because they

---

[10] Here, as the Court is well aware, it denied certification in the First Phase cases upon finding that Wal-Mart's affirmative defenses, which are identical in each settled case, raise individualized issues.  Moreover, many of the state courts in cases covered by this settlement had also previously denied certification, and several of those rulings have already been upheld on appeal.  Class settlements are extremely rare in cases where class certification is denied because the denial of certification generally sounds the "death knell" of the litigation.  *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 957 (9th Cir. 2005).  This is readily apparent in the Ninth Circuit.

[11] The Hon. Layn Phillips (ret.) was called upon during the interim period between the execution of the Term Sheet and the Request for Preliminary Approval for additional assistance.

[12] *See* Docket 432, Declaration of Nicole Vamosi in Support of Final Approval, Attachment A, October 2, 2009.

were unable to reach agreement - underscoring the fact that the formal[13] and informal efforts were at arm's length.  Among the matters researched and included in the Request for Preliminary Approval, were the method and forms of Notice and the procedures for the submission of objections and requests for exclusion.  The express terms of the Settlement Agreement[14] took place after the initial signing of the Term Sheet over many months.  The notice, exclusion and objection provisions were arrived at after extensive legal research and consultation with various experts including Rust Consulting, Inc. (hereafter, "Rust Consulting" or "Rust")[15] and others including class action legal consultants and the editor of *Newburg on Class Actions.*  Counsels for the class representatives, who are highly respected and experienced lawyers, and law firms nationwide also participated in the vetting process.  *See* Docket no. 434, Attachments L-1 through L-28 to Declaration of Nicole Vamosi in Support of Final Approval, October 2, 2009. After research, review and careful consideration,[16] they and the class representatives signed the Settlement Agreement approving its terms including the notice, exclusion and objection procedures.  *See* Docket 432, Declaration of Nicole Vamosi in Support of Final Approval, Attachment A, October 2, 2009.  106 individual class counsels who are members of highly respected and preeminent Plaintiffs law firms focusing on trial practice and complex litigation together with 43 class representatives executed the Settlement Agreement.  It took months of

---

[13] The parties retained the Hon. Layn Phillips (ret.), one of the nation's most respected providers of alternative dispute resolution for complex and class action matters.  Here, Judge Phillips also had the benefit of having served as a neutral in many other actions against Wal-Mart for wage and hour claims.

[14] The Term Sheet, which embodied the general terms of the Settlement, was first executed by the parties on December 14, 2008 during the last of a series of pre settlement formal mediation session with the Hon. Layn Phillips.

[15] Objector Maddox did not challenge the expertise of Rust.  The fact that Rust is among this nation's leading class action claims administration provider is subject to Judicial Notice and otherwise evidenced by multiple submissions in the record that set out their extensive experience and expertise.

[16] Prior to the execution of the Settlement Agreement, several well attended Settlement Summits were convened so that the Settlement Agreement and its terms and projected implementation could be questioned, discussed and/or debated by class counsels.  Additionally, in between the summits, class counsels were provided with updates and drafts of the proposed terms including the class administration and objection procedures.

6

research, review, rumination, debate and discussion before consensus was reached that the best interests of the class would be served through the terms of the Settlement Agreement.

It is important to note that in addition to providing the Court and Counsel with reasonable notice of the concerns, and issues prompting the objection in advance of the scheduled Final Fairness Hearing, on balance, the Class Notice and objection mechanism offered protection to the objectors by providing for a full and complete record of their objection. It is elementary that the purpose of an "objection" to any class action settlement is to serve the best interests of the class. The objection process here was intended to and did support that primary purpose and the information provided through the objection process here allowed for a reasonable evaluation of the concerns and issues raised by each objector. The process worked and where appropriate action was taken by the Court and the Parties in furtherance of an issue raised through an objection to better serve the best interests of the class. In fact, this Court and counsels for the parties accepted all constructive offerings by objectors without hesitation. *See* Docket no. 379, Objection to Settlement, September 22, 2009; Docket no. 491, Final Approval Order, November 2, 2009.

On August 10, 2009, Class Notices were mailed in strict compliance with this Court's Order by the Claims Administrator, Rust Consulting, to the Class Members contained in the Class List via First Class Mail at the most up-to-date home addresses available. Additionally, on August 16, 2009, Plaintiffs published the Summary Notice in *Parade Magazine*. In addition, the Claims Administrator established a website for the Class Members to access information regarding the Settlement and set up a toll-free number to receive inquiries from Class Members, with operators available who spoke both English and Spanish.

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Deborah A. Maddox*

The deadline for requests for exclusion[17] and for objections was set by the Court and included in the Class Notices was September 24, 2009. *Id.* Objector Maddox did not choose to exclude herself. Under the express terms of the Settlement, exercising that option would have given her an unrestricted right to individually advance any and all claims of liability and/or damages that she believed she was entitled to, without impacting the recovery or rights of the class members who accepted the settlement and requested the prompt receipt of its cash and equitable benefits.

On September 23, 2009, Maddox and her counsel instead voluntarily chose to object to the Settlement. It is highly disturbing that a reading of the videotape deposition of Deborah Maddox objectively establishes under any intellectually honest view that at least part of the reason that the Maddox objection is frivolous is that the foundation of her objection is bad[18] legal

---

[17] The term "exclusion letter" as used in the Settlement Agreement is different from the term objection and means the letter which a Settlement Class Member must send to the Claims Administrator in accordance with Section 8.14 of the Settlement Agreement if the Settlement Class Member wishes to exclude himself or herself from one or more of the Settlement Classes and from the release of claims applicable to the Settlement Class or Settlement Classes from which the Settlement Class Member is excluding himself or herself. *See* Settlement Agreement at ¶1.19. *See* Settlement Agreement, Docket # 304-2, dated May 26, 2009, which provides in relevant part: "8.14 Exclusion Letters:

8.14.1. A Settlement Class Member who wishes to exclude himself or herself from this Settlement, and from the release of claims pursuant to this Settlement, shall submit an Exclusion Letter. For an Exclusion Letter to be accepted it must be timely and valid. To be timely it must be received by the date indicated in the Notice, which shall be forty five (45) days from the date on which the Mailed Notice Documents were initially mailed. To be valid, the Exclusion Letter shall contain a statement identifying which Settlement Class the Settlement Class Member wishes to exclude himself or herself from and must be signed under oath and dated. Instructions for Exclusion Letters are found in the Notices, Exhibits 6, 7, and 8.

8.14.2. A Settlement Class Member who submits an Exclusion Letter is not eligible to recover a share of the Class Member Payment Amount with respect to the Settlement Class or Settlement Classes from which he/she has excluded himself or herself from. If a Settlement Class Member submits both a Claim Form and an Exclusion Letter with respect to the same Settlement Class, the Exclusion Letter will govern.

8.14.3. The Claims Administrator shall maintain a list of persons who have excluded themselves and shall provide such list to the Parties upon request. The Claims Administrator shall retain the originals of all Exclusion Letters (including the envelopes with the postmarks) received from Class Members, and shall make copies or the originals available to Wal-Mart or Class Counsel within five (5) business days upon request.

8.14.4. Regardless of the number of Exclusion Letters received, Wal-Mart shall not have the option to rescind this Agreement based on the number of Exclusion Letters received."

[18] Bad here is not intended to invoke an evaluation of bad faith on the part of the objector or her counsel. At this stage of the process it is sufficient to advance that at best, Maddox received lousy legal advice and her objection

8

advice.  After a consultation with her lawyers and the receipt of their legal advice, Maddox

understood the class members were going to receive $16-26 dollars on the one-hand and on the

other hand the lawyers were <u>guaranteed</u> to receive the full $28 million dollars requested.  *See*

Attachment A, Maddox Deposition at 23-25.  Interestingly, Objector Maddox, specifically

limited her objection to the "request of the fees" (*See* Maddox Deposition at 66, lines 15-20) and

in context made it clear that she believed that whatever the Plaintiffs' counsel requested, they

would automatically receive.  *See* Maddox Deposition at 24, line 25 and 25, lines 1- 4, 17- 23.

Additionally, she later conceded that her concerns would be alleviated if Court review was

required and made it clear that she was not mislead by her lawyers as to the required process for

awarding attorney fees.  *See* Maddox Deposition at 26, lines 8-25 and 27, lines 1-7.

 The conduct of the Professional Objector Counsel is highly questionable and

objectionable.  In addition to revealing coaching objections throughout Maddox's deposition, a

plain reading of the deposition makes it clear that her counsels not only failed miserably to even

minimally advise her about the mandatory requirements upon the Court and Counsels prior to  an

award of attorney fees and they misinformed her as to the applicable law and to the terms of the

settlement[19].  It is also worth noting that neither Objector Maddox nor a single one of her several

lawyers[20] chose to appear or to request to participate  via telephone in either the Final Fairness

Hearing or the subsequent "second hearing" on fees and incentive awards.  They also apparently

---

advances the related arguments. The facts supporting the Maddox objection can also be described as lousy because
none are offered.

[19] Although the reading of the Maddox Deposition will establish the fact that she was misinformed of the terms of
the Settlement and the applicable law, this request for a bind assessment is not the proper vehicle for a review of that
misconduct and any reference is incidental to matters relevant herein.

[20] At present count, Objector Maddox is represented by local counsel Attorney Edward Cochran, Attorney Edward F.
Siegel, and Attorney Francis E. Sweeney, Jr.

did not bother to review the submissions[21] or to address Court and the Parties who devoted substantial time to the details of the fee request prior to viscerally filing a poorly researched and poorly supported appeal. Had they participated or otherwise reasonably followed through on the expressed interests they have in protecting the class their appeal may not have been so frivolous. It is interesting, though perhaps not elucidating at this stage to juxtapose the continuing duties of parties generally when they filed papers and advanced an argument that holds final resolution in the balance and the conduct of Maddox and her counsels. At best, the objection filed is based on misunderstandings. There is no record that Maddox even bothered to order the transcripts prior to filing the appeal. As this Court expressly stated during the hearing, it wished that the objectors had the benefit of what took place during hearing. Unfortunately, they did not show up, but instead chose to file and wait for Appellate review process to kick in. The totality of the circumstances establishes that this request for protection made by the class is reasonable and the objection is not likely to succeed and is frivolous.

Through Counsel, Objector Maddox has willfully and knowingly[22] acted in such a way that her choice bars the funding of the Qualified Settlement Fund as well as the other enforceable relief contained within the Settlement. By objecting, rather than requesting exclusion from the settlement, Objector Maddox has knowingly acted to deny the participating class members the benefit of the use of the Settlement monies and the entitlement to interest on those funds during the pendency of the Appeal. *See* Objections, Docket no. 383 (hereafter, "Maddox Objection" or "Objection"). The class members recognize and respect Objector Maddox's right to voluntarily choose to object, however, she in turn must recognize and respect the right of the class to request

---

[21] Certainly Objector Maddox was not given a copy of the documents supporting the fee and incentive request, the supporting documents or the Settlement Agreement. *See* Maddox Deposition at 68, lines 10-15; 70, lines 21-25; 71, lines 24, 25; 72, lines 9-11, 25; 73, lines 15-17, 24-25; and 74, lines 1-24.

the assessment of a bond to protect itself from considerable ascertainable economic loss. Remarkably, in lodging her objection, Maddox and her counsel made clear that they do not have a strong likelihood of success because in addition to advancing a stunning lack of knowledge of well established Ninth Circuit procedure and law and a complete lack of knowledge of the relevant underlying facts[23] they failed to articulate how the objections she made harmed her or caused her any economic or other loss.

During her deposition, Maddox expressly limited her appeal to attorney fees.[24] *See* Maddox Deposition generally pages 65- 68. *See also Id.* at 66, lines 15-25. ("Mr. Bonsignore: 'okay so that's even more clear. So, she objects to the request of the fees and objects to the amount requested as an incentive award to the class representatives.' Mr. Cochran: 'That's correct.'"); *Id.* at 57, lines 7-14. Thus, the appeal is rightly limited to that issue.

In launching her objection, Maddox originally advanced that: (1) the Settlement Agreement is not fair reasonable or adequate because Class Counsel has requested an amount of money in fees that is out of proportion to the benefit that is being delivered to the class members; (2) the Settlement has not followed the procedure mandated by the Federal Rules that would allow Class Members to properly analyze and comment upon the Fee Request; (3) the Settlement is using an inappropriate figure upon which to base its fee request in this claims-made settlement

---

[22] *See* Maddox Deposition at 76, lines 11-24.

[23] In objecting to the fees, Objector Maddox had no knowledge of how many law firms were involved in the litigation or what the costs were (*See* Maddox Deposition at 31, lines 10-20); how many years the case was pending, what discovery was carried, what briefing was done (*See* Maddox Deposition at 32); whether any hearings had taken place, the result of any hearings, or that the class would recovery nothing if the case was lost, (*See* Maddox Deposition at 33); that the class members from Ohio had already lost at the class certification stage even before this Court effectively denied them Certification through the Court's June 29, 2008 Order (*See* Maddox Deposition at 34, lines 5-21. *See also* Order, Docket no. 249, June 29, 2008). Objector Maddox also had "no idea" who paid for costs while the litigation was prosecuted, whether Plaintiffs' retained experts or how much time counsels spent over the years advancing the claims. *See* Maddox Deposition at 35, lines 5-21. Further, she did not know about the lawyers in the case including their quality. *See* Maddox Deposition at 36.

because the amount of fees are based on the ceiling, not the floor; (4) the payments to the Class Representatives and the Dismissing Named Plaintiffs are, in the aggregate, excessive; (5) the Settlement Agreement's Clear Sailing Provision for attorneys fees is not binding on the court; (6) the Settlement Agreement contains a potential reverter to the Defendant that should not be approved by the Court. *See* Docket no. 383, Maddox Objection.

Although, we clearly understand that Objector Maddox withdrew her original objections to advance only her strongest grounds for appeal[25], the objections withdrawn were contrary to clearly established Ninth Circuit law and/or factually unsupported. Notably, Maddox attached no support for the conclusions she offered through her counsels, Edward F. Siegel, Esq. and Francis E. Sweeney, Esq. Both are so called "Professional Objectors." Professional Objector, Edward Cochran, Esq., is also on record as counsel for Maddox pursuant to an announcement that he made at the beginning of the video-taped deposition of Deborah Maddox and the fact that he defended her during the deposition. *See* Maddox Deposition at 2. Apart from that, the undersigned Co-Lead Counsel for the Certified Plaintiff Settlement class was clearly advised that the objectors are separate, should be treated separately, and are not working together. *See* Declaration of Robert J. Bonsignore in Support of Plaintiffs' Motion for Appeal Bond for Objector Deborah A. Maddox at ¶3 (hereafter, "Robert Bonsignore Declaration"). *See also* Maddox Deposition at 51, lines 22-25 and 52, lines 1-5.

The Maddox Objection contained no offer of evidence or argument to support her conclusions. She pointed to no facts independently or that were contained in the record of MDL 1735. *See* Maddox Objection. Additionally, Maddox's written Objection did not disclose nor

---

[24] *See* Maddox Deposition generally pages 65- 68. *See also Id.* at 66, lines 15-25. ("Mr. Bonsignore: 'okay so that's even more clear. So she objects to the request of the fees and objects to the amount requested as an incentive award to the class representatives.' Mr. Cochran 'That's correct'.")

12

acknowledge that class claims directly applicable to Wal-Mart's Ohio hourly employees' claims had already been lost.[26]  *Id.*  All that was offered in exchange for barring a present day recovery to the many class members, who opted to accept the benefits offered through the settlement, were unsupported conclusions.

In addition to being unaware that this Court had  denied class certification and thus relief during the second bite at the apple[27] had also been lost and being advised that each Wal-Mart employee would receive $16-$17 dollars while the attorneys would receive a mandatory $28 million, Objector Maddox was not aware that funds not paid in attorney fees could revert back to Wal-Mart (*See* Maddox Deposition at 50, lines 1-5), she was never advised and did not know what would happen to the class members if the Ninth Circuit Court of Appeals did not reverse the trial court (*See* Maddox Deposition at 6,3 lines 18-24).  Thus, her appeal knowingly fails to take into account the class could receive nothing.  The absence of consideration is frivolous at best.

It is certainly obvious that she is not in a position to be declared as serving the best interests of the class because she lacks the basic knowledge to do so.  Rather, Objector Maddox is better viewed as an impediment to the delivery of the benefit of the Settlement to the class. She is holding up the Settlement and has offered nothing that makes the assessment of the requested bond unreasonable or unjust.

While the written objection raises an old and worn out failed argument, her deposition transcript makes it clear that the integral function of a bond in the civil justice system should be used to serve its intended purpose here.  Both her written opposition and her deposition provide

---

[25] *See* Maddox Deposition at 67, lines 11-20.
[26] Once in Ohio, where certification had been denied and also in connection with the denial of certification in MDL 1735.  *See* Attachment B, *Petty v. Wal-Mart Stores, Inc.*, 148 Ohio App. 3d 348 (6th Cir. 2002).

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Deborah A. Maddox*

no record that can be considered something that would be likely to support a successful appeal. Plaintiffs are entitled to the minimal protection afforded by a bond against ascertainable economic loss.

On October 1, 2009, Plaintiffs submitted voluminous and well supported filings in support of Final Approval. *See* Docket #426-435. Plaintiffs also submitted voluminous and well supported filings in support of an award of attorney fees, reimbursement of out-of-pocket costs, and incentive payments to the class representatives. An objective reading of the docket establishes that, following the massive submissions offered in support of Final Approval, including declarations in support from experts, counsel in all states, and dozens of class members, Maddox and her counsel failed to submit any response or supplement whatsoever, and also failed to act in any way to rebut or address a single fact advanced in the submissions filed in support of Final Approval. [28] The submissions and the Courts findings are thus un-rebutted. Under any reasonable review the attack mounted is frivolous and/or not likely to succeed at best.

On October 5, 2009, Plaintiffs filed an Emergency Motion for an Expedited Deposition Schedule. *See* Docket no. 441, Emergency Motion for an Expedited Deposition Schedule,

---

[27] At the time of her deposition she was still not aware Ohio employees had in effect lost twice already. *See* Maddox Deposition at 62, lines 4-16.

[28] This should come as no surprise, Maddox's counsel are self-described professional objectors. "Attorney Cochran has been involved, either as an Objector Counsel, or as Class Counsel, in over 100 class actions." *See* www.edwardcochran.com. Remarkably, in the one case he claims to be the source of his greatest pride, the reviewing Court found that he was not entitled to fees. The value of what he actually added to the settlement is self-evident. Attorney Siegel is no different. "Ohio lawyer Edward Siegel is a transactional lawyer with an unusual source of extra income. In these cases, he doesn't make money from bringing lawsuits and reaching settlements. Instead he earns fees by challenging the deals that other lawyers make." *See* Attachment C, Weiss, Deborah Cassens, "Is this 'Professional Objector' a Safety Check or Frivolous Flyer?" *ABA Journal*, January 5, 2008. Weiss' article describes Siegel's success rate at objecting to settlements as "less than stellar" and quotes one judge calling his objection "wasteful litigation." *Id.* Siegel is further identified as a professional objector in the June 4, 2008 article of the *Cleveland Scene*. "He's what's known as a professional objector. They're lawyers who make their money challenging settlements in class-action suits." *See* Attachment D, Meiser, Rebecca, "Edward Siegel is on a quest to either stop exorbitant lawyer payouts or score some easy money," *Cleveland Scene*, January 4, 2008. Siegel estimated approximately 30 percent of his practice is dedicated to objecting to settlement. *Id.* Boiled to its essence, the Professional Objectors are reasonably compared to extortionists or other thugs who extract cash because the reality is that in exchange for simply dropping their objections/appeals the Professional Objectors are paid off.

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Deborah A. Maddox*

October 5, 2009. Also, on October 5, 2009, Plaintiffs acted to take the deposition of Objector Maddox. *See* Docket no. 441-4, Notice to Take Deposition of Deborah A. Maddox (hereafter, "Deposition Notice"). A copy of the Deposition Notice was served upon her counsel through electronic service on October 5, 2009. The Deposition Notice provided Maddox with notice that her deposition was to be taken at 11:00 a.m., October 7th, 2009 at the Law Office of Andrew Krembs, 55 Public Square, Suite 1700, Cleveland, Ohio. *Id.* Due to a change of circumstances, Plaintiffs moved the Deposition from October 7th to October 12th. *See* Docket no. 447, Plaintiffs' Amended Motion for an Expedited Deposition Schedule and Memorandum in Support, October 6, 2009. *See also* Docket no. 448, Order granting Plaintiffs' Amended Motion for an Expedited Deposition Schedule and Memorandum in Support, October 6, 2009.

Plaintiffs again formally took action to take the depositions of Objector Maddox on October 6, 2009. *See* Docket no. 447-1, Notice to Take Deposition of Deborah A. Maddox, October 6, 2009. Maddox was personally served on October 9, 2009 the Deposition Subpoena. *See* Docket no. 457, Deborah A. Maddox Subpoena, October 12, 2009. A copy of the Deposition Notice was served upon her counsel Edward F. Siegel, Esq. and Francis E. Sweeney, Esq. through electronic service on October 6, 2009. The Deposition Notice provided Maddox with notice that her deposition was to be taken on October 12, 2009, 11:00 a.m., at the Law Office of Andrew Krembs, 55 Public Square, Suite 1700, Cleveland, Ohio 44113.

On October 9, 2009, Judge Polster of the United States District Court for the Northern of Ohio Eastern Division granted a motion to compel the attendance of Objector Maddox at the October 12, 2009 deposition. *See* Attachment B to Robert Bonsignore Declaration, Ohio Order Granting Complaint for Discovery, October 9, 2009.

A videotaped Deposition took place on October 12, 2009. *See* Maddox Deposition. There is no intellectually honest dispute that Maddox's deposition establishes that she had a <u>very</u> limited understanding of the Class Settlement she objected to and the content of her objection. In fact, in addition to not reading or going over it with her counsel the briefing and documentation offered in support of the requested fees and incentive award, Objector Maddox did not even read or go through the Settlement Agreement with her lawyers. *See* Maddox Deposition at 21-24. In addition, if the words from her mouth are to be taken to support of her claims as to attorney fees, her objection is meritless as far as she is concerned and can clearly be traced back to the misinformation provided to her and legally incorrect advise her professional objector counsels gave her in convincing her to sign on to the objection.[29]

First, Maddox said that she felt the amount of fees Class Counsel were getting was unfair and the amount of financial recovery class members were getting was unfair. However, Objector Maddox had no knowledge of the legal requirements for court approval of attorney's fees, which a court would review all attorneys' fees before making any ruling or the actual financial recovery being made by class members. *See* Maddox Deposition at 25, 40. Additionally, Maddox had no knowledge of the specific facts that related to the Ohio denial of class certification or how it related to her objection. *Id.* at 29-30. Objector Maddox also conceded she had: 1) no knowledge of how many attorneys have worked on the case; 2) she knew nothing about the extensive amount of time and labor that had been committed to the case; 3) she had no knowledge of the filed briefs in the case or their content; 4) she had no knowledge of any of the hearings that took place; 5) she had no knowledge of any of the court proceedings in the case; 6) she had no

---

[29] For example, she understood or was advised by the Professional Objectors that represent her that whatever the lawyers for the class asked for, they would get, and did not know that fees and costs had to be reviewed, scrutinized and approved by a Judge.

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Deborah A. Maddox*

knowledge about any expert's filings in the case; 7) she had no knowledge about the length of the case; and 8) had no knowledge of any depositions for the case. *Id.* at 32-33, 35, 36, 40. Objector Maddox also conceded she was not familiar with the complaint or the claims alleged in it. *Id.* at 53. She also was not familiar with any of the mediations connected with this case. *Id.* at 63.

Regarding her objection to the attorneys' fees, Maddox conceded she had no knowledge of what would be a fair rate for attorneys' fees would be, what the experience level of the attorneys for the MDL 1735 was or what the quality of the attorneys' work product was. *Id.* at 37. Objector Maddox was unable to provide any basis for her objection to attorney's fees other than she felt is was "unfair." *Id.* at 57-58. Maddox conceded she had no knowledge of what attorneys had billed in this case. *Id.* at 70. She additionally had no idea of the attorneys' costs or labor associated with the case. *Id.* at 71. When asked about specific counsel for the case, Objector Maddox had no knowledge of who they were. *Id.* at 71. Objector Maddox had no familiarity with the expert reports regarding attorneys' fees, fee related filings or declarations in support of fees. *Id.* at 68-70, 74.

Regarding the Settlement Agreement, Maddox conceded she was not aware of any of the injunctive relief provided by Wal-Mart as a result of the agreement. *Id.* at 41. Maddox further did not understand the Settlement Agreement's allocation plan for class members. She incorrectly believed all class members would file a claim and everyone who filed a claim would get a flat amount of "$16." *Id.* at 40. When questioned about the Settlement terms, Settlement negotiations, and the value of the Settlement, Maddox had no knowledge even though her objection directly states she feels the Settlement was undervalued. *Id.* at 56. Maddox acknowledged that she was aware her appeal was holding up the benefit of the settlement to all class members. *Id.* at 76.

Finally, Maddox at her deposition stipulated that her objection was limited to the, "request of the fees and objects to the amount requested as an incentive award to the class representatives." *Id.* at 66.

On October 19, 2009, this Court held the Final Fairness Hearing in strict accordance with its order. . *See* Docket no. 482, Minutes of the Court. At the hearing, the Court received evidence and heard arguments. The Court also reserved time and expressly invited comments from the Objectors and anyone else that wished to be heard. In fact, during hearing, the Court expressly stated that it wished the Objectors were present to have considered the evidence presented and the matters discussed at the Final Fairness hearing. Despite having expressly represented to the Court that they would be attending, neither Objector Maddox nor her counsel appeared at the Final Fairness hearing. On the date of the Final Fairness Hearing, Objector Maddox filed a Notice of Non-Appearance informing the Court she would not attend the Final Fairness Hearing. *See* Docket no. 469, Notice of Non-Appearance. Neither Objector Maddox nor her counsels offered any reason for not appearing and did not request to participate via telephone.

On October 19, 2009, in its Final Approval Order, and after carefully considering and expressly taking into account the evidence offered within the voluminous filings, the evidence offered at and subsequent to the hearing, and its own expansive institutional knowledge and grounded understanding of the intricacies of this litigation and the efforts of the counsels for the respective parties as well as the history of this litigation, this Court effectively overruled Maddox's Objections by its findings and rulings. *See* Final Approval Order at 4, Docket #491 (hereafter, "Final Approval Order"). *See also* Minutes of the Final Approval Hearing at 3, Docket #482. Providing notice that it had carefully considered and was denying the Maddox

objection, the Court specifically held, "In the event that any of these objectors appeal this Final Order, the Court will promptly conduct a hearing to determine the need for each appellant to post a bond under Fed. R. App. Proc. 7." *See id.* at 4, ¶ 4.

The deadline for receipt of all claim forms was November 9, 2009. *See* Settlement Agreement at ¶8. Objector Maddox did file a claim for compensation with settlement claims administrator, Rust Consulting.[30]

On November 2, 2009, this Court approved Plaintiffs' Motion for Final Approval of Settlement and entered final judgment, including an award of attorney's fees, expenses and incentive payments to the Plaintiffs. *See* Docket no. 491, Final Approval Order.

After an additional hearing, and taking into consideration additional submissions, evidence and the receipt of additional expert opinions from the preeminent authority on the subject in America, Prof. Charles Silver (hereafter, "Professor Silver"), the Court subsequently approved the amount of attorney's fees and incentive payments for the class representatives on November 20, 2009.[31] *See* November 20, 2009 Minutes, Docket no. 520. *See also* Docket no. 507, Attachment A to Supplement Declaration of Robert J. Bonsignore, in Support of the Motion for Award of Attorneys Fees and Expenses and Incentive Awards Relating to Proposed Settlement with Defendant Wal-Mart, Expert Report of Professor Charles Silver Concerning the Bearing of the Claim Rate on the Fee Award (hereafter, "Silver Declaration"), November 17, 2009.

On December 01, 2009, Objector Maddox filed her appeal. *See* Notice of Appeal, Docket no. 523.

---

[30] *See* Declaration of Amanda Myette, Rust Consulting, at ¶ 4, December 3, 2009.
[31] Objector Maddox, through counsel, was noticed, was also reasonably notified of the subsequent hearing and chose not to attend or offer any supplement to her original objection.

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Deborah A. Maddox*

At this point, per this Court's Order of November 2, 2009 ruling that a prompt resolution on the assessment of a bond would be afforded the class if necessary, the Plaintiffs have moved for an appeal bond pursuant to Fed. R. App. Proc. 7. *See* Docket No. 491, ¶ 4.

## II.   GOVERNING RULES AND STANDARD OF REVIEW

Rule 7 of the Federal Rules of Appellate Procedure (hereafter, "FRAP 7") empowers a United States District Court in its discretion to "require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal."  FRAP 7.  The purpose of an appeal or cost bond in circumstances such as the present is, "to protect the amount the appellee [class] stands to have reimbursed," including the costs of delaying payment of the judgment, should the appeal ultimately fail. *See Fleury v. Richemont North America, Inc.*, 2008 U.S. Dist. LEXIS 88166, at *18-19 (9th Cir. 2008) (further citations omitted).  A Federal District Court retains jurisdiction after the filing of an appeal to issue orders regarding the filing of bonds under FRAP 7.[32]  While FRAP 7 does not expressly provide a list of factors to consider in determining whether to require a bond, other courts, including the Northern District of California, have relied upon certain well accepted factors such as: (1) the appellant's financial ability to post a bond; (2) the risk that the appellant would not pay the appellee's costs if the appeal loses; (3) the merits of the appeal[33]; and (4) whether the appellant has shown bad faith or vexatious conduct.[34] *See Fleury*, 2008 U.S. Dist. LEXIS 88166, at *19.  The District Court's

---

[32] *Venen v. Sweet*, 758 F.2d 117, 120 n.2 (3d Cir. 1985).

[33] *See also RBFC ONE, LLC v. Timberlake*, 2005 U.S. Dist. LEXIS 19148, at *3-4 (2d Cir. 2005); *Tri-Star Pictures, Inc. v. Unger*, 32 F. Supp. 2d 144, 147-49 (2d Cir. 1999).

[34] It is the general impression of the practicing bar that this factor has not been favorably received by the Ninth Circuit. *Azizian v. Federated Dept. Stores*, 499 F.3d 950, 961 (9th Cir. 2007).

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Deborah A. Maddox*

findings and rulings on the amount of any cost and/or appeal bond are subject to an abuse of discretion standard of review.[35]

Post-judgment interest is mandatory for any money judgment pursuant to 28 U.S.C. § 1961.[36] The purpose of post-judgment interest is to compensate a successful plaintiff for not being paid during the time of the award and payment.[37] Not only is post-judgment interest assessable upon the judgment, but in certain circumstances where a fee shifting provision is applicable, it is also separately to be determined upon attorney's fees[38] and costs.[39] The interest assessed for each component of the judgment is calculated from the "date of the entry of the judgment."[40] The Plaintiffs, through the counsels appearing below who join in this request, expressly make no such claim for interest on fee shifting fees and costs here.

Further, Rule 39(e) of the Federal Rules of Appellate Procedure (hereafter, "FRAP 39(e)") provides: "The following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule: (1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) the premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal." *See In Re Broadcom Corp. Securities Litigation, 2005 U.S. Dist. LEXIS 45656,* *7-8 (9th Cir. 2005). Rule 39(c) of the Federal Rules of Appellate Procedure (hereafter,

---

[35] *Azizian v. Federated Dept. Stores*, 499 F.3d 950, 955 (9th Cir. 2007) (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1028 (9th Cir. 2001) (as amended)). *See also In re Broadcom Corp. Secs. Litig.*, 2005 U.S. Dist. LEXIS 45656, at *6-7 (9th Cir. 2005) ("[t]he determination of the amount of a bond necessary to ensure payment of costs on appeal is left to the discretion of the district court"); *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13627, at *2 (9th Cir. 2005) ("Heritage Bond") (citing *Young v. New Process Steel*, 419 F.3d 1201, 1203 (11th Cir. 2005)).

[36] *Donovan v. Sovereign Secur., Ltd.*, 726 F.2d 55, 58 (9th Cir. 1984).

[37] *Pace Design & Fab. v.. Stoughton Composites*, 1997 U.S. App. LEXIS 35780, *2-3 (9th Cir. 1997) (citing *Donovan*, 726 F.2d at 58); *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990).

[38] *Perkins v. Standard Oil Co.*, 487 F.2d 672, 676 (9th Cir. 1973).

[39] *Air Separation v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1994) (quoting *Wheeler v. John Deere Co.*, 986 F.2d 413, 415 (10th Cir. 1993)) ("this court has determined that once a judgment is obtained, interest thereon is mandatory without regard to the elements of which that judgment is composed").

"FRAP 39(c)") provides that a Court of Appeals must fix a maximum rate for taxing the costs of producing necessary copies of a brief, an appendix or copies of records authorized by FRAP 30(f).  FRAP 39(c).

## III. ARGUMENT

Under the facts and circumstances presented here and as contained in the Courts record of this litigation, the Court's granting of Final Approval and issuance of the Final Judgment following a fairness hearing in this case and its related Orders, Plaintiffs are entitled to the imposition of a bond. *See* Final Approval Order at 4, Docket no. 491. *See also* Minutes of the Final Approval Hearing at 3, Docket no. 482.  In granting Final Approval, this Court carefully weighed all of the arguments, submissions and evidence in the case, specifically including the Maddox objection and, after making detailed findings, concluded that all of the requirements necessary to grant final approval had been reasonably satisfied and that Final Approval should be granted forthwith. *See id.*

Objector Maddox's appeal forces costs and delay[41] in the way of the class members' receipt of the economic and injunctive recovery provided by the Settlement and disrupts the implementation of the Court's Judgment and Orders.[42]  To protect the interests of the Plaintiffs, Objector Maddox should be required to post an appeal bond in accordance with federal law guaranteeing all costs and interest.

As to the costs that are required to be included in a bond, Plaintiffs request the following:

1.) $4,971.97 as the cost for the preparation and transmission of the record, specifically, the costs of printing and copying briefs and other submissions. *See* Declaration of

---

[40] *See* 28 U.S.C. § 1961.
[41] As described above, Plaintiffs believe the delay to be needless.
[42] Maddox's conclusory offering which was devoid of any meaningful content, together with her failure to appear at the fairness hearing or offer any reason for her failure to appear and her failure to offer any supplement are greatly disturbing to the Plaintiffs because they evidence a lack of seriousness.

Robert Bonsignore in Support of Plaintiff's Motion for Appeal Bond for Objector Maddox at Paragraph 23.

2.) $1,403.90 as the cost for reporter's transcripts. *See* Declaration of Robert Bonsignore in Support of Plaintiff's Motion for Appeal Bond for Objector Maddox at Paragraph 20.

3.) $200,000.00 for the administrative fees/costs associated with this appeal. *See* Declaration of Amanda Myette, Exhibit V to Plaintiff's Motion for Appeal Bond for Objector Deborah A. Maddox.[43]

4.) $2,781.16 for the cost of the special process server, videographer, court reporter, transcript and for counsel's travel related expenses to attend the deposition. *See* Declaration of Robert Bonsignore in Support of Plaintiff's Motion for Appeal Bond for Objector Maddox at Paragraph 23.

5.) $401,831.00 as the estimated interest lost on the floor of $65 million guaranteed payment assuming median time on appeal of 19 months. *See* Declaration of John Ward, Ph.D. at Paragraph 7, Table 1. *See also* Declaration of Wendy Lascher, J.D. at Paragraph 19, Exhibits III and IV respectively to Plaintiff's Motion for Appeal Bond for Objector Deborah A. Maddox.

The total requested is $610,988.03.

**A.      The Court has the Power to Require Maddox to Post a Bond Under the Circumstances at Bar**

**1.      Objector Maddox Submitted No Financial Information to Indicate She is Financially Unable to Post Bond Despite the Opportunity to Provide the Court with this Information**

The first factor, the appellant's financial ability to post a bond, poses no obstacle to the requested assessment of a bond based on the record before the Court. In *Fleury*, the District Court held the first factor weighs in favor of a bond if, "there is no indication that plaintiff is financially unable to post bond." *See Fleury*, 2008 U.S. Dist. LEXIS 88166, at *22. Here, like the objector in *Fleury*, Maddox has submitted no financial information to indicate that she is

financially unable to post a bond despite the opportunity to do so when she filed her appeal. *See id.* at *21. Objector Maddox's lack of submission regarding any financial inability to post bond clearly weighs in favor of a bond.[44]

### 2. Objector Maddox is Not a Resident in a Ninth Circuit State Raising Significant Difficulties in Collecting Appellate Costs

The second factor, the risk that the appellant would not pay the appellee's costs if the appeal is unsuccessful, also weighs in favor of a bond. In *Fleury,* the District Court held the second factor weighs in favor of a bond if the Objector does not reside in a state within the Circuit making it more, "difficult for the Settling parties to collect their costs should they prevail on appeal." *Id.* at *22. Objector Maddox is a resident of Ohio, which is not a state within the Ninth Circuit. If the appeal is unsuccessful, Plaintiffs will have significantly increased difficulties collecting their costs because Maddox does not reside in the Ninth Circuit.

Moreover, Maddox's choice to substitute her and her Counsels' judgment for that of the remainder of the Class was voluntary. In doing so, she knowingly opted to force delay and other costs on the remainder of the class despite other alternatives that would not have imposed the economic loss on others. Should the Appeal be dismissed, the Class members are entitled and will seek to be compensated for their ascertainable economic loss. Absent the assessment of a bond, this process will be lengthy and uncertain. All Americans are in rocky financial times. Because of that consideration, and considerations that apply at all times, there is no guarantee that Maddox's ability to earn or liquidate assets as possessed now can ensure payment of the funds that will be due the class in the event that the appeal fails two years from now.

---

[43] Plaintiffs reserve the right to seek a supplemental assessment to the bond relating to the cost of class notice to advise the class of the appeal.

Some form of security is reasonable, necessary and falls squarely within the public policy supporting assessment of bonds. On balance, fairness requires that the class, as well as Maddox[45], be protected and that all reasonable remedies provided by law to address the future expected obstacles to the swift resolution of future claims against Maddox in the event her appeal fails be granted at this time. Therefore, Objector Maddox's lack of residence in the Ninth Circuit and other considerations, including the public policy considerations that follow an unsuccessful appeal, weigh in favor of the assessment of the bond requested of Maddox. Alternatively, public policy considerations do not favor the new round of litigation that would certainly surrounding the collection of the economic loss due from Maddox. It is certainly more prudent, under the totality of the circumstances presented, here to extend to the Appellee Class the protections offered by law through the assessment of the reasonable bond requested here.

### 3.    Objector Maddox's Appeal is Not Likely to Succeed

The third factor, the merits of the appeal, also weighs in favor of a bond. In Plaintiffs' opinion, and as evidenced by the findings in support of Final Approval and Fees and also the absence of argument and fact in support, the objection is meritless. In *Fleury,* the District Court held the third factor weighs in favor of a bond if, after the Court has considered each of the objections, it finds them meritless and not likely to succeed on the merits of her appeal. *See id.* at *23. In *Fleury*, the court noted when final approval was granted, the objector's objections were reviewed, found meritless and final approval was granted. *Id.* at *9, 23. The court in *Fleury* held that the lack of likelihood of success on the objections' merits favored a bond

---

[44] *Chiaverini, Inc. v. Frenchie's Fine Jewelry, Coins & Stamps, Inc.*, 2008 U.S. Dist. LEXIS 45726, at *7 (E.D. Mich. 2008) ("There is no indication that plaintiff is financially unable to post bond, and thus this factor weighs in favor of a bond").

[45] Plaintiffs place stock in the ability of the trial courts to weigh all factors at ground zero and avoid the punitive assessment of bonds, while at the same time accepting the perfect logic that certain decisions must be left to the appellate courts to preserve both the appearance of judicial neutrality and judicial neutrality in fact.

requirement. *Id.* at 23.  While the *Fleury* court did consider the merits of the objections, it refrained from considering any of the objections' potential bad faith in consideration of the *Azizian* holding. *Id.* at 23-24, fn. 3.  Here, Plaintiffs believe the third factor weighs in favor of a bond for the reasons discussed below.

Importantly, Plaintiffs expressly refrain from offering any evidence of bad faith in advancing this request for a bond. [46]  Any such offering herein is merely superfluous to this motion, although it can and will be used in support of a later Rule 38 request at the Appellate Court level.

In reviewing this third factor in the proper context of assessing a bond in the Ninth Circuit, the Court may consider Maddox's singular basis for appeal, the fee and incentive award. Additionally, we will briefly touch upon the six bases Maddox advanced in support of her appeal prior to withdrawing them because they were also meritless.

Similar to *Fleury,* the District Court here has already reviewed and carefully considered the basis set out in Maddox's objection, and in its Final Approval Order, this Court made specific findings that effectively addressed and overruled each one. *See* Final Approval Order at 4.  *See also* Minutes of the Final Approval Hearing at 3, Docket no. 482.  The fact that during hearing, the Court expressly stated that it wished the Objectors were present to have considered the

---

[46] We are cognizant of the Ninth Circuit Court of Appeals opinion in *Azizian* and consciously avoid advancing, in support of this bond, arguments that run counter to its holding. *See Azizian* at 961.  ("We agree with the D.C. Circuit that the question of whether, or how, to deter frivolous appeals is best left to the courts of appeals, which may dispose of the appeal at the outset through a screening process, grant an appellee's motion to dismiss, or impose sanctions including attorney's fees under *Rule 38*.")  *See also In re Am. President Lines,* 779 F.2d 714, 717 (D.C. Circuit 1985).  Allowing district courts to impose high *Rule 7* bonds on where the appeals *might* be found frivolous risks "impermissibly encumber[ing]" appellants' right to appeal and "effectively preempt[ing] this court's prerogative" to make its own frivolousness determination. *Id. at* 717, 718; *See also Adsani* v. *Miller,* 139 F.3d 67, 79 (2nd Cir. 1998) ("[A]ny attempt by a court at preventing an appeal is unwarranted and cannot be tolerated.") (quoting *Clark v. Universal Builders, Inc.,* 501 F.2d 324, 341 (7th Cir. 1974))."  Any overlap of argument or the presentation of facts not favored by that opinion is not intentional attempt to circumvent that ruling.  However, should this bond be appealed we do intend to request the Appeals Court to revisit and refine that decision to reflect

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Deborah A. Maddox*

evidence presented and the matters discussed at the Final Fairness hearing.  This Court's sustaining the objection of the Home Office Class already evidences the respectful and judicial, tempered view of the objectors and objections that have become part of this settlement process.

Plaintiffs believe that, in addition to taking into account the many express findings that do away with the positions advanced by Maddox, it is permissible to take into account the fact that Maddox offered absolutely no factual basis or legal basis in support of her objections.  *See* Docket no. 383, Maddox Objection.  Maddox failed to address, rebut or even acknowledge any of the many factors offered in support of the settlement.  *Id.*  The same is true as to the many factors upon which the Court relied in making its related findings.

The requirements for fee approval have already been previously outlined in detail for this Court and are summarized again below.  *See* Docket no. 437, Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Award of Attorneys' Fees Reimbursement of Expenses and Incentive Awards.  *See also* Final Approval Order, 9-13.

### a. The Fee Award was Found Fair and Appropriate Under Ninth Circuit Law

The Ninth Circuit recognizes the common fund doctrine approach used in this Settlement. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F. 2d 268, 271 (9th Cir 1989); *Hughes Air West, Inc.*, 557 F. 2d 759, 769 (9th Cir. 1977).  *See also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Aleyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975).  A percentage of the recovery approach, the approach used in this Settlement, is the predominant method for determining attorneys' fees in the Ninth Circuit.  *See Vizcaino v. Microsoft Corp.*, 290 F. 3d 1043, 1047 (9th Cir. 2002); *Paul, Johnson*, 886 F. 2d at 272; *Six Mexican Farm Workers v.*

---

the realities of present day class action practice and the damage that professional objectors inflict on our system of Civil Justice.

*Arizona Citrus Growers*, 904 F. 2d 1301, 1311 (9th Cir. 1990); *Torrisi v. Tucson Elec. Power Co.*, 8 F. 3d 1370, 1376-77 (9th Cir. 1993).

Additionally, the relevant factors of this case justified an award of 33.333% in this case because: 1) the result achieved was significant; 2) the litigation was complex and required a high level of skill; 3) the quality of the work performed was high; 4) the litigation carried significant risks; 5) the fee was contingent and precluded other employment; 6) similar percentages were awarded in other complex cases; and 7) all Plaintiffs, class counsel, Wal-Mart and class reaction supported the award. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Vizcaino*, 290 F. 3d at 1048-1059; *In re Pacific Enter. Sec. Litig.*, 47 F. 3d 373, 379 (9th Cir. 1995); *In re Lorazepam & Clorazepate Antitrust Litig.*, 2003 WL 22037741 at *9 (D.D.C. 2003); *Wing v. Asarco Inc.*, 114 F.3d 986 (9th Cir. 1997); *Rodriguez v. West Publishing Corp.*, 563 F. 3d 948, 965 (9th Cir. 2009); and *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

A lodestar cross-check analysis also supported the reasonableness of a 33.333% award here. *See Vizcaino*, 290 F. 3d at 1050-1051 & n.5.  Attorneys in common fund cases are ordinarily also reimbursed for reasonable out-of-pocket expenses and the reimbursement of expenses here was appropriate. *See Lorazepam*, 2003 WL 22037741, *10 (D.D.C. June 16, 2003); *In re Airline Ticket Comm'r Antitrust Litig.*, 953 F. Supp. 280, 286 (D. Minn. 1997); *In re Catfish Antitrust Litig.*, 939 F.Supp. 493, 503 (N.D. Miss. 1996); *In re SmithKline Beecham Corp. Sec. Litig.*, 751 F.Sup. 525, 534 (E.D. Pa. 1990).  Finally, incentive awards to class representatives were appropriate.

This Court, after a thorough analysis of the above, made considered findings and found the fee award fair and appropriate under Ninth Circuit law. *See* Final Approval Order.  Objector Maddox failed to identify in her deposition any of the above criteria, failed to offer support for

her singular objection against the fee and incentive award and finally, failed to demonstrate any knowledge of the court's review and final approval order.

Objector Maddox made no reference to the common fund doctrine or the percentage of the recovery approach in her deposition and demonstrated no knowledge of its existence in this Settlement. *See* Maddox Deposition at 21-24. Objector Maddox did not even read or go through the Settlement Agreement with her lawyers. *Id.* Class Counsel's efforts created a common fund, the Settlement Fund of $85 million maximum and $65 million guaranteed minimum, for the benefit of the Class. It was fair and appropriate that Class Counsel be compensated for their work in creating this fund and the amount requested was both consistent with Ninth Circuit law and reasonable in the context of this litigation. *See* Final Approval Order at ¶11(b). Maddox's fee objection was uniformed and meritless on this point. *See* Maddox Deposition at 21-24.

Additionally, Objector Maddox did not address any of the relevant factors of this case that justified an award of 33.333%. Objector Maddox had no knowledge of the specific facts that related to the Ohio denial of class certification or how it reflected on the Settlement's significance. *Id.* at 29-30. Further, she knew nothing about the high complexity of the case or the high level of skill required by counsel to meet the demanding needs of the case. *Id.* at 32-33, 35, 36, 40, 53. Maddox had no knowledge about the quality of the work performed by Plaintiffs' counsel. *Id.* at 37. Maddox was not familiar with the risks associated with the case. *Id.* at 32-33, 35, 36, 40, 53, 63. Maddox had no knowledge of the legal requirements for court approval of attorney's fees, which a court would review all attorneys' fees before making any ruling or the actual financial recovery being made by class members. *See* Maddox Deposition at 25, 40. She did not know the attorney's fees were contingent on this Court's final review and approval. *Id.* She further did not understand Counsel who worked on this case were precluded from other

employment. *Id.* at 71. Maddox was not familiar with the Settlement terms and had no

knowledge that similar percentages were awarded in other complex cases. *Id.* at 21-24, 57-58,

68-70, 74. Finally, Maddox did not know Plaintiffs, class counsel, Wal-Mart and class reaction

had reviewed and supported the award. *Id.* at 32-33, 35, 36, 40, 53, 63.

When reviewing the relevant factors of this case, and whether they justified an award of

33.333% in this case, this Court found it was, "reasonable and justified" and an "appropriate

percentage fee award in this case." Final Approval Order at ¶¶ 11, 11(c). This Court found the

result achieved was significant, "in view of this Court's ruling denying class certification on June

20, 2008, as well as the prior denials of class certification by state courts in a dozen of the states

included in this Settlement." *Id.* at ¶11(a). This Court found the case to be complex, the quality

of the work high, the litigation carried significant risks and that, "Counsel diligently pursuing

this complex litigation for years despite the substantial risk of no recovery." *Id.* at ¶11. This

Court found that similar percentages were awarded in other complex cases. *Id.* Finally, this

Court found the class' reaction supported final approval. *Id.* at ¶4.

A lodestar analysis supported the reasonableness of a 33.333% award. Maddox had no

knowledge about the numerous expert reports filed with this court examining the fee award and

preparing a lodestar analysis. *See* Maddox Deposition at 35, 68-70. Maddox conceded she did

not review the lodestar. *Id.* at 70. *See also* Docket no. 437, Memorandum of Points and

Authorities in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of

Expenses and Incentive Awards at 26-27, October 2, 2009 (hereafter, "Fee Memo"). As

indicated above, this Court found in favor of the 33.333% award. *See* Final Approval Order at

¶¶ 11, 11(c).

The reimbursement of expenses was also appropriate. Maddox Deposition at 70-71. This

Court found Counsel's expense requests appropriate and granted them. *See* Final Approval Order at ¶11(f).

Finally, incentive awards to class representative were appropriate. As already stated above, Objector Maddox did not even read or go through the Settlement Agreement with her lawyers. *See* Maddox Deposition at 21-24. She was unfamiliar with the terms of the agreement, including the information about incentive awards. *Id. See also Id.* at 32, 56. This Court held the incentive awards were appropriate and approved them. *See* Final Approval Order at ¶¶ 9-10. Therefore, the fee award was found fair and appropriate under Ninth Circuit Law. Objector Maddox provided no support for her objection to fees and the incentive awards in either her Objection or Deposition. *See* Maddox Deposition; Maddox Objection.

### b.  Maddox's Objections Were Meritless and Unsupported

In her original objection, Maddox advanced the following six meritless arguments: (1) the Settlement Agreement is not fair, reasonable, or adequate because Class Counsel has requested an amount of money in fees that is out of proportion to the benefit that is being delivered to the class members; (2) the Settlement has not followed the procedure mandated by the Federal Rules that would allow Class Members to properly analyze and comment upon the Fee Request; (3) the Settlement is using an inappropriate figure upon which to base its fee request in this claims-made settlement because the amount of fees are based on the ceiling, not the floor; (4) the payments to the Class Representatives and the Dismissing Named Plaintiffs are, in the aggregate, excessive; (5) the Settlement Agreement's Clear Sailing Provision for attorneys fees is not binding on the court; and (6) the Settlement Agreement contains a potential reverter to the Defendant that should not be approved by the Court. *See* Docket no. 383, Maddox Objection. As discussed above, Objector Maddox has stipulated to reduce her objections. *See* Maddox Deposition at 66-67. However, we will briefly touch upon the six bases Maddox advanced in support of her appeal prior to withdrawing them because they were also meritless.

i.    **Class Counsel Fees are Not Disproportionate to the Benefit that is Delivered to Class Members and After Extensive Review and Consideration by this Court, the Settlement was Found Fair, Reasonable and Adequate.**

Maddox's first objection, that the Settlement Agreement is not fair, reasonable, or adequate because Class Counsel has requested an amount of money in fees that is out of proportion to the benefit that is being delivered to the class members, is unfounded.

First, it was clear from Maddox's deposition, as indicated above, that she is not familiar with what benefits are provided to the class by the Class Settlement. *See* Maddox Deposition at 40-41. She knew nothing about the allocation plan for class members who filed valid claims or about any of the injunction relief being provided by Wal-Mart as a result of the Settlement. *Id.* Additionally, Maddox mistakenly believed that all Class Counsel were receiving a standard fee of $28 million and knew nothing about Court review and final approval of attorney's fees. *See* Maddox Deposition at 24-25. The benefits to the class from the Class Settlement have been discussed at length in the Final Approval filings and are summarized briefly below. *See* Docket no. 426, Memorandum in Support of Motion for Final Approval of Proposed Settlement with Defendant Wal-Mart, October 1, 2009.

Wal-Mart agreed to pay a Floor of Sixty-Five Million Dollars ($65,000,000) and a Ceiling of Eighty-Five Million Dollars ($85,000,000) for the benefit of the Settlement Class. *See* Settlement Agreement at ¶ 6.1. Claimants who used the Short Form will receive a standard amount estimated to range between $25.00 and $150.00 based upon their length of service as an hourly employee in the state or states for which they are submitting a claim, and the total number of claims made.[47] *Id.* at ¶ 8.7. Employees who elected to use the Long Form may instead

---

[47] Depending on the number of claims made and length of service, class members may recover up to $1,000 in the State Settlement Class, and $250 in the California Class.

recover an estimated amount between $50.00 and $300.00, depending on their length of service, number of incidents alleged, and the total number of claims made. *Id.* at ¶ 8.8. The members of the California Class likewise were eligible to recover between $15.00 and $50.00 for having experienced a one or two minute clock out, and/or meal period insertion. *Id.* at ¶ 8.9. It is noteworthy that the individual payments to Class members are reasonably related and compare favorably to cases where certification was granted. Defendants additionally agreed to injunctive relief intended to minimize, eliminate, or red flag future deprivation of compensation due and/or other employee benefits. *See* Settlement Agreement at ¶¶ 6.3-6.4.3, 13.1.

Fees were awarded only after two hearings and a great many submissions, including legal memorandum, and declarations of experts and counsels. As indicated above, in her deposition, Maddox revealed she had no knowledge of what the amount of labor and costs devoted by to the case by class counsel was, had no knowledge of the experience level of class counsel, a complete lack of familiarity with what costs and hours were billed or who class counsel were. *See* Maddox Deposition at 37, 57-58, 68-71, 74. Counsel's fee request was based on circumstances and evidence surrounding this litigation that fully support the conclusion that this case has been zealously litigated by the Court-appointed Counsel for Plaintiffs, and the Settlement is not the product of any collusion between over 44 law firms, 106 individual class counsels, and 43 class representatives, each of whom individually reviewed, analyzed and approved the settlement, and the Defendants. The Settlement is fair, adequate, and reasonable, and satisfied the standard for final approval. *See* Final Approval Order. It represents an excellent recovery for the Class members. Further, the amount requested was reasonably related to the lodestar accrued through this date and reasonable considering the risks presented by undertaking and pursuing this litigation. *Id.* Also, in conjunction with the final hearing, Plaintiffs presented time records and other evidence to support an award of attorneys' fees and actual expenses to Class Counsel. *See* Docket 438, Declaration of Robert J. Bonsignore in Support of Motion for Award of Attorney Fees and Expenses and Incentive Awards Related to Proposed Settlement with Defendant Wal-Mart, Exhibits 3-4, October 2, 2009.

Finally, in finding that the Settlement was fair, adequate and reasonable, this Court expressly made specific findings that established it had carefully considered and objectively evaluated of all the evidence submitted by the Parties, including the declarations of experts, the Settlement Agreement, the arguments of counsel, the evidence offered at the Final Approval hearing, records and proceedings in this case. The specific findings also expressly included this Court's own knowledge and familiarity with all the proceedings and filings in this action, as well as the contents and concerns presented through the submissions of the objectors. In finding that the Settlement was fair, adequate, and reasonable and that the proposed settlement warranted final approval pursuant to Rule 23 of the Federal Rules of Civil Procedure and the FLSA, it at all times placed first the interests of the Settlement Class first. Among other matters that the Court expressly addressed in its findings, it found that the settlement resulted from vigorously contested litigation, including extensive discovery, motion practice, and good-faith arm's length negotiations between the parties, and was in the public interest. *See* Final Approval at 8.

The Court expressly reviewed and made considered findings on: (a) the strength of the plaintiffs' case; (b) the risk, expense, complexity and likely duration of further litigation; (c) the risk of maintaining class action status throughout the trial; (d) the amount offered in settlement; (e) the extent of discovery completed, and the stage of the proceedings; (f) the experience and views of counsel; (g) the presence of a governmental participant; and (h) the reaction of the class members to the proposed settlement and after carefully considering each of these factors, the Court found that this settlement provides substantial benefits to the class members through both economic and injunctive relief.[48]  *Id.*  Further, this Court found the Settlement may be presumed

---

[48] *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Officers for Justice v. Civil Serv. Comm'n of the City & County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

to be fair, because it found that it followed sufficient discovery and genuine arm's length negotiation. *See* Final Approval at 8. [49]

This Court further found the settlement was reached after extensive negotiations with the Honorable Layn R. Phillips (Ret.), who submitted a declaration in support of preliminary approval and was otherwise supported by the Declarations of others. *See* Final Approval at 9. Additional, this Court found this case was incredibly risky from inception and the result exceptionally favorable to the Class, particularly in light of this Court's denial of class certification, which made the chance for the Class Members to obtain any redress slim. *Id.* The Court additionally found discovery was extensive in this litigation, and that counsel conducted the necessary and appropriate investigation to properly evaluate this case and settlement value. *Id.* The Court also found that the fact that none of the governmental agencies receiving notice, which includes all of the State Attorney Generals and Departments of Labor throughout the United States, and Puerto Rico, objected to the settlement, and that only 14 Class Members had issue with the terms, was overwhelming evidence of the fairness. *Id.*

Maddox proclaimed that the Settlement was so unfair and unreasonable because Class Counsel has requested an amount of money in fees that is out of proportion to the benefit that is being delivered to the class members without any supporting facts or argumentation. Maddox's deposition revealed her complete lack of knowledge about any benefits received to the class as a result of the Settlement. Additionally, Maddox had no knowledge of the time and labor spent representing the class by counsel or the Court's final approval order. Therefore, Maddox's objection here is unsupported, not likely to succeed, and presents no obstacle to the assessment of the reasonable bond requested.

_____

[49] *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

**ii.    The Settlement Followed Mandatory Statutory Procedure and Allowed Class Members to Respond to the Fee Requests.**

Maddox's second objection, that the Settlement has not followed the procedure mandated by the Federal Rules that would allow Class Members to properly analyze and comment upon the Fee Request, is also unfounded and unsupported.

Class Notice in its entirety, including the information provided to the Class about attorney's fees, was found by this Court to meet all statutory requirements, was preliminarily approved and received final approval. *See* Final Approval Order at 3. *See* also Docket #322, Order Preliminarily Approving Settlement, Approving Form and Manner of Notice, and Scheduling Hearing on Fairness of Settlement Pursuant to Fed. R. Civ. P. 23(e) (hereafter, "Preliminary Approval Order"), at ¶ 3, ¶¶ 5-10; Docket 435, N1 through N-5, Declaration of Nicole Vamosi in Support of Final Approval, October 2, 2009.

The Class notice procedure and time-line was described above. Maddox's objection seeks to replace the opinion of this Court as well as Class Action experts, including Administration professionals, with an unsupported and conclusory proclamation that is advanced without any evidentiary foundation what so ever. The notice program involved both direct mail and notice by publication. The direct mail efforts included multiple levels of skip tracing designed and undertaken to insure notice was delivered to class members. In its Final Approval Order, the Court found notice of the Settlement to all class member was proper and in accordance with Rule 23 of the Federal Rules of Civil Procedure and the FLSA, including, without limitation, 29 U.S.C. §§ 206, 207(a), 211(c), 215, and 216(b), the Class Action Fairness Act ("CAFA") and the requirements of due process. *See* Final Approval Order at 3. In addition to this Court's serious consideration and full evaluation of the evidence offered on this issue prior to initially approving the notice program at the Preliminary Approval stage, and other notice

evidence offered at hearing, this Court also had the benefit of the experience and findings offered by Amanda Myette, the experienced Claims Administration manager who was assigned by Rust Consulting. Moreover, actual notice of the Settlement was also provided to federal *and* state officials in each of the states that were part of the settlement pursuant to the requirements of CAFA. *Id.* There were no objections from State or Federal Representatives. That absence of government objection supports the conclusion that the notice was reasonable and proper under the circumstances and that this Court's order on Final Approval should not be reversed on the basis of insufficient or bad notice.

In proclaiming that the Notice so badly failed to meet all the related requirements that Class Members were not able to properly analyze and comment upon the Fee Request and on that basis alone the Court's decision to finally approve the settlement should be reversed, Objector Maddox offers no argument or fact. As to this specific argument, Plaintiffs also believe that Maddox's burden included advancing a supporting expert opinion. Plaintiffs, however, do not believe Objector's position requires review or even consideration[50]. Therefore, Maddox's objection here is unsupported, not likely to succeed, and presents no obstacle to the assessment of the reasonable bond requested.

### iii. Expert Opinions Support Using the Settlement Ceiling, Not the Floor, as an Appropriate Figure to Base Fees on.

Maddox's third objection, the Settlement is using an inappropriate figure upon which to base its fee request in this claims-made settlement because the amount of fees are based on the ceiling, not the floor, is additionally unfounded and unsupported.

---

[50] Should Maddox appeal this bond, Plaintiffs reserve the right to bring this issue before the Court of Appeals.

Under well-established Ninth Circuit law, attorney fees are calculated from the ceiling. *See* Silver Declaration at 8-11. *See also* Declaration of William B. Rubenstein in Support of Settlement Approval and Fee Petition at 3, 24-32 (hereafter, Rubenstein Declaration), Docket no. 417, October 10, 2009. In proclaiming that the Attorney fees were incorrectly calculated, Maddox, through counsel, at the outset failed to conduct even the most basic legal research. Beyond that, she offers no fact or relevant argument in support of her quest to reverse well established Ninth Circuit Authority or the well supported and reasoned discretionary award of fees. In fact, Maddox fails to acknowledge the evidence and arguments in support, including the common opinion of two highly respected legal authorities[51].

Additionally, the Ninth Circuit has expressly accepted floor/ceiling settlements. *See* Rubenstein Declaration at ¶¶33-35. *See also Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007). In proclaiming that such a settlement is wrongful and should be reversed, Maddox offers no supporting arguments or facts.

Therefore, Maddox's objection here is unsupported, not likely to succeed, and presents no obstacle to the assessment of the reasonable bond requested.

### iv.   Payment to Class Representatives and Dismissing Named Plaintiffs Was Not Excessive.

Maddox's fourth objection, the payments to the Class Representatives and the Dismissing Named Plaintiffs are, in the aggregate, excessive is unsupported and unfounded.

The Settlement provides a $15,000 incentive award to each of four deposed class representatives; a $10,000 incentive award to each of 39 other class representatives; and a

---

[51] The contents of the opinions of Prof. Silver and Prof. Rubenstein speak for themselves and a gratuitous recap is not necessary. Additionally, this Court's related findings were detailed and complete.

$10,000 each to the dismissing named plaintiffs who have agreed to dismiss their overlapping actions against the defendant. *See* Settlement Agreement at ¶¶6.1.2, 6.1.3

Objector Maddox's lack of familiarity with the Settlement has already been discussed at length above. She revealed that she is entirely unfamiliar with any depositions that took place in connection to the case. *See* Maddox Deposition at 32, 40. Further, she was not familiar with any of the state actions that were dismissed in connection with the dismissing Plaintiffs named in the Settlement, the reasons behind the dismissal or the lengthy negotiations and filings in connection with the Settlement. *Id.* at 32-33, 35, 36, 40. Finally, Maddox had no knowledge of the other class representatives, their individual state cases or the filings and negotiations involved with each case. *Id.*

Maddox's Objection, by proclaiming payments to the Class Representatives and the Dismissing Named Plaintiffs are, in the aggregate, were excessive and on that basis alone the Courts decision to Finally Approve the settlement should be reversed, Maddox offers no argument or fact. Maddox's Objection cites no case law, no evidence, and no argumentation to support her objection. In fact, she arbitrarily suggests a small fee for class representatives would be appropriate without any support. *See* Maddox Objection at 7.

Therefore, Maddox's objection here is unsupported, not likely to succeed, and presents no obstacle to the assessment of the reasonable bond requested.

>    **v.      All Settlement Provisions have been Reviewed thoroughly by the Court and both Preliminary and Finally Approved, including the Approval Process for Attorney's Fees.**

Maddox's fifth objection, that the Settlement Agreement's Clear Sailing Provision for attorney's fees is not binding on the court, is also unfounded and unsupported.

The Settlement Agreement clearly outlines the process for approval of Attorneys' Fees. *See* Settlement at ¶ 6.1.4. "Class Counsel shall apply to the Court for an award of attorneys' fees and costs." *Id.* Further, "In addition, on request of Class Counsel, Judge Layn R. Phillips,

39

who mediated the settlement of the Litigation, will evaluate Class Counsel's application for an award of Attorneys' Fees and Costs." *Id.*

Maddox's objection suggests that ¶ 6.1.4 of the Settlement enables collusion over fees between Plaintiffs and Defendant without adequate support or evidence. *See* Maddox objection at 5. In its Final Approval Order, the Court found no fault with the terms of the Settlement, including the process for final approval of attorneys' fees. *See* Final Approval Order. In addition, this Court gave serious consideration and full evaluation of the evidence offered on this issue prior to initially approving the Settlement, including the submission and legal review process, at the Preliminary Approval stage. *See* Docket no. 322, Preliminarily Approval Order at ¶15. The Court found no flaws in the process for the allocation of attorneys' fees. There is no indication what so ever in the record that objectors or the objection process warrants reversal of the Order on Final Approval.

It is also noteworthy that given the level of professional scrutiny and judicial review the Settlement was subject to, the related objection is not an offering that stands alone as so objectively meritorious that the Plaintiffs' request for a bond is rendered unreasonable. In proclaiming that the Settlement Agreement's provision for attorneys fees are not binding on the court and that this Court's decision to finally approve the settlement is wrongful and should be reversed, Maddox offers no supporting argument or fact. Therefore, Maddox's objection here is unsupported, not likely to succeed, and presents no obstacle to the assessment of the reasonable bond requested.

### vi.     Defendant Wal-Mart Did Not Retain a Reversionary Interest in the Settlement

Maddox's sixth objection, the Settlement Agreement contains a potential reverter to the Defendant that should not be approved by the Court, is also unfounded and unsupported. Objector Maddox clearly is mistaken about what the definition of a reversionary interest is.

Professor Silver emphasizes that, "Wal-Mart has agreed to pay $65 million without a reversion." *See* Silver Declaration at 8-9.  Additionally, he added that in his expert opinion, eliminating the $20 million reversionary amount in the Settlement would have not been ultimately beneficial to class members.  "It also seems unwise to pay the 'price' of eliminating the reversion, whatever the 'price' may have been, when one considers the portion of the fee that rests on the reversionary amount.  The danger a reversion entails is fee inflation, as explained.  Here, that danger is minimal." *Id.*  Finally, Professor Silver found there was no risk of fee inflation because the injunctive reliefs to the class were worth at least $20 million.  *Id.*  "Having reviewed expert reports submitted in other settled cases, it seems clear to me that the value of the injunctive reforms exceeds this level.  If that is right, then, on the facts of this settlement, the reversion entails a minimal risk of fee inflation." *Id.*

Additionally, as Professor William B. Rubenstein (hereafter, "Professor Rubenstein") indicates in his Declaration in Support of Settlement and Approval and Fee Petition, there are two main types of settlements, a fixed distribution settlement and reversionary settlement.  *See* Rubenstein Declaration at ¶32(a)-(b).  Professor Rubenstein defines the Settlement here as a commonly accepted hybrid between a fixed distribution settlement and a reversionary settlement.  *Id.* at ¶32(c).  Notably, this Settlement has both a ceiling and a floor, immediately preventing it from being identified as a reversionary settlement.  "First, and most importantly, this settlement is not a true reversionary fund settlement in that it has a floor guaranteeing that $67.75 million will be disgorged from the defendant no matter what." *Id.* at 28.  This Settlement guarantees that no matter how many claims are received; Defendant will be required to provide the class with at least $65 million.  *See* Settlement at 6.1.  The Settlement was carefully and intentionally drafted

41

to include both a floor and ceiling to guarantee a significant disgorgement of cash benefit to the

class and prevent the reversionary interest Objector Maddox is appealing.

Therefore, Maddox's objection here is unsupported, not likely to succeed, and presents no

obstacle to the assessment of the reasonable bond requested.

**4.   Objector Maddox's Appeal Shows Bad Faith and Vexatious Conduct**

The fourth factor, whether the appellant has shown bad faith or vexatious conduct, also

weighs in favor of a bond.  However, even though Plaintiffs' believe that the appellants have

acted in bad faith, demonstrated vexatious[52] conduct, and that their counsels are professional

objectors, this factor is not discussed in depth here or advanced on the present record as a basis

for the request for a bond because of the *Azizian* holding.[53]  The analyses of the first three factors

are sufficient to conclude that a bond should be imposed upon Objector Maddox.[54]

---

[52] Merriam Webster defines vexation as Main Entry: vexation as a noun and meaning
1 : the act of harassing or vexing : TROUBLING
2 : the quality or state of being vexed : IRRITATION
3 : a cause of trouble : AFFLICTION
[53] In Beasley-Burton's December 18th, 2009 memorandum, Plaintiffs' Memorandum in Support of Motion to Require Objectors Gaona, Swift, Andrews, and Maddox and Their Attorneys to Post Appeal Bonds, and Seeking Any Other Appropriate Relief to Protect the Class, the vexatious conduct of professional objector Bandas is discussed, however, this issue is not addressed at length here because it is recognized as being an appropriate issue for review by the Appeals Court in accordance to *Azizian. See* Docket no. 536, Plaintiffs' Memorandum in Support of Motion to Require Objectors Gaona, Swift, Andrews, and Maddox and Their Attorneys to Post Appeal Bonds, and Seeking Any Other Appropriate Relief to Protect the Class, December 18, 2009,
[54] The 9th Circuit does not favor review and consideration of bad faith or vexatious conduct by the District Courts because, "Allowing districts court to impose high Rule 7 bonds on where the appeals might be found frivolous risks impermissibly encumber[ing] appellants' right to appeal and effectively preempt[ing] this court's prerogative to make its own frivolousness determination." *Azizian* at 961. Nonetheless, we summarize what other circuits would have considered because in the event this issue is appealed, we will ask the Appeals Court to revisit its holdings in the 2007 *Azizian* case. In *Fleury*, 2008 U.S. Dist. LEXIS 88166, at *19, the District Court found evidence that Objector's counsel, had at least one appeal already found to be frivolous by another court and also that the Objector's lack of understanding of the basis of the appeal was "troubling" but refrained making a finding because of the recent case *Azizian v. Federated Department Stores, Inc.* There is no question that Objector Maddox is represented by professional objectors. Siegel and Cochran are lawyers who have self-admitted and well known for posing objections to class settlements in an attempt to extract a payment from the class members. *See* Attachment E, Class Action Motion for Award of Fees, United States District Court District of Minnesota, August 25, 2009. Professional Objector Siegel and Cochran are well known to the courts. They misuse the judicial process for personal gain and should be afforded a full and unrestricted opportunity to defend against these accusations and to offer evidence that he did in fact advance claims in good faith, diligently prosecute them and otherwise bring benefit

Moreover, Maddox's objection is entirely inadequate.  When weighed against the burden of proof required by the class to set aside the District Courts findings, Maddox's flimsy offering does not support the denial of Plaintiffs request for a bond or that it is unreasonable under the circumstances.  Maddox's six objections, listed above, do not guarantee success. *See* Maddox Objection.  In fact, Plaintiffs believe she is not likely to succeed on the merits of her appeal.  In any event, the merits of Maddox's appeal weigh in favor of the imposition a bond because nothing contained therein guarantees the likelihood of success or that in the event she loses that the Plaintiffs will recover their costs.

Therefore, the weighing of the *Fleury* factors presents a compelling case for the posting of a bond under FRAP 7.

### B.    The Amount of the Requested Bond is Appropriate

The Court should require Objector Maddox to post an appellate cost bond in the amount $610,988.03 to ensure recoupment of the costs of appeal.  The amount of the requested bond is appropriate for the following reasons:

---

to class members.  A District Court in Minnesota recently made short shrift of a request for fees filed by Objectors" counsel Edward Cochran and Edward Siegel: "The remoras are loose again.  The Court has received a motion from attorneys Edward Siegel [and] Edward Cochran…(styling themselves Objectors"  Counsel" ), seeking an award of fees.  Their motion is emphatically denied. [¶] These objectors have contributed nothing.  Instead, in a pleading which may charitably be described as disingenuous, Objectors' Counsel argue they assisted the Court in finding class counsel's fee request unreasonable. …[¶] Their suggestion is laughable.  If the Court may be permitted an egregious paraphrase of Winston S. Churchill: Seldom in the field of securities litigation was so little owed by so many to so few. … Their goal was, and is, to hijack as many dollars for themselves as they can wrest from a negotiated settlement. …[¶] Objectors"  request and their motion ill-befit attorneys admitted to the bar. Accordingly, the Court holds, as a matter of fact and law, objectors have conferred no benefit whatsoever on the class or on the Court.  Objectors"  Counsel are entitled to an award equal to their contribution . . . nothing." *In re United Health Group PSLRA Litig.*, 643 F. Supp. 2d 1107, *7, *9-*11 (D. Minn. 2009).  The appellate courts in reviewing the appeal of the instant settlement is entitled to a full record when passing on a Rule 38 request especially in light of the extraordinary burden they place upon appellee's seeking to enforce that rule of law.  The Court should this exercise its discretion in managing its docket to make room for Plaintiffs request for a related hearing.  Under the circumstances, such a hearing is clearly not advanced in the good faith belief that they should be allowed to establish relevant facts, even if the date of the proceeding in which the facts will be relevant has not yet been set.

43

**1.    Permitted Taxable Costs Include Preparation and Transmission of the
Record, Reporter's Transcript, and the Fee for Filing Notice to Class
Members of the Appeal**

The Ninth Circuit has held that FRAP 7 includes, but is not limited to, "all costs properly

awardable at the conclusion of the appeal," as Rule 39(e) of the Federal Rules of Appellate

Procedure (hereafter, "FRAP 39(e)") does not contain "any expression to the contrary." *Azizian,*

499 F.3d at 958.

The Ninth Circuit follows FRAP 39(e). "*Rule 39(e)* provides: The following costs on

appeal are taxable in the district court for the benefit of the party entitled to costs under this rule:

(1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to

determine the appeal; (3) the premiums paid for a supersedeas bond or other bond to preserve

rights pending appeal; and (4) the fee for filing the notice of appeal." *In Re Broadcom Corp.*

*Securities Litigation, 2005 U.S. Dist. LEXIS 45656,* at *7-8. However, the Ninth Circuit has

further held that, "[T]he costs identified in Rule 39(e) are among, but not necessarily the only,

costs available on appeal [for purposes of Rule 7]." *Azizian,* 499 F.3d at 958. The estimated

amounts are included as appropriate below.

**a.    Preparation and Transmission of the Record**

Plaintiffs request $4,971.97 as the cost for the preparation and transmission of the

record, specifically, the costs of printing and copying briefs and other submissions. *See*

Declaration of Co-Lead Counsel Robert Bonsignore in Support of Plaintiff's Motion for Appeal

Bond for Objector Maddox at Paragraph 22. This amount is properly included within the

requested bond amount.

**b.    Cost for Reporter's Transcripts**

Plaintiffs request $1,403.90 as the cost for reporter's transcripts. *See* Declaration of Robert Bonsignore in Support of Plaintiff's Motion for Appeal Bond for Objector Maddox at Paragraph 20. This amount is properly included within the requested bond amount.

### 2.    Administrative Costs

A District Court within the 9th Circuit has found class administrative costs as properly included in a Rule 7 bond.[55]  In a 2005 case, *In re Broadcom Corp. Secs. Litig.*, 2005 U.S. Dist. LEXIS 45656, *9-11 (9th Cir. 2005), the California Central District Court sustained the Plaintiffs' class argument that the Rule 7 bond should include additional costs for the delay and disruption of administering a settlement of the case.  The class successfully argued, as the Plaintiffs assert here, that objectors' appeal effectively postponed distribution of the entire judgment for well over a year.

Plaintiffs request $200,000.00 for the administrative fees/costs associated with this appeal. *See* Declaration of Amanda Myette, Exhibit V to Plaintiff's Motion for Appeal Bond for Objector Deborah A. Maddox.  Rust Consulting has submitted a Declaration that it estimates additional costs of $200,000.00 due to the appeal of the case. *Id.*  This is an estimate and the actual costs of additional administration may vary depending upon the ultimate timetable and services provided. *Id.*  This amount is properly included within the requested bond amount.

### 3.    Deposition Costs Should be Included in the Bond

Title 28 U.S.C. § 1920 and Fed. R. Civ. P 54(d) each allows the award of certain deposition costs, even if those depositions were not used at trial.[56]  Deposition costs for a special process server was $207.52.  The cost for the deposition videographer, deposition reporter's attendance and transcript was $1,330.72.  Travel costs for Co-Lead Counsel Robert Bonsignore

---

[55] *In re Broadcom Corp. Secs. Litig.*, 2005 U.S. Dist. LEXIS 45656, * 9-11 (9th Cir. 2005)

were $1,242.92.  Deposition costs, therefore, total $2,781.16.  *See* Declaration of Robert

Bonsignore in Support of Plaintiff's Motion for Appeal Bond for Objector Maddox at Paragraph

23.  This amount is properly included within the requested bond amount.

### 4.     Interest on the Class Settlement, Attorney's Fees and Costs Should be Included in the Bond

As detailed above, post-judgment interest is mandatory for any money judgment pursuant

to 28 U.S.C. § 1961.[57]  The purpose of post-judgment interest is to compensate a successful

plaintiff for not being paid during the time of the award and payment.[58]  Not only is post-

judgment interest assessable upon the judgment, but also separately upon the attorney's fees[59]

and costs.[60]  The interest assessed for each component of the judgment is calculated from the

"date of the entry of the judgment."[61]

In the present case, interest is calculated on the judgment from November 2, 2009, the

attorney's fees from November 20, 2009 and the costs when the Court enters its order on the

amount of costs.  Further, Plaintiffs submit the Declaration of Economist John Ward (hereafter,

"Dr. Ward"), who used 28 U.S.C. § 1961 and the Declaration of appellate counsel, Wendy

Lascher, to calculate the interest lost due to the appeal.  Dr. Ward estimates an interest loss in the

amount of $401,831.00 on the floor of $65 million assuming median time on appeal of 19

months.  *See* Declaration of John Ward, Ph.D., Exhibit III to Motion for Appeal Bond for

Objector Deborah A. Maddox.  *See also* Declaration of Wendy Lascher, J.D., Exhibit IV to

---

[56] *Washington State Dep't of Transp. v. Washington Nat. Gas Co.,* 59 F.3d 793, 806 (9th Cir. 1995).
[57] *Donovan v. Sovereign Secur., Ltd.,* 726 F.2d 55, 58 (9th Cir. 1984).
[58] *Pace Design & Fab. v.. Stoughton Composites,* 1997 U.S. App. LEXIS 35780, *2-3 (9th Cir. 1997) (citing *Donovan,* 726 F.2d at 58);*Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835 (1990).
[59] *Perkins v. Standard Oil Co.,* 487 F.2d 672, 676 (9th Cir. 1973).
[60] *Air Separation v. Underwriters at Lloyd's of London,* 45 F.3d 288, 290 (9th Cir. 1994) (quoting *Wheeler v. John Deere Co.,* 986 F.2d 413, 415 (10th Cir. 1993)) ("this court has determined that once a judgment is obtained, interest thereon is mandatory without regard to the elements of which that judgment is composed").
[61] *See* 28 U.S.C. § 1961.

Motion for Appeal Bond for Objector Deborah A. Maddox.  Plaintiffs request the Court assess

sum of $401,831.00 as part of the bond.  This amount should be properly included with the

requested bond amount.

## CONCLUSION

This Court's finding that the Plaintiffs request for the assessment of a bond is reasonable

and as to the appropriate amount is not dependent upon any one consideration. Rather, it will be

arrived at after taking in and considering the totality of the facts and circumstances attendant to

this request in accordance with the nuances controlling in the Ninth Circuit.

The Plaintiff class submits that the Court should exercise its plenary discretion to impose

an appeal bond against Objector Maddox in the amount of $610,988.03.  The Court should

further determine the nature and amount of the appeal bond based upon the grounds set forth by

the Plaintiffs and for such other and further relief as this Honorable Court deems just, proper and

equitable.


Dated: December 29, 2009                     Respectfully submitted:

                                            By:    s/ Robert J. Bonsignore
                                                   Robert J. Bonsignore
                                                   BBO # 547880
                                                   BONSIGNORE & BREWER
                                                   23 Forest Street
                                                   Medford, MA 02155
                                                   Telephone: (781) 350-0000
                                                   rbonsignore@class-actions.us


Daniel D. Ambrose, Esq.                     Craig O. Asbill, Esq.
Ambrose Law Group                           Charles G. Monnett & Associates
1007 East West Maple Road                   200 Queens Road
Walled Lake, MI 48390                       Suite 300
(248) 624-5500                              Charlotte, NC 28204
                                            (704) 376-1911

47

1

2 Franklin D. Azar, Esq.
Rodney P. Bridgers, Jr., Esq.
3 Nathan J. Axvig, Esq.
Franklin D. Azar & Associates P.C.
4 14426 East Evans Ave.
Aurora, CO 80014
5 (303) 757-3300

6

Richard Batesky, Esq.
Attorney at Law
22 E. Washington St., Suite 610
Indianapolis, IN 46204
(800) 822-2039

7

Robin E. Brewer, Esq.
8 Nicole Vamosi, Esq.
Kelly Elam, Esq.
9 Rick Kirchner, Esq.
Julie Baker, Esq.
10 Bonsignore & Brewer
23 Forest Street
11 Medford, MA 02155
(781) 350-0000
12

Mark C. Choate, Esq.
Choate Law Firm LLC
424 N. Franklin Street
Juneau, AK 99801
(907) 586-4490

13

14 Todd S. Collins, Esq.
Berger & Montague, P.C.
15 1622 Locust Street
Philadelphia, PA 19103
16 (800) 424-6690

17

Adriana Contartese, Esq.
Rafaela Hanley, Esq.
Attorney at Law
866 East Fifth St.
Boston, MA 02127
(617) 268-3557

18

19 Lanny H. Darr
Schrempf, Kelly, Knapp & Darr, Ltd.
20 307 Henry St.
Suite 415
21 Alton, IL 62002
(618) 465-2311
22

Paul C. EchoHawk, Esq.
Nathan Long, Esq.
EchoHawk Law Offices
Paul C. EchoHawk
505 Pershing Avenue
Pocatello, ID 83205
(208) 478-1624

23

24 R. Deryl Edwards, Jr., Esq.
606 S. Pearl Ave.
25 Joplin, MO 64801
(417) 624-1962
26

Ivy L. Frignoca, Esq.
Lambert Coffin Haenn
477 Congress St, 14th Fl
Portland, ME 04112
(207) 874-4000

27

28 Courtney French, Esq.
Fuston, Petway & French, LLP
3500 Colonnade Parkway

Troy N. Giatras, Esq.
The Giatras Law Firm, PLLC
118 Capitol Street

Suite 300
Birmingham, AL 35243
(205) 977-9798

Suite 800
Charleston, WV 25301
(304) 343-2900

Christopher R. Gilreath, Esq.
Gilreath & Associates
550 Main Street
Suite 600
Knoxville, TN 37902
(865) 637-2442

Vincent J. Glorioso, III, Esq.
The Glorioso Law Firm
815 Baronne Street
New Orleans, LA 70113
(504) 569-9999

Donald S. Goldbloom, Esq.
12590 National Pike
Grantsville, MD 21536
(301) 895-5240

Gregory F. Greiner, Esq.
Greiner Law Office
630 G Ave.
Grundy Center, IA 50638
(319) 824-6951

J. Thomas Henretta, Esq.
Law Offices of J. Thomas Henretta
400 Key Building
159 South Main Street
Akron, OH 44308
(330) 376-7801

Thomas H. Johnson, Esq.
Thomas H. Johnson Law Office
410 Hickory St.
Texarkana, AR 71854
(870) 773-6359

Christopher Meeks, Esq.
Lynch, Meeks & Battitori
1031 Military Avenue
Baxter Springs, KS
(620) 856-2771

Mike Miller, Esq.
Stacey E. Tjon, Esq.
Solberg, Stewart, Miller & Tjon
1129 Fifth Avenue South
Fargo, ND 58103
(701) 237-3166

Pamela Mullis, Esq.
The Mullis Law Firm
1229 Elmwood Ave
Columbia, SC 29201
(803) 799-9577

Glen W. Neeley, Esq.
Attorney at Law, P.C.
863 25th St.
Ogden, UT 84001
(801) 612-1511

Gary S. Nitsche, Esq.
Weik, Nitsche, Dougherty
1300 N. Grant Ave, Suite 101
Wilmington, DE 19899
(302) 655-4040

D. Michael Noonan, Esq.
Shaheen & Gordon, P.A.
140 Washington Street
P.O. Box 977
Dover, NH 03821

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Deborah A. Maddox*

(603) 749-5000

Raymond A. Pacia, Esq.
Attorney At Law, LTD
50 Power Road
Pawtucket, RI 02860
(401) 727-2242

Jeffrey M. Padwa, Esq.
Padwa Law
303 Jefferson Blvd.
Warwick, RI 02888
(401) 921-4800

Arthur Y. Park, Esq.
Laurent J. Remillard, Jr., Esq.
John C. McLaren, Esq.
Park Park & Remillard
707 Richards Street
Suite 500
Honolulu, HI 96813
(808) 536-3905

Wayne D. Parsons, Esq.
Wayne D. Parsons Law Offices
Dillingham Business Center
Suite 201C
1406 Colburn Street
Honolulu, HI 96817
(808) 845-2211

John Rausch, Esq.
P.O. Box 905
Waterloo, IA 50704
(319) 233-3557

Dan Rausher, Esq.
Attorney at Law
26 Court Street
Suite 1604
Brooklyn, New York 11242
(718) 596-7333

Thomas R. Ricci, Esq.
Law Office of Thomas R. Ricci
303 Jefferson Blvd.
Warwick, RI 02888

(401) 921-4800

Dirk A. Ravenholt, Esq.
Ravenholt & Associates
2013 Alta Drive
Las Vegas, NV 89106

Fred Schultz, Esq.
Greene & Schultz
Showers Plaza
320 W. 8th Street
Suite 100
Bloomington, IN 47404
(812) 336-4357

Cynthia K. Smith, Esq.
Jasper Smith Olson, P.C.
202 W. Spruce St.
P.O. Box 7785
Missoula, MT 59807
(406) 541-7177

Stephen M. Smith, Esq.
Joseph Smith Ltd.
2100 Kecoughtan Road
Hampton, VA 23661-0437

Laurence W. Stinson, Esq.
Bradley D. Bonner, Esq.
Bonner Stinson, P.C.
P.O. Box 799

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Deborah A. Maddox*

(757) 244- 7000

128 East Second Street
Powell, WY 82435
(307) 754-4950

Mark Tate, Esq.
Tate Law Group, LLC
2 East Bryan Street
Suite 600
Savannah, GA 31401
(912) 234-3030

Jill P. Telfer, Esq.
Law Offices of Jill P. Telfer
331 J. Street, Ste. 200
Sacramento, CA 95814
(916) 446-1916

Matthew Tobin, Esq.
201 S. Phillips Avenue
Suite 200
Sioux Falls, SD 57104
605-366-9715

Jay A. Urban, Esq.
Urban & Taylor S.C.
4701 North Port Washington Road
Milwaukee, WI 53212
(414) 906-1700

Ernest Warren, Jr., Esq.
Walker Warren & Watkins
838 SW First Avenue
Suite 500
Portland, OR 97204
(503) 228-6655

Christopher P. Welsh, Esq.
James R. Welsh, Esq.
Welsh & Welsh, P.C. L.L.O.
9290 West Dodge Road
100 The Mark
Omaha, Nebraska, 68114
(402) 384-8160

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Deborah A. Maddox*

## CERTIFICATE OF SERVICE

I hereby certify that on December 29, 2009, a copy of the foregoing *Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Deborah A. Maddox* was filed electronically [and served by mail on anyone unable to accept electronic filing].  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing].  Parties may access this filing through the Court's system.

/s/ Robert J. Bonsignore
Robert J. Bonsignore