UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| IN RE: WAL-MART WAGE AND HOUR EMPLOYMENT PRACTICES LITIGATION | **MDL 1735**<br><br>**Docket No**. 2:06-CV-00225-PMP-PAL (BASE FILE) |
| THIS DOCUMENT RELATES TO ALL CASES EXCEPT KING v. WAL-MART STORES, INC., CASE NO. 07-1486-WY | |

**CO-LEAD COUNSEL CAROLYN BEASLEY BURTON'S
REPLY MEMORANDUM IN SUPPORT OF MOTION TO REQUIRE OBJECTORS
GAONA, SWIFT, ANDREWS AND MADDOX AND THEIR ATTORNEYS TO POST APPEAL
BONDS, AND SEEKING ANY OTHER APPROPRIATE RELIEF TO PROTECT THE CLASS**

## I. INTRODUCTION

Co-Lead Counsel Burton's request that the Objectors and their attorneys be required to post an appeal bond is largely unopposed, as the Objectors in their Joint Response concede that a bond is authorized in this case. *See* Response at p. 2.[1] In fact, the Objectors explicitly invite the Court to impose a bond at pages 2 and 5 of their brief.

Although there is agreement amongst Plaintiffs, Wal-Mart, and the Objectors that a bond is appropriate, the Objectors argue that the bond must be limited to only those costs allowed under Fed. R. App. P. 39 ("Rule 39"), which would preclude the inclusion of interest, administrative costs and the anticipated attorneys' fees the Class will incur in defending the judgment against these appeals. The Objectors are mistaken. It is well settled that cost bonds authorized under Fed. R. App. P. 7 ("Rule 7") are not limited to the kinds of costs that are taxable under Rule 39. To the contrary, a Rule 7 bond is intended to provide security for the costs that respondents will incur because of an appeal, and courts have discretion to determine what costs should be included.

As Co-Lead Counsel Burton and the Objectors both observe in their respective briefing, there is a split amongst the circuits as to what costs may be included under Rule 7. While the Ninth Circuit Court of Appeals allows for the inclusion of attorneys' fees where there is a fee-shifting statute involved in the appeal, other courts, including the First Circuit Court of Appeals where Plaintiff Class Representatives Brogan, Campbell, Pedro, Scaramuzzo, and Woods filed their respective actions and where professional objector Pentz resides, permit the inclusion of attorneys' fees when the appeal is deemed frivolous. Plaintiffs' Memorandum, pp. 4, 6, fn. 3; Response, p. 4; *see also Sckolnick v. Harlow,* 820 F.2d 13, 15 (1st Cir. 1987). The United States Supreme Court has not yet resolved this split.[2]

---

[1] The professional objectors, on behalf of their respective clients, filed a joint response to Co-Lead Counsel Burton's Motion on January 4, 2010 (Dkt No. 556), and are collectively referred to herein as the Objectors.

[2] Notably, while the Judicial Conference's Advisory Committee on Appellate Rules commissioned an exploratory study in 2008 to consider the propriety of including attorneys' fees in cost bonds, this study has not resulted in any amendment to Rule 7 that would prohibit the inclusion of attorneys' fees in cost bonds. *See* Marie Leary, Fed. Judicial Ctr., Federal Judicial Center Exploratory Study of the Appellate Cost Bond Provisions of Rule 7 of the Federal Rules of Appellate Procedure (2008).

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO REQUIRE OBJECTORS
GAONA, SWIFT, ANDREWS AND MADDOX AND THEIR ATTORNEYS TO POST APPEAL BONDS**

In view of the unsettled nature of this issue, Co-Lead Counsel Burton recognized that attorneys' fees might not be allowable, and therefore did not seek any attorneys' fees as a component of the requested bond amount of $715,000.[3]  However, because this MDL proceeding includes cases and parties that were transferred from jurisdictions that do allow attorneys' fees, and because attorneys' fees may be an appropriate sanction under 28 U.S.C. §1927, the Court may deem the inclusion of anticipated attorneys' fees appropriate in the bond or may award fees reflecting attorney time already expended as a sanction.  Thus, arguing in the alternative, with the inclusion in the bond of the estimated amount of $275,000 in attorneys' fees for the appeal, Co-Lead Counsel Burton also recognized that a bond of $990,000 may be appropriate.

Co-Lead Counsel Robert Bonsignore agrees that interest on the settlement funds should be included in the bond, and requests that the interest be compounded.[4]  Co-Lead Counsel Burton has no objection to this request.  If interest on the settlement fund of $70 million is compounded monthly, in the manner calculated by economist John Ward (Dkt No. 545), the applicable interest would be $547,065, which would increase the bond originally requested by Co-Lead Burton to $772,065, or $1,047,065 if the Court finds that attorneys' fees are warranted.

The Objectors' Response is significant not only because it confirms that a bond is appropriate, but also for what it does not say.  For instance, the Objectors do not deny that they have filed their respective appeals in this case to extort money from Plaintiffs and their counsel.  Nor do they deny having filed frivolous appeals in three other like Wal-Mart cases within the last year, only to drop them shortly thereafter, presumably after having been paid off in those matters without having made *any*

---

[3] This proposed bond amount consists of $490,000 in interest on the settlement funds of $70 million, which is the minimum amount Wal-Mart will pay here, delayed for two years by the appeals, plus increased administrative costs of $200,000, plus Rule 39 costs of $25,000.

[4] On January 8, 2010, Robert Bonsignore filed an "objection" (Dkt No. 561) to the bond motion filed by Co-Lead Counsel Burton (Dkt Nos. 535, 536, 537), and asked that the Court rule only upon the separate bond motions he filed, and those he apparently intends to file. (He has yet to file motions seeking bonds for all of the individual objectors and appellants.)  Because Mr. Bonsignore's "objection" is both procedurally improper and substantively unfounded, Ms. Burton will not burden the Court with any rebuttal to either his objection or to his bond motions unless the Court requests otherwise.  Rather, Ms. Burton respectfully requests that the Court impose a bond on each of the Objectors as requested herein and by Wal-Mart, which ruling will effectively address the concerns and arguments expressed in all of the pending bond motions.

change to the challenged settlement.  The Objectors likewise do not dispute that they have been identified as extortionists by courts in numerous jurisdictions for filing unfounded objections and appeals in other class action cases, apparently operating on the assumption that this Court is powerless to address such misconduct.

The Objectors are mistaken.  Class action settlements should not be held hostage by unscrupulous lawyers seeking to extort money from class members and their counsel, and federal courts are not obliged to sit idly by while these lawyers abuse the process for their own private gain.

## II.   THE REQUESTED BOND IS AUTHORIZED AND WARRANTED UNDER RULE 7.

Because the Objectors acknowledge that the Court may issue an appeal bond, the primary issue for the Court to decide is the appropriate amount of the bond.  Response, pp. 2, 5.

Not surprisingly, the Objectors seek to limit the amount of the bond.  Significantly, however, they fail to cite any authority supporting their claim that the bond must be limited to only those costs allowable under Rule 39.  Nor can they do so.  Numerous courts in the Ninth Circuit have expressly held that a District Court has authority to issue a Rule 7 bond that may include interest on the settlement funds reflecting the delay caused by the appeal.  *See, e.g.*, *Conroy v. 3M Corp.*, 2006 U.S. Dist. LEXIS 96169, *10-*11 (N.D. Cal. Aug. 10, 2006) (imposing a bond on one of the present Objectors, the Bandas Law Firm, that included "expected interest on the cash portion of the settlement"); *accord In re Broadcom Sec. Litig.*, 2005 U.S. Dist. LEXIS 45656, *9 (C.D.Cal. Dec. 5, 2005) ("This Court has held that costs of delay are properly included in a Rule 7 bond because 'distribution of the settlement proceeds will be unnecessarily delayed until the appeal is exhausted.'").

The Objectors also wrongly contend that the bond should not include administrative costs, again based on the incorrect assumption that that the bond must be limited to costs that are taxable under Rule 39.  Response, p. 2.  However, in *Azizian v. Federated Department Stores, Inc., supra,* 499 F.3d at 958 — a case cited by the Objectors — the Ninth Circuit expressly rejected this view, observing that "[t]here is no indication that [Rule 39's] drafters intended Rule 39 to define costs for purposes of Rule 7… the costs identified in Rule 39(e) are among, but not necessarily the only, costs available on appeal."  *Accord, In re Broadcom Sec. Litig.*, *supra,* 2005 U.S. Dist. LEXIS at *11 ("a

Rule 7 bond may cover fees and expenses resulting from delay or disruption of the settlement administration"); *see also Adsani v. Miller,* 139 F.3d 67, 75 (2nd Cir. 1998) ("Rule 39 has no definition of the term 'costs' but rather defines the circumstances under which costs should be awarded"); *Pedraza v. United Guar. Corp.,* 313 F. 3d 1323, 1329-1330 (11th Cir. 2002) ("Under no fair reading…of Rule 39 can an exportable definition of 'costs' be perceived.").

Consistent with this caselaw, the Objectors should be required to post a bond sufficient to compensate the Class Members and Class Counsel for the delays that will be caused by their respective appeals.[5] The most significant cost to the class as a result of these appeals is the delay in the distribution of the settlement proceeds. As the Court may recall, Co-Lead Counsel Burton calculated interest based on a minimum payout by Wal-Mart of $70 million, which totaled $490,000, for an anticipated two-year delay. In a later filed motion, Mr. Bonsignore requested interest in the amount of $507,989, based on the settlement floor of $65 million, or, alternatively, interest in the amount of $664,293, based on the settlement ceiling of $85 million, with interest compounded monthly at the statutory rate of 0.39%. Both Co-Leads likewise requested $200,000 in administrative costs,[6] in addition to Rule 39 costs. As previously noted, if interest is compounded on the minimum payout amount of $70 million, the bond amount requested by Co-Lead Burton would be $772,065, or $1,047,065 if attorneys' fees are included.

Rule 7 provides that the Court "may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Given that the appeals were filed by professional objectors who make a living by indiscriminately challenging class action settlements, and that the statutory interest rate is currently a mere 0.39%, they can hardly

---

[5] The Exploratory Study cited above revealed that the most prevalent use of Rule 7 cost bonds is in class action cases. This is not surprising in view of the significant public policy underlying class actions, and particularly the importance of protecting the large numbers of aggrieved class members harmed by appeals filed by professional objectors.

[6] The administrative costs consist of an estimated $100,000 per year to maintain the claims data and continue providing telephone and website support. The cost of sending additional notice to claimants apprising them to the delay, if necessary, is not included, and this cost could be quite substantial.

complain about having to pay interest and other reasonable costs of the delay that they alone caused. Indeed, considering this historically low interest rate, which is considerably lower than the rate of inflation, the requested bond amount is quite modest, and is inadequate to compensate the Class and Class Counsel for the cost of inflation resulting from the delay.

### III.   THE APPEALS ARE UNDISPUTABLY FRIVOLOUS.

While Plaintiffs need not demonstrate, as a condition of obtaining a bond, that the Objectors are extortionists who filed frivolous objections and appeals, these facts are relevant to the Court's issuance of sanctions, if deemed appropriate, and to its issuance of a ruling that will assist the Court of Appeals in deciding whether to dismiss the appeal and issue sanctions pursuant to Fed. R. App. P. 38 ("Rule 38").  Since this Court is in the best position to make findings of fact and law concerning the Objectors' conduct, Plaintiffs respectfully suggest that such a ruling would be appropriate and beneficial to the Class and to Class Counsel when defending the settlement and fee award against the appeals.

Plaintiffs have offered an abundance of undisputed evidence and case law showing that the Objectors customarily file frivolous appeals for the sole purpose of delaying the proceedings in order to extort a monetary payment from the class and class counsel.  At the request of Ms. Burton, her colleague Robert Mills communicated with the Objectors' counsel in an effort to see if there was a way to modify the settlement to redress any legitimate concerns their clients may have, just as Co-Lead Counsel did with counsel for Clifford Ferguson, who sought to include the home office employees in this advantageous settlement.  The Objectors were not interested in addressing the substance of the settlement; but rather demanded payment in the amount of $800,000 to the Objectors as a group to drop their objections, which demand promptly ended the discussion.[7]  Declaration of Robert W. Mills, ¶ 3.

---

[7] Within the past few weeks, Co-Lead Counsel Burton and Robert Mills assisted plaintiffs' counsel in two other class actions in dealing with frivolous objections filed by Pentz, Siegel, and others for the purpose of extorting money there as well.  Mills Decl. ¶ 2.

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO REQUIRE OBJECTORS
GAONA, SWIFT, ANDREWS AND MADDOX AND THEIR ATTORNEYS TO POST APPEAL BONDS**

This is the epitome of bad faith.  Of note, the six Objectors' counsel have been in lockstep with each other, filing either joint or identical responses to the bond motions and making a joint demand for payment.

Significantly, the Objectors have not disputed the evidence of their ulterior motives, nor have they provided any legal or factual support for the appeals they filed challenging the fee award issued here.  They instead claim that their objections cannot be deemed frivolous, even if filed to extort money, merely because "there is a body of federal jurisprudence regarding attorneys' fees show[ing] reasonable people often differ on this issue."  Response, pp. 2-3.  This is absurd.  The fact that "reasonable people have differed" over fee awards in other cases and jurisdictions says nothing about whether the particular objections raised here have any merit, much less whether the appeals of the Court's ruling on those objections have any possibility of success.

Quite simply, the Objectors failed to cite to any supporting case law in regard to their appeals because there is none.  Their underlying objections that the Court should have awarded fees based on the amount of actual claims conflicts with well established federal case law, as does their assertion that the fee should have been 10% of the settlement floor amount.  *See* Dkt. Nos. 416, 417, 535.  As such, there is no conceivable way that the Objectors will be able to show the Court of Appeal that this Court abused its discretion in approving the settlement and issuing an award of fees consistent with federal law.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-481, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980) (the fee award should be based on the entire settlement fund); *Williams v. MGM-Pathe Communications Co*., 129 F.3d 1026, 1027 (9th Cir. 1997) (same); *In re FPI/Agretech Securities Litigation,* 105 F.3d 469, 472 (9th Cir. 1997) (attorneys' fee awards may be reversed only for abuse of discretion).

In short, the Objectors should not be permitted to object indiscriminately to this settlement, ignoring both the facts of this case and a well established body of applicable case law, without first

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO REQUIRE OBJECTORS
GAONA, SWIFT, ANDREWS AND MADDOX AND THEIR ATTORNEYS TO POST APPEAL BONDS**

posting an appropriate cost bond to insure that they can be held accountable for the serious consequences of their insupportable appeal.

## IV.     THE FRIVOLOUS APPEALS ARE SANCTIONABLE.

The fact that the Objectors make little pretense about their extortionate objectives, and provide no support for any arguments to be advanced on appeal, evidences that they are fully aware that their appeal has no merit, but they believe that their misconduct is beyond the reach of this Court.  Indeed, the Objectors are quick to point out that the appellate court has exclusive jurisdiction under Rule 38 to sanction them for filing a frivolous appeal. This argument is misguided.

To begin with, Co-Lead Counsel Burton has not sought Rule 38 sanctions in the requested bond. Moreover, the Objectors concede, as they must, that 28 U.S.C. § 1927 "might support a bond for 'vexatious litigation conduct'" where there is evidence of "bad faith or intentional misconduct by counsel."  Response, p. 3.

The vexatious and extortionate conduct of the professional Objectors in this case and other cases falls precisely within the ambit of Section 1927, and warrants the imposition of sanctions under Section 1927.  The Ninth Circuit has expressly ruled that the act of knowingly filing a frivolous appeal or attempting to delay the proceeding constitutes bad faith and intentional misconduct sufficient to warrant sanctions under Section 1927.

> "[Section 1927] states: Any attorney . . . in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.  [¶]  In addition to this statutory authority, district court has the inherent power to impose sanctions on counsel who 'willfully abuse[s] judicial processes.' [Citations omitted.]…Accordingly, we conclude that the district court had the power to sanction counsel for filing a frivolous appeal in bad faith, and that filing solely for purposes of delay constitutes bad faith."  *United States v. Blodgett*, 709 F.2d 608, 610-611 (9th Cir. 1983).

*See also*, *Hubbard v. Yardage Town,* 295 Fed. Appx. 169 (9th Cir. 2008) (for purposes of imposing sanctions under Section 1927, "subjective bad faith . . . is present when an attorney knowingly or recklessly raises a frivolous argument").

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO REQUIRE OBJECTORS
GAONA, SWIFT, ANDREWS AND MADDOX AND THEIR ATTORNEYS TO POST APPEAL BONDS**

The extensive, *undisputed,* record in this case easily supports the imposition of Section 1927 sanctions.  The Objectors have knowingly filed frivolous objections, which they followed up with unfounded appeals, for the sole purpose of delaying the proceeding as a means to extort a monetary payment from the Class and Class Counsel.  *See, e.g*., Mills Decl. ¶2.  Indeed, the fact that the Objectors admittedly also filed virtually identical objections and appeals in three other similar Wal-Mart class action settlements within the past year, yet promptly dropped those appeals without having made any changes to those respective settlements, provides clear evidence of both the Objectors' modus operandi and improper motives.  In those cases, the Objectors filed the same canned objections to the attorneys' fee award as they filed here.  The lower courts in each of those cases, like the Court here, overruled those objections and, in several of those cases, characterized the Objectors as extortionists.  *See, e.g.,* Declaration of Carolyn Beasley Burton in Support of Plaintiffs' Bond Motion (Dkt. No. 537, Exh. 1, p. 5).

While the Objectors baldly assert that reasonable minds could disagree about fee awards, their underlying objections were neither supported by applicable law nor the facts of *this* case.  The fact that their arguments conflict with well established law, and have been soundly and repeatedly rejected in each of the like Wal-Mart cases where the Objectors launched these same fatuous arguments, demonstrates their bad faith in recycling the same unfounded arguments.[8]  These bad faith filings have already caused harm.  Co-Lead counsel Burton and her office have expended well over 100 hours researching and briefing responses to these objections and in seeking the requested appeal bond, and this is only a fraction of the total time already expended by Plaintiffs' counsel in connection with Objectors' appeals.[9]

---

[8] It is important to note that, as demonstrated in Plaintiff's Memorandum in Support of Final Approval and Award of Attorneys' Fees (Dkt No. 416, pp. 25-26), the fee award here is considerably lower than the fees awarded in each of the other Wal-Mart cases, and those courts soundly rejected like objections filed by these same Objectors there.  Against this backdrop, the professional Objectors cannot credibly argue that the Court abused its discretion in rendering a more conservative award here, an award that was issued in full compliance with applicable federal law.  Unquestionably, the Objectors have filed notices of appeal without having any credible issue to appeal.

[9] Mills Decl. ¶5.  These hours do not include those expended by Wal-Mart, and other Plaintiffs' counsel, including Liaison Counsel Carol LaPlant, and Co-Lead Counsel Robert Bonsignore.

Other courts have found that Section 1927 provides an appropriate form of redress against professional objectors. For instance, the District Court in *In re Broadcom Sec. Litig.*, *supra,* 2005 U.S. Dist. LEXIS at *15-*16, explained that Section 1927 authorized the inclusion of attorneys' fees in an appeal bond to sanction "any lawyer who wrongfully proliferates litigation proceedings after a case has commenced." In so ruling, the *Broadcom* court expressly observed that Section 1927 sanctions have been properly imposed on professional objectors. *Id.*, *citing, In re Prudential Ins. Co. Am. Sales Practice Litig.,* 278 F.3d 175, 193 (3rd Cir. 2002) (affirming Section 1927 sanctions imposed on professional objectors).

In short, Section 1927 appears to have been tailored to deal with the conduct of professional objectors, allowing courts to require payment to cover the damages they cause when abusing the judicial process. The Court may use Section 1927 either to require that the Objectors pay for the time already expended by Plaintiffs' counsel in responding to the objections and requesting an appeal bond, or the Court may include in the bond the estimated $275,000 in attorney time that will be expended on the appeal, or the Court has discretion to order both remedies.

## V.   CONCLUSION.

For the reasons stated herein and in the Motions filed by Co-Lead Counsel and Wal-Mart, Ms. Burton respectfully requests that the Court require a bond to be posted by each Objector severally for each appeal in the amount of either $772,065 or $1,047,065, depending on whether the Court determines that the inclusion of attorneys' fees is appropriate.

Dated: January 13, 2010                             Respectfully submitted,

<u>/s/ Carolyn Beasley Burton</u>
Carolyn Beasley Burton
THE MILLS LAW FIRM
880 Las Gallinas Avenue, Suite 2
San Rafael, CA 94903

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO REQUIRE OBJECTORS
GAONA, SWIFT, ANDREWS AND MADDOX AND THEIR ATTORNEYS TO POST APPEAL BONDS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
**REPLY MEMORANDUM IN SUPPORT OF MOTION TO REQUIRE OBJECTORS
GAONA, SWIFT, ANDREWS AND MADDOX AND THEIR ATTORNEYS TO POST APPEAL BONDS**