Robert J. Bonsignore (BBO # 547880)
BONSIGNORE & BREWER
23 Forest Street
Medford, MA 02155
Telephone: (781) 350-0000
Facsimile: (781) 391-9496
Email: rbonsignore@classactions.us
*Co-Lead Counsel for Plaintiffs*

*Other signatories appear below*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| IN RE WAL-MART WAGE AND HOUR EMPLOYMENT PRACTICE LITIGATION | **MDL 1735**<br><br>2:06-CV-00225-PMP-PAL (BASE FILE) |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS EXCEPT KING v.<br><br>WAL-MART STORES, INC., CASE NO.<br><br>07-1486-WY | |

**MEMORDANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR APPEAL BOND FOR OBJECTOR STEPHANIE SWIFT**

# TABLE OF CONTENTS

I.      PROCEDURAL AND FACTUAL BACKGROUND ...........................................................4

II.     GOVERNING RULES AND STANDARD OF REVIEW .................................................17

III.    ARGUMENT.........................................................................................................19

   A. The Court has the Power to Require Swift to Post a Bond Under
    the Circumstances at Bar ...................................................................................21

     1. Objector  Submitted No Financial Information to
      Indicate She is Financially Unable to Post Bond Despite the

      Opportunity to Provide the Court with this Information  ..............................21

     2. Objector Swift is Not a Resident in a Ninth Circuit State

      Raising Significant Difficulties in Collecting Appellate Costs ......................21

     3. Objector Swift's Appeal is not Likely to Succeed..........................................23

       a. After Extensive Review and Consideration by this Court, the

        Settlement Amount was Found Fair, Reasonable and Adequate

        and was both Preliminarily and Finally Approved

        Under Ninth Circuit Law .................................................................27

       b. The Fee Award was Found Fair and Appropriate Under Ninth Circuit
        Law and Expert Opinions Support Using the Settlement Ceiling, Not
        the Floor, as an Appropriate Figure to Base Fees on ...........................31

       c. Maddox's Objections Were Meritless and Unsupported......................28

i

4.    Objector Swift's Appeal Shows Bad Faith and Vexatious Conduct............42

B.    The Amount of the Requested Bond is Appropriate .................................................32

1.    Permitted Taxable Costs Include Preparation and Transmission
      of the Record, Reporter's Transcript, and the Fee for Filing
      Notice to Class Members of the Appeal ........................................................32

      a.    Preparation and Transmission of the Record .........................................33

      b.    Cost for Reporter's Transcripts ..............................................................33

2.    Administrative Costs .....................................................................................33

3.    Deposition Costs Should be Included in the Bond ........................................34

4.    Interest on the Class Settlement, Attorney's Fees and Costs
      Should be Included in the Bond ....................................................................34

IV.   CONCLUSION.............................................................................................................35

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Stephanie Swift*

# TABLE OF AUTHORITIES

*Adsani v. Miller*

139 F.3d 67 (2nd Cir. 1998)...........................................................................................................23

*Air Separation v. Underwriters at Lloyd's of London*

45 F.3d 288 (9th Cir. 1994) ....................................................................................................18, 35

*Aleyeska Pipeline Serv. Co. v. Wilderness Soc'y.*

421 U.S. 240 (1975)......................................................................................................................29

*Azizian v. Federated Dept. Stores*

499 F.3d 950 (9th Cir. 2007) ...................................................................3, 11, 18, 23, 31, 32, 33

*Barnes v. FleetBoston Financial Corp.*

2006 U.S. Dist. LEXIS 71072 (D. Mass.) ...................................................................................12

*Benacquisto v. American Express*

00cv1980, (D. Mn)........................................................................................................................12

*Boeing Co. v. Van Gemert*

444 U.S. 472 (1980)......................................................................................................................29

*Chamberlan v. Ford Motor Co.*

402 F.3d 952 (9th Cir. 2005) .........................................................................................................4

*Chiaverini, Inc. v. Frenchie's Fine Jewelry, Coins & Stamps, Inc.*

2008 U.S. Dist. LEXIS 45726 (E. D. Mich. 2008).....................................................................21

*Clark v. Experian Information Solutions, Inc.*

2004 U.S. Dist. LEXIS 28324 (D.S.C.) ............................................................. 12

*Curry v. Fairbanks Capital Corp.*

03cv10895 (D. Mass. 2004) ............................................................................ 11

*Davis v. UST,*

No. 17305 II, Circuit Court for Jefferson County, TN .................................. 11

*Donovan v. Sovereign Secur., Ltd. .*

726 F.2d 55 (9th Cir. 1984) ............................................................ 1, 2, 18, 34

*Fleury v. Richemont North America, Inc.*

2008 U.S. Dist. LEXIS 88166 (C.D. Cal. 2008) ............................... 18, 21, 23

*Galanti v. The Goodyear Tire & Rubber Company*

03cv209 (D.N.J.) ............................................................................................ 12

*Hanlon v. Chyrsler Corp.*

150 F.3d 1011 (9th Cir. 1998) ................................................................ 27, 29

*Hayworth v. Nevada*

56 F3d 1048 (9th Cir. 1995) .......................................................................... 3

*Hensley v. Eckerhart*

461 U.S. 424 (1983) ....................................................................................... 29

iv

*Hughes Air West, Inc.*
557 F. 2d 759 (9th Cir. 1977) ............................................................................... 29

*Iliadis, et al. v. Walmart Stores, Inc., et al.*
Superior Court of New Jersey, Middlesex County, Docket No. MID-L-5498-02 ....................... 13

*In Re Allstate Fair Credit Reporting Acti Litigation*
(M.D. Tenn.) ....................................................................................................... 12

*In re Airline Ticket Comm'r Antitrust Litig.*
953 F. Supp. 280 (D. Minn. 1997) ......................................................................... 29

*In re Am. President Lines*
779 F.2d 714 (D.C. Circuit 1985) ........................................................................... 23

*In re Broadcom Corp. Secs. Litig.*
2005 U.S. Dist. LEXIS 45656 (C.D. Cal. 2005) ........................................... 18, 19, 32, 33

*In re Catfish Antitrust Litig.*
939 F.Supp. 493 (N.D. Miss. 1996) ....................................................................... 29

*In re Charter Communications, Inc.*
MDL 1506, 02cv1186 (E.D. Mo. 2005) ................................................................... 11

*In re Compact Disc Minimum Advised Price Antitrust Litigation,*
MDL 1361 (D. Me. 2003) ..................................................................................... 11

v

*In Re Daimlerchrysler, et al.*

00cv993 (D. Del.) ........................................................................... 12

*In re Disposable Contact Lens Antitrust Litigation*

MDL 1030 (M.D. Fla.) ..................................................................... 12

*In re Heritage Bond Litig.*

2005 U.S. Dist. LEXIS 13627 (C.D. Cal. 2005) ................................. 18

*In re Lorazepam & Clorazepate Antitrust Litig.* .............................. 29

2003 WL 22037741 (D.D.C. 2003)

*In re Lucent Technologies, Inc. Securities Litigation*

327 F. Supp. 2d 426 (D.N.J. 2004) .................................................... 11

*In re: Managed Care, et al.*

MDL 1334 (S.D. Fla.) ....................................................................... 12

*In re: MCI-Subscriber Telephone Rates Ligitaion*

MDL 1275, 99cv1275 (S.D. Ill.) ....................................................... 12

*In re NE Mutual Life MDL, et al.*

96cv11534 (D. Mass.) ....................................................................... 12

*In re Pacific Enter. Sec. Litig.*

47 F. 3d 373 (9th Cir. 1995) ............................................................. 29

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Stephanie Swift*

*In re PayPal Litigation*
2004 U.S. Dist. LEXIS 22470 (N.D. Cal. 2004) ........................................................12

*In re Relafen Antitrust Litigation*
231 F.R.D. 52 (D. Mass. 2005)..................................................................................11

*In re Rite Aid Corp.*
MDL 1360 (E.D. Pa.)..................................................................................................12

*In re Royal Ahold N.V. Securities & ERISA Litigation*
461 F. Supp. 2d 383 (D. Md. 2006) ..........................................................................12

*In re Serzone Products Liability Litigation*
MDL 1447 (S.D.W.V. 2005) .......................................................................................11

*In re SmithKline Beecham Corp. Sec. Litig.*
751 F.Sup. 525 (E.D. Pa. 1990) ...............................................................................30

*In re Visa Check/Mastermoney Antitrust Litigation*
192 F.R.D. 68 (E.D.N.Y. 2004)..................................................................................11

*In re Warfarin Sodium Antitrust Litigation*
212 F.R.D. 231 (D. Del. 2002) ..................................................................................11

*Kaiser Aluminum & Chem. Corp. v. Bonjorno*
494 U.S. 827 (1990)........................................................................................2, 18, 34

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Stephanie Swift*

*Lachance v. United States Smokeless Tobacco*

No. 2006-2007 564. (N.H. 2006) ......................................................................... 12

*Landreneau v. Fleet Bank (RI) National Ass'n*

01cv26 (M.D. La.) ................................................................................................. 12

*Lindmark v. American Express*

00cv8658 (C.D. Cal.) ........................................................................................... 12

*Lipuma v. American Express*

04cv20314 (S.D. Fla.) .......................................................................................... 12

*Mangone v. First USA Bank*

206 F.R.D. 222 (S.D. Ill. 2001) .......................................................................... 12

*Masters v. Wilhelmina Model Agency, Inc.*

473 F.3d 423(2d Cir. 2007) ........................................................................... 11, 30

*Meyenburg v. Exxon Mobil Corp.*

05cv15 ................................................................................................................... 12

*Officers for Justice v. Civil Serv. Comm'n of the City & County of San Francisco*

688 F.2d 615 (9th Cir. 1982) ............................................................................... 27

*Ouellette, et al. v. Wal-Mart Stores, Inc., et al.*

Circuit Court for Washington County, Florida, File No. 67-01-CA-326 ..................... 13

*Pace Design & Fab. v. Stoughton Composites*

1997 U.S. App. LEXIS 35780 (9th Cir. 1997) ................................................................. 2, 18, 34

*Paul, Johnson, Alston & Hunt v. Graulty*

886 F.2d 268 (9th Cir. 1989) ................................................................................ 28, 29

*Petty v. Wal-Mart Stores, Inc.*

148 Ohio App. 3d 348 (6th Cir. 2002) ................................................................................ 10

*Perkins v. Standard Oil Co.*

487 F. 2d 672 (9th Cir. 1973) ................................................................................ 18, 34

*RBFC ONE, LLC v. Timberlake*

2005 U.S. Dist. LEXIS 19148 (2d Cir. 2005) ................................................................ 18

*Roasted v. First USA Bank*

97cv1482 (W.D. Wash.) ................................................................................ 12

*Rodriguez v. West Publishing Corp.*

563 F. 3d 948 (9th Cir. 2009) ................................................................................ 29

*Schwartz v. Citibank*

00cv75 (C.D. Cal.) ................................................................................ 12

*Schwartz v. Dallas Cowboys Football*

97cv5184 (E.D. Pa.) ................................................................................ 12

*Six Mexican Farm Workers v. Arizona Citrus Growers*

904 F. 2d 1301 (9th Cir. 1990) ................................................................................ 29

*Spark v. MBNA Corp.*

289 F. Supp.2d 510 (D. Del. 2003)..........................................................................11

*Synfuel Technologies, LLC v. Airborne Express, Inc.*

02cv324 (S.D. Ill.) ...................................................................................................12

*Taubenfeld v. Aon Corp.*

415 F.3d 597 (7th Cir. 2005) ...................................................................................11

*Tenuto v. Transworld Systems, Inc.*

2002 WL 188569 (E.D. Pa.) .....................................................................................12

*Torrisi v. Tucson Elec. Power Co.*

8 F.3d 1370 (9th Cir. 1993) ...............................................................................27, 29

*Tri-Star Pictures, Inc. v. Unger*

32 F. Supp. 2d 144 (2d Cir. 1999) ............................................................................18

*Varacallo v. Massachusetts Mutual Life Insurance Company*

04cv2702 (D.N.J.)....................................................................................................12

*Venen v. Sweet*

758 F.2d 117 (3d Cir. 1985).....................................................................................18

*Vizcaino v. Microsoft Corp.*

290 F. 3d 1043 (9th Cir. 2002) ................................................................................29

*Washington State Dep't of Transp. V. Washington Nat. Gas Co.*

59 F.3d 793 (9th Cir. 1995) ............................................................................34

*Williams v. MGM-Pathe Communications Co.*

129 F.3d 1026 (9th Cir. 1997) ..................................................................11, 30

*Wing v. Asarco Inc.*

114 F.3d 986 (9th Cir. 1997) ..........................................................................29

*Zawikowski v. Beneficial National Bank*

98cv2178 (N.D. Ill.)........................................................................................12

Other Authorities

28 U.S.C. § 1961

28 U.S. C § 1920

29 U.S.C. §§206, 207(a), 211(c), 215, 216(b)

Fed. R. App. Proc. 7

Fed. R. Civ. P. 23(e)

Fed. R. Civ. P. 11(c)(2)

Fed. R. Civ. P. 39(c)

Fed. R. Civ. P. 54(d)

Pursuant to Rule 7 of the Federal Rules of Appellate Procedure and the District Court's inherent power, Plaintiffs' have moved this Court for an Order requiring Objector Stephanie Swift (hereafter, "Objector, " "Objector Swift" or "Swift") to post an appeal bond in the amount of $2,285,857.15. In support, thereof, Plaintiffs submit this memorandum of points and authorities, including its attachments.[1] Wal-Mart supports the assessment of a bond.

Post-judgment interest is mandatory for any money judgment pursuant to 28 U.S.C. § 1961.[2] The assessment of an appeal bond by the District Court is an important and important component of the civil justice system. It is not only a long standing component of the rules of appellate procedure[3], it is well accepted by federal courts across the country, including the Ninth Circuit Court as a reasonable and necessary means to accomplish important public policy. The instant action fits squarely within the parameters of that public policy. In fact, the Swift appeal is the epitome of why the public policy is sound and important.

The purpose of post-judgment interest is to compensate a successful plaintiff for not being paid during the time between the award and the ultimate date of payment.[4] The amount protected includes post judgment interest, or the cost of the delay in the payment of the judgment, if the appeal ultimately fails. Objector Swift is particularly well suited for the assessment of a bond because her appeal will obviously fail and her claims of error are wholly without merit.

The purpose of an appeal bond is to protect the amount the Appellee stands to have reimbursed should the appeal fail. Obviously, the primary purpose of an appeal bond is of

---

[1] Plaintiffs otherwise rely on the submitted record in this litigation.
[2] *Donovan v. Sovereign Secur., Ltd.*, 726 F.2d 55, 58 (9th Cir. 1984).
[3] Federal Rule of Appellate Procedure 7 is derived from former Federal Rule of Civil Procedure 73(c) and provides that, "the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R.App. P. 7.

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Stephanie Swift*

particular importance to the settlement class here because they are presently losing the ascertainable value of the post judgment interest daily. Justice will be served through the assessment of the requested bond. When reviewed in the context of the instant litigation, the bond will insure that the settlement class has a reliable source from which they may efficiently and cost effectively recoup their economic loss.

The express terms of Settlement Agreement make clear that the funding of the monetary component does not occur until *after all appeals are exhausted and final judgment has entered.* *See* Docket no, 432, Declaration of Nicole Vamosi in Support of Final Approval, Attachment A, October 2, 2009, at ¶¶ 1.39, 6.2. When Objector Swift's appeal fails, she will be required to pay for related ascertainable economic harm that her appeal caused. Under the applicable law she, and not the members of the class, must accept the financial responsibility for her voluntary actions. There is no requirement that the class be forced to front her or to assume the risk she will not be able to pay her debt. Such an outcome is unjust. The class vehemently objects to this proposition and demands that Swift be made to carry her own financial burden and that she assume risk she voluntarily chose to create by being be required to post a reasonable bond.

During two separate hearings, this Court provided ample evidence that it had reviewed and scrutinized the related filings and attachments. In fact, the Court carefully went through the required evaluative factors and made findings with respect to each in supporting its ultimate fee award. *See* Docket no. 491, Order, 9-13, November 2, 2009 ("hereafter, Final Approval Order"). *See also* Docket no. 482, Transcript of Final Fairness Hearing, October 19, 2009; Docket no. 520, Hearing on Attorney Fees and Incentive Awards, November 20, 2009. Objector Swift's likelihood of success is not so great as to make the requested assessment of a bond unjust or

---

[4] *Pace Design & Fab. v. Stoughton Composites,* 1997 U.S. App. LEXIS 35780, *2-3 (9th Cir. 1997) (citing

unreasonable. Plaintiffs' conclusion that the Swift objection will obviously fail, is wholly without merit and is frivolous is fully supported in the record.

The facts, argument and evidence supporting the requested assessment of an Appellate Bond as to Objector Swift presented herein reasonably satisfy the Ninth Circuit evaluative criteria. This request expressly does not seek assessment of questionable or "gray" costs. This request is clearly not punitive or excessive. It is calculated to the penny, and supported by expert opinions[5]. This bond request does not rely on any basis that has been forbidden by the Ninth Circuit. In fact, we expressly request that the Court disregard and not consider any such factor or argument that is inadvertently raised or raised herein for the purpose of creating a record for review by the Appeals Court.[6]

Plaintiffs have offered their best effort to insure that the facts and evidence presented here precisely comport with the important public policy rationale underlying the provisions in the law

---

*Donovan,* 726 F.2d at 58); *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835 (1990).
[5] While Objector Swift recently advanced that administrative costs during appeal do not constitute a permitted basis upon which a bond may be valued and assessed, she provided no authority. *See* Docket no. 556, Appellants Jessica Gaona, Stephanie Swift, Deborah Maddox and Fatima Andrews' Joint Response to Plaintiffs' Nancy Hall's Motion for a Bond for Appeal, January 4, 2010, at 2. She did, however, concede that it is well settled that the costs of notice do constitute a valid basis for the valuation and assessment of a bond. By way of a further explanation, the filing of the appeal presented the Plaintiffs with the option of publishing notice (as suggested by Objector Swift) or otherwise addressing the obvious change of circumstances through an administration process. The administration process was found to be more costs effective, and so in the totality of the circumstances was thought to better serve the class. In light of the position taken by Swift, and as a result of her suggestion that unless Plaintiffs adopt the more expensive method to address the obvious change of circumstances and fulfill related actual case needs the class and not Objector Swift will be forced to absorb that cost, Plaintiffs have supplemented this request for a bond with an opinion of the cost of Notice. See Attachment A, Affidavit of Amanda J. Myette Relating to Cost of Additional Class Notice Relating to the Appeal.
[6] While reserving for itself consideration of certain issues including bad faith, the Appeals Court is silent on the proper method parties should use to introduce evidence that would support a finding of bad faith in the context of professional objectors. Professional objectors enter actions on a very limited basis post-settlement to press meritless appeals and extract pay offs. Professional Objectors cannot be compared to other litigants and the challenge of creating a full record is a universally recognized and quite confounding subject to the practicing bar. Many, like Objector Swift here, ignore discovery requests in an effort to make the record as thin as possible. Here, in addition to offering evidence that may be relevant through this memorandum and it attachments and what else can be gleaned at an anticipated sanctions hearing, Plaintiffs intend to request the Court to hold a "Rule 38 Evidentiary Hearing."

for appellate bonds, but at the same time not to reach too far and establish a reasonable basis for appellate review of the bond assessed.[7]

It would be manifestly unjust to allow Swift to voluntarily engage a process to keep the benefit of the settlement from the vast majority of the class and at the same time have the class foot the bill for her voluntary frolic. The Swift appeal is frivolous because in the context of this settlement, the approval process, the related orders and all attendant facts articulated or evidenced thereon the result of the appeal is obvious and the claims of error are wholly without merit. *Dewitt v. Western Pacific* 710 f.2d 1448, 1451 (9th Cir. 1983). Swift offers no specific fact or analysis in support. The challenges she advances based on issues of law run counter to well-established Ninth Circuit authority and she offers no facts, theories or arguments that distinguish this action or that otherwise warrant reversal or refinement. She did not bother to obtain what was required to have made herself aware of the facts and arguments supporting this Courts orders. She provided a questionable address and chose to ignore a Court Order compelling her attendance at a deposition.

As specifically enumerated below, the class has already incurred costs as a result of Swift's appeal. As a direct result of this appeal, class members will certainly suffer additional ascertainable economic loss during the pendency of the appeal. The Swift appeal is likely to fail and the class is entitled to the interest that it would have accrued during the pendency of the

---

[7] It is the goal of Professional Objectors to have their objection accepted at the Appellate level and to be placed in the system for review because this brings with them the delay they seek as leverage to extract payments from Plaintiffs counsels. In the long run, whether they win is not important as to individual cases because they play the averages and losing appeals is a cost of doing business. Over time, it has become an established fact that each time they have docketed a colorable appeal the odds are with them that they will receive a payment in exchange for dropping the appeal.

appeal. Pursuant to the express authority of the statutory and interpretive case law and for the reasons set forth below, Plaintiffs' Motion should be granted.[8]

Finally, the undersigned counsels do not join in the Request for Bond submitted by Co-Lead Counsel Carolyn Beasley-Burton (hereafter, "Beasley-Burton") and object to it.[9]

## I. PROCEDURAL AND FACTUAL BACKGROUND

On May 23, 2007, this Court granted, in part, Wal-Mart's Motion to Dismiss or for Judgment on the Pleadings, reducing in scope and number the claims advanced by the Plaintiffs. *See* Docket no. 138, Order. On June 20, 2008, this Court denied Plaintiff's Motion for Class Certification for the First Phase, finding that individual issues predominated and that the actions were not suitable for class treatment. *See* Docket no. 249, Order. The rationale applied to all actions in MDL 1735 and effectively ended the litigation. On June 30, 2008, Plaintiffs filed a

---

[8] In fact, Plaintiffs believe the appeal to be wholly unsupported and frivolous and reserve all rights to seek all appellate remedies available. Portions of this submission will support the anticipated Rule 38 sanctions request at the Appellate Court level. Regrettably, Beasley-Burton has again submitted a filing without attempting to have any of the other Plaintiffs submit a joint submission despite the clear advisement of PTO 1 and PTO 2. Beasley-Burton did not discuss the contents of her submission, circulate a draft, nor advise a single class counsel or her Co-Lead Counsel in advance of placing her request for the assessment of a bond on file. Unfortunately, this is *at least* the third time she has done this and attempts to stop this detrimental practice have been wholly unsuccessful. Moreover, Beasley-Burton's submission clumps all objectors together and does not account for the fact they are expressly all independent of each other and "not working together." Moreover, and as better described in footnote 8, Beasley-Burton requests a bond be valued on costs that will certainly be appealed further delaying final resolution. In making the request here, Plaintiffs have attempted to make the offer conservative reasonably available to them.
[9] Regrettably, Beasley-Burton has once again submitted a filing without attempting to have Plaintiffs submit a joint submission. She did not discuss, circulate a draft, or advise a single class counsel or her Co-Lead Counsel in advance of placing her request for the assessment of a bond on file. Unfortunately this is *at least* the third time she has done this, and attempts to stop this detrimental practice have been wholly unsuccessful. In addition to lacking the expert evidentiary foundation required to support the assessment of a bond, Beasley-Burton's submissions run afoul of the holding in the *Azizian* case. *Azizian v. Federated Dept. Stores*, 499 F.3d 950, 958 (9th Cir. 2007). *See* Docket no. 536, Plaintiffs' Memorandum in Support of Motion to Require Objectors Gaona, Swift, Andrews, and Maddox and Their Attorneys to Post Appeal Bonds, and Seeking Any Other Appropriate Relief to Protect the Class, December 18, 2009. *Azizian* held that, "the term 'costs on appeal' in *Rule 7* includes all expenses defined as 'costs' by an applicable fee-shifting statute, including attorney's fees." *Id.* at 958 (internal citations omitted). However, "The FLSA statute defines attorney's fees separately from costs. 29 U.S.C. § 216(b)." *Hayworth v. Nevada*, 56 F.3d 1048, 1051 (9th Cir. 1995). Despite this, Beasley-Burton's requests attorney's fees from the fee shifting provision in FLSA. While individual state laws may allow for fee shifting to be included as costs on a state by state basis, FLSA clearly precludes it. Collectively, the undersigned counsels request this Court to adopt a conservative view and assess the bond on pure and solid legal footing. It is worth noting that it is well known among the practicing class action bar that the goal of Professional Objectors is to obtain some appealable issue and to move the action into the Appellate Court system, where it will presumably languish at best until the professional objectors are paid off, or at

Petition for Appeal requesting permission to appeal the Order denying Class Certification. *See* Docket no. 252 at ¶ 3.

Readily available statistics clearly establish that reversing the denial of certification in the Ninth Circuit is rarely successful. *See* Docket no. 426, Memorandum in Support of Motion for Final Approval of Proposed Settlement with Defendant Wal-Mart at 37, October 1, 2009.[10]

The parties executed a Term Sheet on December 14, 2008 with the assistance of the Hon. Layn Phillips (ret.) and subsequently appeared before the Court and otherwise updated the Court on the status of the ongoing efforts to complete and execute a Settlement Agreement[11] and placed on file briefing in support of Preliminary Approval on multiple occasions. *See also* Docket no. 285, Minutes of Proceedings, February 24, 2009.

On May 28, 2009, after careful and complete consideration and review, this Court preliminarily approved a class action Settlement as well as the details of the plan of providing notice of the Settlement to Settlement Class members and the method for excluding oneself or submitting an objection. *See* Docket no. 322, Order Preliminarily Approving Settlement, Approving Form and Manner of Notice, and Scheduling Hearing on Fairness of Settlement Pursuant to Fed. R. Civ. P. 23(e) (hereafter, "Preliminary Approval Order") at ¶ 3, ¶¶ 5-10.

The Settlement Agreement[12] was the culmination of years of hard fought litigation. During that time, on several occasions, the parties walked away from negotiations because they

---

worst, until the appellate process runs its course after several years of delay. In light of this reality, we oppose any effort that results in giving the professional objectors another reason to appeal.

[10] Here, as the Court is well aware, it denied certification in the First Phase cases upon finding that Wal-Mart's affirmative defenses raise individualized issues and that the holding would be identical in each MDL 1735 case. Moreover, many of the state courts in cases covered by this settlement had also previously denied certification, and several of those rulings have already been upheld on appeal. Class settlements are extremely rare in cases where class certification is denied because the denial of certification generally sounds the "death knell" of the litigation. *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 957 (9th Cir. 2005).

[11] The Hon. Layn Phillips (ret.) was called upon during the interim period between the execution of the Term Sheet and the Request for Preliminary Approval for additional assistance.

[12] *See* Docket no. 432, Declaration of Nicole Vamosi in Support of Final Approval, Attachment A, October 2, 2009.

were unable to reach agreement - underscoring the fact that the formal[13] and informal efforts were at arm's length. Among the matters researched and included in the Request for Preliminary Approval were the method and forms of Notice and the procedures for the submission of objections and requests for exclusion. The express terms of the Settlement Agreement[14] were reached during the many months of negotiation after the initial signing of the Term Sheet. The notice, exclusion and objection provisions were arrived at after extensive legal research and consultation with various experts including Rust Consulting, Inc. (hereafter, "Rust Consulting" or "Rust")[15] and others, including class action legal consultants and the editor of *Newburg on Class Actions*. Counsels for the class representatives, comprised of highly respected and experienced counsels nationwide, also participated in the process. *See* Docket no. 434, Attachments L-1 through L-28 to Declaration of Nicole Vamosi in Support of Final Approval, October 2, 2009. After research, review and careful consideration,[16] the class counsels and class representatives signed the Settlement Agreement approving its terms, including the notice, exclusion and objection procedures. *See* Docket no. 432, Declaration of Nicole Vamosi in Support of Final Approval, Attachment A, October 2, 2009.

The approved forms and manner of notice were designed to fairly, adequately, and in full compliance with the law, apprise Settlement Class Members of their rights under the Settlement

---

[13] The parties retained the Hon. Layn Phillips (ret.), one of the nation's most respected providers of alternative dispute resolution for complex and class action matters. Here, Judge Phillips also had the benefit of having served as a neutral in many other actions against Wal-Mart for wage and hour claims.

[14] The Term Sheet which embodied the general terms of the settlement was first executed by the parties on December 14, 2008, during the last of a series of pre-settlement formal mediation session with the Hon. Layn Phillips.

[15] Objector Swift did not challenge the expertise of Rust. The fact that Rust is among this nation's leading class action claims administration providers is subject to Judicial Notice and is otherwise overwhelmingly evidenced through multiple submissions in the record that set out Rust's extensive experience and expertise.

[16] Prior to the execution of the Settlement Agreement, several well-attended Settlement Summits were convened so that the Settlement Agreement and its terms and projected implementation could be questioned, discussed and/or debated by class counsels. Additionally, in between the summits, class counsels were provided with updates and drafts of the proposed terms including the class administration and objection procedures.

7

Agreement. The right to submit a claim, exclude oneself, or object to the proposed Settlement were expressly and clearly articulated. Objector Swift did submit a claim but provided a false address under oath. *See* Attachment B, Stephanie Swift Claim Form. A safe harbor letter was served on her counsel on November 16, 2009 and a second more refined safe harbor letter is presently being drafted and is expected to be served within 7 days.

The approved objection procedures allowed the Court to manage its docket. It is important to note, that in addition to allowing the Court (and parties) to be in a position to conduct an orderly fairness hearing, the objection provisions also offered a layer of protection and benefited objectors and class members by ensuring the Court and Counsel had clear understanding and record in advance of hearing of the concerns/issues motivating an objection.

Moreover, the objection procedures provided other considerable benefit and protection to objectors by also ensuring that they would be provided with a full and fair opportunity to present the fullest array of evidence and argument that they desired to supplement their written objections. At hearing, the Court expressly announced that it had allotted time to the Objectors for oral presentation/argument. Additionally, the action taken in response to the so-called "Home Office Class[17]" clearly establishes that the approved process and submissions did in fact serve their intended purpose. During its careful and thorough evaluation of the Objectors' submissions, considerations raised by Mr. Ferguson on behalf of the Home Office class the Court chose to act and expanded the class because to accept the points raised served the best interests of the class. *See* Docket no. 379, Objection to Settlement, September 22, 2009; Docket no. 491, Final Approval Order, November 2, 2009. The noteworthy functions served through the provision of the basic information are certainly a matter of fact found in the record.

---

[17] *See* Docket no. 379, Objection to Settlement, September 22, 2009

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Stephanie Swift*

Swift, through counsel, was provided with a full opportunity to support her position through the objection submission process and was also allotted time at the Final Fairness hearing. She submitted her objection and is bound by it and limited to it. She chose not to attend either the Final Approval Hearing or the subsequent hearing on attorney fees and incentive awards or to request to participate by phone.

Swift thus willfully and knowingly chose to waive several opportunities to supplement her original filing as was her right. This choice is shocking because the submissions by Plaintiffs of several rounds of voluminous briefing with its attendant evidentiary submissions and, the evidence and argument offered during the two related hearings, certainly created a material change of circumstance that Objector Swift was obligated at the very least to acknowledge. It is the opinion of Plaintiffs that her failure to do so objectively removes from her submission any indicia of intellectually honesty and evidences it was offered in bad faith. However, as relating to the instant request, it is more precisely her actual failure to so act that simply renders the Swift appeal as frivolous because in the context of the approval process and the review, deliberations and findings relating to this Court's Orders the result of the appeal is obvious and the claims of error are wholly without merit. *Dewitt v. Western Pacific,* 710 F.2d 1448, 1451 (9th Cir. 1983).

On August 10, 2009, Class Notices were mailed in strict compliance with this Court's Order by the Claims Administrator, Rust Consulting, to the Class Members contained in the Class List via First Class Mail at the most up-to-date home addresses available. Additionally, on August 16, 2009, Plaintiffs published the Summary Notice in *Parade Magazine*. In addition, the Claims Administrator established a website for the Class Members to access information regarding the Settlement and set up a toll-free number to receive inquiries from Class Members, with operators available who spoke both English and Spanish.

The deadline for requests for exclusion and for objections was set by the Court and included in the Class Notices was September 24, 2009. *Id.*

Objector Swift did not choose to exclude herself. Under the express terms of the Settlement, exercising that option would have given her an unrestricted right to individually advance any and all claims of liability and/or damages that she believed she was entitled to, without blocking the other class members from the present recovery of the settlement funds and non economic right to enforceable injunctive relief. The other class members who accepted the settlement considered prompt receipt of the settlement's cash and equitable benefits important. See e.g. Docket no. 434, Declarations of Class Member Representatives, October 2, 2009.

On September 23, 2009, Swift and her counsel instead voluntarily chose to object to the Settlement, knowing that such a choice would prevent the funding of the Qualified Settlement Fund. They also knew or should have known, that by objecting, rather than requesting exclusion from the settlement, they would effectively deny participating class members the benefit of the present use of the settlement monies and the entitlement to interest on those funds during the pendency of the Appeal. *See* Attachment C, Objection, Docket no. 382, September 23, 2009 (hereafter, "Swift Objection" or "Objection").

In objecting, Swift is limited to her written submission. In it she advances that: 1) The Settlement's guaranteed floor of $65 million is an inadequate settlement for 29 states; and 2) Attorney's fees should not exceed 25% of the Floor, $65 Million[18]. *See* Docket no. 382, Swift Objection. She wholly fails however to address, follow or even acknowledge the evaluative criteria that this court painstakingly undertook in arriving at its findings that under the circumstances presented her, final approval was fair just and served the best interests of the class

---

[18] The Swift objection relating to attorney fees fails to evidence whether or how the fee award caused her to suffer any economic or other loss.

and that the fees awarded were, in the Courts discretion, fair and reasonable. Swift fails to advance any support for her claims of error and is left with a submission wholly without merit.

That Swifts objection did not include any factual or legal support for the conclusions she offered through her counsel, John J. Pentz, Esq. (hereafter, "Pentz") is no surprise. Pentz is self described Professional Objector. Likewise, Swifts legal arguments run contrary to the Ninth Circuit law cited in the briefing without any effort to explain why.

Additionally, Swifts objection offers only "lay argument" to counter the "expert opinion" placed into the record by Plaintiffs. *See e.g. Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (U.S. 1993). *See also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (applying the *Daubert* standard to expert testimony from non-scientists). The decision to settle was made on the basis of the expert opinion of class counsels. It was supported by the other expert opinions contained in the declarations of two class action experts (Professors Silver and Rubenstein), a retired Federal Judge with unparalleled expertise in wage and hour litigation against Wal-Mart (the Hon. Phillips ret.), and lawyers with experience and expertise specific to employment class actions against Wal-Mart (Azare and Seligman). *See* Docket no. 507-1, Expert Report of Charles Silver Concerning the Bearing of the Claim Rate on the Fee Award, November 17, 2009; Docket no. 417, Declaration of William B. Rubenstein, October 1, 2009; Docket no. 305, Declaration of Layn Phillips, May 26, 2009. Swift offered no expert opinion to support her claim that the $65 million dollar settlement of a class action that had been denied class certification is in any way "inadequate."[19] As a lay person, Swift is obviously not ethically obligated to protect the class in the same way as appointed class counsel. She certainly did not

_____

[19] Since the Objection is wholly unsupported by fact or argument and offered at best as lay opinion, seeking to counter expert opinion or at worst a lay opinion seeking to substitute the judgment exercised in the discretion of a class member for the judgment exercised in the discretion of this Court.

11

1  carry out the same level of review and analysis as this Court did to protect the interests of the

2  class prior to offering her initial objection or her later appeal.

3
4      It is also worth noting that Objector Swift did not even acknowledge that class claims

5  directly applicable to Wal-Mart's Ohio hourly employees' claims have been lost twice.[20]  That

6  fact and the related dose of reality provided by well-known statistics establishing that the

7  likelihood of success when appealing the denial of class certification in the Ninth Circuit is slim,

8  evidenced the greatly enhanced risk of continued litigation.  In the view of this Court and the
9
   experienced legal minds who reviewed this case (including this Court, class counsels, counsels
10
11 Azare and Seligman who specialize in Wal-Mart employment class actions, and the preeminent

12 experts Silver and Rubenstein ), the risk factor was an important consideration.

13     The absence of any consideration or acknowledgement whatsoever of the risk to the class

14 of receiving nothing that Ohio employee Swift she should have been acutely aware of[21] it simply
15
16 cannot be said that the assessment of a bond in the context of the her objection is unjust or that

17 Swift should somehow be exempt from traditional considerations designed to protect the

18 appellee members of a certified class.

19     Swift did not offer in support any thoughtful analysis or evidence, relating to the specific
20
   factors that this Court was required to, and did, scrutinize and pass judgment on in approving the
21
22 Settlement.  In the final analysis, all that was offered in exchange for barring a present day

23 recovery to the many Class Members who opted to accept the benefits offered through the

24 Settlement were her unsupported conclusions.  The appeal is advanced wholly on unsupported

25

26

27
   [20] Once in Ohio, where certification had been denied and also in connection with the denial of certification in MDL
28 1735. *See* Attachment D, *Petty v. Wal-Mart Stores, Inc.*, 148 Ohio App. 3d 348 (2002).
   [21] Swift is part of a group that lost class certification two times.  Once as part of this Court's proceedings and once in
   the Ohio. *See* Attachment D, *Petty v. Wal-Mart Stores, Inc.*, 148 Ohio App. 3d 348 (2002).

conclusions and is thus wholly without merit. This frivolous appeal of the settlement will obviously fail and the assessment of the requested bond is just and needed to protect the class.

Swift's Objection to fees is likewise frivolous and not likely to succeed. Swift failed to recognize and/or take into account well established Ninth Circuit law relating to fees and the specific facts in this case supporting the award of fees. Here, again, Swift simply seeks to substitute her own judgment for the considered judgment of this Court.[22] Even worse, she attempts to do so without offering up a single scintilla of evidence or original thought in support. The lack of fact or argument in support also makes clear why she chose not to appear at either the Final Fairness Hearing or the subsequent hearing on fees and incentive awards- she has nothing meritorious to offer. In addition to receiving the support of counsels who possess specialized expertise and experience litigating employment class actions including those against Wal-Mart, two preeminent legal authorities, William B. Rubenstein and Professor Charles Silver, wholly support the fee award here. It is well established that fees are subject to the discretion of the trial Court and that as a matter of law in the Ninth Circuit the percentage of the benefit is taken from the ceiling. *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007).

Most importantly, prior to exercising its discretion, the Court scrutinized the evidentiary record and then made detailed findings of fact and law in eventually determining the attorney fee award. It only did so after it scheduled and held two separate hearings and reviewed and considered two separate rounds of briefing. In stark contrast, the Swift Objection contains no independent offer of evidence or argument to support the ultimate conclusion that the award of fees should be reversed. The Swift Objection does not offer a single case or fact in support, and

---

[22] Once again she seeks to counter expert opinion through the conclusions of a lay class member.

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Stephanie Swift*

advancing nothing but a stark conclusion to seek reversal of order that was entered only after consideration of the full record and related findings including the express consideration and reliance on expert opinion.[23] Also, of note, is the fact that Swift does not make the slightest effort to reference evidence contained in the record of MDL 1735, including but not limited to the briefing in support, the orders or transcripts of proceedings, or the opinions of experts and lay affiants who all supported the fee award. *See* Swift Objection.

It is not apparent from a reading of the Swift objection that she or her counsel even read the submissions. On October 1, 2009, Plaintiffs submitted voluminous filings in support of Final Approval. *See* Docket nos. 426-435. Plaintiffs also submitted voluminous filings in support of an award of attorney fees and incentive payments to the class representatives. An objective reading of the docket establishes that, following the massive submissions offered in support of Final Approval, including declarations in support from experts, counsel in all states, and dozens of class members, Swift and her counsel failed to submit any response or supplement whatsoever, and also failed to act in any way to rebut or address a single fact advanced in the submissions filed in support of Final Approval.[24]

---

[23] *See* Transcript of hearing on fees and incentive awards, *See* Docket no. 482, Transcript of Final Fairness Hearing, October 19, 2009; Docket no. 520, Hearing on Attorney Fees and Incentive Awards, November 20, 2009.

[24] This should come as no surprise, Swift's counsel, John J. Pentz, Esq., is an admitted Professional Objector. Boiled to their essence, Professional Objectors are most often described as and compared to extortionists or other thugs who extract cash through wrongful means. The reality is that what Professional Objectors seek in exchange for simply dropping their objections/appeals is to be paid off. Seldom if ever does the class receive a benefit. Pentz has served as a Professional Objector in at least 39 cases. *See Davis v. UST*, No. 17305 Il, Circuit Court for Jefferson County, TN; *Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005); *In re Lucent Technologies, Inc. Securities Litigation*, 327 F. Supp. 2d 426 (D.N.J. 2004); *In re Relafen Antitrust Litigation*, 231 F.R.D. 52 (D. Mass. 2005); *Spark v. MBNA Corp.*, 289 F. Supp.2d 510 (D. Del. 2003); *In re Warfarin Sodium Antitrust Litigation*, 212 F.R.D. 231 (D. Del. 2002); *In re Charter Communications, Inc.*, MDL 1506, 02cv1186 (E.D. Mo. 2005); *Curry v. Fairbanks Capital Corp.*, 03cv10895 (D. Mass. 2004); *Azizian v. Federated Department Stores, Inc.*, 03cv3359 (N.D. Cal. 2005); *In re Serzone Products Liability Litigation*, MDL 1447 (S.D.W.V. 2005); *In re Visa Check/Mastermoney Antitrust Litigation*, 96cv5238 (E.D.N.Y. 2004); *In re Compact Disc Minimum Advised Price Antitrust Litigation*, MDL 1361 (D. Me. 2003); *Tenuto v. Transworld Systems, Inc.*, 2002 WL 188569 (E.D. Pa.); *In Re Allstate Fair Credit Reporting Acti Litigation*, (M.D. Tenn.); *Lipuma v. American Express*, 04cv20314 (S.D. Fla.); *Clark v. Experian Information Solutions, Inc.*, 2004 U.S. Dist. LEXIS 28324 (D.S.C.); *Schwartz v. Citibank*, 00cv75 (C.D. Cal.); *Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001); *In re PayPal Litigation*, 2004 U.S. Dist. LEXIS

14

22470 (N.D. Cal.); *Benacquisto v. American Express*, 00cv1980, (D. Mn); *In re Disposable Contact Lens Antitrust Litigation*, MDL 1030 (M.D. Fla.); *Galanti v. The Goodyear Tire & Rubber Company*, 03cv209 (D.N.J.); *In re NE Mutual Life MDL, et al.*, 96cv11534 (D. Mass.); *In Re Daimlerchrysler, et al.*, 00cv993 (D. Del.); *In re Rite Aid Corp.*, MDL 1360 (E.D. Pa.); *Schwartz v. Dallas Cowboys Football*, 97cv5184 (E.D. Pa.); *Zawikowski v. Beneficial National Bank*, 98cv2178 (N.D. Ill.); *Synfuel Technologies, LLC v. Airborne Express, Inc.*, 02cv324 (S.D. Ill.); *Meyenburg v. Exxon Mobil Corp.*, 05cv15; *In re: MCI-Subscriber Telephone Rates Ligitaion*, MDL 1275, 99cv1275 (S.D. Ill.); *Lindmark v. American Express*, 00cv8658 (C.D. Cal.); *Roasted v. First USA Bank*, 97cv1482 (W.D. Wash.); *In re: Managed Care, et al.*, MDL 1334 (S.D. Fla.); *Varacallo v. Massachusetts Mutual Life Insurance Company*, 04cv2702 (D.N.J.); *Landreneau v. Fleet Bank (RI) National Ass'n*, 01cv26 (M.D. La.); *Barnes v. FleetBoston Financial Corp.*, 2006 U.S. Dist. LEXIS 71072 (D. Mass.); *In re Royal Ahold N.V. Securities & ERISA Litigation*, 461 F. Supp. 2d 383 (D. Md. 2006); *Lachance v. United States Smokeless Tobacco*, no. 2006-2007 564. (N.H. 2006).

Of these cases, the majority were overruled or denied by the court. Some examples include *Taubenfeld v. Aon Corp.*, where the court overruled Pentz's client's objection. "The objector's quarrel with the portion of lead counsel's award pertaining to reimbursement for expenses barely warrants comment." *Taubenfeld* at 600. Also, in *In re Lucent Technologies, Inc. Securities Litigation*, where the court ruled against the objectors and found that Pentz's client's objection had misstatements of facts and was misleading. *Id.* In *Spark v. MBNA Corp.*, the Court ruled against Pentz's client's objection and found the objector's, "opposition to class counsel's fee petition appears to be nothing more than an attempt to receive attorneys' fees." *Id.* In *In re Warfarin Sodium Antitrust Litigation*, the Court overruled Pentz's specific objections and found that Pentz's client seemed to have a misunderstanding of the Settlement.

In *In re Compact Disc Minimum Advised Price Antitrust Litigation*, the Judge called Pentz's obejction, "groundless," called Pentz a "professional objector" and required Pentz to post an appeal bond, which he never ended up posting. The district court required the objector, who was represented by Pentz, to post a bond because that appeal "might be frivolous," and because imposition of sanctions on appeal pursuant to Rule 38, was "a real probability." The court specifically concluded that a bond for "damages resulting from delay or disruption of settlement administration caused by a frivolous appeal may be included in a Rule 7 bond." *Id.*, *5. Mr. Pentz and his client voluntarily dismissed their appeal thirteen days later. (MDL 1361 Docket item number 325.) The Court in this case specifically noted, "I have previously noted that Attorney Pentz…filed a groundless objection following the fairness hearing, ... and he appears to be a repeat objector in class action cases. *See, e.g.*, *Spark v. MBNA Corp.*, 48 Fed. Appx. 385, 386 (3d Cir. 2002) (listing Mr. Pentz, from The Objectors Group, as counsel for objectors); *Tenuto v. Transworld Sys.*, 2002 U.S. Dist. LEXIS 1764, 2002 WL 188569 (E.D. Pa. Jan. 31, 2002), at *2 (same)." *Id.* at 6.

In *In re Disposable Contact Lens Antitrust Litigation*, the Court ruled against Pentz's client, found that counsel for the objector, Pentz, never even read the case file in its entirety and that the objector's ignorance would prejudice the parties if allowed to intervene. In *Barnes v. FleetBoston Financial Corp*, the Court ruled against a portion of the objection and found for a bond for the remainder of the objections. Further, the Court found objector, "Feldman and her attorney, John Pentz (who is also her son-in-law) are professional objectors…" *Id.* Finally, in *In re Royal Ahold N.V. Securities & ERISA Litigation*, the Court overruled Pentz's objection and further held, "Pentz is a professional and generally unsuccessful objector…" Also, "In summary, the Pentz/Tsai objection was not well reasoned and was not helpful." *Id.*

Undoubtedly, Pentz's "objections and appeals are not truly made to advance the interest of the class members. Pentz has admitted that "the bulk of his income does not come from court-awarded fees," and that the payments he receives from the parties to drop his objections "usually dwarf court awards." "So how does Pentz make a living? He refuses to generalize, arguing that every case is unique. But he will acknowledge that the bulk of his income does not come from court-awarded fees…[T]hat kind of fee is the exception rather than the rule, Pentz says. Instead, objectors make most of their money when class counsel pay them to drop their objections. Pentz concedes that payments from class counsel usually dwarf court awards. Joe Whatley of Birmingham-based Whatley Drake, who faced off with Pentz in three different cases, says he has always paid Pentz to drop objections without making changes to the settlement. 'It's like having to pay a tax,' Whatley says." Lisa Lerer, "Fringe Player, The Objector, John Pentz, Class Action Fairness Massachusetts, Sudbury, Massachusetts," Litigation 2004, a supplement to The American Lawyer & Corporate Counsel, Oct. 1, 2004. Pentz does not dispute that he is a Professional Objector and even if he did there is ample evidence that he is and that his objections are not received favorably by the Courts.

15

Pentz has also objected in three recently reached Wal-Mart Wage and Hour settlements cases. *See Iliadis, et al. v. Walmart Stores, Inc., et al.* (Superior Court of New Jersey, Middlesex County, Docket No. MID-L-5498-02), on behalf of objector Charles Ogelsby; *Ouellette, et al. v. Wal-Mart Stores, Inc., et al.* (Circuit Court for Washington County, Florida, File No. 67-01-CA-326), on behalf of objectors John Buck and Gary Williamson; and MDL 1735, on behalf of objectors Fatima Andrews and Stephanie Swift. In *Iliadis,* Pentz's client's objection was overruled by the Court. He filed an appeal on January 6, 2010. In *Ouellette,* Pentz's client's objection was also overruled by the Court and he did not file an appeal.

On October 5, 2009, Plaintiffs filed an Unopposed Emergency Motion for an Expedited Deposition Schedule. *See* Docket no. 441, Unopposed Emergency Motion for an Expedited Deposition Schedule, October 5, 2009.

Also on October 5, 2009, Plaintiffs acted to take the deposition of Objector Swift. *See* Docket no. 441-5, Notice to Take Deposition of Stephanie Swift (hereafter, "Deposition Notice"). A copy of the Deposition Notice was served upon her counsel through electronic service on October 5, 2009. The Deposition Notice provided Swift with notice that her deposition was to be taken on October 7, 2009, at 2:00 p.m. at the Law Office of Andrew Krembs, 55 Public Square, Suite 1700, Cleveland, Ohio 44113. *Id.* In addition, the Deposition Notice provided that Class Counsel agreed the location could be moved to Pentz's office. *Id.*

Due to a change of circumstances, Plaintiffs moved the Deposition from October 7th to October 12th. *See* Docket no. 447, Plaintiffs' Unopposed Amended Motion for an Expedited Deposition Schedule and Memorandum in Support, October 6, 2009. *See also* Docket no. 448, Order granting Plaintiffs' Unopposed Amended Motion for an Expedited Deposition Schedule and Memorandum in Support, October 6, 2009.

Plaintiffs again formally took action to take the depositions of Objector Swift on October 6, 2009. *See* Docket no. 447-2, Notice to Take Deposition of Stephanie Swift, October 6, 2009. The Deposition Notice provided Swift with notice that her deposition was to be taken on October 12, 2009, at 2:00 p.m., Law Office of Andrew Krembs, 55 Public Square, Suite 1700, Cleveland, Ohio 44113. A copy of the Deposition Notice was served upon her counsel, Pentz, through electronic service on October 6, 2009. In addition, the Deposition Notice provided that Class Counsel agreed the location could be moved to Pentz's office. *Id.*

On October 9, 2009, Judge Polster of the United States District Court for the Northern of Ohio Eastern Division granted a motion to compel the attendance of Objector Swift at the October 12, 2009 deposition. *See* Attachment E, Ohio Order Granting Complaint for Discovery, October 9, 2009.

Also, on October 9, 2009, Process Server Clint Massengale (hereafter, "Massengale"), an employee of New Age Delivery, Courier and Freight, attempted to serve the Deposition Notice and Subpoena personally upon Swift at her alleged apartment at 1930 Noble Road, number 203 in East Cleveland, Ohio. *See* Attachment F, Docket no. 467, December 12th, 2009 Deposition of Clint Massengale at 4, October 18, 2009 (hereafter, "Massengale Deposition"). *See also* Attachment G, Subpoena of Stephanie Swift and Return of Process Server. When he first attempted service, Massengale rang the buzzer, got access into the house, knocked on the Swift's door and stayed for around an hour waiting for her. Massengale Deposition at 5. While Massengale was knocking on Swift's apartment door, a gentleman in the building told him that nobody lived in that apartment. *Id.* at 6. After the gentleman finished talking Massengale, Massengale witnessed him enter the apartment next door to the one he was knocking on. *Id.* Massengale informed his employer that nobody was answering the door and was instructed to

tape the subpoena to the door. *Id.* at 7. While he was taping the subpoena to the door, a woman who lived across the hall from the apartment opened informed him that nobody lived in that apartment and asked him if he was moving in. *Id.* Massengale concluded based on her information and the neighbor's information that Swift's address was not valid. *Id.* Additionally, in response to the Request of Legal Address Needed for Service of Legal Process to the United States Post Office, Swift was found to be listed at 1107 Brannon Road, Cleveland, Ohio, 44112 and to never have filed a change of address form for that address. *See* Attachment H, Request of Legal Address Needed for Service of Legal Process to the United States Post Office, December 2, 2009. The form specifically states her, "name is good at [this] address." *Id.*

Notwithstanding the fact that through counsel she provided a false address to the Court,[25] Swift must be deemed as having been provided with notice that Plaintiffs wished to depose her because the Deposition Subpoena which was served on their counsel again provided Swift with notice that her deposition was to be taken on October 12, 2009, at 2:00 p.m., Law Office of Andrew Krembs, 55 Public Square, Suite 1700, Cleveland, Ohio 44113. Swift failed to appear for her Deposition or to respond personally through her counsel.

On October 19, 2009, Swift filed a Notice of Non-Appearance informing the Court she would not attend the Fairness Hearing. *See* Docket no. 468, Notice of Non-Appearance.

On October 19, 2009, this Court held the Final Fairness Hearing in strict accordance with its order of Notice. *See* Docket no. 482, Minutes of the Court. At the hearing, the Court received evidence and heard arguments. The Court also reserved time and expressly invited

---

[25] Plaintiffs intend to seek sanctions for this serious and material misrepresentation and have served the "safe harbor letter" required by Fed. R. Civ. P. 11(c)(2). As a courtesy to Objector Swift and her attorney, Plaintiffs' counsels intend to mark the hearing in those questions on the same date and time as the hearing on this bond and/or the hearing on the sanctions requested for providing a false address to this Court and counsel so that they will only be required to appear once.

comments from the Objectors and anyone else that wished to be heard. In fact, during hearing, the Court expressly stated that it wished the Objectors were present to have considered the evidence presented and the matters discussed at the Final Fairness hearing. Again, neither the Objector nor her counsel appeared at the Fairness Hearing.

On October 19, 2009, in its Final Approval Order, and after carefully considering and expressly taking into account the evidence offered within the voluminous filings, the evidence offered at and subsequent to the hearing, and its own expansive institutional knowledge and grounded understanding of the intricacies of this litigation and the efforts of the counsels for the respective parties as well as the history of this litigation, this Court effectively overruled Swift's Objections by its findings and rulings. *See* Final Approval Order at 4, Docket no. 491 (hereafter, "Final Approval Order"). *See also* Minutes of the Final Approval Hearing at 3, Docket no. 482. Providing further notice that it had carefully considered and was denying the objections, the Court specifically held, "In the event that any of these objectors appeal this Final Order, the Court will promptly conduct a hearing to determine the need for each appellant to post a bond under Fed. R. App. Proc. 7." *See id.* at p. 4, ¶ 4.

The deadline for receipt of all claim forms was November 9, 2009. *See* Settlement Agreement at ¶ 8. Objector Swift filed a claim for compensation with settlement claims administrator, Rust Consulting.[26] She has not however explained on what basis she has standing to appeal the award of attorney fees.

On November 2, 2009, this Court approved Plaintiffs' Motion for Final Approval of Settlement and entered final judgment, including an award of attorney's fees, expenses and incentive payments to the Plaintiffs. *See* Docket no. 491, Final Approval Order.

---

[26] *See* Declaration of Amanda Myette, Rust Consulting, at ¶ 4, December 3, 2009.

19

After an additional hearing, and taking into consideration additional submissions, evidence and the receipt of additional expert opinion from the preeminent authority on the subject in America, Prof. Charles Silver (hereafter, "Professor Silver"), the Court subsequently approved the amount of attorney's fees and incentive payments for the class representatives on November 20, 2009.[27] *See* November 20, 2009 Minutes, Docket no. 520. *See also* Docket no. 507, Attachment A to Supplement Declaration of Robert J. Bonsignore in Support of Motion for Award of Attorneys Fees and Expenses and Incentive Awards Relating to Proposed Settlement with Defendant Wal-Mart, Expert Report of Professor Charles Silver Concerning the Bearing of the Claim Rate on the Fee Award (hereafter, "Silver Declaration"), November 17, 2009.

On December 1, 2009, Objector Swift filed her appeal. *See* Notice of Appeal, Docket no. 522. In doing, so she never requested the Court to allow her to supplement her original filing which was placed on file before Plaintiffs approval briefing and did not attend either the Final Fairness Hearing or the follow up hearing on attorney fees and incentive awards. She did not order a copy of either transcript prior to filing her appeal. Plaintiffs request the Court to take Judicial Notice that she through counsel did not download a copy of *any* of the related briefing prior to filing her appeal.

At this point, per this Court's Order of November 2, 2009, ruling that a prompt resolution on the assessment of a bond would be afforded the class if necessary, Plaintiffs have moved for an appeal bond pursuant to Fed. R. App. Proc. 7. *See* Docket No. 491, ¶ 4.

## II.  GOVERNING RULES AND STANDARD OF REVIEW

Rule 7 of the Federal Rules of Appellate Procedure (hereafter, "FRAP 7") empowers a United States District Court in its discretion to "require an appellant to file a bond or provide

---

[27] Objector Swift, through counsel, was noticed, was also reasonably notified of the subsequent hearing and chose

other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. The purpose of an appeal or cost bond in circumstances such as the present is "to protect the amount the appellee [class] stands to have reimbursed," including the costs of delaying payment of the judgment, should the appeal ultimately fail. *See Fleury v. Richemont North America, Inc.*, 2008 U.S. Dist. LEXIS 88166, at *18-19 (C.D. Cal. 2008) (further citations omitted). A Federal District Court retains jurisdiction after the filing of an appeal to issue orders regarding the filing of bonds under FRAP 7.[28] While FRAP 7 does not expressly provide a list of factors to consider in determining whether to require a bond, other courts, including the Northern District of California, have relied upon certain well accepted factors such as: (1) the appellant's financial ability to post a bond; (2) the risk that the appellant would not pay the appellee's costs if the appeal loses; (3) the merits of the appeal;[29] and (4) whether the appellant has shown bad faith or vexatious conduct.[30] *See Fleury*, 2008 U.S. Dist. LEXIS 88166, at *19. The District Court's findings and rulings on the amount of any cost and/or appeal bond are subject to an abuse of discretion standard of review.[31]

Additionally, post-judgment interest is mandatory for any money judgment pursuant to 28 U.S.C. § 1961.[32] The purpose of post-judgment interest is to compensate a successful

---

not to attend or offer any supplement to her original Objection.

[28] *Venen v. Sweet*, 758 F.2d 117, 120 n.2 (3d Cir. 1985).

[29] *See also In re RBFC ONE, LLC v. Timberlake*, 2005 U.S. Dist. LEXIS 19148, at *3-4 (S.D.N.Y. 2005); *Tri-Star Pictures, Inc. v. Unger*, 32 F. Supp. 2d 144, 147-49 (S.D.N.Y. 1999).

[30] It is the impression of the practicing bar that this factor has not been favorably received by the Ninth Circuit. *See Azizian*, 499 F.3d at 961.

[31] *Azizian*, 499 F.3d at 955 (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1028 (9th Cir. 2001) (as amended)). *See also In re Broadcom Corp. Secs. Litig.*, 2005 U.S. Dist. LEXIS 45656, at *6-7 (C.D. Cal. 2005) ("[t]he determination of the amount of a bond necessary to ensure payment of costs on appeal is left to the discretion of the district court"); *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13627, at *2 (**C.D. Cal.** 2005) ("Heritage Bond") (citing *Young v. New Process Steel*, 419 F.3d 1201, 1203 (11th Cir. 2005)).

[32] *Donovan v. Sovereign Secur., Ltd.*, 726 F.2d 55, 58 (9th Cir. 1984).

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Stephanie Swift*

plaintiff for not being paid during the time of the award and payment.[33]  Not only is post-

judgment interest assessable upon the judgment, but in certain circumstances where a fee shifting

provision is applicable, it is also separately to be determined upon attorney's fees[34] and costs.[35]

The interest assessed for each component of the judgment is calculated from the "date of the

entry of the judgment."[36]  The Plaintiffs, through the counsels appearing below who join in this

request, expressly make no such claim for interest on fee shifting fees and costs here.

Further, Rule 39(e) of the Federal Rules of Appellate Procedure (hereafter, "FRAP

39(e)") provides: "The following costs on appeal are taxable in the district court for the benefit of

the party entitled to costs under this rule: (1) the preparation and transmission of the record; (2)

the reporter's transcript, if needed to determine the appeal; (3) the premiums paid for a

supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the

notice of appeal." *See In Re Broadcom Corp. Securities Litigation, 2005 U.S. Dist. LEXIS 45656,*

at *7-8 (C.D. Cal. 2005).  Rule 39(c) of the Federal Rules of Appellate Procedure (hereafter,

"FRAP 39(c)") provides that a Court of Appeals must fix a maximum rate for taxing the costs of

producing necessary copies of a brief, an appendix or copies of records authorized by FRAP

30(f).  Fed. R. App. P. 39(c).

## III. ARGUMENT

The Swift appeal is frivolous because in the context of this settlement and approval

process and related orders as well as all attendant facts articulated or evidenced thereon the result

of the appeal is obvious and the claims of error are wholly without merit.  *Dewitt v. Western*

---

[33] *Pace Design & Fab. v. Stoughton Composites,* 1997 U.S. App. LEXIS 35780, at *2-3 (9th Cir. 1997) (citing *Donovan,* 726 F.2d at 58); *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835 (1990).
[34] *Perkins v. Standard Oil Co.,* 487 F.2d 672, 676 (9th Cir. 1973).
[35] *Air Separation v. Underwriters at Lloyd's of London,* 45 F.3d 288, 290 (9th Cir. 1994) (quoting *Wheeler v. John Deere Co.,* 986 F.2d 413, 415 (10th Cir. 1993)) ("this court has determined that once a judgment is obtained, interest thereon is mandatory without regard to the elements of which that judgment is composed").

*Pacific* 710 f.2d 1448, 1451 (9th Cir. 1983). Under the facts and circumstances presented here, as well as those attendant to the Court's granting of Final Approval and its issuance of the Final Judgment following a fairness hearing, the settlement reached in this case, was fair, reasonable, and equitable. *See* Final Approval Order at 4, Docket no. 491. *See also* Minutes of the Final Approval Hearing at 3, Docket no. 482. So was the award of fees.

In granting Final Approval, this Court carefully weighed all of the arguments, submissions and evidence in the case, specifically including the Swift Objection and, after making detailed findings, concluded that all of the requirements necessary to grant final approval had been reasonably satisfied and that Final Approval should be granted forthwith. *See id.* The same is true for the award of fees except that two hearings were held. Thus, Plaintiffs are entitled to the imposition of an appeal bond as a matter of law, and there is nothing in the record that warrants carving out an exception for either Objector Swift or Professional Objector Pentz. In fact, under the circumstances presented, to do so would be an abomination of justice.

Objector Swift's appeal forces costs and delay[37] in the way of the class members' receipt of the economic and injunctive recovery provided by the Settlement and disrupts the implementation of the Court's Judgment and Orders.[38]  To protect the interests of the Plaintiffs, Objector Swift should be required to post an appeal bond in accordance with federal law guaranteeing all costs and interest.

As to the costs that are required to be included in a bond, Plaintiffs request the following:

1.) $4,971.97 as the cost for the preparation and transmission of the record, specifically, the costs of printing and copying briefs and other submissions. *See* Declaration of

---

[36] *See* 28 U.S.C. § 1961.

[37] As described above, Plaintiffs believe the delay to be needless.

[38] Swift's conclusory offering is devoid of any meaningful content, Together with her failure to appear at her deposition or the fairness hearing or offer any reason for her failure to appear and her failure to offer any supplement are greatly disturbing to the Plaintiffs because they evidence a lack of seriousness to her Objection.

Robert Bonsignore in Support of Plaintiff's Motion for Appeal Bond for Objector Stephanie Swift at Paragraph 25.

2.) $1,403.90 as the cost for reporter's transcripts. *See* Declaration of Robert Bonsignore in Support of Plaintiff's Motion for Appeal Bond for Objector Stephanie Swift at Paragraph 22.

3.) $200,000.00 for the administrative fees/costs associated with this appeal. *See* Declaration of Amanda Myette, Exhibit V to Plaintiff's Motion for Appeal Bond for Objector Stephanie Swift. Swift has advanced that administrative costs are an improper component of an appellate bond. *See* Docket No. Docket no. 556, Appellants Jessica Gaona, Stephanie Swift, Deborah Maddox and Fatima Andrews' Joint Response to Plaintiffs' Nancy Hall's Motion for a Bond for Appeal, January 4, 2010, at 2. In the alternative, Plaintiffs request that this Court assess $1,677,235.36, the cost of notice. *See* Attachment A, Affidavit of Amanda J. Myette Relating to Cost of Additional Class Notice Relating to the Appeal.

4.) $225.00 for the cost of the special process server and $60.00 for the non-appearance charge. Also, $129.92 for the court reporter and transcript from the Deposition of Process Server Clint Massengale. This is a total of $414.92. *See* Declaration of Robert Bonsignore in Support of Plaintiff's Motion for Appeal Bond for Objector Stephanie Swift at Paragraph 24.

5.) $401,831.00 as the estimated interest lost on the floor of $65 million guaranteed payment assuming median time on appeal of 19 months. *See* Declaration of John Ward, Ph.D., at ¶ 7, Table 1. *See also* Declaration of Wendy Lascher, J.D., at ¶ 19, Exhibits III and IV respectively to Plaintiff's Motion for Appeal Bond for Objector Stephanie Swift.

The total requested is $2,285,857.15

## A.     The Court has the Power to Require Swift to Post a Bond Under the Circumstances at Bar

### 1.     Objector Swift Submitted No Financial Information to Indicate She is Financially Unable to Post Bond Despite the Opportunity to Provide the Court with this Information

The first factor, the appellant's financial ability to post a bond, poses no obstacle to the requested assessment of a bond based on the record before the Court. In *Fleury*, the District Court held the first factor weighs in favor of a bond if, "there is no indication that plaintiff is financially unable to post bond." *See Fleury*, 2008 U.S. Dist. LEXIS 88166, at *22. Here, like

24

the objector in *Fleury,* Swift has submitted no financial information to indicate that she is

financially unable to post a bond despite the opportunity to do so when she filed her appeal. *See*

*id.* at *21. Objector Swift's lack of submission regarding any financial inability to post bond

clearly weighs in favor of a bond.[39]

### 2.   Objector Swift is Not a Resident in a Ninth Circuit State, Raising Significant Difficulties in Collecting Appellate Costs

The second factor, the risk that the appellant would not pay the appellee's costs if the

appeal is unsuccessful, also weighs in favor of a bond. In *Fleury,* the District Court held the

second factor weighs in favor of a bond if the Objector does not reside in a state within the

Circuit making it more, "difficult for the Settling parties to collect their costs should they prevail

on appeal." *Id.* at *22. Objector Swift is a resident of Ohio, which is not a state within the Ninth

Circuit. If the appeal is unsuccessful, Plaintiffs will have significantly increased difficulties

collecting their costs because Swift does not reside in the Ninth Circuit. Although entering this

litigation recently, Swift and her counsels have already demonstrated her lack of respect for this

Court and the judicial system several times. In the first place Swift knowingly provided a false

address under oath.[40] She later did not appear for a deposition despite the fact that she was

ordered to do so by Judge Polster of the United States District Court for the Northern of Ohio

Eastern Division. *See* Attachment E, Ohio Order Granting Complaint for Discovery, October 9,

2009. Her counsels were served and either they made nop attempt to reach their client or advised

her not to appear. They themselves failed to appear for the deposition. *See* Docket no. 467,

---

[39] *Chiaverini, Inc. v. Frenchie's Fine Jewelry, Coins & Stamps, Inc.,* 2008 U.S. Dist. LEXIS 45726, at *7 (E.D. Mich. 2008) ("There is no indication that plaintiff is financially unable to post bond, and thus this factor weighs in favor of a bond").

[40] Her Counsels did not adhere to the guidelines imposed by Rule 11 because they did not adequately investigate and then later acted to suborn her perjury by vouching for her bad address however this argument and opinion is only offered only anecdotally at this time and is not offered to support the assessment of the bond.

December 12th, 2009 Deposition of Clint Massengale at 4, October 18, 2009. Given her sketchy track record and crafty use of addresses, the class members of MDL 1735 are entitled to be afforded the intended protections of appeal bonds.

Swift's choice to substitute her and her Counsels' judgment for that of this Court and the remainder of the Class was voluntary. In doing so, she knowingly opted to force delay and other costs on the remainder of the class despite other alternatives that would not have imposed the economic loss on others. Should the Appeal be dismissed, the Class members are entitled and will seek to be compensated for their ascertainable economic loss. Absent the assessment of a bond, this process will be lengthy and uncertain. All Americans are in rocky financial times. Because of that consideration, and considerations that apply at all times, there is no guarantee that Swift's ability to earn or liquid assets as possessed now will be available to pay the funds that will be due the class in the event that the appeal fails will be available two years from now.

The request for security is reasonable, necessary and falls squarely within the public policy supporting the assessment of bonds. On balance, fairness requires the Class, as well as Swift,[41] be offered protection. All reasonable remedies provided by law to address the future expected obstacles to the prompt resolution of the future claim against Objector Swift in the event her appeal fails should be granted at this time. Objector Swift's lack of residence in the Ninth Circuit and the other considerations including the public policy considerations, weigh in favor of the assessment of the bond requested of Swift. In contrast, no public policy considerations favor the certain new round of litigation that would certainly ensue following Swifts unsuccessful appeal seeking the collection of the economic loss due. It is certainly more

---

[41] Plaintiffs place stock in the ability of the trial courts to weigh all factors at ground zero and avoid the punitive assessment of bonds, while at the same time accepting the perfect logic that certain decisions must be left to the appellate courts to preserve both the appearance of judicial neutrality and judicial neutrality in fact.

prudent, under the totality of the circumstances presented, here to extend to the Appellee Class the protections offered by law through the assessment of the reasonable bond requested here.

### 3.   Objector Swift's Appeal is Not Likely to Succeed

The third factor, the merits of the appeal, also weighs in favor of a bond.  In Plaintiffs' opinion, and as evidenced by the findings in support of Final Approval and Fees and also the absence of argument and fact in support, the objection is meritless.  In *Fleury,* the District Court held the third factor weighs in favor of a bond if, after the Court has considered each of the objections, it finds them meritless and not likely to succeed on the merits of her appeal.  *See id.* at *23.  In *Fleury*, the court noted when final approval was granted, the objector's objections were reviewed, found meritless and final approval was granted.  *Id.* at *9, 23.  The court in *Fleury* held that the lack of likelihood of success on the objections' merits favored a bond requirement.  *Id.* at 23.  While the *Fleury* court did consider the merits of the objections, it refrained from considering any of the objections' potential bad faith in consideration of the *Azizian* holding.  *Id.* at 23-24, fn. 3.  Here, Plaintiffs believe the third factor weighs in favor of a bond for the reasons but request that the Court not consider any potential bad faith.

Importantly, Plaintiffs expressly withhold the offering any included evidence of bad faith in advancing this request for a bond. [42]  Any such offering herein is merely superfluous to this

---

[42] We are cognizant of the Ninth Circuit Court of Appeals opinion in *Azizian* and consciously avoid advancing, in support of this bond, arguments that run counter to its holding.  *See Azizian* at 961.  ("We agree with the D.C. Circuit that the question of whether, or how, to deter frivolous appeals is best left to the courts of appeals, which may dispose of the appeal at the outset through a screening process, grant an appellee's motion to dismiss, or impose sanctions including attorney's fees under *Rule 38*.")  *See also In re Am. President Lines,* 779 F.2d 714, 717 (D.C. Circuit 1985).  Allowing district courts to impose high *Rule 7* bonds on where the appeals *might* be found frivolous risks "impermissibly encumber[ing]" appellants' right to appeal and "effectively preempt[ing] this court's prerogative" to make its own frivolousness determination.  *Id. at* 717, 718; *See also Adsani* v. *Miller,* 139 F.3d 67, 79 (2nd Cir. 1998) ("[A]ny attempt by a court at preventing an appeal is unwarranted and cannot be tolerated.") (quoting *Clark v. Universal Builders, Inc.,* 501 F.2d 324, 341 (7th Cir. 1974))."  Any overlap of argument or the presentation of facts not favored by that opinion is not intentional attempt to circumvent that ruling.  However, should this bond be appealed we do intend to request the Appeals Court to revisit and refine that decision to reflect

---

27

motion, although it can and will be used in support of a later Rule 38 request at the Appellate Court level.

In reviewing this third factor in the proper context of assessing a bond in the Ninth Circuit, the Court may consider Swift's bases for appeal, that: 1) The Settlement's guaranteed floor of $65 million is an inadequate settlement for 29 states and; 2) Attorney's fees should not exceed 25% of the Floor, $65 Million. *See* Docket no. 382, Swift Objection.

Similar to *Fleury,* the District Court here has already reviewed and carefully considered the basis set out in Swift's objection, and in its Final Approval Order, this Court made specific findings that effectively addressed and overruled each one. *See* Final Approval Order at 4. *See also* Minutes of the Final Approval Hearing at 3, Docket no. 482. The fact that during hearing, the Court expressly stated that it wished the Objectors were present to have considered the evidence presented and the matters discussed at the Final Fairness hearing. This Court's sustaining the objection of the Home Office Class already evidences the respectful and judicial, tempered view of the objectors and objections that have become part of this settlement process.

Plaintiffs believe that, in addition to taking into account the many express findings that do away with the positions advanced by Swift, it is permissible to take into account the fact that Swift offered absolutely no factual basis or legal basis in support of her objections. *See* Docket no. 382, Swift Objection. Swift failed to address, rebut or even acknowledge any of the many factors offered in support of the settlement. *Id.* The same is true as to the many factors upon which the Court relied in making its related findings.

The requirements for fee approval have already been previously outlined in detail for this Court and are summarized again below. *See* Docket no. 437, Memorandum of Points and

the realities of present day class action practice and the damage that professional objectors inflict on our system of

Authorities in Support of Plaintiffs' Motion for Award of Attorneys' Fees Reimbursement of

Expenses and Incentive Awards. *See also* Final Approval Order, 9-13.

Objector Swift advanced that: 1) The Settlement's guaranteed floor of $65 million is an

inadequate settlement for 29 states and; 2) Attorney's fees should not exceed 25% of the Floor,

$65 Million. *See* Docket no. 382, Swift Objection. Each of these objections are evaluated

below.

> **a.     After Extensive Review and Consideration by this Court, the
> Settlement Amount was Found Fair, Reasonable and Adequate
> and was both Preliminarily and Finally Approved.**

Swift's first objection, that the guaranteed Floor amount in the Settlement Agreement,

$65 Million, was inadequate for 29 states is in context, illogical and – by way of an objective

review of her submission – unsupported and uninformed. The obvious result is that she will lose

because her appeal is wholly without merit.

Wal-Mart agreed to pay a Floor of Sixty-Five Million Dollars ($65,000,000) and

guarantee the availability of Eighty-Five Million Dollars ($85,000,000) for the benefit of the

Settlement Class. The Settlement was the result of vigorous arm's length negotiations between

experienced counsels for the parties[43], after years of investigation, discovery, and thorough

analysis of the strengths and weaknesses of the parties' respective positions. *See* Docket no. 426,

Memorandum in Support of Motion for Final Approval of Settlement with Defendant Wal-Mart

at 10, October 1, 2009 (hereafter, "Final Approval Memo"). Lead Counsels for the parties,

---

Civil Justice.

[43] The lead negotiators for the parties were Brian Duffy for Wal-Mart and Robert Bonsignore for the Plaintiffs. Both

have extensive experience in complex litigation and class actions and have served on many occasions. Both have

served as lead counsel in other class action cases including Multi District Litigation cases. Both also have extensive

trial experience.

Robert Bonsignore and Brian Duffy, discussed settlement on and off since the early stages of the litigation. *Id.* The resulting Settlement was fair, adequate, and reasonable, and satisfied the standard for final approval. *See* Final Approval Order.

The Settlement represents an excellent recovery for the Class Members. Given the combined monetary and other relief, there is no reasonable doubt that the Settlement is fair, reasonable and adequate pursuant to Rule 23(e)(1)(c). Given the risks Class Plaintiffs faced in proceeding with the Action, the results achieved through this Settlement are remarkable. Research has established that the Proposed Settlement is the largest wage and hour case based settlement following the denial of class certification in United States history. *See* Final Approval Memo at 12-13. More importantly, the Settlement clearly fell within the range of recovery that the Court reasonably determined as acceptable. *Id.*

After the Court carefully considered the totality of the evidence and briefing including the submissions and issues raised by the objectors, it found that potential obstacles to obtaining a successful result included: 1) losing at the Appellate level the pending appeal of this Court's denial of class certification; 2) Defendants' certain further appeal of any order granting class certification; 3) Defendants' certain further motions to dismiss; 4) the possibility of an adverse ruling in any summary judgment motion; 5) the possibility of an adverse ruling at trial; 6) the possibility of an adverse rulings post trial;  and 7) the risk of no recovery or a limited recovery from the Defendants. *Id.* at 13. Regardless of which risk set forth above is considered, each carried with it the certainty that the delivery of the compensation and the other benefits of the Settlement offered here would be delayed by years or never be received at all.  There is no reasonable or objective basis to question that the Settlement is in the best interest of the Class. *Id.* Further, without this Settlement, plaintiffs in Ohio would have no realistic ability to recover

against Wal-Mart because class certification was denied in this jurisdiction. For starters, Swift did not address or acknowledge a single one of the above factors. Her objection goes downhill from there because it lacks any substance or intellectually honest argument leading to the eventual no show at the deposition and non appearance at the Final Fairness hearing and the subsequent hearing on fees and incentive awards.

Finally, in finding that the Settlement was fair, adequate and reasonable, this Court expressly made specific findings that established it had carefully considered and objectively evaluated of all the evidence submitted by the Parties, including the declarations of experts, the Settlement Agreement, the arguments of counsel, the evidence offered at the Final Approval hearing, records and proceedings in this case. The specific findings also expressly included this Court's own knowledge and familiarity with all the proceedings and filings in this action, as well as the contents and concerns presented through the submissions of the objectors. In finding that the Settlement was fair, adequate, and reasonable and that the proposed Settlement warranted final approval pursuant to Rule 23 of the Federal Rules of Civil Procedure and the FLSA, it at all times placed first the interests of the Settlement Class first. Among other matters that the Court expressly addressed in its findings, it found that the settlement resulted from vigorously contested litigation, including extensive discovery, motion practice, and good-faith arm's length negotiations between the parties, and was in the public interest. *See* Final Approval Order at 8.

The Court expressly reviewed and made considered findings on: (a) the strength of the plaintiffs' case; (b) the risk, expense, complexity and likely duration of further litigation; (c) the risk of maintaining class action status throughout the trial; (d) the amount offered in settlement; (e) the extent of discovery completed, and the stage of the proceedings; (f) the experience and views of counsel; (g) the presence of a governmental participant; and (h) the reaction of the class

members to the proposed settlement.  After carefully considering each of these factors, the Court found that this settlement provides substantial benefits to the class members through both economic and injunctive relief.[44]  *Id.*  Further, this Court found that the Settlement may be presumed to be fair, because it found that it followed sufficient discovery and genuine arm's length negotiation.  *See id.*[45]  Once again, Swift did not address or acknowledge a single one of the above factors that the Court was obliged to and did carefully scrutinize and opine upon.

This Court further found that the Settlement was reached after extensive negotiations with the Honorable Layn R. Phillips (Ret.), who submitted a declaration in support of preliminary approval, and was otherwise supported by the Declarations of others.  *See* Final Approval Order at 9.

Additionally, this Court found this case was incredibly risky from inception and the result exceptionally favorable to the Class, particularly in light of this Court's denial of class certification, which made the chance for the Class Members to obtain any redress slim.  *Id.*  The Court additionally found discovery was extensive in this litigation, and that counsel conducted the necessary and appropriate investigation to properly evaluate this case and settlement value.  *Id.*  The Court also found that the fact that none of the governmental agencies receiving notice, which includes all of the State Attorney Generals and Departments of Labor throughout the United States, and Puerto Rico, objected to the settlement, and that only 14 Class Members had issue with the terms, was overwhelming evidence of the fairness.  *Id.*

---

[44] *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Officers for Justice v. Civil Serv. Comm'n of the City & County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).
[45] *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

32

Therefore, Swift's Objection to the $65 Million guaranteed Floor is frivolous, unsupported, not likely to succeed, and warrants the assessment of the reasonable bond requested.

>    **b.     The Fee Award was Found Fair and Appropriate Under Ninth Circuit Law and Expert Opinions Support Using the Settlement Ceiling, Not the Floor, as an Appropriate Figure to Base Fees on.**

Swift's second objection, that attorney's fees should not exceed 25% of the Floor of $65 Million, is also unfounded and unsupported.

First, this Court finally approved the attorney's fees and found them fair and appropriate under Ninth Circuit Law. *See* Final Approval Order at 10-13. It did so after careful analysis and review of the required factors. It is elementary that the Ninth Circuit recognizes the common fund doctrine approach used in this Settlement. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir 1989); *Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). *See also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Aleyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975). A percentage of the recovery approach, the approach used in this Settlement, is the predominant method for determining attorney's fees in the Ninth Circuit. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376-77 (9th Cir. 1993); *Paul, Johnson*, 886 F.2d at 272; *Six Mexican Farm Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

Further, the relevant factors of this case justified an award of 33.333% in this case because: 1) the result achieved was significant; 2) the litigation was complex and required a high level of skill; 3) the quality of the work performed was high; 4) the litigation carried significant risks; 5) the fee was contingent and precluded other employment; 6) similar percentages were awarded in other complex cases; and 7) all Plaintiffs, Class counsel, Wal-Mart and Class reaction

33

supported the award. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *Vizcaino*, 290 F.3d at 1048-1059; *Hanlon*, 150 F.3d at 1027; *Wing v. Asarco Inc.*, 114 F.3d 986 (9th Cir. 1997); *In re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995); *and In re Lorazepam & Clorazepate Antitrust Litig.*, 2003 WL 22037741, at *9 (D.D.C. 2003).

A lodestar cross-check analysis also supported the reasonableness of a 33.333% award here. *See Vizcaino,* 290 F.3d at 1050-51 & n.5. Attorneys in common fund cases are ordinarily also reimbursed for reasonable out-of-pocket expenses and the reimbursement of expenses here was appropriate. *See Lorazepam*, 2003 WL 22037741, at *10; *In re Airline Ticket Comm'r Antitrust Litig.*, 953 F. Supp. 280, 286 (D. Minn. 1997); *In re Catfish Antitrust Litig.*, 939 F.Supp. 493, 503 (N.D. Miss. 1996); *In re SmithKline Beecham Corp. Sec. Litig.*, 751 F.Sup. 525, 534 (E.D. Pa. 1990). Finally, incentive awards to class representatives were appropriate.

This Court, after a thorough analysis of all of the above, made considered findings and found the fee award fair and appropriate under Ninth Circuit law. *See* Final Approval Order.

Second, under well-established Ninth Circuit law, attorney's fees are calculated from the ceiling. *See* Silver Declaration at 8-11. *See also* Declaration of William B. Rubenstein in Support of Settlement Approval and Fee Petition at 3, 24-32 (hereafter, Rubenstein Declaration), Docket no. 417, October 10, 2009. In proclaiming that the attorney's fees were incorrectly calculated, Swift, through counsel, at the outset failed to conduct even the most basic legal research. Beyond that, she offers no fact or relevant argument in support of her quest to reverse well established Ninth Circuit Authority or the well supported and reasoned discretionary award

of fees. In fact, Swift failed to acknowledge the evidence and arguments in support, including the common opinion of two highly respected legal authorities.[46]

Additionally, the Ninth Circuit has expressly accepted floor/ceiling settlements. *See* Rubenstein Declaration at ¶¶33-35. *See also Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007). In proclaiming that such a settlement is wrongful and should be reversed, Swift offers no supporting arguments or facts. She simply and boldly seeks to substitute her judgment for that of this Court and to provide a counter to the expert opinions that Plaintiffs offered through a lay witness. She also seeks the opportunity to rewrite Ninth Circuit law without providing any reasoning and/or any basis in fact or legal principle. She fails to offer any hint how the best interests of the class are served through her objection.

Therefore, Swift's Objection here is unsupported, not likely to succeed, and presents no obstacle to the assessment of the reasonable bond requested. There is no indication whatsoever in the record that objectors or the objection process warrants reversal of the Order on Final Approval.

### 4. Objector Swift's Appeal Shows Bad Faith and Vexatious Conduct

The fourth factor, whether the appellant has shown bad faith or vexatious conduct, also weighs in favor of a bond. However, even though Plaintiffs' believe that the appellants have acted in bad faith, demonstrated vexatious[47] conduct, and that their counsels are professional objectors, this factor is not discussed in depth here or advanced on the present record as a basis

---

[46] The contents of the opinions of Prof. Silver and Prof. Rubenstein speak for themselves, and a gratuitous recap is not necessary. Additionally, this Court's related findings were detailed and complete.
[47] Merriam Webster defines vexation as 'Main Entry: vexation as a noun and meaning

for the request for a bond because of the *Azizian* holding.[48]  The analyses of the first three factors are sufficient to conclude that a bond should be imposed upon Objector Swift.[49]

Moreover, Swift's objection is entirely inadequate.  When weighed against the burden of proof required by the class to set aside the District Courts findings, Swift's flimsy offering does not support the denial of Plaintiffs' request for a bond or demonstrate that it is unreasonable under the circumstances.  For all the reasons discussed herein, Swift is not likely to succeed on the merits of her appeal.  In any event, the merits of Swift's appeal weigh in favor of the imposition a bond because nothing contained therein guarantees the likelihood of success or that in the event she loses that the Plaintiffs will recover their costs.

---

1 : the act of harassing or vexing : TROUBLING

2 : the quality or state of being vexed : IRRITATION

3 : a cause of trouble : AFFLICTION…"

[48] In Beasley-Burton's December 18th, 2009 memorandum, Plaintiffs' Memorandum in Support of Motion to Require Objectors Gaona, Swift, Andrews, and Maddox and Their Attorneys to Post Appeal Bonds, and Seeking Any Other Appropriate Relief to Protect the Class, the vexatious conduct of professional objector Bandas is discussed; however, this issue is not addressed at length here because it is recognized as being an appropriate issue for review by the Appeals Court in accordance to *Azizian*. *See* Docket no. 536, Plaintiffs' Memorandum in Support of Motion to Require Objectors Gaona, Swift, Andrews and Maddox and Their Attorneys to Post Appeal Bonds, and Seeking Any Other Appropriate Relief to Protect the Class, December 18, 2009,

[49] The 9th Circuit does not favor review and consideration of bad faith or vexatious conduct by the District Courts because, "Allowing districts court to impose high Rule 7 bonds on where the appeals might be found frivolous risks impermissibly encumber[ing] appellants' right to appeal and effectively preempt[ing] this court's prerogative to make its own frivolousness determination." *Azizian*, 499 F.3d at 961. Nonetheless, we summarize what other circuits would have considered because in the event this bond is appealed, we will ask the Appeals Court to revisit its holdings in the 2007 *Azizian* case.  In *Fleury*, 2008 U.S. Dist. LEXIS 88166, at *19, the District Court found evidence that Objector's counsel, had at least one appeal already found to be frivolous by another court and also that the Objector's lack of understanding of the basis of the appeal was "troubling" but refrained making a finding because of the recent case *Azizian v. Federated Department Stores, Inc.*  There is no question that Objector Swift is represented by a Professional Objector.  Pentz is a lawyer who is self-admitted and well known for posing objections to class settlements in an attempt to extract a payment from the class members. *See* fn. 14 above.  As stated in Footnote 14, Professional Objector Pentz is well known to the courts.  He misuse the judicial process for personal gain and should be afforded a full and unrestricted opportunity to defend against these accusations and to offer evidence that he did in fact advance claims in good faith, diligently prosecute them and otherwise bring benefit to class members.  The appellate courts in reviewing the appeal of the instant settlement is entitled to a full record when passing on a Rule 38 request especially in light of the extraordinary burden they place upon Appellee's seeking to enforce that rule of law.  The Court should this exercise its discretion in managing its docket to make room for Plaintiffs' request for a related hearing.  Under the circumstances, such a hearing is clearly not advanced in the good faith belief that they should be allowed to establish relevant facts, even if the date of the proceeding in which the facts will be relevant has not yet been set.

Therefore, the weighing of the *Fleury* factors presents a compelling case for the posting of a bond under FRAP 7.

### B.   The Amount of the Requested Bond is Appropriate

The Court should require Objector Swift to post an appellate cost bond in the amount $2,285,857.15 to ensure recoupment of the costs of appeal. The amount of the requested bond is appropriate for the following reasons:

### 1.   Permitted Taxable Costs Include Preparation and Transmission of the Record, Reporter's Transcript, and the Fee for Filing Notice to Class Members of the Appeal

The Ninth Circuit has held that FRAP 7 includes, but is not limited to, "all costs properly awardable at the conclusion of the appeal," as FRAP 39(e) does not contain "any expression to the contrary." *Azizian,* 499 F.3d at 958.

Courts in the Ninth Circuit follow FRAP 39(e). "*Rule 39(e)* provides: The following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule: (1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) the premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal." *In Re Broadcom Corp., 2005 U.S. Dist. LEXIS 45656,* at *7-8. However, the Ninth Circuit has further held that, "[T]he costs identified in Rule 39(e) are among, but not necessarily the only, costs available on appeal [for purposes of Rule 7]." *Azizian,* 499 F.3d at 958. The estimated amounts are included as appropriate below.

### a.   Preparation and Transmission of the Record

Plaintiffs request $4,971.97 as the cost for the preparation and transmission of the record, specifically, the costs of printing and copying briefs and other submissions. *See* Declaration of Co-Lead Counsel Robert Bonsignore in Support of Plaintiff's Motion for Appeal

Bond for Objector Stephanie Swift at Paragraph 25.  This amount is properly included within the requested bond amount.

### b.      Cost for Reporter's Transcripts

Plaintiffs request $1,403.90 as the cost for reporter's transcripts.  *See* Declaration of Robert Bonsignore in Support of Plaintiff's Motion for Appeal Bond for Objector Stephanie Swift at Paragraph 22.  This amount is properly included within the requested bond amount.

### 2.      Administrative Costs

Class administrative costs are properly included in a Rule 7 bond.  In 2005, the California Central District Court sustained the Plaintiffs' class argument that the Rule 7 bond should include additional costs for the delay and disruption of administering a settlement of the case.  *In re Broadcom Corp.*, 2005 U.S. Dist. LEXIS 45656, at \*9-11.  The class successfully argued, as the Plaintiffs assert here, that the objectors' appeal effectively postponed distribution of the entire judgment for well over a year.  *See id.*

Plaintiffs request $200,000.00 for the administrative fees/costs associated with this appeal.  *See* Declaration of Amanda Myette, Exhibit V to Plaintiff's Motion for Appeal Bond for Objector Stephanie Swift.  Rust Consulting has submitted a Declaration that it estimates additional costs of $200,000.00 due to the appeal of the case.  *Id.*  This is an estimate and the actual costs of additional administration may vary depending upon the ultimate timetable and services provided.  *Id.*  This amount is properly included within the requested bond amount.

### 3.      Deposition Costs Should be Included in the Bond

Title 28 U.S.C. § 1920 and Fed. R. Civ. P 54(d) each allows the award of certain deposition costs, even if those depositions were not used at trial.[50]  Deposition costs for a special

---

[50] *Washington State Dep't of Transp. v. Washington Nat. Gas Co.*, 59 F.3d 793, 806 (9th Cir. 1995).

process server was $225.00, and a cost for non-appearance at the Deposition was $60.00. Additionally, the costs for the Deposition of Process Server Clint Massengale was $129.00. This totals $414.92. *See* Declaration of Robert Bonsignore in Support of Plaintiff's Motion for Appeal Bond for Objector Stephanie Swift at Paragraph 24. This amount is properly included within the requested bond amount.

### 4. Interest on the Class Settlement, Attorney's Fees and Costs Should be Included in the Bond

As detailed above, post-judgment interest is mandatory for any money judgment pursuant to 28 U.S.C. § 1961.[51] The purpose of post-judgment interest is to compensate a successful plaintiff for not being paid during the time of the award and payment.[52] Not only is post-judgment interest assessable upon the judgment, but also separately upon the attorney's fees[53] and costs.[54] The interest assessed for each component of the judgment is calculated from the "date of the entry of the judgment."[55]

In the present case, interest is calculated on the judgment from November 2, 2009, the attorney's fees from November 20, 2009, and the costs from the date when the Court enters its order on the amount of costs. Further, Plaintiffs submit the Declaration of Economist John Ward (hereafter, "Dr. Ward"), who used 28 U.S.C. § 1961 and the Declaration of appellate counsel Wendy Lascher to calculate the interest lost due to the appeal. Dr. Ward estimates an interest loss in the amount of $401,831.00 on the floor of $65 million assuming median time on appeal of

---

[51] *Donovan v. Sovereign Secur., Ltd.*, 726 F.2d 58 (9th Cir. 1984).

[52] *Pace Design & Fab. v. Stoughton Composites,* 1997 U.S. App. LEXIS 35780, *2-3 (9th Cir. 1997) (citing *Donovan,* 726 F.2d at 58);*Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835 (1990).

[53] *Perkins v. Standard Oil Co.,* 487 F.2d 672, 676 (9th Cir. 1973).

[54] *Air Separation v. Underwriters at Lloyd's of London,* 45 F.3d 288, 290 (9th Cir. 1994) (quoting *Wheeler v. John Deere Co.*, 986 F.2d 413, 415 (10th Cir. 1993)) ("this court has determined that once a judgment is obtained, interest thereon is mandatory without regard to the elements of which that judgment is composed").

[55] *See* 28 U.S.C. § 1961.

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Stephanie Swift*

19 months. *See* Declaration of John Ward, Ph.D., Exhibit III to Motion for Appeal Bond for Objector Stephanie Swift. *See also* Declaration of Wendy Lascher, J.D., Exhibit IV to Motion for Appeal Bond for Objector Stephanie Swift. Plaintiffs request that the Court assess the sum of $401,831.00 in interest as part of the bond. This amount should be properly included with the requested bond amount.

## CONCLUSION

This Court's finding that the Plaintiffs request for the assessment of a bond is reasonable and as to the appropriate amount is not dependent upon any one consideration. Rather, it will be arrived at after reviewing and considering the totality of the facts and circumstances attendant to this request in accordance with the nuances controlling in the Ninth Circuit.

The Plaintiffs submit that the Court should exercise its plenary discretion to impose an appeal bond against Objector Swift in the amount of $2,285,857.15. The Court should further determine the nature and amount of the appeal bond based upon the grounds set forth by the Plaintiffs and for such other and further relief as this Honorable Court deems just, proper and equitable.

Dated: January 14, 2010                              Respectfully submitted:

                                        By:     s/ Robert J. Bonsignore
                                                Robert J. Bonsignore
                                                BBO # 547880
                                                BONSIGNORE & BREWER
                                                23 Forest Street
                                                Medford, MA 02155
                                                Telephone: (781) 350-0000
                                                rbonsignore@class-actions.us

Daniel D. Ambrose, Esq.                          Craig O. Asbill, Esq.
Ambrose Law Group                                Charles G. Monnett & Associates
1007 East West Maple Road                        200 Queens Road
Walled Lake, MI 48390                            Suite 300

40

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Stephanie Swift*

(248) 624-5500

Charlotte, NC 28204
(704) 376-1911

Franklin D. Azar, Esq.
Rodney P. Bridgers, Jr., Esq.
Nathan J. Axvig, Esq.
Franklin D. Azar & Associates P.C.
14426 East Evans Ave.
Aurora, CO 80014
(303) 757-3300

Richard Batesky, Esq.
Attorney at Law
22 E. Washington St., Suite 610
Indianapolis, IN 46204
(800) 822-2039

Robin E. Brewer, Esq.
Nicole Vamosi, Esq.
Kelly Elam, Esq.
Rick Kirchner, Esq.
Julie Baker, Esq.
Bonsignore & Brewer
23 Forest Street
Medford, MA 02155
(781) 350-0000

Mark C. Choate, Esq.
Choate Law Firm LLC
424 N. Franklin Street
Juneau, AK 99801
(907) 586-4490

Todd S. Collins, Esq.
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
(800) 424-6690

Adriana Contartese, Esq.
Rafaela Hanley, Esq.
Attorney at Law
866 East Fifth St.
Boston, MA 02127
(617) 268-3557

Lanny H. Darr
Schrempf, Kelly, Knapp & Darr, Ltd.
307 Henry St.
Suite 415
Alton, IL 62002
(618) 465-2311

Paul C. EchoHawk, Esq.
Nathan Long, Esq.
EchoHawk Law Offices
Paul C. EchoHawk
505 Pershing Avenue
Pocatello, ID 83205
(208) 478-1624

R. Deryl Edwards, Jr., Esq.
606 S. Pearl Ave.
Joplin, MO 64801
(417) 624-1962

Ivy L. Frignoca, Esq.
Lambert Coffin Haenn
477 Congress St, 14th Fl
Portland, ME 04112
(207) 874-4000

Courtney French, Esq.

Troy N. Giatras, Esq.

41

Fuston, Petway & French, LLP
3500 Colonnade Parkway
Suite 300
Birmingham, AL 35243
(205) 977-9798

The Giatras Law Firm, PLLC
118 Capitol Street
Suite 800
Charleston, WV 25301
(304) 343-2900

Christopher R. Gilreath, Esq.
Gilreath & Associates
550 Main Street
Suite 600
Knoxville, TN 37902
(865) 637-2442

Vincent J. Glorioso, III, Esq.
The Glorioso Law Firm
815 Baronne Street
New Orleans, LA 70113
(504) 569-9999

Donald S. Goldbloom, Esq.
12590 National Pike
Grantsville, MD 21536
(301) 895-5240

Gregory F. Greiner, Esq.
Greiner Law Office
630 G Ave.
Grundy Center, IA 50638
(319) 824-6951

J. Thomas Henretta, Esq.
Law Offices of J. Thomas Henretta
400 Key Building
159 South Main Street
Akron, OH 44308
(330) 376-7801

Thomas H. Johnson, Esq.
Thomas H. Johnson Law Office
410 Hickory St.
Texarkana, AR  71854
(870) 773-6359

Christopher Meeks, Esq.
Lynch, Meeks & Battitori
1031 Military Avenue
Baxter Springs, KS
(620) 856-2771

Mike Miller, Esq.
Stacey E. Tjon, Esq.
Solberg, Stewart, Miller & Tjon
1129 Fifth Avenue South
Fargo, ND 58103
(701) 237-3166

Pamela Mullis, Esq.
The Mullis Law Firm
1229 Elmwood Ave
Columbia, SC 29201
(803) 799-9577

Glen W. Neeley, Esq.
Attorney at Law, P.C.
863 25th St.
Ogden, UT 84001
(801) 612-1511

Gary S. Nitsche, Esq.
Weik, Nitsche, Dougherty
1300 N. Grant Ave, Suite 101

D. Michael Noonan, Esq.
Shaheen & Gordon, P.A.
140 Washington Street

Wilmington, DE 19899
(302) 655-4040

P.O. Box 977
Dover, NH 03821
(603) 749-5000

Raymond A. Pacia, Esq.
Attorney At Law, LTD
50 Power Road
Pawtucket, RI 02860
(401) 727-2242

Jeffrey M. Padwa, Esq.
Padwa Law
303 Jefferson Blvd.
Warwick, RI 02888
(401) 921-4800

Arthur Y. Park, Esq.
Laurent J. Remillard, Jr., Esq.
John C. McLaren, Esq.
Park Park & Remillard
707 Richards Street
Suite 500
Honolulu, HI 96813
(808) 536-3905

Wayne D. Parsons, Esq.
Wayne D. Parsons Law Offices
Dillingham Business Center
Suite 201C
1406 Colburn Street
Honolulu, HI 96817
(808) 845-2211

John Rausch, Esq.
P.O. Box 905
Waterloo, IA 50704
(319) 233-3557

Dan Rausher, Esq.
Attorney at Law
26 Court Street
Suite 1604
Brooklyn, New York 11242
(718) 596-7333

Thomas R. Ricci, Esq.
Law Office of Thomas R. Ricci
303 Jefferson Blvd.
Warwick, RI 02888

(401) 921-4800

Fred Schultz, Esq.
Greene & Schultz
Showers Plaza
320 W. 8th Street
Suite 100
Bloomington, IN 47404
(812) 336-4357

Cynthia K. Smith, Esq.
Jasper Smith Olson, P.C.
202 W. Spruce St.
P.O. Box 7785
Missoula, MT 59807
(406) 541-7177

Stephen M. Smith, Esq.
Joseph Smith Ltd.
2100 Kecoughtan Road
Hampton, VA 23661-0437
(757) 244- 7000

Laurence W. Stinson, Esq.
Bradley D. Bonner, Esq.
Bonner Stinson, P.C.

Mark Tate, Esq.
Tate Law Group, LLC
2 East Bryan Street

43

P.O. Box 799
128 East Second Street
Powell, WY 82435
(307) 754-4950

Jill P. Telfer, Esq.
Law Offices of Jill P. Telfer
331 J. Street, Ste. 200
Sacramento, CA 95814
(916) 446-1916

Jay A. Urban, Esq.
Urban & Taylor S.C.
4701 North Port Washington Road
Milwaukee, WI 53212
(414) 906-1700

Christopher P. Welsh, Esq.
James R. Welsh, Esq.
Welsh & Welsh, P.C. L.L.O.
9290 West Dodge Road
100 The Mark
Omaha, Nebraska, 68114
(402) 384-8160

Suite 600
Savannah, GA 31401
(912) 234-3030

Matthew Tobin, Esq.
201 S. Phillips Avenue
Suite 200
Sioux Falls, SD 57104
605-366-9715

Ernest Warren, Jr., Esq.
Walker Warren & Watkins
838 SW First Avenue
Suite 500
Portland, OR 97204
(503) 228-6655

44

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2010, a copy of the foregoing *Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Stephanie Swift* was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing]. Parties may access this filing through the Court's system.

/s/ Robert J. Bonsignore
Robert J. Bonsignore

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Stephanie Swift*