IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| In re Wal-Mart Wage and Hour Employment Practices Litigation | ) ) ) ) ) | MDL 1735 2:06-CV-0225-PMP-PAL |

OPPOSITION TO MOTION FOR APPEAL BOND
FOR OBJECTOR STEPHANIE SWIFT

Class member Stephanie Swift hereby opposes the cumulative and redundant Motion for Appeal Bond filed by disgruntled co-Class Counsel Robert Bonsignore, for the same reasons that she previously opposed the motion for an appeal bond filed by his co-counsel Carolyn Beasley Burton. The case of *Azizian v. Federated Dept. Stores, Inc.*, 499 F.3d 950 (9th Cir. 2007), flatly prohibits any appeal bond that is not limited to the costs delineated in FRAP 39. In *Azizian*, the Ninth Circuit held that "the term 'costs on appeal' in Rule 7 includes all expenses defined as 'costs' by an applicable fee-shifting statute, including attorney's fees." *Id*. at 958. In that case, because the Clayton Act is an "asymmetrical" statute that shifts costs only to defendants, and not to plaintiffs, the Ninth Circuit held that the permissible appeal bond in that case is limited to costs specifically listed in FRAP 39.

This case is no different, and is controlled by *Azizian*. In Mr. Bonsignore's rambling, 58-page memorandum, there is no mention of the fee-shifting provision of the controlling statute in this case – the Fair Labor Standards Act. 29 USC § 216(b), the relevant section of the FLSA, provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee **to be paid by the defendant**, and costs of the action." This is a classic one-way cost-shifting statute, that permits recovery of costs against a defendant found guilty of violating the

act, but not against a plaintiff.  Appellant Stephanie Swift is a plaintiff and class member, an employee of Wal-Mart who suffered damages as a result of Wal-Mart's violations of the FLSA.  To paraphrase *Azizian*, she is "the alleged victim, rather than the perpetrator," of the labor violations.  *Id*. at 960.  Ordering her to pay a devastating and appeal-ending bond would not serve the purpose of §216(b) to deter those who have violated the labor laws.

Appellant Swift appreciates attorney Bonsignore's candid concession that the bond motion filed by attorney Beasley-Burton runs afoul of the controlling *Azizian* case, *see* Memorandum at fn. 9, but not his obtuse failure to recognize that the *Azizian* decision applies as much to administrative or delay costs as it does to attorney's fees.  There is no practical distinction between the Beasley-Burton and Bonsignore bond motions – both are legally deficient and in disregard of the *Azizian* holding.  While Mr. Bonsignore expressly asks this Court to disregard any part of his bond motion that "has been forbidden by the Ninth Circuit" or any "argument that is inadvertently raised," Memorandum at page 16, if this Court were inclined to honor that request it would have to stop reading after the table of contents.  Mr. Bonsignore's efforts to articulate a "pure and solid legal footing" for his requested bond is no more successful than Ms. Burton's somewhat more succinct attempt.[1]

---

[1] Mr. Bonsignore's motion, filed two months after Ms. Swift's Notice of Appeal, was so hastily and carelessly thrown together that the originally filed motion made a $1,677,000 error in the amount of the requested bond.  One would have thought that someone who is asking a minimum wage worker to post a bond for hundreds of thousands of dollars would be more careful about their arithmetic.  The $1.6 million error underscores the arbitrary and fundamentally unserious nature of Mr. Bonsignore's bond motion.

2

### I. This Court May Take Judicial Notice That a Wal-Mart Hourly Employee Cannot Afford The Requested $609,000 Bond.

Stunningly, an attorney who purports to represent a class of Wal-Mart hourly employees has requested that one of his clients post a $609,000 bond on the grounds that she has not submitted financial information to indicate she is financially unable to post a bond in that amount. This demonstrates an astonishing lack of familiarity with the financial circumstances of his clients. It is axiomatic that someone who could afford a $609,000 bond for the right to pursue an appeal would not be working for $8.00 an hour at Wal-Mart. Not one of the class members can afford such an astronomical amount, and most will not earn $609,000 over the course of their entire lifetimes. How could Mr. Bonignore be so oblivious to the economic circumstances of the class? Ms. Swift unequivocally states that she can in no way afford a bond in the amount of $609,000, or even $6090, and that if such a bond were to be upheld by the Ninth Circuit she would be forced to drop her appeal. Therefore, this factor, which Mr. Bonsignore contends is a necessary factor in order to obtain a bond in any amount, is patently lacking here, and consequently this Court may not enter an appeal bond against Ms. Swift.[2]

---

[2] Mr. Bonsignore claims that Ms. Swift had an "opportunity" to submit financial information to show that she is unable to post a bond for $609,000 when she filed her appeal. Mr. Bonsignore is clearly very unfamiliar with appellate practice in the Ninth Circuit, since there is not such an "opportunity" or requirement on any of the forms that are required to be filed in connection with opening an appeal.

## II. Ms. Swift's Appeal is Far From Frivolous.

Mr. Bonsignore's entire motion is premised on the assumption that Ms. Swift's appeal is frivolous, based solely on the fact that he submitted expert affidavits in support of the fee and the Court held two hearing, without bothering to actually confront the arguments advanced by Ms. Swift and discussing them in the context of Ninth Circuit law. Ms. Swift argued that Class counsel should receive no more than the benchmark percentage fee of 25%, and that that percentage should be applied to the $65 million that the parties now admit will be all that will be paid pursuant to the settlement.

In its November 2 Order, this Court provided a list of reasons for departing from the 25% benchmark. In Ms. Swift's opinion, those reasons do not justify an 8% upward departure from the benchmark, and therefore constitute an abuse of discretion. In particular, the percentage fees approved in other state courts are entirely irrelevant to a fee award in a federal court, given the starkly different laws governing attorney's fees in those states. Therefore, while Class Counsel and this Court may differ with Ms. Swift, she has clearly articulated a reasonable basis for contending that this Court abused its discretion in departing from the benchmark.

Secondly, Ms. Swift objected to applying the percentage fee to the $20 million that was not guaranteed by the settlement, citing to prior cases that demonstrated that the settlement cap was highly unlikely to be reached. Ms. Swift was ultimately proved to be right about this projection. This Court initially announced that it would defer ruling on the attorney's fee award until the parties reported back to the Court about the claims rate. After the parties submitted a filing to this Court conceding that the claims submitted by the class would not even reach the $37 million necessary to cause the $65 million floor to

be exceeded, this Court inexplicably ruled that it would apply the 33% it had previously settled upon to the full $85 million, rather than the $65 million that was justified by the claims data.

The Minute Order entered by this Court contained absolutely no statement of reasons for applying the 33% to the counter-factual $85 million, nor any analysis of the relevant caselaw. This Court simply stated "[t]he Court grants the award of attorney's fees in the amount of 428,333,050," without further explanation. Ms. Swift contends that this is an abuse of discretion, especially after the parties had disclosed that $65 million would not be exceeded in this case. *See FRCP 23(h)(3)* ("The court ... must find the facts and state it legal conclusions under Rule 52(a)").[3]

The requested fee award of $28 million is simply not reasonable in the context of a settlement has delivered no more than $65 million in total value to class members. Ms. Beasley-Burton made *the same point* in her objection to the Massachusetts settlement: "Based upon the likely claims from the Class… the proposed legal fees appear out of balance with the actual benefit obtained for the class." *Exhibit 2 to Swift Objection* at p. 29.

Federal courts have generally followed the Federal Judicial Center guidelines and endeavored to accurately value claims-made settlements when awarding attorney's fees. They do not simply use the amount made available to the class when calculating a percentage attorney's fee, but they wait for the claims to come in and calculate the fee

---

[3] Attorney Pentz was counsel for the successful appellant in *Dikeman v. Progressive Exp. Ins. Co.*, 2008 U.S. App. LEXIS 6768 (11th Cir. 2008), in which the Eleventh Circuit reversed and remanded a fee award for a "conclusory statement that does not allow for our meaningful review." *Id*. at *8. Appellant Swift believes that the Ninth Circuit will at a minimum reverse and remand this Court's conclusory determination that the percentage should be applied to the fictional cap of $85 million, rather than the $65 million that was conclusively established by the parties' November 12, 2009 filing.

based upon the amount actually paid out to the class members.  *See e.g., In re Compact Disc Minimum Advertised Price Litig.*, 370 F. Supp. 2d 320 (D. Me. 2005) (awarding attorney's fees of 30% of value of redeemed coupons, which was 30% of claimed lodestar).  *See also In re Excess Value Ins. Coverage Litig.*, 2005 U.S. Dist. LEXIS 45104 (SDNY 2006) at *28-33 (awarding class counsel fees in the amount of 50% of vouchers redeemed, which was 35% of lodestar).

> Recognizing that percentage of funds is the preferred method of assessing fees in a settlement like this, with lodestar analysis providing only a check, I can effectively gauge appropriate attorney fees only if I know the total value of the settlement.  But although I am satisfied that the coupon settlement has value to the class, I am not confident of the redemption rate that has been projected and thus of the settlement's total value.  Therefore, I have determined to delay award of attorney fees until experience shows how many vouchers are exercised and thus how valuable the settlement really is.

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189-90 (D. Me. 2003) (Hornby, D.J.).

> The percentage of Settlement approach cannot be reasonably employed at this point because the Settlement's actual value to the Class is unclear and cannot accurately be assessed until the rate at which Class Members redeem UPS Vouchers is known… "Particularly where the common benefits are in the form of discounts, coupons, options or declaratory or injunctive relief, estimates of the value or even the existence of a common fund may be unreliable, rendering application of any percentage-of-recovery approach inappropriate.  Where there is no secondary market for coupon redemption, the judge can conclude that the stated value of the coupons … does not provide a sufficiently firm foundation to support a fee award…"

*In re Excess Value Ins. Coverage Litig.,* 2004 U.S. Dist. LEXIS 14822 (S.D.N.Y. 2004) at *58 (quoting Manual for Complex Litigation § 14.121).

The procedure urged by class counsel has been universally rejected by federal courts, and was recently termed a "fiction" and "pure fantasy" by the Northern District of

6

California. In *Yeagley v. Wells Fargo & Co.*, 2008 U.S. Dist. LEXIS 5040 (N.D. Cal. 2008), the court confronted the task of valuing a settlement for the purpose of awarding attorney's fees:

> Class counsel contend that the Court must consider the amount Wells Fargo could have paid under the settlement in determining the common fund for the purpose of attorney's fees. They argue that under the Ninth Circuit's decision in *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997), the Court *must find* that since all 3.8 million class members could have a made a claim for a free tri-merged credit report, the value of the recovery, that is, the common fund, is at least $114 million… *Williams* does not require this Court to adopt the fiction that the settlement is worth $114 million…. *Williams*, in contrast, was a settlement of a securities-fraud class action for $4.5 million in cash…
>
> Class counsel's $114 million figure is pure fantasy. Counsel does not offer a shred of evidence that suggests that the parties reasonably believed that Wells Fargo would actually pay anything near that amount, and the Court finds that they did not…. To award class counsel the same fee regardless of the claim participation rate, that is, regardless of the enthusiasm of the class for the benefits purportedly negotiated on their behalf, would reduce the incentive in future cases for class counsel to create a settlement which actually addresses the needs of the class. In this case, for example, the one percent claim rate demonstrates that the brochure did not effectively educate the class members about the importance of credit reports and monitoring their credit… Common sense dictates that a reasonable fee in a class action settlement is a fee that takes into account the actual results obtained.

*Id*. at *20-28. The court in *Yeagley* went on to award class counsel a fee of $325,000, or 25% of the value of claimed settlement benefits plus attorney's fees, a figure that was approximately one-third of class counsel's claimed lodestar.

The Supreme Court in *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) distinguished its holding in that case from settlements like the one currently before this Court.

> The District Court explicitly ordered that "plaintiffs in behalf of all members of the plaintiff class … shall recover as their damages herein from the defendants the principal sum of $3,289,359 together with interest …" Nothing in the court's order made Boeing's liability for this amount

contingent upon the presentation of individual claims. Thus, we need not decide whether a class-action judgment that simply requires the defendant to give security against all potential claims would support a recovery of attorney's fees under the common-fund doctrine.

*Boeing,* 444 U.S. at 479 n.5.

Especially with regard to this last point, along with *Yeagley's* distinguishing of *Williams v MGM-Pathe* from a claims-made settlement like this one, it is far from clear that the Ninth Circuit requires or even permits fee awards to be based on fictional or fantasy projections of a settlement's potential value, when no amount has been placed in escrow, and when the parties' own filings have established that "the claims made will not exceed the Floor amount." Appellant Swift believes that it is highly likely that the Ninth Circuit will rule that this Court's fee award must be based upon the actual amount that will be paid by the Defendant, and not upon some other theoretical number, especially when it has been conclusively established that the floor will not be exceeded. This is a question of first impression for the Ninth Circuit, as well as a question of law. Therefore, Appellant Swift's appeal cannot possibly be deemed to be frivolous at this time, nor is it likely to be found frivolous by the Ninth Circuit, even if that Court ultimately rules in favor of Class Counsel.

**III.   Class Counsel Has Failed to Follow The Ninth Circuit's Prescribed Method For Disposing of an Appeal Alleged to be Frivolous.**

In *Azizian*, the Ninth Circuit concluded that "the question of whether, or how, to deter frivolous appeals is best left to the courts of appeals, which may dispose of the appeal at the outset through a screening process, grant an appellee's motion to dismiss, or impose sanctions including attorney's fees under Rule 38." *Id.* The foregoing is of particular relevance here, where the appellees have not filed in the Court of Appeals a

8

motion to dismiss Appellants' appeal, which they could easily do.  If Class Counsel is correct that Appellants' appeal presents no meritorious issues worthy of review based upon full briefing and record, the Court of Appeals will promptly dismiss the appeal, rendering the bond motion moot.  If the Court of Appeals denies the motion to dismiss, then it is difficult to see how the Court of Appeals could later find the appeal to be frivolous.  Frivolousness is something that should be readily apparent on the face of an appeal at the motion to dismiss stage.

As the Ninth Circuit has held, the preferable remedy for an appeal alleged to be frivolous is an appropriate motion filed in the Court of Appeals, not a motion for a bond in the district court that issued the order that is being challenged on appeal.  Class Counsel's failure to exhaust their remedies in the Court of Appeals is a further reason to deny their request for an appeal bond to secure any fees that may be awarded pursuant to FRAP 38.

## CONCLUSION

WHEREFORE, Appellant Stephanie Swift prays that this Court deny approval to the Motion for Appeal Bond.

>Stephanie Swift,
>By her attorney,
>
>*/s/ John J. Pentz*
>John J. Pentz, Esq.
>2 Clock Tower Place, Suite 440
>Maynard, MA  01754
>Phone: (978) 461-1548
>Fax: (978) 405-5161
>Clasaxn@earthlink.net

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 26, 2010 he filed a true copy of the foregoing document by the ECF filing system which resulted in an electronic notice of the filing of this document on all counsel of record.

>*/s/ John J. Pentz*
>John Pentz