UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| IN RE: WAL-MART WAGE AND HOUR EMPLOYMENT PRACTICES LITIGATION | MDL 1735 |
| | **Docket No**. 2:06-CV-00225-PMP-PAL (BASE FILE) |
| THIS DOCUMENT RELATES TO ALL CASES EXCEPT KING v. WAL-MART STORES, INC., CASE NO. 07-1486-WY | |

**CO-LEAD COUNSEL CAROLYN BEASLEY BURTON'S
REPLY TO OBJECTOR STEPHANIE SWIFT'S OPPOSITION TO
MOTION FOR APPEAL BOND**

1

## I. INTRODUCTION

Although the Opposition to Motion for Appeal Bond filed on behalf of Stephanie Swift by professional objector John Pentz (Dkt No. 583) is directed mainly at Co-Lead Counsel Bonsignore's motion, Mr. Pentz misrepresents fundamental issues of law and fact raised in the bond motion submitted by Co-Lead Counsel Burton (Dkt Nos. 535, 536). Ms. Burton therefore submits this Reply to address those issues.

In his Opposition, Mr. Pentz asserts that the Ninth Circuit decision, *Azizian v. Federated Department Stores, Inc.,* 499 F.3d 950 (9th Cir. 2007), held that the costs which may be included in an appeal bond imposed pursuant to Fed. R. App. R. 7 ("Rule 7") are limited to those specified in Fed. R. App. R. 39 ("Rule 39"). Mr. Pentz further claims that he should not be sanctioned in this matter because his objections, appeal, and opposition to the bond motions are not frivolous. Mr. Pentz is wrong on all accounts.

Contrary to Pentz's contention, the *Azizian* Court expressly held that Rule 7 and Rule 39 are <u>*not*</u> coextensive. Moreover, the *Azizian* Court did not address whether interest and administrative costs may be included in a cost bond, as Plaintiffs have requested here, but instead dealt with the single issue of whether attorneys' fees could be included in the bond. Ruling in the affirmative, the *Azizian* Court authorized the inclusion of attorneys' fees in a cost bond when permitted by a fee-shifting statute. Thus, far from limiting Rule 7, the law in the Ninth Circuit, like most other jurisdictions, continues to recognize that courts have the discretion to impose a bond sufficient to cover *all* costs that may be awarded after the appeal proves unsuccessful.

Mr. Pentz is also mistaken in assuming that he can avoid sanctions for attempting to extort money from the Class and Class Counsel. Pursuant to 28 U.S.C. §1927, an *attorney* may be sanctioned for conduct that "multiplies the proceedings in any case unreasonably and vexatiously."

Mr. Pentz has done both by filing unsupportable objections and an appeal for the sole purpose of extorting money from Class Counsel.

Significantly, Mr. Pentz does not deny that he and the other professional objectors collectively demanded $800,000 to prevent their filing frivolous objections and appeals—conduct which should not only be sanctioned under Section 1927—but which also raises serious ethical and disciplinary considerations arising from potential conflicts of interest, self dealing, failure to make necessary disclosures, and unconscionable fees.

For the reasons discussed herein, and in the motions filed by Co-Lead Counsel and Wal-Mart, Mr. Pentz and the other objectors should be required to post a bond sufficient to cover the costs that will be incurred by the parties as a result of their appeals. Mr. Pentz should also be sanctioned for abusing the judicial process and unreasonably delaying resolution of this matter.

## II.   PENTZ MISREPRESENTS THE HOLDING IN *AZIZIAN*

Objector Pentz misstates the holding of *Azizian* as mandating that the Court limit the costs allowable under a Rule 7 appeal bond to only those costs specified under Rule 39. Yet, in that opinion, written by Justice William A. Fletcher, the Ninth Circuit Court of Appeals *expressly rejected* the view that Rule 7 costs are coextensive with those enumerated in Rule 39.

In so ruling, the *Azizian* Court observed that "[t]here is no indication that [Rule 7's] drafters intended Rule 39 to define costs for purposes of Rule 7…[T]he costs identified in Rule 39(e) are among, but not necessarily the only, costs available on appeal." *Azizian*, 499 F.3d at 958; *accord, In re Broadcom Sec. Litig.*, 2005 U.S. Dist. LEXIS 45656, at *11 (C.D. Cal. Dec. 5, 2005) ("a Rule 7 bond may cover fees and expenses resulting from delay or disruption of the settlement administration"); *Adsani v. Miller,* 139 F.3d 67, 75 (2nd Cir. 1998) ("Rule 39 has no definition of the term 'costs' but rather defines the circumstances under which costs should be awarded"); *Pedraza v. United Guar. Corp.,* 313 F. 3d 1323, 1329-1330 (11th Cir. 2002) ("Under no fair reading…of Rule

3

39 can an exportable definition of 'costs' be perceived."). Justice Fletcher further held that because the drafters of Rule 7 did not define the term "costs", "we conclude that they likely 'intended [it] to refer to all costs properly awardable' at the conclusion of the appeal." *Azizian,* 499 F.3d at 958, *citing Marek v. Chesny,* 473 U.S. 1, 8-9, 105 S. Ct. 3012 (1985).  Because the requested interest on the delayed settlement funds and increased cost of claims administration are properly awardable at the conclusion of the appeal, these costs are authorized under *Azizian.*

In addition to mischaracterizing the holding in *Azizian*, Mr. Pentz ignores the holdings of numerous cases, both in the Ninth Circuit and other Circuits, which expressly allow interest on class settlement funds to be included as a cost in a Rule 7 appeal bond.  *See, e.g.*, *Conroy v. 3M Corp.*, 2006 U.S. Dist. LEXIS 96169, *10-*11 (N.D. Cal. Aug. 10, 2006) (imposing a bond on one of the present Objectors, the Bandas Law Firm, that included "expected interest on the cash portion of the settlement"); *In re Broadcom Sec. Litig., supra*, 2005 U.S. Dist. LEXIS at *9 ("This Court has held that costs of delay are properly included in a Rule 7 bond because 'distribution of the settlement proceeds will be unnecessarily delayed until the appeal is exhausted.'").  Curiously, notwithstanding the direct involvement of one of his cohorts in the *Conroy* case, Mr. Pentz neither acknowledges this conflicting authority nor attempts to distinguish it.

But even Mr. Pentz doesn't seem persuaded by his own dubious argument.  At page 1 of his Opposition, for example, Mr. Pentz argues that Rule 7 costs must be limited to those allowable under Rule 39, only to contradict himself in the very next sentence by acknowledging that *Azizian* allows for the inclusion of attorneys' fees, a cost that is extraneous to Rule 39.  Undaunted, Mr. Pentz seeks to extrapolate the holding concerning attorneys' fees in *Azizian* to mandate that all costs included in a Rule 7 bond be expressly authorized by statute.  That limitation does not appear anywhere in the *Azizian* opinion, or in any other Ninth Circuit appellate opinion for that matter.

Even assuming *arguendo* that *Azizian* imposed such a statutory limitation on Rule 7 cost bonds, this additional burden has been satisfied here because post-judgment interest is expressly authorized under 28 U.S.C. §1961.

4

**CO-LEAD COUNSEL BURTON'S REPLY TO OBJECTOR SWIFT'S
OPPOSITION TO MOTION FOR APPEAL BOND**

## III. PENTZ SHOULD BE SANCTIONED

In arguing that he should not be sanctioned because his arguments are not frivolous, Mr. Pentz again ignores relevant case law cited by Co-Lead Burton demonstrating that his objections are legally and factually unsupportable opting instead to focus only on the absence of such authority in Mr. Bonsignore's submission.

Most notably, Mr. Pentz ignores the fact that 28 U.S.C. § 1927 authorizes federal courts to sanction *attorneys* for engaging in "vexatious litigation conduct," for filing "frivolous pleadings," or for "intentional misconduct." Consequently, Mr. Pentz focuses only on Ms. Swift's ability to post a bond, and is conspicuously silent about his own finances. Mr. Pentz misses the point. Co-Lead Counsel Burton's bond motion targets the misconduct of the professional objectors, and Mr. Pentz has not submitted any evidence suggesting that he or his cohorts cannot afford the consequences of their own behavior.

### A. Pentz Has Unreasonably Delayed this Proceeding

The United States Supreme Court has expressly found that vexatious conduct includes filing motions solely for the purpose of delay or to multiply the proceeding, or for filing an appeal in bad faith, such as Mr. Pentz and the other professional objectors have done here. *See, e.g., Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766, 65 L. Ed. 2d 488, 100 S. Ct. 2455 (1980); *accord*, *Barnd v. City of Tacoma*, 664 F.2d 1339, 1342 (9th Cir. 1982); *United States v. Blodgett*, 709 F.2d 608, 610-611 (9th Cir. 1983).

Mr. Pentz does not and cannot dispute that his objections and subsequent appeal were brought solely for the purpose of delaying payment of the settlement funds in order to extort money from Class Counsel by advancing frivolous arguments. The undisputed evidence in this case demonstrates that the professional objectors, including Mr. Pentz, offered to abandon the objections and appeal in exchange for a cash payment of $800,000, with no consideration of any change or improvement to the settlement terms. (Dkt. Nos. 563, 563-1.) Such conduct is not only sanctionable under Section 1927, but raises serious questions about possible breaches of professional ethics for

5

self-dealing, conflicts of interest, failure to make necessary disclosure, excessive and unfair compensation, and inappropriate fee sharing arrangements.

The fact that the objector attorneys demanded $800,000 to walk away from *their clients' claims* is unquestionably unethical. "Surreptitiously contacting the opposing party and offering to dismiss a client's action or forego filing a valid cause of action in return for payment of fees directly to the attorney *creates a conflict of interest, and constitutes an obvious breach of the attorney's fiduciary obligation to the client*." *Cal Pak Delivery, Inc. v. United Parcel Service, Inc.*, 52 Cal. App. 4th 1, 11 (1997) (internal citations omitted) (emphasis added). Because no class member has a claim for $800,000 in lost wages in this matter, that exorbitant demand can only be the price the objector attorneys believe the Class and Class Counsel should be willing to pay to avoid the unnecessary delay caused by their frivolous filings.[1]

The undisputed record further demonstrates that Mr. Pentz and his cohorts engaged in the same *vexatious* conduct in three other Wal-Mart class action settlements. (Dkt No. 536.) In those cases, the professional objectors filed appeals only to voluntarily dismiss them shortly thereafter without having made any structural change or improvement to the challenged settlement or fee award. *Id.* The irony is palpable: while at the same time complaining that the fee award is too high, the professional objectors opportunistically demand a piece of it. Significantly, Mr. Pentz has not denied walking away from those appeals in other like Wal-Mart cases in exchange for receiving an extorted cash payment.

---

[1] This raises an additional question: who would receive this money? If it is counsel, this certainly constitutes an unconscionable fee, which is the essence of self-dealing and conflict of interest, and raises the question of whether the client was notified that her attorneys sought payment for abandoning her legal rights. Further investigation by the Court or appropriate State Bar organizations appears warranted. As Judge Cardozo observed in *In the Matter of Rous*, "[m]embership in the bar is a privilege burdened with conditions." 116 N.E. 782, 783 (N.Y. 1917). Among those conditions is the ethical obligation that an attorney provide his clients with full and meaningful disclosure of conflicts of interest. Clients always are owed the renowned "punctilio of an honor the most sensitive." *Meinhard v. Salmon*, 164 N.E. 545 (N.Y. 1928) (Cardozo, J.). The conduct of the professional objectors in this and other cases falls far short of this standard.

### B.  Pentz Continues to Advance Frivolous Arguments

Section 1927 also authorizes sanctions where an attorney knowingly or recklessly raises a frivolous argument.  "Section 1927 sanctions must be supported by a finding of subjective bad faith, which is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent."  *Hubbard v. Yardage Town,* 295 Fed. Appx. 169 (9th Cir. 2008), *citing B.K.B. v. Maui Police Dep't,* 276 F.3d 1091, 1107 (9th Cir.2002). Knowingly filing arguments that are legally irrelevant or factually unsupportable is clearly frivolous, as are intentional misstatements of the record and case law.

"An appeal is frivolous as filed 'when an appellant grounds his appeal on arguments or issues that are beyond the reasonable contemplation of fair-minded people, and no basis for reversal in law or fact can be or is even arguably shown.'  An appeal is frivolous as argued 'when an appellant has not dealt fairly with the court, [or] has significantly misrepresented the law or facts.'"  *E-Pass Technologies, Inc. v. 3Com Corp.*, 559 F.3d 1374, 1377 (Fed. Cir. 2009) (*"E-Pass"*) (citations omitted).  The arguments advanced by Mr. Pentz fall squarely within these definitions of "frivolous," both as filed and as argued.

In his objections and opposition briefing, Mr. Pentz continues to cite the same inapposite case law pertaining to coupon settlements to argue that the Court erred in calculating the attorneys' fee award on the full amount of the settlement fund made available to the class, even though this is a cash settlement, not a coupon settlement.  For example, Pentz relies heavily on *Yeagley v. Wells Fargo & Co*.  2008 WL 171083 (N.D.Cal. 2008), in support of his claim that the Court abused its discretion.  In Yeagley, however, the district court described the fee request as follows: "The question presented is what is a reasonable attorney's fee for a virtually worthless settlement of a meritless case."  *Id.* at *1.  No fair minded person could sincerely claim that the *Yeagley* ruling and settlement are applicable to this case.

Indeed, unlike this MDL proceeding, the *Yeagley* class did not receive a cash settlement, or anything even remotely close in value to 20% of their actual damages as the class members did here.

7

Rather, the *Yeagley* settlement provided that the class could only request a copy of their credit report, a right that is generally shared by the public at large. As the court there aptly observed, "[t]he receipt of a tri-merged credit report with a FICO score is of only marginal value, and that value is only to the less than one percent of the class that submitted claim forms." *Id.* at *3. *Yeagley* could not be more inapposite to the settlement and fee award in MDL 1735.

Simply put, it is dishonest for Pentz to continue to argue that the holdings in coupon and other non cash settlements mandate that the fee be determined on the actual cash value provided to the class. Indeed, the cases cited by Pentz have no application to cash settlements where well established case law from the United States Supreme Court and Ninth Circuit Court of Appeals directs that fees be based on the entire settlement fund. This Court properly followed this applicable precedent, and Mr. Pentz has cited no relevant authority demonstrating that the Court should have or could have done otherwise, thereby rendering his argument frivolous as filed.[2]

The fact that Mr. Pentz has repeatedly advanced identical challenges to the fee awards in numerous other like Wal-Mart cash settlements within the past year, and that each such argument has been soundly rejected by those respective courts, further demonstrates his bad faith in recycling the same canned objections here. This is particularly true here, where counsel sought and obtained the most modest fee award in comparison to the numerous other Wal-Mart settlements. Clearly, Mr. Pentz continues to utilize these rejected arguments not to prevail on the merits, but because he earns a living from tying cases up on appeal to exact a ransom.[3] Objecting to a class settlement for the purpose of extorting money is, by definition, frivolous.

---

[2] The fact that Pentz never bothers to explain how he can demonstrate that the Court abused its discretion in following relevant precedent and issuing a fee award that falls within well established legal precedent is further evidence of his subjective bad faith.

[3] The fact that Mr. Pentz admits to having prevailed in only one of the many, many settlements he has challenged further underscores that his only objective for filing appeals cannot be to succeed on the merits, but rather to use the appeal as leverage to exact a payment from the affected class or class counsel, a fact confirmed by Mr. Pentz in an interview. (Dkt No. 537, Exh. 4.)

It is also frivolous to mischaracterize the holdings or conduct of a lower court, such as Mr. Pentz has done in his Opposition. *E-Pass*, 559 F.3d at 1377 (attorney may be sanctioned for misrepresenting decision of the district court, and for misrepresenting facts). In attempting to support his argument opposing the fee award, Pentz asserts that the Court abused its discretion in failing to articulate the reasons for the award, or provide any legal support. This is an indefensible mischaracterization of the record.

It is undisputed that the Court detailed the basis for the fee award in its rulings from the bench during multiple hearings, and in its written orders dated November 2 and November 20, 2009. Had Mr. Pentz reviewed those transcripts or orders, or appeared at the hearing on final approval, as he notified the Court he would do, he might have conducted the necessary due diligence to avoid mischaracterizing the record.

Struggling to defend this misconduct, Pentz claims that his arguments are not frivolous because he once obtained a reversal of a fee award following an appeal to the Eleventh Circuit, in *Dikeman v. Progressive Ins. Co.,* 312 Fed. Appx. 168 (11th Cir. 2008). Opposition at p. 5, fn. 3. The fact that Pentz may have advanced one legitimate argument in his infamous career as a professional objector is irrelevant to whether Pentz has engaged in inappropriate conduct here. Indeed, that unpublished decision says nothing about whether a professional objector may be sanctioned for delaying litigation for the sole purpose of extorting money from the class or class counsel.

Nor does *Dikeman* say anything about whether a court abuses its discretion when following well settled law. To the contrary, the fee award was reversed there because the trial court issued its ruling without specifying any reasons for concluding that the requested fee was fair and reasonable. *Dikeman,* 312 Fed.Appx. at 171. Apparently having tasted success once, Pentz advances this same argument here, even though it clearly has no legal or factual relevance. To be sure, Mr. Pentz does not have a good faith basis for claiming that the lower court's conclusory fee award in *Dikeman* is

analogous to the rigorous analysis performed by the Court in MDL 1735, both during multiple hearings on the issue of fees and in its subsequent written orders.

Lastly, the fact that Co-Lead Counsel Burton successfully challenged a collusive settlement in another case does not support Pentz's unfounded objections here. The law and facts of that case, which are mischaracterized by Pentz, are inapposite.

As set forth in Ms. Burton's response to objections in the Motion for Final Approval of the Settlement Agreement, the Massachusetts state court in *Salvas v. Wal-Mart* rejected a settlement proffered by several inactive lawyers after finding the settlement process was tainted by collusion. (Dkt Nos. 416, 420.) That tainted settlement was negotiated without the knowledge or consent of Lead Counsel Burton and her clients, the Class Representatives. *Id*. That tainted settlement also violated a newly enacted Massachusetts Rule of Civil Procedure that prohibited reversion of class action settlement funds. In addition, the purported amount of the settlement itself (upon which the fees would be based) was illusory in that it was statistically impossible to reach the ceiling amount. In other words, assuming that 100% of the class members participated in the settlement, elected to use the long form, and qualified for the maximum available award, the ceiling could not be reached. No such defects are present here. *Id*.

Mr. Pentz also mischaracterizes the record in *Salvas* by asserting that Lead Counsel Burton argued that the attorneys' fee should not be based upon the settlement ceiling. This is misleading. Ms. Burton and her clients objected to the unfairness and inadequacy of the proffered settlement in its entirety based in part because the fees sought by inactive counsel were based upon an *illusory* ceiling, and would have consumed nearly 70% of the settlement fund.

The rejected *Salvas* settlement and negotiations are vastly different from the MDL settlement in every way. Once again, had Mr. Pentz conducted the required due diligence, and investigated the settlements in both cases, as he was legally obligated to do before filing objections, he would have learned that the settlement structure in MDL 1735 is not illusory, does not violate any applicable laws, and the fee award comports with well established law.

## IV. CONCLUSION

Neither the case law cited by Mr. Pentz nor the factual record in this case supports his objections, or Opposition briefing, much less an appeal. The paramount fact, which Mr. Pentz does not dispute, is that he injected himself into this proceeding to extort money from Class Counsel based on his threat that, regardless of the ultimate outcome of his frivolous appeal, the settlement funds will be delayed for years. It is entirely appropriate, if not incumbent upon the Court, to include the costs of that delay in the Rule 7 appeal bond, and to sanction these professional objectors for abusing the judicial process.

Dated: February 4, 2010              Respectfully submitted,

                                      /s/ *Carolyn Beasley Burton*
                                      Carolyn Beasley Burton
                                      THE MILLS LAW FIRM
                                      880 Las Gallinas Avenue, Suite 2
                                      San Rafael, CA 94903