Robert J. Bonsignore (BBO # 547880)
BONSIGNORE & BREWER
23 Forest Street
Medford, MA 02155
Telephone: (781) 350-0000
Facsimile: (781) 391-9496
Email: rbonsignore@classactions.us
*Co-Lead Counsel for Plaintiffs*

*Other signatories appear below*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| IN RE WAL-MART WAGE AND HOUR EMPLOYMENT PRACTICE LITIGATION | **MDL 1735** |
| | 2:06-CV-00225-PMP-PAL (BASE FILE) |
| THIS DOCUMENT RELATES TO: ALL ACTIONS EXCEPT KING v. WAL-MART STORES, INC., CASE NO. 07-1486-WY | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR APPEAL BOND FOR OBJECTOR FATIMA ANDREWS**

# TABLE OF CONTENTS

I.    PROCEDURAL AND FACTUAL BACKGROUND .......................................................... 4

II.   GOVERNING RULES AND STANDARD OF REVIEW .................................................. 8

III.  ARGUMENT.................................................................................................................... 10

    A.   The Amount of the Requested Bond is Appropriate ............................................. 12

        1.   Permitted Taxable Costs Include Preparation and Transmission
        of the Record, Reporter's Transcript, and the Fee for Filing

        Notice to Class Members............................................................................ 12

            a.   Preparation and Transmission of the Record......................................... 13

            b.   Cost for Reporter's Transcripts ............................................................. 13

        2.   Administrative Costs.................................................................................. 14

        3.   Deposition Costs Should be Included in the Bond....................................... 15

        4.   Interest on the Class Settlement, Attorney's Fees and Costs
        Should be Included in the Bond ................................................................. 15

    B.   The Court has the Power to Require Andrews to Post a Bond Under
    the Circumstances at Bar...................................................................................... 16

        1.   Objector Andrews Submitted No Financial Information to

i

Indicate She is Financially Unable to Post Bond Despite the
Opportunity to Provide the Court with this Information .............................. 17

2.    Objector Andrews is Not a Resident in a Ninth Circuit State
Raising Significant Difficulties in Collecting Appellate Costs...................... 18

3.    Objector Andrews' Appeal is not Likely to Succeed...................................... 20

a.    After Extensive Review and Consideration by this Court, the
Settlement Amount was Found Fair, Reasonable and Adequate
and was both Preliminarily and Finally Approved
Under Ninth Circuit Law.................................................................... 23

b.    The Fee Award was Found Fair and Appropriate Under Ninth Circuit
Law and Expert Opinions Support Using the Settlement Ceiling, Not
the Floor, as an Appropriate Figure to Base Fees on............................ 23

4.    Whether Objector Andrews' Appeal Shows Bad Faith and Vexatious
Conduct Need Not be Considered ................................................................ 27

IV.    CONCLUSION ............................................................................................................ 31

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Fatima Andrews*

# TABLE OF AUTHORITIES

*Adsani v. Miller*

139 F.3d 67 (2nd Cir. 1998) ......................................................................................... 21

*Air Separation v. Underwriters at Lloyd's of London*

45 F.3d 288 (9th Cir. 1994) ................................................................................. 11, 16

*Aleyeska Pipeline Serv. Co. v. Wilderness Soc'y.*

421 U.S. 240 (1975) ..................................................................................................... 24

*Azizian v. Federated Dept. Stores*

499 F.3d 950 (9th Cir. 2007) ................................................................. 13, 20, 21, 28, 29

*Barnes v. FleetBoston Financial Corp.*

2006 U.S. Dist. LEXIS 71072 (D. Mass.) ............................................................. 29, 30

*Benacquisto v. American Express*

00cv1980, (D. Mn) ....................................................................................................... 29

*Boeing Co. v. Van Gemert*

444 U.S. 472 (1980) ..................................................................................................... 24

*Chiaverini, Inc. v. Frenchie's Fine Jewelry, Coins & Stamps, Inc.*

2008 U.S. Dist. LEXIS 45726 (E. D. Mich. 2008) ...................................................... 17

*Clark v. Experian Information Solutions, Inc.*

2004 U.S. Dist. LEXIS 28324 (D.S.C.) .............................................................. 21, 29

*Curry v. Fairbanks Capital Corp.*

03cv10895 (D. Mass. 2004) ..................................................................................................... 29

*Davis v. UST,*

No. 17305 II, Circuit Court for Jefferson County, TN ................................................................ 29

*Donovan v. Sovereign Secur., Ltd. .*

726 F.2d 55 (9th Cir. 1984) ............................................................................................ 10, 15

*Fleury v. Richemont North America, Inc.*

2008 U.S. Dist. LEXIS 88166 (C.D. Cal. 2008) .............................................. 8, 17, 18, 20, 23, 30

*Galanti v. The Goodyear Tire & Rubber Company*

03cv209 (D.N.J.) ................................................................................................................. 29

*Hanlon v. Chyrsler Corp.*

150 F.3d 1011 (9th Cir. 1998) ............................................................................................... 24

*Hensley v. Eckerhart*

461 U.S. 424 (1983) ............................................................................................................. 24

*Hughes Air West, Inc.*

557 F. 2d 759 (9th Cir. 1977) ............................................................................................... 24

*Iliadis, et al. v. Walmart Stores, Inc., et al.*

Superior Court of New Jersey, Middlesex County, Docket No. MID-L-5498-02 ......................... 5

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Fatima Andrews*

*In Re Allstate Fair Credit Reporting Acti Litigation*

(M.D. Tenn.)................................................................................................................. 29

*In re Airline Ticket Comm'r Antitrust Litig.*

953 F. Supp. 280 (D. Minn. 1997)................................................................................ 25

*In re Am. President Lines*

779 F.2d 714 (D.C. Circuit 1985)................................................................................. 21

*In re Broadcom Corp. Secs. Litig.*

2005 U.S. Dist. LEXIS 45656 (C.D. Cal. 2005) ............................................................ 9

*In re Catfish Antitrust Litig.*

939 F.Supp. 493 (N.D. Miss. 1996).............................................................................. 25

*In re Charter Communications, Inc.*

MDL 1506, 02cv1186 (E.D. Mo. 2005) ....................................................................... 29

*In re Compact Disc Minimum Advised Price Antitrust Litigation,*

MDL 1361 (D. Me. 2003) .............................................................................................. 29

*In Re Daimlerchrysler, et al.*

00cv993 (D. Del.).......................................................................................................... 29

*In re Disposable Contact Lens Antitrust Litigation*

MDL 1030 (M.D. Fla.)............................................................................................ 29, 30

*In re Heritage Bond Litig.*

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Fatima Andrews*

2005 U.S. Dist. LEXIS 13627 (C.D. Cal. 2005) ........................................................... 9

*In re Lorazepam & Clorazepate Antitrust Litig.* .................................................... 24, 25
2003 WL 22037741 (D.D.C. 2003)

*In re Lucent Technologies, Inc. Securities Litigation*
327 F. Supp. 2d 426 (D.N.J. 2004)............................................................................. 29

*In re: Managed Care, et al.*
MDL 1334 (S.D. Fla.) ................................................................................................. 29

*In re: MCI-Subscriber Telephone Rates Ligitaion*
MDL 1275, 99cv1275 (S.D. Ill.) ................................................................................ 29

*In re NE Mutual Life MDL, et al.*
96cv11534 (D. Mass.) ................................................................................................. 29

*In re Pacific Enter. Sec. Litig.*
47 F. 3d 373 (9th Cir. 1995)....................................................................................... 24

*In re PayPal Litigation*
2004 U.S. Dist. LEXIS 22470 (N.D. Cal. 2004) ........................................................ 29

*In re Relafen Antitrust Litigation*
231 F.R.D. 52 (D. Mass. 2005) .................................................................................. 29

*In re Rite Aid Corp.*
MDL 1360 (E.D. Pa.) .................................................................................................. 29

*In re Royal Ahold N.V. Securities & ERISA Litigation*
461 F. Supp. 2d 383 (D. Md. 2006)...................................................................................................29, 30

*In re Serzone Products Liability Litigation*
MDL 1447 (S.D.W.V. 2005)..........................................................................................................29

*In re SmithKline Beecham Corp. Sec. Litig.*
751 F.Sup. 525 (E.D. Pa. 1990).....................................................................................................25

*In re Visa Check/Mastermoney Antitrust Litigation*
192 F.R.D. 68 (E.D.N.Y. 2004).....................................................................................................29

*In re Warfarin Sodium Antitrust Litigation*
212 F.R.D. 231 (D. Del. 2002)......................................................................................................29

*Kaiser Aluminum & Chem. Corp. v. Bonjorno*
494 U.S. 827 (1990) ...............................................................................................................10, 15

*Lachance* v. *United States Smokeless Tobacco*
No. 2006-2007 564. (N.H. 2006)...................................................................................................29

*Landreneau v. Fleet Bank (RI) National Ass'n*
01cv26 (M.D. La.) .......................................................................................................................29

*Lindmark v. American Express*
00cv8658 (C.D. Cal.)....................................................................................................................29

*Lipuma v. American Express*
04cv20314 (S.D. Fla.)......................................................................................................29

*Mangone v. First USA Bank*
206 F.R.D. 222 (S.D. Ill. 2001) .......................................................................................29

*Masters v. Wilhelmina Model Agency, Inc.*
473 F.3d 423(2d Cir. 2007) .................................................................................. 14, 23, 27

*Meyenburg v. Exxon Mobil Corp.*
05cv15 ..............................................................................................................................29

*Ouellette, et al. v. Wal-Mart Stores, Inc., et al.*
Circuit Court for Washington County, Florida, File No. 67-01-CA-326 ........................ 5

*Pace Design & Fab. v. Stoughton Composites*
1997 U.S. App. LEXIS 35780 (9th Cir. 1997)......................................................... 10, 15

*Paul, Johnson, Alston & Hunt v. Graulty*
886 F.2d 268 (9th Cir. 1989)............................................................................................24

*Perkins v. Standard Oil Co.*
487 F. 2d 672 (9th Cir. 1973) .................................................................................... 10, 16

*RBFC ONE, LLC v. Timberlake*
2005 U.S. Dist. LEXIS 19148 (2d Cir. 2005) ................................................................. 8

*Roasted v. First USA Bank*
97cv1482 (W.D. Wash.) ................................................................................................................ 29

*Rodriguez v. West Publishing Corp.*
563 F. 3d 948 (9th Cir. 2009) ....................................................................................................... 24

*Schwartz v. Citibank*
00cv75 (C.D. Cal.) ........................................................................................................................ 29

*Schwartz v. Dallas Cowboys Football*
97cv5184 (E.D. Pa.) ...................................................................................................................... 29

*Six Mexican Farm Workers v. Arizona Citrus Growers*
904 F. 2d 1301 (9th Cir. 1990) ..................................................................................................... 24

*Spark v. MBNA Corp.*
289 F. Supp.2d 510 (D. Del. 2003) .............................................................................................. 29

*Synfuel Technologies, LLC v. Airborne Express, Inc.*
02cv324 (S.D. Ill.) ......................................................................................................................... 29

*Taubenfeld v. Aon Corp.*
415 F.3d 597 (7th Cir. 2005) ........................................................................................................ 29

*Tenuto v. Transworld Systems, Inc.*
2002 WL 188569 (E.D. Pa.) .......................................................................................................... 29

*Torrisi v. Tucson Elec. Power Co.*

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Fatima Andrews*

8 F.3d 1370 (9th Cir. 1993) .................................................................................................. 24

*Tri-Star Pictures, Inc. v. Unger*
32 F. Supp. 2d 144 (2d Cir. 1999) ............................................................................................. 8

*Varacallo v. Massachusetts Mutual Life Insurance Company*
04cv2702 (D.N.J.) .................................................................................................................... 29

*Venen v. Sweet*
758 F.2d 117 (3d Cir. 1985) ...................................................................................................... 8

*Vizcaino v. Microsoft Corp.*
290 F. 3d 1043 (9th Cir. 2002) ........................................................................................... 24, 25

*Washington State Dep't of Transp. V. Washington Nat. Gas Co.*
59 F.3d 793 (9th Cir. 1995) .................................................................................................... 15

*Williams v. MGM-Pathe Communications Co.*
129 F.3d 1026 (9th Cir. 1997) ...................................................................................... 13, 23, 27

*Wing v. Asarco Inc.*
114 F.3d 986 (9th Cir. 1997) ................................................................................................... 24

*Zawikowski v. Beneficial National Bank*
98cv2178 (N.D. Ill.) ................................................................................................................. 29

Other Authorities

28 U.S.C. § 1961

28 U.S. C § 1920

29 U.S.C. §§206, 207(a), 211(c), 215, 216(b)

Fed. R. App. Proc. 7

Fed. R. Civ. P. 23(e)

Fed. R. Civ. P. 11(c)(2)

Fed. R. Civ. P. 39(c)

Fed. R. Civ. P. 54(d)

Pursuant to Rule 7 of the Federal Rules of Appellate Procedure and the District Court's inherent power, Plaintiffs have moved this Court for an Order requiring Objector Fatima Andrews (hereafter, "Objector," "Objector Andrews," or "Andrews") to post an appeal bond in the amount of $608,972.28. This request is limited to the actual costs that the Class will incur, specifically enumerated below, and the costs are fully supported in the accompanying attachments.

In her related filing, Ms. Andrews limited her appeal to the award of attorneys' fees only. *See* Docket no. 522, Notice of Appeal, December 1, 2009. It is her opinion that this Court abused its discretion by exceeding the benchmark 25% fee and awarding Class counsels 33% of the total funds made available through the Settlement.[1] *See* Final Approval Order, Docket no. 491 (hereafter, "Final Approval Order").

Fatima Andrews did not take into account this Court's evaluation of the accepted Ninth Circuit criteria for awarding fees or its findings that supported the upward increase of fees over the benchmark[2] in either her objection or appeal. In addition to not even mentioning a single one of the numerous evaluative criteria this Court worked through in rendering its related findings and orders, the objection and appeal scarcely acknowledge any factual considerations presented by this specific litigation. It is worth noting that, after filing her original objection, Andrews chose not to supplement or amend it, despite the obvious material changes in circumstances that first came with the filing of the Plaintiffs' submissions in support and later with the supporting findings and Orders of this Court. Her appeal also failed to take those material factors into account.

---

[1] Andrews lacks standing to contest attorney fees because she did not file a claim. *See Knisley* v. *Network Associates, Inc.* 2002 U.S. App. LEXIS 24657, *7 (9th Cir. 2002).

In addition to failing to provide any factual support from the record, to date Andrews has utterly failed to offer any relevant or thoughtful analysis on the legal issues. As more fully described below, the legal citations in her filings are either inapplicable or inapposite. For example, the self-serving opinions offered to persuade this Court to limit the amount of the bond unrealistically attempt to extend the holding in the *Azizian,* without taking the time to even gloss over the countervailing considerations established in the uncontroverted public policy that support appellate bonds. The interpretations of the scant applicable legal authority offered by Andrews, in her objection, are so far off they will certainly be wholly rejected in favor of this Court's own thoughtful analysis and application of the law. The failure of her appeal is obvious.

In the exercise of its discretion, this Court may assess an appellate bond that serves to protect the class and satisfy public policy. In fact, the protections afforded only through appellate bonds are necessary in the context of this litigation to prevent the Class from incurring significant economic loss. The express terms of the Settlement Agreement make clear that the funding of the Qualified Settlement Fund (hereafter "QSF") will occur only after all appeals are exhausted. The Class members have already begun to lose the ascertainable economic value of the daily compounding post- judgment interest.[3] Additionally, the class has already been forced to begin to pay the costs of the administration during the interim appeal period. Justice will be best served through the assessment of the requested bond because the appeal by Andrews has already caused the Class to suffer significant economic and non-economic loss.[4]

---

[2] The same is true for the Order on Final Approval which Andrews initially objected to. She failed to take into account this Courts evaluation of the accepted Ninth Circuit criteria as well as its findings.
[3] The funding of the monetary component does not occur until after all appeals are exhausted and final judgment has entered. *See* Docket no, 432, Declaration of Nicole Vamosi, in Support of Final Approval, Attachment A, October 2, 2009, at ¶¶ 1.39, 6.2.
[4] In addition to losing the value of the present use of money and they have also lost the right to enforce the benefits of the injunctive relief afforded through the settlement.

The Ninth Circuit has held that FRAP 7 includes, but is not limited to, "all costs properly awardable at the conclusion of the appeal," as FRAP 39(e) does not contain "any expression to the contrary." *Azizian,* 499 F.3d at 958. There can be no dispute that "*Rule 39(e)* provides: The following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule: (1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) the premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal." *In Re Broadcom Corp., 2005 U.S. Dist. LEXIS 45656,* at \*7-8. Importantly here, the Ninth Circuit also made clear that, "[T]he costs identified in Rule 39(e) are among, but not necessarily the only, costs available on appeal [for purposes of Rule 7]." *Azizian,* 499 F.3d at 958. The appropriate costs on appeal for purposes of Rule 7 are thus to be evaluated on a case by case basis, and imposition of the bond requested remains a matter that will ultimately be decided through this Court's exercise of its discretion, after careful evaluation of all the attendant circumstances.

The objectors have conceded in the record that the assessment of a bond is expected. *See* Appellants Jessica Gaona and Deborah Maddox's (sic) Joint Response to Class Counsel's Motion for Bond Appeal (Docket no. 558), January 19, 2010; *See also* Docket no. 556 (hereafter, "Joint Response"). This is not surprising as the assessment of appeal bonds have played an important role in American jurisprudence for many years. [5]

---

[5] Federal Rule of Appellate Procedure 7 is derived from former Federal Rule of Civil Procedure 73(c) and provides that, "the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R.App. P. 7.

In support of their Bond Motion, Plaintiffs submit this memorandum of points and authorities, including its attachments.[6]  Defendant Wal-Mart supports the assessment of a bond.

Finally, the undersigned counsels did not join in the Request for Bond submitted by Co-Lead Counsel Carolyn Beasley-Burton (hereafter, "Beasley-Burton") and objected to it.[7]

## I. PROCEDURAL AND FACTUAL BACKGROUND

The related procedural and factual background is well known to this court. For sake of brevity, the full background is not repeated. The details provided in the prior memorandums that supported requests for the assessment of Appellate Bonds upon the other Objectors are incorporated herein by reference.  However, there are certain specific procedural and factual background matters relating to the Andrews appeal that have not yet been offered for the Court's consideration.

Objector Andrews did not submit a claim by the September 24, 2009 deadline established by the Court.  Objector Andrews did not opt to exclude herself from the Settlement.[8]  Exercising that option would have given her an unrestricted right to individually advance any and all claims of liability and/or damages, without blocking the other Class Members from the present receipt of the benefits offered through the Settlement.  The record establishes that Andrews and her Counsel knew their choice would block funding of the Qualified Settlement Fund, and that by choosing to object, they would effectively deny participating Class Members the benefit of the present use of the Settlement monies and the entitlement to interest on those funds during the

---

[6] Plaintiffs otherwise rely on the submitted record in this litigation.

[7] Since September of 2009, Carolyn Beasley Burton and the Mills firm have developed a pattern and practice of acting without the advance knowledge and consent of Beasley's Co Lead and all the other Class Counsel that extends beyond the filing of her singular request for a bond against all Objectors that contained obvious errors of law. Plaintiffs incorporate the prior comments on that filing herein by reference. *See* Objection to Beasley Bond Request. Unfortunately this is *at least* the fourth time she has unilaterally acted, and attempts to stop this detrimental practice have been wholly unsuccessful.

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Fatima Andrews*

pendency of any Appeal. *See* Attachment A, Objection, Docket no. 385, September 24, 2009 (hereafter, "Andrews Objection" or "Objection").

After filing her original Objection on September 24, 2009, Andrews and her counsel, Professional Objectors John Pentz and Edward Cochran, took no action what so ever until they filed the Notice of Appeal. *See* Doc. no. 522, December 1, 2009. They failed to address, acknowledge or rebut the significant and highly relevant facts established through the submissions the Plaintiffs filed in support of Final Approval, those that were introduced during hearing, or otherwise object to the detailed findings of this Court.[9] Request is hereby made that the Court deem admitted any facts and declarations which were not sufficiently rebutted by Andrews in Plaintiffs' bond related motions, replies, declarations and exhibits.

While the deficient original submission, and/or the failure to later act in the face of the materially changed circumstances are fatal to the Andrews appeal, there is additional relevant factual and procedural background. Plaintiffs' Counsel duly noticed the deposition of Objector Andrews for October 12, 2009 (moved from the initial date of October 7, 2009 with permission from the Court). *See* Docket no. 447-3, Notice to Take Deposition of Fatima Andrews, October 6, 2009. The Deposition Notice provided Andrews with notice that her deposition was to be taken on October 12, 2009, at 4:00 p.m., at the Law Office of Andrew Krembs, 55 Public Square, Suite 1700, Cleveland, Ohio 44113. A copy of the Deposition Notice was served upon her

---

[8] Andrews is not presently employed by Wal-Mart. *See* Doc no. 385 Objection to Class Action Settlement and Request for Attorney Fees, and Notice of Intent to Appear.
[9] In fact, Attorney Pentz has objected in two other recently reached Wal-Mart Wage and Hour settlement cases. *See Iliadis, et al. v. Wal-mart Stores, Inc., et al.* (Superior Court of New Jersey, Middlesex County, Docket No. MID-L-5498-02), on behalf of objector Charles Ogelsby; and *Ouellette, et al. v. Wal-Mart Stores, Inc., et al.* (Circuit Court for Washington County, Florida, File No. 67-01-CA-326), on behalf of objectors John Buck and Gary Williamson. In *Iliadis,* his client's objection was overruled by the Court. Pentz filed an appeal from that ruling on January 6, 2010. In *Ouellette,* his clients' objection was also overruled by the Court, and Pentz did not file an appeal. In addition, he has filed objections in this case, MDL 1735, on behalf of not only Objector Andrews, but also Objector Stephanie Swift.

counsel, Pentz and Cochran, through electronic service on October 6, 2009. In addition, the Deposition Notice also provided that Class Counsel agreed the location could be moved to Andrews' Counsel's office. *Id.*

On October 9, 2009, Judge Polster of the United States District Court for the Northern of Ohio - Eastern Division granted a motion to compel the attendance of Objector Andrews at the October 12, 2009 deposition. *See* Attachment B, Ohio Order Granting Complaint for Discovery, October 9, 2009.

Also, on October 9, 2009, at 6:26 p.m., Process Server Clint Massengale (hereafter, "Massengale"), an employee of New Age Delivery, Courier and Freight, served the Deposition Subpoena personally upon Andrews at her residence at 16305 Trafalgar Street, Cleveland, Ohio, 44110. *See* Docket no. 458, Subpoena, October 12, 2009. *See* Attachment C, Subpoena of Fatima Andrews and Return of Process Server Clint Massengale. Despite being served both personally and electronically the Subpoena and Deposition Notice, neither Andrews nor her Counsel appeared for the scheduled deposition. Objector Andrews never sought or obtained a protective order. *See* Attachment D, Transcript of Andrews Deposition.

On October 19, 2009, this Court held the Final Fairness Hearing in accordance with its order of Notice. *See* Docket no. 482, Minutes of the Court. The Court explicitly reserved time and invited comments from the Objectors and anyone else that wished to be heard. Fatima Andrews and her counsel chose not to participate in the Fairness Hearing. Instead they filed a Notice of Non-Appearance on the day of the scheduled hearing. *See* Docket no. 468, Notice of Non-Appearance. There is no explanation in the record as to why she and/or her attorney chose not to attend or, alternatively, failed to request an appearance by telephone in order to eliminate cost as a supporting rationale. At the close of the hearing, the Court expressly stated that it

wished the Objectors were present to have considered the evidence presented and the matters discussed at the Final Fairness hearing. In addition to not attending, Fatima Andrews and her Counsel never ordered the transcript of the hearing prior to filing the Notice of Appeal.

On November 2, 2009, in its Final Approval Order, after carefully considering and expressly taking into account the evidence offered within the voluminous filings, the evidence offered at and subsequent to the hearing, and, based upon its own expansive institutional knowledge and grounded understanding of the intricacies of this litigation as well as the efforts of the counsels for the respective parties, this Court granted Final Approval of the Settlement, thereby effectively overruled Andrews's Objection. *See* Docket no. 491, Final Approval Order at 4,. *See also* Minutes of the Final Approval Hearing at 3, Docket no. 482

The deadline for receipt of all claim forms was November 9, 2009. *See* Settlement Agreement at ¶ 8. Objector Andrews did not file a claim for compensation with the settlement claims administrator, Rust.[10] Ms. Andrews thus lacks standing to appeal the order on fees. Remarkably, in her Objection and Appeal, Ms. Andrews does not identify the basis upon which she claims to have standing to appeal the award of attorney fees or even mention the *Knisley* decision. *Knisley* v. *Network Associates, Inc.* 312 F.3d 1123, 1126 (9th Cir. 2002).

On November 2, 2009, this Court approved Plaintiffs' Motion for Final Approval of Settlement and entered final judgment, reserving an award of attorney's fees, expenses and incentive payments to the Plaintiffs. *See* Docket no. 491, Final Approval Order.

On November 20th, 2009, this Court held a follow-up hearing on the issue of fees, expenses and incentive awards, having the benefit of additional briefing and expert reports. *See* Docket no. 520, Minutes, November 20, 2009. The record establishes that Andrews did not file

7

any supplemental submission for the Court's consideration in advance of the second hearing on fees, expenses and incentive awards. Again, despite notice to all parties, including objector Andrews and her counsels, she offered no evidence; she failed to appear for any of the scheduled hearings relevant to her objection and did not submit any request to participate by telephone.

On December 1, 2009, Objector Andrews filed her appeal as to the award of attorney's fees only. *See* Notice of Appeal, Docket no. 522. Prior to doing so, she never acted to amend, update or supplement her original filing. Andrews did not order a copy of any MDL 1735 transcript prior to filing her appeal.

Plaintiffs have now moved for an appeal bond under Fed. R. App. Proc. 7.

## II. GOVERNING RULES AND STANDARD OF REVIEW

Rule 7 of the Federal Rules of Appellate Procedure (hereafter, "FRAP 7") empowers a United States District Court in its discretion to "require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. The purpose of an appeal or cost bond in circumstances such as the present one is "to protect the amount the appellee [class] stands to have reimbursed," including the costs of delaying payment of the judgment, should the appeal ultimately fail. *See Fleury v. Richemont North America, Inc.*, 2008 U.S. Dist. LEXIS 88166, at \*18-19 (C.D. Cal. 2008) (further citations omitted). A Federal District Court retains jurisdiction after the filing of an appeal to issue orders regarding the filing of bonds under FRAP 7.[11] While FRAP 7 does not expressly provide a list of factors to consider in determining whether to require a bond, other courts, including the Northern District of California, have relied upon a variety of accepted factors including: (1) the appellant's financial ability to post a bond; (2) the risk that the appellant would not pay the

---

[10] *See* Attachment E Affidavit of Amanda Myette Relating to the Failure of Objectors Gaona and Andrews to File a

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Fatima Andrews*

appellee's costs if the appeal loses; (3) the merits of the appeal;[12] and (4) whether the appellant has shown bad faith or vexatious conduct.[13] *See Fleury*, 2008 U.S. Dist. LEXIS 88166, at \*19. The District Court's findings and rulings on the amount of any cost and/or appeal bond are subject to an abuse of discretion standard of review.[14]

The law is clear, when Objector Andrews' appeal fails, she, not the members of this class, will be required to pay for the related ascertainable economic harm that her baseless appeal causes to accrue and the class is to be protected from absorbing that loss through the appellate bond process. Applying the applicable principals of law, and the public policy that appellate bonds are intended to serve to the present circumstances, Andrews should justly be made to guarantee the full measure of her ultimate financial responsibility. It was her voluntary choice of action that prompts this request. Prior to filing her appeal, Andrews' counsels no doubt advised her as to the related costs and risks, including the fact that a bond would be sought. No affirmative action of the class can be tied to their need for the security afforded by a bond.

The class is entitled by law to be protected from what will otherwise be a significant unrecoverable economic loss. The law does not require the class to be forced to pay the costs of Andrews' appeal[15] or that they be forced to assume the risk Andrews will not be able to pay the related costs when her appeal fails. Requiring the Class to eventually be held to pay the costs of

---

Claim, Rust Consulting, at ¶ 7, January 19, 2010

[11] *Venen v. Sweet*, 758 F.2d 117, 120 n.2 (3d Cir. 1985).

[12] *See also RBFC ONE, LLC v. Timberlake*, 2005 U.S. Dist. LEXIS 19148, at \*3-4 (S.D.N.Y. 2005); *Tri-Star Pictures, Inc. v. Unger*, 32 F. Supp. 2d 144, 147-49 (S.D.N.Y. 1999).

[13] It is the impression of the practicing bar that this factor has not been favorably received by the Ninth Circuit. *See Azizian*, 499 F.3d at 961.

[14] *Azizian*, 499 F.3d at 955 (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1028 (9th Cir. 2001) (as amended)). *See also In re Broadcom Corp. Secs. Litig.*, 2005 U.S. Dist. LEXIS 45656, at \*6-7 (C.D. Cal. 2005) ("[t]he determination of the amount of a bond necessary to ensure payment of costs on appeal is left to the discretion of the district court"); *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13627, at \*2 (C.D. Cal. 2005) ("Heritage Bond") (citing *Young v. New Process Steel*, 419 F.3d 1201, 1203 (11th Cir. 2005)).

9

appeal that are due from Andrews is unjust. It certainly runs counter to the longstanding public policy supporting appellate bonds. The class vehemently objects and demands that Andrews be made to carry her own financial burden and assume her own risk- the risk of ultimately being responsible for costs on appeal.

Post-judgment interest is mandatory for any money judgment pursuant to 28 U.S.C. § 1961.[16] The purpose of an appellate bond is to compensate a successful plaintiff for not being paid during the time of the award and payment.[17] In fact, not only is post-judgment interest assessable upon the judgment, but in certain circumstances, where a fee shifting provision is applicable, it is also separately to be determined upon attorney's fees[18] and costs.[19] The Plaintiffs, through the undersigned counsels who join in this request, expressly do not make a such claim for interest on those fee shifting and costs considerations here.

## III. ARGUMENT

This Court should require Objector Andrews to file an appeal bond because it is the only available means to protect the interests of the Class from ascertained economic harm. Further, only an appeal bond will ensure that Andrews will make good on the payment of all costs incurred as a result of her appeal, when it ultimately fails and the time comes for her to pay. The facts and circumstances specific to this case, make clear that the Andrews' appeal forces upon the Class needless cost and delay by blocking entirely Plaintiffs' receipt of the economic and injunctive recovery provided by the Settlement. This request for security is reasonable,

---

[15] Andrews is easily distinguished from other traditional appellants. Here, it is not her own perceived cause that she advances. She rejected the option of opting out and prosecuting her own claim, Instead she seeks to advance the cause of the very persons who object to her doing so.

[16] *Donovan v. Sovereign Secur., Ltd.*, 726 F.2d 55, 58 (9th Cir. 1984).

[17] *Pace Design & Fab. v. Stoughton Composites,* 1997 U.S. App. LEXIS 35780, at *2-3 (9th Cir. 1997) (citing *Donovan,* 726 F.2d at 58); *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835 (1990).

[18] *Perkins v. Standard Oil Co.,* 487 F.2d 672, 676 (9th Cir. 1973).

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Fatima Andrews*

necessary and falls squarely within the law and the public policy supporting the assessment of

bonds.[20] The eventual failure of Andrews' appeal is as obvious as the fact it is meritless. On

balance, justice requires that the Class, as well as Andrews, be offered the full measure of

protection available to them under the law.[21] This reasonable protection afforded to the Class by

law fairly addresses the future ascertainable loss by eliminating unnecessary and reasonably

expected obstacles to the prompt resolution of the certain future claim against Objector Andrews

when her appeal fails.

As to the costs to be included in the bond, Plaintiffs request the following:

1.) $5,538.20 as the cost for the preparation and transmission of the record, specifically, the costs of printing and copying briefs and other submissions. *See* Declaration of Robert Bonsignore in Support of Plaintiff's Motion for Appeal Bond for Objector Fatima Andrews at Paragraph 25

2.) $1,403.90 as the cost for reporter's transcripts. *See* Declaration of Robert Bonsignore in Support of Plaintiff's Motion for Appeal Bond for Objector Fatima Andrews at Paragraph 22.

3.) $200,000.00 for the administrative fees/costs associated with this appeal. *See* Declaration of Amanda Myette, Exhibit V to Plaintiff's Motion for Appeal Bond for Objector Stephanie Swift. Swift has advanced that administrative costs are an improper component of an appellate bond. *See* Docket No. Docket no. 556, Appellants Jessica Gaona, Stephanie Swift, Deborah Maddox and Fatima Andrews' Joint Response to Plaintiffs' Nancy Hall's Motion for a Bond for Appeal, January 4, 2010, at 2. In the alternative is the direction of Objector Andrews to set the bond including $1,680,770.36, the cost of notice. *See e.g.* Attachment F, Affidavit of Amanda J. Myette Relating to Cost of Class Notice dated January 21, 2010.

4.) $69.18 for the cost of the special process server and $130.00 for the cost of Andrews' non-appearance at the Deposition. This is a total of $199.18. *See* Declaration of

---

[19] *Air Separation v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1994) (quoting *Wheeler v. John Deere Co.*, 986 F.2d 413, 415 (10th Cir. 1993)) ("this court has determined that once a judgment is obtained, interest thereon is mandatory without regard to the elements of which that judgment is composed").

[20] These topics were exhaustively addressed in the previous requests for bonds as to Objectors Gaona, Maddox and Swift. For the sake of brevity the applicable law and argument included in those submissions are incorporated herein by reference.

[21] There is objective evidence in the record here that this Court and the Parties did not viscerally respond in a negative way and then seek a punitive bond to deter objections. It is a matter of record that another objection was embraced by all concerned. *See* Docket no. 379, Clifford Ferguson Objection to Settlement, September 22, 2009.

Robert Bonsignore in Support of Plaintiff's Motion for Appeal Bond for Objector Fatima Andrews at Paragraph 24.

5.) $401,831.00 as the estimated interest lost on the floor of $65 million guaranteed payment assuming median time on appeal of 19 months. *See* Declaration of John Ward, Ph.D., at ¶ 7, Table 1. *See also* Declaration of Wendy Lascher, J.D., at ¶ 19, Exhibits III and IV respectively to Plaintiff's Motion for Appeal Bond for Objector Fatima Andrews.

The total requested is $608,972.28.

## A. The Amount of the Requested Bond is Appropriate

The Court should exercise its discretion to protect the Class. Only by requiring Objector Andrews to post an appellate cost bond in the amount of $608,972.28 will the Class be certain of being made whole following the denial of the Andrews appeal. The amount of the requested bond is appropriate when the facts specific to this appeal are reasonably reviewed under the applicable Ninth Circuit law and public policy.

### 1. Permitted Taxable Costs Include Preparation and Transmission of the Record, Reporter's Transcript, and the Fee for Filing Notice to Class Members of the Appeal

The Ninth Circuit has held that FRAP 7 includes, but is not limited to, "all costs properly awardable at the conclusion of the appeal," as FRAP 39(e) does not contain "any expression to the contrary." *Azizian,* 499 F.3d at 958.

The Ninth Circuit has further made clear that, "[T]he costs identified in Rule 39(e) are among, but not necessarily the only, costs available on appeal [for purposes of Rule 7]." *Azizian,* 499 F.3d at 958. This straight forward point of law may be of importance in addressing Andrews' anticipated position.[22] Clearly, the imposition of the bond is a matter of this Court's discretion and will be determined after consideration of all the relevant circumstances.

---

[22] Counsel for Objector Andrews represents another Objector and filed an Opposition to a bond request which can be reasonably taken as indicative of what may be expected here. *See* Docket no 583, Response to Motion for Bond Pursuant to FRAP 7 (hereafter, "Pentz Response"), January 26, 2010. In opposing Plaintiffs Request for an Appellate Bond as to Objector Stephanie Swift, Andrews' Counsel offered an inaccurate and self serving opinion of

The amounts requested as appropriate are as follows:

### a.    Preparation and Transmission of the Record

Plaintiffs request $5,538.20 as the cost for the preparation and transmission of the record, specifically, the costs of printing and copying briefs and other submissions. *See* Declaration of Co-Lead Counsel Robert Bonsignore in Support of Plaintiff's Motion for Appeal Bond for Objector Fatima Andrews at Paragraph 25. This amount is properly included within the requested bond amount and may be awarded in the discretion of this Court.

### b.    Cost for Reporter's Transcripts

Plaintiffs request $1,403.90 as the cost for reporter's transcripts. *See* Declaration of Robert Bonsignore in Support of Plaintiff's Motion for Appeal Bond for Objector Fatima Andrews at Paragraph 22. This amount is properly included within the requested bond amount and may be awarded in the discretion of this Court.

### 2.    Administrative Costs

As a direct result of this appeal, class members will suffer additional ascertainable economic loss during the pendency of this frivolous appeal. As specifically enumerated below, the Class will incur the future costs over the next two years[23] that are established in an un-rebutted opinion offered by Rust Consulting, Inc., (hereafter, "Rust Consulting" or "Rust") *See*

---

the actual holding in the *Azizian* case. *Azizian v. Federated Dept. Stores*, 499 F.3d 950 (9th Cir. 2007). Attorney Pentz's take on *Azizian* is entirely contrary to the public policy supporting the imposition of Appellate Bonds and is an unreasonable reading of the case. He suggests that the *Azizian* holding was intended to eviscerate the traditional public policy concerns including the rights of the class to reasonable protection against future frivolously incurred Appellate costs, as well as the discretion allowed to this Court in when assessing an Appellate bond. The Class requests this Court to take note that this is at least the second time that Counsel has inaccurately cited Ninth Circuit law. The first being the incorrect conclusion they offered relating to the award of fees being measured against the "ceiling." *See* Pentz response at 1-2. That incorrect conclusion ran contrary to *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997) and *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007) allowing fees against the ceiling.
[23] Plaintiffs offered the opinion of an attorney who specializes in Ninth Circuit Appeals on the reasonably length of time this Court's Opinion finally approving the settlement of MDL 1735 and awarding attorney fees and costs will remain on appeal. It is thus far un-rebutted.

13

Declaration of Amanda Myette, Exhibit V to Plaintiff's Motion for Appeal Bond for Objector Fatima Andrews.  Rust is the Claims Administrator who was appointed by this Court to administer the settlement and is well known to this Court. *See* Docket #322, Order Preliminarily Approving Settlement, Approving Form and Manner of Notice, and Scheduling Hearing on Fairness of Settlement Pursuant to Fed. R. Civ. P. 23(e).

Class administration costs are properly included in this Rule 7 bond.  In 2005, the California Central District Court sustained the Plaintiffs' class argument that the Rule 7 bond should include additional costs for the delay and disruption of administering a settlement of the case. *In re Broadcom Corp.*, 2005 U.S. Dist. LEXIS 45656, at \*9-11.  The class successfully argued in the case, as the Plaintiffs assert here, that the objectors' appeal effectively postponed distribution of the entire judgment for well over a year. *See Id.*  It is again important for this Court to note that the attorneys for the Objectors failed to acknowledge or cite authority in their various submissions.

Plaintiffs request $200,000.00 for the administrative fees/costs associated with this appeal.  This amount is properly included within the requested bond amount and may be awarded here in the discretion of this Court.

3.  **Deposition Costs**

Title 28 U.S.C. § 1920 and Fed. R. Civ. P 54(d) each allows the award of certain deposition costs, even if those depositions were not used at trial.[24]  Deposition costs for a special process server was $69.18, and a cost for non-appearance at the Deposition was $130.00.  This totals $199.18. *See* Declaration of Robert Bonsignore in Support of Plaintiff's Motion for

---

[24] *Washington State Dep't of Transp. v. Washington Nat. Gas Co.*, 59 F.3d 793, 806 (9th Cir. 1995).

Appeal Bond for Objector Fatima Andrews at Paragraph 24. This amount is properly included within the requested bond amount and may be awarded in the discretion of this Court.

### 4. Interest on the Class Settlement, Attorney's Fees and Costs Should be Included in the Bond

Objector Andrews has indicated that this Court limit its consideration of the basis of the bond to actual costs that will be incurred by the Class. Post-judgment interest is mandatory for any money judgment pursuant to 28 U.S.C. § 1961.[25] When applying the express language of this statute to the facts of this appeal and the public policy concerns supporting the assessment of appellate bonds all other considerations that may be raised to oppose this requested assessment pale in comparison.

Post-judgment interest is mandatory for any money judgment pursuant to 28 U.S.C. § 1961.[26] There is no question, and there has been no debate, that the purpose of post-judgment interest is to compensate a successful plaintiff for not being paid during the time of the award and payment.[27] Not only is post-judgment interest assessable upon the judgment, but also separately upon the attorney's fees[28] and costs.[29] The interest assessed for each component of the judgment is calculated from the "date of the entry of the judgment."[30]

In the present case, the interest calculated is supported by expert opinions. Plaintiffs submitted the Declaration of Economist John Ward, Ph.D. (hereafter, "Dr. Ward"), who used the required interest rate as set forth in 28 U.S.C. § 1961 and the Declaration of appellate counsel

---

[25] *Donovan v. Sovereign Secur., Ltd.*, 726 F.2d 55, 58 (9th Cir. 1984).

[26] *Donovan v. Sovereign Secur., Ltd.*, 726 F.2d 58 (9th Cir. 1984).

[27] *Pace Design & Fab. v. Stoughton Composites,* 1997 U.S. App. LEXIS 35780, *2-3 (9th Cir. 1997) (citing *Donovan,* 726 F.2d at 58);*Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990).

[28] *Perkins v. Standard Oil Co.*, 487 F.2d 672, 676 (9th Cir. 1973).

[29] *Air Separation v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1994) (quoting *Wheeler v. John Deere Co.*, 986 F.2d 413, 415 (10th Cir. 1993)) ("this court has determined that once a judgment is obtained, interest thereon is mandatory without regard to the elements of which that judgment is composed").

[30] *See* 28 U.S.C. § 1961.

Wendy Lascher to calculate to the penny the interest that will be lost due to the appeal. Dr. Ward estimates an interest loss in the amount of $401,831.00 on the floor of $65 million, assuming median time on appeal of 19 months. *See* Declaration of John Ward, Ph.D., Exhibit III to Motion for Appeal Bond for Objector Fatima Andrews. *See also* Declaration of Wendy Lascher, J.D., Exhibit IV to Motion for Appeal Bond for Objector Fatima Andrews.

The unrebutted proof in the record establishes ascertainable loss that the class will incur as a result of appeal and lends support to the Plaintiffs' demand that the mandatory statutory interest be included in the bond. The express provision of statutory interest in 28 U.S.C. § 1961 and the public policy underlying the assessment of bonds supports the exercise of this Court's discretion the assessment of a bond that protects the Class from this certain loss.

Plaintiffs request that the Court assess the sum of $401,831.00 in interest as part of the bond. This amount should be properly included with the requested bond amount and may be awarded in the discretion of this Court.

## B. The Court has the Power to Require Andrews to Post a Bond Under the Circumstances at Bar

### 1. Objector Andrews Submitted No Financial Information to Indicate She is Financially Unable to Post Bond Despite the Opportunity to Provide the Court with this Information

The first factor, the appellant's financial ability to post a bond, is satisfied here on the record before the Court. In *Fleury*, the District Court held the first factor weighs in favor of a bond if, "there is no indication that plaintiff is financially unable to post bond." *See Fleury*, 2008 U.S. Dist. LEXIS 88166, at *22. Here, like the objector in *Fleury*, Andrews has submitted no financial information to indicate that she is financially unable to post a bond despite the opportunity to submit such information when she filed her appeal. *See id.* at *21. Objector Andrews' counsel has previously suggested that objectors did not have an opportunity to place

16

such information into the record in the Ninth Circuit. *See* Docket 581, Opposition to Motion for Appeal Bond for Objector Stephanie Swift, January 26, 2010. It is not disputed that Fatima Andrews and her counsel were on notice of her deposition as well as an order compelling her to attend, yet they chose not to appear (or seek a protective order). Ms. Andrews also chose not to attend either hearing. Her failure to place into the record any showing of a financial inability to post bond clearly weighs in favor of a bond and is of her own doing.[31] By ignoring an order of this Court allowing discovery to be taken of her on an expedited basis,[32] and an order issued by Judge Polster [33] compelling her attendance, Ms Andrews cut off the opportunity of Class Counsel to examine her and test her on this issue. There is no question that she willfully and knowingly chose not to attend, and in doing so, violated a court order. Service was affected upon her and there is no debate from her Counsel that they were unaware of Judge Polster's Order. The record before this Court establishes that Counsel and Andrews failed to appear for the properly noticed deposition. *See* Attachment D, Deposition Transcript, October 12, 2009. Pursuant to the express provisions of Federal Rule of Civil Procedure 37, in failing to appear at a deposition she was ordered to appear at, all reasonable inferences may be indulged against her. *See* Rule 37 of the Federal Rules of Civil Procedure (hereafter, "Rule 37").

Ms Andrews was afforded a further opportunity to create a record on this point during the Final Approval hearing.[34] She further declined to appear or otherwise make arguments in favor of her objections at the subsequent hearing on fees and incentive awards during the time this

---

[31] *Chiaverini, Inc. v. Frenchie's Fine Jewelry, Coins & Stamps, Inc.*, 2008 U.S. Dist. LEXIS 45726, at *7 (E.D. Mich. 2008) ("There is no indication that plaintiff is financially unable to post bond, and thus this factor weighs in favor of a bond").
[32] *See* Docket no. 441, Unopposed Emergency Motion for an Expedited Deposition Schedule, October 5, 2009.
[33] *See* Attachment B, Ohio Order Granting Complaint for Discovery, October 9, 2009. Both she and her counsels were served, and counsel, too, failed to appear for the deposition. *See also* Attachment C, Subpoena of Fatima Andrews and Return of Process Server Clint Massengale; Attachment D, Deposition Transcript, October 12, 2009.

Court set aside for Objectors to speak. Objector Andrews clearly had the duty and opportunity to supplement the record and her objection at any time prior to the filing of her appeal. It is of her own doing and/or her counsels that they chose to sit on such rights, instead, opting for the strategic choice not to take advantage of any one of the many ways she had available to enter into the record information that arguably would support a contrary finding.

Most importantly, even had she affirmatively acted in further support of her objection, on balance justice would demand that this consideration not overwhelm the countervailing considerations to and of the Class that support the assessment of a bond. Put in its proper perspective, this consideration does not eliminate the just need to protect the class and insure they are made whole. In fact, it pales in comparison.

### 2.   Objector Andrews is Not a Resident in a Ninth Circuit State, Raising Significant Difficulties in Collecting Appellate Costs

The second factor, the risk that the appellant would not pay the appellee's costs if the appeal is unsuccessful, also weighs in favor of a bond. In *Fleury,* the District Court held the second factor weighs in favor of a bond if the Objector does not reside in a state within the Circuit making it more, "difficult for the Settling parties to collect their costs should they prevail on appeal." *Id.* at *22.

Appellant Andrew is a resident of Ohio, which is not a state within the Ninth Circuit. Once the appeal fails, Plaintiffs face significantly increased difficulties collecting their costs because Andrews does not reside in the Ninth Circuit and refuses to follow orders issued in her locale. Andrews and her counsels have already demonstrated their lack of respect for this Court and the judicial system. The Plaintiff Class should not be forced to absorb Andrew's appellate

---

[34] In her objection, Objector Andrews advised the Court she intended to appear at the fairness hearing through her

costs. If the requested appellate bond is not granted in its entirety, all the Class will receive, in exchange for the ascertainable economic loss, is the possibility Andrews may vary from her established pattern and practice of not fulfilling Court related obligations, regardless of how serious the consequences or how direct the instruction of a Court may be. At best, the chase will be on, thereby causing even greater expense and loss.

Andrews's choice to enter the fray for the express sole purpose of substituting her judgment for that of this Court and the remainder of the Class was voluntary. *See* Docket no. 581, page 4. Andrews acknowledges on page 1 of her objection that she knowingly opted to force delay and other costs on the remainder of the class, despite other alternatives that would not have imposed the economic loss on others.[35] *See* Attachment A, Docket No. 385, Andrews' Objection at 1. Should the Appeal be dismissed, there should be no question that Class members will seek to be compensated for every penny of their ascertainable economic loss that they are entitled to from Fatima Andrews. Absent the assessment of a bond, this process will be lengthy and uncertain. All Americans are in rocky financial times. Because of that consideration, and others, there is no guarantee that Andrews' ability to earn or liquidate assets as possessed now will be available to pay the funds that will be due the Class in the event that the appeal fails.

Objector Andrews' lack of residence in the Ninth Circuit and the other considerations set forth herein, coupled with the clear intent of the applicable public policy, weigh in favor of the assessment of the appeal bond requested of Andrews. In contrast, no considerations favor the certain new round of litigation that would ensue following Andrews' unsuccessful appeal, thereby pressing the collection of the economic loss due the class. It is certainly more prudent,

---

counsel.
[35] Andrews writes "... No money has been paid into the escrow".

under the totality of the circumstances presented, to extend to the Appellee Class the protections offered by law through the assessment of the reasonable bond.

### 3.    Objector Andrews' Appeal is Not Likely to Succeed

The third factor, the merits of the appeal, also weighs in favor of a bond. In *Fleury,* the District Court held the third factor weighs in favor of a bond if, after the Court has considered each of the objections, it finds them meritless and not likely to succeed on the merits of her appeal. *See id.* at *23. In *Fleury*, the court noted when final approval was granted, the objector's objections were reviewed, found meritless and final approval was granted. *Id.* at *9, 23. The court in *Fleury* held that the lack of likelihood of success on the objections' merits favored a bond requirement. *Id.* at 23. The lack of likelihood of success on the merits of the Andrews objection as set forth herein favors a bond requirement.

Here, while the undersigned Plaintiffs believe the third factor weighs in favor of a bond, we expressly request that the Court *not* consider any potential bad faith or frivolous conduct as a consideration for the imposition of the appeal bond or including within the amount of the bond any fees, costs or expenses for such conduct. *See* Docket no. 561 dated January 8, 2010. While the *Fleury* court did consider the merits of the objections, it refrained from considering any of the objections' potential bad faith in consideration of the *Azizian* holding. *Id.* at 23-24, fn. 3.

It is very important for this Court to note that the undersigned Plaintiffs[36] expressly withhold the offering of any included evidence of bad faith in advancing a request for a bond as to any and all objectors, including Fatima Andrews.[37] Any such reference is unintended for that

---

[36] Carolyn Beasley, Carol LaPlant, and Robert Mills have refused to join with the undersigned Plaintiffs. Dirk Ravenholt has recently represented his support of the requests for bonds on the Objectors and expressed a desire to be included on related pleadings and until we are advised to the contrary we will honor his request.

[37] We are aware of the Ninth Circuit Court of Appeals opinion in *Azizian* and have consciously acted to avoid advancing, in support of this bond, arguments that run counter to its holding. *See Azizian* at 961. ("We agree with the D.C. Circuit that the question of whether, or how, to deter frivolous appeals is best left to the courts of appeals,

purpose of assessing a bond and/or is merely superfluous to this motion. Plaintiffs' advance that such references can and will be used in support of a later Rule 38 request at the Appellate Court level and call upon Objectors counsel to correct the record as needed to address that intent. Any failure to so act is taken as a waiver.

During two separate hearings, this Court established that it had scrutinized the related filings and attachments, including each objection, and weighed the facts and law prior to coming to its own conclusions. In fact, the Court carefully went through the required evaluative factors and made findings supporting its ultimate approval of the Settlement and the award of fees and incentive awards.[38] *See* Docket no. 491, Order, 9-13, November 2, 2009 ("hereafter, Final Approval Order"). *See also* Docket no. 482, Transcript of Final Fairness Hearing, October 19, 2009; Docket no. 520, Hearing on Attorney Fees and Incentive Awards, November 20, 2009. Andrews, through counsel, was provided with a full opportunity to support her position through the objection process. She failed to avail herself of any of these opportunities; insuring that her objection and appeal will ultimately fail.

Following the filing of her objection, Fatima Andrews and her counsel made the affirmative choice not to participate in any step in the Final Approval process. While the fact

which may dispose of the appeal at the outset through a screening process, grant an appellee's motion to dismiss, or impose sanctions including attorney's fees under *Rule 38*.") *See also In re Am. President Lines,* 779 F.2d 714, 717 (D.C. Circuit 1985). Allowing district courts to impose high *Rule 7* bonds on where the appeals *might* be found frivolous risks "impermissibly encumber[ing]" appellants' right to appeal and "effectively preempt[ing] this court's prerogative" to make its own frivolousness determination. *Id. at* 717, 718; *See also Adsani* v. *Miller,* 139 F.3d 67, 79 (2nd Cir. 1998) ("[A]ny attempt by a court at preventing an appeal is unwarranted and cannot be tolerated.") (quoting *Clark v. Universal Builders, Inc.,* 501 F.2d 324, 341 (7th Cir. 1974))." Any overlap of argument or the presentation of facts not favored by that opinion is not an intentional attempt to circumvent that ruling. However, should this bond be appealed we do intend to request the Appeals Court to revisit and refine that decision to reflect the realities of present day class action practice and the damage that professional objectors inflict on our system of Civil Justice.

[38] As previously detailed, Fatima Andrews and her counsels were welcome to supplement her original objection at any time, but did not do so even after the circumstances that existed at the time of her original September 24, 2009 filing materially changed. Andrews was compelled to appear at deposition, but she and her counsel knowingly and

21

that Andrews willfully and knowingly chose to waive several opportunities to supplement her original filing is noteworthy – it is the actual record and the woefully inadequate content of her objection that makes its ultimate failure certain here – a fact which did not escape the attention of this Court in making its judgment on Final Approval.

Andrews is bound by and limited to the contents of her objection and appeal. Andrews' failure to consider, address or rebut a single fact, argument or finding that was made part of the record, after the filing of her original appeal, is fatal. Relying on a submission that predates *all* of the related briefing and evidence, as well as *all* of the findings this Court made in support of the Order Andrews is appealing, is frivolous. Andrews' earlier reference to the fact that "there is a body of federal jurisprudence regarding attorney's fees that shows reasonable people often differ" lends no support what so ever, because, in addition to supporting the exercise of discretion by this Court in awarding fees based on the many factors it made findings on, this vague reference fails to properly identify and adequately support the level of error that would result in or require an Appellate Court reversing this Court's discretionary award of fees. *See* Docket no. 556, Response to Motion for Bond Imposition of Appeal Bond filed by Objectors Gaona, Swift, Andrews, and Maddox and Their Attorneys and Seeking Any Other Appropriate Relief to Protect the Class, January 4, 2010.

While vague legal references are the best Objector Andrews offers to support reversal of this Court, it is noteworthy that the scant applicable legal authority she offers includes a completely inapposite citation to Ninth Circuit law i.e. that attorney fees should have been based

---

willfully made the choice not to appear. She and her counsel were also invited to attend and contribute to the Final Approval hearing, and were allotted time by this Court but did not.

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Fatima Andrews*

on the floor.[39]  The Ninth Circuit has expressly accepted floor/ceiling settlements.  *See also*

*Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997); *Masters v.*

*Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007).  It also must be pointed out that

this argument, logic and math utilized by Andrews is factually inapplicable in the instant

litigation.  *See* Docket no. 507-1, Declaration of Prof. Silver, November 17, 2009.  The intent of

Andrews' baseless appeal is obvious, and her claims of error are both procedurally and

substantively without merit.  *Dewitt v. Western Pacific,* 710 F.2d 1448, 1451 (9th Cir. 1983).

For these and the reasons that follow, the third *Fleury* factor is reasonably met here.[40]

### a.  After Extensive Review and Consideration by this Court, the Settlement Amount was Found Fair, Reasonable and Adequate and was both Preliminarily and Finally Approved.

Andrews' first objection, that the guaranteed "Floor" amount of $65,000,000 in the

Settlement Agreement was inadequate for 29 states, has been waived because it was not included

in her appeal.  Moreover, this argument is inapplicable to the facts of this case and the fee award

was otherwise supported in this Court's related findings.  Therefore, Andrews' Objection to the

guaranteed Floor is frivolous, unsupported, not likely to succeed, and warrants the assessment of

the reasonable bond requested.

### b.  The Fee Award was Found Fair and Appropriate Under Ninth Circuit Law and Expert Opinions Support Using the Settlement Ceiling, Not the Floor, as an Appropriate Figure to Base Fees on.

---

[39] The reference to filings by Ms. Beasley and Mr. Mills contain only their opinions. They are not adopted or supported by the remainder of class counsel and fare no better than the inapposite law cited.
[40] It is the goal of Professional Objectors to have their objection accepted at the Appellate level and to be placed in the system for review because this brings with them the delay they seek as leverage to extract payments from Plaintiffs counsels.  In the long run, whether they win is not important as to individual cases because they play the averages and losing appeals is a cost of doing business.  Over time, it has become an established fact that each time they have docketed a colorable appeal the odds are with them that they will receive a payment in exchange for dropping the appeal.

Andrews' second objection, that attorney's fees should not exceed 25% of the Floor is also unfounded and unsupported and has been exhaustively dismantled above. Several arguments should be added to the mix.

First, it is elementary that the Ninth Circuit recognizes the common fund doctrine approach used in this Settlement. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir 1989); *Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). *See also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Aleyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975). A percentage of the recovery approach, the approach used in this Settlement, is the predominant method for determining attorney's fees in the Ninth Circuit. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376-77 (9th Cir. 1993); *Paul, Johnson*, 886 F.2d at 272; *Six Mexican Farm Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). This Court finally approved the attorney's fees and found them fair and appropriate under Ninth Circuit Law. *See* Final Approval Order at 10-13. It did so after careful analysis and review of the required factors.

Further, the relevant factors of this case justified an award of 33.333% in this case because: 1) the result achieved was significant; 2) the litigation was complex and required a high level of skill; 3) the quality of the work performed was high; 4) the litigation carried significant risks; 5) the fee was contingent and precluded other employment; 6) similar percentages were awarded in other complex cases; and 7) all Plaintiffs, Class counsel, Wal-Mart and Class reaction supported the award. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *Vizcaino*, 290 F.3d at 1048-1059; *Hanlon*, 150 F.3d at 1027; *Wing v. Asarco Inc.*, 114 F.3d 986 (9th Cir. 1997); *In re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995); *and In re Lorazepam & Clorazepate Antitrust Litig.*,

2003 WL 22037741, at *9 (D.D.C. 2003).

The offer of proof that the Court expressly relied on is overwhelming. *See* Complaint, Docket nos. 53, 56, 138, 154, 158, 289, 300-301; Class Certification, Docket nos. 89-94, 203-220, 231, 248, 249, 323; Preliminary Approval, Docket nos. 302-322; Final Approval, Docket nos. 425-438, 486. Failing to address these pleadings in any way, Andrews guaranteed the failure of her appeal.

On November 2, 2009, after an additional hearing, and taking into consideration a second round of briefing, as well as more evidence that included the additional expert opinion of the preeminent authority on attorney fees in American class actions, Prof. Charles Silver (hereafter, "Professor Silver"), the Court, subsequently approved the award of attorney's fees and incentive payments for the class representatives.[41] *See* November 20, 2009 Minutes, Docket no. 520. *See also* Docket no. 507, Attachment A to Supplement Declaration of Robert J. Bonsignore in Support of Motion for Award of Attorneys Fees and Expenses and Incentive Awards Relating to Proposed Settlement with Defendant Wal-Mart, Expert Report of Professor Charles Silver Concerning the Bearing of the Claim Rate on the Fee Award (hereafter, "Silver Declaration"), November 17, 2009. A lodestar cross-check analysis also supported the reasonableness of a 33.333% award here. *See Vizcaino,* 290 F.3d at 1050-51 & n.5. Attorneys in common fund cases are ordinarily also reimbursed for reasonable out-of-pocket expenses and the reimbursement of expenses here was appropriate. *See Lorazepam*, 2003 WL 22037741, at *10; *In re Airline Ticket Comm'r Antitrust Litig.*, 953 F. Supp. 280, 286 (D. Minn. 1997); *In re Catfish Antitrust Litig.*, 939 F.Supp. 493, 503 (N.D. Miss. 1996); *In re SmithKline Beecham*

---

[41] Objector Andrews, through counsel, was noticed, was also reasonably notified of the subsequent hearing and chose not to attend or offer any supplement to her original Objection.

*Corp. Sec. Litig.*, 751 F.Sup. 525, 534 (E.D. Pa. 1990). Here, the multiplier afforded Plaintiffs' counsels was modest.

Second, the application of Ninth Circuit law establishing that attorney's fees are calculated from the ceiling was particularly appropriate under this settlement. *See* Silver Declaration at 8-11. *See also* Declaration of William B. Rubenstein in Support of Settlement Approval and Fee Petition at 3, 24-32 (hereafter, Rubenstein Declaration), Docket no. 417, October 10, 2009. It is clear that, in proclaiming at the outset that the attorney's fees were incorrectly calculated as a matter of law, Andrews, through counsel, has failed to carry out even the most rudimentary factual and legal research. As described above, the early filing of the objection, coupled with the failure to supplement after either the briefing or findings and Order, rules out any possibility that Andrews took into account why the fee was just and reasonable.

The record establishes that Andrews offered no facts or relevant/original argument in support of her quest to reverse well-established Ninth Circuit authority or meaningfully this Court's well supported and reasoned discretionary award of fees. That Andrews failed to even acknowledge the evidence and arguments offered in support, including the common opinion of two highly respected legal authorities, is merely "more sauce on an already cooked goose".[42]

In proclaiming that such a settlement and/or award of attorney fees is wrong and should be reversed,[43] Andrews simply and boldly seeks to substitute her judgment for that of this Court. Andrews "opinion" also runs contrary to the expert opinions properly admitted into evidence by the Plaintiffs. Notably, while Plaintiffs offered opinions on fees through experts, Andrews offered only her general position as a lay witness. In the first place, it is the contention of the

---

[42] The contents of the opinions of Prof. Silver and Prof. Rubenstein speak for themselves, and a gratuitous recap is not necessary.

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Fatima Andrews*

class that Andrews is not qualified to render an opinion on fees, and because she offers no supporting arguments, expert opinions, affidavits or facts substantiated by legitimate means - only her own unsupported conclusions - her objection is otherwise meritless and the failed outcome of her appeal is obvious.

In essence, Andrews seeks to rewrite Ninth Circuit law without providing any reasoning and/or any basis in fact or legal principle. Andrews' inability to address the twice failed attempt of other Ohio class members to certify the litigation or address the anticipated risks and costs of advancing the case anew, this objector fails to offer even a hint as to how the best interests of the class are served through her objection. She also revealed an astounding level of ignorance on matters that are highly relevant to any sound evaluation of the fairness and reasonableness of the Order(s) in issue.[44]

Therefore, Andrews' Objection is unsupported, not likely to succeed, and presents no obstacle to the assessment of the reasonable bond requested.

### 4. Whether Objector Andrews's Appeal Shows Bad Faith and Vexatious Conduct Need Not Be Considered

A fourth possible factor, whether the appellant has shown bad faith or vexatious conduct, would weigh in favor of a bond. However, even though Plaintiffs' believe that the appellants have acted in bad faith, demonstrated vexatious conduct, and that their counsels are professional objectors, this factor is not discussed in depth here or advanced on the present record as a basis

---

[43] The Ninth Circuit has expressly accepted floor/ceiling settlements. *See* Rubenstein Declaration at ¶¶33-35. *See also Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007).
[44] Although we advance that Andrews waived the right to argue anything other than attorney fees on Appeal the logic and argument advanced in the earlier objections relating to the merits of the settlement have been incorporated herein by reference.

for the request for a bond because of the *Azizian* holding.[45]  The analyses of the first three factors are sufficient to conclude that a bond should be imposed upon Objector Andrews.[46]

Moreover, Andrews's Objection is entirely inadequate.  When weighed against the burden of proof required by the class to set aside the District Court's findings, Andrews's flimsy offering does not support the denial of Plaintiffs' request for a bond or demonstrate that it is unreasonable under the circumstances.  For all the reasons discussed herein, Andrews is not likely to succeed on the merits of her appeal.  In any event, the merits of Andrews' appeal weigh in favor of the imposition a bond because nothing contained therein guarantees the likelihood of success or that, in the event she loses, the Plaintiffs will recover their costs.

The absence any factual or legal support for the conclusions she offered through her counsel, John J. Pentz, Esq. (hereafter, "Pentz"), comes as no surprise.  Pentz is a self-described

---

[45] The concerns of class counsel as to Beasley-Burton continue to increase.  Beasley-Burton has again filed a document without the advance knowledge, advice or consent of other class counsel, this time purporting to offer a Reply on behalf of the undersigned.  *See* Docket no. 584, Reply Brief of Co-Lead Counsel Carolyn Beasley Burton to Objector Stephanie Swift's Opposition to Motion for Appeal Bond, February 4, 2010.  The contents of the Beasley Burton filing run counter to the strategy and understanding of the law advanced by the undersigned counsels and in fact undermine our strategy. Separate filings will more fully address that unauthorized filing. As this Court is aware, the undersigned counsel previously objected to content in Beasley-Burton's December 18th, 2009 memorandum, Plaintiffs' Memorandum in Support of Motion to Require Objectors Gaona, Swift, Andrews, and Maddox and Their Attorneys to Post Appeal Bonds, and Seeking Any Other Appropriate Relief to Protect the Class (hereafter, "Beasley-Burton Bond Memo"). *See* Docket no. 536, Beasley-Burton Bond Memo December 18, 2009, In that submission, the vexatious conduct of professional objector Pentz was relied upon as a reason to assess a bond. The issue of the vexatious conduct of the Professional Objectors is not relied upon herein because it is recognized as being an impermissible basis for District Court to rely on when assessing a bond.

[46] The 9th Circuit does not favor review and consideration of bad faith or vexatious conduct by the District Courts because, "Allowing districts court to impose high Rule 7 bonds on where the appeals might be found frivolous risks impermissibly encumber[ing] appellants' right to appeal and effectively preempt[ing] this court's prerogative to make its own frivolousness determination." *Azizian*, 499 F.3d at 961.  Nonetheless, we summarize what other circuits would have considered because in the event this bond is appealed, we will ask the Appeals Court to revisit its holdings in the 2007 *Azizian* case.  In *Fleury*, 2008 U.S. Dist. LEXIS 88166, at *19, the District Court found evidence that Objector's counsel, had at least one appeal already found to be frivolous by another court and also that the Objector's lack of understanding of the basis of the appeal was "troubling" but refrained making a finding because of the recent case *Azizian v. Federated Department Stores, Inc.*  There is no question that Objector Andrews is represented by a Professional Objector.  Pentz is a lawyer who is well known for posing objections to class settlements in an attempt to extract a payment from the class members. *See* fn. 7 above.  The appellate courts in reviewing the appeal of the instant settlement is entitled to a full record when passing on a Rule 38 request especially in light of the extraordinary burden they place upon Appellee's seeking to enforce that rule of law.

28

"Professional Objector" with a jaded history. [47] More importantly under the limitations

presented by the four corners of her objection and appeal  Andrews' legal arguments run contrary

---

[47] Boiled to their essence, Professional Objectors are most often described as and compared to extortionists or other thugs who extract cash through wrongful means. The reality is that what Professional Objectors seek in exchange for simply dropping their objections/appeals is to be paid off. Seldom if ever does the class receive a benefit. Pentz has served as a Professional Objector in at least 39 cases. *See Davis v. UST*, No. 17305 II, Circuit Court for Jefferson County, TN; *Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005); *In re Lucent Technologies, Inc. Securities Litigation*, 327 F. Supp. 2d 426 (D.N.J. 2004); *In re Relafen Antitrust Litigation*, 231 F.R.D. 52 (D. Mass. 2005); *Spark v. MBNA Corp.*, 289 F. Supp.2d 510 (D. Del. 2003); *In re Warfarin Sodium Antitrust Litigation*, 212 F.R.D. 231 (D. Del. 2002); *In re Charter Communications, Inc.*, MDL 1506, 02cv1186 (E.D. Mo. 2005); *Curry v. Fairbanks Capital Corp.*, 03cv10895 (D. Mass. 2004); *Azizian v. Federated Department Stores, Inc.*, 03cv3359 (N.D. Cal. 2005); *In re Serzone Products Liability Litigation*, MDL 1447 (S.D.W.V. 2005); *In re Visa Check/Mastermoney Antitrust Litigation*, 96cv5238 (E.D.N.Y. 2004); *In re Compact Disc Minimum Advised Price Antitrust Litigation*, MDL 1361 (D. Me. 2003); *Tenuto v. Transworld Systems, Inc.*, 2002 WL 188569 (E.D. Pa.); *In Re Allstate Fair Credit Reporting Acti Litigation*, (M.D. Tenn.); *Lipuma v. American Express*, 04cv20314 (S.D. Fla.); *Clark v. Experian Information Solutions, Inc.*, 2004 U.S. Dist. LEXIS 28324 (D.S.C.); *Schwartz v. Citibank*, 00cv75 (C.D. Cal.); *Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001); *In re PayPal Litigation*, 2004 U.S. Dist. LEXIS 22470 (N.D. Cal.); *Benacquisto v. American Express*, 00cv1980, (D. Mn); *In re Disposable Contact Lens Antitrust Litigation*, MDL 1030 (M.D. Fla.); *Galanti v. The Goodyear Tire & Rubber Company*, 03cv209 (D.N.J.); *In re NE Mutual Life MDL, et al.*, 96cv11534 (D. Mass.); *In Re Daimlerchrysler, et al.*, 00cv993 (D. Del.); *In re Rite Aid Corp.*, MDL 1360 (E.D. Pa.); *Schwartz v. Dallas Cowboys Football*, 97cv5184 (E.D. Pa.); *Zawikowski v. Beneficial National Bank*, 98cv2178 (N.D. Ill.); *Synfuel Technologies, LLC v. Airborne Express, Inc.*, 02cv324 (S.D. Ill.); *Meyenburg v. Exxon Mobil Corp.*, 05cv15; *In re: MCI-Subscriber Telephone Rates Ligitaion*, MDL 1275, 99cv1275 (S.D. Ill.); *Lindmark v. American Express*, 00cv8658 (C.D. Cal.); *Roasted v. First USA Bank*, 97cv1482 (W.D. Wash.); *In re: Managed Care, et al.*, MDL 1334 (S.D. Fla.); *Varacallo v. Massachusetts Mutual Life Insurance Company*, 04cv2702 (D.N.J.); *Landreneau v. Fleet Bank (RI) National Ass'n*, 01cv26 (M.D. La.); *Barnes v. FleetBoston Financial Corp.*, 2006 U.S. Dist. LEXIS 71072 (D. Mass.); *In re Royal Ahold N.V. Securities & ERISA Litigation*, 461 F. Supp. 2d 383 (D. Md. 2006); *Lachance* v. *United States Smokeless Tobacco*, no. 2006-2007 564. (N.H. 2006).

Of these cases, the majority were overruled or denied by the court. Some examples include *Taubenfeld v. Aon Corp.*, where the court overruled Pentz's client's objection. "The objector's quarrel with the portion of lead counsel's award pertaining to reimbursement for expenses barely warrants comment." *Taubenfeld* at 600. Also, in *In re Lucent Technologies, Inc. Securities Litigation*, where the court ruled against the objectors and found that Pentz's client's objection had misstatements of facts and was misleading. *Id.* In *Spark v. MBNA Corp.*, the Court ruled against Pentz's client's objection and found the objector's, "opposition to class counsel's fee petition appears to be nothing more than an attempt to receive attorneys' fees." *Id.* In *In re Warfarin Sodium Antitrust Litigation*, the Court overruled Pentz's specific objections and found that Pentz's client seemed to have a misunderstanding of the Settlement.

In *In re Compact Disc Minimum Advised Price Antitrust Litigation*, the Judge called Pentz's obejction, "groundless," called Pentz a "professional objector" and required Pentz to post an appeal bond, which he never ended up posting. The district court required the objector, who was represented by Pentz, to post a bond because that appeal "might be frivolous," and because imposition of sanctions on appeal pursuant to Rule 38, was "a real probability." The court specifically concluded that a bond for "damages resulting from delay or disruption of settlement administration caused by a frivolous appeal may be included in a Rule 7 bond." *Id.*, *5. Mr. Pentz and his client voluntarily dismissed their appeal thirteen days later. (MDL 1361 Docket item number 325.) The Court in this case specifically noted, "I have previously noted that Attorney Pentz...filed a groundless objection following the fairness hearing, ... and he appears to be a repeat objector in class action cases. *See, e.g., Spark v. MBNA Corp.*, 48 Fed. Appx. 385, 386 (3d Cir. 2002) (listing Mr. Pentz, from The Objectors Group, as counsel for objectors); *Tenuto v. Transworld Sys.*, 2002 U.S. Dist. LEXIS 1764, 2002 WL 188569 (E.D. Pa. Jan. 31, 2002), at *2 (same)." *Id.* at 6.

to the Ninth Circuit law cited in support of the award of fees without any effort or content devoted to explaining why.

Therefore, the weighing of the *Fleury* factors demonstrates that the posting of a bond under FRAP 7 is necessary and appropriate here.

---

In *In re Disposable Contact Lens Antitrust Litigation,* the Court ruled against Pentz's client, found that counsel for the objector, Pentz, never even read the case file in its entirety and that the objector's ignorance would prejudice the parties if allowed to intervene. In *Barnes v. FleetBoston Financial Corp,* the Court ruled against a portion of the objection and found for a bond for the remainder of the objections. Further, the Court found objector, "Feldman and her attorney, John Pentz (who is also her son-in-law) are professional objectors…" *Id.* Finally, in *In re Royal Ahold N.V. Securities & ERISA Litigation,* the Court overruled Pentz's objection and further held, "Pentz is a professional and generally unsuccessful objector…" Also, "In summary, the Pentz/Tsai objection was not well reasoned and was not helpful." *Id.*

Undoubtedly, Pentz's "objections and appeals are not truly made to advance the interest of the class members. Pentz has admitted that "the bulk of his income does not come from court-awarded fees," and that the payments he receives from the parties to drop his objections "usually dwarf court awards." "So how does Pentz make a living? He refuses to generalize, arguing that every case is unique. But he will acknowledge that the bulk of his income does not come from court-awarded fees…[T]hat kind of fee is the exception rather than the rule, Pentz says. Instead, objectors make most of their money when class counsel pay them to drop their objections. Pentz concedes that payments from class counsel usually dwarf court awards. Joe Whatley of Birmingham-based Whatley Drake, who faced off with Pentz in three different cases, says he has always paid Pentz to drop objections without making changes to the settlement. 'It's like having to pay a tax,' Whatley says." Lisa Lerer, "Fringe Player, The Objector, John Pentz, Class Action Fairness Group, Sudbury, Massachusetts," Litigation 2004, a supplement to The American Lawyer & Corporate Counsel, Oct. 1, 2004. Pentz does not dispute that he is a Professional Objector and even if he did there is ample evidence that he is and that his objections are not received favorably by the Courts.

In *Joyce Beasley* v. *Prudential General Insurance,* Opinion and Order Granting Plaintiffs Motion to Strike the Notice of Intent to Appear, Objection to Class Action Settlement and Request for Attorneys' Fees and Motion to Intervene of Objector Thomas and Marilyn Bell, Circuit Court of Miller County, Arkansas, June 9th, 2006 (hereafter, Arkansas Opinion."), the Court found that Pentz's, "practice appears devoted to filing objections in class action settlements. *See* Attachment G, Arkansas Opinion. Pentz appears to be a repeat objector in class action cases which is sometimes referred to as a professional objector." *Id.* at 5 (citation omitted) The Arkansas Opinion reviewed *In re Compact Disc,* where the Court imposed an appeal bond against Pentz because Pentz's appeal appeared frivolous and filed a "groundless objection." *Id.* The Arkansas Opinion further noted that at no point did Pentz reveal to the Court in his Affidavit that a federal district court had found him to be a repeat objector who filed a groundless objection. *Id.* Pentz's affidavit falsely stated that he was "never sanctioned or disciplined by any lawyer disciplinary agency in any jurisdiction." *Id.* at 12. This Court further found that Pentz engaged in the unlicensed and unauthorized practice of law in Arkansas when he filed the Objectors' Pleadings without first submitting the required *pro hac vice* materials. *Id.* at 16. The court found that because, "Pentz specializes in objecting to Class Settlements. Because of his chosen vocation, Pentz should be familiar with the basic process of searching the case law of various states." *Id.* Also, the Court noted, "Given that many if not most, sanction, contempt and Rule 11 orders are not published in publicly available databases, this Court has significant questions whether Pentz is concealing additional information relevant to any motion for admission *pro hac vice* he may file in the future." *Id.* at 13. Additionally, the Court found that it was Pentz's "conduct in and of itself that renders Objectors' Pleadings null and void." *Id.* at 16. The Court found that because Pentz's Pleadings were found to be null and void, the Objectors lost their right to formally assert their objections. *Id.* Finally, the Court found that Pentz operates under the trade name of "Class Action Fairness Group," a name that is similar to the federal Class Action Fairness Act, however, "Pentz neither appears to have a relationship with any governmental agency charged with enforcing the Class Action Fairness Act and appears to represent a public or charitable legal services group. Pentz has not rebutted that he operates on a for-profit basis." *Id.* at 8.

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Fatima Andrews*

## CONCLUSION

This Court's finding that the Plaintiffs' request for the assessment of a bond is reasonable and in the appropriate amount is not dependent upon any one consideration. Rather, it will be arrived at after reviewing and considering the totality of the facts and circumstances attendant to this request, in accordance with the legal nuances controlling in the Ninth Circuit.

The Plaintiffs submit that the Court should exercise its plenary discretion to impose an appeal bond against Objector Andrews in the amount of $608,972.28 and for such other and further relief as this Honorable Court deems just, proper and equitable. The Court should exercise its discretion after consideration of the public policy driving the assessment of Appellate Bonds and the law of the Ninth Circuit after consideration of grounds set forth by the Plaintiffs.

Dated: February 10th, 2010                          Respectfully submitted:

                          By:     s/ Robert J. Bonsignore
                                  Robert J. Bonsignore
                                  BBO # 547880
                                  BONSIGNORE & BREWER
                                  23 Forest Street
                                  Medford, MA 02155
                                  Telephone: (781) 350-0000
                                  rbonsignore@class-actions.us

Daniel D. Ambrose, Esq.
Ambrose Law Group
1007 East West Maple Road
Walled Lake, MI 48390
(248) 624-5500

Craig O. Asbill, Esq.
Charles G. Monnett & Associates
200 Queens Road
Suite 300
Charlotte, NC 28204
(704) 376-1911

Franklin D. Azar, Esq.
Rodney P. Bridgers, Jr., Esq.
Nathan J. Axvig, Esq.
Franklin D. Azar & Associates P.C.
14426 East Evans Ave.
Aurora, CO 80014
(303) 757-3300

Richard Batesky, Esq.
Attorney at Law
22 E. Washington St., Suite 610
Indianapolis, IN 46204
(800) 822-2039

Robin E. Brewer, Esq.
Nicole Vamosi, Esq.
Kelly Elam, Esq.
Rick Kirchner, Esq.
Julie Baker, Esq.
Bonsignore & Brewer
23 Forest Street
Medford, MA 02155
(781) 350-0000

Mark C. Choate, Esq.
Choate Law Firm LLC
424 N. Franklin Street
Juneau, AK 99801
(907) 586-4490

Todd S. Collins, Esq.
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
(800) 424-6690

Adriana Contartese, Esq.
Rafaela Hanley, Esq.
Attorney at Law
866 East Fifth St.
Boston, MA 02127
(617) 268-3557

Lanny H. Darr
Schrempf, Kelly, Knapp & Darr, Ltd.
307 Henry St.
Suite 415
Alton, IL 62002
(618) 465-2311

Paul C. EchoHawk, Esq.
Nathan Long, Esq.
EchoHawk Law Offices
Paul C. EchoHawk
505 Pershing Avenue
Pocatello, ID 83205
(208) 478-1624

R. Deryl Edwards, Jr., Esq.
606 S. Pearl Ave.

Ivy L. Frignoca, Esq.
Lambert Coffin Haenn

Joplin, MO 64801
(417) 624-1962

Courtney French, Esq.
Fuston, Petway & French, LLP
3500 Colonnade Parkway
Suite 300
Birmingham, AL 35243
(205) 977-9798

Christopher R. Gilreath, Esq.
Gilreath & Associates
550 Main Street
Suite 600
Knoxville, TN 37902
(865) 637-2442

Donald S. Goldbloom, Esq.
12590 National Pike
Grantsville, MD 21536
(301) 895-5240

J. Thomas Henretta, Esq.
Law Offices of J. Thomas Henretta
400 Key Building
159 South Main Street
Akron, OH 44308
(330) 376-7801

Christopher Meeks, Esq.
Lynch, Meeks & Battitori
1031 Military Avenue
Baxter Springs, KS
(620) 856-2771

Pamela Mullis, Esq.
The Mullis Law Firm
1229 Elmwood Ave
Columbia, SC 29201
(803) 799-9577

477 Congress St, 14th Fl
Portland, ME 04112
(207) 874-4000

Troy N. Giatras, Esq.
The Giatras Law Firm, PLLC
118 Capitol Street
Suite 800
Charleston, WV 25301
(304) 343-2900

Vincent J. Glorioso, III, Esq.
The Glorioso Law Firm
815 Baronne Street
New Orleans, LA 70113
(504) 569-9999

Gregory F. Greiner, Esq.
Greiner Law Office
630 G Ave.
Grundy Center, IA 50638
(319) 824-6951

Thomas H. Johnson, Esq.
Thomas H. Johnson Law Office
410 Hickory St.
Texarkana, AR 71854
(870) 773-6359

Mike Miller, Esq.
Stacey E. Tjon, Esq.
Solberg, Stewart, Miller & Tjon
1129 Fifth Avenue South
Fargo, ND 58103
(701) 237-3166

Glen W. Neeley, Esq.
Attorney at Law, P.C.
863 25th St.
Ogden, UT 84001
(801) 612-1511

Gary S. Nitsche, Esq.
Weik, Nitsche, Dougherty
1300 N. Grant Ave, Suite 101
Wilmington, DE 19899
(302) 655-4040

D. Michael Noonan, Esq.
Shaheen & Gordon, P.A.
140 Washington Street
P.O. Box 977
Dover, NH 03821
(603) 749-5000

Raymond A. Pacia, Esq.
Attorney At Law, LTD
50 Power Road
Pawtucket, RI 02860
(401) 727-2242

Jeffrey M. Padwa, Esq.
Padwa Law
303 Jefferson Blvd.
Warwick, RI 02888
(401) 921-4800

Arthur Y. Park, Esq.
Laurent J. Remillard, Jr., Esq.
John C. McLaren, Esq.
Park Park & Remillard
707 Richards Street
Suite 500
Honolulu, HI 96813
(808) 536-3905

Wayne D. Parsons, Esq.
Wayne D. Parsons Law Offices
Dillingham Business Center
Suite 201C
1406 Colburn Street
Honolulu, HI 96817
(808) 845-2211

Dirk A. Ravenholt, Esq.
Ravenholt & Associates
2013 Alta Drive
Las Vegas, Nevada 89106
(702) 647-0110

John Rausch, Esq.
P.O. Box 905
Waterloo, IA 50704
(319) 233-3557

Dan Rausher, Esq.
Attorney at Law
26 Court Street
Suite 1604
Brooklyn, New York 11242
(718) 596-7333

Thomas R. Ricci, Esq.
Law Office of Thomas R. Ricci
303 Jefferson Blvd.
Warwick, RI 02888
(401) 921-4800

Fred Schultz, Esq.
Greene & Schultz
Showers Plaza
320 W. 8th Street
Suite 100
Bloomington, IN 47404
(812) 336-4357

Cynthia K. Smith, Esq.
Jasper Smith Olson, P.C.
202 W. Spruce St.
P.O. Box 7785
Missoula, MT 59807
(406) 541-7177

Stephen M. Smith, Esq.
Joseph Smith Ltd.
2100 Kecoughtan Road
Hampton, VA 23661-0437
(757) 244- 7000

Laurence W. Stinson, Esq.
Bradley D. Bonner, Esq.
Bonner Stinson, P.C.
P.O. Box 799
128 East Second Street
Powell, WY 82435
(307) 754-4950

Mark Tate, Esq.
Tate Law Group, LLC
2 East Bryan Street
Suite 600
Savannah, GA 31401
(912) 234-3030

Jill P. Telfer, Esq.
Law Offices of Jill P. Telfer
331 J. Street, Ste. 200
Sacramento, CA 95814
(916) 446-1916

Matthew Tobin, Esq.
201 S. Phillips Avenue
Suite 200
Sioux Falls, SD 57104
605-366-9715

Jay A. Urban, Esq.
Urban & Taylor S.C.
4701 North Port Washington Road
Milwaukee, WI 53212
(414) 906-1700

Ernest Warren, Jr., Esq.
Walker Warren & Watkins
838 SW First Avenue
Suite 500
Portland, OR 97204
(503) 228-6655

Christopher P. Welsh, Esq.
James R. Welsh, Esq.
Welsh & Welsh, P.C. L.L.O.
9290 West Dodge Road
100 The Mark
Omaha, Nebraska, 68114
(402) 384-8160

*Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Fatima Andrews*

## CERTIFICATE OF SERVICE

I hereby certify that on February 10th, 2010, a copy of the foregoing *Memorandum in Support of Plaintiffs' Motion for Appeal Bond for Objector Fatima Andrews* was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/ Robert J. Bonsignore
Robert J. Bonsignore