Robert J. Bonsignore (BBO # 547880)
BONSIGNORE & BREWER
23 Forest Street
Medford, MA 02155
Telephone: (781) 350-0000
Facsimile: (781) 391-9496
Email: rbonsignore@classactions.us
*Co-Lead Counsel for Plaintiffs*

*Other signatories appear below*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| IN RE WAL-MART WAGE AND HOUR EMPLOYMENT PRACTICE LITIGATION | **MDL 1735** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS EXCEPT KING v. WAL-MART STORES, INC., CASE NO. 07-1486-WY | 2:06-CV-00225-PMP-PAL (BASE FILE) |

## PLAINTIFFS' REPLY TO APPELLANT STEPHANIE SWIFT'S RESPONSE IN OPPOSITION TO CLASS COUNSEL'S MOTION FOR BOND ON APPEAL

# TABLE OF CONTENTS

I.     INTRODUCTION.................................................................................................. 2

II.    ARGUMENT....................................................................................................... 8

       A.     In Her Appeal, Objector Swift Dropped her Objection
              to the Settlement and Limited Herself to the Award of
              Attorney Fees .................................................................................... 10

       B.     The Interpretation of *Azizian* offered by Swift Contradicts
              Public Policy and the Express Language of the Holding ..................... 11

       C.     Plaintiffs Did not Request a Bond that Included Attorney's Fees.......... 12

       D.     Objector Swift Failed to Submit the Necessary Financial
              Documentation to Establish her Inability to Afford the Requested
              Bond and Inappropriately Requested Judicial Notice and the
              Class Objects to Swift's Request for Judicial Notice ........................... 12

       E.     The Standard for a Finding of an Abuse of Discretion is High
              and Objector Swift's Opposition Brief Offers Nothing to Support
              Such a Finding..................................................................................... 15

       F.     Using the Settlement Ceiling, Not the Floor, as an Appropriate
              Figure to Base Fees is Supported and Appropriate Under
              Ninth Circuit Law and Expert Opinion ................................................ 16

       G.     Objector Swift's Contention that Plaintiffs Seek a Rule 7
              Bond Based on a Frivolous Claim is False ........................................... 20

       H.     Objector Swift has Failed to Respond to Plaintiffs' Inclusion of
              Interest in the Bond Request and Should be Deemed to have
              Waived any Response to the Interest Request ....................................... 21

I.   Objector Swift Offers No Case Law in Support of her Objection
     to the Inclusion of Administrative Costs in the Requested Bond .......................... 22

J.   The Opposition Brief Offers Nothing More than Distasteful
     Personal Attacks, Inapposite Snippets of Law and Conclusory Opinions ............ 24

K.   Rule 38 Sanctions Separate from Bond Request and Have Not
     Been Requested by Plaintiffs ............................................................................... 24

IV.  CONCLUSION ................................................................................................................ 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

*A&M Records, Inc. v. Napster, Inc.*
239 F.3d 1004, 1028 (9th Cir. 2001) ............................................................................................ 4

*Air Separation v. Underwriters at Lloyd's of London*
45 F.3d 288 (9th Cir. 1994) ........................................................................................................ 22

*Allapattah Services v. Exxon Corp.*
2006 US Dist Lexis 88829 (Fla. 2006) ......................................................................................... 3

*Azizian v. Federated Dept. Stores*
499 F.3d 950, 958 (9th Cir. 2007) .................................................................. 3, 4, 9, 11, 12, 21, 25

*Barnes v Fleet National Bank*
2009 US Dist Lexis 71072 (Ma. 2006) ......................................................................................... 3

*Boeing Co. v. Van Gemert*
444 U.S. 472 (1980) .................................................................................................................... 16

*Cardizem CD Antitrust Litigation v Hoechst Aktiengesellscaft*
391 F.3d 812 (6th Cir. 2004) ........................................................................................................ 3

*Conroy v 3M Corp.*
2006 US Dist Lexis 96169 (N.D. Ca. 2006) .................................................................................. 3

*Donovan v. Sovereign Secur., Ltd.,*
726 F.2d 58 (9th Cir. 1984) ........................................................................................................ 22

*Fleury v. Richemont North America, Inc.*

2008 U.S. Dist. LEXIS 88166 (C.D. Cal. 2008) ............................................................ 2, 11, 25

*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.,*

4 F.3d 819 (9th Cir.1993) ................................................................................................... 15

*In re Broadcom Corp. Secs. Litig.*

2005 U.S. Dist. LEXIS 45656 (C.D. Cal. 2005) ...................................................................... 4, 23

*In re Compact Disc Minimum Advertised Price Antitrust Litig*

292 F. Supp. 2d 184 (D. Me. 2003).................................................................................... 16, 21

*In re Excess Value Ins. Coverage Litig.*

2004 U.S. Dist. LEXIS 14822 (S.D.N.Y. 2004) ) ........................................................................ 16

*In re Heritage Bond Litig.,*

2005 U.S. Dist. LEXIS 1367 (C.D. Cal. 2005) ........................................................................ 4, 23

*In re Pharm. Indus. Average Wholesale Price Litig.*

520 F. Supp. 2d 274 (D. Mass. 2007) ) ...................................................................................... 23

*In re NASDAQ Market-Makers Antitrust Litigation*

187 F.R.D. 124 (N.Y. 1999)................................................................................................ 3, 21

*Kaiser Aluminum & Chem. Corp. v. Bonjorno*

494 U.S. 827 (1990) ........................................................................................................... 22

*Plaintiffs' Reply to Appellant Stephanie Swift's Response in Opposition to Class Counsel's Motion for Bond on Appeal*

*Lolli v. County of Orange,*

351 F.3d 410 (9th Cir. 2003) .................................................................................... 10

*Lynn v. Sheet Metal Workers' Int'l Ass'n,*

804 F.2d 1472 (9th Cir. 1986) .................................................................................. 10

*Masters v. Wilhelmina Model Agency, Inc.*

473 F.3d 423 (2d Cir. 2007) ..................................................................................... 17

*Meehan v. County of Los Angeles*

856 F.2d 102 (9th Cir. 1988) .................................................................................... 10

*Pace Design & Fab. v. Stoughton Composites*

1997 U.S. App. LEXIS 35780 (9th Cir. 1997) ) ....................................................... 22

*Perkins v. Standard Oil Co.*

487 F.2d 672 (9th Cir. 1973) .................................................................................... 22

*Sckolnick v. Harlow*

820 F.2d 13 (1st Cir. 1987) ...................................................................................... 21

*Smith v. Jackson,*

84 F.3d 1213 (9th Cir.1996) ..................................................................................... 15

*Williams v. MGM-Pathe Communications Co.*

129 F.3d 1026 (9th Cir. 1997) .................................................................................. 17

*Wheeler v. John Deere Co.*

986 F.2d 413, 415 (10th Cir. 1993) ............................................................................. 22

*Wing v. Asarco Inc.,*

114 F.3d 986 (9th Cir. 1997) ..................................................................................... 15

*Yeagley v. Wells Fargo & Co*

2008 U.S. Dist. LEXIS 5040 (N.D. Cal. 2008) .......................................................... 16

*Young v. New Process Steel*

419 F.3d 1201 (11th Cir. 2005) .................................................................................... 4

Other Authorities

LR 7-2(d)

28 U.S.C. § 1961

Federal Rules of Appellate Procedure 7

Federal Rules of Appellate Procedure 38

FRE 201

## I.    INTRODUCTION

Plaintiffs respectfully submit this Reply in Support of Plaintiffs' Motion For Appeal Bond for Objector Stephanie Swift (hereafter, "Requested Appellate Bond").[1]  A bond in the amount requested is required to protect the class from the costs that will be incurred by Swift's appeal. *See* Docket nos. 566-573.  Nothing contained in the Opposition to Motion For Appeal Bond For Objector Stephanie Swift [2] rebuts the positions reasonably established in the moving papers that support the allowance of their requested bond, including:

1.    the purpose of an appeal or cost bond in circumstances such as the present one is "to protect the amount the appellee [class] stands to have reimbursed," including the costs of delaying payment of the judgment, should the appeal ultimately fail. *See Fleury v. Richemont North America, Inc.*, 2008 U.S. Dist. LEXIS 88166, at *18-19 (C.D. Cal. 2008) (further citations omitted);

2.    the Class members in MDL 1735 are the epitome of the Appellees that the appellate bond process was designed to protect as a matter of public policy;

3.    the appropriate costs on appeal for purposes of Rule 7 have always been intended to be evaluated on a case by case basis in accordance with its express terms;

4.    the imposition of the bond requests as to Objector Swift remains a matter that will ultimately be decided through this Court's exercise of discretion after careful evaluation of all the attendant circumstances;

---

[1] An unauthorized intermediary filing by Carolyn Beasley-Burton and the Mills Law Firm unnecessarily complicated the Reply procedure.  Prior to interjecting herself into the back and forth between the undersigned and Objector Swift as relating to the Bond Request that they submitted and served, Beasley-Burton did not provide any warning that she intended to make a related filing.  She did not meet and confer or consult in any way with a single signatory or, circulate a draft or seek permission to file on their behalf.  Her filing will be separately addressed and is objected to in its entirety at this time.
[2] Hereafter, "Appellant", "Objector," or "Swift".

*Plaintiffs' Reply to Appellant Stephanie Swift's Response in Opposition to Class Counsel's Motion for Bond on Appeal*

5.  the Ninth Circuit has made clear that, "[T]he costs identified in *Rule 39(e)* are among, but not necessarily the only, costs available on appeal [for purposes of *Rule 7*]." *Azizian. Azizian v. Federated Dept. Stores*, 499 F.3d 950, 958 (9th Cir. 2007);

6.  Swift did not provide direct authority that establishes the administrative and interest costs incurred during the pendency of an appeal do not constitute a permitted basis upon which a bond may be valued and assessed; [3]

7.  Swift failed cite to or address prior decisions which held that interest and class administration are costs that have been properly included in Rule 7 bonds;

8.  the protections that the MDL 1735 Class requires can only be afforded to them through the assessment of the Requested Appellate Bond;

9.  if the Requested Appellate Bond is not awarded the Class will more than likely be forced to absorb the significant cost of Swift's appeal and thus suffer irreparable harm;

10. the Swift Appeal is meritless and the fact that it will ultimately fail is obvious because in proclaiming that the award of attorney fees here is wrong and requires reversal, Swift admittedly seeks to substitute her judgment for that of this Court without providing any basis in fact and without offering any applicable legal reasoning or principle and:

    a.  at the time she placed her objection on file, Swift could not have taken into account any of the evidence that this Court later analyzed when it evaluated

---

[3] *Conroy v 3M Corp.*, 2006 US Dist Lexis 96169, * 11 (N.D. Ca. 2006) (court required Bandas to post a FRAP 7 bond which included $239,667 in interest); *Barnes v Fleet National Bank*, 2009 US Dist Lexis 71072, * 8 (Ma. 2006) (court required Pentz to post a FRAP 7 bond which included $643,750.00 in interest); *Allapattah Services v. Exxon Corp.*, 2006 US Dist Lexis 88829, * 59 (Fla. 2006) (court required interest to be included in FRAP 7 bond). *See also Cardizem CD Antitrust Litigation v Hoechst Aktiengesellscaft*, 391 F.3d 812, 817 (6th Cir. 2004); *In Re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 124, 128 (N.Y. 1999).

2

and made the many findings supported the Orders she appeal because it had

not yet been filed;

    b.  at the time she placed her objection on file, Swift could not have taken into

account any of the findings of this Court or its related Orders because they had

not yet been entered;

11. in objecting to the Requested Appellate Bond, Swift failed to even acknowledge the

legal arguments and law advanced in the moving papers;

12. the District Court has discretion to grant the full Appellate Bond Requested;

13. the findings and rulings on the amount of any of the individual costs assessed and/or

the entire Requested Appellate Bond are subject to an abuse of discretion standard of

review;[4]

14. in objecting to the Requested Appellate Bond Swift left unrebutted the supporting

factual assertions and expert opinions contained in the related.

Objector Swift's Opposition brief utterly failed to rebut the factual assertions set forth in

the moving papers and the underlying motions including those offered in support of the order(s)

on appeal.[5]  Pursuant to Local Rule 7, request is made that those facts be considered admitted,

including but not limited to the following:

---

[4] *Azizian*, 499 F.3d 950, 955 (9th Cir. 2007) (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1028 (9th Cir. 2001) (as amended)). *See also In re Broadcom Corp. Secs. Litig.*, 2005 U.S. Dist. LEXIS 45656, at *6-7 (C.D. Cal. 2005) ("[t]he determination of the amount of a bond necessary to ensure payment of costs on appeal is left to the discretion of the district court"); *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13627, at *2 (C.D. Cal. 2005) ("Heritage Bond") (citing *Young v. New Process Steel*, 419 F.3d 1201, 1203 (11th Cir. 2005)).
[5] Curiously, Swift devotes considerable attention to the issue of the permissible shifting of attorney fees and when attorney fees may be properly considered in the context of an appellate Bond despite the fact that the moving papers expressly excluded that basis. Moreover, Swift incorrectly defines MDL 1735 as controlled by the FSLA. It is not. Unfortunately, her failure to offer a logical explanation for this erroneous conclusion eliminates any analytic response. Class Counsel would refer Objector Swift back to the underlying pleadings and suggest that she read them.

1. No fact in the record establishes that the Appellant's financial ability to post a bond rests in favor of ruling against the assessment of the bond in the amount requested, rather the fact that Appellant failed to introduce such evidence despite the opportunity to do so evidences both an indication she willfully chose not to do so and a waiver of the argument. Even if the record were to have established that, on balance this single consideration would not outweigh the countervailing considerations presented. After considering the totality of the facts before the Court including the clear, reliable and convincing proof used to establish the individual costs to be incurred and in context the reasonableness of the total amount requested and the economic loss that the class is certain to suffer if the Requested Appellate Bond is not assessed, the Class has clearly established they are deserving of the protection they request notwithstanding the appellants financial ability in the facts particular to this litigation and this appellant.

2. The clear and present risk that the Appellant would not pay the Appellee's costs if the appeal fails also weighs in favor of the requested assessment. The Appellant resides outside the Ninth Circuit complicating collection efforts. Swift provided to this Court and the other litigants in MDL 1735 an invalid address for service. She and her counsel subsequently did not act to remedy their provision of bad information. Swift and her legal Counsel John Pentz and Edward Cochran also willfully ignored an order of this Court allowing for expedited discovery to be taken of their client on an expedited basis[6] and went on to willfully disobey an order issued by Judge Polster of the District of Ohio compelling her attendance on a date and at a time and place

---

[6] *See* Docket no. 441, Unopposed Emergency Motion for an Expedited Deposition Schedule, October 5, 2009.

*Plaintiffs' Reply to Appellant Stephanie Swift's Response in Opposition to Class Counsel's Motion for Bond on Appeal*

certain. Prior to simply not appearing at the designated time and place, Swift and her counsel did not seek a protective order despite actual knowledge of Judge Polster's Order and they subsequently failed to act to set aside the Order or as would otherwise be deemed necessary under the circumstances. Objector Swift and her Counsel not only cut off the opportunity of Class Counsel to examine her, they displayed an utter contempt for this Court, Judge Polster's Court and our Civil Justice System. Swift and her Counsel have reasonably demonstrated that they do not respect the power and authority of this Court and cannot be reasonably counted on to obey its future orders. In fact, based on their history in this litigation thus far, they can be expected to further act to obstruct the orderly administration of Justice. Therefore, the risk that the Appellant would not pay the Appellee's costs if the Appeal fails also clearly weighs in favor of the Requested Appellate Bond.

3. Stephanie Swift otherwise evidenced a disdain for the process of administering justice and cannot be counted on to voluntarily pay the Appellee's costs if her appeal fails:

   a. Swift filed her objection prior to the submission of the briefing and evidentiary support filed in Support of the Order on Final Approval and the award of fees and incentive awards. She did not supplement her Objection following the placing on file of the aforementioned briefing and evidentiary support.

   b. Stephanie Swift filed her Objection prior to the hearings held for the taking of argument and evidence on the issue of whether Orders on Final Approval and the award of fees and incentive awards should be entered. She did not attend either of two related hearings or ask to participate by telephone. She did not

5

supplement her objection following the hearings. She did not order a copy of the hearing transcripts prior to filing her appeal.

    c. Stephanie Swift filed her Objection prior to the submission of the findings of fact and law that Support the Order on Final Approval and the award of fees and incentive awards. She did not supplement her Objection following the aforementioned findings of fact and the entry of the related orders.

    d. Stephanie Swift had the opportunity to supplement her original Objection at any time prior to the filing of her appeal but did not do so.

4. During two separate hearings, this Court established through the provision of ample evidence in the record that it had reviewed and scrutinized all the related filings and attachments including the objections. Moreover, the Court carefully went through the required evaluative factors making findings that supported each in rendering its ultimate fee award.

5. In her Opposition, Swift offered no facts specific to this action in support of her quest to set aside the Order or reverse the findings that support this Court's discretionary award of fees.

6. In her Opposition, Swift offered no relevant/original argument in support of her quest to reverse well established Ninth Circuit Authority that the Court relied upon in reaching its discretionary award on fees.

7. Plaintiffs submitted the Declaration of Economist John Ward (hereafter, "Dr. Ward"), who used the required interest rate as set forth in 28 U.S.C. § 1961 and the Declaration of appellate counsel Wendy Lascher. Dr. Ward estimates an interest loss due to the appeal on the floor of $65 million assuming median time on appeal of 19

6

months to be $401,831.00. The length of time this matter will remain on appeal and the corresponding amount of interest that the class will be caused to lose during the appeal as offered by the Plaintiffs is supported by expert opinion and credibly calculated.

8. Plaintiffs submitted the Declaration of Amanda Myette of Rust Communications, the case administrator for MDL 1735, who set forth the future cost of claims administration during the time the case will remain on appeal. It was her opinion that Class will incur the future administrative costs over the next two years[7] that are established in an un-rebutted opinion offered by Rust Consulting, Inc. in the amount of $200,000. The length of time this matter will remain on appeal and the corresponding amount that the class will be caused to pay Rust during the appeal as offered by the Plaintiffs' is supported by expert opinion and credibly calculated.

9. The other costs Plaintiffs request to be considered are likewise well documented and reasonable.

Plaintiffs respectfully request that this Court enter an Order granting Plaintiffs Request Appellate Bond in the amounts requested and for such other relief as the Court deems just and proper.

## II.     Argument

In her Opposition to the Requested Appellate Bond, Stephanie Swift has failed to successfully undermine the ability of this Court to assess a bond in its discretion that protects the class and satisfies the related public policy concerns. Swift construes the related public policy in

---

[7] Plaintiffs offered the opinion of an attorney who specializes in Ninth Circuit Appeals on the reasonably length of time this Court's Opinion Finally Approving the Settlement of MDL 1735 and awarding attorney fees and costs will remain on appeal. It is thus far un-rebutted.

an artificial and unrealistically narrow context. In concluding that the Appellants are always to be viewed as "victims" and that costs on appeal are to be so narrowly construed as to make them meaningless and ineffective for their intended purpose, Swift's self serving conclusions fatally fail to acknowledge and balance the countervailing considerations found in the traditional protections and century old public policy directed at Appellees.[8]

In the first place, the interpretation of the scant applicable legal authority offered by Andrews is so far off the mark that it further establishes her appeal as meritless and only further insures that her appeal obviously will be wholly rejected in favor of this Courts own thoughtful analysis and application of the law. Boiled down, the proffered factual content of Swift's reply is naked speculation. It cannot even be said that she offers a distorted take on facts that runs contrary to what was offered in the moving papers because she did not offer fact in opposition to the Requested Appellate Bond.

In the context of this Settlement, the approval process, the related orders and all attendant facts articulated or evidenced thereon, the result of the Appeal is obvious. It will ultimately fail because the claims of error are wholly unsupported and otherwise without merit. While Objector Swift's failure to remedy the deficiencies in her Objection or Appeal underscores the need for this Court to exercise its discretion and assess an appeal bond in the amount requested, nevertheless, the Court cannot consider whether or not the appeal is frivolous in deciding the amount of an appeal bond under FRAP 7. *Azizian* at 961. Moreover, in determining the amount of the Rule 7 bond to be properly assessed here in its discretion, this Court is also not bound to evaluate the likelihood of the appeals success on the merits and may properly award the bond on the other facts and evaluative criteria set forth. The offering in that regard is set forth for

---

[8] At some point, the present day reality concerning the abuse of process and the obstruction of justice carried out by

*Plaintiffs' Reply to Appellant Stephanie Swift's Response in Opposition to Class Counsel's Motion for Bond on Appeal*

informational purposes and not as a suggestion it is required to be addressed in this Courts

findings and Order on the Requested Appellate Bond.

### A.   In Her Appeal, Objector Swift Dropped her Objection to the Settlement and Limited Herself to the Award of Attorney Fees.

The scope of review has been limited by Swift.  In her Notice of Appeal, Objector Swift

dropped her Objection to the Settlement and expressly limited her appeal to the "33% attorney's

fee calculated based upon unclaimed amounts made available." *See* Docket no. 522, Notice of

Appeal, December 1, 2009.  Despite her clear limitation, the Opposition Motion references an

Objection to both the Settlement and Attorney's Fees. *See* Opposition Motion.  Objector Swift

cannot limit the issues raised through her Appeal and then attempt to resurrect the dropped

portion in her Opposition to a Request for a Bond without having offered some explanation.  It is

against established Ninth Circuit precedent.

When "a party seeks to argue the merits of an order that does not appear on the face of

the notice of appeal," the Court must consider: "(1) whether the intent to appeal a specific

judgment can be fairly inferred and (2) whether the appellee was prejudiced by the mistake."

*Lolli v. County of Orange*, 351 F.3d 410, 414 (9th Cir. 2003).  In determining whether intent and

prejudice are present, the Court must consider "'first, whether the affected party had notice of the

issue on appeal; and, second, whether the affected party had an opportunity to fully brief the

issue.'" *Meehan v. County of Los Angeles*, 856 F.2d 102, 105 (9th Cir. 1988) (quoting *Lynn v.

Sheet Metal Workers' Int'l Ass'n*, 804 F.2d 1472, 1481 (9th Cir. 1986), *aff'd*, 488 U.S. 347, 109 S.

Ct. 639, 102 L. Ed. 2d 700 (1989)).

The present case is significantly different than *Lolli* because the Court here is unlikely to

find an inference from the Notice of Appeal that supports the inclusion of the Settlement

---

Professional Objectors will need to be directly confronted by the Courts.

agreement. First, Objector Swift clearly had the opportunity to fully brief the issue of the Final

Approval of the Settlement. The Settlement was finally approved on November 2, 2009, giving

Objector Swift plenty of time to review the Court's findings. *See* Docket no. 491, Order,

November 2, 2009. Objector Swift's Notice of Appeal is one sentence long. *See* Docket 522,

Notice of Appeal, December 1, 2009. It was Objector Swift's choice to create such a short and

limited Appeal. She had the opportunity to be more detailed and failed to do so.

Additionally, it is without question that the Class will be prejudiced by any changes in the

content of Objector Swift's appeal. It is not within the power of Plaintiffs' Counsel to read the

minds of Objector Swift and her Counsel and guess at what she may or may not have intended to

include in her Notice of Appeal. Her Notice of Appeal should be taken at face value.

## B.     The Interpretation of *Azizian* offered by Swift Contradicts Public Policy and the Express Language of the Holding

In seeking to extend the holding of the *Azizian* case so as to "flatly prohibit any appeal

bond that is not limited to the costs expressly delineated in FRAP 39," Swift seeks more than to

just to set back the clock on appeal bonds,[9] rewrite the related public policy,[10] and at the same

time strip the District Court of its discretionary role in the process. She also seeks to have the

Court ignore the portions of the decisions express language that do not advance her myopic and

self serving view. The *Azizian* Court expressly stated that, "[T]he costs identified in *Rule 39(e)*

are among, but not necessarily the only, costs available on appeal [for purposes of *Rule 7*]."

*Azizian,* 499 F.3d at 958. This language supports the more reasoned, well accepted and moderate

---

[9] Federal Rule of Appellate Procedure 7 is derived from former Federal Rule of Civil Procedure 73(c) and provides that, "the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R.App. P. 7. (emphasis added)

[10] The public policy of an appeal bond is to protect the amount the appellee [class] stands to have reimbursed. *Fleury v. Richemont North America, Inc.*, 2008 U.S. Dist. LEXIS 88166, at *18-19 (C.D. Cal. 2008) (further citations omitted)

view that the appropriate costs on appeal for purposes of Rule 7 are thus to be evaluated on a case by case basis and imposition of a bond request remains a matter that will ultimately be decided through a Court's exercise of its discretion after careful evaluation of all the attendant circumstances.[11]

## C. Plaintiffs Did Not Request a Bond that Included Attorney's Fees

Plaintiffs' Counsel have asked for a bond that does not include attorney's fees; yet, Objector Swift complains that attorney's fees are included. *See* Opposition Brief at 2.

Objector Swift's Counsel submits that his client's opposition is "for the same reasons" that she opposed the motion of co-counsel, Carolyn Burton. *Id.* The undersigned Plaintiffs' Counsels and Carolyn Beasley-Burton and the Mills Firm significantly differ on the legal basis supporting the bond. The gratuitous mention of *Azizian* in Objector Swift's Opposition serves no relevant purpose here. *Id.*

Reference to the Requested Appellate Bond makes clear that Attorney's fees were not requested. Swift's attempt to suggest otherwise is false.

## D. Objector Swift Failed to Submit the Necessary Financial Documentation to Establish her Inability to Afford the Requested Bond and Inappropriately Requested Judicial Notice and The Class Objects to Swift's Request for Judicial Notice

After willfully choosing not to attend a Court compelled deposition, and ignoring several other opportunities to supplement that record, Swift through counsel offers facts in the content of her pleading that are unsupported by affidavit or other competent evidence and throws herself at the mercy of the Court by request that judicial notice be taken of an alleged inability to post a bond. The Class objects.

In the first place, Swift did not refute that her Counsels are Professional Objectors who specialize in objecting to class action settlements who possess related specialized knowledge, experience and skill. As previously advanced and left unrebutted, Professional Objector

11

Counsels must be presumed to know the intricacies of the objection, final approval, and appeal process. In choosing to ignore the Court order compelling her attendance at deposition, and later ignoring the opportunity to supplement her original filing at any time before the appeal Swift's counsels cut off the ability of Class Counsel to test Swift and in doing so should be rightfully held to have locked their client into what is contained in the record. Any other result would be tantamount to allowing these Professional Objectors to "game the system."

Objector Swift's position that the Court should take "judicial notice" of her inability to afford the requested bond Swift otherwise fails. *See* Opposition Brief at 3. Objector Swift failed to invoke Federal Rule of Evidence 201 (hereafter, "FRE 201") which is the proper statutorily required procedure to request the Court to take judicial notice.[12]

However, even if Objector Swift did invoke FRE 201, her request for judicial notice would be inappropriate because FRE 201(a) only governs "adjudicative facts".[13] Here, Objector Swift does not seek judicial notice of a fact that is "not subject to reasonable dispute" as "generally known" by this Court or "capable of accurate and ready determination" from reasonably unquestionable sources.[14]

Objector Swift and her Counsel fail to submit any declaration or any evidence of her financial condition to the Court; rather, the Court is invited to make a wholly speculative conclusion of fact upon a bare record.[15] Objector Swift cites no case in support of her request for judicial notice. Additionally, Swift does not specifically file a motion seeking judicial notice or even put a request for judicial notice in the conclusion to her Opposition Brief. This Court

---

[12] "This is the only evidence rule on the subject of judicial notice." Notes of Advisory Committee on Rules, subdivision (a).
[13] FRE 201(a) provides, "This rule governs only judicial notice of adjudicative facts."; "Adjudicative facts are simply the facts of the particular case." Notes of Advisory Committee on Rules, subdivision (a).
[14] FRE 201(b)(1)-(2).
[15] "The usual method of establishing adjudicative facts in through the introduction of evidence, ordinarily consisting of the testimony of witnesses. If particular facts are outside of reasonable controversy, this process is dispensed with as unnecessary. A high degree of indisputability is the essential prerequisite." FRE 201 Notes of Advisory Committee on Rules, subdivision (a).

12

should summarily reject exercising judicial notice as there is no evidence that the facts are beyond reasonable controversy.[16]

Contrary to Swift's contentions in the Opposition Brief, Plaintiffs did not state that the affordability of a bond is a "necessary factor in order to obtain a bond" and disagree that "consequently this Court may not enter an appeal bond against Objector Swift." *See* Opposition Brief at 3. At best, it is only one of several factors to be considered along with the public policy underlying the assessment of an appellate bond. While defining herself as a victim, Swift is oblivious to the reality confronting class members. They each lost class certification and each will face case costs of an amount exceeding the "$609,000 bond" she complains of. *Id.*

Importantly, Objector Swift's failure to create in the record proof that she is unable to afford the bond and that her Counsel will not advance the costs is of her own doing. She and her Counsel were served with deposition notices, both this Court and the Federal District Court in Ohio issued orders respectively expediting discovery and compelling her attendance. *See* Docket no. 441, Unopposed Emergency Motion for an Expedited Deposition Schedule, October 5, 2009; Attachment A, Ohio Order Granting Complaint for Discovery, October 9, 2009. Despite these Court Orders, Objector Swift and her Counsel chose not to attend or provide notice they would not be attending. After knowingly choosing a course of action that effectively eliminated her personal contribution to the record, her complaints of having no opportunity to create such a record are ill advised and the related personal attacks are even more disturbing. Both are meritless.

In the moving papers, the signatories to the Request Appellate Bond did not contend that the ability to financially post a bond is a "necessary factor in order to obtain a bond." In fact, we contend that at best it is only one of many factors a Court may take into account. Further, in the present circumstances, the interest of Swift pales in comparison to the countervailing interests of the class. In other words, the interest of the class in being protected against the likelihood of

---

[16] "With respect to judicial notice of adjudicative facts, the tradition has been one of caution in requiring that the matter be beyond reasonable controversy. This tradition of circumspection appears to be soundly based, and no reason to depart from it is apparent." FRE 201 Notes of Advisory Committee on Rules, subdivision (b).

13

*Plaintiffs' Reply to Appellant Stephanie Swift's Response in Opposition to Class Counsel's Motion for Bond on Appeal*

having to absorb the costs caused by the appeal in the instant action outweigh the interest of the Appellee who has called her ability to pay the bond into issue (too late).

> **E.      The Standard for a Finding of an Abuse of Discretion is High and Objector Swift's Opposition Brief Offers Nothing to Support Such a Finding.**

Objector Swift's Opposition Brief offers nothing to merit the necessary finding of an abuse of discretion regarding the Court's award of attorneys' fees. *See* Docket no. 491, Order, 9-13, November 2, 2009 ("hereafter, Final Approval Order"). *See also* Docket no. 482, Transcript of Final Fairness Hearing, October 19, 2009; Docket no. 520, Hearing on Attorney Fees and Incentive Awards, November 20, 2009.

Swift concedes that, "[I]n its November 2 Order, this Court provided a list of reasons for departing from the 25% benchmark." *See* Opposition Brief at 4.  In Swift's opinion, those reasons do not justify an 8% upward departure from the benchmark, and therefore constitute an abuse of discretion. *Id.* The chances of Swift overcoming the abuse of discretion standard on the instant record are slim to none.

An abuse of discretion is "a plain error, discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found." *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir.1993).  When reviewing for abuse of discretion, the Court cannot reverse unless it has a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." <u>*Smith v. Jackson*, 84 F.3d 1213, 1221 (9th Cir.1996)</u>. *See also Wing v. Asarco Inc.*, 114 F.3d 986, 990 (9th Cir. 1997)

Here, Objector Swift has offered no evidence in her Opposition Brief to support plain error, discretion exercised to an end not justified by the evidence or a judgment that is clearly against the logic and effect of the facts as are found.  Further, she has offered nothing to support a finding by the Appellate Court that would warrant a definite and firm conviction that the District Court committed a clear error of judgment in the conclusion it reached upon a weighing

of the relevant factors. Instead, again, Objector Swift offers mere opinion and ignores relevant Ninth Circuit case law.

Instead, Swift cites to inapposite law[17] that does not even acknowledge let alone rebut the countervailing opinions. Further, she offers no expert opinion in support. The Court's opinion was not formed in a vacuum but rather on a well developed record. *See* Final Approval Order. *See also* Docket no. 482, Minutes of the Final Approval Hearing. The present record includes the opinions of: 1) learned experts in the field ; 2) practicing attorneys with significant experience and expertise in wage and hour class actions against Wal-Mart including Attorneys Brad Seligman and Frank Azare; 3) a legion of others including class counsels and class representatives; detailed supporting declarations. *See* Declaration of Robert Bonsignore.

Objector Swift's attempt to offer only opinion and inapposite case law in support of the high Ninth Circuit abuse of discretion standard is ineffective and continues to be detrimental

### F. Using the Settlement Ceiling, Not the Floor, as an Appropriate Figure to Base Fees is Supported and Appropriate Under Ninth Circuit Law and Expert Opinion

Swift is grasping at straws to manufacture a colorable issue for appeal, in her attempt to cast the Requested Appellate Bond as "based solely on the fact(sic) that he(sic) submitted expert affidavits in support of the fee and the Court held two hearing(sic)".[18] After conceding without any accompanying analysis that this Court "provided a list of reasons for departing from the 25% bench mark" in its November 2, 2009 ruling on fees, Objector Swift candidly admits the core of her objection is that her "opinion" differs and that an 8% upward departure from the benchmark,

---

[17] Swift entirely misses the mark in comparing the instant action to either *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189-90 (D. Me. 2003) and *In re Excess Value Ins. Coverage Litig.*, 2004 U.S. Dist. LEXIS 14822, * 58 (S.D.N.Y. 2004) because both focused on coupon, or voucher settlements. Swift's reliance on *Yeagley v. Wells Fargo & Co.*, 2008 U.S. Dist. LEXIS 5040, *2-028 (N.D. Cal. 2008) and *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) is likewise misplaced for many reasons, including the value of the injunctive relief and the rational underlying the opinion of Professor Silver. *See* Opposition Brief at 6-8.

[18] Class Counsel deny that the moving papers were "hastily and carelessly thrown together". The supporting papers and analysis of the facts and circumstances were time consuming and dependant on the contributions and schedule of third parties. In highlighting the "error" of initially requesting a higher bond, Swift only brings attention to the

therefore constitutes and abuse of discretion." Swift goes on to focus on the fact that "The Minute Order entered by this Court contained absolutely no statement of reasons…"

Swift next offered in support of her stated conclusion the undeveloped opinion that "the percentage fees approved in other state courts are entirely irrelevant to a fee award in a federal court, given the starkly different laws governing attorney fees in those states." In the first place, Swift fails to establish the stark differences she obliquely references or why in the context of the proof required to succeed in this litigation it would constitute the overwhelming and sole factor that would ultimately determine fees. In making such an assertion she ignores Supreme Court and Ninth Circuit authority that this court relied on in awarding the fees. She offers no facts that allow for the reasonable conclusion that she has the slightest inkling what the case is about and fails to acknowledge the Consolidated Amended Complaint. She does not establish knowledge of what the necessary proofs are to establish a winning case. In sum, she offers nothing to support her wild conclusion that state law considerations overwhelm the many other considerations contained in this Courts thorough analysis and findings.

Not a single bit of content in her Opposition supports the representation offered by Objector Swift in her Opposition Brief that her attack on attorney's fees is a case of first impression in the Ninth Circuit. *See* Opposition Motion at 8. She fails to consider *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007) cited multiple times in Plaintiffs' pleadings. *See* Swift Bond Motion at 13; *See also* Docket 417, Declaration of William B. Rubenstein in Support of Settlement Approval and Fee Petition at ¶33, October 1, 2009. The Ninth Circuit has expressly accepted floor/ceiling settlements. *See Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007). Objector Swift's contention that Plaintiffs' request that this court assess a Bond is based solely on an issue related to expert affidavits is false. *See* Opposition Brief at 4.

---

fact that in calculating the bind request Class Counsel adopted the most conservative estimate whenever the choice between a greater or lesser number was made an option.

*Plaintiffs' Reply to Appellant Stephanie Swift's Response in Opposition to Class Counsel's Motion for Bond on Appeal*

1    A reading of her filing makes clear that in placing her Opposition on file, Swift, through

2   Counsel, has failed to conduct even the most basic legal research or at a minimum. There is

3   certainly no evidence that she thoroughly reviewed and responded to the Requested Appellate

4   Bond filed by Plaintiffs or the moving papers relating to Final Approval that were incorporated

5   by reference. She certainly evidenced in her Opposition that she did not cross check the minute

6   order against the other sources where the findings supporting the award are set forth in sufficient

7   detail. She wholly failed to attack the well supported and reasoned discretionary award of fees

8   with anything more than generalized propositions and inapposite legal citations.

9    Perhaps most striking is her open admission that she seeks to substitute her judgment for

10   that of this Court. *See* Opposition Brief at 4. This position is presumptuous and inappropriate

11   for many reasons. In the first place, Objector Swift does not offer any facts specific to this case

12   or this Courts evaluation, finding and subsequent award.

13    Swift summarily dismisses the evidence and arguments of two highly respected legal

14   authorities by stating they do not "actually confront the arguments advanced by Ms. Swift"

15   without going on to identify what arguments she is referring to and/or then distinguishing them.

16   *See* Opposition Brief at 4. In fact, Professor Silver's opinion dismantled in advance the position

17   offered by Swift's Counsel in their opposition. Moreover, in offering nothing more than

18   inapposite references to cases addressing problems found in percentage fees awarded in "coupon

19   settlements" with not even an attempt to articulate some factual detail that tied in the terms of

20   this settlement, it is clear neither Objector Swift nor her Counsel have reviewed the Declarations

21   of Professor Charles Silver or William B. Rubenstein. *See* Docket no. 507-1, Expert Report of

22   Charles Silver Concerning the Bearing of the Claim Rate on the Fee Award (hereafter, "Silver

23   Declaration"), November 17, 2009; Declaration of William B. Rubenstein in Support of

24   Settlement Approval and Fee Petition at 3, 24-32 (hereafter, Rubenstein Declaration). The

25   details and application of the Rubenstein and Silver Declaration to Swift's Objection were

26   discussed at length in the Swift Bond Motion and do not need to be elaborated on at this point.

27   *See* Swift Bond Motion at 33-35. While they both take on the generalized content of Swift's

28

original filing, Prof. Silver opinion eviscerates the logic and argument put forward on pages 4-8 of her Objection.

Swift's admitted quest to substitute her judgment for that of this Court is not likely to succeed. On the one hand, Objector Swift failed to offer no sound and related legal reasoning and failed to cite to any fact already in the record that supported her objection and appeal. On the other hand, the Court made findings on each of the required evaluative criteria. While this reply brief is not the appropriate vehicle to provide Objector Swift with what she missed, reference to a few areas that relate to her Opposition is appropriate. The Court clearly took a different view of the expert reports the expert reports of Silver and Rubenstein Declaration, finding them clear, illuminating, and applicable including and placed into perspective what concerned Objector Swift in the abstract. "In one of the declarations, I think it was...Professor Silver's, had comparisons with a multitude of other cases -- Wal-Mart cases -- that had been settled and the percentages that had been awarded in those cases. So, I think looking at those across the country is a good barometer, if you will, for the Court to consider in making the assessment. And that's why I thought the 33.33 percent was a reasonable figure. And that motivates me at this point to grant the request that had been contained in the original motion for preliminary and, really, for final approval. Plaintiff's class counsel seeks an attorneys' fee award of $28,333,050, which is 33.333 percent of the ceiling of $85 million and the Court does find for the reasons I've stated that that is a fair and reasonable attorneys' fee award under the particular circumstances of this rather unique case. And so, I will grant that award in that amount." Transcript from the Hearing to Consider the Award of Costs and Plaintiffs' Motion for Attorneys' Fees, Costs and Litigation Expenses (hereafter, "Attorney's Fee Transcript") at 19, November 20, 2009.

That is but the tip of the iceberg because this Court went on to make express findings that supported the approved the fees by following the required evaluative criteria to the letter, regardless of how apparent a fact was established already in the record. For example, "The reaction of the class, I think, is significant -- or I should say, the absence of reaction from the class, from well over three million potential class members, the miniscule number of objections

that have been registered after a full opportunity to assert objections and naturally, there's always going to be those who would say, 'Well, the attorneys shouldn't get anything,' or, 'They're getting too much.' But here, there just was very, very, very little -- statistically insignificant -- number of members of the class who reacted adversely." *Id.* at 18.

The Court acknowledged the risk the Counsel took in this case. "[T]here's no question that what has been achieved in this particular case is rather remarkable, I think, because of the dynamics of the case; because I had denied the class certification motion, which was pending on appeal, the risk level, the uncertainty is clearly raised." *Id.* at 16. "There was enormous risk to plaintiffs' counsel who took this case on contingencies all across the board, not just co-lead counsel, but I think probably everyone involved. The experience and the skill of counsel that was exhibited, I think, is a significant factor, as well; the amount of work that was involved and the contingent nature." *Id.* at 17. The parties achieved not only what I view as a fair mechanism for awarding individual class members who otherwise individually probably would not be able to get counsel to represent them in most of the cases, individually, to secure recovery simply by following what I think is a fair and simple procedure that's been established in this case. And I think that is a tremendous result for those employees." *Id.* at 18.

There is no indication whatsoever in the record that warrants reversal of the Order on Final Approval. Objector Swift's attempts to substitute her own opinion for that of the Ninth Circuit, this Court and the expert opinions of Professor Silver and others will be rejected should be denied.

### G.   Objector Swift's Contention that Plaintiffs Seek a Rule 7 Bond Based on a Frivolous Claim is False.

Objector Swift asserts for the majority of her Opposition Brief that her appeal is "not frivolous." *See* Opposition Brief at 4-10. Objector Swift and her Counsel are consistent in one aspect in her opposition – their continuous failure to support any statement or request with any colorable arguments or authorities.

The undersigned has made it abundantly clear that the Plaintiffs *do not seek* an appeal bond, under *Azizian* or any other authority, based upon objector and her counsel's frivolous,

sanctionable conduct. *See* Swift Bond Motion at 35-38. The Objector and her Counsel consciously ignore, or selectively fail, to understand this very simple principle. Yet, undaunted, the Objector and her Counsel blindly proceed to fill the court record with the mind-numbing regurgitation of authorities about defending their Objection and Appeal from alleged frivolous conduct. Clearly, this undersigned counsel did not seek relief in the motion for bond for frivolous conduct. *Id.*

This position could not be clearer and Swift's contentions otherwise are false and meritless. Plaintiff's Counsel continues to ask that the Court not consider the frivolous nature of the Objector's appeal and underlying Objection as part of their bond request.[19]

### H.  Objector Swift has Failed to Respond to Plaintiffs' Inclusion of Interest in the Bond Request and Should be Deemed to have Waived any Response to the Interest Request.

Plaintiffs have asked for interest to be included in the appeal bond; yet, the Objectors never address the interest request.[20] Therefore, because Objector Swift has not filed points and authorities with respect to Plaintiffs' request for interest, at a minimum, she should be deemed to have waived any response they might have to the interest request.[21]

Further, Objector Swift should be deemed, by failing to follow the *Local Rules of Practice of the United States District Court For the District of Nevada*, to have admitted and or

---

[19] Plaintiffs created a record of bad conduct and the frivolous nature of the appeal so that they could ask the Ninth Circuit Court of Appeals to reconsider its ruling in *Azizian v. Federated Department Stores, Inc.,* 499 F.3d 950, 961 (9th Cir. 2007), in light of current widespread abuse of class action procedure by professional objectors in present day class actions. These arguments were meant to make a record only and Plaintiffs specifically asked that the court not rely on them in setting the amount of bond.

[20] *Barnes v FleetBoston Fin. Corp.*, No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072, at 8-9 (D. Mass. Aug. 22, 2006)(appeal bond included interest of 5.15% on settlement of $12.5 million from the date of judgment for the one year expected time on appeal); *See also Sckolnick v. Harlow*, 820 F.2d 13 (1st Cir. 1987); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1360, 2003 U.S. Dist LEXIS 25788, 2003 WL 22417252 (D. Me. Oct 7, 2003); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124, 128 (S.D.N.Y. 1999).

[21] *See* LR 7-2(d), the failure of a moving party to file points and authorities in support of the motion shall constitute consent to the denial of the motion. The failure of an opposing party to file points and authorities in response to any motion shall constitute consent to the granting of the motion.

otherwise consented to every request by Plaintiffs to which they have not responded including but not limited to interest as a part of the bond. *See* LR 7-2(d).

Post-judgment interest is mandatory for any money judgment pursuant to 28 U.S.C. § 1961.[22] The purpose of post-judgment interest is to compensate a successful plaintiff for not being paid during the time of the award and payment.[23] Not only is post-judgment interest assessable upon the judgment, but also separately upon the attorney's fees[24] and costs.[25] The interest assessed for each component of the judgment is calculated from the "date of the entry of the judgment."[26]

In the present case, interest is calculated on the judgment from November 2, 2009, the attorney's fees from November 20, 2009, and the costs from the date when the Court enters its order on the amount of costs. Further, Plaintiffs submit the Declaration of Economist John Ward (hereafter, "Dr. Ward"), who used 28 U.S.C. § 1961 and the Declaration of appellate counsel Wendy Lascher to calculate the interest lost due to the appeal. Dr. Ward estimates an interest loss in the amount of $401,831.00 on the floor of $65 million assuming median time on appeal of 19 months. *See* Declaration of John Ward, Ph.D., Exhibit III to Motion for Appeal Bond for Objector Stephanie Swift. *See also* Declaration of Wendy Lascher, J.D., Exhibit IV to Motion for Appeal Bond for Objector Stephanie Swift.

Clearly, Objector Swift and Counsel concede that this interest is an allowable basis for the assessment of costs.

## I.   Objector Swift Offers No Case Law in Support of Her Objection to the Inclusion of Administrative Costs in the Requested Bond.

Plaintiffs' Counsel have asked for administrative costs for Rust Consulting, Inc.

---

[22] *Donovan v. Sovereign Secur., Ltd.*, 726 F.2d 58 (9th Cir. 1984).
[23] *Pace Design & Fab. v. Stoughton Composites,* 1997 U.S. App. LEXIS 35780, *2-3 (9th Cir. 1997) (citing *Donovan,* 726 F.2d at 58); *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835 (1990).
[24] *Perkins v. Standard Oil Co.*, 487 F.2d 672, 676 (9th Cir. 1973).
[25] *Air Separation v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1994) (quoting *Wheeler v. John Deere Co.*, 986 F.2d 413, 415 (10th Cir. 1993)) ("this court has determined that once a judgment is obtained, interest thereon is mandatory without regard to the elements of which that judgment is composed").
[26] *See* 28 U.S.C. § 1961.

(hereafter, "Rust Consulting" or "Rust") to administer the class while it lingers in appeal. However, Objectors Swift objects to the inclusion of administrative costs in the bond without rationale or authority. It is clearly within the power of the Court to award administrative costs in the bond.[27]

Moreover, in Objector Swift's Opposition Motion, she requests the Court in the alternative to limit the bond to reasonable actual/projected costs permitted. *See* Opposition Brief at 8. Reasonable interest costs have been projected by an economist and submitted by Plaintiffs in the form of an affidavit. *See* Swift Bond Motion at 38. Reasonable administrative costs have been projected by the claims administrator and submitted by the Plaintiffs in the form of a declaration. *Id.*

As outlined in the Swift Bond Motion, Class administrative costs are properly included in a Federal Rule of Appellate Procedure 7 bond request (hereafter, "Rule 7"). *See* Swift Bond Motion at 38. In 2005, the California Central District Court sustained the Plaintiffs' class argument that the Rule 7 bond should include additional costs for the delay and disruption of administering a settlement of the case. *In re Broadcom Corp.*, 2005 U.S. Dist. LEXIS 45656, at *9-11. The class successfully argued, as the Plaintiffs assert here, that the objectors' appeal effectively postponed distribution of the entire judgment for well over a year. *See id.*

Plaintiffs requested $200,000.00 for the administrative fees/costs associated with this appeal. *See* Swift Bond Motion at 8; *See also* Declaration of Amanda Myette, Exhibit V to Plaintiff's Motion for Appeal Bond for Objector Stephanie Swift. Rust Consulting has submitted a Declaration that it estimates additional costs of $200,000.00 due to the appeal of the case. *Id.*

---

[27] *See In re Broadcom Corp. SEC. Litig.*, 2005 U.S. Dist. LEXIS 45656, *9-11 (D.D. CA 2005). *See also Heritage Bond*, 2005 U.S. Dist. LEXIS 13627, 2005 WL 240111, *7 (C.D. Cal. 2005), *In re Pharm. Indus. Average Wholesale Price Litig.*, 520 F. Supp. 2d 274, 277-278 (D. Mass. 2007).

This is an estimate and the actual costs of additional administration may vary depending upon the ultimate timetable and services provided. *Id.*

This amount is properly included within the requested bond amount and Objectors Swift's objection to the inclusion of administrative costs in the bond is without rationale or authority.

### J.    The Opposition Brief Offers Nothing More than Distasteful Personal Attacks, Inapposite Snippets of Law and Conclusory Opinions.

Objector Swift's Opposition Motion fails to formally request the Court to deny Plaintiffs' request for bond. Instead, it does nothing other than launch a distasteful barrage of personal attacks on Plaintiffs' Counsel and offers up inapposite snippets of law, and/or conclusory opinions that trimmed back amount to nothing more than self interest driven musings. Clearly, this is the tactic of an experienced Professional Objector, Counsel John Pentz.

Objector Swift does not offer any analysis of Plaintiffs' request for bond. Further, she admits that she is filing the same response that they filed to Ms. Burton's request for bond, two very different documents. *See* Opposition Brief at 1.

This is clearly the tactic of a Professional Objector. Objector Swift's Counsel John Pentz misuses the judicial process for personal gain. Professional Objectors enter actions on a very limited basis post-settlement to press meritless appeals and extract pay-offs. The willful misconduct of Counsel Pentz has and continues to interfere with the orderly administration of justice in this proceeding. Further, it has impacted and will continue to impact the Settlement of the Litigation and the ability of the Class Members to obtain their long-awaited recovery.

The distasteful barrage of personal attacks on Plaintiffs' Counsel, inapposite snippets of law, and/or conclusory opinions support the imposition of Rule 7 bond against Objector Swift.

### K.    Rule 38 Sanctions are Separate from Bond Request and Have not Been Requested by Plaintiffs

Plaintiffs request for the imposition of a Rule 7 bond against Objector Swift is completely separate from any request for Sanctions against Objector Swift or her Counsel by Plaintiffs. In her Opposition Motion, Objector Swift offers a tortured analysis of how Federal Rules of

23

Appellate Procedure 38 (hereafter, "Rule 38") impacts the current request for a bond. However, Plaintiffs have not requested Rule 38 sanctions from the Court. *See* Swift Bond Motion at 35-37.

The assessment of sanctions on a frivolous bond pursuant to Rule 38 remains distinct from the instant request for the assessment of a bond pursuant to *Azizian* and *Fluery*. *See Azizian*, 499 F.3d at 961; *Fleury v. Richemont North America, Inc.*, 2008 U.S. Dist. LEXIS 88166, at \*19 (C.D. Cal. 2008).

Here, Plaintiffs have satisfied the requirements of a Rule 7 bond. *See* Swift Bond Motion at 20-22. In response, Objector Swift's Opposition Motion has not rebutted any of Plaintiffs' arguments or undermined Plaintiffs recitation of the purpose of a bond and the well accepted and important public policies that historically have supported the assessment of appeals bonds. Swift has not offered any reason to wipe out decades of public policy or to cut off the instant class from the mandatory protection they should be afforded from incurring costs that they have objected to incurring.

Pursuant to the express authority of the statutory and interpretive case law and for the reasons set forth below, Plaintiffs' Motion for bond should be granted.

### III.  CONCLUSION

Swift has utterly failed to take on the reasons offered in support of the bond including the applicable public policy[28] that supports protecting the class.[29] She failed to undermine this Court's discretion to award a single one of the several individual components supporting the

---

[28] The purpose of an appeal or cost bond in circumstances such as the present one is "to protect the amount the appellee [class] stands to have reimbursed," including the costs of delaying payment of the judgment, should the appeal ultimately fail. *See Fleury v. Richemont North America, Inc.*, 2008 U.S. Dist. LEXIS 88166, at \*18-19 (C.D. Cal. 2008) (further citations omitted)

[29] For example, in citing to *Azizian*, Swift failed to include that the Ninth Circuit has held that FRAP 7 includes, but is not limited to, "all costs properly awardable at the conclusion of the appeal," as FRAP 39(e) does not contain "any expression to the contrary." *Azizian,* 499 F.3d at 958. Swift also failed to make clear that, "[T]he costs identified in

*Plaintiffs' Reply to Appellant Stephanie Swift's Response in Opposition to Class Counsel's Motion for Bond on Appeal*

Requested Appellate Bond.[30]  Moreover, the Objector's response either displays a patent

misreading of the Plaintiffs' Motion or Ms. Swift and her Counsels have a mistaken

understanding of the relevant legal issues.[31]

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order granting

Plaintiffs request for bond in the amounts previously requested and for such other relief as the

Court deems just and proper.


Date:   February 11, 2010                          Respectfully Submitted,

                                                   _____
                                                   s/
                                                   Robert J. Bonsignore (BBO # 547880)
                                                   BONSIGNORE & BREWER
                                                   23 Forest Street
                                                   Medford, MA 02155
                                                   Telephone: (781) 391-9400
                                                   Fax: (781) 391-9496
                                                   Rbonsignore@class-actions.us
                                                   *Plaintiffs' Co-Lead Counsel*

---

Rule 39(e) are among, but not necessarily the only, costs available on appeal [for purposes of Rule 7]." *Azizian,* 499 F.3d at 958.  The imposition of the bond is a matter of this Court's discretion under the circumstances.
[30] For example, the position of the class that the Rule 7 bond should include additional costs for the delay and disruption of administering a settlement of the case.  *In re Broadcom Corp.*, 2005 U.S. Dist. LEXIS 45656, at *9-11. Plaintiff's advance that disruption and delay costs include the claimed value of "lost interest" that accrues as a result of the loss of the present use of the funds.
[31] For example, Swift applies authority relating to voucher and coupon settlements with the MDL 1735 settlement notwithstanding Prof. Silvers expert elucidating opinion, and that the moving papers advanced a request that this Court usurp the province of the Appellate Court notwithstanding the level of detail and attention that was devoted to *Azizian*.

25

Daniel D. Ambrose, Esq.
Ambrose Law Group
1007 East West Maple Road
Walled Lake, MI 48390
(248) 624-5500

Franklin D. Azar, Esq.
Rodney P. Bridgers, Jr., Esq.
Nathan J. Axvig, Esq.
Franklin D. Azar & Associates P.C.
14426 East Evans Ave.
Aurora, CO 80014
(303) 757-3300

Robin E. Brewer, Esq.
Nicole Vamosi, Esq.
Rick Kirchner, Esq.
Kelly Elam, Esq.
Julie Baker, Esq.
Bonsignore & Brewer
23 Forest Street
Medford, MA 02155
(781) 350-0000

Todd S. Collins, Esq.
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
(800) 424-6690

Lanny H. Darr
Schrempf, Kelly, Knapp & Darr, Ltd.
307 Henry St.
Suite 415
Alton, IL 62002
(618) 465-2311

R. Deryl Edwards, Jr., Esq.
606 S. Pearl Ave.
Joplin, MO 64801
(417) 624-1962

Craig O. Asbill, Esq.
Charles G. Monnett & Associates
200 Queens Road
Suite 300
Charlotte, NC 28204
(704) 376-1911

Richard Batesky, Esq.
Attorney at Law
22 E. Washington St., Suite 610
Indianapolis, IN 46204
(800) 822-2039

Mark C. Choate, Esq.
Choate Law Firm LLC
424 N. Franklin Street
Juneau, AK 99801
(907) 586-4490

Adriana Contartese, Esq.
Rafaela Hanley, Esq.
Attorney at Law
866 East Fifth St.
Boston, MA 02127
(617) 268-3557

Paul C. EchoHawk, Esq.
Nathan Long, Esq.
EchoHawk Law Offices
Paul C. EchoHawk
505 Pershing Avenue
Pocatello, ID 83205
(208) 478-1624

Ivy L. Frignoca, Esq.
Lambert Coffin Haenn
477 Congress St, 14th Fl
Portland, ME 04112
(207) 874-4000

26

Courtney French, Esq.
Fuston, Petway & French, LLP
3500 Colonnade Parkway
Suite 300
Birmingham, AL 35243
(205) 977-9798

Christopher R. Gilreath, Esq.
Gilreath & Associates
550 Main Street
Suite 600
Knoxville, TN 37902
(865) 637-2442

Donald S. Goldbloom, Esq.
12590 National Pike
Grantsville, MD 21536
(301) 895-5240

J. Thomas Henretta, Esq.
Law Offices of J. Thomas Henretta
400 Key Building
159 South Main Street
Akron, OH 44308
(330) 376-7801

Christopher Meeks, Esq.
Lynch, Meeks & Battitori
1031 Military Avenue
Baxter Springs, KS
(620) 856-2771

Pamela Mullis, Esq.
The Mullis Law Firm
1229 Elmwood Ave
Columbia, SC 29201
(803) 799-9577

Gary S. Nitsche, Esq.
Weik, Nitsche, Dougherty
1300 N. Grant Ave, Suite 101
Wilmington, DE 19899
(302) 655-4040

Troy N. Giatras, Esq.
The Giatras Law Firm, PLLC
118 Capitol Street
Suite 800
Charleston, WV 25301
(304) 343-2900

Vincent J. Glorioso, III, Esq.
The Glorioso Law Firm
815 Baronne Street
New Orleans, LA 70113
(504) 569-9999

Gregory F. Greiner, Esq.
Greiner Law Office
630 G Ave.
Grundy Center, IA 50638
(319) 824-6951

Thomas H. Johnson, Esq.
Thomas H. Johnson Law Office
410 Hickory St.
Texarkana, AR  71854
(870) 773-6359

Mike Miller, Esq.
Stacey E. Tjon, Esq.
Solberg, Stewart, Miller & Tjon
1129 Fifth Avenue South
Fargo, ND 58103
(701) 237-3166

Glen W. Neeley, Esq.
Attorney at Law, P.C.
863 25th St.
Ogden, UT 84001
(801) 612-1511

D. Michael Noonan, Esq.
Shaheen & Gordon, P.A.
140 Washington Street
P.O. Box 977
Dover, NH 03821
(603) 749-5000

27

Raymond A. Pacia, Esq.
Attorney At Law, LTD
50 Power Road
Pawtucket, RI 02860
(401) 727-2242

Jeffrey M. Padwa, Esq.
Padwa Law
303 Jefferson Blvd.
Warwick, RI 02888
(401) 921-4800

Arthur Y. Park, Esq.
Laurent J. Remillard, Jr., Esq.
John C. McLaren, Esq.
Park Park & Remillard
707 Richards Street
Suite 500
Honolulu, HI 96813
(808) 536-3905

Wayne D. Parsons, Esq.
Wayne D. Parsons Law Offices
Dillingham Business Center
Suite 201C
1406 Colburn Street
Honolulu, HI 96817
(808) 845-2211

John Rausch, Esq.
P.O. Box 905
Waterloo, IA 50704
(319) 233-3557

Dan Rausher, Esq.
Attorney at Law
26 Court Street
Suite 1604
Brooklyn, New York 11242
(718) 596-7333

Dirk A. Ravenholt
RAVENHOLT & ASSOCIATES
2013 Alta Drive, Las Vegas, Nevada 89106
(702) 647-0110

Thomas R. Ricci, Esq.
Law Office of Thomas R. Ricci
303 Jefferson Blvd.
Warwick, RI 02888
(401) 921-4800

Fred Schultz, Esq.
Greene & Schultz
Showers Plaza
320 W. 8th Street
Suite 100
Bloomington, IN 47404
(812) 336-4357

Cynthia K. Smith, Esq.
Jasper Smith Olson, P.C.
202 W. Spruce St.
P.O. Box 7785
Missoula, MT 59807
(406) 541-7177

Stephen M. Smith, Esq.
Joseph Smith Ltd.
2100 Kecoughtan Road
Hampton, VA 23661-0437
(757) 244- 7000

Laurence W. Stinson, Esq.
Bradley D. Bonner, Esq.
Bonner Stinson, P.C.
P.O. Box 799
128 East Second Street
Powell, WY 82435
(307) 754-4950

Mark Tate, Esq.
Tate Law Group, LLC
2 East Bryan Street

Jill P. Telfer, Esq.
Law Offices of Jill P. Telfer

28

Suite 600
Savannah, GA 31401
(912) 234-3030

Matthew Tobin, Esq.
201 S. Phillips Avenue
Suite 200
Sioux Falls, SD 57104
605-366-9715

Ernest Warren, Jr., Esq.
Walker Warren & Watkins
838 SW First Avenue
Suite 500
Portland, OR 97204
(503) 228-6655

331 J. Street, Ste. 200
Sacramento, CA 95814
(916) 446-1916

Jay A. Urban, Esq.
Urban & Taylor S.C.
4701 North Port Washington Road
Milwaukee, WI 53212
(414) 906-1700

Christopher P. Welsh, Esq.
James R. Welsh, Esq.
Welsh & Welsh, P.C. L.L.O.
9290 West Dodge Road
100 The Mark
Omaha, Nebraska, 68114
(402) 384-8160

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2010, a copy of the foregoing *Plaintiffs' Reply to Appellant Stephanie Swift's Response in Opposition to Class Counsel's Motion for Bond on Appeal* was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing]. Parties may access this filing through the Court's system.

/s/ Robert J. Bonsignore
Robert J. Bonsignore

30

*Plaintiffs' Reply to Appellant Stephanie Swift's Response in Opposition to Class Counsel's Motion for Bond on Appeal*