IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| In re Wal-Mart Wage and Hour Employment Practices Litigation | ) ) ) ) | MDL 1735 2:06-CV-0225-PMP-PAL |

OPPOSITION TO MOTION FOR APPEAL BOND
FOR OBJECTOR FATIMA ANDREWS

Class member Fatima Andrews hereby opposes the cumulative and redundant Motion for Appeal Bond filed by disgruntled co-Class Counsel Robert Bonsignore, for the same reasons that she previously opposed the motion for an appeal bond filed by his co-counsel Carolyn Beasley Burton.  The case of *Azizian v. Federated Dept. Stores, Inc.*, 499 F.3d 950 (9th Cir. 2007), flatly prohibits any appeal bond that is not limited to the costs delineated in FRAP 39.  In *Azizian*, the Ninth Circuit held that "the term 'costs on appeal' in Rule 7 includes all expenses defined as 'costs' by an applicable fee-shifting statute, including attorney's fees." *Id*. at 958.  In that case, because the Clayton Act is an "asymmetrical" statute that shifts costs only to defendants, and not to plaintiffs, the Ninth Circuit held that the permissible appeal bond in that case is limited to costs specifically listed in FRAP 39.

This case is no different, and is controlled by *Azizian*.  In Mr. Bonsignore's rambling, 48-page memorandum, there is no mention of the fee-shifting provision of the controlling statute in this case – the Fair Labor Standards Act.  29 USC § 216(b), the relevant section of the FLSA, provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee **to be paid by the defendant**, and costs of the action."  This is a classic one-way cost-shifting statute, that permits recovery of costs against a defendant found guilty of violating the

act, but not against a plaintiff. Appellant Stephanie Swift is a plaintiff and class member, an employee of Wal-Mart who suffered damages as a result of Wal-Mart's violations of the FLSA. To paraphrase *Azizian*, she is "the alleged victim, rather than the perpetrator," of the labor violations. *Id*. at 960. Ordering her to pay a devastating and appeal-ending bond would not serve the purpose of *§*216(b) to deter those who have violated the labor laws.

Appellant Andrews appreciates attorney Bonsignore's candid concession that the bond motion filed by attorney Beasley-Burton runs afoul of the controlling *Azizian* case, but not his obtuse failure to recognize that the *Azizian* decision applies as much to administrative or delay costs as it does to attorney's fees. There is no practical distinction between the Beasley-Burton and Bonsignore bond motions – both are legally deficient and in disregard of the *Azizian* holding.

**I.     Mr. Bonsignore's Memorandum is Replete With Misstatements and Factual Inaccuracies.**

Mr. Bonsignore's Memorandum in Support of Plaintiffs' Motion for Appeal Bond is so full of inaccurate and just plain wrong statements that one is forced to conclude that he knows very little about this case or settlement. For example, at page 4 of his Memorandum, he states that "Objector Andrews did not submit a claim by the September 24, 2009 deadline established by the Court." This is partially true. Objector Andrews did not file a claim by September 24, ***but that date was not the deadline***. Objector Andrews ***did file a claim for benefits*** by the November 9, 2009 claim deadline. *See Exhibit A* attached hereto. Her claim form was postmarked on November 9, 2009, complying with the Claim Form's very terms that appear at the bottom of every page on the Form: "All submissions must be postmarked no later than November 9, 2009."

Stunningly, an attorney who purports to represent a class of Wal-Mart hourly employees has requested that four of his clients post a $609,000 bond on the grounds that they have not submitted financial information to indicate they are financially unable to post a bond in that amount. This demonstrates an astonishing lack of familiarity with the financial circumstances of his clients. It is axiomatic that someone who could afford a $609,000 bond for the right to pursue an appeal would not be working for $8.00 an hour at Wal-Mart. Not one of the class members can afford such an astronomical amount, and most will not earn $609,000 over the course of their entire lifetimes. How could Mr. Bonignore be so oblivious to the economic circumstances of the class? Ms. Andrews unequivocally states that she can in no way afford a bond in the amount of $609,000, or even $6090, and that if such a bond were to be upheld by the Ninth Circuit she would be forced to drop her appeal.

Secondly, Mr. Bonsignore contends that interest on the judgment entered by this Court is "mandatory," when the settlement agreement that *he negotiated* expressly provides otherwise. Class counsel was free to negotiate a settlement which calls for the defendant to pay the amount of $65 million into escrow upon the entry of this Court's final approval order, but that is not what they did. Section 6.2.3 provides that Wal-Mart is not required to transfer amounts necessary to cover Approved Claims until the later of 10 days after the Settlement Effective Date, or 10 days after the Parties approve the Claims Administrator's accounting.[1] The "Settlement Effective Date" is defined by Section 1.39.2 as "the date the Final Judgment is finally affirmed by an appellate court with no possibility of subsequent appeal or other judicial review therefrom." Therefore,

---

[1] Incidentally, the appeals have not yet caused any delay in fact in the payment of claims, since the Claims Administrator has not yet provided an accounting to the parties "itemizing the monies proposed to be distributed to each Approved Claimant." Settlement Agreement at 8.10.

3

pursuant to the terms of the Settlement Agreement that Mr. Bonsignore himself negotiated, the claimants are not entitled to receive any amounts until all appeals are exhausted, including appeals like Ms. Andrews' that challenge only attorney's fees.[2]

In similar circumstances, the Fifth Circuit reached the conclusion that the terms of the settlement agreement control on the issue of delay costs. If the settlement agreement shifts the costs of delay during appeal to the plaintiffs, then there is no basis for any cost bond. *See Vaughn v. American Honda Motor Co.*, 507 F.3d 295 (5th Cir. 2007). There, the district court imposed a $150,000 cost bond on the appellant to insure the class against delay value. The Fifth Circuit reversed that bond order, finding that "to the extent the district court had in mind securing the benefits that would inure to the class members under the settlement agreement, the court was essentially using a bond for costs on appeal as a surrogate for a supersedeas bond. Bonds to supersede a judgment must be set under Rule 8, not Rule7." *Id*. at 298-99.

The Fifth Circuit went on to note that the question of who should bear costs of delay on appeal is determined by the settlement agreement, which in *Vaughn*, as here, "makes no provision for the payment of pre-judgment interest on the benefits Honda has agreed to pay, and the settlement does not become effective, by its terms, until any appeals are concluded. The parties to the settlement thus agreed that the financial time-

---

[2] Incidentally, Mr. Bonsignore's argument ignores the possibility that the appeal could be in the class members' interests, and could benefit them, just like the objectors' appeal in *Rodriguez*, discussed in Section IV, *infra*, did. In *Rodriguez*, the objectors' appeal resulted in a $9 million reduction in class counsel's attorney's fee award, and a corresponding increase in claiming class members' recoveries. Here, if appellants are successful, the claimants will divide an additional $7 million. Even if *Azizian* and *Vaughn* did not forclose any shifting of costs, any minimal loss of interest would have to be balanced against the prospect of an appellant victory in the Ninth Circuit, and the corresponding benefits to the class. There is some irony, lost on Mr. Bonsignore, of class counsel moving, in the name of his clients, for a bond that would end an appeal that could benefit only the class, and harm only class counsel.

4

value of the benefits to be paid under the settlement is not to be awarded to the plaintiffs." *Id*. at 299.

The same analysis applies here. Because the Settlement Agreement does not provide that settlement benefits are payable upon this Court's entry of a final approval order, the Agreement placed the risk of an appeal and the attendant delay upon the plaintiffs. An appeal is part of the final approval process, and therefore class members are entitled to no benefits until the appeals are concluded, as provided in the Settlement Agreement.

## II. Ms. Andrews' Appeal is Far From Frivolous.

Mr. Bonsignore's entire motion is premised on the assumption that Ms. Andrews' appeal is frivolous, based solely on the fact that he submitted expert affidavits in support of the fee and the Court held two hearing, without bothering to actually confront the arguments advanced by Ms. Andrews and discussing them in the context of Ninth Circuit law. Ms. Andrews argued that Class counsel should receive no more than the benchmark percentage fee of 25%, and that that percentage should be applied to the $65 million that the parties now admit will be all that will be paid pursuant to the settlement.

It is difficult to see how Ms. Andrews' objection could be deemed frivolous, since it adopts and repeats in large part the objection that Co-Lead Counsel Carolyn Beasley-Burton made to a settlement proposed by Mr. Bonsignore in Massachusetts. In fact, Ms. Andrews attached a copy of Ms. Burton's Massachusetts objection to her objection in this case. Unless Mr. Bonsignore contends that Ms. Burton's Massachusetts objection was frivolous, it is difficult to understand how the Ninth Circuit could ever find that Ms. Andrews' objection here is frivolous. It would be hard to make that argument, however,

5

since the Massachusetts court sustained those objections and rejected Mr. Bonsignore's proposed settlement.[3]

In its November 2 Order, this Court provided a list of reasons for departing from the 25% benchmark. In Ms. Andrews' opinion, those reasons do not justify an 8% upward departure from the benchmark, and therefore constitute an abuse of discretion. In particular, the percentage fees approved in other state courts are entirely irrelevant to a fee award in a federal court, given the starkly different laws governing attorney's fees in those states. Therefore, while Class Counsel and this Court may differ with Ms. Andrews, she has clearly articulated a reasonable basis for contending that this Court abused its discretion in departing from the benchmark.

Secondly, Ms. Andrews objected to applying the percentage fee to the $20 million that was not guaranteed by the settlement, citing to prior cases that demonstrated that the settlement cap was highly unlikely to be reached. Ms. Andrews was ultimately proved to be right about this projection. This Court initially announced that it would defer ruling on the attorney's fee award until the parties reported back to the Court about the claims rate. After the parties submitted a filing to this Court conceding that the claims submitted by the class would not even reach the $37 million necessary to cause the $65 million floor to be exceeded, this Court inexplicably ruled that it would apply the 33% it had previously settled upon to the full $85 million, rather than the $65 million that was justified by the claims data.

---

[3] In one sense, the judge's rejection of the *Salvas* settlement could be characterized as his sense that the Bonsignore settlement was a lousy settlement of a strong (*i.e.*, certified for class trial) case, whereas here, this Court indicated that it found that the proposed settlement was a good recovery for a very weak group of cases. But the *fee objection* (that fees should be calculated based upon benefits paid to class members, and not on some theoretical ceiling) that Ms. Burton made in *Salvas* still applies with equal force here.

The Minute Order entered by this Court contained absolutely no statement of reasons for applying the 33% to the counter-factual $85 million, nor any analysis of the relevant caselaw.  This Court simply stated "[t]he Court grants the award of attorney's fees in the amount of $28,333,050," without further explanation.  Ms. Swift contends that this is an abuse of discretion, especially after the parties had disclosed that $65 million would not be exceeded in this case.  *See FRCP 23(h)(3)* ("The court ... must find the facts and state it legal conclusions under Rule 52(a)").[4]

The requested fee award of $28 million is simply not reasonable in the context of a settlement has delivered no more than $65 million in total value to class members.  Ms. Beasley-Burton made *the same point* in her objection to the Massachusetts settlement: "Based upon the likely claims from the Class… the proposed legal fees appear out of balance with the actual benefit obtained for the class."  *Exhibit 2 to Swift Objection* at p. 29.

Federal courts have generally followed the Federal Judicial Center guidelines and endeavored to accurately value claims-made settlements when awarding attorney's fees.  They do not simply use the amount made available to the class when calculating a percentage attorney's fee, but they wait for the claims to come in and calculate the fee based upon the amount actually paid out to the class members.  *See e.g., In re Compact Disc Minimum Advertised Price Litig.*, 370 F. Supp. 2d 320 (D. Me. 2005) (awarding attorney's fees of 30% of value of redeemed coupons, which was 30% of claimed

---

[4] Attorney Pentz was counsel for the successful appellant in *Dikeman  v. Progressive Exp. Ins. Co.*, 2008 U.S. App. LEXIS 6768 (11th Cir. 2008), in which the Eleventh Circuit reversed and remanded a fee award for a "conclusory statement that does not allow for our meaningful review." *Id*. at *8.  Appellant Andrews believes that the Ninth Circuit will at a minimum reverse and remand this Court's conclusory determination that the percentage should be applied to the fictional cap of $85 million, rather than the $65 million that was conclusively established by the parties' November 12, 2009 filing.

7

lodestar).  *See also In re Excess Value Ins. Coverage Litig.*, 2005 U.S. Dist. LEXIS 45104 (SDNY 2006) at *28-33 (awarding class counsel fees in the amount of 50% of vouchers redeemed, which was 35% of lodestar).

> Recognizing that percentage of funds is the preferred method of assessing fees in a settlement like this, with lodestar analysis providing only a check, I can effectively gauge appropriate attorney fees only if I know the total value of the settlement.  But although I am satisfied that the coupon settlement has value to the class, I am not confident of the redemption rate that has been projected and thus of the settlement's total value.  Therefore, I have determined to delay award of attorney fees until experience shows how many vouchers are exercised and thus how valuable the settlement really is.

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189-90 (D. Me. 2003) (Hornby, D.J.).

> The percentage of Settlement approach cannot be reasonably employed at this point because the Settlement's actual value to the Class is unclear and cannot accurately be assessed until the rate at which Class Members redeem UPS Vouchers is known… "Particularly where the common benefits are in the form of discounts, coupons, options or declaratory or injunctive relief, estimates of the value or even the existence of a common fund may be unreliable, rendering application of any percentage-of-recovery approach inappropriate.  Where there is no secondary market for coupon redemption, the judge can conclude that the stated value of the coupons … does not provide a sufficiently firm foundation to support a fee award…"

*In re Excess Value Ins. Coverage Litig.,* 2004 U.S. Dist. LEXIS 14822 (S.D.N.Y. 2004) at *58 (quoting Manual for Complex Litigation § 14.121).

The procedure urged by class counsel has been universally rejected by federal courts, and was recently termed a "fiction" and "pure fantasy" by the Northern District of California.  In *Yeagley v. Wells Fargo & Co.*, 2008 U.S. Dist. LEXIS 5040 (N.D. Cal. 2008), the court confronted the task of valuing a settlement for the purpose of awarding attorney's fees:

> Class counsel contend that the Court must consider the amount Wells Fargo could have paid under the settlement in determining the common fund for the purpose of attorney's fees. They argue that under the Ninth Circuit's decision in *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997), the Court *must find* that since all 3.8 million class members could have a made a claim for a free tri-merged credit report, the value of the recovery, that is, the common fund, is at least $114 million… *Williams* does not require this Court to adopt the fiction that the settlement is worth $114 million…. *Williams*, in contrast, was a settlement of a securities-fraud class action for $4.5 million in cash…
>
> Class counsel's $114 million figure is pure fantasy. Counsel does not offer a shred of evidence that suggests that the parties reasonably believed that Wells Fargo would actually pay anything near that amount, and the Court finds that they did not…. To award class counsel the same fee regardless of the claim participation rate, that is, regardless of the enthusiasm of the class for the benefits purportedly negotiated on their behalf, would reduce the incentive in future cases for class counsel to create a settlement which actually addresses the needs of the class. In this case, for example, the one percent claim rate demonstrates that the brochure did not effectively educate the class members about the importance of credit reports and monitoring their credit… Common sense dictates that a reasonable fee in a class action settlement is a fee that takes into account the actual results obtained.

*Id*. at *20-28. The court in *Yeagley* went on to award class counsel a fee of $325,000, or 25% of the value of claimed settlement benefits plus attorney's fees, a figure that was approximately one-third of class counsel's claimed lodestar.

The Supreme Court in *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) distinguished its holding in that case from settlements like the one currently before this Court.

> The District Court explicitly ordered that "plaintiffs in behalf of all members of the plaintiff class … shall recover as their damages herein from the defendants the principal sum of $3,289,359 together with interest …" Nothing in the court's order made Boeing's liability for this amount contingent upon the presentation of individual claims. Thus, we need not decide whether a class-action judgment that simply requires the defendant to give security against all potential claims would support a recovery of attorney's fees under the common-fund doctrine.

*Boeing,* 444 U.S. at 479 n.5.

9

Especially with regard to this last point, along with *Yeagley's* distinguishing of *Williams v MGM-Pathe* from a claims-made settlement like this one, it is far from clear that the Ninth Circuit requires or even permits fee awards to be based on fictional or fantasy projections of a settlement's potential value, when no amount has been placed in escrow, and when the parties' own filings have established that "the claims made will not exceed the Floor amount." Appellant Andrews believes that it is highly likely that the Ninth Circuit will rule that this Court's fee award must be based upon the actual amount that will be paid by the Defendant, and not upon some other theoretical number, especially when it has been conclusively established that the floor will not be exceeded. This is a question of first impression for the Ninth Circuit, as well as a question of law. Therefore, Appellant Andrews' appeal cannot possibly be deemed to be frivolous at this time, nor is it likely to be found frivolous by the Ninth Circuit, even if that Court ultimately rules in favor of Class Counsel.

### III. Class Counsel Has Failed to Follow The Ninth Circuit's Prescribed Method For Disposing of an Appeal Alleged to be Frivolous.

In *Azizian*, the Ninth Circuit concluded that "the question of whether, or how, to deter frivolous appeals is best left to the courts of appeals, which may dispose of the appeal at the outset through a screening process, grant an appellee's motion to dismiss, or impose sanctions including attorney's fees under Rule 38." *Id.* The foregoing is of particular relevance here, where the appellees have not filed in the Court of Appeals a motion to dismiss Appellants' appeal, which they could easily do. If Class Counsel is correct that Appellants' appeal presents no meritorious issues worthy of review based upon full briefing and record, the Court of Appeals will promptly dismiss the appeal, rendering the bond motion moot. If the Court of Appeals denies the motion to dismiss,

then it is difficult to see how the Court of Appeals could later find the appeal to be frivolous.  Frivolousness is something that should be readily apparent on the face of an appeal at the motion to dismiss stage.

The fact that class counsel has not filed a motion to dismiss in the Court of Appeals is a strong indication that they have no realistic expectation that the Ninth Circuit would ever find an appeal of a 43% fee award frivolous.  This means that the bond they seek is not meant to secure any likely future award of Rule 38 sanctions by the Ninth Circuit, but rather to end the appeals and protect their fees from any further judicial scrutiny.  The Ninth Circuit stated in no uncertain terms in *Azizian* that such use of an appeal bond is improper.

As the Ninth Circuit has held, the preferable remedy for an appeal alleged to be frivolous is an appropriate motion filed in the Court of Appeals, not a motion for a bond in the district court that issued the order that is being challenged on appeal.  Class Counsel's failure to exhaust their remedies in the Court of Appeals is a further reason to deny their request for an appeal bond to secure any fees that may be awarded pursuant to FRAP 38.

        **IV.**    **Mr. Bonsignore's Reliance on Irrelevant Ad-Hominem Attacks on Counsel Should Not be Tolerated.**

Objector Andrews' counsel have thus far taken the high road, and, with the exception of the implicit criticism of Mr. Bonsignore contained in her citation of the rejected settlement in the *Salvas* case in Massachusetts, have not attacked Mr. Bonsignore personally.  Pages 28-30 of Mr. Bonsignore's Memorandum are a partial and highly selective description of some of attorney Pentz's prior cases *on behalf of other clients*.

11

They have absolutely nothing to do with Fatima Andrews, or the arguments she has raised in opposition to the attorney's fees awarded in this case.

To the extent that Mr. Pentz's other cases are relevant, however, one might want to start with the most recent cases within the Ninth Circuit, rather than those from places like Arkansas. Specifically, it should be relevant that Class Counsel's expert in this case, Professor Rubenstein of Harvard University, just filed a Declaration in support of a fee award to Mr. Pentz and his co-counsel in the case of *Rodriguez v. West Publishing Corp.*, No CV-05-3222, pending in the Central District of California. *See Exhibits B and C*, attached hereto. The fee petition follows a successful appeal to the Ninth Circuit in which the appellants represented by attorney Pentz and his co-counsel preserved $9 million for the class that would have otherwise been paid as attorney's fees to class counsel.

The appellants are seeking a similar result here. If class counsel's attorney's fees were calculated based upon the $65 million floor, which Class Counsel Burton has admitted will not be exceeded, their fees would be $21.5 million, at the 33% awarded by this Court, instead of the $28 million fee award based upon the fiction of an $85 million fund. If the appellants were to achieve this result on appeal, presumably even Professor Rubenstein would agree that they would be entitled to a percentage of the difference as a reasonable fee for preserving the class' money.

Mr. Bonsignore would have this Court believe that attorney Pentz and other counsel who represent objectors never obtain a benefit for their clients or for the class, and simply accept payoffs from class counsel in exchange for dropping their objections. The *Rodriguez* case demonstrates otherwise. The Rubenstein declaration establishes the

12

legitimacy of objector efforts to ensure a fair allocation of class action settlements between the class members and class counsel, and endorses the concept that objectors bring important benefits to the settlement approval process, and, occasionally, very significant financial benefits to the class.

## CONCLUSION

WHEREFORE, Appellant Fatima Andrews prays that this Court deny approval to the Motion for Appeal Bond.

Fatima Andrews,
By her attorney,

*/s/ John J. Pentz*
John J. Pentz, Esq.
2 Clock Tower Place, Suite 440
Maynard, MA  01754
Phone: (978) 461-1548
Fax: (978) 405-5161
Clasaxn@earthlink.net

## CERTIFICATE OF SERVICE

The undersigned certifies that on February 25, 2010 he filed a true copy of the foregoing document by the ECF filing system which resulted in an electronic notice of the filing of this document on all counsel of record.

*/s/ John J. Pentz*
John Pentz