Robert J. Bonsignore (BBO # 547880)
BONSIGNORE & BREWER
23 Forest Street
Medford, MA 02155
Telephone: (781) 350-0000
Facsimile: (781) 391-9496
Email: rbonsignore@classactions.us
*Co-Lead Counsel for Plaintiffs*

*Other signatories appear below*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| IN RE WAL-MART WAGE AND HOUR EMPLOYMENT PRACTICE LITIGATION | **MDL 1735** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS EXCEPT KING v. WAL-MART STORES, INC., CASE NO. 07-1486-WY | 2:06-CV-00225-PMP-PAL (BASE FILE) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR IMPOSITION OF SANCTIONS AGAINST OBJECTOR STEPHANIE SWIFT AND HER COUNSELS JOHN J. PENTZ AND EDWARD COCHRAN**

1

# TABLE OF CONTENTS

I.   FACTS ........................................................................................................................... 2

II.  ARGUMENT ................................................................................................................... 7

    A.   Sanctions Are Appropriate as to Objector Swift Because She Provided an
         Incorrect Address to the Court and Failed to Appear for her Deposition in
         Violation of an Explicit Court Order........................................................................ 7

    B.   Sanctions Are Appropriate as to Counsels Pentz and Cochran because they
         Violated Rule 11 by Submitting a Pleading to the Court Containing False and
         Unsupported Factual and Legal Assertions and/or then Failed to Produce Their
         Client for Deposition Despite Valid Process and or Explicit Court Order and/or
         Act to Correct the Record ....................................................................................... 9

    C.   The Requested Monetary Sanctions are Reasonable and Appropriate to Address ...
         the Misconduct by Objector Swift and Professional Objector Pentz to Deter Such
         Future Misconduct or Comparable Misconduct and to Compensate Plaintiffs and .
         Their Counsel for Actual Harm Suffered ............................................................... 14

IV.  CONCLUSION ............................................................................................................. 17

i

*Plaintiffs' Memorandum in Support of Motion for Imposition of Sanctions Against Objector Stephanie Swift and Her Counsels
John J. Pentz and Edward Cochran*

1

## **TABLE OF AUTHORITIES**

2

3  *Azizian v. Federated Dept. Stores*
4  499 F.3d 950 (9th Cir. 2007) ............................................................................................... 10, 15
5

6  *Barnes v. FleetBoston Financial Corp.*
7  2006 U.S. Dist. LEXIS 71072 (D. Mass.) ................................................................................. 10
8

9  *Benacquisto v. American Express*
10 00cv1980, (D. Mn) ................................................................................................................... 10
11

12 *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*
13 498 U.S. 533 (1991) .................................................................................................................... 9
14

15 *Christian v. Mattel, Inc*
16 286 F.3d 1118 (9th Cir. 2002) ..................................................................................................... 9
17

18 *Clark v. Experian Information Solutions, Inc.*
19 2004 U.S. Dist. LEXIS 28324 (D.S.C.) ................................................................................... 10
20

21 *Cooter & Gell v. Hartmax Corp.*
22 496 U.S. 384 (1990) ................................................................................................................... 15
23

24 *Curry v. Fairbanks Capital Corp.*
25 03cv10895 (D. Mass. 2004) ...................................................................................................... 15
26

27 *Davis v. UST*, No. 17305 II,
28 Circuit Court for Jefferson County, TN...................................................................................... 10

*Plaintiffs' Memorandum in Support of Motion for Imposition of Sanctions Against Objector Stephanie Swift and Her Counsels John J. Pentz and Edward Cochran*

*Galanti v. The Goodyear Tire & Rubber Company,*

03cv209 (D.N.J.) .................................................................................................................... 10

*G.C. and K.B. Investments, Inc. v. Wilson*

326 F.3d 1096 (9th Cir. 2003) ................................................................................................... 9

*In Re Allstate Fair Credit Reporting Acti Litigation*

(M.D. Tenn.) ............................................................................................................................. 10

*In re American President Lines, Inc.*

779 F.2d 714 (D.C. Cir 1985) .................................................................................................. 15

*In re Charter Communications, Inc.*

MDL 1506, 02cv1186 (E.D. Mo. 2005) .................................................................................. 10

*In re Compact Disc Minimum Advised Price Antitrust Litigation*

MDL 1361 (D. Me. 2003) ......................................................................................................... 10

*In Re Daimlerchrysler, et al.*

00cv993 (D. Del.) ...................................................................................................................... 10

*In re Disposable Contact Lens Antitrust Litigation*

MDL 1030 (M.D. Fla.) .............................................................................................................. 10

*In re Lucent Technologies, Inc. Securities Litigation*

327 F. Supp. 2d 426 (D.N.J. 2004) .......................................................................................... 10

*In re: MCI-Subscriber Telephone Rates Ligitaion,*

MDL 1275, 99cv1275 (S.D. Ill.) ............................................................................................. 10

*In re NE Mutual Life MDL, et al.,*

96cv11534 (D. Mass.) ............................................................................................................. 10

*In re PayPal Litigation,*

2004 U.S. Dist. LEXIS 22470 (N.D. Cal.) .............................................................................. 10

*In re Relafen Antitrust Litigation*

231 F.R.D. 52 (D. Mass. 2005) ............................................................................................... 10

*In re Rite Aid Corp.,*

MDL 1360 (E.D. Pa.) .............................................................................................................. 10

*In re Royal Ahold N.V. Securities & ERISA Litigation,*

461 F. Supp. 2d 383 (D. Md. 2006) ........................................................................................ 10

*In re: Managed Care,*

*et al.,* MDL 1334 (S.D. Fla.) .................................................................................................. 10

*In re Serzone Products Liability Litigation*

MDL 1447 (S.D.W.V. 2005)................................................................................................... 10

*In re Vasseli*

5 F.3d 351 (9th Cir 1993) ....................................................................................................... 15

*In re Visa Check/Mastermoney Antitrust Litigation*

96cv5238 (E.D.N.Y. 2004)............................................................................................. 10

*In re Warfarin Sodium Antitrust Litigation*

212 F.R.D. 231 (D. Del. 2002) ...................................................................................... 10

*Lachance* v. *United States Smokeless Tobacco*

No. 2006-2007 564. (N.H. 2006) ................................................................................... 10

*Landreneau v. Fleet Bank (RI) National Ass'n*

01cv26 (M.D. La.) .......................................................................................................... 10

*Lindmark v. American Express,*

00cv8658 (C.D. Cal.) ...................................................................................................... 10

*Lipuma v. American Express*

04cv20314 (S.D. Fla.) ..................................................................................................... 10

*Mangone v. First USA Bank*

206 F.R.D. 222 (S.D. Ill. 2001) ..................................................................................... 10

*Meyenburg v. Exxon Mobil Corp.*

05cv15 ............................................................................................................................. 10

*Montrose Chemical Corp. of Calif. v. American Motorists Ins. Co.*

117 F.3d 11128 (9th Cir. 1997)....................................................................................... 10

*Roasted v. First USA Bank,*

97cv1482 (W.D. Wash.) ............................................................................................................. 10

*Schwartz v. Citibank,*

00cv75 (C.D. Cal.) ...................................................................................................................... 10

*Schwartz v. Dallas Cowboys Football*

97cv5184 (E.D. Pa.) ................................................................................................................... 15

*Spark v. MBNA Corp.*

289 F. Supp.2d 510 (D. Del. 2003) ............................................................................................ 15

*Synfuel Technologies, LLC v. Airborne Express, Inc.*

02cv324 (S.D. Ill.) ...................................................................................................................... 10

*Taubenfeld v. Aon Corp.*

415 F.3d 597 (7th Cir. 2005) ...................................................................................................... 10

*Tenuto v. Transworld Systems, Inc.*

2002 WL 188569 (E.D. Pa.) ....................................................................................................... 10

*Townsend v. Holman Consulting Corp.*

929 F. 2d 1358 (9th Cir. 1990) ................................................................................................... 14

*Varacallo v. Massachusetts Mutual Life Insurance Company*

04cv2702 (D.N.J.) ....................................................................................................................... 10

*Vaughn v. American Honda Motor Co., Inc.*

507 F.3d 295 (5th Cir. 2007) ...................................................................................................... 15

*Zawikowski v. Beneficial National Bank*

98cv2178 (N.D. Ill.) .................................................................................................................. 10

Other Authorities

Fed. R. App. Proc. 11

Pursuant to Rule 11 of the Federal Rules of Civil Procedure (hereafter, "Rule 11") and the inherent power of the District Court, Plaintiffs move this Honorable Court to impose sanctions against Objector Stephanie Swift (hereafter, "Swift," "Objector" "Objector Swift" or "Client") and her Counsels John J. Pentz, Esq and Edward Cochran(hereafter, "Legal Counsels" or "Counsels"). The basis for the request as to Swift is that she filed an Objection that included material information that was untrue, and that she failed to correct the invalid information or otherwise act as was required under the circumstances. As to legal counsels Pentz and Cochran, sanctions are sought because they filed a formal pleading – the Objection – without the required reasonable and competent inquiry and which contained invalid information regarding the client's address; and that they, individually and jointly, failed both to correct the record and to produce their client for deposition before the Final Approval Hearing and the closing of the related record. Moreover, both Objector Swift and her counsel completely failed to take a single reasonable remedial step or otherwise act as required under the circumstances.

The actions and failures to act by Objector Swift and her Counsel have obstructed the orderly administration of justice in this case. Through this date, an invalid address for service for Swift remains on file with this Court; and the costs related to Objector Swift's "no show" deposition remain a burden carried by the Class. For these reasons, and as detailed herein, Swift and Pentz and Cochran should be sanctioned for their misconduct and held accountable for the costs that they wrongfully caused the Class to incur.[1]

## I. FACTS

After many years of hard-fought litigation, Defendant Wal-Mart Stores, Inc. and its affiliated companies along with Class Counsels and Putatative Class Representatives (hereafter

---

[1] The fact that the costs are modest argues for their assessment, not against it.

the "Parties") executed a Settlement Agreement (hereafter, "Settlement") seeking to finally resolve all disputes between them. The history and context of the instant litigation and its Settlement are well known to this Court. Both the history and the merits of the eventual Settlement have also been the subject of exhaustive briefing and multiple hearings.[2]

The explicit terms of the Settlement Agreement required that any Class Member who wished to object provide formal notification to the Court and the parties in writing, on or before a clearly identified final date for objections.[3] In particular, Section 8.15.3 of the Settlement Agreement expressly required as follows:

8.15.3. The written objection must be made under penalty of perjury and include the following information:

...

8.15.3.2. The Objector's name, address, telephone number, and the contact information for any attorney retained by the Objector in connection with the objection or otherwise in connection with the Litigation.

---

[2] For the sake of brevity, Plaintiffs incorporate by reference the contents of the briefing, hearings and Orders relating to the composition of the complaint, Docket nos. 53, 56, 138, 154, 158, 289, 300-301; class certification, Docket nos. 89-94, 203-220, 231, 248, 249, 323; Preliminary Approval, Docket nos. 302-322; Final Approval, Docket nos. 425-438, 486. Plaintiffs also incorporate by reference the Requests for Bonds as to Objectors Gaona, Maddox, and Andrews filed by Robert Bonsignore and joined by the unified Plaintiffs' counsels. *See* Docket nos. 540-546, 549-554, 566-573. Plaintiffs also incorporate the responses of the Objectors to *all* requests for bonds. *See* Docket nos. 557, 558, 573, 583.

[3] *See* Docket nos. 435-1 through 435-5, Attachments to Declaration of Nicole Vamosi in Support of Final Approval, October 1, 2009. *See also* Docket no. 435, N-4, Summary Notice, to Declaration of Nicole Vamosi in Support of Final Approval, October 2, 2009.

The provision requiring Objectors to provide their addresses and contact information, as well as the same information for their counsel, comports with the Federal Rules of Civil Procedure that apply equally to every party in every litigated matter. There is no "Objector" or Professional Objector" exemption.

On September 23, 2009, Swift and her counsel, John Pentz, Esq. and Edward Cochran, both self-described Professional Objectors, objected to the Settlement. *See* Docket no. 382, September 23, 2009. Under the pains and penalties of perjury, Objector Swift provided and caused to be placed on file her address of residence as 1930 Noble Road, number 203 in East Cleveland, Ohio. Also under the pains and penalties of perjury, she advised that Attorney John J. Pentz, Esq., Two Clock Tower Place, Suite 260 G, Maynard, MA 01754; and Edward Cochran, Esq. 20030 Marchmont Road, Shaker Hts., Ohio 44122 represented her.

On October 5, 2009, Plaintiffs formally acted to take the deposition of Objector Swift.[4] *See* Docket no. 441-5, Notice to Take Deposition of Stephanie Swift (hereafter, "Deposition Notice"). A copy of the Deposition Notice was served upon her counsel through service on October 5, 2009. The Deposition Notice provided Swift with notice that her deposition was to be taken on October 7, 2009, at 2:00 p.m. at the Law Office of Andrew Krembs, 55 Public Square, Suite 1700, Cleveland, Ohio 44113. *Id.* In addition, the Deposition Notice provided that Class Counsel agreed that the location could be moved to her counsel's office. *Id.*

On October 6, 2010 this Court allowed Plaintiffs Unopposed Emergency Motion for an Expedited Deposition Schedule. *See* Docket no. 441, Unopposed Emergency Motion for an

---

[4] It is important to note the time frame in issue during which the discovery was to take place was extremely tight. The Order allowing for expedited Discovery of the Objectors was allowed on October 6, 2009 *See* Docket nos. 441, 447, and 448 and the Final Approval Hearing and the closing of the related record was on October 19, 2009. *See* Docket no. 482, Minutes of the Court; Docket no. 491, Final Approval Order, November 2, 2009. Thus, the effect of Swift's and Pentz's misconduct was to waste attorney time at one of the busiest periods in the litigation, when multiple overlapping deadlines were occurring.     3

Expedited Deposition Schedule, October 5, 2009; Docket no. 448, Order Granting Unopposed Motion for an Expedited Deposition Schedule, October 6, 2009.

Due to a change of circumstances, Plaintiffs moved Swift's Deposition from October 7th to October 12th. *See* Docket no. 447, Plaintiffs' Unopposed Amended Motion for an Expedited Deposition Schedule and Memorandum in Support, October 6, 2009. *See also* Docket no. 448, Order granting Plaintiffs' Unopposed Amended Motion for an Expedited Deposition Schedule and Memorandum in Support, October 6, 2009.

Plaintiffs again formally took action to take the depositions of Stephanie Swift on October 6, 2009. *See* Docket no. 447-2, Notice to Take Deposition of Stephanie Swift, October 6, 2009. The second Deposition Notice provided Swift with notice that her deposition was to be taken on October 12, 2009, at 2:00 p.m., Law Office of Andrew Krembs, 55 Public Square, Suite 1700, Cleveland, Ohio 44113. A copy of the Deposition Notice was served upon her counsel, Pentz, through service on October 6, 2009. In addition, the Deposition Notice provided that Class Counsel agreed that the location could be moved to her Counsel's office. *Id.*

On October 9, 2009, Judge Polster of the United States District Court for the Northern of Ohio Eastern Division granted a motion to compel the attendance of Objector Swift at the October 12, 2009 deposition. *See* Attachment A, Ohio Order Granting Complaint for Discovery, October 9, 2009. Receipt of the Notice of Deposition and knowledge of Judge Polster's Order compelling Ms Swifts attendance is not disputed by Swifts Legal Counsel.

Also on October 9, 2009, Process Server Clint Massengale (hereafter, "Massengale"), an employee of New Age Delivery, Courier and Freight, attempted to serve the Deposition Notice and Subpoena personally upon Swift at her provided address of 1930 Noble Road, number 203 in East Cleveland, Ohio. *See* Attachment B, Docket no. 467, December 12th, 2009 Deposition of

4

Clint Massengale at 4, October 18, 2009 (hereafter, "Massengale Deposition"). *See also* Attachment C, Subpoena of Stephanie Swift and Return of Process Server. When he first attempted service at Swift's provided address, Massengale rang the buzzer, got access into the house, knocked on the Swift's door and stayed for about one hour waiting for her. Massengale Deposition at 5. While Massengale was knocking on Swift's apartment door, a gentleman in the building told him that nobody lived in that apartment. *Id.* at 6. After the gentleman finished talking, Massengale witnessed the gentleman enter the apartment next door to the one he was knocking on. *Id.*

Massengale informed his employer that nobody was answering the door and was instructed to tape the subpoena to the door. *Id.* at 7. While he was taping the subpoena to the door, a woman who lived across the hall from the apartment opened her door, informed Massengale that nobody lived in that apartment and asked him if he was moving in. *Id.* Massengale concluded based on all of this information that Swift's address was not valid.[5] *Id.*

Neither Swift nor Pentz nor Cochran appeared for deposition on October 12, 2009; nor did they contact Plaintiffs' counsel in advance of that date to indicate that Swift would not appear to be deposed and/or arrange a <u>firm</u> follow-up/alternate date. As a result, Plaintiffs' counsel incurred costs relative to the preparation for, travel to, and attendance at the deposition,

---

[5] In fact, in response to the Request of Legal Address Needed for Service of Legal Process filed by Plaintiffs' counsel with the United States Post Office, Swift was found to be listed at 1107 Brannon Road, Cleveland, Ohio, 44112 and to never have filed a change of address form for that address. *See* Attachment D, Request of Legal Address Needed for Service of Legal Process to the United States Post Office, December 2, 2009. The response provided to Plaintiffs counsels' Request specifically states that Swift's "name is good at [this] address." *See* Attachment D, *Id.*

as well as the costs to notice, serve, and obtain court orders regarding the deposition; and the record in this Litigation closed without Plaintiffs having the opportunity to depose Swift on the factual basis for her Objection or the other topics referenced in the attached Safe Harbor Letter. Swift through counsel has since sought to exploit and take unfair advantage of her non appearance. *See* Docket no 583 at 3.

## II. ARGUMENT

Two facts are critical: first, that every reasonable effort was made to serve Swift at the address she had provided to Plaintiffs' counsel and the Court under the pains and penalties of perjury; and second, that notice to her Legal Counsels– of both the deposition and the Court's order compelling Swift's attendance is not in dispute. Under these circumstances, there was no justification for Swift's failure to appear or her Legal Counsels failure to correct the record and/or produce Swift to be deposed. In fact, they acted in further violation of court rules and an express Court Order.

A. Sanctions Are Appropriate as to Objector Swift Because She Provided an Incorrect Address to the Court and Failed to Appear for Her Deposition in Violation of an Explicit Court Order.

This Court should find that Objector Swift provided an incorrect and false address in her Objection, filed with the Court under the pains and penalties of perjury, in violation of the explicit terms of the Settlement Agreement. Massengale, the process-server, went to the address Swift provided, was unable to locate her at that address, and was told by two different neighbors that the apartment at issue was vacant. The second neighbor even asked Massengale if he was

going to be moving into that apartment. These facts are more than sufficient for the Court to conclude that Swift committed perjury in her Objection pleading by providing a false address.[6]

The most compelling reason why this misconduct is sanctionable, however, is not the provision of false information itself. Rather, it is the effect that that false information had on this Litigation, Plaintiffs' counsel, and all the members of the Class who have complied with and abided by all of the rules and requirements throughout the Litigation. Swift is an Objector, represented by Professional Objector counsels Pentz and Cochran. By providing an invalid address for service of process, Swift (and her Legal Counsels) intentionally deprived Plaintiffs the opportunity to depose her, explore the factual and legal bases for her objection, and create a record for this Court and the Appellate Court prior to the Final Hearing on the Settlement. This willful misconduct interfered with the orderly administration of justice in this proceeding and has impacted and will continue to impact unfairly the Settlement of the Litigation and the ability of the Class Members to obtain their long-awaited recovery.

Plaintiffs acknowledge that the failure to attend a single deposition may not always warrant sanctions. However, in the context of the critical timing and the related clear Court Order compelling her attendance and the availability of permissible methods for objecting to attendance at her deposition and the significance of the purpose, use and timing of the deposition of this Objector here, Client and Legal Counsel must be sanctioned. Swift chose to object rather than to exclude herself from the Settlement -- which would have allowed her full freedom to pursue any and all avenues to a full recovery of what she considered herself to be due. By voluntarily injecting herself into this actively litigated case at such a critical juncture as an

___

[6] It should be noted that if Swift did, in fact, live at that apartment, then she was validly served as Massengale taped the deposition subpoena to her door. Service in any case was accomplished on Swift's counsel, who had the duty

7

*Plaintiffs' Memorandum in Support of Motion for Imposition of Sanctions Against Objector Stephanie Swift and Her Counsels John J. Pentz and Edward Cochran*

Objector, whose conduct directly impacts every other member of the Class and all the

participants in the Litigation, Swift also submitted herself to the attendant obligations and at the

pace required to allow the orderly administration of justice.  In this context, Swift's affirmatively

acted to prevent service of process and disregard of a Court Order to be deposed was and is

sanctionable misconduct.

> B. Sanctions Are Appropriate as to Counsels Pentz and Cochran Because They Violated Rule 11 By Submitting a Pleading to the Court Containing False and Unsupported Factual and Legal Assertions and/or Then Failed to Produce Their Client for Deposition Despite Valid Process and an Explicit Court Order and/or Act to Correct the Record.

Counsels Pentz and Cochran should be sanctioned because they submitted, assisted in the

submission and/or failed to immediately correct a pleading containing a false address for their client

and failed to produce their client for deposition despite their having received notice and a Court

Order.

Rule 11 states in pertinent part that:

"By presenting to the court...a pleading,...an attorney...is certifying that to the best of the

person's knowledge, information, and belief, formed after an inquiry reasonable under the

circumstances,.. (3) the factual contentions have evidentiary support or, if specifically so

identified, will likely have evidentiary support after a reasonable opportunity for further

investigation or discovery"

Rule 11.

The Supreme Court has held that at the "heart of Rule 11" is the message conveyed by the signer's

certification that he "has conducted a reasonable inquiry into the facts and the law and is satisfied

that the document is well grounded in both... ." *Business Guides, Inc. v. Chromatic Communications*

---

and obligation to inform her of the subpoena and the Court Order that she be deposed, and to apprise her of the consequences of violating a Court Order by failing to appear.

*Enterprises, Inc.*, 498 U.S. 533, 544 (1991). Subjective bad faith is not required under Rule 11; the inquiry is objective. *See G.C. and K.B. Investments, Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003). A court may impose sanctions where it finds that counsel's duty under Rule 11 "to conduct a reasonable factual investigation" prior to filing was not satisfied. *See Christian v. Mattel, Inc.* 286 F.3d 1118, 1127 (9th Cir. 2002) (where the court found counsel's duty under Rule 11 was "to conduct a reasonable factual investigation" prior to filing); *Montrose Chemical Corp. of Calif. v. American Motorists Ins. Co.,* 117 F.3d 11128, 1133 (9th Cir. 1997).

Again, it is the context that matters here. Pentz and Cochran are a Professional Objectors whose suspect practice area and history should be taken into account. Both Pentz[7] and Cochran[8]

---

[7] Boiled to their essence, Professional Objectors are most often described as and compared to extortionists or other thugs who extract cash through wrongful means. The reality is that what Professional Objectors seek in exchange for simply dropping their objections/appeals is to be paid off. Seldom if ever does the class receive a benefit. Pentz has served as a Professional Objector in at least 39 cases. *See Davis v. UST*, No. 17305 II, Circuit Court for Jefferson County, TN; *Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005); *In re Lucent Technologies, Inc. Securities Litigation*, 327 F. Supp.2d 426 (D.N.J. 2004); *In re Relafen Antitrust Litigation*, 231 F.R.D. 52 (D. Mass. 2005); *Spark v. MBNA Corp.*, 289 F. Supp.2d 510 (D. Del. 2003); *In re Warfarin Sodium Antitrust Litigation*, 212 F.R.D. 231 (D. Del. 2002); *In re Charter Communications, Inc.*, MDL 1506, 02cv1186 (E.D. Mo. 2005); *Curry v. Fairbanks Capital Corp.*, 03cv10895 (D. Mass. 2004); *Azizian v. Federated Department Stores, Inc.*, 03cv3359 (N.D. Cal. 2005); *In re Serzone Products Liability Litigation*, MDL 1447 (S.D.W.V. 2005); *In re Visa Check/Mastermoney Antitrust Litigation*, 96cv5238 (E.D.N.Y. 2004); *In re Compact Disc Minimum Advised Price Antitrust Litigation*, MDL 1361 (D. Me. 2003); *Tenuto v. Transworld Systems, Inc.*, 2002 WL 188569 (E.D. Pa.); *In Re Allstate Fair Credit Reporting Acti Litigation,* (M.D. Tenn.); *Lipuma v. American Express*, 04cv20314 (S.D. Fla.); *Clark v. Experian Information Solutions, Inc.*, 2004 U.S. Dist. LEXIS 28324 (D.S.C.); *Schwartz v. Citibank*, 00cv75 (C.D. Cal.); *Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001); *In re PayPal Litigation*, 2004 U.S. Dist. LEXIS 22470 (N.D. Cal.); *Benacquisto v. American Express*, 00cv1980, (D. Mn); *In re Disposable Contact Lens Antitrust Litigation*, MDL 1030 (M.D. Fla.); *Galanti v. The Goodyear Tire & Rubber Company*,

03cv209 (D.N.J.); *In re NE Mutual Life MDL, et al.*, 96cv11534 (D. Mass.); *In Re Daimlerchrysler, et al.*, 00cv993 (D. Del.); *In re Rite Aid Corp.*, MDL 1360 (E.D. Pa.); *Schwartz v. Dallas Cowboys Football*, 97cv5184 (E.D. Pa.); *Zawikowski v. Beneficial National Bank*, 98cv2178 (N.D. Ill.); *Synfuel Technologies, LLC v. Airborne Express, Inc.*, 02cv324 (S.D. Ill.); *Meyenburg v. Exxon Mobil Corp.*, 05cv15; *In re: MCI-Subscriber Telephone Rates Ligitaion*, MDL 1275, 99cv1275 (S.D. Ill.); *Lindmark v. American Express*, 00cv8658 (C.D. Cal.); *Roasted v. First USA Bank*, 97cv1482 (W.D. Wash.); *In re: Managed Care, et al.*, MDL 1334 (S.D. Fla.); *Varacallo v. Massachusetts Mutual Life Insurance Company*, 04cv2702 (D.N.J.); *Landreneau v. Fleet Bank (RI) National Ass'n*, 01cv26 (M.D. La.); *Barnes v. FleetBoston Financial Corp.*, 2006 U.S. Dist. LEXIS 71072 (D. Mass.); *In re Royal Ahold N.V. Securities & ERISA Litigation*, 461 F. Supp. 2d 383 (D. Md. 2006); *Lachance v. United States Smokeless Tobacco*, no. 2006-2007 564. (N.H. 2006).

Of these cases, the majority were overruled or denied by the court. Some examples include *Taubenfeld v. Aon Corp.*, where the court overruled Pentz's client's objection. "The objector's quarrel with the portion of lead counsel's award pertaining to reimbursement for expenses barely warrants comment." *Taubenfeld* at 600. Also, in *In re Lucent Technologies, Inc. Securities Litigation*, where the court ruled against the objectors and found that Pentz's client's objection had misstatements of facts and was misleading. *Id.* In *Spark v. MBNA Corp.*, the Court ruled against Pentz's client's objection and found the objector's, "opposition to class counsel's fee petition appears to be nothing more than an attempt to receive attorneys' fees." *Id.* In *In re Warfarin Sodium Antitrust Litigation*, the Court overruled Pentz's specific objections and found that Pentz's client seemed to have a misunderstanding of the Settlement.

In *In re Compact Disc Minimum Advised Price Antitrust Litigation*, the Judge called Pentz's obejction, "groundless," called Pentz a "professional objector" and required Pentz to post an appeal bond, which he never ended up posting. The district court required the objector, who was represented by Pentz, to post a bond because that appeal "might be frivolous," and because imposition of sanctions on appeal pursuant to Rule 38, was "a real probability." The court specifically concluded that a bond for "damages resulting from delay or disruption of settlement administration caused by a frivolous appeal may be included in a Rule 7 bond." *Id.*, *5. Mr. Pentz and his client voluntarily dismissed their appeal thirteen days later. (MDL 1361 Docket item number 325.) The Court in this case specifically noted, "I have previously noted that Attorney Pentz...filed a groundless objection following

10

*Plaintiffs' Memorandum in Support of Motion for Imposition of Sanctions Against Objector Stephanie Swift and Her Counsels
John J. Pentz and Edward Cochran*

the fairness hearing, ... and he appears to be a repeat objector in class action cases. *See, e.g., Spark v. MBNA Corp.,* 48 Fed. Appx. 385, 386 (3d Cir. 2002) (listing Mr. Pentz, from The Objectors Group, as counsel for objectors); *Tenuto v. Transworld Sys.,* 2002 U.S. Dist. LEXIS 1764, 2002 WL 188569 (E.D. Pa. Jan. 31, 2002), at *2 (same)." *Id.* at 6.

In *In re Disposable Contact Lens Antitrust Litigation,* the Court ruled against Pentz's client, found that counsel for the objector, Pentz, never even read the case file in its entirety and that the objector's ignorance would prejudice the parties if allowed to intervene. In *Barnes v. FleetBoston Financial Corp,* the Court ruled against a portion of the objection and found for a bond for the remainder of the objections. Further, the Court found objector, "Feldman and her attorney, John Pentz (who is also her son-in-law) are professional objectors..." *Id.* Finally, in *In re Royal Ahold N.V. Securities & ERISA Litigation,* the Court overruled Pentz's objection and further held, "Pentz is a professional and generally unsuccessful objector..." Also, "In summary, the Pentz/Tsai objection was not well reasoned and was not helpful." *Id.*

Undoubtedly, Pentz's "objections and appeals are not truly made to advance the interest of the class members. Pentz has admitted that "the bulk of his income does not come from court-awarded fees," and that the payments he receives from the parties to drop his objections "usually dwarf court awards." "So how does Pentz make a living? He refuses to generalize, arguing that every case is unique. But he will acknowledge that the bulk of his income does not come from court-awarded fees...[T]hat kind of fee is the exception rather than the rule, Pentz says. Instead, objectors make most of their money when class counsel pay them to drop their objections. Pentz concedes that payments from class counsel usually dwarf court awards. Joe Whatley of Birmingham-based Whatley Drake, who faced off with Pentz in three different cases, says he has always paid Pentz to drop objections without making changes to the settlement. 'It's like having to pay a tax,' Whatley says." Lisa Lerer, "Fringe Player, The Objector, John Pentz, Class Action Fairness Group, Sudbury, Massachusetts," Litigation 2004, a supplement to The American Lawyer & Corporate Counsel, Oct. 1, 2004. Pentz does not dispute that he is a Professional Objector and even if he did there is ample evidence that he is and that his objections are not received favorably by the Courts.

In *Joyce Beasley* v. *Prudential General Insurance,* Opinion and Order Granting Plaintiffs Motion to Strike the Notice of Intent to Appear, Objection to Class Action Settlement and Request for Attorneys' Fees and Motion to Intervene of Objector Thomas and Marilyn Bell, Circuit Court of Miller County, Arkansas, June 9th, 2006 (hereafter, Arkansas Opinion."), the Court found that Pentz's, "practice appears devoted to filing objections in class action settlements. *See* Attachment E, Arkansas Opinion. Pentz appears to be a repeat objector in class action cases which is sometimes referred to as a professional objector." *Id.* at 5 (citation omitted) The Arkansas Opinion reviewed *In re Compact Disc,* where the Court imposed an appeal bond against Pentz because Pentz's appeal appeared frivolous and he filed a "groundless objection." *Id.* The Arkansas Opinion further noted that at no point did Pentz reveal to the Court in his Affidavit that a federal district court had found him to be a repeat objector who filed a groundless objection. *Id.* Pentz's affidavit falsely stated that he was "never sanctioned or disciplined by any lawyer disciplinary agency in any jurisdiction." *Id.* at 12. This Court further found that Pentz engaged in the unlicensed and unauthorized practice of law in Arkansas when he filed the Objectors' Pleadings without first submitting the required *pro hac vice* materials. *Id.* at 16. The court found that because, "Pentz specializes in objecting to Class Settlements. Because of his chosen vocation, Pentz should be familiar with the basic process of searching the case law of various states." *Id.* Also, the Court noted, "Given that many if not most, sanction, contempt and Rule 11 orders are not published in publicly available databases, this Court has significant questions whether Pentz is concealing additional information relevant to any motion for admission *pro hac vice* he may file in the future." *Id.* at 13. Additionally, the Court found that it was Pentz's "conduct in and of itself that renders Objectors' Pleadings null and void." *Id.* at 16. The Court found that because Pentz's Pleadings were found to be null and void, the Objectors lost their right to formally assert their objections. *Id.* Finally, the Court found that Pentz operates under the trade name of "Class Action Fairness Group," a name that is similar to the federal Class Action Fairness Act, however, "Pentz neither appears to have a relationship with any governmental agency charged with enforcing the Class Action Fairness Act and appears to represent a public or charitable legal services group. Pentz has not rebutted that he operates on a for-profit basis." *Id.* at 8.

[8] This should come as no surprise, Swift's counsel are self-described professional objectors. "Attorney Cochran has been involved, either as an Objector Counsel, or as Class Counsel, in over 100 class actions." *See*

11

have an extensive history of filing objections in class actions. As of February 1, 2010, Cochran

objected to over 100 class actions with little to no benefit accruing to class members worth speaking

of. It is believed that Pentz eclipsed the number of total objections filed by his mentor Cochran, and

both routinely receive compensation for dismissing objections mostly in return for no benefit being

passed to the class. While only a fraction of the cases they have filed objections in are published,

there can be no reasonable question that Professional Objectors Pentz and Cochran knew the

significance of insuring that an accurate address for service of the Objector to a class action

settlement they represented needed to be provided and they also knew that after Plaintiffs formally

sought to serve their client and were formally seeking to take her deposition they needed to correct

the record or make her available at a time and on a date certain for deposition *before the record was*

*closed.* They are keenly aware of the many balls being juggled during the time period in issue and

chose to play a shell game.

Thus, in addition to the normal burden counsel assumes under Rule 11 when filing a

pleading, as Professional Objectors, Pentz and Cochran knew in this matter that discovery would be

sought on their Objector client on an expedited basis, and that Plaintiffs' Counsel would need to

effect service on their client.[9] *See* Affidavit of Robert Bonsignore in Support of Sanctions at ¶37.

The filing of the pleading here with an invalid address for service was an act of either gross attorney

negligence in failing to investigate this most basic piece of information from a client, or a deliberate

and willful act to prevent valid service and obstruct the orderly administration of justice in this

matter – either of which warrants sanctions against Pentz and Cochran.

---

www.edwardcochran.com. Remarkably, in the one case he claims to be the source of his greatest pride, the
reviewing Court found that he was not entitled to fees.
[9] This Court should take judicial notice that agreements to produce clients for deposition by Professional Objector
counsel are unheard of and do not occur. Formal service is required.

In fact, there can be no question here that Legal Counsel's misconduct was deliberate and knowing. First, there is no dispute that they had actual knowledge of both notices of their client's deposition (the original notice and the notice rescheduling it to October 12th), as well as Judge Polster's explicit Court Order compelling their client to be deposed on the date and at the time in issue. It is blatantly unethical and sanctionable misconduct for an attorney to ignore notice and Orders.

Second, Pentz and Cochran never attempted to contact Plaintiffs' Counsel and firmly reschedule the deposition or to correct the record as to their client's invalid address. Rather, their subsequent conduct successfully served to withhold their client from being deposed and insured that the record would close without allowing Plaintiffs and their Counsel the ability to test and create a record as to the basis for her objections.[10]  Third, in response to Plaintiffs' properly sent Safe Harbor Letter, Pentz responded by asserting that Swift's address was in fact correct and provided a declaration allegedly from Swift's mother to support that assertion.[11]  Again – if the address was indeed correct, then Swift had actual notice of her deposition as the subpoena was taped to her door

---

[10] It is well accepted among experienced class counsel that Professional Objectors seek to avoid the deposition of their clients. This is because in most cases the actual objectors are uninformed or misinformed. *See e.g. Docket* no. 472, Deposition of Deborah Maddox. Except in rare circumstances, the client objectors detract rather than contribute to the ultimate goal of the Professional Objector- the creation of a colorable basis for appeal in the record.

[11] *See* Fed. R. Civ. P. 11(c)(2), requiring the movant to provide the offending party with 21 days notice of intent to file for sanctions in order to offer the opportunity to withdraw or otherwise correct the sanctionable conduct. As to the instant request, Plaintiffs served Counsel Pentz with this written Notice of Intent on November 16, 2009. The only response tendered was the written declaration of Swift's mother that the address provided was correct. A refined follow-up Notice is sent in an abundance of caution, enclosing a copy of the intended Motion for Sanction and Memorandum in Support.

*Plaintiffs' Memorandum in Support of Motion for Imposition of Sanctions Against Objector Stephanie Swift and Her Counsels John J. Pentz and Edward Cochran*

by process-server Massengale; and thus, her failure to appear was a deliberate and knowing act to obstruct justice in the face of multiple forms of notice to both Swift and her Legal Counsel.

In any case, the end result is the same. Pentz and Cochran are responsible and accountable for the address provided by their client in the Objection and for their own failure to produce their client for deposition despite multiple notices and orders. Pentz and Cochran should and must be sanctioned for their misconduct.[12] In addition to being given the rightful consequence for their conduct, the sanction will serve as an obviously needed deterrent in the future. There is no doubt that this case is being closely followed by Professional Objectors' counsel who focus on class action practice and legal commentators and academics across the country.

C. The Requested Monetary Sanctions are Reasonable and Appropriate to Address the Misconduct by Objector Swift and Professional Objector Pentz, to Deter Such Future Misconduct or Comparable Misconduct, and to Compensate Plaintiffs and Their Counsel for Actual Harm Suffered.

It is critical that this Court impose sanctions against Objector Swift and Professional Objector Counsels Pentz and Cochran. Absent the imposition of sanctions in this case, the misconduct of Swift and her counsel here will serve as a road map for other Professional Objectors seeking to avoid deposition and other discovery. This loophole should rightly be closed. The road to final closure that parties to class actions face is already too long and difficult and, blocked by artificial barriers imposed by modern day bandits at a remarkable, yet still undocumented rate.

---

[12] As this Court is well aware, it may also impose sanctions under Rule 11 for filings which are frivolous, legally unreasonable or brought for an improper purpose. *See Townsend v. Holman Consulting Corp.*, 929 F. 2d 1358, 1362 (9th Cir. 1990).

Plaintiffs and their Counsel emphasize that the fact that Swift is represented by Professional

Objectors is highly probative here not to establish bad faith in the filing of the Objection,[13] but to

reasonably attribute to her Counsel, in the proper context, the appropriate level of specialized

sophistication, experience and knowledge.  Professional Objectors have extensive experience in

objecting to class action lawsuits which make them keenly aware of the short time frame within

which Class Counsel must conduct and complete discovery of objectors. Thus, they are acutely

aware of the contextual significance of a good address and class counsel's making good service of

process. They also know that taking the deposition of an Objector is considered a necessity by Class

Counsel; and the Professional Objectors here certainly knew that that was the case in the instant

litigation.[14]

For these reasons, this Court should explicitly find that Professional Objector Pentz and

Cochran knowingly and willfully obstructed justice in this case.  This misconduct injected

unnecessary chaos, complexity and confusion into the Litigation, taking Court and attorney time

away from other time sensitive and critically important mandatory activities during the pre-final

approval "overwhelmingly demanding period."  Professional Objectors must not be allowed to

disrupt litigation in this manner, and the failure to impose sanctions will certainly encourage

repeats of this conduct as Professional Objectors look for any colorable way to inject delay and

[13] A determination as to whether an appeal is frivolous is reserved to the Appeals Court, not the district court. *Vaughn v. American Honda Motor Co., Inc.*, 507 F.3d 295, 299 (5th Cir. 2007); *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 407 (1990); *In re American President Lines, Inc.*, 779 F.2d 714, 717 (D.C. Cir 1985); *Azizian v. Federated Dept. Stores*, 499 F.3d 950, 960 (9th Cir. 2007); *In re Vasseli*, 5 F.3d 351, 353 (9th Cir 1993) (citing *In re American President Lines, Inc.* 779 F.2d 714, 717 (D.C. Cir. 1985).

[14] It did in fact happen in this case that Plaintiffs' counsel Robert Bonsignore and Swift's counsel personally discussed Swift's deposition, and Attorney Bonsignore made clear that her deposition was necessary.

confusion. This Court should impose sanctions upon the Objector and her Professional Objector Counsel sufficient to discourage comparable misconduct by others similarly situated.[15]

Specifically, the actual costs suffered by Plaintiffs and their counsel as a result of the incorrect address and failure to appear at the deposition are as follows:

- $18,200.00 for a total of 40.5 hours spent attempting to effect service and obtain a valid address for Objector Swift;[16]

- $225.00 for the cost of the special process server and $60.00 for the non-appearance at the deposition[17] [related travel costs including airfare, hotel, and meals for counsel are not requested at this time];

- $129.92 for the court reporter and transcript from the Deposition of Process Server Clint Massengale;[18] and

---

[15] This Court is extremely well respected by the Bar. Among other things it is perceived as a "no-nonsense" Court that does not tolerate sketchy, unethical misconduct or unfair litigation tactics.

[16] This is broken down as follows: The cost of service was $225.00. The cost relating to the appearance of the stenographer for the duly scheduled deposition and the stenographers recording of Ms. Swift's non-appearance at was $60.00. The cost of the Deposition of Process Server Clint Massengale was $129.00. This service and deposition costs total $414.92. In effecting service, preparing for deposition and attempting to locate Swift's valid address for service, Attorney Bonsignore spent 15.6 hours valued at $8,580.00; Attorney Robin Brewer spent 4.4 hours valued at $1,980.00 and Thomas Henretta spent 11.2 hours valued at $3,920.00 and Attorney Richard Kirchner spent a total of 9.3 hours valued at $3,720.00 for a total of 40.5 wasted attorney hours charged at $18,200.00. *See* Affidavit of Robert J. Bonsignore in Support of Sanctions as to Swift and her Counsel ¶31. Lawyer's Staff time and this Court's and its staff's and Judge Polster's Court's and his staff's time, which are not included here, represent additional needlessly wasted time and resources.

[17] *See* Attachment F, Cady Reporting Services, Inc. Invoice no. 972165; Attachment G, Receipt for Process Server Payment.

[18] *See* Attachment H, Cady Reporting Services, Inc. Invoice no. 972164.

16

- $17,890.00 for 39.7 hours of counsel's time to research, draft, and file this Motion for Sanctions and accompanying documentation.[19]

Thus, the total amount of actual costs requested is $36,414.92. Additional sanctions pursuant to Rule 11 and necessitated by the willful and unethical misconduct of Professional Objectors Pentz and Cochran should also be imposed in this Court's discretion and is requested below.

## CONCLUSION

Wherefore, for the reasons set forth herein, Plaintiffs respectfully ask the Court to impose the requested economic and non-economic sanctions against the Objector and her Counsel pursuant to Rule 11 and this Court's inherent authority to impose sanctions.

To address the misconduct and prevent future abuses, the specific relief requested is as follows:

(1) monetary sanctions against Swift in the amount of $36,414.92 or an amount deemed just and reasonable by this Court;

(2) a finding that Swift knowingly provided an invalid address in her objection;

---

[19] In drafting this Motion, Attorney Bonsignore spent 15.6 hours valued at $8,580.00; Attorney Julie Baker spent 9.5 valued at $3,325.00, Nicole Vamosi spent 9.0 hours valued at $3,600.00; Attorney Richard Kirchner spent 1.5 hours valued at $600.00; Robin Brewer spent 2.8 hours valued at $1,260.00 and Thomas Henretta spent 1.3 hours valued at $525.00. The total hours spent researching, writing and editing was 39.7 with an assessed value of $17,890.00. *See* Affidavit of Robert J. Bonsignore in Support of Sanctions as to Swift and her Counsel ¶32. Again, the value of the attorney's staff time and this Court's and its staff's and Judge Polster's Court's and his staff's time, which are not included here, represent additional needlessly wasted time and resources.

17

(3) a finding that Swift willfully failed to appear at deposition without having obtained a protective order, and resulting monetary sanctions;

(4) a finding that Swift willfully failed to correct the record as to her address;

(5) a finding that Swift willfully failed to make herself available for deposition after having failed to attend a deposition at which her attendance was compelled by Order of Court without having obtained a protective order;

(6) a finding that because of Swift's willful and knowing conduct that all inferences as to what her testimony would have been be deemed against her interest;

(7) a finding that in response to the Request of Legal Address Needed for Service of Legal Process filed by Plaintiffs' counsel with the United States Post Office, Swift was found to be listed at 1107 Brannon Road, Cleveland, Ohio, 44112 and never filed a change of address form for that address;

(8) a finding that the failure to accomplish effective formal service on objector Swift is attributable to the willful and knowing actions and inactions of Professional Objector Counsels Pentz and Cochran;

(9) a finding that the fact that Objector Swift was never deposed prior to the close of the record is attributable to the willful and knowing actions and inactions of Professional Objector Counsels Pentz and Cochran;

(10) a finding that Professional Objector Counsels Pentz and Cochran knowingly and willfully obstructed the appearance of Objector Stephanie Swift at her duly noticed deposition;

(11) a finding that the provision of the invalid address for service was not the product of the required reasonable and competent inquiry by Counsels Pentz and Cochran;

(12) a finding that because no effort was taken by Counsels Pentz and Cochran to either correct the record or produce Andrews for deposition before the Final Approval Hearing and the closing of the related record resulted in irreparable harm to the Class.

(13) a finding that Professional Objector Counsels Pentz and Cochran knowingly and willfully did not act as required to correct the record;

(14) a finding that Professional Objector Counsels Pentz and Cochran knowingly and willfully did not act as required to produce Andrews for deposition on a certain date and at a certain time after she failed to obey Judge Polster's Court order compelling her attendance prior to the closing of the record;

(15) a finding that Professional Objector Counsels Pentz and Cochran acted to achieve the purpose of avoiding the introduction of their Client's testimony into the record;

(16) a finding that Professional Objector Counsels Pentz and Cochran acted in furtherance of carrying out the known unfair obstructionist strategies utilized by Professional Objectors, resulting in monetary and non monetary sanctions;

(17) an order that Swift's Counsel provide this Court with a list of all actions – by Court Name, Address, Phone, Fax, Case Name and Docket Number – in which they have filed an objection to a class action settlement and whether, in each action listed, Counsel was requested to produce the client for deposition; and whether the client was in fact deposed;

(18) a finding that as Professional Objector Counsels who have developed specialized experience and knowledge, Pentz and Cochran knew the significance of the address provided and that formal discovery would be sought during a small window of opportunity by Plaintiffs' counsels on an expedited basis and that their actions and inactions were undertaken to gain an unfair

advantage at the Appellate level of review by insuring the record would not contain the deposition of Objector Swift;

(19) monetary sanctions against Attorneys Pentz and Cochran in the amount of $36,414.92 or an amount deemed just and reasonable by this Court.

(20) other findings as this Court deems just, reasonable and/or necessary under the circumstances

Plaintiffs request that the sanctions requested in paragraphs (1) through (17) and (20) above be decided forthwith, and that Professional Objector Counsel Pentz (and any relevant associate counsels) be ordered to produce the information requested in paragraph (17) within two (2) weeks. Plaintiffs further request that the relief requested in paragraphs (18) and (19), including monetary sanctions against Pentz and Cochran, be reserved until the information requested in paragraph (17) above is provided for validation and cross checking with an additional 4 weeks following its receipt for briefing and a one week period allowing Pentz and Cochran to respond, and an additional one week period allotted to Plaintiffs counsel for a Reply.

Date:   March 1, 2010                          Respectfully Submitted,


                                               _____s/_____
                                               Robert J. Bonsignore (BBO # 547880)
                                               BONSIGNORE & BREWER
                                               23 Forest Street
                                               Medford, MA 02155
                                               Telephone: (781) 391-9400
                                               Fax: (781) 391-9496
                                               Rbonsignore@class-actions.us
                                               *Plaintiffs' Co-Lead Counsel*

*Plaintiffs' Memorandum in Support of Motion for Imposition of Sanctions Against Objector Stephanie Swift and Her Counsels John J. Pentz and Edward Cochran*

Daniel D. Ambrose, Esq.
Ambrose Law Group
1007 East West Maple Road
Walled Lake, MI 48390
(248) 624-5500

Franklin D. Azar, Esq.
Rodney P. Bridgers, Jr., Esq.
Nathan J. Axvig, Esq.
Franklin D. Azar & Associates P.C.
14426 East Evans Ave.
Aurora, CO 80014
(303) 757-3300

Robin E. Brewer, Esq.
Nicole Vamosi, Esq.
Rick Kirchner, Esq.
Kelly Elam, Esq.
Julie Baker, Esq.
Bonsignore & Brewer
23 Forest Street
Medford, MA 02155
(781) 350-0000

Todd S. Collins, Esq.
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
(800) 424-6690

Lanny H. Darr
Schrempf, Kelly, Knapp & Darr, Ltd.
307 Henry St.
Suite 415
Alton, IL 62002
(618) 465-2311

R. Deryl Edwards, Jr., Esq.
606 S. Pearl Ave.
Joplin, MO 64801

Craig O. Asbill, Esq.
Charles G. Monnett & Associates
200 Queens Road
Suite 300
Charlotte, NC 28204
(704) 376-1911

Richard Batesky, Esq.
Attorney at Law
22 E. Washington St., Suite 610
Indianapolis, IN 46204
(800) 822-2039

Mark C. Choate, Esq.
Choate Law Firm LLC
424 N. Franklin Street
Juneau, AK 99801
(907) 586-4490

Adriana Contartese, Esq.
Rafaela Hanley, Esq.
Attorney at Law
866 East Fifth St.
Boston, MA 02127
(617) 268-3557

Paul C. EchoHawk, Esq.
Nathan Long, Esq.
EchoHawk Law Offices
Paul C. EchoHawk
505 Pershing Avenue
Pocatello, ID 83205
(208) 478-1624

Ivy L. Frignoca, Esq.
Lambert Coffin Haenn
477 Congress St, 14th Fl

21

(417) 624-1962

Courtney French, Esq.
Fuston, Petway & French, LLP
3500 Colonnade Parkway
Suite 300
Birmingham, AL 35243
(205) 977-9798


Christopher R. Gilreath, Esq.
Gilreath & Associates
550 Main Street
Suite 600
Knoxville, TN 37902
(865) 637-2442
Donald S. Goldbloom, Esq.
12590 National Pike
Grantsville, MD 21536
(301) 895-5240


J. Thomas Henretta, Esq.
Law Offices of J. Thomas Henretta
400 Key Building
159 South Main Street
Akron, OH 44308
(330) 376-7801


Christopher Meeks, Esq.
Lynch, Meeks & Battitori
1031 Military Avenue
Baxter Springs, KS
(620) 856-2771


Pamela Mullis, Esq.
The Mullis Law Firm
1229 Elmwood Ave
Columbia, SC 29201
(803) 799-9577


Gary S. Nitsche, Esq.
Weik, Nitsche, Dougherty
1300 N. Grant Ave, Suite 101
Wilmington, DE 19899

Portland, ME 04112
(207) 874-4000
Troy N. Giatras, Esq.
The Giatras Law Firm, PLLC
118 Capitol Street
Suite 800
Charleston, WV 25301
(304) 343-2900


Vincent J. Glorioso, III, Esq.
The Glorioso Law Firm
815 Baronne Street
New Orleans, LA 70113
(504) 569-9999


Gregory F. Greiner, Esq.
Greiner Law Office
630 G Ave.
Grundy Center, IA 50638
(319) 824-6951


Thomas H. Johnson, Esq.
Thomas H. Johnson Law Office
410 Hickory St.
Texarkana, AR 71854
(870) 773-6359


Mike Miller, Esq.
Stacey E. Tjon, Esq.
Solberg, Stewart, Miller & Tjon
1129 Fifth Avenue South
Fargo, ND 58103
(701) 237-3166


Glen W. Neeley, Esq.
Attorney at Law, P.C.
863 25th St.
Ogden, UT 84001
(801) 612-1511


D. Michael Noonan, Esq.
Shaheen & Gordon, P.A.
140 Washington Street
P.O. Box 977

22

(302) 655-4040

Raymond A. Pacia, Esq.
Attorney At Law, LTD
50 Power Road
Pawtucket, RI 02860
(401) 727-2242

Arthur Y. Park, Esq.
Laurent J. Remillard, Jr., Esq.
John C. McLaren, Esq.
Park Park & Remillard
707 Richards Street
Suite 500
Honolulu, HI 96813
(808) 536-3905

John Rausch, Esq.
P.O. Box 905
Waterloo, IA 50704
(319) 233-3557

Dirk A. Ravenholt
RAVENHOLT & ASSOCIATES
2013 Alta Drive, Las Vegas, Nevada 89106
(702) 647-0110

Fred Schultz, Esq.
Greene & Schultz
Showers Plaza
320 W. 8th Street
Suite 100
Bloomington, IN 47404
(812) 336-4357

Stephen M. Smith, Esq.
Joseph Smith Ltd.
2100 Kecoughtan Road
Hampton, VA 23661-0437
(757) 244- 7000

Mark Tate, Esq.

Dover, NH 03821
(603) 749-5000

Jeffrey M. Padwa, Esq.
Padwa Law
303 Jefferson Blvd.
Warwick, RI 02888
(401) 921-4800

Wayne D. Parsons, Esq.
Wayne D. Parsons Law Offices
Dillingham Business Center
Suite 201C
1406 Colburn Street
Honolulu, HI 96817
(808) 845-2211

Dan Rausher, Esq.
Attorney at Law
26 Court Street
Suite 1604
Brooklyn, New York 11242
(718) 596-7333

Thomas R. Ricci, Esq.
Law Office of Thomas R. Ricci
303 Jefferson Blvd.
Warwick, RI 02888
(401) 921-4800

Cynthia K. Smith, Esq.
Jasper Smith Olson, P.C.
202 W. Spruce St.
P.O. Box 7785
Missoula, MT 59807
(406) 541-7177

Laurence W. Stinson, Esq.
Bradley D. Bonner, Esq.
Bonner Stinson, P.C.
P.O. Box 799
128 East Second Street
Powell, WY 82435
(307) 754-4950

Tate Law Group, LLC
2 East Bryan Street
Suite 600
Savannah, GA 31401
(912) 234-3030

Matthew Tobin, Esq.
201 S. Phillips Avenue
Suite 200
Sioux Falls, SD 57104
605-366-9715

Ernest Warren, Jr., Esq.
Walker Warren & Watkins
838 SW First Avenue
Suite 500
Portland, OR 97204
(503) 228-6655

Jill P. Telfer, Esq.
Law Offices of Jill P. Telfer
331 J. Street, Ste. 200
Sacramento, CA 95814
(916) 446-1916

Jay A. Urban, Esq.
Urban & Taylor S.C.
4701 North Port Washington Road
Milwaukee, WI 53212
(414) 906-1700

Christopher P. Welsh, Esq.
James R. Welsh, Esq.
Welsh & Welsh, P.C. L.L.O.
9290 West Dodge Road
100 The Mark
Omaha, Nebraska, 68114
(402) 384-8160

*Plaintiffs' Memorandum in Support of Motion for Imposition of Sanctions Against Objector Stephanie Swift and Her Counsels John J. Pentz and Edward Cochran*

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2010, a copy of the foregoing *Plaintiffs' Memorandum in Support of Motion for Imposition of Sanctions Against Objector Stephanie Swift and Her Counsels John Pentz and Edward Cochran* was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing]. Parties may access this filing through the Court's system.

/s/ Robert J. Bonsignore
Robert J. Bonsignore

*Plaintiffs' Memorandum in Support of Motion for Imposition of Sanctions Against Objector Stephanie Swift and Her Counsels John J. Pentz and Edward Cochran*