UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| IN RE: WAL-MART WAGE AND HOUR EMPLOYMENT PRACTICES LITIGATION | MDL 1735 |
| | **Docket No**. 2:06-CV-00225-PMP-PAL (BASE FILE) |
| THIS DOCUMENT RELATES TO ALL CASES EXCEPT KING v. WAL-MART STORES, INC., CASE NO. 07-1486-WY | |

**CO-LEAD COUNSEL CAROLYN BEASLEY BURTON'S
REPLY TO OBJECTOR FATIMA ANDREWS' OPPOSITION TO
MOTION FOR APPEAL BOND**

1

## I. INTRODUCTION

The opposition to Motion for Appeal Bond filed on behalf of Fatima Andrews is professional objector John Pentz's fourth bite at the appeal bond apple, having previously filed oppositions to Plaintiffs' bond motion as to Objectors collectively (Dkt No. 535), Wal-Mart's motion as to Objectors collectively (Dkt No. 539), Plaintiffs' motion as to Objector Swift (Dkt No. 566) and now Plaintiffs' motion as to Objector Andrews (Dkt No. 586). These oppositions are at Dkt Nos. 556, 557, 583 and 603, respectively.

Although Mr. Pentz devotes most of this opposition to rehashing the same flawed arguments from his three prior oppositions, he now takes additional liberties with the law and facts that must be corrected. As in his previous oppositions, Mr. Pentz has again failed to demonstrate why an appeal bond should not be ordered, and ordered without further delay.

The inescapable strategy behind Mr. Pentz's objections to the fee award is that he hopes to exact a portion of those fees for himself as ransom for holding the settlement funds hostage by pursuing a meritless appeal. The delay caused by his appeal and those of the other professional objectors burdens the courts involved and maliciously delays receipt of the settlement funds to all of the rightful recipients. The Court should exercise its power and discretion to ensure that professional objectors such as Mr. Pentz are held accountable for the costs they cause in their vexatious and bad faith pursuit of personal gain.

The Court should also sanction Mr. Pentz for his conduct here. At a minimum, based upon the undisputed record showing that Mr. Pentz demanded money to walk away from his client's objections and appeal, and continues to advance baseless arguments, the Court should issue an order to show cause why Mr. Pentz should not be sanctioned.

## II. THE COURT SHOULD REQUIRE THE OBJECTORS TO POST APPEAL BONDS

Mr. Pentz claims that his appeal is not frivolous because Plaintiffs have not sought to dismiss it in the Court of Appeals. This argument makes no sense. The Federal Rules of Appellate Procedure Rule 7 ("Rule 7"), and relevant case law, expressly authorize district courts

2

to require that a bond be posted when a litigant appeals a final decision, and further provide that the bond should be sufficient to ensure that the appellee will be able collect all of the costs incurred if the appeal is unsuccessful.  Simply put, there is no prerequisite that the appellee take any action in the Court of Appeals before the Court may order an appeal bond.

Not only is the appellate motion to dismiss irrelevant to the requested appeal bond, Mr. Pentz failed to mention that Plaintiffs have in fact notified the Ninth Circuit Court of Appeals that they intend to seek swift resolution of the appeals, along with sanctions against Mr. Pentz and the other professional objectors under Fed. R. App. P. Rule 38.  (9th Cir. Case 09-17648, Dkt No. 21.)  Plaintiffs will also move for summary affirmance of this Court's orders at the appropriate time.  Such briefing is premature at this point, however, since Pentz has yet to file his opening brief.

On February 22, 2010, Mr. Pentz filed a "joint" motion seeking to abate the briefing schedule in the Ninth Circuit, claiming that his request to derail the appeal was joined in by "class counsel, Robert Bonsignore."  (9th Cir. Case 09-17682, Dkt No. 15.)  As stated in Plaintiffs' opposition to the motion to abate, Mr. Pentz filed this purportedly joint motion with full knowledge that he neither conferred with Co-Lead Burton about this request, nor obtained her consent.  (9th Cir. Case 09-17648, Dkt No. 21.)  Mr. Pentz thereafter refused to withdraw the misleading motion, or correct it, after Ms. Burton advised him of her opposition.  Burton Decl. ¶3.

On February 24, 2010, Co-Lead Burton filed an Opposition to Mr. Pentz's motion, asking that the Ninth Circuit not abate the briefing.  (9th Cir. Case 09-17648, Dkt No. 21.)  In the interim, the Ninth Circuit consolidated the professional objectors' respective appeals, and ordered that the briefing and oral argument on the objectors' appeals proceed as soon as possible. (9th Cir. Case 08-80101, Dkt No. 29.)  In that consolidation order, the Court further admonished that it would not grant any extensions absent a showing of extraordinary circumstances.  *Id.*

As demonstrated by his filings in this Court and the Court of Appeals, Mr. Pentz continues to try to manipulate the courts and further delay the resolutions of these matters, all to the detriment of the Class and Class Counsel. While Co-Lead Counsel will continue to take all appropriate steps to protect the Class in both this Court and the Court of Appeals, Mr. Pentz should now be required to post a bond.

### III. THE BOND SHOULD INCLUDE COSTS OF DELAY AND ADMINISTRATION

Mr. Pentz cites a case from the Fifth Circuit, *Vaughn v. American Honda Motor Co.,* 507 F.3d 295 (5th Cir. 2007), to argue that the Rule 7 bond should not include the costs to the Class and Class Counsel of delay in receiving the settlement funds. This argument is misplaced, and conflicts with Ninth Circuit law.

In *Vaughn*, the court found that the appeal bond should not include interest because the settlement agreement did not require the defendant to pay prejudgment interest. The Plaintiffs here are not seeking prejudgment interest, but rather are entitled to recover post judgment interest from any appealing party pursuant to 28 U.S.C. § 1961, and federal case law.

The Settlement Agreement in MDL-1735 does not exempt Wal-Mart from posting a bond if it decided to appeal any ruling from the Court's judgment granting final approval of the settlement. Rather, Section 6.2 of the Settlement Agreement merely defines the time in which Wal-Mart shall fund the Qualified Settlement Fund ("QSF") as being such time after which no further appeal is possible. For purposes of calculating post judgment interest pursuant to 28 U.S.C. § 1961, the judgment became final when approved and entered by the Court on November 2, 2009. Had Wal-Mart appealed that ruling, Plaintiffs would have sought an appropriate supersedeas bond under Fed. R. App. P. Rule 8 requiring Wal-Mart to bear the costs of the delay it caused.[1]

---

[1] Rule 7 was designed to protect appellees from being unable to collect the costs of appeal. Neither Plaintiffs nor Wal-Mart should be obligated under either Rule 7 or the settlement agreement to bear the costs of the objectors' appeals.

4

CO-LEAD COUNSEL BURTON'S REPLY TO OBJECTOR ANDREWS' OPPOSITION TO MOTION FOR APPEAL BOND

The professional objectors are similarly required to provide security to ensure that the Class and Class Counsel will be able to collect the costs that will likely be awarded after the appeal is dismissed. Indeed, but for the misconduct of a few opportunistic and unethical attorneys, the settlement would already have been implemented, and the funds would soon be in the hands of the rightful recipients.

As detailed in the comprehensive briefing by Co-Lead Counsel and Wal-Mart since December of last year, Rule 7 requires that the party responsible for causing delay should be required to post a bond to ensure that these losses will be paid after the appeal is finally dismissed. Neither the Fifth Circuit's holdings in *Vaughn* nor the Ninth Circuit's holdings in *Azizian v. Federated Department Stores, Inc.,* 499 F.3d 950 (9th Cir. 2007) modify this principle in any way. Instead, the rulings in *In re Broadcom Sec. Litig.*, 2005 U.S. Dist. LEXIS 45656 (C.D. Cal. Dec. 5, 2005), at *9-11, that the bond should include costs of delay and increased claims administration, remain the appropriate standard for dealing with the appeals filed by Mr. Pentz and the other professional objectors.

Lastly, to the extent *Vaughn* prohibits interest to be included in a Rule 7 bond, it has no precedential value, as it does not represent the law in this circuit. However, since Mr. Pentz now deems it appropriate to rely upon case law outside of the Ninth Circuit, a position he rejected in his earlier briefing, the Court may decide to follow the First Circuit, Mr. Pentz's home jurisdiction, and include attorneys' fees in the bond pursuant to *Sckolnick v. Harlow,* 820 F.2d. 13, 15 (1st Cir. 1987).

## IV.  MR. PENTZ'S OBJECTIONS ARE PATENTLY FRIVOLOUS.

Mr. Pentz devotes a good deal of his brief to arguing that his attempts to cause unnecessary delay and extort money for his efforts are not frivolous. In doing so, he ignores Plaintiffs' prior briefing showing that his arguments are contrary to both applicable law and the record in this case.

Mr. Pentz also glosses over the fact that Plaintiffs need not demonstrate that his arguments are frivolous in order to obtain an appeal bond under Rule 7. To the contrary, Rule 7 authorizes the Court to impose a bond when a litigant appeals a judgment. This prerequisite was satisfied long ago, on November 23 and December 1 of last year, when the objectors' appeals were noticed. Since then, the bond motions have been fully briefed, and thus, Plaintiffs respectfully urge the Court to order a bond without further delay.

Should the Court find that Mr. Pentz has filed frivolous pleadings, or otherwise unnecessarily delayed the proceeding, or acted in bad faith, as Plaintiffs contend, the Court should sanction Mr. Pentz for this misconduct pursuant to 28 U.S.C. § 1927. In his latest effort to avoid sanctions, Mr. Pentz's seeks to "spin" his objection and appeal as potentially beneficial to someone other than himself. This shamefully transparent argument should fare no better than his previous attempts to rationalize his extortionate conduct.

### A. The Objections Raised in the *Rodriquez* Litigation Have Nothing in Common with Those Raised by Mr. Pentz in MDL-1735.

Mr. Pentz claims that his objections and appeal are not necessarily frivolous because William Rubenstein filed a declaration in the trial court in *Rodriquez v. West Publishing Corp.* (C.D. Cal., Case No. CV-05-3222), recognizing that objectors should be compensated *if* they perform a service to the court and add value to the class. Opposition p. 4, fn 2. Neither the *Rodriquez* litigation, at the appellate or trial court levels, nor Rubenstein's declaration, has any application to this case.

In *Rodriquez,* 563 F.3d 948, 958 (9th Cir. 2009), the Court of Appeal found that there was a conflict between the class on the one hand, and certain class representatives and class counsel on the other, because the fee agreement between the latter guaranteed the representatives incentive payments linked to the recovery to the class. This provision violated the prohibition against fee sharing agreements with clients, as set forth in the California Rules of Professional Conduct (adopted by the Eastern District). *Id.,* 563 F.3d at 959-960.

6

The Ninth Circuit in *Rodriguez* affirmed the lower court's decision to deny any incentive award to those class representatives, vacated the attorneys' fee award because of the conflict, vacated the denial of fees to counsel for the prevailing objectors, and remanded the case to the lower court to determine the amount of the fees to be paid to class counsel and these objectors. *Id.,* 563 F.3d at 959, 968-969.  The *Rodriguez* litigation is inapposite to MDL-1735, as there is no conflict here between the Class and the Class Representatives or Class Counsel.[2]  Nor is there any connection between the unlawful fee agreements in *Rodriquez* and the request here by Class Counsel to be compensated for their services in accordance with applicable class action law.

The circumspect declaration Professor Rubenstein submitted in *Rodriguez* likewise has no relevance to this case or Plaintiffs' requests for either a bond or sanctions.  That declaration was intended to assist the *Rodriguez* trial court in determining whether the objectors should be compensated from class funds in the event the court found that any objections actually had merit, and were not duplicative of the court's independent conclusions.  Rubenstein Decl. ¶32 (Dkt No. 603-2).  Contrary to Mr. Pentz's assertion, Rubenstein took no position on whether any objector actually conferred a benefit on the class, expressly prefacing his declaration with the caveat that he has no opinion in that regard, which determination is exclusively for the court to make.  *Id.* ¶1.  Assuming that the court found that any objector conferred a benefit on the class, Rubenstein merely recognized the obvious, that they should be paid for their work.  *Id.,* ¶¶25-26.

Notably, while Professor Rubenstein's declaration makes no mention of Mr. Pentz or his work as a professional objector, it does address the type of conduct that Mr. Pentz has engaged in here, differentiating between the contributions to the class claimed by the objectors (led by the firm of Kendrick & Nutley) in *Rodriquez,* and the self-serving extortionate tactics for which professional objectors are notorious.  Rubenstein Decl. ¶28 (Dkt No. 603-2).  Indeed, Rubenstein expressly states that professional objectors rarely add any value to the proceeding, an opinion he

---

[2] However, as Co-Lead Burton previously pointed out, there does appear to be a conflict between the professional objectors and their clients, based upon the attorneys' offer to walk away from the baseless objections in exchange for payment.

7

**CO-LEAD COUNSEL BURTON'S REPLY TO OBJECTOR ANDREWS' OPPOSITION TO MOTION FOR APPEAL BOND**

also voiced here in dismantling the frivolous objections filed by Pentz and the other professional objectors in MDL-1735. *Id.,* ¶¶1-2; *see also* Rubenstein Decl. in Support of Settlement Approval and Fee Petition, ¶40 (Dkt No. 417) ("These objections appeared to be uninformed by the precise nature of the case, its comparison to other Wal-Mart settlements, or the applicable Ninth Circuit case law; they read as canned objections.").

In the *Rodriquez* case, Professor Rubenstein further observed that professional objectors routinely file frivolous pleadings for the sole purpose of exacting payment from the aggrieved class or class counsel to drop their objections, and are universally reviled for such conduct. Rubenstein Decl. ¶28, footnotes 46, 47 (Dkt No. 603-2). This is exactly what has occurred here, where the undisputed record shows that Mr. Pentz and his cohorts attempted to extort money from Class Counsel by offering to walk away from their objections and appeal for a cash payment of $800,000. Pentz's conduct places him squarely within the realm of the "bottom feeders" described in footnote 47 of Professor Rubenstein's Declaration in *Rodriquez.*

Among other significant differences between the facts of this case and *Rodriguez*, is that the Court's award of attorneys' fees here is authorized by well settled Ninth Circuit law (as further explained by Professor Rubenstein in footnote 43 of his *Rodriquez* Declaration), and there is no possibility that appellants can satisfy the high standard of abuse of discretion. *In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1294 n. 2 (9th Cir. 1994) (fee awards need only be reasonable under the circumstances; *Powers v. Eichen,* 229 F.3d 1249, 1256 (9th Cir. 2000) (fee awards are reviewed for abuse of discretion).

Mr. Pentz's argument that the class may conceivably benefit if the fees awarded to Class Counsel were reversed is unsubstantiated and beside the point in any event. The question posed for the Court by Mr. Pentz's conduct is not whether short changing Class Counsel would provide more money to the settlement fund, but whether Mr. Pentz's claim that the Court abused its discretion by following applicable case law is frivolous.

8

CO-LEAD COUNSEL BURTON'S REPLY TO OBJECTOR ANDREWS' OPPOSITION TO MOTION FOR APPEAL BOND

Although it is always true that more money may remain in the settlement fund if counsel were not paid for their efforts, such an inequitable result conflicts with the law. "When counsel recover a common fund which confers a 'substantial benefit' upon a class of beneficiaries, they are entitled to recover their attorney's fees from the fund." *Fischel v. Equitable Life Ins. Soc'y of the United States,* 307 F.3d 997, 1006 (9th Cir. 2002). What Mr. Pentz seeks here, in continuing to maintain that Class Counsel should not be compensated in accordance with longstanding Supreme Court and Ninth Circuit precedent, is to benefit financially by wrongly depriving Class Counsel of the fruits of their labor.

Lastly, unlike the situation in *Rodriguez*, where class counsel committed a serious ethical breach which may potentially forfeit their entire fee and thereby increase the settlement fund that will be distributed to the class, there is no evidence here that an increase in settlement funds caused by a reduction of attorneys' fees would even benefit the Class. As Ms. Burton explained during the Final Approval Hearing, the class members will most likely recover the maximum payment at present, with any additional unclaimed funds going to *cy pres*.[3]

In the end, this entire *Rodriquez* argument is a red herring. Mr. Pentz demanded an enormous sum from Class Counsel to walk away from this case. While $800,000 would have lined the pockets of Mr. Pentz and his cohorts, it would have conferred no benefit on the Class, and the present appeals can achieve nothing other than delay, which will further harm the Class.

**B. Mr. Pentz Should Be Sanctioned for Deliberately Distorting the Record.**

Remarkably, in an apparent effort to avoid sanctions, Mr. Pentz continues to misrepresent the holdings of this Court. In this regard, Mr. Pentz deceptively cites only to the minute order of November 20, 2009 to support his claim that the Court provided *no justification* for the award of attorneys' fees. This is patently false.

---

[3] The interest that will be recovered from the objectors, unlike excess settlement funds, will be distributed *pro rata* to the recipients of the settlement to compensate them for the delay.

9

The Court's Order of November 2, 2009, and the record from the hearings of October 19, 2009 and November 20, 2009 are replete with detailed findings in regard to the law and facts underlying the fee award. In its Order of November 2, 2009, the Court also expressly incorporated the declarations from class action experts William Rubenstein and Brad Seligman to support the award of attorneys' fees. Those declarations are likewise replete with detailed legal and factual analysis supporting the fee award here.

It is both frivolous and sanctionable for objectors such as Mr. Pentz to misrepresent the record and rulings of a court. *See, e.g., E-Pass Technologies, Inc. v. 3Com Corp.*, 559 F.3d 1374, 1377 (Fed. Cir. 2009). An appeal is frivolous "when an appellant has not dealt fairly with the court, [or] has significantly misrepresented the law or facts") (citations omitted); *accord*, *Hubbard v. Yardage Town,* 295 Fed. Appx. 169 (9th Cir. 2008) (Section 1927 authorizes sanctions when "an attorney knowingly or recklessly raises a frivolous argument, or agues an unmeritorious argument") (citations omitted).

## V. MR. PENTZ'S REHASHED ARGUMENTS REMAIN BASELESS

Mr. Pentz repeats several failed arguments in this Opposition, despite the fact that Plaintiffs have refuted them, over and over, and the Court considered and overruled them during the Final Approval Hearing on October 19, 2009.

First, Mr. Pentz's assertion that the Ninth Circuit decision in *Azizian* held that the costs which may be included in an appeal bond imposed pursuant to Rule 7 are limited to those specified in Fed. R. App. R. 39 ("Rule 39") continues to lack merit. To the contrary, as briefed in Plaintiffs' reply to the Swift opposition (Dkt No. 584, pp. 3-4), the *Azizian* decision was limited to the narrow issue of when attorneys' fees may be included in appeal bonds, and *Azizian* specifically held that a Rule 7 bond is *not* limited to Rule 39 costs, but was likely intended to "refer to all costs properly awardable at the conclusion of the appeal." *Azizian*, 499 F.3d at 958, *citing Marek v. Chesny,* 473 U.S. 1, 8-9, 105 S. Ct. 3012 (1985). Plaintiffs will not present further briefing on this issue unless requested by the Court.

10

Second, Mr. Pentz's claim that the Court abused its discretion by following longstanding federal court precedent also continues to lack merit. Mr. Pentz asserts that attorneys' fees must be based on claims actually filed by class members, rather than the full settlement fund available to the class, relying again solely upon inapposite case law dealing with settlements where the class benefits consisted of coupons or other items of questionable value.[4]

As explained by Ms. Burton during the Final Approval Hearing on October 19, 2009, and as briefed in Plaintiffs' original response to this objection and again in the reply to the Swift opposition, the present settlement is for *cash,* and the legal constraints on fees based on coupon settlements are therefore irrelevant. (Dkt No. 418, pp. 35-37; No. 584, pp. 7-8.) Mr. Pentz continues to reply on inapposite case law, mainly on *Yeagley v. Wells Fargo & Co.*, 2008 WL 171083 (N.D. Cal. 2008), where the settlement consisted of access to publicly available credit reports. Indeed the *Yeagley* court summarized the fee request as follows: "The question presented is what is a reasonable attorney's fee for a virtually *worthless settlement* of a *meritless case*." *Id.* at *1 (emphasis added). This case has no application here.[5]

Thirdly, Mr. Pentz also continues to misrepresent Co-Lead Burton's opposition to a proffered settlement in a Wal-Mart class action in Massachusetts. In her successful opposition to a settlement that the court rejected as collusive, Ms. Burton never claimed that an award of

---

[4] In his present Opposition, Mr. Pentz relies upon *In re Compact Disc Minimum Advertised Price Litig.*, 370 F.Supp.2d 320 (D. Me. 2005), a coupon settlement; *In re Excess Value Ins. Coverage Litig.*, 2005 U.S. Dist. LEXIS 45104 (SDNY 2006), a voucher settlement; and *Yeagley v. Wells Fargo & Co.,* 2008 U.S. Dist. LEXIS 5040 (N.D. Cal. 2008), where the class benefit consisted of a free credit report that was otherwise publicly available.

[5] Mr. Pentz also asserts that his appeal may not be frivolous because the fees awarded represent 43% of the settlement fund. To the contrary, the fees represent 33.333% of the settlement fund and approximately 40% of the settlement floor (the actual value of which is roughly $70 million), which floor percentage is the lowest of all the reported Wal-Mart class action settlements (Dkt. No. 416, pp. 24-25.) The Court's decision also falls squarely within fee awards typically granted to class counsel in general. Mr. Pentz should be sanctioned for continuing to rely upon inapplicable case law dealing with coupon or other non-cash settlements to support his claim that the Court abused its discretion in awarding fees here.

11

attorneys' fees could not be based upon the ceiling of a settlement. Rather, she objected to the ceiling structure in that case because it was contrary to Massachusetts law that prohibits reversion of settlement funds to the defendant. Mr. Pentz should be sanctioned for continuing to misrepresent the facts of that case.

## VI. CONCLUSION

During the Final Approval Hearing on October 19, 2009, the Court heard argument as to the ulterior motives of the professional objectors, none of whom appeared to defend themselves or their objections despite representations that they would appear. The Court considered their objections, found them to be meritless, and overruled them. The Court then stated that a hearing would be held promptly to order an appeal bond in the event that these attorneys chose to appeal. The appeals were filed, as predicted, and a succession of motions for appeal bonds were filed. The briefing on these motions has been quite thorough, and supports Plaintiffs request that the Court order the objectors to each post an appeal bond in the amount of $772,065 or such other amount as the Court deems appropriate.

Dated: March 4, 2010                                   Respectfully submitted,

/s/ *Carolyn Beasley Burton*
Carolyn Beasley Burton
THE MILLS LAW FIRM
880 Las Gallinas Avenue, Suite 2
San Rafael, CA 94903

12

CO-LEAD COUNSEL BURTON'S REPLY TO OBJECTOR ANDREWS' OPPOSITION TO MOTION FOR APPEAL BOND