UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| IN RE: WAL-MART WAGE AND HOUR EMPLOYMENT PRACTICES LITIGATION | MDL 1735 |
| | **Docket No**. 2:06-CV-00225-PMP-PAL (BASE FILE) |
| THIS DOCUMENT RELATES TO ALL CASES EXCEPT<br>King v. Wal-Mart Stores, Inc., Case No. 07-1486-wy | |

**CO-LEAD COUNSEL BURTON'S OPPOSITION TO OBJECTORS'
JOINT MOTION FOR STAY OF APPEAL BOND**

# I. INTRODUCTION

On March 8, 2010, the Court issued its Order pursuant to Fed. R. Civ. P. Rule 7 requiring each Objector pursuing an appeal to post an appeal bond of $500,000 by March 29, 2010 (Dkt No. 613, the "Bond Order"). The Objectors filed notice of appeal of the Bond Order but otherwise ignored the Order. On May 7, 2010 the Court granted the joint request of Wal-Mart and Co-Lead Counsel Burton and set a Show Cause Hearing for May 18, 2010, requiring the Objectors to explain why they had not complied with the Bond Order.

On May 13, 2010 Lisa Rasmussen, on behalf of the other Objector attorneys, filed a Joint Motion to stay the Bond Order. (Dkt No. 625.) Objectors' Motion, having been filed after the Order to Show Cause was issued, and forty-five days after the deadline had passed for the Objectors to comply with the Court's Bond Order, is untimely. The Objectors did not seek permission from this Court to file their belated Motion after the March 29, 2010 deadline. During the Order to Show Cause hearing, the Court requested that Plaintiffs file responsive briefing before ruling on the motion to stay, but refused to permit the Objectors any additional briefing on the matter. Nonetheless, in direct contravention of the Court's instructions, the Objectors filed a supplemental brief, Joint Motion to Stay Appeal Bond *Nunc Pro Tunc* and Opposition to Sanctions, on May 21, 2010. (Dkt No. 636.) Apart from being untimely and unauthorized, Objectors' two Motions are unfounded.

In their original Motion, the Objectors failed to demonstrate any extraordinary reason or circumstance that would justify their non-compliance with the Court's Order, or failure to seek relief under Fed. R. App. P. Rule 8 ("Rule 8"). Rather, in that Motion the Objectors chose to continue complaining about the bond, in an apparent effort to relitigate the merits of the underlying Bond Order. In so doing, the Objectors continue to misconstrue the basis for the Court's holding, as well as the nature of the bond.

In their unauthorized supplemental Motion, the Objectors assert that the class members in whose names the professional objectors are pursuing this litigation lack the resources to post the

1

required bonds, however it is undisputed that the Objector attorneys demanded a lucrative payoff of $800,000 to prevent their appeals. Unmistakably, the decision to fund the bonds is merely a business decision on the part of the Objector attorneys.

There is no reason why the Court should show leniency to these Objectors. As the Court is well aware, and as Wal-Mart's national counsel confirmed during the Show Cause Hearing on May 18, 2010, these professional objectors filed similar, frivolous objections, in eight of the recent Wal-Mart settlements, only to disappear when they received payment.[1] The Objectors use the threat of a lengthy appeal that will delay the receipt of funds awarded to the Class and Class Counsel, and their only objective is to profit by exploiting the delays in the appellate system.

Even if this were not the case, it would be incredibly prejudicial to the Class to allow these four Objectors to hold up a settlement covering millions of low paid hourly workers without posting a bond to cover the *damages that the Class will incur* as a result of this delay. Public policy requires that the litigants seeking to challenge a *judgment* must bear the cost associated with such a challenge, and there is no reason to deviate from that practice in this case. It is undisputed that the Class Members can ill afford the delay in receiving the settlement benefits, and there is no admissible evidence in the record demonstrating that the professional objector attorneys cannot post the required bond.

Accordingly, Plaintiffs request that the Court deny the untimely and unauthorized Motions for a stay, except to allow the Objectors a window of <u>seven days</u> to comply with the Bond Order, after which time each Objector attorney would be sanctioned in the amount of $1000 per day until there is compliance with the Bond Order or the Court of Appeals grants them relief. Plaintiffs request also that the Objector attorneys be sanctioned for their past, unexcused, disobedience.

---

[1] The Objectors have never denied that they demanded $800,000 to disappear in this case.

2

## II.   THERE IS NO GOOD REASON TO STAY THE BOND ORDER

Rule 8(a)(1) provides that : "A party must ordinarily move first in the district court for the following relief: (A) a stay of the judgment or order of a district court pending appeal…"  In their Motion, the Objectors claim that they were unfamiliar with this Rule, despite the fact that they make a career of filing appeals.  Notably, none of the Objector attorneys supported this "ignorance of the law" defense, with an affidavit.  In any event, this excuse falls considerably short of demonstrating an extraordinary circumstance that might justify their failure to comply with a court order.

The bulk of the Objectors' original Motion is spent attempting to justify their disobedience by rearguing the merits of the Bond Order.  (Motion, Dkt No. 625, p. 4.)  As always, their attacks are irrelevant and erroneous.  The Objectors continue to assert, for example, that the Court improperly included in the bond amount the attorneys' fees that will likely be awarded under Fed. R. App. P. Rule 38 ("Rule 38").  That mischaracterization is belied by the Court's written Order.  Moreover, as affirmed by the Court during the Show Cause Hearing, attorneys' fees were *not* included in the bond.

Contrary to the Objectors' assertions, the bond amount does *not* include any anticipated award that the Court of Appeals may make under Rule 38.  For this reason, the Objectors' reliance upon *Azizian v. Federated Dept Stores, Inc.,* 499 F.3d 950 (9th Cir. 2007), is misplaced. For example, the Objectors assert also that the Bond Order should not have included the Court's findings that the underlying objections were frivolous.  What *Azizian* held, however, was that the District Court should not include in the bond the anticipated Rule 38 award, such as attorneys' fees, that the appellate court may make based upon the appellate court's determination that the appeal was frivolous.  *Id.* at 960.

There is nothing in *Azizian* that constrains this Court from expressing its informed judgment as to the merit of the underlying objections that form the basis for the appeals.

3

Certainly, the judge who has heard the underlying objections, and who is well aware of the facts and law in the case, is qualified to designate as frivolous appeals such as these, that are based on incorrect facts and inapplicable law. "[A] district court's imposition of any sort of cost bond…can always be described as an implicit finding that the appellant's appeal lacks merit, or at least that the appellant poses a payment risk. A district court, familiar with the contours of the case appealed, has the discretion to impose a bond which reflects its determination of the likely outcome of the appeal." *Adsani v. Miller,* 139 F.3d 67, 79 (2nd Cir. 1998).

The Bond Order included the finding that the appeals "are tantamount to a stay of the Judgment entered on November 2, 2009 approving the comprehensive Class Settlement in this case which provides fair compensation for millions of Class Members, as well as injunctive relief ensuring against further loss to persons similarly situated." (Order, Dkt No. 613, p. 3.) The Objectors make a convoluted argument that their appeals have not yet caused the benefits to the Class to be delayed, due to the intervening implementation of the Home Office Class Settlement, meanwhile Plaintiffs' motion in the Court of Appeals for summary affirmance and/or dismissal of the appeals may soon be granted, thus "the fear that the appeal was undertaken to 'stay judgment' is not a ripe fear at this time." (Motion, Dkt No. 625, p. 6.)

In effect, the Objectors argue that their appeals are so meritless that the Class may never suffer the costs of delay, thus the Court should reduce the bond to reflect the likelihood that the appeals will not survive for the usual two years. Although the Objectors criticized this Court, incorrectly, for anticipating the determination of the Court of Appeals in regard to frivolousness, the Objectors now ask the Court to do just that. This contradictory argument fails, however, both because this Court should not speculate as to what the Court of Appeals will determine about the merits of the appeals (*Azizian,* at 960-961) and because Fed. R. Civ. P. Rule 11(b) requires that the Objector attorneys certify that the appeals are warranted by applicable fact and law and are not being presented for any improper purpose.

4

**CO-LEAD BURTON'S OPPOSITION TO OBJECTORS' JOINT MOTION FOR STAY OF APPEAL BOND**

Thus, it is reasonable for this Court to take the Objectors at their word that the Rule 11 requirements are satisfied and to assume that the appeals will run the usual two year course, delaying the benefits to the Class during that time.  Should the Objectors wish to withdraw this Rule 11 certification, Plaintiffs' respectfully request that the Court reconsider Plaintiffs' request for sanctions under 28 U.S.C. § 1927 for vexatious litigation conduct.  The Ninth Circuit has expressly ruled that the act of knowingly filing a frivolous appeal or attempting to delay the proceeding constitutes bad faith and intentional misconduct sufficient to warrant sanctions under Section 1927.  *United States v. Blodgett*, 709 F.2d 608, 610-611 (9th Cir. 1983).

Objectors also fail to grasp that because of their appeals, the settlement cannot be finalized or funded, pursuant to the terms of the Settlement Agreement.  The result is a clear and palpable harm to the Class.  The Home Office Class is closed and, pursuant to the terms of the Settlement Agreement, the funds would now be ripe for distribution but for the wrongful interference by these professional objectors.  In any event, appeal bonds are intended to protect against future damage and costs, not already incurred damages.

Lastly, although the Objectors have never disputed that a bond was warranted, and, in fact, admitted that a bond should issue here, they argue that the bond was improperly intended to punish them for filing frivolous appeals.  This is incorrect.  Fed. R. App. P. Rule 7 requires that the bond be sufficient "to ensure payment of costs on appeal."  Plaintiffs presented evidence substantiating their anticipated costs that would be incurred in litigating these appeals, the largest of which was the loss of use of more than $28 million awarded to the Class and Class Counsel. The costs of delay are an appropriate component of an appeal bond, providing "a guarantee that the appellee can recover from the appellant the damages caused by the delay incident to the appeal." *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 124, 128 (S.D.N.Y. 1999). Indeed a California District Court found (as did this Court) that delay costs should be included in the appeal bond because an objector's "appeal is tantamount to a stay of the judgment approving

the class settlement." *In re Broadcom Corp. Sec. Litig.,* 2005 U.S. Dist. LEXIS 45656, at *11 (C.D. Cal. 2005).

The amounts required to be posted in the Bond Order are not punitive, indeed they are less than Plaintiffs requested, and the bond amounts represent a reasonable, substantiated assessment of costs that Plaintiffs will incur as a result of these appeals.  To reduce the bond to some amount that the Objector attorneys could more easily afford would sacrifice the protection of the parties injured by these appeals and significantly prejudice the low income hourly employees who comprise the Class, without advancing any worthwhile legal objective.

## III.     APPROPRIATE REMEDIES

In their Motion and throughout the Show Cause Hearing, the Objectors contended that they were ignorant of both the March 29, 2010 compliance deadline in the Bond Order and the requirements of Rule 8.  Remarkably, the Objectors also claimed that they are not to blame for flouting the Court's Order because Plaintiffs' Counsel or Defense Counsel, or, perhaps the Court itself, should have reminded them of their obligation to comply with the Court's Order.

The Objectors' asserted ignorance, however, is not a defense in a contempt proceeding for failure to comply with an order of the district court.  "It does not matter what the intent of the appellants was when they disobeyed the court's order.  Moreover, the contempt need not be willful." *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365.  (Citations omitted.)

The Objectors were in violation of the Bond Order for at least 45 days, from March 29 until May 13, 2010, when their Motion was filed.  During the Show Cause Hearing, attorney Lisa Rasmussen acknowledged that a fine of $100 per day would be reasonable.  Plaintiffs' counsel requested a fine of $100 to $1000 per day for the Objectors' non-compliance with the Court's Order, and that the Court award them their fees and costs in having to compel the Objectors' compliance in this matter.  The fees incurred by Co-Lead Counsel Burton and Liaison Counsel, Carol LaPlant, total $30,483.00, and their costs total approximately $1,000.  *See* Declaration of

**CO-LEAD BURTON'S OPPOSITION TO OBJECTORS' JOINT MOTION FOR STAY OF APPEAL BOND**

Carolyn Beasley Burton, ¶2. Mr. Bonsignore has likewise submitted briefing requesting reimbursement of his firm's fees and costs, should the Court deem this too appropriate.

Plaintiffs propose that the Court provide a seven day grace period for the Objectors to post the bond, after which the Objector attorneys would be fined $1000 per day for each day that the Objectors remain delinquent.

## IV.   CONCLUSION

The professional Objectors make a business of tying up class action settlements by filing meritless appeals that deny the benefits of the settlement to the class and class counsel for years. They do not deny that they demanded a cash payment of $800,000 to cease their interference with these proceedings. They now argue that the financial damage they attempted to cause may be mitigated as a result of Plaintiffs' swift action seeking dismissal in the Court of Appeals, however the only certain means of ensuring that the settlement funds will be dispensed without delay is by the Objectors withdrawing their appeals. If they are unwilling to do so, then they must be accountable for the consequences of their actions, including the possible two year delay in implementing the settlement. The Bond Order properly ensures that the Class and Class Counsel will be able to recover the costs that they will incur as a result of such delay, and the Order should be enforced fully, both retrospectively and prospectively by means of contempt sanctions.

Dated: May 24, 2010                                   Respectfully submitted,

/s/ *Carolyn Beasley Burton*
Carolyn Beasley Burton
THE MILLS LAW FIRM
880 Las Gallinas Avenue, Suite 2
San Rafael, CA 94903

7

**CO-LEAD BURTON'S OPPOSITION TO OBJECTORS' JOINT MOTION FOR STAY OF APPEAL BOND**