UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| IN RE: WAL-MART WAGE AND HOUR EMPLOYMENT PRACTICES LITIGATION.<br><br>AND ALL RELATED CASES. | MDL 1735<br><br>2:06-CV-00225-PMP-PAL<br><br>O R D E R |

Presently before the Court is Co-Lead Plaintiffs' Counsel Robert Bonsignore's Motion to Confirm Arbitration Award (Doc. #722). Co-Lead Plaintiffs' Counsel Carolyn Beasley Burton, Robert Mills, and Carol P. LaPlant filed an Opposition and Motion to Vacate the Arbitrator's Ruling (Doc. #737). Various Plaintiffs' class counsel filed Oppositions to the Motion to Vacate (Doc. #748-53, 757-61, 763-64, 768). Robert Bonsignore filed an Opposition (Doc. #765) to the Motion to Vacate. Defendants filed a Submission (Doc. #756). Carolyn Beasley Burton filed a Reply (Doc. #782).

Also before the Court is Robert Bonsignore's Motion to Strike or, Alternatively, to Allow Response (Doc. #786). Carolyn Beasley Burton filed an Opposition (Doc. #798). Robert Bonsignore filed a Reply (Doc. #800) and proposed Sur-reply (Doc. #801).

**I. BACKGROUND**

The parties are familiar with the facts and the Court will not repeat them here except where necessary. The parties to the present dispute are Plaintiffs' class counsel who, having successfully negotiated a settlement with Defendants on behalf of Walmart employees in numerous states in this multi-district litigation ("MDL") and having been awarded by this Court over $28 million in attorneys' fees, continue to dispute the allocation of this substantial fee award.

Although the Settlement Agreement contemplated co-lead counsel Carolyn Beasley Burton ("Burton") and Robert Bonsignore ("Bonsignore") would work cooperatively to develop an allocation plan for all class counsel, the co-leads' relationship has deteriorated to the point where they cannot agree on anything relating to their dispute over attorneys' fees. The parties therefore resorted to the arbitration process in Section 22.9 of the Settlement Agreement, pursuant to which the parties previously had selected the Honorable Layn R. Phillips (ret.) ("Phillips") as the arbitrator for any dispute among class counsel concerning the allocation of fees. Co-lead counsel Burton, The Mills Law Firm, and Carol LaPlant (collectively the "Burton Group") filed a proposed fee allocation, and co-lead counsel Bonsignore, Bonsignore & Brewer, and most of the local class counsel (collectively the "Bonsignore Group") filed a separate proposed allocation plan.

Phillips issued his Opinion and Order allocating the fee amongst the various class counsel in January 2011. (Op. & Order (Doc. #779).) On January 26, 2011, co-lead counsel Bonsignore filed in this Court a Notice of Allocation Order and Request for Court Order Instructing Claims Administrator to Release Payment of Attorneys' Fees to Plaintiffs' Class Counsels (Doc. #722). Co-lead counsel Burton filed an Opposition (Doc. #725). This Court denied Bonsignore's request to release the funds from the Qualified Settlement Fund, designated the Notice as a motion to confirm the arbitrator's award, and set a briefing schedule. (Order (Doc. #736).)

The Burton Group opposes the Bonsignore Group's Motion to Confirm the Arbitration Award, and counter-moves to vacate the award. The Burton Group contends the arbitrator's decision is the product of corruption, fraud, or undue means; the arbitrator was evidently partial; the arbitrator was guilty of misbehavior prejudicing their rights; and the arbitrator manifestly disregarded the law. The Bonsignore Group opposes vacatur and requests fees and costs.

**II. DISCUSSION**

Section 10 of the Federal Arbitration Act ("FAA") sets forth the circumstances under which a court may vacate an arbitration award:

///

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). A court may vacate an arbitration award only if the arbitrator's conduct violated one of the specific provisions of section 10 or 11 of the FAA. Hall St. Assocs., L.L.C. v. Mattel, Inc. 552 U.S. 576, 584 (2008). Although "manifest disregard of the law" is not a ground specifically listed in the FAA, a court may vacate an award on this basis because the term serves "as a judicial gloss on the standard for vacatur set forth in FAA § 10(a)(4)." Johnson v. Wells Fargo Home Mortg., Inc., 635 F.3d 401, 414 (9th Cir. 2011).

A court's review of an arbitration decision under the FAA is "'limited and highly deferential.'" Coutee v. Barington Capital Grp., L.P., 336 F.3d 1128, 1132 (9th Cir. 2003) (quoting Sheet Metal Workers' Int'l Ass'n v. Madison Indus., Inc., 84 F.3d 1186, 1190 (9th Cir. 1996)). The party moving to vacate the award bears the burden of proof. Collins v. D.R. Horton, Inc., 505 F.3d 874, 879 (9th Cir. 2007); D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006).

**A. Fraud**

To vacate an arbitration award as procured by fraud under section 10(a)(1), the party challenging the award must show the fraud was "(1) not discoverable upon the exercise of due diligence prior to the arbitration, (2) materially related to an issue in the arbitration, and (3) established by clear and convincing evidence." Lafarge Conseils et Etudes, S.A. v. Kaiser Cement & Gypsum Corp., 791 F.2d 1334, 1339 (9th Cir. 1986). Vacatur of an arbitration award based on fraud "require[s] an extremely high degree of improper conduct, such as dishonesty." Pacific & Arctic Ry. & Nav. Co. v. United Transp. Union, 952 F.2d 1144, 1148 (9th Cir. 1991) (quotation omitted). Evidence the arbitrator "totally disregarded" the challenging party's arguments amounts

3

1  to fraud "as a matter of law." Id. at 1149.

2        The Burton Group argues Phillips received ex parte communications from Bonsignore
3  which disparaged Burton's work, and that Phillips acted as an advocate on Bonsignore's behalf,
4  and that such conduct constituted fraud or undue means supporting vacatur.  The Burton Group has
5  not met its burden of showing by clear and convincing evidence that the arbitration award was the
6  product of fraud.  Most of the communications the Burton Group identifies as ex parte were not ex
7  parte.  Rather, the Burton Group's own exhibits show that Burton was copied on the emails.  (Doc.
8  #742 at 67, Doc. #742-1 at 31-56, Doc. #742-2 at 12.)  The only other ex parte communication the
9  Burton Group identifies is a May 2009 hearing where Phillips indicated that he had heard from
10 Walmart counsel and others that Burton and her co-counsel, Robert Mills, had been reprimanded by
11 the trial judge in Salvas for engaging in personal attacks on other counsel.  It is unclear from the
12 record whether Phillips received these communications in the context of a mediation, at which ex
13 parte communications would be expected.  Nevertheless, upon receiving those communications,
14 Phillips did what a neutral should do upon receiving ex parte communications, he brought them to
15 the Burton Group's attention and permitted them to respond.  Phillips likewise provided to all
16 parties the letter from the Arkansas state court when he received it.  (Doc. #782-1 at 113.)  The
17 Burton Group has not shown Phillips engaged in misconduct rising to the level of dishonesty in
18 relation to the so-called ex parte contacts.

19       As to the allegedly improper advocacy, the Burton Group has failed to present clear and
20 convincing evidence that Phillips agreed to advocate for the Salvas settlement reached between
21 Walmart and the Bonsignore Group.  The attorneys made representations to the Salvas trial judge
22 that the judge could call Phillips.  However, there is no evidence Phillips ever agreed to advocate
23 for the settlement, agreed he would opine the settlement was fair, or even knew the terms of the
24 settlement.  Phillips did indicate he would speak to the judge if the judge was so inclined.
25 However, Phillips indicated that he previously had explained "well before this incident arose, to all
26 of the parties both in person and in writing, the circumstances under which [he] would make

4

1 [himself] available to the Massachusetts Superior Court." (Doc. #775 at 51.) Specifically, Phillips had agreed to make himself available to any judge in any Walmart case. (Doc. #778-2 at 34.) Even if it would be improper for Phillips to discuss the matter with the Salvas trial judge, there is no evidence he ever did so. Again, the Burton Group has failed to establish Phillips engaged in misconduct rising to level of dishonesty to support vacatur.

Nor has the Burton Group presented clear and convincing evidence that Phillips advocated for the Bonsignore Group in matters before this Court. Phillips issued an opinion related to the Burton Group's sealed emergency motion regarding PTO-2 filed before this Court. Phillips asked for the sealed filings in this case because Burton argued before him that he should not consider Bonsignore's request to arbitrate certain matters because those matters were before this Court. However, Burton would not disclose the sealed filing, so Phillips could not verify whether he should decline to address the matter. (Doc. #801-3.) Phillips' amended Opinion and Order does not advocate for a particular outcome of the matter before this Court. Rather, he corrected factual statements made by Burton in her motion related to the Salvas "mediation." (Doc. #742-2 at 21.) That those factual corrections may have undermined the basis for the Burton Group's motion does not amount to improper advocacy on the Bonsignore Group's behalf. Moreover, it would be odd indeed to call the correction of the Burton Group's factual inaccuracies a fraud or dishonesty on Phillips' part sufficient to support vacating the award.

The Burton Group has failed to offer clear and convincing evidence supporting vacatur based on fraud. The Court therefore will deny the Motion to Vacate on this basis.

**B. Partiality**

Pursuant to section 10(a)(2), a court may vacate an arbitration award if the arbitrator was evidently partial or was actually biased. Woods v. Saturn Distribution Corp., 78 F.3d 424, 427 (9th Cir. 1996). A party seeking to vacate an award may show an arbitrator was evidently partial if he failed to disclose facts which create a "'reasonable impression of partiality.'" Fid. Fed. Bank, FSB v. Durga Ma Corp., 386 F.3d 1306, 1312 (9th Cir. 2004) (quoting Schmitz v. Zilveti, 20 F.3d

5

1043, 1046 (9th Cir. 1994)); <u>New Regency Prods., Inc. v. Nippon Herald Films, Inc.</u>, 501 F.3d 1101, 1105 (9th Cir. 2007) (stating "the arbitrator's failure to 'disclose to the parties any dealings that might create an impression of possible bias' is sufficient to support vacatur" (quoting <u>Commonwealth Coatings Corp. v. Continental Cas. Co.</u>, 393 U.S. 145, 149 (2007)).  However, vacatur is appropriate only if the undisclosed facts amount to a real, non-trivial conflict.  <u>New Regency</u>, 501 F.3d at 1110.  "[C]laims of evident partiality based on long past, attenuated, or insubstantial connections between a party and an arbitrator" will not support vacatur.  <u>Id.</u>  In contrast, to demonstrate actual bias, the party challenging the award must establish "specific facts which indicate improper motives," and the reviewing court must find actual bias as opposed to an impression of partiality.  <u>Woods</u>, 78 F.3d at 427 (quotation omitted).

        1.  <u>Actual Bias</u>

            a.  <u>Business Relationships</u>

The Burton Group contends Phillips accepted and failed to disclose to the parties new business relationships with Bonsignore and other class counsel.  The Burton Group has not met its burden of showing actual bias related to business relationships with the Bonsignore Group.  First, the <u>Salvas</u> "mediation" was neither a new business relationship nor undisclosed.  Phillips was the mediator in <u>Salvas</u> and held a mediation in <u>Salvas</u>, which Burton attended in December 2008.  Moreover, Burton was aware of the planned mediation and exchanged emails with Phillips regarding the same prior to the planned mediation.

The only other business relationship the Burton Group specifically identifies is Phillips' role in the <u>Smokeless Tobacco</u> cases, in which Bonsignore was counsel.  Phillips mediated a settlement in the <u>Smokeless Tobacco</u> cases in January 2008, which the trial court in those cases rejected.  (Doc. #743 at 28.)  The ultimate settlement accepted by the trial court named Phillips as the arbitrator for any future disputes under the settlement agreement.

The parties dispute whether Phillips disclosed his role in the <u>Smokeless Tobacco</u> cases. Although Burton states she was unaware of Phillips' participation in those cases, Bonsignore states

that Phillips disclosed the relationship in Burton's presence. (Doc. #766 at 39.) Even if Phillips failed to disclose the Smokeless Tobacco cases, the Burton Group does not identify what specific facts about his participation in those cases show an improper motive in this case. The Burton Group does not present any evidence Phillips ever was called upon to arbitrate any disputes in those cases, that he obtained substantial financial benefit from doing so, or that any communications he may have had with Bonsignore in those cases had any bearing or impact on the unrelated wage and hour litigation against Walmart or the fee dispute between counsel in this action.

Finally, Burton contends Bonsignore issued two checks to Phillips for unidentified matters. Bonsignore responds the checks were for this MDL proceeding. Burton was copied on emails regarding both of these checks in September and November 2009. (Doc. #743 at 98.) Burton presents no contemporaneous evidence that she objected or questioned whether these checks were for this MDL proceeding at the time of the emails, or any time since until the briefing in this matter. Although Burton appears to be suggesting the checks represent some other undisclosed financial arrangement between Bonsignore and Phillips, the contemporaneous evidence suggests Burton was aware of the checks and raised no objection to their issuance until now.

### b. Salvas Mediation

The Burton Group contends Phillips agreed to mediate and in fact mediated the Salvas case, a similar wage and hour case against Walmart, without notice to Burton, over her objection, and knowing that mediating the Salvas case may create a conflict with Phillips' role as the MDL fee arbitrator. However, as stated above, Phillips already was the Salvas mediator and thus his agreement to mediate the case was consistent with his role in that litigation. Moreover, Phillips maintains that no mediation occurred because the parties arrived at his office and announced they reached a settlement without his participation. Every counsel involved in the Salvas "mediation," including Walmart's counsel, have stated under oath that they settled prior to arriving at Phillips' office and that Phillips did not conduct a mediation. The Burton Group presents no evidence to the contrary. The fact that counsel thereafter referred to the matter as a "mediation" as opposed to a

"settlement" or a "planned mediation" does not amount to specific facts which indicate improper motives showing actual bias on Phillips' part.

The Burton Group contends that Phillips "misrepresented, and attempted to conceal, the true nature of the events" surrounding the Salvas "mediation." (Mot. to Vacate at 31.) This is a serious charge, but the only support for this claim is hearsay in Burton's affidavit that she heard from another attorney that Phillips was more involved than previously disclosed, including having lunch with the parties who arrived at his office. (Doc. #741 at 10.) Burton has presented no admissible evidence to support this claim, despite its grave nature, and the Court rejects it.

The Court also rejects the Burton Group's contention that Phillips scheduled the mediation without notice to her, as Phillips' office scheduled the mediation and contemporaneous emails demonstrate Phillips understood from Walmart's counsel that Burton was notified of the mediation. (Doc. #769-2 at 76.) Additionally, Phillips and Burton exchanged emails about the planned mediation prior to the date when it was scheduled to occur. The Burton Group also incorrectly contends Phillips agreed to support the settlement or comment on the conduct of the Burton Group vis-a-vis the parties supporting the settlement. The attorneys involved in the settlement suggested the presiding judge in Salvas contact Phillips. There is no evidence in the record Phillips agreed to make any such comments. As set forth above, Phillips indicated he would talk to any judge in any Walmart case. He did not state that he agreed to take any particular stance with respect to the proposed Salvas settlement or the Burton Group's conduct.

c. Ex Parte Communications

The Burton Group contends Phillips engaged in ex parte communications with the Bonsignore Group. Specifically, the Burton Group contends Phillips provided Bonsignore with a copy of a letter from Burton's counsel. Additionally, Bonsignore copied Phillips on numerous emails in which the Bonsignore Group disparaged Burton, called for her ouster as co-lead counsel, and praised Phillips. As set forth above, most of the communications the Burton Group identifies are not ex parte at all. Further, the letter from Burton's counsel was itself ex parte until served on

the Bonsignore Group. If Phillips or his office sent Bonsignore the letter, doing so would not have been improper nor does it reflect actual bias.

### d. One-Sided Rulings Outside Arbitral Jurisdiction

The Burton Group contends Phillips exceeded his arbitral jurisdiction and issued biased rulings, including one in which he expressed his desire to sanction Burton. Phillips explained the basis for his assertion of arbitral jurisdiction. The Burton Group did not move to vacate the decision or otherwise challenge the exercise of his jurisdiction. In one order, Phillips expressed a desire to sanction Burton because he found she willfully disobeyed his prior order. There is nothing ultra vires or extrajudicial about a neutral identifying sanctionable conduct of a party to the proceedings before him. Nor does it reflect actual bias.

Such a finding would require a judge or other neutral to recuse upon sanctioning a party before it for misconduct, for fear of later being accused of actual bias every time the judge did not rule in that party's favor. The Burton Group's position is contrary to prevailing law, which typically requires a challenge to a judge's partiality to be based on information from extrajudicial sources. F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc., 244 F.3d 1128, 1144 (9th Cir. 2001). Partiality may develop during the proceedings, but only when "the judge displays a deep-seated and unequivocal antagonism that would render fair judgment impossible." Id. at 1145. Phillips indicated he would have sanctioned Burton if he could have for what was, in his view, willful disobedience of his order. This does not display a deep-seated antagonism that would render fair judgment impossible. It reflects Phillips' understandable expectation that the parties before him will comply with the orders he issues. Nor has the Burton Group identified how this singular incident, relating to Burton's failure to turn over expert materials, constitutes actual bias.

### e. Demand for the Disqualification Motion

The Burton Group contends Phillips demanded and received from Bonsignore a copy of the Burton Group's Motion to Disqualify Phillips filed in this Court. Phillips had an interest in evaluating the motion both to determine whether he should recuse and to protect his reputation as

an arbitrator. Unlike a judge, an arbitrator must attract business, and attacks on his partiality impact his future business opportunities. The Burton Group also does not explain how Phillips' request for the sealed filings amounts to dishonesty or fraud, or how his request impacted his arbitration award in this case other than to exacerbate his allegedly already existing bias.

### f. Post-Allocation Public Comments

The Burton Group argues Phillips' comments to the press following their challenge to his arbitration order demonstrate his bias against them. Phillips' post-award comments are not specific facts showing bias in the award. Phillips' comments came after he issued the award, not while any matter was pending before him, and Phillips' comments were in response to the Burton Group's post-award allegations that he engaged in misconduct. As mentioned above, Phillips has an interest in protecting his reputation as a fair and impartial arbitrator, and his post-award comments that the Burton Group's allegations of misconduct are unfounded do not constitute specific facts showing actual bias in the award.

### 2. Failure to Disclose

The Burton Group contends Phillips did not disclose business relationships he had with the Bonsignore Group. Specifically, the Burton Group contends Phillips did not disclose he was the mediator and future arbitrator in the mediation in Salvas or that he was the mediator in the Smokeless Tobacco cases. The Burton Group also contends Bonsignore issued two checks to Phillips without Burton's knowledge or approval, and Burton claims she does not know what these checks were for.

The Court already has discussed that the contemporaneous evidence shows Burton was aware of the checks and she presents no evidence she objected to them at the time. With respect to the allegedly undisclosed business relationships, as discussed above, the Salvas matter was neither new nor undisclosed. The only other specific business relationship the Burton Group identifies is the Smokeless Tobacco cases. As mentioned previously, it is unclear whether Phillips failed to disclose this relationship, as Bonsignore stated under oath that Phillips disclosed the Smokeless

10

Tobacco cases in Burton's presence.

Even if Phillips failed to disclose the Smokeless Tobacco cases, the Burton Group has failed to establish that this non-disclosure creates a reasonable impression of partiality. The Burton Group does not explain how Phillips' participation in the Smokeless Tobacco cases is a real, non-trivial conflict. Phillips mediated Smokeless Tobacco in early 2008, nearly one year before the parties in this case settled with Walmart. The Smokeless Tobacco cases have no connection to this matter, and the Burton Group has not identified what information Phillips may have obtained from Bonsignore in that matter that would have any impact on a fee dispute in unrelated cases nearly two years later. Although the Burton Group suggests Phillips obtained substantial financial rewards for being named the arbitrator in the Smokeless Tobacco settlement, and therefore may be more inclined to favor Bonsignore as a repeat customer of sorts, the Burton Group presents no evidence Phillips reaped any financial benefit from being named the arbitrator in the Smokeless Tobacco settlement. Phillips' role as the arbitrator in Smokeless Tobacco is too remote and attenuated from his role as arbitrator in the present dispute to create a reasonable impression of partiality sufficient to support vacatur.

**C. Misconduct**

Under section 10(a)(3), any arbitrator misconduct which prejudices the rights of the challenging party may support vacatur. For example, conducting ex parte hearings or receiving evidence ex parte may amount to misconduct. U.S. Life Ins. Co. v. Superior Nat. Ins. Co., 591 F.3d 1167, 1176 (9th Cir. 2010). However, ex parte communications require vacatur "only if the ex parte contact constitutes misbehavior that prejudices the rights of a party." Id.; see also M & A Elec. Power Co-op. v. Local Union No. 702, Int'l Bhd. of Elec. Workers, AFL-CIO, 977 F.2d 1235, 1237-38 (8th Cir. 1992) (stating ex parte conduct must have deprived the challenging party of a fair hearing and influenced the outcome).

The Burton Group contends Phillips' ultra vires rulings against them and his receipt of ex parte communications constitute misconduct. As discussed above, Phillips' rulings explained

11

the basis for his decision to exercise arbitral authority, and the Burton Group did nothing to challenge those orders once issued.  As to the ex parte communications, the Court already has explained that nearly all the identified communications were not ex parte, and where he did receive ex parte communications, the arbitrator disclosed the content of ex parte communications to all parties.

Even if either of these claims constitute misconduct, the Burton Group has not established the alleged misconduct prejudiced their rights.  The Burton Group could have challenged the alleged ultra vires rulings at the time they occurred, but failed to do so.  Additionally, the Burton Group failed to timely object to Phillips about the email communications.  The evidence the Burton Group relies upon supports, at best, an inference of prejudice.  However, the Burton Group has not presented evidence sufficient to meet its burden of showing the result of the arbitration award would have been different if Phillips had not made the purportedly ultra vires rulings or received the email communications.  As discussed more fully below with respect to manifest disregard of the law, Phillips articulates the rationale supporting the arbitration award, and that rationale has a basis in fact, is reasonable, and is unrelated to Phillips' prior rulings or the emails.  The Burton Group therefore has failed to establish Phillips engaged in misconduct supporting vacatur.

### D. Manifest Disregard of the Law

Manifest disregard of the law means "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand and apply the law." Collins, 505 F.3d at 879 (quotation omitted).  Rather, "[i]t must be clear from the record that the arbitrator [ ] recognized the applicable law and then ignored it." Comedy Club, Inc. v. Improv West Assocs., 553 F.3d 1277, 1290 (9th Cir. 2009) (quotation omitted).  "Moreover, to rise to the level of manifest disregard [t]he governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable." Collins, 505 F.3d at 879 (emphasis omitted).

///

Manifest disregard of the facts is not a basis for vacating an arbitration award.  Coutee, 336 F.3d at 1133.  However, in some circumstances, "legally dispositive facts are so firmly established that an arbitrator cannot fail to recognize them without manifestly disregarding the law." Id.  This situation arises when the arbitration award is "legally irreconcilable with the undisputed facts."  Id.

The Burton Group contends that in addition to the manifest disregard standard, this Court has an independent duty under the Settlement Agreement to ensure the allocation of attorneys' fees comports with the general rule that fees be allocated to attorneys who created, increased, or protected the common fund.  The Burton Group contends Phillips ignored this rule when he awarded substantial fees to local counsel without any demonstration or discussion of the contribution local counsel made.  The Burton Group contends Phillips inappropriately deferred to local counsels' judgment without substantiating counsel contributed to creating, increasing, or protecting the common fund.  The Burton Group argues local counsel did little more than file copycat complaints, confer with lead counsel, and shadow lead counsels' work.  The Burton Group also challenges as "irrational" Phillips award of the multiplier to local counsel because most cases were stayed and there was little to no risk of incurring expenses on those cases.  Additionally, the Burton Group challenges Phillips' division of the surplus between Burton and Bonsignore, contending Phillips awarded five times more to Bonsignore without identifying any core work Bonsignore performed.

The Burton Group also argues Phillips applied inconsistent standards between them and the Bonsignore Group.  Specifically, the Burton Group contends Phillips ignored the risks Burton took, docked her for working for firms who paid her salary but took no such action against attorney Robin Brewer ("Brewer") who worked for the State of California, and docked the Burton Group for top heavy billing but not Bonsignore, even though the law firm Bonsignore & Brewer billed exclusively for attorneys.  Finally, the Burton Group contends Phillips should not have considered ethical considerations relating to the Salvas dispute.

The Burton Group does not identify what well defined, explicit, and clearly applicable legal rule Phillips recognized but then ignored. The Burton Group's objections largely reflect their disagreement with Phillips' ruling on the merits, which is not a basis to vacate an arbitration award. As an initial matter, it is important to distinguish the present matter from a motion to award attorneys' fees from a common fund in which the class claimants have an interest. Here, the Court awarded attorneys' fees separate and apart from the class claimants' common fund. As Phillips recognized, his role was not to award or deny fees. Rather, his role was to allocate among class counsel the fees which this Court already awarded.

Consequently, the law regarding how a court should determine an initial fee award, while a useful tool, did not control Phillips' decision. Phillips thus was not compelled to use a lodestar methodology, and his willingness to defer to counsels' judgment regarding the amount of hours reasonably expended for certain tasks does not raise the same type of concerns that making an initial fee award determination would raise. Moreover, Phillips noted that all parties to the arbitration are attorneys who are bound by ethical constraints of the profession. He therefore began with the presumption that the attorneys expended the time represented by contemporaneous time records and that they made the proper judgment about the appropriate amount of time to expend on various tasks unless he had a reasonable basis to conclude otherwise.

Phillips did not manifestly disregard the law by crediting local counsels' contribution to this litigation. While the Burton Group contends local counsel did little more than file copycat complaints, Phillips had a sound factual basis for concluding local counsel contributed substantially to this MDL. The original complaint may have served as a template, but the complaints in this MDL could not be mere copies because each complaint was based on a different state's law. Local counsel therefore had to research local common and statutory law to support the claims made in each individual action.

Moreover, Phillips was on solid ground in acknowledging the risk each local counsel bore with respect to their individual cases, which would have been remanded back to the district in

which it originated for trial.  Phillips also properly recognized that local counsel had a duty to keep apprised of the MDL proceedings and communicate with their clients.  Under the Burton Group's view, there would little incentive to agree to be local counsel in an MDL case  if, after taking on substantial risk and expending many hours communicating with their clients and keeping abreast of the proceedings, counsel discovers their work is valued at zero because their work purportedly did not create, contribute to, or preserve the common fund.  The Burton Group's view also assumes local counsel did not contribute to creating or increasing the common fund, when in fact the common fund potentially would not exist or be as large as it was without the numerous state-by-state class actions filed by local counsel.  There is strength in numbers.  Each state class action case affected the MDL plaintiffs' negotiating power, and necessarily increased the pool of potential claimants, and by proxy, the negotiated value of the common fund.

The Burton Group also argues Phillips applied inconsistent standards between them and the Bonsignore Group.  In general, Phillips began with the presumption that each attorney accurately billed for work performed, and that the billings were for a reasonable amount of time for the tasks performed.  Phillips adjusted each firm's lodestar only if he had specific reasons for doing so.  While the Burton Group contends Phillips accepted local counsels' billing uncritically, he reduced one local counsel's billings by over $1 million, and reduced the multiplier on others for duplicative or excessive billing.  Phillips also credited Burton's arguments that local counsel Dirk Ravenholt's lodestar was excessive and declined to award a multiplier as a result.  Phillips reduced everyone's submissions to reflect a $165 per hour rate for paralegals and denied all claims for fees related to disputes between co-lead counsel.

Phillips reduced the lodestar for LaPlant due to her reconstructed time records, as shown by discrepancies between the contemporaneous billing statements she submitted to Bonsignore as the case progressed and her later lodestar submission.  He also declined to award LaPlant a multiplier because she did not act as liaison counsel, as shown by the declarations of many local counsel that they had never communicated with LaPlant.  Phillips made similar adjustments to

other counsel, for example by reducing R. Deryl Edwards' lodestar for excessive paralegal time, time spent on intra-counsel disputes, and spending excessive time on various pleadings. Nothing about these adjustments is in manifest disregard of the law.

As to the two co-leads, Phillips made various adjustments to their lodestars as well. Phillips reduced the Burton Group's lodestar due to inflated and inconsistent attorney fee rates. Phillips also reduced Robert Mills' billing rate to $450 per hour due to the top heavy billing by the Burton Group given the appearance of two already experienced counsel in the case, Burton and Bonsignore. Therefore, billing for an additional experienced counsel at that high a rate was unnecessary. Although the Burton Group takes issue with Phillips criticizing the Burton Group for top heavy billing while deferring to the Bonsignore Group's use of attorneys, the two challenges were different. The Burton Group added a senior attorney late in the proceedings and then billed thousands of hours for the top two most expensive attorneys, when the MDL already had two co-lead counsel who could perform the bulk of this work or assign some of the tasks to more junior attorneys. In contrast, the challenge to the Bonsignore Group's billing was their practice of using attorneys for document review when the Burton Group used paralegals. Phillips acknowledged that paralegals would be less expensive, but attorneys might be more efficient at such a task and more likely to recognize the significance of documents they are reviewing.

Phillips accepted and rejected various challenges to the Burton Group's lodestar by the Bonsignore Group. For example, Phillips excluded non-contemporaneously recorded hours while Burton was working at other law firms and for time spent on attorney disputes. However, he rejected the Bonsignore Group's efforts to deny the Burton Group lodestar hours devoted to obtaining attorneys' fees, for appellate filings, and for various paralegal services. Phillips also rejected a wholesale challenge to the Burton Group's charge of time for reviewing other attorney's fee records, although he did reduce the hours reasonably spent on this activity. Phillips also reduced Bonsignore's lodestar by nearly $1 million based on an objection by the Burton Group to Bonsignore's practice of billing for several firm employees all reading the same email. Phillips

16

reduced each co-lead's submission by approximately $1 million.

Phillips then split the remaining unallocated fees between the co-leads, awarding Bonsignore approximately $5 million and Burton approximately $1 million. The disparity in the award was based primarily on Phillips' evaluation that Bonsignore took greater risks in committing firm resources to a litigation with uncertain likelihood of success against a tenacious and well-funded Defendant over the course of many years. Burton was employed for most of the proceedings, and therefore her time was compensated by the law firm for which she worked. In contrast, the Bonsignore Group undertook greater risk over many years, including the risk that Brewer's time working for the Bonsignore & Brewer firm on MDL matters would go uncompensated, even if Brewer had other outside employment for which she was compensated. Additionally, Phillips found that Bonsignore conceived of and led the litigation against Walmart.

Burton's contention that she performed the bulk of the legal work in this action, and therefore should have been compensated more generously, was a matter for the arbitrator to decide. The Court notes that Burton's view of Bonsignore's contributions to this MDL were far more generous prior to the parties' relationship deteriorating. (Doc. #112, Doc. #769-1 at 36, 38, 132.) Even assuming Burton performed the bulk of the legal work as she claims, she was compensated for that work through her lodestar submission. Further, the fact that another arbitrator may have given more weight to Burton's core legal work and less weight to the risk the Bonsignore Group bore, does not mean that Phillips' relative weighing of the parties' contributions manifestly disregarded the law.

Finally, Burton contends Phillips unfairly raised ethical issues related to the Salvas case. However, Phillips did so in rejecting the Bonsignore Group's call for a negative multiplier to be applied to the Burton Group's lodestar. He made no adjustment to the lodestar nor awarded a negative multiplier based on any alleged misconduct in Salvas.

In sum, the Burton Group has failed to meet their burden of establishing any basis exists to vacate the arbitration award allocating fees among Plaintiffs' class counsel in this case. The

17

Court therefore will grant the Bonsignore Group's Motion to Confirm the Arbitration Award, and will deny the Burton Group's Motion to Vacate the Arbitration Award.

The Bonsignore Group requests fees and costs for having to defend the arbitration award. Although the Court will deny the motion to vacate the award, the Court does not find the latest dispute between Co-Lead Plaintiffs' Counsel warrants a fee or cost award. This Court entered its Order regarding Attorneys' Fees (Doc. #520) nearly two years ago. Rather than reach a reasonable resolution between themselves, Co-Lead Plaintiffs' Counsel in the interim engaged in protracted litigation regarding the attorneys' fees. It is time to bring this dispute to an end.

**III.  CONCLUSION**

IT IS THEREFORE ORDERED that Co-Lead Plaintiffs' Counsel Robert Bonsignore's Motion to Confirm Arbitration Award (Doc. #722) is hereby GRANTED. The arbitrator's Opinion and Order dated January 10, 2011 is hereby CONFIRMED.

IT IS FURTHER ORDERED that Co-Lead Plaintiffs' Counsel Carolyn Beasley Burton, Robert Mills, and Carol P. LaPlant's Motion to Vacate the Arbitrator's Ruling (Doc. #737) is hereby DENIED.

IT IS FURTHER ORDERED that Robert Bonsignore's Motion to Strike or, Alternatively, to Allow Response (Doc. #786) is hereby GRANTED to the extent that the Court will consider the proposed Sur-reply.

DATED:  October 11, 2011

_____
PHILIP M. PRO
United States District Judge